UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

    Plaintiffs,

v.

BRIGHT HOUSE NETWORKS, LLC,

    Defendant.

Case No. 8:19-cv-00710-MSS-TGW

**DEFENDANT BRIGHT HOUSE NETWORKS, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLAIM FOR VICARIOUS LIABILITY**

Bright House Networks, LLC ("Bright House") hereby replies to Plaintiffs' Opposition to its Motion to Dismiss, Dkt. No. 39 ("Opp."). Plaintiffs' effort to recast their allegations misstates the allegations and highlights the implausibility of their vicarious liability claim. In the final analysis, however, the Complaint fails to include allegations necessary for Plaintiffs to proceed on that claim. First, Plaintiffs have failed to allege that infringing material serves as a "draw" to subscribe to Bright House's internet service. Second, Plaintiffs fail to allege that Bright House can control the allegedly infringing activity.

I. **Plaintiffs' effort to rehabilitate their allegations demonstrates that their "direct financial benefit" theory is fundamentally flawed.**

Bright House's motion stated the proper standard for the direct financial benefit prong of vicarious liability; there must be a causal connection between the financial benefit and the infringing activity. Mot. at 9. Any financial benefit must be *directly caused by the infringement*. *Id.* at C(2). Plaintiffs' Complaint falls short of alleging that the infringing material is a draw for infringers to subscribe to Bright House's service. *Id.*

In response, Plaintiffs acknowledge that the requisite financial benefit must be obvious, direct, and attributable to the infringement. Opp. at 6, 10. They nonetheless argue that Bright House misstates the standard, relying on out-of-context snippets of non-binding authority to argue that the financial benefit can be attenuated. Plaintiffs also take issue with the fact that Bright House cites cases decided at summary judgment, though Plaintiffs do as well. Opp. at 18. Notably, they do not cite a single instance of an ISP held vicariously liable on the basis alleged here, reinforcing that their theory simply does not fit. *Id.* at 11. Disregarding the circuit-level jurisprudence that has underpinned this District's vicarious liability rulings, Plaintiffs argue that *any* financial benefit, regardless of its proximity to the underlying direct infringement, should be sufficient. But even the out-of-circuit district court decisions they cite make no such leap. *See*

1

*Capitol Records, LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015), at *42 (requiring infringing material to serve as a draw)*; Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) (same); *Disney Enters., Inc. v. Hotfile Corp.*, 2013 WL 6336286, at *39 (S.D. Fla. Sept. 20, 2013) (same). Indeed, to do so would expand vicarious liability beyond all rational bounds. *Id*. at 10.[1]

To fit their allegations to the proper standard, Plaintiffs stretch them far beyond those actually reflected in the Complaint. They try to connect the dots between a random assortment of allegations by arguing that subscribers were drawn to Bright House for fast internet speeds, and that Bright House knowingly touted its internet speed as a way to attract would-be infringers. Opp. at 11-12 (citing to Compl. ¶¶ 72, 74-75, 80, 85-86). The Complaint, however, contains no such allegation (nor could it). The cited paragraph merely alleges that Bright House advertises the speed of its internet service to subscribers, which, in turn, permits users to download material. Compl. ¶ 72.

But Plaintiffs' argument that ads touting the speed of Bright House's service drew would-be infringers to select Bright House's internet service over others is facially implausible. Plaintiffs state that "plausibility is not a probability standard," Opp. at 6, but while the Court must accept the allegations as true, the facts must still create a plausible basis for liability to survive a Rule 12 motion. *See H.S. by & through R.S. v. Carnival Corp.,* 727 F. App'x 1003, 1005 (11th Cir. 2018) (quoting *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1248 (11th Cir. 2005)) (Courts in this Circuit "will not credit 'unwarranted deductions of fact.'"). It

---

[1] Plaintiffs rely on one Southern District of New York case to urge that allegations relating to an entity's tolerance of infringement are sufficient to allege vicarious liability. Opp. at 13. In that case, and the precedent upon which it relied, plaintiffs still alleged or demonstrated that the infringing content served as a draw to use defendant's service. *See Escape Media*, 2015 WL 1402049, at *42 (relying upon *Capitol*

2

can safely be presumed that most, if not all, ISPs market the speed of their service, and there is of course nothing nefarious about doing so, as it is required for all manner of online activities. Plaintiffs can point to nothing to suggest that Bright House's ads are specifically targeted at would be infringers. Moreover, Plaintiffs do not allege that the advertised speeds are meaningfully faster than Bright House's competitors or that those faster speeds somehow drew subscribers to Bright House's service (over others) to infringe. If Plaintiffs' allegations were sufficient, every ISP would face exposure for merely advertising the speed of its internet service.

Plaintiffs cannot overcome another of Bright House's key criticisms of the Complaint: that it provides no plausible basis for the necessary inference that subscribers chose Bright House's internet service because they somehow knew that Bright House would not terminate them if they were alleged to infringe. Opp. at 11-12. Plaintiffs simply fail to point to any allegations that potential subscribers were aware of or considered this when *selecting* a service provider. *Id.* Instead, Plaintiffs argue that "Bright House's failure to act" somehow caused current Bright House subscribers to become aware that they could infringe with impunity. *Id.* at 12. However, Plaintiffs cannot point to any allegation that subscribers were drawn to or would *switch* services due to Bright House's alleged practices.

Plaintiffs can point to no plausible allegations that support the financial benefit prong of vicarious liability. While they argue that the omission of allegations from their Complaint "does not bear on whether Plaintiffs have stated a claim," the sufficiency of their pleadings is precisely at issue here. *See* Opp. at 16. This failure to allege is fatal to their claim for vicarious liability.[2]

## II. Plaintiffs' arguments on the "right and ability to control" element of vicarious

---

*Records, Inc. v. MP3tunes, LLC*, 2013 WL 1987225, at *10 (S.D.N.Y. May 14, 2013); *A&M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 921 (N.D. Cal. 2000)).

