**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 8:19-cv-710-MSS-TGW |
| BRIGHT HOUSE NETWORKS, LLC, | |
| Defendant. | |

## DEFENDANT BRIGHT HOUSE NETWORKS, LLC'S MOTION TO COMPEL DISCOVERY AND MEMORANDUM IN SUPPORT

### I.     INTRODUCTION

Plaintiffs filed this action against defendant Bright House Networks, LLC ("BHN") claiming secondary liability for copyright infringement based on allegations that BHN subscribers used its internet access service to infringe over 7,500 musical works that Plaintiffs claim to own.  Despite Plaintiffs seeking upwards of a billion dollars in statutory damages, they have stonewalled even basic categories of discovery.

BHN now seeks to compel the following four key categories of documents:

• Copies of the underlying works claimed by Plaintiffs to be infringed ("works-in-suit"); a fundamental part of discovery for any copyright case to enable defendant to compare the allegedly infringed works with the alleged infringements.

• Basic financial information including documents regarding profits and revenues for the works-in-suit, and the agreements relevant to those calculations.  This

information is highly relevant even if Plaintiffs ultimately elect statutory over actual damages because it allows the jury to value each work so that any statutory damages are "just"—a jury's charge in a copyright case.

- Information concerning the Copyright Alert System ("CAS"), an inter-industry agreement signed by Plaintiffs and that sets forth what Plaintiffs understood to be reasonable for how ISPs like BHN should respond to allegations of infringement.

- Basic ownership documents for the works-in-suit, including chain of title information, documents regarding disputes/challenges to ownership, and work-for-hire agreements—routine and key discovery in copyright cases that allows a defendant the opportunity to rebut the presumption of ownership afforded by a copyright registration.

## II.    FACTUAL BACKGROUND

BHN served its first discovery requests on June 25, 2019 and Plaintiffs served their responses on July 25, 2019.  (Ranahan Decl., Exs. 1-4).  On August 27, 2019, BHN's counsel sent Plaintiffs' counsel a letter regarding deficiencies in the responses. (*Id.* at Ex. 5).  The parties met and conferred in person in an effort to narrow the issues. (Ranahan Decl. ¶¶ 4-23).  Plaintiffs, however, stood on their objections, necessitating this motion. *Id.*

## III.    LEGAL STANDARD

Parties may seek discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case..."  Fed. R. Civ. P. 26(b)(1).  When objecting to a discovery request, the "[p]arties are not permitted to assert . . . conclusory, boilerplate objections."  *Martin v. Zale Delaware, Inc.*, No. 8:08-CV-47-

T-27EAJ, 2008 WL 5255555, at *1 (M.D. Fla. Dec. 15, 2008).  After the party seeking to

compel discharges its "initial burden of proving that the information sought is relevant,"

the burden shifts to the party resisting the motion to compel to show their objections are

valid.  *Johnson*, 2017 WL 8948379, at *1–2; *Benavides v. Velocity IQ, Inc.*, No. 8:05-

CV-1536-T-30, 2006 WL 680656, at *2 (M.D. Fla. Mar. 15, 2006).

## IV.    LEGAL ARGUMENT

### A.  BHN Is Entitled to Copies of the Works-In-Suit

BHN requested digital copies of the works-in-suit in Requests for Production

("RFP") 2. The complete request, objections, and response follows:

**REQUEST NO. 2:** Full digital copies of all Copyright Works, including any and all versions of each Copyright Work You claim has been infringed, and any version submitted to the United States Copyright Office of the Library of Congress.
**OBJECTIONS:** Plaintiffs object to this request as premature because it seeks digital copies of "all Copyright Works," and Plaintiffs do not yet know the full scope of BHN's infringement of Plaintiffs' copyrighted works. A more complete picture of BHN's infringement will be developed and determined during discovery. Accordingly, Plaintiffs reserve the right to rely upon and/or assert in this litigation any of their copyrighted works infringed by BHN. Plaintiffs also object to this request because it is vague and ambiguous, including in that it is unclear whether BHN is requesting that Plaintiffs produce authorized, non-infringing copies of the relevant copyrighted works or the unauthorized, infringing copies, and it is unclear to what "all versions of the Copyright Works" refers. Additionally, Plaintiffs object because the request is not proportional to the needs of the case. Whether in full digital form or otherwise, Plaintiffs are aware of no legitimate need BHN could have for authorized, non-infringing copies of *all* copyrighted works in suit, or for *all* versions of the copyrighted works in suit, including versions submitted to the United States Copyright Office of the Library of Congress. As such, the burden and expense of the proposed discovery outweighs any likely benefit. To the extent a legitimate need exists, the copyrighted works in suit are commercially available to the public.
**RESPONSE:** Subject to the foregoing objections, Plaintiffs will produce digital copies of a sample of the copyrighted works in suit.

During the meet and confer, BHN's counsel explained that BHN seeks copies of

the works-in-suit to compare with the alleged infringements.  (Ranahan Decl. ¶¶ 8-9).

Plaintiffs' counsel offered to produce only a self-selected, undefined "sample" of works,

directing BHN's counsel to purchase the remaining works from "iTunes."  (Ranahan

Decl., Ex. 4).  When BHN's counsel sought to clarify what the proposed "sample" would

entail, how it would be chosen, and how many of the works-in-suit it would include,

Plaintiffs' counsel provided no specifics. (Ranahan Decl., Ex. 6) ("[I]n any case, the

works-in-suit are commercially available.")).  Plaintiffs stated that they would only

consider producing digital copies of all works-in-suit if BHN's counsel detailed its plans

to analyze that discovery and how it would use such discovery for its investigations

(despite this analysis being core work product).

Plaintiffs' objections are not legitimate and would prevent meaningful discovery

into a core issue: whether copyright infringement of each work-in-suit actually occurred.

*See Johnson*, 2017 WL 8948379 at *1–2.  A copy of each of the works-in-suit is

necessary to enable BHN to compare the works to the alleged infringements and test

Plaintiffs' evidence of direct infringement, an essential predicate to secondary liability.

