**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

UMG RECORDINGS, INC., *et al.*,

       Plaintiffs,

   v.

BRIGHT HOUSE NETWORKS, LLC,

       Defendant.

**Case No. 8:19-cv-710-MSS-TGW**

**PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY RESPONSES AND
PRODUCTION OF DOCUMENTS**

Plaintiffs seek an order compelling Defendant Bright House Networks, LLC ("BHN") to produce responsive and relevant discovery it has refused to produce after months of stalling and unreasonable delay. Plaintiffs served requests for production and interrogatories seeking this discovery more than five months ago. Despite multiple attempts by Plaintiffs to resolve these disputes without court intervention, BHN remains unwilling to produce even the most basic categories of documents that have obvious and undeniable relevance to this case. Plaintiffs thus request that the Court issue an order compelling BHN to:

1.     Provide a full response to Plaintiffs' Interrogatory Nos. 11 and 12, without reliance on Rule 33(d);

2.     Produce financial documents sufficient to show (i) BHN's average revenue and profits, broken down by service, from January 1, 2010 through May 17, 2016, (ii) BHN's actual monthly revenue from all subscribers identified in Plaintiffs' Infringement Notices for January 1, 2012 through May 17, 2016, and (iii) BHN's audited financial statements for the period of January 1, 2010 through May 17, 2016;

3.     Produce copies of BHN's final copyright or infringement policies without

limitation as to time; and produce drafts thereof, as well as documents describing the effects of those policies, how they were communicated to third parties and subscribers, and identifying the employees or agents responsible for developing, conceiving, drafting and/or implementing such policies, for the time period of January 1, 2010 through May 17, 2016; and

4.    Produce for the time period of January 1, 2010 through May 17, 2016 (i) logs of all Infringement Notices (or "ticket log" data) pertaining to all of BHN's subscribers who have been identified in Plaintiffs' Infringement Notices, without limitation as to the complainant, (ii) all communications about such Infringement Notices, and (iii) documents sufficient to show all actions taken by BHN to limit, suspend, or terminate the service of subscribers associated with such Infringement Notices.

## BACKGROUND

Plaintiffs are record companies and music publishers that produce, manufacture, distribute, sell, and license commercial sound recordings and musical compositions.  Dkt. 1 ("Complaint") ¶ 1.  Through enormous investments of money, time, and creative effort, Plaintiffs—and the recording artists and songwriters they represent—have developed and marketed some of the world's most famous and popular music.  *Id.*  Collectively, Plaintiffs own or control the copyrights to millions of musical compositions and sound recordings, which is one of their primary sources of income.  *Id.* ¶ 12.  Defendant BHN is one of the largest internet service providers in the country.  This case concerns BHN's vicarious and contributory liability for its knowing, willful, and extensive contribution to the massive infringement of Plaintiffs' copyrighted works across BHN's internet services.

On June 10, 2019, Plaintiffs served their first sets of Requests for Production of Documents ("RFPs") and interrogatories on BHN.  Declaration of Neema T. Sahni ("Sahni Decl."), Exs. A & B.  BHN served responses and objections thereto on July 10.  *Id.*, Exs. C & D.

Plaintiffs then sent a letter to BHN on August 15 to meet and confer about certain deficiencies in BHN's responses. *Id.*, Ex. E. BHN responded by letter on August 27. *Id.*, Ex. F. On September 9, the parties met and conferred in person regarding these deficiencies. *Id.* ¶ 8. During those discussions, BHN was unprepared to offer a reasonable resolution on even basic discovery requests; for example, rather than agreeing to produce basic financial information, BHN's counsel indicated that they would need to investigate what BHN had available and get back to Plaintiffs later. *Id.* Plaintiffs memorialized those discussions in a September 25 letter. *Id.*, Ex. G. BHN responded to Plaintiffs' letter on October 1 (*id.*, Ex. H), to which Plaintiffs replied in a letter dated October 16, 2019 (*id.*, Ex. I). The parties met and conferred further by phone on October 24, 2019, and Plaintiffs followed this discussion with an October 26, 2019 email detailing the parties' positions and outstanding issues, hoping progress could be made after months of delay. *Id.* ¶ 11 & Ex. J.

BHN responded to this email on October 30, indicating BHN was still investigating a number of Plaintiffs' requests and even retreating from certain earlier positions. *Id.*, Ex. K. For example, during the October 24 call, BHN agreed to Plaintiffs' request that it produce information pertaining to notices of copyright infringement that were not sent by Plaintiffs, so long as they identified subscribers that had been the subject of another notice sent by Plaintiffs. *Id.* ¶ 11. But BHN reversed course in its October 30 email, taking the wholly unreasonable position that it could not state its position on this request, and a number of others, until after Plaintiffs produced infringement notices in their possession (notices which were sent to BHN and thus should be in BHN's own possession). *Id.*, Ex. K. In a final attempt to resolve these issues, Plaintiffs sent a further email to BHN on November 4, 2019. *Id.*, Ex. L. BHN's email reply on November 7 failed to address many of Plaintiffs' concerns. *Id.*, Ex. M. Instead, BHN

once again attempted to shift the burden to Plaintiffs to produce certain documents before BHN would comply with its own discovery obligations, and demanded additional explanation regarding some categories of documents the parties already had been discussing for months. *Id.* It is plain that the parties are at an impasse and judicial intervention is required.

## LEGAL STANDARD

Plaintiffs are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In response to a motion to compel disclosure pursuant to Fed. R. Civ. P. 37(a), "[t]he party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information." *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000). Any objection based on the request being overly broad or unduly burdensome cannot be boilerplate, but instead must provide a "full, fair explanation" of the objection "particular to the facts of the case." M.D. Fla. Discovery Handbook § III.A.6 (rev. June 5, 2015).

## ARGUMENT

More than five months into discovery, BHN has produced no documents (Sahni Decl. ¶ 16), and even refuses to commit to the production of basic discovery necessary to this case. Plaintiffs have patiently attempted to resolve these disputes without judicial intervention—to no avail. BHN has either flatly refused to produce relevant documents, or else strung Plaintiffs along with repeated representations that it is investigating various proposals that truly require no investigation. Prompt resolution of these issues is necessary to comply with discovery deadlines and prepare this case for trial.

