**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

UMG RECORDINGS, INC., *et al.*,

      Plaintiffs,

v.

BRIGHT HOUSE NETWORKS, LLC,

      Defendant.

Case No. 8:19-cv-710-MSS-TGW

## DEFENDANT BRIGHT HOUSE NETWORKS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY

## I.      INTRODUCTION

Plaintiffs filed this action against Defendant Bright House Networks, LLC ("BHN") claiming secondary liability for copyright infringement based on allegations that users accessed the internet through BHN to infringe more than 7,500 musical compositions and recordings that Plaintiffs claim to own (the "works-in-suit").  Despite Plaintiffs seeking upwards of a billion dollars in statutory damages, they have stonewalled even basic categories of discovery.  BHN now seeks to compel the production of certain documents:

- Documents necessary for BHN to conduct a meaningful investigation into Plaintiffs' alleged ownership of the works-in-suit, including copyright registrations, chain of title documentation, work-for-hire agreements and information regarding ownership disputes with third parties—routine and key discovery in copyright infringement cases that allow a defendant the opportunity to rebut the presumption of ownership afforded by a valid copyright registration;

- agreements Plaintiffs have entered for streaming and downloading the works-in-suit and other financial data relevant to assessing the value of the works-in-suit, which are highly relevant to BHN's investigation into any damages, and will help to inform any jury tasked with attempting to ascribe a "just" value to the works-in-suit—a jury's charge when deciding damages in a copyright case; and

- five "implementation agreements" and other specific documents regarding the Copyright Alert System ("CAS"), an inter-industry agreement signed by Plaintiffs during the relevant time period that sets forth what Plaintiffs understood to be a reasonable response to notices of copyright infringement by five major ISPs.

BHN also requests that the Court impose a deadline for Plaintiffs to produce what they have already agreed to produce—digital copies of each of the works-in-suit—given that, despite repeated requests, Plaintiffs have refused to provide even a rough estimate for when BHN could expect to receive them.

## II.     PROCEDURAL HISTORY

BHN served its first requests for production ("RFP") on June 25, 2019, to which Plaintiffs responded on July 25, 2019.  Ranahan Decl., Exs. 1, 2.  On August 27, 2019, BHN's counsel sent Plaintiffs' counsel a letter regarding deficiencies in the responses, and the parties met and conferred on September 19 and October 22, 2019 to attempt to resolve the discovery issues.  *Id.* at ¶¶ 5-7.  After the parties reached an impasse on certain issues, BHN filed a motion to compel on October 23, 2019 (Dkt. 63) (the "initial motion").

Shortly after BHN filed the initial motion, Plaintiffs agreed to produce digital copies of all works-in-suit.  Ranahan Decl., Ex. 4.  To date, however, Plaintiffs' counsel has refused

to say when they will do so, even though the RFPs were served more than five months ago. Ranahan Decl., ¶ 7 and Exs. 1, 5, 6.

Before Plaintiffs opposed the initial motion, Judge Wilson issued an Order denying it without prejudice on procedural grounds given that BHN grouped argument by category instead of after each individual RFP.  The Order also noted that RFPs for all documents "concerning" or "reflecting" a subject matter may be overbroad and/or vague. (Dkt. 66.). BHN subsequently agreed to narrow the RFPs in that category, but Plaintiffs nonetheless stood on their objections.  Ranahan Decl., Exs. 7, 8.  While this Motion addresses certain of the same RFPs raised in the initial motion, BHN has reduced the number and narrowed the substance of the RFPs at issue and organized the argument pursuant to the Order.  *Id.*

## III.    LEGAL STANDARD

Parties may seek discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…."  Fed. R. Civ. P. 26(b)(1).  The Federal Rules "strongly favor full discovery whenever possible." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No: 6:15–cv–1698–Orl–37GJK, 2017 WL 8948379, at *1 (M.D. Fla. Jan. 5, 2017).  The Supreme Court has construed relevancy broadly, noting that discovery may "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  When objecting to a discovery request, the "[p]arties are not permitted to assert...conclusory, boilerplate objections." *Martin v. Zale Delaware, Inc.*, No. 8:08-CV-47-T-27EAJ, 2008 WL 5255555, at *1 (M.D. Fla. Dec. 15, 2008).  After the party seeking to compel discharges its "initial burden of proving that the information sought is

relevant," the burden shifts to the party resisting the motion to compel to show that its

objections are valid. *Johnson*, 2017 WL 8948379, at \*1–2; *Benavides v. Velocity IQ, Inc.*,

No. 8:05-CV-1536-T-30, 2006 WL 680656, at \*2 (M.D. Fla. Mar. 15, 2006).

## IV.   LEGAL ARGUMENT

### A.  Ownership Documentation

#### i.  RFP 5

**Original RFP 5:** All documents concerning ownership of or claims of right in the Copyright Works, including those evidencing, referring, or relating to the chain of title for the Copyright Works or those pertaining to disputes related to any time, of the Copyright Works.

***Narrowed RFP 5:*** *Documents sufficient to show Plaintiffs' ownership of each of the Copyright Works, including certificates of registration issued by the Copyright Office, work-for-hire agreements, chain of title documents, and documents sufficient to reflect disputes regarding ownership of the Copyright Works, such as cease and desist correspondence with third parties.* Ranahan Decl., Ex. 7.

