**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BRIGHT HOUSE NETWORKS, LLC, <br><br> Defendant. | Case No. 8:19-cv-00710-MSS-TGW |

**DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT TO RE-DESIGNATE CASE TO TRACK THREE**

Defendant Bright House Networks, LLC ("BHN"), pursuant to Rule 3.05 of the Rules of the United States District Court for the Middle District of Florida ("Local Rules"), Rule 16(b)(4) of the Federal Rules of Civil Procedure, and for the reasons more fully set forth herein, moves for an order re-designating this case from Track Two to Track Three, scheduling a preliminary pretrial conference, and extending the discovery period and all related deadlines set in the Case Management and Scheduling Order (ECF No. 68).

**I.    INTRODUCTION**

BHN seeks reasonable adjustments to the case schedule for this complex case so that the parties have sufficient time to complete appropriate party and third-party fact and expert discovery, before dispositive motions and trial. Plaintiffs, UMG Recordings, Inc., et al. (collectively, "Plaintiffs"), who are more than 60 separate parties representing both publishers and record companies in the music industry, are seeking statutory damages of well over a

1

billion dollars in this lawsuit. Despite seeking these windfall statutory damages, and making substantial amendments to their complaint just last week, altering the parties to the case and works-in-suit, Plaintiffs are pressing for a schedule that would not allow BHN the opportunity to meaningfully investigate and gather evidence to defend against Plaintiffs' astronomical claims.

The case is still in the early pleading stages because of Plaintiffs' recent extensions and amendments to the Complaint, adding nearly a dozen new parties and amending hundreds of the works-in-suit. Moreover, Plaintiffs and essential third parties have a substantial amount of discovery outstanding despite BHN's attempts to resolve these issues promptly. There are ongoing discovery disputes that will not only require additional time to work out and resolve, but Plaintiffs have indicated that their own production will take substantial time. Nevertheless, Plaintiffs have indicated that they will only agree to a modest extension that would run the clock on BHN's discovery efforts. For the reasons discussed herein, including the complexity of the legal and technical issues in this case, BHN respectfully requests that the Court re-designate the case from Track Two to Track Three and amend the Case Management Plan to set the close of fact discovery to mid-2021, expert deadlines to late 2021, trial to early 2022, and adjust the remaining dates accordingly.

## II.     FACTUAL BACKGROUND

### A.     This Action

Plaintiffs are a large group of record labels and music publishers who regularly initiate massive copyright litigations alleging the unauthorized distribution of their works and seeking windfall statutory damages. Plaintiffs commenced this action on March 25, 2019, naming 53

individual Plaintiffs suing for alleged secondary copyright infringement of thousands of alleged copyrighted works. Shortly thereafter, and before Plaintiffs' amendments to the complaint and discovery disputes emerged, the Clerk designated the case to Track Two. Just last month, Plaintiffs amended their complaint, adding *ten new Plaintiffs* to the case, raising the total number of individual Plaintiffs involved in this action from 53 to 63. These 63 separate Plaintiffs collectively assert a total of more than 7,000 works in this case. Because each individual work-in-suit can lead to a statutory damages award as high as $150,000 per work, this constitutes a potential award of $1,050,000,000 in statutory damages. Just this week, Plaintiffs again amended their complaint, altering more than 300 works-in-suit and further extending the pleading period.

Based upon BHN's provision of internet access to business and residential subscribers, Plaintiffs assert two claims of secondary liability for copyright infringement against BHN—contributory infringement and vicarious liability, each having separate and distinct elements. Each claim will first require that Plaintiffs prove the predicate underlying direct infringement of their more than 7,000 separate alleged copyrighted works-in-suit. For this, Plaintiffs assume that the alleged acts of direct infringement are committed by the easily identifiable BHN account holder. In reality, the alleged infringement could be attributed to anyone—other household members, visitors, neighbors, etc. Further complicating matters, many subscribers are businesses, schools, libraries, military facilities, or the decision-maker in a family, who most times is not the same person responsible for the allegedly infringing conduct. In addition, contributory infringement will require Plaintiffs to prove that with actual knowledge of its subscribers' alleged infringement, BHN caused or materially contributed to those

infringements. Separately, to establish vicarious liability, Plaintiffs will have to prove that BHN received a direct financial benefit from infringement that it had both a right and practical ability to control.

