**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 8:19-cv-00710-MSS-TGW |
| BRIGHT HOUSE NETWORKS, LLC, | |
| Defendant. | |

**DEFENDANT BRIGHT HOUSE NETWORKS, LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AS TO THE CLAIM FOR VICARIOUS LIABILITY**

Defendant Bright House Networks, LLC ("BHN") hereby replies to Plaintiffs' Opposition to its Motion to Dismiss, Dkt. 106 ("Opp."). For the reasons stated both in BHN's Motion and below, Plaintiffs' claim for vicarious liability should be dismissed with prejudice.

*First*, Plaintiffs fail to sufficiently allege the requisite "draw." Instead, Plaintiffs allege that BHN advertised fast speeds (like every other ISP). But that alone cannot support an inference that the ability to infringe Plaintiffs' works served as a draw. Nor are Plaintiffs' allegations that BHN failed to police its subscribers sufficient to support their claim. Plaintiffs attempt to assert an alternative "economic incentive" theory, arguing that a "draw" is not required. But their theory is wholly divorced from any notion of causation, flatly contrary to decades of well-settled case law, and would, in essence, automatically impose vicarious liability on *every* for-profit ISP. It should be rejected.

*Second*, Plaintiffs fail to allege that BHN has the right and ability to *supervise* its subscribers' activities in allegedly infringing Plaintiffs' works. As Plaintiffs are well aware, BHN lacks any such ability, and Plaintiffs offer no meaningful argument to the contrary.

**I.     Plaintiffs Fail to Allege BHN Had a Direct Financial Benefit in the Infringement**

**A.     Plaintiffs *must* adequately allege a "draw," which they have failed to do.**

Contrary to Plaintiffs' claim, Opp. at 11, a "draw" showing is required where, as here, a defendant offers a fixed fee service. *See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); Mot. at 11-22; S. Rep. 105-190 at 44 ("receiving a one-time set-up fee and flat periodic payments for service from a person engaged in infringing activity would not constitute receiving a 'financial benefit directly attributable to the infringing activity."). Plaintiffs' arguments to the contrary fail, and their other allegations on this prong are conclusory and implausible.

According to Plaintiffs themselves, P2P infringement has been ubiquitous for decades across the entire internet. *See, e.g.*, FAC (ECF 94) ¶ 77 ("[T]he level of copyright infringement on the Internet is staggering."). Against this backdrop, however, it is manifestly implausible

1

to infer that BHN's advertisement of fast internet speeds drew subscribers to its network for the purpose of infringing Plaintiffs' works, *id.* ¶ 74, particularly where (as Plaintiffs insist) *every* internet user had the opportunity to infringe on any network, at any time, through myriad means. *Id.* ¶¶ 77-78. Plaintiffs' separate allegation that BHN's subscribers had the unpoliced ability to infringe, *id.* ¶¶ 76, 88, is also deficient, as there is no draw to do something unencumbered that there is no draw to do in the first place.[1] Plaintiffs cannot boot-strap one implausible allegation with another.

Plaintiffs cite to *Fonovisa, Inc. v. Cherry Auction, Inc.*, urging the Court to ignore their pleading deficiencies and find that some percentage of BHN's subscribers were statistically likely to have been drawn to BHN's service in order to infringe. 76 F.3d 259, 263-64 (9th Cir. 1996); Opp. at 12. But *Fonovisa* and the cases to which it cites lack relevance to the global, pervasive, and ceaseless P2P piracy Plaintiffs describe: they concern isolated swap meets, dance halls, and similar businesses that draw customers due to the *promoted* availability of infringing content at a *specific* location.[2] Had these cases rested on allegations that identical infringing content was readily and equally available at *every* swap meet or dance hall in *every* town throughout the world, the courts would certainly have required more than mere conclusory allegations that the ability to infringe in general was a draw to the specific location, which is all that Plaintiffs allege here.[3]

Plaintiffs further claim that their failure to plead a "draw" at this stage is not fatal, as it should be a question for the fact finder. Opp. at 17-18. But absent plausible allegations

---

[1] In addition, these conclusory allegations go to the "actual knowledge" and "material contribution" elements of contributory infringement, which are irrelevant to vicarious liability.