[2] Plaintiffs contend that Bright House's arguments rely on information "peculiarly within its knowledge or control," Opp. at 16-17, but the deficiencies identified herein do not warrant additional investigation.

**liability simply reinforce that they have sued the wrong party.**

Plaintiffs rely on cherry-picked quotes from a handful of out-of-circuit cases to argue that the right and ability to control requirement is satisfied where a defendant has the ability to limit a user's capacity to upload or download materials to or from the internet. Opp. at 7. Specifically, Plaintiffs point to several cases where the defendant provided a closed, online file exchange system. *Escape Media*, 2015 WL 1402049 (defendant Grooveshark.com was a streaming site that allowed users to upload files to its system); *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640 (S.D.N.Y. 2013) (defendant website engaged in the resale of digital downloads); *Usenet.com, Inc.*, 633 F. Supp. 2d 124 (file sharing site defendant); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) (defendant was a music exchange site that permitted users to remotely access infringing files on other users' hard drives). In each case, the defendant managed, operated, and controlled the very servers and technology that facilitated the transfer of copyrighted material. Each defendant played a direct role in indexing the infringing material and had the ability to block or remove content transmitted through or uploaded to its site. By virtue of its proximate relationship to the direct infringement, each defendant had the ability to stop users from storing infringing material on its servers and to identify and remove the allegedly infringing material upon notice, and therefore, had the practical ability to control it. *Escape Media*, 2015 WL 1402049 at *42; *ReDigi*, 934 F. Supp. 2d at 655, 660; *Usenet.com,* 633 F. Supp. 2d at 157; *Napster*, 239 F.3d at 1012, 1023.

For Bright House, no such practical ability exists. The technology that allegedly facilitates the transfer of infringing material is BitTorrent and other P2P file sharing protocols. Bright House cannot control BitTorrent or other P2P technology, nor do Plaintiffs allege as much. Terminating a user's internet service does not preclude that user from continuing to use BitTorrent or other P2P websites. Indeed, infringement will not be prevented as in the cases cited

by Plaintiffs, as infringers could still access the services through other connections, including mobile services.[3] The restrictions contemplated in Plaintiffs' cited cases would have controlled access to the specific, infringing files themselves. Here, Bright House exercises no such control.

Rather than target the allegedly infringing P2P platforms themselves, Plaintiffs instead attempt to support a highly attenuated theory of liability. Plaintiffs try to distinguish *Amazon* and *Visa* by arguing that both "expressly distinguished situations like this one." Opp. at 9. However, *Amazon* specifically notes that the defendants at issue in that case could not "block [the users] ability to 'host and serve infringing [material] on the Internet." *Amazon*, 508 F.3d 1174. The very same is true here: Bright House cannot control what files its subscribers access or prevent users from using BitTorrent or other P2P software to infringe. Similarly, the *Visa* court highlighted that Visa could not "block access to the internet," and neither can Bright House. *Visa*, 494 F.3d at 804. Bright House can only block one method of accessing the internet.[4] Plaintiffs cannot sufficiently allege that Bright House has the right and ability to control the allegedly infringing conduct at issue.

## CONCLUSION AND REQUEST FOR ORAL ARGUMENT

Bright House respectfully requests that the Court grant its Motion and dismiss Plaintiffs' claim for vicarious liability for failing to sufficiently allege either prong of that claim. Given the import of the issues raised in this Motion, Bright House respectfully requests oral argument.

---

[3] The language from *Napster* relied upon by Plaintiffs, in fact, supports Bright House's position. 239 F.3d at 1023 (emphasis added) ("The ability to block infringers' access to a *particular environment* for any reason whatsoever is evidence of the right and ability to supervise."). There is no "particular environment" at issue here—it is the entirety of the internet. *Id.*

[4] Plaintiffs reject the argument that any restriction imposed by Bright House would not stop infringement. Opp. at 8. Pointing to *ReDigi*, they argue that infringement occurring outside of Bright House's network is irrelevant. This argument fails for the same reason that their effort to analogize *ReDigi* fails: *ReDigi* dealt with a closed system where defendant's own system was being used to host infringing material. 934 F. Supp. 2d at 645, 657, 660. By contrast, Bright House has no practical ability to control BitTorrent.

Respectfully submitted this 12th day of August, 2019.

              Respectfully submitted,

              By: */s/William J. Schifino, Jr.*
              William J. Schifino Jr.
              Florida Bar No. 564338
              John A. Schifino
              Florida Bar No. 72321
              Giovanni P. Giarratana
              Florida Bar No. 125848
              GUNSTER, YOAKLEY & STEWART, P.A.
              401 East Jackson Street, Suite 2500
              Tampa, Florida 33602
              Email: wschifino@gunster.com
              Email: jschifino@gunster.com
              Email: ggiarratana@gunster.com

              Michael S. Elkin
              Thomas Patrick Lane
              Seth E. Spitzer
              Stacey Foltz Stark
              Winston & Strawn LLP
              200 Park Avenue
              New York, New York 10166-4193
              Phone: 212.294.6700
              Fax: 212.294.4700
              E-mail: melkin@winston.com
              E-mail: tlane@winston.com
              E-mail: sspitzer@winston.com
              E-mail: sfstark@winston.com

              Jennifer A. Golinveaux
              Winston & Strawn LLP
              101 California Street
              San Francisco, California 94111
              Phone: 415.591.1000
              Fax: 415.591.1400
              E-mail: jgolinveaux@winston.com

              *Counsel for Defendant*
              *Bright House Networks, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on August 12, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the parties of record.

/s/ *William J. Schifino, Jr.*
Attorney