*Stern v. Weinstein*, No. CV 09-1986-DMG, 2010 WL 11459354, at *1–2 (C.D. Cal. Aug.

19, 2010) (holding it "obvious, and entirely fair, for defendant to first have access to a

copy of the [work in suit]" before being required to construct defense based on work(s)-

in-suit); s*ee also Sun Media Sys., Inc. v. KDSM, LLC*, 576 F. Supp. 2d 1018, 1019 (S.D.

Iowa 2008) (noting fact finders are aided when they have "complete copies of both the

copyrighted work and the allegedly infringing work.") (quoting *Hartman Nelson v. PRN

Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989)).  That is particularly true where, as

4

here, Plaintiffs seek up to $150,000 per work infringed in statutory damages. BHN is not alleged to have itself had possession of the works-in-suit, and plainly does not have copies of them. Plaintiffs instead take the remarkable position that BHN should go to iTunes and buy each of the 7,500-plus works individually.  There is no potential burden that outweighs the proportional relevance of BHN being provided access to the alleged works-in-suit.

It is particularly critical that BHN receive copies of the works-in-suit because Plaintiffs used a third party, MarkMonitor to identify the alleged infringements at issue. (Ranahan Decl., Ex. 13 at 20). BHN is entitled to investigate which party (if any) downloaded copies of the alleged infringements as evidence and how they were matched (to the extent they were matched). BHN, therefore, needs to be able to have access to the claimed works to compare them with whatever library was used to do the matching.

BHN's counsel has provided a sufficient basis to seek the information, and is not required to detail for Plaintiffs' counsel all the ways it may use relevant evidence. Plaintiffs have provided no authority to suggest otherwise.  Plaintiffs have also failed to articulate how producing digital copies of their works would be overly burdensome. *Dearth v. Hartford Fire Ins. Co.*, No: 6:16-cv-1603-Orl-37KRS, 2018 WL 6261843 at *3 (M.D. Fla. Mar. 19, 2018) (overruling objections and requiring production where plaintiff failed to provide "sufficient evidence to support these claims of burden and proportionality.").

Plaintiffs should be ordered to produce digital copies of all the works-in-suit.

5

### B.  BHN is Entitled to Meaningful Financial Data for The Works-In-Suit

BHN propounded discovery requests, RFP Nos. 9, 12, 14, 16, 17, 18, 19, 26, and 61, seek basic financial information relevant to Plaintiffs' claim for damages.  The full text of the requests, objections, and responses follow:

**REQUEST 9:** Documents that contain information in a readable and useable format (*e.g.*, Microsoft Excel or Access) sufficient to demonstrate the revenue You generated from any assignments, licenses, and/or grant or transfer of rights of each Copyright Work for the last ten (10) years.

**OBJECTIONS:** Plaintiffs object to this request because "revenue you generated from any assignments, licenses, and/or grant or transfer of rights" is vague and confusing. Plaintiffs also object because Plaintiffs' revenues from assignment are not relevant to liability or damages. Plaintiffs also object to this request to the extent it seeks information beyond what is available to Plaintiffs at present from a reasonable and diligent search of documents in their possession, custody, or control, or imposes duties or obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure or the applicable rules and orders of this Court. In particular, Plaintiffs object to the request for revenue generated "from any assignments, licenses, and/or grant or transfer of rights of each Copyright Work for the last ten (10) years" as overly broad, unduly burdensome, and disproportionate to the needs of the case, as it appears to impose on Plaintiffs an obligation to create (and format) information not already in existence. To the extent BHN seeks to require Plaintiffs to alter or re-format information kept in the ordinary course of business, Plaintiffs object because BHN may not shift the burden and cost of its peculiar requirements onto Plaintiffs. Plaintiffs further object to the request's directive for information "in a readable and useable format (e.g., Microsoft Excel or Access)" to the extent inconsistent with applicable law concerning the production of electronically stored information. Additionally, Plaintiffs object on the basis that the request for annual revenue over the last ten years from every assignment of every copyrighted work in suit is overly broad and not proportional to the needs of the case. Therefore, the burden and/or expense of the proposed discovery outweighs any likely benefit or potential relevance.

**RESPONSE:** Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016.

**REQUEST 12:** All documents that evidence, refer to, discuss, support, or refute any damages or harm, including, without limitation, monetary damage, You claim to have suffered, or believe are likely to suffer, due to the infringements of each of the Copyright Works by BHN's subscribers, account holders, or customers, as alleged in Your Complaint.

**OBJECTIONS:** Plaintiffs object to this request as premature because Plaintiffs do not yet know the full scope of BHN's infringement of Plaintiffs' copyrighted works. A more complete picture of BHN's infringement will be developed and determined during discovery. Plaintiffs reserve the right to rely upon and/or assert in this litigation any of their copyrighted works infringed by BHN. Moreover, Plaintiffs object to this request because much of the information sought by this request is within BHN's possession, custody, or control, which Plaintiffs are presently seeking from BHN in discovery in this case. For example, BHN's documents showing that it continued to provide services to subscribers repeatedly infringing the copyrighted works in suit will help demonstrate "damages or harm, including . . . monetary damage" Plaintiffs suffered due to infringement of the copyrighted works in suit by BHN's subscribers, account holders, or customers.

Plaintiffs also object to this request insofar as it seeks information protected by the attorney-client privilege, attorney work-product doctrine, or joint defense or common-interest privilege, as trial preparation materials, or other privilege or immunity recognized by law. Such information shall not be produced in response to any of BHN's requests, and any inadvertent production shall not be deemed to waive any privilege with respect to such information.  In addition, Plaintiffs object to this request's call for "all documents that evidence, refer to, discuss, support, or refute any damages or harm" as overly broad, not proportional to the needs of the case, and therefore unduly burdensome.