## I.   <u>Basic Subscriber Data</u>

Consistent with it obstructionist approach to discovery, BHN has refused to respond to a simple interrogatory requesting its total number of internet subscribers on a monthly and yearly

basis, for the time period of January 1, 2010 through May 17, 2016:

**INTERROGATORY NO. 11:** State your total number of Subscribers, per month and year.

**OBJECTIONS:** Bright House objects that this request is overbroad, unduly burdensome, and seeks information that is outside the scope of permissible discovery because it is not relevant to any party's claim or defense, and to the extent this request seeks information outside the Discovery Period. Bright House reserves its right to respond to this interrogatory pursuant to Fed. R. Civ. P. 33(d).[1]

BHN has not responded to this interrogatory at all, instead offering a purported

"reservation of right" to later respond pursuant to Rule 33(d). BHN again refused to commit to

respond to this interrogatory in subsequent meet-and-confer conferences. Sahni Decl. ¶ 11. To

date, BHN has made no supplemental response, nor designated any documents (or indeed,

produced any documents at all) to respond to this interrogatory under Rule 33(d). *Id.* ¶ 16.

This interrogatory seeks the most basic possible information about BHN's core business:

its number of internet subscribers per month and year, from a few years before Plaintiffs' claim

period through the end of the claim period on May 17, 2016. This foundational information is

relevant to a number of issues. First, comparing the number of subscribers that have infringed

Plaintiffs' copyrighted works over BHN's services to BHN's total subscribers is the only way to

determine the scope of infringement occurring, and the reasonableness (or not) of BHN's actions

to address known infringement activity on its networks. Second, this information is relevant to

the question of whether the ability to illegally download copyrighted materials has acted as a

"draw" to subscribers, which BHN has argued that Plaintiffs need to demonstrate for vicarious

liability. Under BHN's own theory, Plaintiffs then need to understand the number of subscribers

that were joining or disconnecting from BHN's services over time. *See A&M Records, Inc. v.*

---

[1]     Pursuant to Local Rule 3.04, Plaintiffs quote in full all discovery requests and responses at issue in this Motion. All discovery requests and objections quoted herein are contained in Plaintiffs' discovery requests and BHN's objections and responses thereto. *See* Sahni Decl., Exs. A–D.

*Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (affirming finding of "draw" based on tie between revenue and changes to user base).  Third, the information is relevant to BHN's argument that it is not feasible to take certain steps to address known infringement because doing so would have a dramatic impact on many of its customers; Plaintiffs need to know how many customers BHN has in the first place to test this theory.

There is no credible argument that production of this information would be burdensome or disproportionate to the needs of this case.  Tracking and calculating total subscribers is fundamental to BHN's core business, and the number of subscribers BHN had in a given month or year is no doubt available from databases that BHN can easily query for this information.  Accordingly, Plaintiffs request that the Court compel BHN to provide a full response to this interrogatory, without reliance on Rule 33(d).

## II.   <u>Termination Data</u>

Plaintiffs also ask this Court to compel BHN to provide a response to Plaintiffs' Interrogatory No. 12:

**INTERROGATORY NO. 12:**  State the number of Subscribers, per month and year, whose internet service you terminated for failing to pay amounts owing on the Subscriber's account.

**OBJECTIONS:** Bright House objects that this request is overbroad, unduly burdensome, and seeks information that is outside the scope of permissible discovery because it is not relevant to any party's claim or defense, and to the extent this request seeks information outside the Discovery Period. Bright House further objects to this request because it is unduly burdensome and unnecessarily duplicates other discovery requests that Plaintiffs have propounded, including FRP Nos. 2 and 15. Bright House reserves its right to respond to this interrogatory pursuant to Fed. R. Civ. P. 33(d).

This represents the inverse of the above interrogatory, asking BHN to state the number of subscribers it *terminated* for non-payment, on a monthly and yearly basis, since 2010.  BHN has refused to respond.  Sahni Decl. ¶ 11.  BHN's handling of subscribers, including for non-payment, is relevant, at minimum, to BHN's right and ability to control infringement for purposes of establishing its vicarious liability, and to whether BHN materially contributed to

such infringement by failing to stop it.

Vicarious copyright infringement requires a showing that BHN had the right and ability to supervise the infringing activity. *Broadcast Music, Inc. v. Joint Bar & Grill, LLC*, 2012 WL 6933552, at *2 (S.D. Fla. 2012); *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 673-74 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018). In determining whether a defendant had the right and ability to supervise infringing activity, courts look to whether the defendant could and did take action against violations of its policies, including those that are not related to infringement. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (finding that the right and ability "to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise"); *Arista Records, Inc. v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) (same). This means that if BHN regularly terminated the accounts of subscribers who failed to pay their subscription fees in violation of BHN's policies, then BHN could have done the same for subscribers it knew repeatedly infringed Plaintiffs' copyrights. *See, e.g.*, *Usenet*, 633 F. Supp. 2d at 157 (finding defendants could control copyright infringement on their service based on disciplinary measures defendants took against users who posted "spam" and pornography).

This information is also relevant to BHN's contributory liability. If BHN routinely terminated subscribers who failed to pay their monthly fees, but allowed infringing subscribers to continue to use its services, that shows that BHN turned a blind eye to the infringement happening on its networks and materially contributed to it. *See Venus Fashions, Inc. v. ContextLogic, Inc.*, 2017 WL 2901695, at *24 (M.D. Fla. Jan. 17, 2017) (finding that defendant's "resistance or failure to implement this system provides circumstantial evidence that it is [*sic*] intentionally or knowingly contributes to the direct infringement by a third party"). For these

reasons, a jury should be permitted to compare the number of subscribers BHN terminated for non-payment to the number it terminated for copyright infringement.

As to BHN's unsupported burden objection, BHN is in the business of selling subscriptions, so the number of subscribers it has at a given time—and the number it has terminated for nonpayment—is no doubt available from databases BHN can easily query for this information.  Accordingly, Plaintiffs request that the Court compel BHN to provide a full response to this interrogatory, without reliance on Rule 33(d).