**Objections:** This request's call for "all documents" is overly broad, unduly burdensome, and not proportional to the needs of the case, including in that it seeks "[a]ll documents ..evidencing, referring, or relating to" chain of title. Moreover, the request's call for documents "concerning ownership of or claims of right" in the copyrighted works is vague and ambiguous. This request improperly asks Plaintiffs to make a legal conclusion and produce all supporting documents, rather than adequately identifying a specific category of documents for which Plaintiffs should search the records kept in the ordinary course of their businesses.  Plaintiffs interpret the request to seek documents and/or materials sufficient to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective works-in-suit. With respect to documents relating to the chain of title, Plaintiffs object because the request also seeks information as to all copyrighted works-in-suit, rather than only those copyrighted works, if any, for which such information may be necessary or relevant to the issues in the case. Additionally, Plaintiffs object to the term "chain of title" as vague and ambiguous to the extent it calls for a legal conclusion. Plaintiffs interpret this part of the request to seek documents sufficient to demonstrate that Plaintiffs own or control the copyrighted works-in-suit.  With respect to documents pertaining to disputes, Plaintiffs object to this request's call for "all documents" during "any time" frame as overbroad, unduly burdensome, and disproportionate to the needs of the case. Additionally, the request for documents concerning "disputes" is vague and ambiguous. Plaintiffs therefore interpret this part of the request as seeking documents concerning a litigation or demand letter challenging ownership of a copyrighted work in suit. Plaintiffs further object to this part of the request as irrelevant in seeking "[a]ll documents . . . pertaining to disputes" regardless of the nature or outcome of such disputes. Plaintiffs also

object to this part of the request insofar as it seeks information protected by the attorney-client privilege, attorney work-product doctrine, or other privilege or immunity recognized by law. Such information shall not be produced in response to any of Bright House's requests, and any inadvertent production shall not be deemed to waive any privilege with respect to such information.

**Response:** Subject to the foregoing objections, Plaintiffs will produce for each of the copyrighted works-in-suit either a certificate of copyright registration or, if a certificate is not readily accessible, a look-up page evidencing registration printed from the U.S. Copyright Office's website. Alternatively, for some older copyrighted works, Plaintiffs will produce a copy of the Copyright Office's card-catalogue entry evidencing registration. Upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works-in-suit, to the extent such documents can be located following a reasonable and diligent search. Plaintiffs are otherwise withholding responsive documents on the basis of their objections, to the extent such documents exist.

**Argument:** Plaintiffs have the burden to prove ownership. *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Twin Peaks Prods., Inc. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993).  As only an exclusive owner has standing to sue for copyright infringement, discovery into ownership is critical. *Id.*  Though the production of valid copyright registrations, in the plaintiffs' name, provides *prima facie* evidence creating a presumption of ownership, a defendant is entitled to discovery to rebut that presumption. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 649–50 (E.D. Va. 2015) ("*BMG*"), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018); *see Big E. Entm't, Inc. v. Zomba Enter., Inc.*, 453 F. Supp. 2d 788, 800 (S.D.N.Y. 2006) (dismissing copyright infringement claim where plaintiff "failed to show undisputed evidence of its copyright ownership").

The fact that record companies like Plaintiffs assert ownership of the works-in-suit does not mean they always properly secure such rights.  *See, e.g.*, *BMG* at 649–50 (denying infringement claims on summary judgment because claimant on copyright registration was

not co-owner or exclusive licensee).  Indeed, copyright cases are often streamlined after the plaintiffs are ordered to produce ownership discovery.  In case after case, when record industry plaintiffs in copyright cases are required to search for, collect, and produce complete chain of title and related documentations to establish ownership, they often voluntarily withdraw a substantial number of works. *See, e.g.*, *UMG Recordings, Inc. v. Veoh*, No. 09-55902 (9th Cir. 2011) (Dkt. 73); Ranahan Decl. ¶ 10.  Indeed, these same Plaintiffs amended their complaint in the *Cox* action to drop hundreds of works after being ordered to produce chain of title documentation.  *Compare* Ranahan Decl., Ex. 11 *with* Ranahan Decl., Ex. 12.  Similarly, in *UMG Recordings, Inc. v. MP3.com, Inc.*, the defendant successfully challenged more than half of the 4,700 copyrights claimed by UMG, thereby reducing potential liability by $65,000,000.  *Compare* No. 00 Civ. 472, 2000 WL 1262568, at *6 (S.D.N.Y. Sept. 6, 2000) (noting at least 4,700 copyrights claimed and setting statutory damages at $25,000 per work) *with* 2000 U.S. Dist. LEXIS 17907 at *1 (S.D.N.Y. Nov. 14, 2000) (awarding damages for only 2,136 works).  Because each individual work carries a separate statutory damages award of up to $150,000, this voluntary reduction by Plaintiffs of works-in-suit is significant.  BHN is entitled to discovery regarding chain of title and ownership in order to test the validity of Plaintiffs' assertions of ownership—a basic prerequisite to Plaintiffs' claims.

BHN specifically seeks for each of the works-in-suit the following documents that are directly relevant to Plaintiffs' alleged ownership: (1) certificates of registration; (2) chain of title documentation demonstrating that Plaintiffs on the certificates of registration have been lawfully assigned the works-in-suit during the relevant time period; (3) work-for-hire agreements; and (4) documents sufficient to reflect any ownership disputes with third

parties regarding the works-in-suit.  Plaintiffs have refused to produce these documents, standing on their prior objections and only agreeing to produce some subset of the registrations for the works-in-suit.  Ranahan Decl., ¶ 10 and Ex. 2.  As explained below, these four categories of documents are narrowly tailored to permit BHN to asses Plaintiffs' alleged ownership.

    ***Copyright Certificates:*** A copyright certificate may establish *prima facie* evidence of the validity of a copyright, though the presumption is rebuttable, and does not definitively resolve whether ownership is valid.  *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532 (11th Cir. 1996); *See e.g., Big. E. Entm't, Inc.* at 788 (dismissing copyright infringement claim where plaintiff "failed to show undisputed evidence of its copyright ownership").