Third parties are also critical to each of Plaintiffs' claims. Plaintiffs relied on a third party, MarkMonitor, to detect the alleged direct infringements, using complex fingerprinting technologies provided by another third party, Audible Magic. Plaintiffs also relied heavily upon a separate third party, the Recording Industry Association of America ("RIAA"), to develop and coordinate the enforcement efforts with MarkMonitor and Audible Magic, and to send notices to BHN of the alleged infringement. Thus, third-party discovery is central in this case.

On February 6, 2020, the Court granted the parties' joint motion to increase the deposition limit to 20 per party, noting that the increase "is appropriate in this case." *See* ECF No. 110.

### B. The State of the Initial Pleadings

Plaintiffs should have known what they were suing about, and on whose behalf they were suing, before filing suit. Yet in November 2019—nearly eight months after filing this action—Plaintiffs sought and obtained leave of the Court to modify the proposed pending case schedule to extend the deadline to amend the pleadings by nearly two months, until January 2020. On January 7, 2020, Plaintiffs filed a motion to amend the complaint to add new parties. *See* ECF No. 94. The Court granted Plaintiffs' motion to amend the Complaint, which increased the total number of Plaintiffs from 53 to 63. Plaintiffs also sought a new deadline to amend the exhibits to their Complaint that set forth the works-in-suit, which the Court set for

February 14, 2020. But Plaintiffs did not actually file that motion until February 15, 2020 (ECF No. 116) and were required to file a motion for leave to file those exhibit after that. The Court granted Plaintiffs' motion just three days ago, significantly altering the works-in-suit. *See* ECF No. 117.

### C. BHN Seeks to Reach Consensus with Plaintiffs on the Proposed Extensions

On January 8, in discussing with the Court potential case extensions in connection with considering production deadlines, Judge Wilson recognized that this was a "complex case" and inquired whether it was a Track 3 case. *See* Declaration of Erin R. Ranahan ("Ranahan Decl."), Ex. 10 (Jan. 8, 2020 Hr'g Tr. at 143:3-11). While BHN proposed a 30-day deadline for BHN to produce information that was subject to the Court's Order, Plaintiffs indicated that they needed at least 60 days, or until mid-March, and likely longer, to comply with the Court's Order (Court: "So what's the proposal for whatever you all have to produce? MR. GOULD: I'd like as much time as I can get, Your Honor, 60 days.") *Id.* at 138:5-8. With respect to basic ownership documents, and in particular work-for-hire agreements, Plaintiffs' counsel noted that "even if you said 60 days at this point, I must tell you, I don't think we could do that." *Id.* at 145:22-24. The Court indicated that it would set a 60-day deadline for that, but Plaintiffs indicated they would come back to the Court "as necessary on that 60 days." *Id.* at 146:1-11. BHN will require time to analyze this ultimate production for the thousands of works at issue in advance of its depositions of Plaintiffs.

Since then, BHN has made repeated inquiries and attempts to have a discussion about adjusting the schedule. It was not until January 31, 2020, that Plaintiffs provided a "take it or leave it" proposal with only two options, neither of which took into account any of the actual

scheduling issues or delays presented in the case. *See* Ranahan Decl., Ex. 11. Plaintiffs' proposal was instead narrowly focused on setting forth two options depending upon whether BHN intended to plead a certain affirmative defense—a pleading that is not yet due in this case—which BHN is still investigating, and which BHN is not required to plead until after its pending motion to dismiss is resolved. *See id.*[1]

On February 7, 2020, BHN indicated it would move to put the case on the Track Three schedule if the parties could not agree on a case schedule. *See* Ranahan Decl., Ex. 12. Plaintiffs responded the next day that they were "disappointed" that BHN was not further "conferring" with Plaintiffs to "endeavor to agree on one schedule to present for the Court's approval." *See id.* BHN responded by offering to further meet and confer within the next several days. *See id.* Plaintiffs elected the latest option provided, and the parties held a meet and confer on February 11, 2020. *See* Ranahan Decl., ¶ 14.

During the February 11, 2020 meet and confer, Plaintiffs' counsel asked that BHN further specify interim dates proposed in connection with its scheduling proposal. BHN did so within less than a day, sent Plaintiffs BHN's proposed schedule with interim dates the following morning, February 12, 2020, and stated the following:

> We believe these schedules are reasonable and appropriate in light of the complexity of the cases, the stage of the pleadings (including amendments last month and coming later this week), the number of parties, and the realities about the time the respective remaining productions and discovery will take. As we explained yesterday, we want complete ownership and financial discovery before proceeding with Plaintiffs' depositions, and these schedules would give us comfort in that.