[2] *Fonovisa, Inc.*, 76 F.3d at 263-64 (citing *Polygram Int'l Pub., Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314 (D. Mass. 1994); *Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Ass'n, Inc.*, 554 F.2d 1213 (1st Cir. 1977); *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)).

[3] Plaintiffs also mischaracterize a summary judgment decision in *BMG Rights Mgmt. (US) LLC v. Cox Comms., Inc.*, 149 F. Supp. 3d 634, 676 (E.D. Va. 2015). *See* Opp. at 12. The issue there was whether an expert survey, purporting to show that a percentage of customers subscribed to Cox's ISP service in order to infringe, was a sufficient basis on which a reasonable trier of fact could conclude that "Cox customers were drawn to Cox's network … to download … BMG's copyrighted works, using Bit Torrent." Apparently it was not, for the jury found Cox not vicariously liable. *See BMG Rights Mgmt. (US) LLC v. Cox Comms., Inc.*, 199 F. Supp. 3d 958, 992 (E.D. Va. 2016). In any event, the facts on which the *BMG* court based its decision do not pertain here.

supporting this prong, courts do not hesitate to dismiss claims where the alleged draw is available generally—and not "exclusively through [the defendant's] services." *See, e.g., Grande*, 2018 WL 1096871, at *10.

Lastly, Plaintiffs baldly misconstrue *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673-74 (9th Cir. 2017), Opp. at 18, which holds that a plaintiff's "draw" allegations must be tied to the works at issue. Plaintiffs argue that because they "own or control the copyrights to millions of sound recordings," "it is reasonable to infer that at least some of BHN's users are drawn to its service to infringe Plaintiffs' works in *particular*." *Id.* But Plaintiffs assert only a small fraction of their "millions" of copyrights in this case, and do not allege that the ability to infringe this subset was a draw to BHN's subscribers. A federal copyright "action is a specific lawsuit by a specific plaintiff against a specific defendant about specific copyrighted [works]; it is not a lawsuit against copyright infringement in general[.]" *Giganews*, 847 F.3d at 673 (citation omitted) (noting that a rule that would allow a court to find liability for works *not* in suit is, "[a]t the very least, … in significant tension with Article III's standing requirement.").

**B.     Plaintiffs' alternative theory of direct financial benefit lacks support.**

Plaintiffs are flatly wrong that the mere allegation of any "economic incentive" is sufficient to withstand a motion to dismiss. *See* Opp. at 13; Mot. at 18. Plaintiffs' own authority makes clear a plaintiff *must* show both the existence of a draw *and* a causal link between any resulting financial benefit and the alleged infringement. *Capitol Records, LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049, at *42 (S.D.N.Y. Mar. 25, 2015) (noting direct connection between the "substantial draw" of infringing content and defendant's advertising revenues, which varied depending on traffic to its website, since "approximately 84.5% of the website's streams are [infringing and] 80% of Escape's revenue is derived from website advertisements[.]").[4]

---

[4] This is consistent with Plaintiffs other cited cases. *See A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) ("virtually all of Napster's 'draw' … resulted from Napster's providing access to infringing material."); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009) ("Defendants' revenues

3

In stark contrast, here Plaintiffs do not allege that a significant number of BHN's subscribers were infringing; nor that a significant amount of BHN's network traffic was infringing; nor that BHN's revenues depended on the volume of its traffic. BHN lacked any economic incentive to maintain *infringing* subscribers on its network (as opposed to subscribers in general), and Plaintiffs fail to allege any direct connection between infringement and BHN's revenues. Plaintiffs' allegations amount to the banal assertion that if BHN had terminated accused subscribers, it would have lost its flat-fee revenue from them. That is a far cry from the direct financial benefit, causally related to the "draw" of infringement, shown in *Escape Media*.[5]

Plaintiffs' references to the jury verdict in *Sony Music Ent., Inc. v. Cox Comms., Inc.*, No. 18-cv-950 (E.D. Va.) ("*Sony*") as "instructive" of their purported alternative theory, *see* Opp. at 14, should be rejected: the court in that case denied the plaintiffs' motion for summary judgment on vicarious liability, rejecting the precise argument Plaintiffs make here. *Sony*, Dkt. 610. And nothing can be inferred from the jury's verdict, which provides no insight into the legal basis it rests on. Even if the *Sony* jury did consider Plaintiffs' alternative theory—for which there is no evidence—it remains "untested," contrary to Plaintiffs' assertion, because both the verdict and the *Sony* court's pre-trial rulings are subject to a pending post-trial motion and potential appeal.