**RESPONSE:** Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016.

**REQUEST 14:** All documents, including appraisals and documents reflecting negotiations concerning and agreements covering the sale of the Copyright Works, concerning valuation and/or value of the copyrights and the Copyright Works You assert in this litigation at any time, from the time You acquired them or were considering the acquisition of them through the present.

**OBJECTIONS:** Plaintiffs object to the request as overly broad, unduly burdensome, and not proportional to the needs of the case, including in that it seeks "[a]ll documents . . . concerning" broad subject matters, including valuation and/or value and negotiations. "All documents" in and of itself is overly broad and unduly burdensome. Additionally, Plaintiffs object because the request for valuation and/or value "from the time You acquired" the copyrighted works or "were considering the acquisition of them" is vague and ambiguous, overly broad, and seeks information not relevant or important to resolving the issues in the action. The burden and/or expense of the proposed discovery thus outweighs any likely benefit. Further, "negotiations" could involve any number of contract terms that have no bearing on or relevance to this case. Plaintiffs also object because the term "sale of the Copyright Works" is vague and ambiguous. For example, it is unclear whether BHN is referring to the sale of ownership of a copyrighted work or sale of an authorized copy of a copyrighted work. In addition, the failure to narrow this

request to a specific timeframe renders it overly broad, unduly burdensome and not proportional to the needs of the case.

**RESPONSE:** Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate (1) that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works in suit, to the extent such documents can be located following a reasonable and diligent search, and (2) Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016.

**REQUEST 16:** All documents concerning trends, forecasts, projections, or any other financial plans related to royalties, sales, revenue, or profits generated through streaming, digital downloads, physical media, and/or any other media, of the Copyright Works.

**OBJECTIONS:** Plaintiffs object to this request because it is overly broad, unduly burdensome, and not proportional to the needs of the case, including in that it seeks "[a]ll documents concerning" broad subject matter. The information sought is not relevant to resolving any issues in the action, and the burden and/or expense of the proposed discovery outweighs any likely benefit or potential relevance.

**RESPONSE:** Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016.

**REQUEST 18:** Documents that contain information in a readable and useable format (*e.g.*, Microsoft Excel or Access) sufficient to demonstrate Your total annual revenue from each Copyright Work by medium for each of the last ten (10) years.

**OBJECTIONS:** Plaintiffs object to this request because Plaintiffs' revenues are not relevant to any issue related to liability or damages. Plaintiffs also object to the request because it is overly broad, unduly burdensome, and not proportional to the needs of the case. For example, Plaintiffs commercialize their works in many different ways. The term "medium" could encompass a wide range of physical products such as vinyl records, cassette tapes, CDs, super audio CDs, DVD audio discs, and Blu-ray audio discs, as well as digital products, including downloads, live streams, and on-demand streams.

In addition, Plaintiffs object to this request to the extent it seeks information beyond what is available to Plaintiffs at present from a reasonable and diligent search of documents in their possession, custody, or control, or imposes duties or obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure or the applicable rules and orders of this Court. In particular, Plaintiffs object to the request for "total annual revenue from each Copyright Work by medium and for each of the last ten (10) years [less costs and expenses]" as unduly burdensome as it appears to impose on Plaintiffs an obligation to create (and format) information not already in existence. To the extent BHN seeks to require Plaintiffs to alter or re-format information kept in the ordinary course of business, Plaintiffs object because BHN may not shift the burden and cost of its peculiar requirements onto Plaintiffs. Plaintiffs further object to the request's directive for information "in a readable and useable format (e.g., Microsoft Excel or

Access)" to the extent inconsistent with applicable law concerning the production of electronically stored information.

**RESPONSE:** Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016.

**REQUEST 19:** Documents that contain information in a readable and useable format (*e.g.*, Microsoft Excel or Access) sufficient to demonstrate Your total annual expense and profit from each Copyright Work by medium and for each of the last ten (10) years.

**OBJECTIONS:** Plaintiffs object to this request because Plaintiffs' profits and expenses are not relevant to any issue related to liability or damages. Plaintiffs also object to the request because it is overly broad, unduly burdensome, and not proportional to the needs of the case. For example, Plaintiffs commercialize their works in many different ways. The term "medium" could encompass a wide range of physical products such as vinyl records, cassette tapes, CDs, super audio CDs, DVD audio discs, and Blu-ray audio discs, as well as digital products, including downloads, live streams, and on-demand streams. In addition, Plaintiffs object to this request to the extent it seeks information beyond what is available to Plaintiffs at present from a reasonable and diligent search of documents in their possession, custody, or control, or imposes duties or obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure or the applicable rules and orders of this Court. In particular, Plaintiffs object to the request for "total annual profit from each Copyright Work by medium and for each of the last ten (10) years" as unduly burdensome as it appears to impose on Plaintiffs an obligation to create (and format) information not already in existence. To the extent BHN seeks to require Plaintiffs to alter or re-format information kept in the ordinary course of business, Plaintiffs object because BHN may not shift the burden and cost of its peculiar requirements onto Plaintiffs. Plaintiffs also object to the request's directive for information "in a readable and useable format (e.g., Microsoft Excel or Access)" to the extent inconsistent with applicable law concerning the production of electronically stored information. Further, Plaintiffs object to this request as unreasonably cumulative and duplicative               of               Request               No.               18.

**RESPONSE**: Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016.

BHN seeks information regarding Plaintiffs' profits, revenues, and expenses on a per-work basis, as well as underlying agreements and other documents relevant to those calculations. Plaintiffs' responses inappropriately limit the scope of their production to "documents sufficient to demonstrate Plaintiffs' total annualized U.S. revenues,

expenses, and profits for the period of 2010 through 2016." Plaintiffs have specifically excluded financial data on a per-work basis, and revenue, expenses, and profits for physical sales, streaming sales, and licensing. (Ranahan Decl., ¶ 14).