## III.   Requests for Financial Information

BHN also has refused to produce to Plaintiffs basic financial information including, *inter alia*, data on BHN's total revenues and profits, audited company financials, and subscriber-level revenue data.  This information is necessary to understand BHN's financial position, and the degree to which that financial position has benefited from the subscriptions of subscribers that are the subject of Plaintiffs' copyright infringement notices.  In addition to being relevant to the financial-benefit element of Plaintiffs' vicarious infringement claim, this information is also relevant to a jury's assessment of statutory damages and willfulness.  *See, e.g.*, *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (when determining statutory damages, courts look at *inter alia* infringer's state of mind, infringer's profits, and conduct and attitude of the parties).  But BHN has refused to produce any financial information other than publicly-available financial statements—a hollow commitment since BHN's counsel previously represented that BHN is not a publicly-traded company that would be required to publish detailed public financial statements.  Sahni Decl. ¶ 8.  Indeed, it is clear from recent meet-and-confer efforts that BHN is not attempting to reach a good faith resolution of these requests.  On October 30, BHN's counsel represented that it was still "investigating" what financials it might have and what it could produce—five months after these requests were served.  *Id.*, Ex. K.  By

November 7, BHN's counsel had apparently abandoned this investigation, instead attempting to

dispute the relevance of such information, while still appearing uncertain whether BHN

maintained audited financials.  *Id.*, Ex. M.  These should not be controversial requests—a

sophisticated business entity like BHN must maintain basic financial summaries and track

subscriber revenue as a matter of course.  The time is long past for BHN to agree to produce such

information.

### A.    Plaintiffs' RFP No. 18

**REQUEST NO. 18:**  Documents sufficient to show your total and average revenues and profits, by month and year, including a breakdown based on the type of service provided.

**OBJECTIONS:**  Bright House objects to this request as vague and ambiguous, over-broad, and unduly burdensome, and as seeking information that is outside the scope of permissible discovery because it is not relevant to any party's claim or defense. Bright House further objects to this request to the extent it seeks information that is that is publicly available. Bright House objects to this request as vague and ambiguous, in particular as the meaning of the undefined terms "average" and "breakdown," and fails to describe with reasonable particularity the items or categories of items to be produced for inspection, including the specific department or service for which revenue information is sought. Bright House also objects to this request to the extent it improperly seeks information protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable privilege or doctrine. Bright House further objects to this request as premature as it purports to require Bright House to disclose individuals, documents, or things inconsistent with the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 26(a)(2) and the rules and orders of this Court. Bright House further objects to the extent such information is related to items currently pending before the Court on Defendant's Motion to Dismiss.

Subject to and without waiving the foregoing objections, Bright House responds that it is willing to meet and confer in good faith with Plaintiffs concerning this request.

This request seeks data concerning BHN's financial performance from 2010, a few years

prior to the claim period, through May 17, 2016, broken down by the type of service provided.

This is relevant to a jury's calculation of statutory damages as it shows BHN's overall financial

position, *see Faulkner Press, LLC v. Class Notes, LLC*, 2009 WL 4730624, at * 1 (N.D. Fla.

2009) (compelling defendants to produce financial information "on grounds that it is relevant to

an assessment of statutory damages"); *Coach, Inc. v. Swap Shop, Inc.*, 2013 WL 4407064, at *3

(S.D. Fla. 2013) (affirming similar Magistrate Judge's order compelling production of financial

information), and is also relevant and necessary to compare the financial benefit BHN received from infringing activity against that overall financial position.

BHN's objections to producing this information have shifted throughout the meet-and-confer process:  during the parties' first meet and confer, BHN said it would only produce public information, but indicated detailed financial information about BHN was not publicly available because BHN was not a publicly-traded company.  Sahni Decl. ¶ 8.  BHN subsequently stated it would produce certain "public records" from March 2012 through May 2016.  *Id.*, Ex. G.  BHN then said in early October that it intended to "commence production of responsive financial documents this month" (*id.*, Ex. H); no production has yet been made (*id.* ¶ 16).  During a further meet-and-confer on October 24, 2019, BHN once again agreed to revisit Plaintiffs' requests for financial data in response to Request No. 18.  *Id.* ¶ 11.  Following further outreach by Plaintiffs, BHN's counsel stated in an email dated October 30, 2019 that it was "actively investigating what [its] clients have" (*id.*, Ex. K).  BHN's email of November 7 did not mention this request at all. *Id.*, Ex. M.

In any event, BHN's response is plainly deficient.  Sophisticated business entities like BHN must maintain basic financial information of this kind as a matter of course.  There is no reason BHN should still be "investigating" whether such information exists.  Nothing in this request requires BHN to generate new documents or conduct detailed analysis—basic revenue and profit information for its various services (*i.e.*, phone, internet, television) is no doubt available in a number of high-level financial summary documents, databases, or board books. Plaintiffs are also not requesting the full contents of such documents with this request, only documents *sufficient to show* BHN's total and average revenue and profits by month and year.

BHN also has refused to provide information for the full time period requested,

unilaterally limiting its response to March 1, 2012 to May 17, 2016.  Plaintiffs need information

going back to 2010 to analyze trends in BHN's financial performance over time, and to compare

those trends against their own financial performance over the same period (indeed, Plaintiffs

have agreed to produce company financials for that same period).  This would help Plaintiffs

demonstrate the comparative impact of rampant copyright infringement on BHN's bottom line,

as compared to Plaintiffs'.  Plaintiffs thus ask the Court to compel production of documents

sufficient to show BHN's average revenue and profits, broken down by service, from January 1,

2010 through May 17, 2016.

### B.    Plaintiffs' RFP No. 19

**REQUEST NO. 19:**  Documents sufficient to show your total and average revenue and profit attributable to Subscribers about whom you received an Infringement Notice, including the per Subscriber revenue and profit by month and year.