    Here, Plaintiffs have not even agreed to produce a copyright certificate for each work-in-suit to make a *prima facie* showing of ownership.  Instead, Plaintiffs have indicated that they will only produce registrations that are "readily accessible," and for the rest, Plaintiffs have only agreed to provide copies of "look up pages" from the Copyright Office website.  Ranahan Decl. Ex. 8, at p. 2. But "look up" pages do not and cannot substitute for valid copyright registrations—which are required for a *prima facie* case.  *Compare id*. at Ex. 13 *with* Ex. 14.  Plaintiffs can obtain any missing registrations (that exist) from the Copyright Office, and should be required to produce a registration certificate for each work-in-suit.

    ***Chain of Title:*** Plaintiffs refuse to provide chain of title documentation, ignoring that the presumption afforded by a valid copyright registration is rebuttable.  *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1100 (N.D. Cal. 2002) ("refusing to allow…discovery on the issue of ownership converts the presumption of ownership into an

irrefutable one."). In *Napster,* the court stated that it was "reticent" "to allow plaintiffs, merely because of the quantity of music they control, to railroad Napster into potentially billions of dollars in statutory damages without adequately proving ownership." *Id*. As that court noted, "without reviewing the agreements...it is impossible to determine" the plaintiffs' ownership, and thus the court ordered the plaintiffs to "produce all documentation relevant to their ownership of the works." *Id.*

Similarly, here, BHN must be able to analyze chain of title documentation, such as assignments, publishing agreements and other underlying documentation to show how Plaintiffs allegedly obtained ownership of the more than 7,500 works-in-suit. Otherwise it would be "impossible to determine" from the registration alone whether Plaintiffs own the works, as such rights had to originally be assigned to Plaintiffs by third parties. *Id; Moran v. London Records, Ltd.*, 642 F. Supp. 1023, 1025 (N.D. Ill. 1986), *aff'd*, 827 F.2d 180 (7th Cir. 1987) (where the plaintiff "was never part of the chain of title to the copyright" he lacked standing to sue for its infringement).

**_Work-for-Hire Agreements:_** Discovery into ownership is especially necessary for any works registered as works-for-hire pursuant to 17 U.S.C. § 101, because, in those instances, BHN is unable to assess Plaintiffs' claim of ownership from the copyright registrations alone. Under 17 U.S.C. § 101,[1] Plaintiffs must have a work-for-hire agreement that dates from **before** the work was created in order for such registrations to be valid. *See Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992) ("The writing

---

[1] A work-for-hire is a work created by an employee or specially commissioned, and a writing is required to create one. 17 U.S.C. § 101.

must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally"); *Gladwell Gov't Servs., Inc. v. Cty. of Marin*, 265 F. App'x 624, 626 (9th Cir. 2008) ("The plain language of the [Copyright Act] indicates that a work-for-hire agreement cannot apply to works that are already in existence."). BHN would have no way to test the validity of the alleged works-for-hire (likely claimed for most works-in-suit) without seeing the date and details contained in the underlying work-for-hire agreement (to the extent Plaintiffs actually secured one, which BHN is also entitled to know). Courts thus order work-for-hire agreements as part of ownership discovery. *See e.g.*, Ranahan Decl. Ex. 10; *Arista Records, LLC v. Myxer, Inc.* (granting motion to compel seeking "chain of title documents in plaintiffs' possession, custody or control, directly bearing on the...plaintiffs' ownership of the sound recordings [at issue], including work-for-hire agreements and assignment agreements."). This discovery is also particularly critical because Plaintiffs are not entitled to seek statutory damages unless they own valid registrations for the asserted works. 17 U.S.C. § 504.

*__Ownership Disputes:__* Clearly internal documents reflecting an ownership dispute with respect to the works-in-suit would be squarely relevant to Plaintiffs' claimed ownership. Plaintiffs' objection that BHN must first affirmatively identify challenges to be entitled to such discovery is circular and makes no sense, as BHN would have no way to know what works-in-suit are vulnerable to challenge if it is denied the right to investigate the challenges Plaintiffs are aware of, and are within Plaintiffs' exclusive control.

### ii. RFP 3

**Original RFP 3:** All documents concerning communications between You and the Copyright Office and all documents issued by the Copyright Office, regarding the Copyright Works, including, but not limited to, all applications to register the Copyright Works,

certificates of copyright registrations for each of the Copyright Works, supplemental registrations, renewals of registrations, recorded assignments, recorded transfers, and/or terminations of transfer.

***Narrowed RFP 3:*** *All communications with the Copyright Office that discuss the validity or challenges to Plaintiffs' ownership of the Copyright Wor*ks.  Ranahan Decl., Ex. 7.

**Objections:** Plaintiffs object to the request as overly broad and irrelevant because it seeks "all documents concerning communications [with] the Copyright Office." Communications, or other documents, about communications go far beyond the scope of information relevant to resolving the issues in the case and therefore present an undue burden. The request for documents issued by the Copyright Office is also overly broad, unduly burdensome, and irrelevant, including in that it seeks information as to all copyrighted works-in-suit, rather than only those copyrighted works for which such information is necessary or relevant to the issues in the case. Moreover, Plaintiffs object to the request insofar as it seeks documents and/or information equally and readily available to Bright House, including through publicly-available sources.

**Response:** Subject to the foregoing objections, Plaintiffs will produce for each of the copyrighted works-in-suit either a certificate of copyright registration or, if a certificate is not readily accessible, a look-up page evidencing registration printed from the U.S. Copyright Office's website. Alternatively, for some older copyrighted works, Plaintiffs will produce a copy of the Copyright Office's card-catalogue entry evidencing registration. Upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works-in-suit, to the extent such documents can be located following a reasonable and diligent search.

**Argument:** BHN specifically seeks communications with the Copyright Office concerning the validity of or challenges to Plaintiffs' claim of ownership of the copyrights.  Plaintiffs refuse to search for or produce documents responsive to this narrowed request.  Ranahan Decl., Ex. 7.  Communications and documents regarding disputes of ownership are relevant and discoverable for the reasons described above.  *See supra* RFP 5.  BHN does not have access to, and thus cannot identify or investigate, these communications without Plaintiffs producing them.  The Court should thus order Plaintiffs to produce these narrowed communications sought in response to RFP 3.