---

[1] BHN's proposal provides Plaintiffs with ample time to conduct discovery regardless of whether BHN asserts the safe harbor defense.

*See* Ranahan Decl., Ex. 14.

Two days later, on February 14, 2020, Plaintiffs sent their proposed schedule, which was identical to their prior proposed schedule, suggesting that the request for another meet and confer was simply another delay tactic. *Compare* Ranahan Decl., Ex. 15 *with* Ex. 11. The parties' proposed schedules contained material differences and the parties have not been able to reach an agreement on certain dates.

### D. Discovery Disputes and Delays

BHN served its first discovery requests eight months ago on June 25, 2019 seeking, among other things, copies of Plaintiffs' underlying works and the alleged infringements, basic financial information, and basic ownership documents for the works-in-suit. *See* Ranahan Decl., Ex. 1. Plaintiffs objected to many of BHN's discovery requests and on August 27, 2019, BHN's counsel sent Plaintiffs' counsel a letter regarding deficiencies in the responses. Ranahan Decl., Ex. 2. After the parties reached an impasse on certain issues, BHN filed a motion to compel on October 23, 2019 (ECF No. 64).

Shortly after BHN filed the initial motion, Plaintiffs changed course and agreed to produce digital copies of the works-in-suit, but refused to commit to when they would do so. *See* Ranahan Decl., Ex. 3. In light of Plaintiffs' representation, BHN did not pursue a motion to compel on the digital copies of the works-in-suit and instead sought to work with Plaintiffs to secure a deadline for their production. Plaintiffs initially indicated they would produce the digital copies of the works-in-suit on a rolling basis, but refused to agree on a specific date of production. *See* Ranahan Decl., Exs. 4, 5, and 6. On November 7, 2019, BHN's counsel proposed that the parties agree to a mutual deadline of December 2019 to attempt to

7

substantially complete the parties' respective productions. *See* Ranahan Decl., Ex. 7. Plaintiffs never responded to that proposal nor did they provide any alternative date. In fact, to date, Plaintiffs have refused to agree to any mutual deadlines in connection with document productions. Instead, when BHN attempted to secure an agreement with Plaintiffs about a deadline for producing the digital copies of the works-in-suit that were previously subject to a motion to compel, Plaintiffs refused to agree to any deadline, insisting that:

> [W]e intend to work diligently to produce those materials in accordance with our discovery obligations. Beyond that, we see no reason—and you have not articulated any basis—for why this category of materials should be treated any differently from all other documents or categories of documents that the parties will be producing to one another on a rolling basis, and for which there is no requirement that either party specify a date certain for production.

*See* Ranahan Decl., Ex. 6. Plaintiffs stood on their objections, prompting BHN to narrow its discovery requests and ultimately renew its motion to compel on November 27, 2019. *See* Ranahan Decl., Ex. 8; ECF No. 80. At the January 8, 2020 hearing on the parties' motions to compel, the Court ordered Plaintiffs to produce all of the digital copies of the works-in-suit by March 8, 2020. *See* Ranahan Decl., Ex. 10 (Jan. 8, 2020 Hr'g Tr. at 138:3-6, 146:8-11). When asked how much time it would take Plaintiffs to make their production, Plaintiffs' counsel requested "as much time as I can get," noting that such a production "requires time and technical dealings." *Id.* at 137:19-138:8. BHN also voiced its concern that a production of the digital copies and copies of the corresponding alleged infringements too late into discovery would not provide its experts with enough time to conduct a full review under the present case deadlines. *Id.* at 139:21-140:1. Plaintiffs' production of these files to date is incomplete and ongoing.

### 1. Ownership Documents

Similar to the digital copies of the works-in-suit, at the January 8, 2020 hearing on BHN's motion to compel, Plaintiffs did not think they could produce ownership documents within 60 days. *See* Ranahan Decl., Ex. 10 (Jan. 8, 2020 Hr'g Tr. 145:22-24). The Court ordered Plaintiffs to produce complete ownership information, licensing agreements for the more than 7,000 works-in-suit, and related information concerning the value of the work-in-suit by March 9, 2020. These are each key categories of documents that will allow BHN to test Plaintiffs' claims of ownership and damages.