## II.     Plaintiffs Fail to Adequately Allege the Ability to Supervise Subscribers' Conduct

Plaintiffs incorrectly equate the right and technical ability to completely terminate subscriber's accounts, with the right and ability to *supervise* their infringing activity. Their allegation that terminating a subscriber's internet account would prevent that subscriber from

---

increased depending on their users' volume of downloads; thus, the greater the volume of downloads (the majority of which has been shown to be infringing), the greater the Defendants' income."). For the same reason, Plaintiffs' reliance on *Marvel Enterprises, Inc. v. NCSoft Corp.*, 2005 WL 878090, at *3 (C.D. Cal. Mar. 9, 2005), Opp. at 13, in which a "significant number" of users were infringing the plaintiff's copyrights, is inapposite.

[5] Plaintiffs also misrepresent the *Sony* court's citation to the Magistrate's Report & Recommendation in *Warner Bros. Records, Inc. v. Charter Comms., Inc.*, Case No. 1:19-cv-00874 (D. Colo.). The *Sony* court referenced that ruling in connection with the "knowledge" prong of contributory infringement—not vicarious liability. *Sony*, Dkt. No. 586, at 24. Moreover, the *Sony* court's ruling is subject to pending post-trial motions.

4

accessing the internet through the terminated account, Opp. at 6-8, misses the point: vicarious liability can only be imposed where a defendant has the right and ability to *supervise* allegedly infringing activity. *See BUC Int't Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1151 n.19 (11th Cir. 2007); Mot. at 19-23; *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (holding, in action against mobile wireless network providers, that failure to allege "at least something like a capacity to supervise is fatal to a claim of vicarious liability."). Similarly, the defendants in Plaintiffs' own cited cases had the ability to directly control users' ability to upload or download infringing content onto specific websites or servers. Opp. at 6-8 (citing *A&M Records, Inc.*, 239 F.3d at 1023 and *Usenet.com, Inc.*, 633 F. Supp. 2d at 157).[6]

Here, Plaintiffs do not (and could not) allege that BHN had the ability to view, access, monitor, or supervise its subscribers' activity. They also fail to allege that BHN had the ability to stop Plaintiffs' works from being further infringed: as Plaintiffs acknowledge, the allegedly infringing files at issue are stored on millions of computers, owned by subscribers to a variety of different ISPs. FAC ¶¶ 77-82. Plaintiffs' allegations plainly show that an ISP like BHN lacks the ability to *supervise* its subscribers' infringing behavior to the extent required to impose vicarious liability. Their failure to adequately plead this prong requires dismissal of this claim with prejudice.

## CONCLUSION AND REQUEST FOR ORAL ARGUMENT

For these reasons, BHN respectfully requests that the Court grant its Motion and dismiss Plaintiffs' vicarious liability claim with prejudice. Given the import of the issues, BHN requests oral argument.

---

[6] Plaintiffs' references to *BMG* and *Grande* are inapt. *See* Opp. at 7. The *BMG* court denied summary judgment on vicarious liability. In *Grande*, this claim was dismissed at the pleadings stage.

Respectfully submitted this 28th day of February, 2020.

Respectfully submitted,

By: *s/ Erin R. Ranahan*
Erin R. Ranahan (*pro hac vice*)
Shilpa A. Coorg (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1933
Fax: (213) 615-1750
Email: eranahan@winston.com
Email: scoorg@winston.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com
Email: sspitzer@winston.com

GUNSTER, YOAKLEY & STEWART, P.A.
William J. Schifino Jr.
Florida Bar No. 564338
John A. Schifino
Florida Bar No. 72321
Giovanni P. Giarratana
Florida Bar No. 125848
401 East Jackson Street, Suite 2500
Tampa, Florida 33602
Tel: (813) 228-9080
Fax: (813) 228-6739
Email: wschifino@gunster.com
Email: jschifino@gunster.com
Email: ggiarratana@gunster.com

*Counsel for Defendant*
*Bright House Networks, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on February 28, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the parties of record.

<u>s/ Erin R. Ranahan</u>
Attorney