The Supreme Court has made clear that copyright damages must be determined work by work. *Feltner v. Columbia Pictures Television, Inc.* 523 U.S. 340, 353 (1998). Under the Copyright Act, 17 USC § 504(b)-(c), the ranges for available damages vary per work depending on whether the plaintiff ultimately elects actual or statutory damages. Even if Plaintiffs ultimately elect statutory damages instead of actual damages (which they have yet to do), the law is clear that actual damages (or a lack thereof) are still relevant to an assessment of where on the wide range of statutory damages (between $200 and $150,000 per work) the jury decides is a "just" award for each work. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952) (quoting *I.A. Westermann Co. v. Dispatch Printing Co.*, 249 XJ.S. 100, 106 (1919)); see also *N.A.S. Imp. Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992) (value of the copyright relevant to the jury's determination of statutory damages). Statutory damages awarded should encompass consideration and "bear some relation" to any "actual damages suffered", or lack thereof. *Van Der Zee v. Greenidge*, No. 03 Civ 8659, 2006 WL 44020, at *2 (S.D.N.Y. Jan. 6, 2006) (statutory damages must bear some relation to actual damages), *Kleiner v. Burns*, No. 00–2160–JWL, 2000 WL 1909470 at*3 (D. Kan. Dec. 22, 2000) (compelling production of plaintiff's computation of actual damages because of its relevance to statutory damages).

Even assuming Plaintiffs prove ownership and infringement with respect to any of the works at issue, BHN has the right to investigate this data in discovery in connection with assessing what level of actual or statutory damages, if any, would be most just. Plaintiffs may ***not*** preclude discovery into actual damages unless seeking only the minimum statutory damages, because statutory damages "should bear some relation to actual damages suffered." *Van Der Zee* at *2.

In a similar litigation filed by the same Plaintiffs in a case pending in the Eastern District of Virginia against another internet service provider (the "*Cox*" matter), the court found financial information identical to that sought here to be relevant, even despite Plaintiffs' election of statutory damages. *Sony Music Entm't. et. al v. Cox Commc'ns Inc.*, Case No. 1:18-cv-950 (Ranahan Decl., Ex. 11) (requiring Plaintiffs to produce revenue by work and by channel, physical downloads, streaming, and licensing data); (Ranahan Decl., Ex. 12) (granting defendants' motion to compel financial information).

Other courts in copyright cases have specifically compelled documents consisting of licensing agreements and other documents relating to value of the works at issue and/or actual damages, including profits and revenues. *Adams v. Agrusa,* No. 2:15–cv–07270–SVW–RAO, 2016 WL 7665767, at *3 (C.D. Cal. July 20, 2016); *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs*., 923 F. Supp. 1231, 1241 (N.D. Cal. 1995); s*ee also BMG v. Global Eagle Order* (Ranahan Decl., Ex. 10) (granting motion to compel the plaintiff to produce, in a mass copyright case like this one, licensing agreements, revenue information and value information relating to the work-in-suit).

BHN seeks to compel the requested documents to assess the harm Plaintiffs are alleged to have suffered as a result of the alleged infringement. Plaintiffs must also provide any assessment of damages in light of the information currently available in sufficient detail so as to enable BHN to understand the contours of their potential exposure and make informed decisions as to settlement and discovery. *City & Cnty. Of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003).

Plaintiffs have articulated no valid objection for denying BHN otherwise clearly discoverable information. Indeed, Plaintiffs admit the value of works at issue is directly relevant, stating in their initial disclosures that "[a] more detailed computation of damages is premature…because a significant amount of information bearing on…damages—such as…the *value of Plaintiffs' recordings and musical compositions at issue*…will otherwise be developed during the discovery process." (Ranahan Decl., Ex. 10) (emphasis added).

While Plaintiffs claim that they "do not maintain records of profits, expenses, or revenue, organized by medium and by work as requested," it is unlikely that Plaintiffs do not maintain any responsive financial information to these Requests that relates to the value of the works-in-suit. (Ranahan Decl., Ex. 4). In fact, there are multiple ways that record labels and music publishers like Plaintiffs may have earned revenues in connection with the works-in-suit, including through physical sales, digital downloads, interactive streaming, compulsory digital public performance, master use and synchronization licenses (in films, television and/or commercials), distribution, licensing fees, mechanical royalties and performance royalties. The value of the musical works to those

arrangements would be expected to be reflected through documents such as internal accounting documents, licenses and other agreements with third parties, royalty statements, internal analysis regarding profitability (or lack thereof) of various works or catalogues, and/or valuations.

In the pending *Cox* case, the court ***rejected*** the plaintiffs' arguments regarding proportionality and burden as to the very same documents BHN now seeks in requiring Plaintiffs to produce revenue by work and by channel, physical downloads, streaming, and licensing data.  (Ranahan Decl., Exs. 11, 12).  The burden is even less than it was in the pending *Cox* case, as there is substantial overlap between the works-in-suit here and those asserted in Cox.  (*E.g.*, Ranahan Decl., ¶ 12) (representing that a comparison of the works-in-suit in Exhibits A and B of Complaint with works-in-suit asserted in *Cox* showed an identity of over 82%)).  Plaintiffs cannot claim that there is an undue burden in producing information related to claims and defenses that were already gathered and produced for other recent litigations by the same counsel representing Plaintiffs in both cases.  *See, e.g.*, Fed. R. Civ. P. 26(b)(1) (considering "the parties' relative access to relevant information" in evaluating burden).

Further, to avoid discovery based on a proportionality objection, the party resisting discovery "still bears the burden of…showing that the discovery fails the proportionality calculation mandated by Rule 26(b)."  *See Carr v. State Farm Mutual Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015).  Plaintiffs have not and cannot do so, at least with respect to the vast majority of the works at issues.

13

For all these reasons, Plaintiffs should thus be compelled to produce documents and information responsive to Requests 9, 12, 14, 16, 17, 18, 19, 26, and 61.

### C. BHN Is Entitled to Documents and Information Concerning CAS

BHN propounded discovery requests, including Interrogatory No. 5 and RFP Nos. 51, 68-75, regarding CAS, the CAS MOU, and its implementation. The full text of these requests, objections, and responses follow.