**OBJECTIONS**: Bright House objects to this request as vague and ambiguous, over-broad, and unduly burdensome, and as seeking information that is outside the scope of permissible discovery because it is not relevant to any party's claim or defense. Bright House further objects to the extent it seeks documents not kept in the ordinary course of business and to the extent it seeks information that is publicly available. Bright House objects to this request as vague and ambiguous, in particular as the meaning of the undefined term "average" and phrase "attributable to Subscribers about whom you received an Infringement Notice," and fails to describe with reasonable particularity the items or categories of items to be produced for inspection, including the specific department or service for which revenue information is sought. Bright House also objects to this request to the extent it improperly seeks information protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable privilege or doctrine. Bright House further objects to this request as premature as it purports to require Bright House to disclose individuals, documents, or things inconsistent with the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 26(a)(2) and the rules and orders of this Court. Bright House further objects to the extent such information is related to items currently pending before the Court on  Defendant's Motion to Dismiss.

Subject to and without waiving the foregoing objections, Bright House responds that it is willing to meet and confer in good faith with Plaintiffs concerning this request.

This request again seeks BHN's basic financial information, but at the subscriber level, as

opposed to the company as a whole, for the period of January 1, 2010 to May 17, 2016.  These

documents and time period are critical because they will allow Plaintiffs to calculate the revenue

BHN received from subscribers that received multiple infringement notices—revenues it would

not have received had BHN appropriately addressed known, repeat infringement activity occurring on its network.  This is directly relevant to the financial-benefit element of Plaintiffs' vicarious infringement claim.  *See Capitol Records, LLC v. Escape Media Grp.*, 2015 WL 1402049, at *42 (S.D.N.Y. Mar. 25, 2015) (holding that financial benefit exists "as long as the service provider has an economic incentive to tolerate infringing conduct").  In addition, the requested information will help correlate BHN's knowledge of a subscriber's infringing activities with payments received by BHN from that subscriber, which is relevant to a number of issues.  For example, if Plaintiffs or others sent BHN multiple infringement notices regarding a certain subscriber from 2012, and the subscriber continued to pay for BHN's services through 2016, a jury should have an opportunity to consider that information in assessing statutory damages.  *See Faulkner Press*, 2009 WL 4730624, at * 1.  With respect to contributory infringement, correlating BHN's knowledge of a subscriber's infringing activities with payments received from that subscriber would show that BHN willfully facilitated, encouraged, and materially contributed to infringement by continuing to provide its network to those subscribers and receive subscription payments from them.  *See Venus*, 2017 WL 2901695, at *24.

To that end, and as a compromise, Plaintiffs ask this Court to compel BHN to produce documents sufficient to show *actual monthly revenue from infringing subscribers*—that is, all subscribers identified in Plaintiffs' notices of infringement—for 2012–2016.  Plaintiffs have previously explained these requests to BHN, including specifying that the information sought is comparable to "ICOMS" financial reports produced by an ISP defendant (represented by the same counsel that represents BHN here) in a similar case, *Sony Music Entertainment v. Cox Communications, Inc.*, Case No. 1:18-cv-950 (E.D. Va.) ("*Cox*").  Although Plaintiffs have raised this issue several times in meet-and-confer discussions, BHN's counsel responded as

recently as its October 30 email that it was still "actively investigating what [its] clients have

with respect to subscriber-level financial data."  Sahni Decl., Ex. K.  Once again, BHN has had

five months to investigate the availability of this basic data.  BHN is a large corporation in the

business of billing clients for services, so undoubtedly it must track payments received from its

customers, meaning this data certainly exists and can be extracted with relatively little burden.

### C.    Plaintiffs' RFP No. 20

**REQUEST NO. 20:** Documents sufficient to demonstrate your financial performance, including but not limited to regular corporate financial reports, audit reports, auditor letters, and any notes or supporting documents thereto.

**OBJECTIONS:** Bright House objects to this request as vague and ambiguous, over-broad, and unduly burdensome, and as seeking information that is outside the scope of permissible discovery because it is not relevant to any party's claim or defense. Bright House further objects to this request to the extent it calls for information that is publicly available. Bright House objects to this request as vague and ambiguous, in particular as the meaning of the undefined terms "financial performance," "corporate financial reports," and "supporting documents thereto," and fails to describe with reasonable particularity the items or categories of items to be produced for inspection. Bright House also objects to this request to the extent it improperly seeks information protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable privilege or doctrine. Bright House further objects to this request as premature as it purports to require Bright House to disclose individuals, documents, or things inconsistent with the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 26(a)(2) and the rules and orders of this Court. Bright House further objects to the extent such information is related to items currently pending before the Court on Defendant's Motion to Dismiss.

Subject to and without waiving the foregoing objections, Bright House responds that it is willing to meet and confer in good faith with Plaintiffs concerning this request.

Similar to RFP No. 18, this request seeks BHN's basic company financial data for 2010

to 2016, but here in the form of documents showing overall financial performance such as

audited financial statements or regular corporate reports.  This information, too, is relevant to a

jury's calculation of statutory damages as it shows BHN's overall financial position.  *Faulkner*

*Press*, 2009 WL 4730624, at * 1.  And although "evidence of financial gain is not necessary to

prove vicarious liability as long as the service provider has an economic incentive to tolerate

infringing conduct," *see Capitol Records*, 2015 WL 1402049, at *42, Plaintiffs should be able to

present evidence to the jury on how the financial benefit BHN received from infringement on its network compares to its overall financial performance.

BHN's objections to producing these materials largely track those stated in response to RFP No. 18. BHN has to date only committed to producing certain "public records" from March 2012 through May 2016, and has actually produced nothing. Sahni Decl. ¶ 16. During a further meet-and-confer on October 24, 2019, BHN's counsel appeared to express confusion over what "audited financials" were, but agreed to revisit Plaintiffs' requests for financial data in response to this Request. *Id.* ¶ 11. BHN's counsel then stated in its October 30, 2019 email that it was still "actively investigating what [its] clients have." Sahni Decl., Ex. K. In its November 7 email, BHN's counsel appeared to resort to a relevance objection, while also admitting that it had still failed to conduct a sufficient search to determine whether BHN actually possessed such statements. *Id.*, Ex. M ("we fail to see the relevance of 'audited' financial statements, to the extent Defendants maintain them at all").