BHN is entitled to the full scope of discovery on ownership and validity for works-

in-suit, including copyright registrations, chain of title documentation, work-for-hire

agreements, and documents and communications reflecting disputes about ownership.

## B. Financial Documents Relating the Value of the Works-In-Suit

### i. RFP 8

**Original RFP 8:** All documents concerning any licenses, assignments, and/or grant or transfer of rights of the copyrights that You claim cover(ed) the Copyright Works for any of the last ten (10) years, including copies of agreements reflecting such licenses, assignments, and/or grant or transfer of rights.

*Narrowed RFP 8: All distribution and/or license agreements entered during the Claim Period or governing the Copyright Works during the Claim Period, including any agreement(s) pertaining to digital streaming and downloading with YouTube, Apple Music and iTunes, Amazon Unlimited, Prime Music, Pandora, Google Play, Vevo, Dailymotion, Qello, and/or Vimeo or any agreements providing for a tiered pricing structure based on the value of any Copyright Works during the Claim Period, and documents sufficient to identify all licensing fees and/or royalties for the Copyright Works during the Claim Period.* Ranahan Decl., Ex. 7.

**Objections:** Plaintiffs object to this request's call for "all documents concerning any licenses, assignments, and/or grant or transfer of rights" as overly broad, not proportional to the needs of the case, and therefore unduly burdensome. The request for "all documents" is in and of itself overly broad and not proportional to the needs of the case. In addition, the request seeks documents concerning any and all licenses, assignments, and/or grants or transfers of rights of the copyrighted works-in-suit, without regard to whether such assignments have any bearing on issues in this case, and Plaintiffs therefore object on relevance grounds, and on the grounds that the request is vague and ambiguous in its reach. Moreover, "grant or transfer of right" is vague and ambiguous. Plaintiffs also object to the part of this request pertaining to agreements as irrelevant. Bright House has no legitimate need for copies of all agreements reflecting licenses, agreements, and/or grants or transfers of rights of the copyrighted works. Plaintiffs' agreements contain extremely sensitive and confidential business and proprietary information. The very high potential for prejudice to Plaintiffs and nonparties significantly outweighs the marginal, if any, relevance such agreements could have to this case.

**Response:** Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works-in-suit, to the extent such documents can be located following a reasonable and diligent search.

**Argument:** To investigate the value of the works and in turn, assess any alleged or actual

damages, BHN seeks information regarding Plaintiffs' distribution and/or license

agreements with certain third parties that stream the works-in-suit, including YouTube, Vevo, and DailyMotion, as well as documents sufficient to identify the fees and/or royalties for the works-in-suit. BHN has also limited the scope of this RFP 8 to cover only the works-in-suit during the claim period enumerated in the tolling agreements between the parties, March 24, 2013 through May 17, 2016 (the "Claim Period"). Plaintiffs have refused to produce any documents in response to BHN's narrowed request. Ranahan Decl., Ex. 8.

Assuming *arguendo* that Plaintiffs prove ownership and infringement with respect to any of the works at issue, the information BHN seeks with its narrowed request is relevant to an appropriate assessment of Plaintiffs' damages and the value of the works-in-suit. This is true regardless of whether Plaintiffs choose to assert actual or statutory damages. Indeed, even if Plaintiffs elect statutory damages, while Plaintiffs would not have to *prove* damages, BHN is still entitled to make a case to the jury for the lower end of the available statutory damages, which can be as low as $750 or as high as $150,000 per work. 17 U.S.C. § 504(c)(1)-(2).

Plaintiffs may not preclude discovery into any actual damages unless seeking only the minimum statutory damages, because statutory damages "should bear some relation to actual damages suffered." *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 862 (S.D.N.Y. 1984). Otherwise Plaintiffs would obtain a "windfall," which is not the intent of statutory damages. *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008) (quoting *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568–69 (S.D.N.Y.1995)); s*ee also BMG v. Global Eagle Order;* Ranahan Decl., Ex. 16. (granting motion to compel the plaintiff to produce, in a mass copyright case like this one, licensing agreements, revenue information and value information relating to the work-in-suit); *Adams*

*v. Agrusa*, No. 2:15–cv–07270–SVW–RAO, 2016 WL 7665767 at *3 (C.D. Cal. July 20, 2016); *Religious Tech. Ctr. v. Netcom On-Line Comty. Servs.*, 923 F. Supp. 1231, 1241 (N.D. Cal. 1995).

Further, as the party resisting discovery, Plaintiffs bear the burden of "showing that the discovery fails the proportionality calculation mandated by Rule 26(b)." *See Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015). Plaintiffs would be unlikely to face any disproportionate burden in producing responsive documents here. Under common industry practice, Plaintiffs would not negotiate the sought-after agreements on a work-by-work basis.  Rather, Plaintiffs enter "umbrella" agreements with third parties pursuant to which Plaintiffs would agree to the streaming or downloading of the works-in-suit through the third party's platform in exchange for certain licensing fees or royalties. Some of these agreements would be expected to operate under a tiered pricing structure, which sets forth different payments per stream or download based on the value that Plaintiffs and the third parties have ascribed to the works.  This information is therefore highly relevant to the valuation of the works-in-suit, especially in the context of streaming and downloading (as is alleged here), which is critical to any expert analysis about damages.  As the volume of such materials should be relatively low, there is likely to be minimal burden in producing them.  Plaintiffs have identified no burden to date.  And in any event, any theoretical burden does not outweigh the importance of this discovery to BHN's assessment of damages and the value of the underlying works.  For all these reasons, Plaintiffs should be compelled to produce documents responsive to BHN's narrowed RFP No. 8.