Plaintiffs have brought a nearly identical suit against Charter Communications, Inc., that has involved substantially similar discovery requests. *See Warner Records Inc. et al v. Charter Commc'ns, Inc.*, 8:19-cv-00710-MSS-TGW (D. Colo.) ("*Warner v. Charter*"). In *Warner v. Charter*, which is currently pending, the Court ordered Plaintiffs to initially produce ownership documents for a 1% sample of the works claimed, after considering the "significant burden" Plaintiffs expressed they would bear if they were required to produce ownership documents for all of the works-in-suit. *See* Ranahan Decl., Ex. 5 (*Warner v. Charter* Oct. 29, 2019 Hr'g Tr. at 39:24-40:6). Ultimately, Plaintiffs asked the Court for until the end of January 2020 to make just that 1% sample production—a timeframe that if extrapolated across all of the works-in-suit would take more than a dozen years. *See* Ranahan Decl., Ex. 9 (Dec. 17, 2019 Hr'g Tr. 107:2-6).

Given the production delays in *Warner v. Charter* for just 1% of the ownership documents, Plaintiffs can be expected to seek more time to produce the full set of ownership documents for *all* of the works-in-suit.

9

### 2. Additional Outstanding Discovery

Plaintiffs have also skirted every attempt BHN has made to schedule deadlines for discovery productions, and their productions to date have been significantly deficient. *See* Ranahan Decl., Ex. 13. Most notably, Plaintiffs have yet to produce a single email correspondence, even though they would be expected to be responsive to multiple categories of requested documents. *Id.*

### III. LEGAL STANDARD

Local Rule 3.05(b)(3) states that cases with a large number of parties and legal complexities, such as in the instant case, must be re-designated to Track Three. The text of the rule mandates the designation, stating "Track Three Cases *shall* include . . . those actions presenting factual or legal issues arising from the presence of multiple parties or multiple claims portending extensive discovery procedures." *Id.* (emphasis added). Local Rule 3.05(a) provides that the presiding judge may direct that a case be re-designated from one track to another at any time. *See Perez v. Miami–Dade Cty.*, 297 F.3d 1255, 1263 (11th Cir. 2002) ("district courts are entitled to broad discretion in managing pretrial discovery matters" to ensure that cases move to a reasonably timely and orderly conclusion).

The Local Rule also refers parties to the management techniques appearing in the Manual for Complex Litigation, which specifically discusses the complexities involved in copyright cases.[2] The Manual addresses how issues can arise in copyright cases that concern

---

[2] *Available at* https://www.uscourts.gov/sites/default/files/mcl4.pdf.

copyright in new media, ownership challenges, and complex damages analysis—all of which are present in this litigation.[3]

Track Two cases "normally consist of non-complex actions" and should be tried within one to two years after the filing of the complaint. L. R. 3.05(b)(2). In contrast, Track Three Cases should be tried within two to three years after the filing of the complaint. L. R. 3.05(c)(3)(D). Given the complex nature of the case and the extensive discovery required, it is unlikely that the case will be ready to proceed to trial within two years after the complaint was filed, or by January 11, 2021 as set in the initial Case Management Plan. *See* ECF No. 34 at 4. Thus, in light of the number of parties, third parties, and works at issue, and the complexity of the factual and legal issues, this case should be re-designated to Track Three because it fits squarely within the nature of those cases that should be so assigned.

Moreover, Rule 16(b)(4), Federal Rules of Civil Procedure, provides that a court may modify a scheduling order upon a showing of good cause, which "precludes modification unless the schedule cannot be met despite the diligence" of the parties. *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1418 (11th Cir.1998) (quotation marks omitted).

**IV.    ARGUMENT**

    **A. A Track Three designation is warranted in this case and good cause exists to modify the Scheduling Order**

---

[3] The parties also both acknowledged the "number of parties and complexity of issues" in this case. *See* ECF No. 34 at 10; *see also* ECF No. 104 at 1 ("This case involves numerous parties, including six distinct plaintiff groups, and complex factual and legal issues").