**INTERROGATORY NO. 5:** Identify all of the ISPs with which You, either directly or indirectly, have communicated regarding the CAS, any agreements related to the CAS, and the processing of copyright infringement notices by ISPs. **OBJECTIONS: 1.** Plaintiffs object to the interrogatory because CAS and Plaintiffs' communications with other ISPs about it are irrelevant. CAS was a private agreement in which BHN did not participate. CAS has no bearing on the claims or defenses in suit. Any communications by Plaintiffs with ISPs other than BHN also have no bearing on BHN's continued provision of internet service to subscribers it knew repeatedly infringed Plaintiffs' copyrights. Moreover, the identities of the parties to the CAS agreement, including ISPs, are well known publicly, including to BHN. **2.** Plaintiffs object to the interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. The phrase "indirectly . . . communicated" has multiple definitions and could encompass, for example, a public report posted on the internet read by an employee of any ISP, including those outside of the United States. Plaintiffs have no way of knowing the scope of all such "indirect" communications. Likewise, the phrase "any agreements related to the CAS," has multiple definitions and could be read expansively. **3.** Plaintiffs object to the interrogatory because it contains two distinct topics that should be separately numbered interrogatories: (1) CAS; and (2) the processing of copyright infringement notices by ISPs.

**REQUEST NO. 51:** All documents concerning settlements or agreements that You, or anyone acting on Your behalf, have reached, proposed, or internally approved with any of BHN's subscribers, account holders, or customers, or of customers of ISPs other than BHN. **OBJECTIONS:** Plaintiffs object to this request because it seeks vast amounts of information concerning unrelated nonparties and therefore has no apparent relevance to resolving the issues in the action. Further, Plaintiffs object to this request insofar as its purpose is to obtain evidence of such nonparties' conduct in order to excuse BHN's own malfeasance. Plaintiffs object to this request as overly broad, unduly burdensome, and not proportional to the needs of the case, including in that it seeks "documents concerning settlements or agreements" regarding any subject matter, including "documents concerning settlements or agreements" with subscribers of ISPs other than BHN.

Moreover, in this context, the request requires Plaintiffs to identify whether a particular individual is a BHN subscriber, information that is most accessible to BHN and within BHN's own possession, custody, and control. Plaintiffs also object to this request as overly broad and unduly burdensome, including in that it is not limited to any relevant time period, nor to the copyrighted works in suit.  Additionally, Plaintiffs object to this request because it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the joint defense or common-interest privilege, as trial preparation materials, or under other privilege or immunity recognized by law. **RESPONSE:** Pursuant to the foregoing objections, Plaintiffs respond that they will not produce documents responsive only to this request.

**REQUEST NO. 68:** All documents concerning CAS.
**REQUEST NO. 69:** All documents concerning negotiations related to CAS.
**OBJECTIONS TO REQUEST NOS. 68 AND NO. 69:** Plaintiffs object to this request because CAS is irrelevant. CAS was a private agreement in which BHN did not participate. It has no bearing on BHN's liability or damages for the claims alleged in this case. Plaintiffs also object to this request as overly broad, unduly burdensome, and not proportional to the needs of the case, including in that it seeks "all documents" concerning broad subject matter—the Copyright Alert System—which BHN did not take part in. Moreover, the request seeks documents irrespective of BHN, the copyrighted works in suit, or the relevant time period. The request thus seeks vast amounts of information not remotely relevant to resolving the issues in the action, and the burden and/or expense of the proposed discovery thus far outweighs the likely benefit, if any. Plaintiffs also object to this request insofar as its purpose is to obtain evidence relating to nonparties' conduct in order to excuse BHN's own malfeasance. In addition, Plaintiffs object to this request insofar as it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the joint defense or common-interest privilege, as trial preparation materials, or under other privilege or immunity recognized by law. In addition, Plaintiffs object to the request because it is unreasonably cumulative and duplicative of Request Nos. 69-75.
**RESPONSE TO REQUEST NOS. 68 AND NO. 69:** Pursuant to the foregoing objections, Plaintiffs respond that they will not produce documents responsive only to this request.

**REQUEST NO. 70:** All documents concerning any Memorandum of Understanding concerning CAS, including without limitation the July 6, 2011 Memorandum of Understanding (the "7/6/2011 MOU") to which the RIAA was a signatory (singly or collectively, a "CAS MOU"), and any related document or agreement (such as the Implementation Agreement You entered into pursuant to the 7/6/2011 MOU).
**REQUEST NO. 71:** All documents concerning Your status as a signatory of a CAS MOU.
**REQUEST NO. 72:** All documents concerning BHN's compliance or non-compliance with policies or procedures reflected in CAS, a CAS MOU, or any Implementation

Agreement                concerning          a          CAS              MOU.
**REQUEST NO. 73:** All documents concerning any technological system used to detect, monitor, or generate or send notifications concerning, copyright infringement in connection with CAS, a CAS MOU, or any Implementation Agreement concerning a CAS                                                                      MOU.
**REQUEST NO. 74:** All reviews, assessments, evaluations, reports, or the like, including drafts, concerning CAS, including without limitation any technological system utilized in connection                                with                                CAS.
**REQUEST NO. 75:** All documents concerning notifications sent pursuant to CAS, any CAS MOU, or any Implementation Agreement, concerning allegations of copyright infringement              of              any              Copyright              Work.
**OBJECTIONS TO REQUESTS NOS. 70-75:** Plaintiffs object to this request because CAS is irrelevant. CAS was a private agreement in which BHN did not participate. It has no bearing on BHN's liability or damages for the claims alleged in this case. Plaintiffs object to this request insofar as its purpose is to obtain evidence relating to nonparties' conduct in order to excuse BHN's own malfeasance. Plaintiffs also object to this request as overly broad, unduly burdensome, and not proportional to the needs of the case, including in that it seeks "all documents" concerning broad subject matter—the Copyright Alert System—which BHN did not take part in. Moreover, the request seeks such documents irrespective of BHN, the copyrighted works in suit, or the relevant time period. As such, the request seeks information not remotely relevant to resolving the issues in the action, and the burden and/or expense of the proposed discovery far outweighs the likely benefit, if any. Plaintiffs object to this request insofar as it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the joint defense or common-interest privilege, as trial preparation materials, or under other privilege or immunity recognized by law. In addition, Plaintiffs object to the request because it is unreasonably cumulative and duplicative of Request Nos. 68-69 and                                                                      71-75.
**RESPONSES TO REQUEST NOS. 70-75:** Pursuant to the foregoing objections, Plaintiffs respond that they will not produce documents responsive only to this request.