BHN's continued stonewalling is totally inadequate. Sophisticated business entities like BHN must maintain audited financial statements or similar corporate financial reports summarizing their overall financial performance as a matter of course, and there can be no serious argument that it is burdensome to collect and produce those statements for a handful of years, nor is there any valid reason for BHN to still be "investigating" whether such statements exist five months into discovery. As to time period, as described above with respect to Request No. 18, BHN should be required to produce the requested company-wide financials dating back to 2010, so Plaintiffs can analyze trends in BHN's financial performance over time, and compare them against Plaintiffs' for that period. Plaintiffs thus request that the Court compel BHN to produce audited financial statements containing the information sought by Request No. 20 for

the period of January 1, 2010 through May 17, 2016.

**IV.    Requests to Which BHN Refuses to Respond for the Full Timeframe Requested, the Full Scope Requested, or Both.**

Plaintiffs have served a number of discovery requests for which BHN has agreed to produce documents for only an improperly limited time period, or for which BHN has improperly limited the scope of its response.  Generally speaking, Plaintiffs' requests specified that "the relevant time frame for these Requests is January 1, 2010 through May 17, 2016." Sahni Decl., Ex. A, Instruction No. 8.  In some cases, Plaintiffs requested certain documents for a different time period.  BHN unilaterally limited its responses to most requests to what it defined as the "Discovery Period," that is, March 1, 2012 through May 17, 2016.  During meet-and-confer discussions, BHN suggested it might be willing to provide information from prior years, stringing Plaintiffs along for weeks.  *Id.* ¶ 11.  But BHN later confirmed its refusal to produce *any* documents or information from before 2012.  *Id.*, Ex. K.

This Court has recognized that "[t]he relevant time frame" for a discovery request "depends upon the information being sought." *Miner, Ltd. v. Keck*, 2019 WL 2869063, at *2 (M.D. Fla. July 3, 2019).[2]  Here, as discussed below, evidence from before the claim period is necessary to inform Plaintiffs' claims based on infringement occurring during the claim period.

As to scope, Plaintiffs requested BHN produce various information and documents related to subscribers that are the subject of infringement notices relating to Plaintiffs' works,

---

[2]    For example, in a class action arising from unsolicited sales phone calls, the relevant time period for discovery was not limited to the dates of the calls themselves, as defendant claimed, but rather took in the entire four-year statute of limitations period leading up to the complaint, because events from the longer period could determine some elements of the class claims.  *Mey v. Enter. Fin. Grp., Inc.*, 2016 WL 9110357, at *3 (M.D. Fla. July 27, 2016); *see also Soto v. Genentech, Inc.*, 2008 WL 4621832, at *8 (S.D. Fla. Oct. 17, 2008) (in employment discrimination case, discovery could include two year period prior to plaintiff's hiring); *TIC Park Centre 9, LLC v. Cabot*, 2017 WL 3034547, at *1, 6 (S.D. Fla. July 18, 2017) (in lease fraud case, discovery period took in three years prior to the fraudulent lease).

regardless of who sent such notices.  That is because Plaintiffs allege BHN "failed to terminate or otherwise take meaningful action against the accounts of repeat infringers of which it was aware."  Complaint ¶ 3.  That means that *all* notices related to any accused subscriber are relevant, regardless of whether Plaintiffs sent all or only some of those notices.  *See* Order, *BMG Rights Mgmt. v. Cox Enterprises, Inc.*, No. 14-cv-1611, Dkt. 1018 (E.D. Va. Aug. 21, 2018) (Sahni Decl., Ex. N) (finding communications related to analogous notices sent before claim period, unrelated to works in suit, were admissible at trial as evidence of system for addressing infringement).  In fact, earlier this week, the *Cox* court permitted plaintiffs in that case to introduce evidence *at trial* on third-party notices, holding that "[c]umulative notices of infringement—particularly those targeted at the same subscribers receiving notices from Plaintiffs—are relevant" and admissible.  Order, *Sony Music Ent. v. Cox Commc'ns, Inc.*, No. 1:18-cv-950, Dkt. 590 (E.D. Va. Nov. 19, 2019) (Sahni Decl., Ex. O) ("*Cox* Order").

To illustrate, if a given subscriber was the subject of multiple infringement notices sent by a third-party, then later was the subject of one or more infringement notices by Plaintiffs, the initial notices sent by the third-party would be highly relevant to the issue of whether BHN had knowledge of specific acts of infringement by that repeat infringer, and chose to do nothing to stop the repeat infringement, thereby materially contributing to it.  *See Venus*, 2017 WL 2901695, at *23–24; *Michael Grecco Prods., Inc. v. RGB Ventures, LLC*, 2017 WL 4077045, at *8 (M.D. Fla. 2017).  The requested information is also relevant to rebutting potential defenses BHN may assert.  *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 303–05 (4th Cir. 2018) (finding no DMCA safe harbor because ISP did not consistently or meaningfully implement its repeat infringer policy); *see also In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 659 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003) (finding that ISP fails

to reasonably implement repeat infringer policy for safe harbor when ISP fails to meaningfully

enforce the terms of such policy).  Although BHN originally seemed open to providing

information related to *all* notices sent to subscribers identified in Plaintiffs' notices, BHN has

now backpedaled on this and refuses to commit to this production.  *See* Sahni Decl. ¶ 11.

###### A.     Plaintiffs' RFP No. 8

**REQUEST NO. 8:**   Without regard to the time limitation set forth in Paragraph 8 of the Instructions above, all documents concerning any copyright or infringement policy applicable to Subscribers or Users, including but not limited to any draft or final versions of such policies; the effects of such policies; documents sufficient to identify the employees or agents with responsibility for developing, conceiving, drafting and/or implementing such policies; documents sufficient to show when you first adopted such policies and the date of any changes to such policies; and documents sufficient to show how and when such policies were communicated to third parties, including but not limited to Subscribers or Users. This request includes but is not limited to any DMCA Policy, Repeat Infringer Policy, and/or Acceptable Use Policy.