## ii.  RFP 9

**Original RFP 9:** Documents that contain information in a readable and useable format (e.g., Microsoft Excel or Access) sufficient to demonstrate the revenue You generated from any assignments, licenses, and/or grant or transfer of rights of each Copyright Work for the last ten (10) years.

*Narrowed RFP 9: Documents sufficient to demonstrate revenues for each of the Copyright Works by work and by channel for physical, digital permanent downloads, streaming, and licensing for the years of 2012-2016.* Ranahan Decl., Ex. 7.

**Objections:** Plaintiffs object to this request because "revenue you generated from any assignments, licenses, and/or grant or transfer of rights" is vague and confusing. Plaintiffs also object because Plaintiffs' revenues from assignment are not relevant to liability or damages.  Plaintiffs also object to this request to the extent it seeks information beyond what is available to Plaintiffs at present from a reasonable and diligent search of documents in their possession, custody, or control, or imposes duties or obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure or the applicable rules and orders of this Court. In particular, Plaintiffs object to the request for revenue generated "from any assignments, licenses, and/or grant or transfer of rights of each Copyright Work for the last ten (10) years" as overly broad, unduly burdensome, and disproportionate to the needs of the case, as it appears to impose on Plaintiffs an obligation to create (and format) information not already in existence. To the extent Bright House seeks to require Plaintiffs to alter or re-format information kept in the ordinary course of business, Plaintiffs object because Bright House may not shift the burden and cost of its peculiar requirements onto Plaintiffs. Plaintiffs further object to the request's directive and cost of its peculiar requirements onto Plaintiffs. Plaintiffs further object to the request's directive for information "in a readable and useable format (e.g., Microsoft Excel or Access)" to the extent inconsistent with applicable law concerning the production of electronically stored information. Additionally, Plaintiffs object on the basis that the request for annual revenue over the last ten years from every assignment of every copyrighted work in suit is overly broad and not proportional to the needs of the case. Therefore, the burden and/or expense of the proposed discovery outweighs any likely benefit or potential relevance.

**Response:** Subject to the foregoing objections, upon entry of an appropriate protective order, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control sufficient to demonstrate Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2016.

**Argument:** Financial information about the works-in-suit also relates squarely to damages and value.  BHN seeks revenues for 2012-2016,[2] by work and by channel. Plaintiffs have refused to produce this information, and have agreed only to produce total annualized

---

[2] Pursuant to tolling agreements between the parties, Plaintiffs' Claim Period is March 24, 2013 to May 17, 2016. BHN has proposed a discovery period of March 1, 2012 to May 17, 2016.

revenues for the Plaintiff entities.  Ranahan Decl., Exs. 4, 8.  The *Cox* court found the same information sought by this narrowly-tailored request to be relevant and discoverable, and required these same Plaintiffs to produce revenues ***by work*** and by channel for physical, digital permanent downloads, streaming, and licensing revenue for the period of 2011-2014, the entirety of the claim period in the *Cox* litigation and years before.  Ranahan Decl., Ex. 17 (requiring Plaintiffs to produce revenue by work and by channel, physical downloads, streaming, and licensing data); Ranahan Decl., Ex. 16 (granting defendants' motion to compel financial information).

Significantly, about 82% of the works-in-suit are overlapping with *Cox*, and thus, Plaintiffs would need only update the records for the overlapping works-in-suit, and separately produce records for the subset of works that Plaintiffs have added in the present matter.  Ranahan Decl., ¶ 13.  While Plaintiffs claim that they "do not maintain records of profits, expenses, or revenue, organized by medium and by work as requested," the information sought in this request is largely the same information that was ordered by the *Cox* court to be produced, and Plaintiffs produced it there, so they already have it largely collected for most of the works-in-suit.  Here, the burden is even less, as the production need only be made available again with an update to account for the non-overlapping works and the time difference in the Claim Period.  Plaintiffs have articulated no valid objection for denying BHN this clearly discoverable information.  Plaintiffs have provided no estimate of any burden. And Plaintiffs admit the value of works at issue is directly relevant, and will require discovery, stating in their initial disclosures that "[a] more detailed computation of damages is premature…because a significant amount of information bearing on…damages—such as…the ***value of Plaintiffs' recordings and musical compositions at issue***…will otherwise be developed during the discovery process."  *Id*., ¶ 17, Ex. 15. Plaintiffs should be ordered to produce the information requested in narrowed RFP 9.

## C.  Documents Relevant to the Copyright Alert System ("CAS")

### i.  RFP 71

**Original RFP 71:** All documents concerning negotiations related to CAS.
*Narrowed RFP 71: All communications with ISPs during the negotiation of the CAS or the CAS MOU discussing whether the CAS should require termination by ISPs for alleged repeat infringers and/or any other expectation for ISPs responding to notices of alleged copyright infringement.*  Ranahan Decl., Ex. 7.

**Objections:** Plaintiffs object to this request because CAS is irrelevant. CAS was a private agreement in which BHN did not participate. It has no bearing on BHN's liability or damages for the claims alleged in this case. Plaintiffs object to this request insofar as its purpose is to obtain evidence relating to nonparties' conduct in order to excuse BHN's own malfeasance. Plaintiffs also object to this request as overly broad, unduly burdensome, and not proportional to the needs of the case, including in that it seeks "all documents" concerning broad subject matter—the Copyright Alert System—which BHN did not take part in. Moreover, the request seeks such documents irrespective of BHN, the copyrighted works-in-suit, or the relevant time period. As such, the request seeks information not remotely relevant to resolving the issues in the action, and the burden and/or expense of the proposed discovery far outweighs the likely benefit, if any. Plaintiffs object to this request insofar as it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the joint defense or common-interest privilege, as trial preparation materials, or under other privilege or immunity recognized by law. In addition, Plaintiffs object to the request because it is unreasonably cumulative and duplicative of Request No. 71.
**Response:** Pursuant to the foregoing objections, Plaintiffs respond that they will not produce documents responsive only to this request.