BHN moves to re-designate this case from Track Two to Track Three in light of the early stage of the pleadings, the complexity and needs of the case, and ongoing discovery delays by Plaintiffs, and to modify the case scheduling order accordingly. The complexity of the issues and need for extensive discovery in this case require the extended litigation period available in Track Three cases. Indeed, during the January 8, 2019 hearing, the Court noted that this is a "complex case" and was surprised to hear that it was on Track Two instead of Track Three. *See* Ranahan Decl., Ex. 10 (Jan. 8, 2020 Hr'g Tr. at 143:3-11). The Court also welcomed a motion to change the deadlines in the case scheduling order. *Id.* at 141:12-15 (THE COURT: "I'm assuming that if you have other deadlines from the case scheduling order, that that's subject to change, that you can file a motion to move the stuff").

Good cause exists to extend the case deadlines in light of the recently added parties and amendments to the alleged works and BHN's discovery needs, as well as the extensive discovery that remains to be completed, the complexity of the issues, and the necessity of critical third-party discovery. The deadline to complete fact discovery is presently set for June 11, 2020. Neither party has deposed or even scheduled any depositions, and need to complete ongoing discovery productions before doing so. It is practically impossible that BHN will be able to depose not only the 60-plus plaintiffs that are a party to this case, but the large number of third parties that have already been disclosed and identified.[4] Initial discovery has revealed roughly 30 individuals or entities who are likely to have discoverable information that the parties may use to support their claims or defenses, including more than ten third parties. The

---

[4] To date, BHN has served subpoenas on nine third-party witnesses. BHN is in the process of evaluating the objections and responses by these third parties, and negotiations with many third parties are still ongoing. BHN intends to move to compel at least one third party.

third parties involved in this case are essential to Plaintiffs' claims and BHN's defenses. It is imperative that BHN have time to conduct meaningful discovery of each of them. BHN's proposed modified case schedule is reasonable to allow time to complete discovery in connection with the large number of Plaintiffs and third parties and complex factual issues involved in this case.

Furthermore, there are significant document productions that should be forthcoming, which BHN will need to meaningfully prepare for depositions. Indeed, "[t]he overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Parsons v. Anheuser–Busch Cos., Inc.*, No. 3:09–cv–584–J–25MCR, 2010 WL 996520, at *1 (M.D. Fla. Mar. 17, 2010) (*citing United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). BHN is left to wonder when it will receive critical documents and if it will be in time to meaningfully prepare for depositions. The multiple extensions Plaintiffs have already obtained to amend their pleadings and their refusal to agree to a production date for others, necessitates reasonable extensions of the case schedule to allow the parties to meaningfully conduct and complete discovery. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) ("The Federal Rules of Civil Procedure strongly favor full discovery whenever possible").

The complexity of the case also supports a Track Three designation. This litigation involves two separate claims for secondary copyright infringement against BHN— contributory infringement and vicarious liability. To have standing to bring their claims,

13

Plaintiffs must first prove that they own the copyrights for the thousands of separate works-in-suit. Plaintiffs have already been afforded a deadline to accommodate this production, but, BHN will need time to review and analyze the ownership documents in order to prepare for depositions and sufficiently confirm that Plaintiffs do indeed own the copyrights for each of the works-in-suit (for each of one they are seeking up to $150,000 in statutory damages).

Plaintiffs must also first prove the underlying alleged direct infringement before obtaining any ruling on contributory or vicarious infringement, which requires extensive third-party discovery and expert analysis. The web-based protocols at issue in this case and third-party technology that Plaintiffs utilized to detect the alleged direct infringements for their claims are highly technical and complex. These are technologies and programs that will require substantial time for an expert to analyze—and this is just for the direct infringement portion of the case. The parties will also likely need to retain financial expert(s) to analyze the financial issues presented in this case and other experts to review the remaining non-cumulative case issues.

Good cause exists to re-designate this case from Track Two to Track Three. Accordingly, BHN requests that the Court amend the Case Scheduling Order to extend the case deadlines consistent with the proposed schedule below, which is reasonable and appropriate in light of the complexity of the case, the stage of the pleadings (including the recent amendments to the Complaint), the number of parties and substantial third-party discovery, and the realities about the time the remaining productions and discovery will take.