CAS was a highly publicized inter-industry agreement entered into between major U.S. ISPs and content owners, including many Plaintiffs. CAS and the CAS MOU specifically address the ways in which ISPs should appropriately handle notices of alleged copyright infringement. In July 2011, parties to CAS signed the CAS MOU, and created a new organization, the Center for Copyright Information ("CCI"), to oversee, implement, and administer CAS and CAS MOU. In particular, CAS MOU includes provisions—agreed to by multiple ISPs ***and Plaintiffs***—addressing whether and when an

16

ISP has the obligation to terminate the accounts of subscribers targeted in infringement notices; an issue directly relevant to any underlying contributory liability in this case, as Plaintiffs allege that BHN should be held liable for failing to routinely terminate subscribers. BHN was not a signatory to CAS, and does not have access to many of the relevant documents and communications regarding CAS, CAS MOU, or the CCI.

Plaintiffs refuse to provide any discovery responsive to BHN's RFP, including any information about communications concerning the CAS and its implementation. (Ranahan Decl., Ex. 6) ("Plaintiffs do not rely on comparisons between BHN and other ISPs, or any sort of alleged 'industry standard,' in their Complaint."). Plaintiffs disregard the fact that Fed. R. Civ. P. 26(b)(1) permits discovery into the claims and defenses of *any party,* including both plaintiffs and defendants, and not just the party bringing suit. *Id*. The CAS is relevant—and in fact, central—to this case because it reflects industry standards and practices during the asserted Claim Period that Plaintiffs themselves found reasonable. These standards and practices include actions taken by other ISPs with respect to termination that form the basis of Plaintiffs' suit against BHN here. *Regions Bank v. Lynch*, No. 2:08-cv-31-FtM-99SPC, 2008 WL 11334993 at *2 (M.D. Fla. Dec. 9, 2008) (overruling objections where requested information "goes directly to the heart of the [] claim."). Though there are no direct references to CAS, the Complaint is full of allegations that BHN's failure to terminate its subscribers after receiving notices of infringement was "unreasonable" and constituted BHN's desire to turn a "blind eye" to alleged infringement. (*E.g.,* Ranahan Decl., Ex. 13, Complaint at ¶¶ 3, 4, 8, 9, 74, 81, 83, 86, 100). These are precisely the actions Plaintiffs sanctioned and found agreeable as an

industry-wide solution through CAS and the CAS MOU.  Accordingly, BHN's motion to compel documents and information responsive to these requests should be granted.

### D.  BHN Is Entitled to Documents to Test Ownership of the Works-In-Suit

BHN requested documents concerning ownership of the works-in-suit, including copyright registrations, complete chain of title information, documents regarding disputes and challenges to ownership, and work-for-hire agreements, through Request Nos. 3, 4, 5, 8, and 14.  The full text of the requests, objections, and responses follow.

**REQUEST 3:** All documents concerning communications between You and the Copyright Office and all documents issued by the Copyright Office, regarding the Copyright Works, including, but not limited to, all applications to register the Copyright Works, certificates of copyright registrations for each of the Copyright Works, supplemental registrations, renewals of registrations, recorded assignments, recorded transfers, and/or terminations of transfer.
**OBJECTIONS:** Plaintiffs object to the request as overly broad and irrelevant because it seeks "all documents concerning communications [with] the Copyright Office." Communications, or other documents, about communications go far beyond the scope of information relevant to resolving the issues in the case and therefore present an undue burden. The request for documents issued by the Copyright Office is also overly broad, unduly burdensome, and irrelevant, including in that it seeks information as to all copyrighted works in suit, rather than only those copyrighted works for which such information is necessary or relevant to the issues in the case. Moreover, Plaintiffs object to the request insofar as it seeks documents and/or information equally and readily available to Bright House, including through publicly-available sources.
**RESPONSE:** Subject to the foregoing objections, Plaintiffs will produce for each of the copyrighted works in suit either a certificate of copyright registration or, if a certificate is not readily accessible, a look-up page evidencing registration printed from the U.S. Copyright Office's website. Alternatively, for some older copyrighted works, Plaintiffs will produce a copy of the Copyright Office's card-catalogue entry evidencing registration. Upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works in suit, to the extent such documents can be located following a reasonable and diligent search.

**REQUEST 4:** Documents sufficient to demonstrate whether any of the Copyright Works was created as or is a work for hire.
**OBJECTIONS:** This request is overly broad, unduly burdensome, and irrelevant,

including in that it seeks information as to all copyrighted works in suit, rather than only those copyrighted works, if any, for which such information is necessary or relevant to the issues in the case. Therefore, the burden and/or expense of the proposed discovery outweighs any likely benefit. Plaintiffs also object to this request as unreasonably cumulative     or     duplicative,     for     example     of     Request     No.     3. **RESPONSE:** Subject to the foregoing objections, Plaintiffs will produce for each of the copyrighted works in suit either a certificate of copyright registration or, if a certificate is not readily accessible, a look-up page evidencing registration printed from the U.S. Copyright Office's website. Alternatively, for some older copyrighted works, Plaintiffs will produce a copy of the Copyright Office's card-catalogue entry evidencing registration. Upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works in suit, to the extent such documents can be located following a reasonable and diligent search.