**OBJECTIONS:**   Bright House objects that this request is overbroad, unduly burdensome, and seeks information that is outside the scope of permissible discovery because it is not relevant to any party's claim or defense, including because it seeks drafts of documents, and documents with no temporal limited. Bright House further objects that this request is vague and ambiguous, compound, and confusing, including because it seeks "all documents" that are "sufficient" to show or identify broad topics and because of its use of the undefined phrase "effects of such policies." Bright House will interpret this request as seeking documents sufficient to show or identify the requested information. Bright House further objects to this request to the extent it improperly seeks information protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable privilege or doctrine. Bright House also objects to this request to the extent it seeks information that is not in Bright House's possession, custody, or control, that is publicly available, or that is equally available to Plaintiffs. Bright House further objects to this request to the extent that it is duplicative of other discovery requests that Plaintiffs have propounded.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order Bright House will produce responsive, non-privileged documents concerning Bright House's policies relating to copyright infringement that were in effect during the Discovery Period, to the extent Bright House finds such documents within its possession, custody, or control after undertaking a reasonable and diligent search.

This request seeks documents concerning BHN's copyright infringement policies without

time limitation.  Although Plaintiffs only claim against BHN for infringements occurring in

2013–2016, BHN's policies related to infringement are relevant to show, *inter alia*, the degree to

which BHN knew of infringement by its subscribers before that point and what it did to enable it.

*See Disney II*, 2013 WL 6336286, at *9–11 (evidence of defendant's inconsistent enforcement of its infringement policy relevant to infringement claims).  Indeed, changes to BHN's policies over time would be highly probative of BHN's knowledge and motivations concerning infringement by its subscribers.  *Id.*  For example, if BHN began imposing less stringent policies for policing copyright infringement in 2011, prior to the claim period, that could help show that BHN's policies were not reasonable; conversely, if BHN implemented stricter policies late in the claim period, that would support an inference that BHN knew its prior policies had been inadequate.

In lieu of moving to compel all documents responsive to this Request, Plaintiffs ask the Court to compel the production of documents consistent with a compromise proposal Plaintiffs made to BHN by letter dated October 16: that BHN produce *final* copyright or infringement policies, including its DMCA Policies, Repeat Infringer Policies, and/or Acceptable Use Policies, without limitation as to time; but with respect to other documents responsive to this request (*e.g.*, drafts and other related documents or emails), BHN need only produce for a more limited timeframe of January 1, 2010 through May 17, 2016.  *See* Sahni Decl., Ex. I.

### B.  Plaintiffs' RFP No. 2

**REQUEST NO. 2:** Logs of all Infringement Notices[3] sent to you by any person or entity, sufficient to show, as to each such Infringement Notice, the Subscriber ID, ticket number, date and time of alleged infringement as set forth in the Infringement Notice, IP address, each action taken or determined to not be taken with respect to such Infringement Notice, and the date and time of each such action or determination.

**OBJECTIONS:** Bright House objects as this request is overbroad, unduly burdensome, and seeks information that is outside the scope of permissible discovery because it is not relevant to any party's claim or defense, including because it seeks documents concerning works and parties not at issue in this litigation, to the extent it seeks documents not kept in the ordinary course of

---

[3]      As defined in Plaintiffs' requests and used herein, "Infringement Notice" means "a notice that one or more of Bright House's Subscribers or Users allegedly infringed a copyright. This includes notices sent on behalf of any copyright owner, regardless of whether or not Bright House's processed or retained the notice. This term includes but is not limited to a notification of claimed copyright infringement pursuant to the DMCA, 17 U.S.C. § 512."  Sahni Decl., Ex. A, Definition No. 9.

business, and to the extent it requires Bright House to speculate as to the existence and ownership of unidentified copyrights. Specifically, Bright House objects to the undefined term "logs" and phrase "each action taken or determined not to be taken" as vague and ambiguous. Bright House further objects to this request to the extent it improperly seeks information protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable privilege or doctrine. Bright House also objects to this request to the extent it seeks information that is not in Bright House's possession, custody, or control, that is publicly available, or that is equally available to Plaintiffs. Bright House further objects to this request to the extent that it is duplicative of other discovery requests that Plaintiffs have propounded. Bright House also objects to this request to the extent it purports to require Bright House to disclose information that infringes on any individual's right of privacy, whether protected under the United States or any state constitution, or federal or state statute, regulation, or common law, or otherwise.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Bright House will produce responsive, non-privileged documents concerning notices of claimed infringement of Plaintiffs' works in suit that were sent on Plaintiffs' behalf during the Discovery Period, to the extent Bright House finds such documents within its possession, custody, or control after undertaking a reasonable and diligent search. Bright House will not produce personally identifiable information, other than the IP address, for any person absent a subpoena, Court order, or other form of due process that affords any affected individual notice and an opportunity to challenge the disclosure of such information.

This request seeks logs of all Infringement Notices received by BHN for the time period of January 1, 2010 through May 17, 2016, which Plaintiffs intend to use as evidence of the infringement occurring on BHN's network, and BHN's knowledge thereof.  In addition to refusing to produce documents from before 2012, BHN has also refused to produce information on subscribers identified in Infringement Notices not sent by Plaintiffs.

Although Plaintiffs requested—and believe they are entitled to—all Infringement Notices sent to BHN during this time period as evidence of the overall infringement occurring on BHN's platforms, as a compromise, Plaintiffs are willing to limit the scope of BHN's production to the full infringement data history for those subscribers identified in Plaintiffs' infringement notices, without limitation as to the complainant.  Plaintiffs offered this compromise to BHN during the meet-and-confer process and understood BHN to accept it during their call on October 24, 2019. Sahni Decl. ¶ 11.  Per BHN's October 30 email, BHN now appears to have backtracked on this position without explanation, and also appears unwilling to commit to a position on this request

until after Plaintiffs produce their infringement notices.  *Id.*, Ex. K.  BHN's attempt to condition

its response on Plaintiffs' own production is plainly improper.  *See Mayfair House Ass'n, Inc. v.*

*QBE Ins. Corp.*, 2010 WL 11505162, at *2 (S.D. Fla. Apr. 23, 2010) ("The Federal Rules do not

permit one party to condition its participation in discovery on his or her opponent's

compliance.").  In any event, Plaintiffs recently produced copies of the Infringement Notices to

BHN.  Sahni Decl. ¶ 18.