**Argument:** The CAS was an inter-industry agreement entered into by five major U.S. Internet Service Providers ("ISP") on the one hand, and major content owners, including many of the Plaintiffs to this litigation, on the other. The CAS and the CAS Memorandum of Understanding ("MOU") specifically address the ways in which ISPs like BHN should appropriately handle notices of alleged copyright infringement.[3]  The CAS was highly negotiated and reflects what Plaintiffs themselves considered to be reasonable and

---

[3] Plaintiffs agreed to produce the CAS MOU on October 30, 2019.  Ranahan Decl., ¶ 21.

acceptable during the relevant time period with respect to how ISPs like BHN handled and responded to copyright infringement notices. The CAS agreements also set forth how Plaintiffs expected ISPs to treat repeat infringers, and specifically do *not* require the terminations it demands of BHN through this lawsuit. *See supra*, n. 4. Plaintiffs refuse to provide any CAS discovery beyond the public MOU.

With the above request, BHN is not seeking all documents related to the negotiation of the CAS, but rather, only communications that address the central question of this litigation: what constitutes reasonable behavior for an ISP responding to alleged infringement. At the heart of this case are Plaintiffs' allegations that BHN—in providing high-speed internet access to the general public—failed to take reasonable steps to address alleged copyright infringement through its subscribers' accounts. *Regions Bank v. Lynch*, No. 2:08-cv-31-FtM-99SPC, 2008 WL 11334993 at *2 (M.D. Fla. Dec. 9, 2008) (overruling objections where requested information "goes directly to the heart of the [] claim."). Indeed, the Complaint is replete with assertions that BHN's failure to terminate its subscribers after receiving notices of infringement was "unreasonable" and constituted BHN's desire to turn a "blind eye" to alleged infringement. Dkt. 1 at ¶¶ 3, 4, 8, 9, 74, 81, 83, 86, 100. Plaintiffs have repeatedly alleged that BHN "became aware of particular customers engaging in specific, repeated acts of infringement," yet "failed to terminate or otherwise take meaningful action." These are precisely the actions Plaintiffs found acceptable as an industry solution through the CAS. Thus, the CAS—and discussions during negotiations regarding what constitutes reasonable responses by ISPs—is not only relevant to liability, but also to credibility and alleged willfulness that may further serve the jury in deciding what is just in terms of any damages.

The Court in the *Cox* litigation agreed that documents relating to the CAS were both relevant and ***admissible***, a higher threshold than the standard for discoverability under Fed. R. Civ. P. 26(b).  Indeed, on November 19, 2019, the court entered an Order denying the plaintiffs' motion *in limine* to exclude documents and information regarding the CAS, allowing evidence and testimony relating the CAS to be introduced at trial without restriction.  Ranahan Decl., Ex. 18. The documents should be at least discoverable in this case, and Plaintiffs have articulated no burden in producing them here.[4]

Although Plaintiffs insist that their claims do not rely on any industry standard, Rule 26(b)(1) permits discovery into the claims and defenses of ***any party,*** not just the plaintiffs. *Id*.  The CAS is relevant—and in fact, central—to this case because it reflects industry standards and practices during the asserted Claim Period that Plaintiffs themselves found reasonable.  In the event of a finding of liability, this state of mind evidence is critical to the Court's assessment of willfulness, alleged by Plaintiffs here, and in deciding an appropriate level of statutory damages. *See, e.g. Nunes v. Rushton*, No. 214CV00627JNPDBP, 2018 WL 2214593, at *1–2 (D. Utah May 14, 2018) (noting that a jury may consider "a number of factors" including "the conduct and attitude of the parties in relation to the infringement").  The Court should thus compel Plaintiffs to produce documents responsive to BNH's narrowed RFP 71.

### ii.  RFP 72

**Original RFP 72:** All documents concerning any Memorandum of Understanding

---

[4] Plaintiffs have argued that CAS discovery should not be allowed because the court in *BMG* excluded CAS information on a motion in limine.  But *unlike here* and in the pending *Cox* matter, *BMG **did not involve any of the plaintiffs that were parties to the CAS***.  And even there, the defendant was able to pursue discovery about the CAS.

concerning CAS, including without limitation the July 6, 2011 Memorandum of
Understanding (the "7/6/2011 MOU") to which the RIAA was a signatory (singly or
collectively, a "CAS MOU"), and any related document or agreement (such as the
Implementation Agreement You entered into pursuant to the 7/6/2011 MOU).

***Narrowed RFP 72:*** *All Implementation Agreements You entered into pursuant to the CAS
MOU.*  Ranahan Decl., Ex. 7.

**Objections:** Plaintiffs object to this request because CAS is irrelevant. CAS was a private
agreement in which BHN did not participate. It has no bearing on BHN's liability or
damages for the claims alleged in this case. Plaintiffs object to this request insofar as its
purpose is to obtain evidence relating to nonparties' conduct in order to excuse BHN's own
malfeasance. Plaintiffs also object to this request as overly broad, unduly burdensome, and
not proportional to the needs of the case, including in that it seeks "all documents"
concerning broad subject matter—the Copyright Alert System—which BHN did not take
part in. Moreover, the request seeks such documents irrespective of BHN, the copyrighted
works-in-suit, or the relevant time period. As such, the request seeks information not
remotely relevant to resolving the issues in the action, and the burden and/or expense of the
proposed discovery far outweighs the likely benefit, if any. Plaintiffs object to this request
insofar as it seeks information protected by the attorney-client privilege, the attorney work-
product doctrine, or the joint defense or common-interest privilege, as trial preparation
materials, or under other privilege or immunity recognized by law. In addition, Plaintiffs
object to the request because it is unreasonably cumulative and duplicative of Request
No. 72.

**Response:** Pursuant to the foregoing objections, Plaintiffs respond that they will not
produce documents responsive only to this request.