A comparison of the parties' proposed schedules, including interim production deadlines the parties were negotiating, is detailed below:

| Plaintiffs' Proposed Date/Deadline | BHN's Alternative Proposal |
|---|---|
| Mediation Deadline<br>5/27/20 | Mediation Deadline<br>5/27/20 |
| N/A | Completion of Production of Documents Parties Have Already Agreed to Produce Pursuant to Initial Discovery Requests<br>5/11/20 |
| N/A | Completion of Production of Plaintiffs' Ownership Documents (currently due 3/9/20)<br>5/9/20 |
| N/A | Completion of Production of Financial/Licensing Information Ordered by Court (currently due 3/9/20)<br>5/22/20 |
| Substantial Completion of Document Productions<br>8/31/20 | Completion of Production of any Other Documents Ordered from Initial Requests and Not Yet Produced<br>8/31/20 |
| N/A | Deadline to Serve Written Discovery<br>8/19/20 |
| Deadline for Plaintiffs to Designate Experts<br>8/26/20 | Deadline for Plaintiffs to Designate Experts<br>10/25/20 |
| Deadline for BHN to Designate Experts<br>9/28/20 | Deadline for BHN to Designate Experts<br>11/28/20 |
| N/A | Completion of Production of Documents Parties Have Agreed to Produce Pursuant to Subsequent Discovery Requests<br>3/29/21 |
| N/A | Last Date to File Motion to Compel/Seek Relief from Court on Discovery Issues<br>4/19/21 |
| Fact Discovery Close<br>11/11/20 | Deadline to Complete Party Depositions<br>5/31/21 |
| N/A | Deadline to Complete Third-Party Depositions/Discovery<br>6/30/21 |
| Expert Discovery Close<br>11/16/20 | Expert Discovery Close<br>7/23/21 |
| Dispositive Motion Deadlines<br>1/5/21 | Dispositive Motion Deadlines<br>9/30/21 |

| Plaintiffs' Proposed Date/Deadline | BHN's Alternative Proposal |
|---|---|
| Deadline to Meet in Person to Prepare Joint Final Pretrial Statement<br>5/4/21 | Deadline to Meet in Person to Prepare Joint Final Pretrial Statement<br>1/7/22 |
| Joint Pretrial Filings Due<br>5/17/21 | Joint Pretrial Filings Due<br>1/21/22 |
| All MILs/Other Pretrial Motions Due<br>6/2/21 | All MILs/Other Pretrial Motions Due<br>2/10/22 |
| Trial Briefs Due<br>6/9/21 | Trial Briefs Due<br>2/24/22 |
| Trial<br>7/5/21 | Trial<br>3/25/22 |

WHEREFORE, BHN respectfully requests that this Court enter an Order re-designating this matter as a Track Three case, schedule a preliminary pretrial conference, and extend the discovery deadlines consistent with BHN's proposed schedule or as the Court deems necessary and for such other and further relief as this Court deems just and proper.

Dated: February 24, 2020

Respectfully submitted,

*s/ Erin R. Ranahan*
Erin R. Ranahan (*pro hac vice*)
Shilpa A. Coorg (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1933 (telephone)
(213) 615-1750 (facsimile)
E-mail: eranahan@winston.com
E-mail: scoorg@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

>Michael S. Elkin (*pro hac vice*)
>Thomas Patrick Lane (*pro hac vice*)
>Seth E. Spitzer (*pro hac vice*)
>WINSTON & STRAWN LLP
>200 Park Avenue
>New York, NY 10166
>(212) 294-6700 (telephone)
>(212) 294-4700 (facsimile)
>E-mail: melkin@winston.com
>E-mail: tlane@winston.com
>E-mail: sspitzer@winston.com
>
>GUNSTER, YOAKLEY & STEWART, P.A.
>William J. Schifino, Jr.
>Florida Bar Number 564338
>401 E. Jackson St., Ste. 2500
>Tampa, FL 33602
>(813) 228-9080 (telephone)
>(813) 228-6739 (facsimile)
>E-mail: wschifino@gunster.com
>
>*Attorneys for Defendant*
>*Bright House Networks, LLC*

## L.R. 3.01(g) CERTIFICATION OF COUNSEL

I certify, pursuant to Local Rule 3.01(g), that moving counsel has conferred with opposing counsel in a good faith effort to resolve the issues but has been unable to do so.

>*s/ Erin R. Ranahan*
>Erin R. Ranahan

## **CERTIFICATE OF SERVICE**

I certify that on February 24, 2020, a true and correct copy of the foregoing was filed with the Court via CM/ECF which will send a notice of electronic filing to the parties of record.

*s/ Erin R. Ranahan*
Erin R. Ranahan