**REQUEST 5:** All documents concerning ownership of or claims of right in the Copyright Works, including those evidencing, referring, or relating to the chain of title for the Copyright Works or those pertaining to disputes related to any time, of the Copyright                                                                         Works.
**OBJECTIONS:** This request's call for "all documents" is overly broad, unduly burdensome, and not proportional to the needs of the case, including in that it seeks "[a]ll documents . . . evidencing, referring, or relating to" chain of title. Moreover, the request's call for documents "concerning ownership of or claims of right" in the copyrighted works is vague and ambiguous. This request improperly asks Plaintiffs to make a legal conclusion and produce all supporting documents, rather than adequately identifying a specific category of documents for which Plaintiffs should search the records kept in the ordinary course of their businesses. Plaintiffs interpret the request to seek documents and/or materials sufficient to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective works in suit.

With respect to documents relating to the chain of title, Plaintiffs object because the request also seeks information as to all copyrighted works in suit, rather than only those copyrighted works, if any, for which such information may be necessary or relevant to the issues in the case. Additionally, Plaintiffs object to the term "chain of title" as vague and ambiguous to the extent it calls for a legal conclusion. Plaintiffs interpret this part of the request to seek documents sufficient to demonstrate that Plaintiffs own or control the copyrighted works in suit.

With respect to documents pertaining to disputes, Plaintiffs object to this request's call for "all documents" during "any time" frame as overbroad, unduly burdensome, and disproportionate to the needs of the case. Additionally, the request for documents concerning "disputes" is vague and ambiguous. Plaintiffs therefore interpret this part of the request as seeking documents concerning a litigation or demand letter challenging ownership of a copyrighted work in suit. Plaintiffs further object to this part of the

request as irrelevant in seeking "[a]ll documents . . . pertaining to disputes" regardless of the nature or outcome of such disputes. Plaintiffs also object to this part of the request insofar as it seeks information protected by the attorney-client privilege, attorney work-product doctrine, or other privilege or immunity recognized by law. Such information shall not be produced in response to any of Bright House's requests, and any inadvertent production shall not be deemed to waive any privilege with respect to such information.

**RESPONSE:** Subject to the foregoing objections, Plaintiffs will produce for each of the copyrighted works in suit either a certificate of copyright registration or, if a certificate is not readily accessible, a look-up page evidencing registration printed from the U.S. Copyright Office's website. Alternatively, for some older copyrighted works, Plaintiffs will produce a copy of the Copyright Office's card-catalogue entry evidencing registration. Upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works in suit, to the extent such documents can be located following a reasonable and diligent search. Plaintiffs are otherwise withholding responsive documents on the basis of their objections, to the extent such documents exist. Pursuant to the foregoing objections, Plaintiffs further state that they will not produce documents responsive only to the request for documents "pertaining to disputes." Notwithstanding the foregoing, Plaintiffs are willing to meet and confer with Bright House if and when Bright House identifies a good faith basis for disputing the ownership of a particular copyrighted work or works in suit.

**REQUEST 8:** All documents concerning any licenses, assignments, and/or grant or transfer of rights of the copyrights that You claim cover(ed) the Copyright Works for any of the last ten (10) years, including copies of agreements reflecting such licenses, assignments, and/or grant or transfer of rights and documents analyzing such licenses, assignments,            and/or            grant            or            transfer            of            rights.

**OBJECTIONS:** Plaintiffs object to this request's call for "all documents concerning any licenses, assignments, and/or grant or transfer of rights" as overly broad, not proportional to the needs of the case, and therefore unduly burdensome. The request for "all documents" is in and of itself overly broad and not proportional to the needs of the case. In addition, the request seeks documents concerning any and all licenses, assignments, and/or grants or transfers of rights of the copyrighted works in suit, without regard to whether such assignments have any bearing on issues in this case, and Plaintiffs therefore object on relevance grounds, and on the grounds that the request is vague and ambiguous in its reach. Moreover, "grant or transfer of right" is vague and ambiguous. Plaintiffs also object to the part of this request pertaining to agreements as irrelevant. Bright House has no legitimate need for copies of all agreements reflecting licenses, agreements, and/or grants or transfers of rights of the copyrighted works. Plaintiffs' agreements contain extremely sensitive and confidential business and proprietary information. The very high potential for prejudice to Plaintiffs and nonparties significantly outweighs the marginal, if any,      relevance      such      agreements      could      have      to      this      case.

**RESPONSE:** Subject to the foregoing objections, upon entry of an appropriate protective

order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works in suit, to the extent such documents can be located following a reasonable and diligent search.

As evident from their responses, absent identification of a specific ownership dispute or challenge by BHN, Plaintiffs have refused to produce responsive documents relating to any such disputes.  (Ranahan Decl., Exs. 3 and 4).  Plaintiffs have also refused to provide any documents or information beyond at least some of the copyright registration certificates, including refusing to produce chain-of-title information or work-for-hire agreements. In fact, Plaintiffs have not agreed to produce every actual copyright registration, and offer U.S. Copyright Office look-up screenshot pages if the actual registration is not available. (Ranahan Decl., Ex. 4).

Plaintiffs have the burden to prove ownership, and must establish it in order to have a valid claim for relief.  *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Twin Peaks Prods., Inc. v. Publ'ns Int'l Ltd.,* 996 F.2d 1366, 1372 (2d Cir. 1993).  Requests related to Plaintiffs' ownership of the allegedly infringed copyrights are relevant and within the scope of permissible discovery, because only an exclusive owner may sue for copyright infringement.  *Id*.  While a copyright certificate may establish *prima facie* evidence of the validity of a copyright, the presumption is rebuttable, and does not definitively resolve whether ownership is valid.  *E.g., Big. E. Entm't, Inc. v. Zomba Enter., Inc.,* 453 F. Supp. 2d 788, 800 (S.D.N.Y. 2006) (dismissing copyright infringement claim where plaintiff "failed to show undisputed evidence of its copyright ownership"); *Moran v. London Records, Ltd.*, 642 F. Supp. 1023, 1025 (N.D.