Discovery of Infringement Notices relating to all subscribers who were the subject of

Plaintiffs' Infringement Notices, regardless of the complainant, is critical evidence.  *See Ex. O,*

*Cox* Order at 2 ("[c]umulative notices of infringement—particularly those targeted at the same

subscribers receiving notices from Plaintiffs—are relevant").  Among other reasons, this

evidence demonstrates BHN had knowledge of specific acts of infringement occurring on its

network by repeat infringers, and illuminates what steps, if any, BHN took against repeat

infringers to curb their infringement activities.  *See Perfect 10, Inc. v. Amazon.com. Inc.*, 508

F.3d 1146, 1172 (9th Cir. 2007); *Venus*, 2017 WL 2901695, at *23–24.  Regarding timeframe,

Plaintiffs seek infringement data for January 1, 2010 through May 17, 2016.  Limiting the

timeframe to March 1, 2012, as BHN attempts to do, would preclude Plaintiffs from identifying

important historical trends regarding the magnitude of infringement on BHN's service over time.

It would also provide an incomplete picture of specific instances of infringement of which BHN

may have been aware.  *See Mey*, 2016 WL 9110357, at *3 (expanding timeframe to assist with

determination of some claims).  For example, if BHN received notice that a given subscriber

committed five acts of infringement during the period 2012-2016, that would represent

meaningful evidence that BHN knew of that subscriber's repeat infringements and did nothing.

However, Infringement Notices identifying that subscriber during the period of 2010-2012 would

also be highly relevant—if that same subscriber was previously identified in 10 more

infringement notices, BHN's failure to take action becomes more egregious.

Given that BHN is a sophisticated entity that presumably maintains infringement notices

in an automated or searchable database, producing these notices back to 2010 will not materially

increase the burden of production.  BHN has not once claimed otherwise throughout the parties'

meet-and-confer process.  Accordingly, the Court should compel BHN to produce documents

responsive to this request dating back to 2010.

### C. Plaintiffs' RFP No. 4

**REQUEST NO. 4** All communications concerning alleged copyright infringement by your Subscribers or Users or through your internet service, including but not limited to all communications regarding Infringement Notices.

**OBJECTIONS:** Bright House objects that this request is overbroad, unduly burdensome, and seeks information that is outside the scope of permissible discovery because it is not relevant to any party's claim or defense, demands "all documents" concerning a general subject, and to the extent it seeks documents not kept in the ordinary course of business. Bright House further objects to this request to the extent it improperly seeks information protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable privilege or doctrine. Bright House also objects to this request to the extent it seeks information that is not in Bright House's possession, custody, or control, that is publicly available, or that is equally available to Plaintiffs and to the extent that it is duplicative of other discovery requests that Plaintiffs have propounded. Bright House further objects to this request to the extent it purports to require Bright House to disclose information that infringes on any individual's right of privacy, whether protected under the United States or any state constitution, or federal or state statute, regulation, or common law, or otherwise.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order, Bright House will produce responsive, non-privileged documents concerning notices of claimed infringement of Plaintiffs' works in suit that were sent on Plaintiffs' behalf during the Discovery Period, to the extent Bright House finds such documents within its possession, custody, or control after undertaking a reasonable and diligent search. Bright House will not produce personally identifiable information, other than the IP address, for any person absent a subpoena, Court order, or other form of due process that affords any affected individual notice and an opportunity to challenge the disclosure of such information.

This request corresponds with Plaintiffs' RFP No. 2, and the issues are largely the same.

This request seeks communications concerning alleged copyright infringement by BHN's users,

including communications about Infringement Notices, for January 1, 2010 through May 17,

2016.  In addition to refusing to produce documents from before 2012, BHN has also refused to produce communications related to Infringement Notices not sent by Plaintiffs.

As a compromise, Plaintiffs are willing to limit the scope of BHN's production to communications relating to Infringement Notices pertaining to those subscribers who have been identified in Plaintiffs' infringement notices, without limitation as to the complainant.  Plaintiffs offered this compromise to BHN and understood BHN to accept it during their call on October 24, 2019.  Sahni Decl. ¶ 11.  BHN now appears to have backtracked on this position without explanation, and also appears unwilling to commit to a position on this request until after Plaintiffs produce their infringement notices (which has now occurred).  *Id.*, Ex. K.  BHN's attempt to condition its response on Plaintiffs' production is improper.  *See Mayfair*, 2010 WL 11505162, at *2.  Discovery of communications about infringement notices relating to all subscribers who were the subject of Plaintiffs' infringement notices, regardless of who sent the Infringement Notices, is critical evidence for Plaintiffs' claims and defenses BHN may try to raise.  *Inter alia*, this evidence will demonstrate that BHN had knowledge of specific acts of infringement occurring on its network by repeat infringers and will show what action, if any, BHN took against such repeat infringers to curb their infringement activity.  *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 655–58 (E.D. Va. 2015), *aff'd in part*, *rev'd in part*, 881 F.3d 293 (4th Cir. 2018) (considering internal communications demonstrating willful circumvention of meaningful enforcement of repeat infringer policy).