**Argument:** The Implementation Agreements sought by this Request are a handful of
agreements with each of the five major ISPs[5] that were signatories to the CAS that
"implement" the provisions of the CAS and CAS MOU, and therefore spell out the specifics
of what content owners (including Plaintiffs in this case that were signatories) believed were
reasonable and appropriate responses by ISPs to notices of copyright infringement, *the very
issue at the heart of this case*.[6]  Plaintiffs have refused to provide these agreements on
relevance grounds.  These are the very same documents that were ordered to be produced,

---

[5] These ISPs include Comcast, TimeWarner, CableVision, AT&T, and Verizon. *See*
https://info.publicintelligence.net/CCI-MOU.pdf.
[6] CAS MOU (7/6/11), https://info.publicintelligence net/CCI-MOU.pdf.

and were already produced, in the *Cox* litigation.  Ranahan Decl., Ex. 18.  They are from a limited time period and are of a narrow scope—and have already been gathered and produced in the prior *Cox* litigation to the same counsel that represents BHN here. Plaintiffs cannot articulate any reasonable reason why making this small set of narrowly-tailored documents available in this litigation would pose any burden whatsoever, let alone one to make them disproportionally relevant. Accordingly, BHN's motion to compel documents and information responsive to RFP 72 should be granted.

### iii.  RFP 76

**Original RFP 76:** All reviews, assessments, evaluations, reports, or the like, including drafts, concerning CAS, including without limitation any technological system utilized in connection with CAS.
***Narrowed RFP 76:*** *All reviews, assessments, evaluations, and/or analyses prepared or reviewed in connection with any technology system used in the CAS.* Ranahan Decl., Ex. 7.

**Objections:** Plaintiffs object to this request because CAS is irrelevant. CAS was a private agreement in which Bright House did not participate. It has no bearing on Bright House's liability or damages for the claims alleged in this case. Plaintiffs object to this request as overly broad, unduly burdensome, and not proportional to the needs of the case, including in that it seeks "all documents" concerning broad subject matter—the Copyright Alert System—which Bright House did not take part in. Moreover, the request seeks such documents irrespective of Bright House, the copyrighted works-in-suit, or the relevant time period. The request thus seeks vast amounts of information not remotely relevant to resolving the issues in the action, and the burden and/or expense of the proposed discovery thus far outweighs the likely benefit, if any. Plaintiffs object to this request insofar as it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the joint defense or common-interest privilege, as trial preparation materials, or under other privilege or immunity recognized by law. Plaintiffs object to this request insofar as its purpose is to obtain evidence relating to nonparties' conduct in order to excuse Bright House's own malfeasance. In addition, Plaintiffs object to the request because it is unreasonably cumulative and duplicative of Request Nos. 70-75 and 77.
**Response:** Pursuant to the foregoing objections, Plaintiffs respond that they will not produce documents responsive only to this request.

**Argument:** RFP 76 seeks documents related to the technology considered and used in connection with the CAS to monitor or mitigate copyright infringement, which is again

relevant because they again reflect what Plaintiffs believed was reasonable conduct on

behalf of ISPs during the relevant time period. The technological systems used for the CAS

are particularly relevant because they are largely the same technological systems used by

Plaintiffs in generating and sending notices of copyright infringement to BHN in connection

with this litigation.  Moreover, if Plaintiffs agreed that more robust detection technology

was appropriate for CAS, but decided to use less reliable detection technology to identify

alleged infringements and send notices to BHN, that is highly relevant to Plaintiffs' ability

to prove up the underlying infringements at issue in this case.  BHN has the right to know

if these systems were reliable, including, for example, whether they generated false

positives, and whether Plaintiffs or any others were aware of concerns with these

technological systems.  Thus, Plaintiffs should be ordered to produce documents in response

to BHN's narrowed RFP 76.

### iv.   RFP 77

**Original RFP 77:** All documents concerning notifications sent pursuant to CAS, any CAS MOU, or any Implementation Agreement, concerning allegations of copyright infringement of any Copyright Work.

*Narrowed RFP 77: Documents constituting a representative sample of notifications sent pursuant to the CAS, the CAS MOU, or any Implementation Agreement, during the Claim Period.*  Ranahan Decl., Ex. 7.

**Objections:** Plaintiffs object to this request because CAS is irrelevant. CAS was a private agreement in which Bright House did not participate. It has no bearing on Bright House's liability or damages for the claims alleged in this case. Plaintiffs object to this request as overly broad, unduly burdensome, and not proportional to the needs of the case, including in that it seeks "all documents" concerning broad subject matter— the Copyright Alert System—which Bright House did not take part in. Moreover, the request seeks such documents irrespective of Bright House, the copyrighted works-in-suit, or the relevant time period. The request thus seeks information not remotely relevant to resolving the issues in the action, and the burden and/or expense of the proposed discovery thus far outweighs the likely benefit, if any. Plaintiffs object to this request insofar as it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the joint defense or common-interest privilege, as trial preparation materials, or under other privilege or

immunity recognized by law. Plaintiffs object to this request insofar as its purpose is to obtain evidence relating to nonparties' conduct in order to excuse Bright House's own malfeasance. In addition, Plaintiffs object to the request because it is unreasonably cumulative and duplicative of Request Nos. 70-76.
**Response:** Pursuant to the foregoing objections, Plaintiffs respond that they will not produce documents responsive only to this request.

**Argument:** RFP 77 seeks a limited subset of documents related to the CAS. BHN specifically needs the documents sought by Request No. 77 to assess what Plaintiffs believed constituted reasonable notice, and what Plaintiffs believed should trigger the response by ISPs that they themselves deemed reasonable through the CAS, the CAS MOU, and the Implementation Agreements. For at least the reasons explained above, *see supra* pp. 14-20, the trier of fact in this case should be allowed to consider Plaintiffs' own actions and highly-negotiated agreements regarding what the industry standard for reasonableness should be, when deciding whether BHN acted reasonably, and whether liability should be imposed in connection with how BHN responded to infringement notices. This is particularly true because this is an otherwise largely uncharted area of imposing secondary copyright liability for merely providing high-speed internet access. Fed. R. Civ. P. 26(b). As such, Defendant's request for these notices should be granted.