21

Ill. 1986), *aff'd*, 827 F.2d 180 (7th Cir. 1987) (granting motion to dismiss upon finding that because plaintiff "was never part of the chain of title to the copyright" he lacked standing to sue for its infringement); *Optima Tobacco Corp. v. US Flue-Cured Tobacco Growers, Inc*., 171 F. Supp. 3d 1303, 1306 (S.D. Fla. 2016) (dismissing case where plaintiff did not own the copyrights at issue); *Roberts v. Gordy*, 359 F. Supp. 3d 1231, 1240 (S.D. Fla. 2019) (holding that *prima facie* case of ownership did not preclude summary judgment on lack of ownership).  Following the *prima facie* showing, the burden shifts to the defendant to show invalidity of the asserted copyrights.  *Id*.  The discovery BHN seeks is relevant and necessary with respect to ***at least*** this shifted burden.

Plaintiffs' objection that BHN must first affirmatively identify challenges to be entitled to the full scope of discovery on ownership is circular, and ignores that the presumption of validity is a rebuttable one that courts in copyright cases have found within the proper scope of discovery.  *See In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1100 (N.D. Cal. 2002) ("refusing to allow any discovery on the issue of ownership converts the presumption of ownership into an irrefutable one.").  In *Napster,* the court stated that it was "reticent" "to allow plaintiffs, merely because of the quantity of music they control, to railroad Napster into potentially billions of dollars in statutory damages without adequately proving ownership."  *Id*. at 1100. As that court noted, "without reviewing the agreements . . . it is impossible to determine" whether the defendant's arguments are valid, and the court ordered plaintiffs to "produce all documentation relevant to their ownership of the works." *Id.*  Similarly, here, BHN must

be able to review and analyze chain of title and assignment agreements to test Plaintiffs' theories regarding ownership of the over 7,500 works-in-suit.  Otherwise it would be "impossible to determine" whether Plaintiffs' claims are valid.  *Id.*

BHN also seeks to compel all agreements pertaining to works-in-suit that Plaintiffs claim are "works-for-hire."  (*See* Ranahan Decl., Ex. 4, RFP No. 4).  For the works-in-suit that Plaintiffs have registered as works-for-hire pursuant to 17 U.S.C. § 101, BHN is unable to assess Plaintiffs' claim of ownership over these works from the copyright registrations alone.  Rather, in order to be valid, Plaintiffs must have a work-for-hire agreement that dates from ***before*** the work was created, as required by 17 U.S.C. § 101. *See Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992) ("The writing must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally"); *Gladwell Gov't Servs., Inc. v. Cty. of Marin*, 265 F. App'x 624, 626 (9th Cir. 2008) ("The plain language of the [Copyright Act] indicates that a work-for-hire agreement cannot apply to works that are already in existence."); *Arista Records, LLC v. Myxer, Inc.* (granting motion to compel seeking "chain of title documents in plaintiffs' possession, custody or control, directly bearing on the . . . plaintiffs' ownership of the sound recordings [at issue], including work-for-hire agreements and assignment agreements") (Ranahan Decl., Ex. 14, CV 08-3935 at Dkt. 422 (Nov. 30, 2009)).

Discovery into ownership is also critical because cases are streamlined by the mere ordering of such discovery.  Indeed, upon being required to search for, collect, and produce the complete chain of title and related documents for works-in-suit in other

massive copyright cases, Plaintiffs themselves must confront that they do not own, or have the proof that they own, many of the works they are claiming. For example, these same Plaintiffs twice amended their complaint in the *Cox* action to drop hundreds of works after being ordered to produce chain of title documentation. (*Compare* Ranahan Decl., Ex. 7 *with* Ranahan Decl., Ex. 8). Because each individual work carries a separate statutory damages award of up to $150,000, this reduction is very significant.

Similarly, in *UMG Recordings, Inc. v. MP3.com, Inc.,* the defendant successfully challenged more than half of the 4,700 copyrights claimed by UMG, thereby reducing potential liability by $65,000,000. *Compare* No. 00 Civ. 472, 2000 WL 1262568, at *6 (S.D.N.Y. Sept. 6, 2000) (noting at least 4,700 copyrights claimed and setting statutory damages at $25,000 per work) *with* 2000 U.S. Dist. LEXIS 17907 at *1 (S.D.N.Y. Nov. 14, 2000) (awarding damages for only 2,136 works). The fact that record companies such as Plaintiffs claim to be the rightful owners does not mean they always properly secure those rights, and the production of information sufficient to meet a *prima facie* showing does not relieve Plaintiffs' burden of proof. *See also BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 649–50 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) (dismissing infringement claims on summary judgment because claimant on copyright registration was not co-owner or exclusive licensee).

BHN is entitled to the full scope of discovery on ownership and validity of the copyrights at issue, including relevant work-for-hire agreements, and information regarding ownership and validity disputes. BHN's Motion should be granted.

24

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to do so.

Dated: October 23, 2019

Respectfully submitted,

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
Email: melkin@winston.com
Email: tlane@winston.com
Email: sspitzer@winston.com

GUNSTER, YOAKLEY & STEWART, P.A.
401 E. Jackson St., Ste. 2500
Tampa, FL 33602
(813) 228-9080 (telephone)
(813) 228-6739 (facsimile)

*s/ William J. Schifino, Jr.*
William J. Schifino, Jr., Florida Bar Number 564338
Email: wschifino@gunster.com
Jennifer A. Golinveaux
Erin R. Ranahan
Shilpa A. Coorg
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
Email: jgolinveaux@winston.com
Email: eranahan@winston.com
Email: scoorg@winston.com
*Attorneys for Defendant Bright House Networks, LLC*

## CERTIFICATE OF SERVICE

I certify that on October 23, 2019, a true and correct copy of the foregoing was filed with the Court via CM/ECF which will send a notice of electronic filing to the parties of record.

*s/ William Schifino, Jr.*
William Schifino, Jr.