Similarly, limiting the timeframe for this Request to begin in 2012, as BHN attempts to do, would create a limited picture of the specific acts of infringement occurring on BHN's network about which it was aware.  Communications from prior to the claim period could provide highly probative evidence of BHN's knowledge or willful blindness, and its lax

enforcement of its copyright infringement policies.  *See id.* at 656, 659 (relying on evidence related to infringement, including communications, from three years before the claim period). As an illustrative example, suppose BHN is in possession of communications to a specific subscriber regarding 10 infringement notices BHN received about that subscriber from third parties in 2010, and those communications show BHN elected not to terminate that subscriber's service.  Suppose BHN later received several additional Infringement Notices from Plaintiffs about that same subscriber during the claim period.  The earlier emails would be highly probative of BHN's actions in materially facilitating that user's infringement activities.  But if BHN is permitted to withhold communications from prior to the claim period about Infringement Notices not sent by Plaintiffs, the communications about those prior instances would be unknown—and BHN would be able to effectively conceal its failure to take reasonable steps against a repeat infringer.  This critical evidence should not be withheld.  Plaintiffs thus ask the Court to compel BHN to produce communications about Infringement Notices pertaining to those subscribers identified in Plaintiffs' Infringement Notices, without limitation as to the complainant, for January 1, 2010 through May 17, 2016.

### D.  Plaintiffs' RFP No. 15

**REQUEST NO. 15:** Documents sufficient to show, by month, the Subscriber ID of each Subscriber against whom you have taken any action or implemented any measures in response to an Infringement Notice, including but not limited to suspension or termination.

**OBJECTIONS:** Bright House objects that this request is overbroad, unduly burdensome, and seeks information that is outside the scope of permissible discovery because it is not relevant to any party's claim or defense, including because it seeks documents concerning works and parties not at issue in this litigation, and to the extent it seeks documents not kept in the ordinary course of business. Specifically, Bright House objects to the undefined phrases "taken any action" and "implemented any measures" as vague and ambiguous. Bright House further objects to this request to the extent it improperly seeks information protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable privilege or doctrine. Bright House also objects to this request to the extent it seeks information that is not in Bright House's possession, custody, or control, that is publicly available, or that is equally available to Plaintiffs. Bright House further objects to this request to the extent that it is duplicative of other discovery requests that Plaintiffs have propounded. Bright House also objects to this

request to the extent it purports to require Bright House to disclose information that infringes on any individual's right of privacy, whether protected under the United States or any state constitution, or federal or state statute, regulation, or common law, or otherwise.

Subject to and without waiving the foregoing objections, upon entry of an appropriate protective order Bright House will produce responsive, non-privileged documents forth in its response to Plaintiffs' RFP No. 2.

This request corresponds with Plaintiffs' RFP Nos. 2 and 4.  Plaintiffs seek documents sufficient to show all actions taken by BHN to limit, suspend, or terminate the service of subscribers identified in Infringement Notices, for the period of 2010 to 2016.  This is necessary to provide Plaintiffs with a full historical picture of infringement—and BHN's responses thereto—for all of the subscribers who were subject to an Infringement Notice sent by Plaintiffs.

BHN refuses to produce documents from before 2012 and to produce documents connected to Infringement Notices not sent by Plaintiffs.  As above, Plaintiffs are willing to limit the scope of BHN's production to the full infringement and response history for only those subscribers who have been identified in Infringement Notices, without limitation as to the complainant.  As discussed above, Plaintiffs offered this compromise to BHN during the meet-and-confer process and BHN appeared to accept before backtracking, and attempting to improperly condition its response on Plaintiffs' own production of infringement notices.

Discovery of BHN's actions to limit, suspend, or terminate subscribers in response to Infringement Notices, regardless of who sent those Notices, is critical evidence for Plaintiffs' claims and defenses BHN may try to raise.  Among other reasons, this evidence will demonstrate that BHN had knowledge of specific acts of infringement occurring on its network by repeat infringers and will demonstrate what actions, if any, BHN took against such repeat infringers to curb their infringement activity.  To illustrate, if BHN received numerous Infringement Notices from third parties about a given subscriber, and did nothing each time, that evidence is relevant to Plaintiffs' claims based on the Infringement Notices Plaintiffs later sent to BHN about that

same subscriber.  *See Venus*, 2017 WL 2901695, at *23; *Perfect 10*, 508 F.3d at 1172.

The same issues apply to timeframe.  Plaintiffs seek records of the actions taken by BHN in response to Infringement Notices for January 1, 2010 through May 17, 2016.  If BHN received 15 Infringement Notices from third parties about a given subscriber in 2010, under BHN's proposed limitation, records of BHN's actions in response would not be produced.  Only later Infringement Notices sent to BHN by Plaintiffs, about that subscriber during the claim period, would be produced.  But the prior acts of infringement and actions taken thereon are highly relevant to the later acts, as they demonstrate BHN's knowing failure to curtail a repeat infringer. This critical evidence should not be withheld.

Plaintiffs understand responsive data is likely stored in automated databases, so there is no meaningful increase in the burden in producing for the full timeframe Plaintiffs request.  BHN has never claimed otherwise throughout multiple meet-and-confer discussions.  Plaintiffs thus ask the Court to compel BHN to produce documents sufficient to show all actions taken by BHN to limit, suspend, or terminate the service of subscribers, by Subscriber ID, that were identified in Infringement Notices for the period of January 1, 2010 to May 17, 2016.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court issue an order compelling BHN to produce the categories of information and documents discussed herein.

## LOCAL RULE 3.01(G) CERTIFICATION

Plaintiffs' counsel conferred with BHN's counsel on multiple occasions prior to the bringing of this motion, including extensive correspondence, an in-person meeting on September 9, 2019, a teleconference on October 24, 2019, and further written communications thereafter. The parties have not been able to resolve the issues in this Motion.

Dated: November 22, 2019

Respectfully submitted,

/s/ *Mitchell A. Kamin*
Mitchell A. Kamin (*pro hac vice*)
Neema T. Sahni (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Jonathan M. Sperling (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Matthew J. Oppenheim (*pro hac vice*)
Scott A. Zebrak (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry M. Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

David C. Banker, Esquire
Florida Bar No. 0352977
Bryan D. Hull, Esquire
Florida Bar No. 020969
BUSH ROSS, P.A.
1801 North Highland Avenue
P.O. Box 3913
Tampa, FL 33601-3913
Telephone: (813) 224-9255
dbanker@bushross.com
bhull@bushross.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2019, I caused the foregoing document and all accompanying materials to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

Dated: November 22, 2019

 /s/ *Mitchell A. Kamin*
Mitchell A. Kamin

*Attorney for Plaintiffs*