### D. Plaintiffs Should Produce Copies of the Works-in-Suit in Response to RFP 2 By a Date Certain

**RFP 2:** Full digital copies of all Copyright Works, including any and all versions of each Copyright Work You claim has been infringed, and any version submitted to the United States Copyright Office of the Library of Congress.

**Objections:** Plaintiffs object to this request as premature because it seeks digital copies of "all Copyright Works," and Plaintiffs do not yet know the full scope of Bright House's infringement of Plaintiffs' copyrighted works. A more complete picture of Bright House's infringement will be developed and determined during discovery. Accordingly, Plaintiffs reserve the right to rely upon and/or assert in this litigation any of their copyrighted works infringed by Bright House. Plaintiffs also object to this request because it is vague and ambiguous, including in that it is unclear whether Bright House is requesting that Plaintiffs

produce authorized, non-infringing copies of the relevant copyrighted works or the unauthorized, infringing copies, and it is unclear to what "all versions of the Copyright Works" refers. Additionally, Plaintiffs object because the request is not proportional to the needs of the case. Whether in full digital form or otherwise, Plaintiffs are aware of no legitimate need Bright House could have for authorized, non-infringing copies of *all* copyrighted works-in-suit, or for *all* versions of the copyrighted works-in-suit, including versions submitted to the United States Copyright Office of the Library of Congress. As such, the burden and expense of the proposed discovery outweighs any likely benefit. To the extent a legitimate need exists, the copyrighted works-in-suit are commercially available to the public.

**Response:** Subject to the foregoing objections, Plaintiffs will produce digital copies of a sample of the copyrighted works-in-suit.

**Argument:** After BHN filed its initial motion to compel on October 23, Plaintiffs agreed to produce digital copies of not just a "sample," but rather, for each of the works-in-suit responsive to RFP 2, which is plainly relevant. Ranahan Decl., Ex. 4. *See, e.g., Stern v. Weinstein*, No. CV 09-1986-DMG, 2010 WL 11459354, at *1–2 (C.D. Cal. Aug. 19, 2010) (holding it "obvious, and entirely fair, for defendant to first have access to a copy of the [work in suit]" before being required to construct defense based on work(s)-in-suit). Since then, however, BHN's counsel has repeatedly asked Plaintiffs' counsel when such information could be expected, asking for an estimate from Plaintiffs (which Plaintiffs refused), and proposing December 16, 2019 (which Plaintiffs refused). Ranahan Decl. Exs. 5, 6. Plaintiffs have refused to provide even an estimate as to when BHN can expect production, leaving BHN unable to evaluate whether the production date would provide sufficient time to allow BHN and its expert(s) to conduct the comparative analyses between copies of the works-in-suit against the alleged infringements. Plaintiffs should not be permitted to delay production until it is too late for BHN to make meaningful use of the works-in-suit. *See Gratton v. Great Am. Commc'n*, 178 F.3d 1373, 1374–1375 (11th Cir.

1999).  BHN respectfully requests the Court order Plaintiffs to produce digital copies of the works-in-suit by January 6, 2020, or another date certain.

## V.    CONCLUSION

BHN respectfully requests that the Court grant its Motion and Plaintiffs be ordered to provide documents (i) sufficient to demonstrate ownership (RFPs 3 & 5); (ii) aiding in the valuation of the works-in-suit (RFP 8 & 9); (iii) relating to the CAS (RFPs 71, 72, 76, and 77); and (iv) consisting of the digital copies of the works-in-suit that Plaintiffs agreed to produce in response by January 6, 2020 or another date certain.  (RFP 2).

Dated: November 27, 2019

Michael S. Elkin (pro hac vice)
Thomas Patrick Lane (pro hac vice)
Seth E. Spitzer (pro hac vice)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com

Jennifer A. Golinveaux (pro hac vice)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

GUNSTER, YOAKLEY & STEWART, P.A.
William J. Schifino, Jr.
Florida Bar Number 564338
401 E. Jackson St., Ste. 2500
Tampa, FL 33602
(813) 228-9080 (telephone)
(813) 228-6739 (facsimile)
E-mail: wschifino@gunster.com

Respectfully submitted,

*s/ Erin R. Ranahan*
Erin R. Ranahan (*pro hac vice*)
Shilpa A. Coorg (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com
E-mail: scoorg@winston.com

*Attorneys for Defendant*
*Bright House Networks, LLC*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to do so.

Dated: November 27, 2019

Respectfully submitted,

s/ Erin R. Ranahan

Michael S. Elkin (pro hac vice)
Thomas Patrick Lane (pro hac vice)
Seth E. Spitzer (pro hac vice)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com
E-mail: tlane@winston.com
E-mail: sspitzer@winston.com

Jennifer A. Golinveaux (pro hac vice)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

GUNSTER, YOAKLEY & STEWART, P.A.
William J. Schifino, Jr.
Florida Bar Number 564338
401 E. Jackson St., Ste. 2500
Tampa, FL 33602
(813) 228-9080 (telephone)
(813) 228-6739 (facsimile)
E-mail: wschifino@gunster.com

Erin R. Ranahan (*pro hac vice*)
Shilpa A. Coorg (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com
E-mail: scoorg@winston.com

*Attorneys for Defendant*
*Bright House Networks, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 27, 2019, a true and correct copy of the foregoing was filed with the Court via CM/ECF which will send a notice of electronic filing to the parties of record.

*s/ Erin R. Ranahan*
Erin R. Ranahan