## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 8:19-cv-00710-MSS-TGW |
| BRIGHT HOUSE NETWORKS, LLC, | |
| Defendant. | |

## PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

   I.   Plaintiffs' Complaint and Bright House's Answer, Affirmative Defenses, and Counterclaims. .......................................................................................................... 2

   II.   Bright House's Factual Allegations ............................................................................ 3

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT ........................................................................................................................ 5

   I.   Bright House's counterclaim for knowing misrepresentation under Section 512(f) of the DMCA should be dismissed with prejudice. ........................................... 5

     A.   Bright House admits that it cannot remove or disable access to infringing material as required under Section 512(f). ............................................................ 7

        i.   Bright House did not remove or disable access to any infringing material. .......... 7

        ii.   Bright House's § 512(a) safe harbor defense dooms its § 512(f) claim. ............... 8

     B.   Bright House does not and cannot plead the required mental state of "actual knowledge." .......................................................................................................... 9

     C.   Bright House fails to identify any false notices or works that were the subject of false notices. ........................................................................................................... 13

   II.   Bright House's FDUTPA claim should be dismissed with prejudice. ............................ 13

     A.   The DMCA preempts Bright House's FDUTPA counterclaim. ................................... 13

     B.   Bright House fails to state a FDUTPA claim under Rules 12(b)(6) and 9(b). .............. 16

        i.   Bright House fails to satisfy Rule 9(b)'s heightened pleading standard. .............. 17

        ii.   Bright House fails to allege a deceptive or unfair trade practice in trade or commerce. ......................................................................................................... 18

        iii.   Bright House fails to allege cognizable harm to itself or consumers caused by allegedly false notices. ..................................................................................... 20

          1.   No actual damages. ................................................................................ 20

          2.   No causation. ......................................................................................... 21

          3.   No threat of future harm for injunctive relief. ........................................ 22

   III.   Amendment would be futile, and dismissal should therefore be with prejudice. ............ 22

CONCLUSION ...................................................................................................................... 23

## INTRODUCTION

In February 2020, Plaintiffs made the unremarkable decision not to pursue claims on a tiny fraction of more than 7,500 works originally at issue in this mass infringement case. Defendant Bright House Networks, LLC ("Bright House") now asserts, based on rank speculation, that Plaintiffs do not own or control exclusive rights in "at least some of these works," and did not own those rights years ago, but knowingly sent Bright House false infringement notices about them anyway. Relying on this conjecture, Bright House alleges counterclaims for damages under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), for sending knowingly false infringement notices, and under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. (2019) §§ 501.201 et seq. ("FDUTPA"), for deceptive trade practices. Both claims should be dismissed with prejudice.

Bright House incurably fails to plead the elements of its DMCA § 512(f) claim. To state a claim, Bright House must plead that (1) Plaintiffs sent Bright House infringement notices that they *subjectively knew were false at that time*, and (2) Bright House relied on those notices *in removing or disabling access* to the material alleged to be infringing. But Bright House has failed sufficiently to plead either. *First*, Bright House does not even purport to allege that it removed or disabled access to any allegedly infringing material. That omission is fatal to its claim. In fact, Bright House expressly pleads that it cannot remove or block such access. *Second*, Bright House has not alleged, nor can it, that Plaintiffs knew that any infringement notices were false when they were sent. Instead, Bright House speculates, solely upon information and belief, that Plaintiffs "knew or should have known" that some unidentified subset of infringement notices was materially false because Plaintiffs allegedly did not own "at least some of these works." Not only does Bright House plead the wrong mental state, but Bright House pleads no facts in support of its conclusory allegation that Plaintiffs did not own

1

their works or of Plaintiffs' state of mind.  Bright House does not even identify any allegedly false notices or any dropped works that were the subject of false notices.

Bright House's deceptive trade practices counterclaim under the FDUTPA also fails for two independent reasons.  *First*, the DMCA's comprehensive notice-and-takedown regime preempts state law tort claims based on alleged misrepresentations in takedown notices.  *Second*, the FDUTPA claim fails on its own terms under Rule 12(b)(6) and Rule 9(b)'s heightened pleading standard for such fraud-based claims.  Far from pleading the requisite who, what, where, when and how of any known misrepresentation, Bright House fails to identify a single inaccurate infringement notice, a single dropped work that was the subject of any misrepresentation, or even which Plaintiffs it is suing on this claim.  More fundamentally, Bright House fails to plead a deceptive trade practice *in the conduct of trade or commerce*, or any cognizable harm caused by such practice.  As explained more fully below, Bright House's § 512(f) and FDUTPA counterclaims should be dismissed with prejudice.

## BACKGROUND

I. **Plaintiffs' Complaint and Bright House's Answer, Affirmative Defenses, and Counterclaims.**

Plaintiffs filed their Initial Complaint on March 22, 2019, ECF No. 1, and an Amended Complaint on January 7, 2020, ECF No. 94 ("FAC").  In their FAC, Plaintiffs allege that Bright House is contributorily and vicariously liable for infringement of Plaintiffs' copyrights from March 24, 2013 through May 17, 2016 (the "Claim Period").  FAC ¶ 5.  Bright House knew its subscribers were uploading and downloading Plaintiffs' copyrighted works without authorization, yet allowed them to continue doing so unfettered.  *Id*. ¶ 87.  Bright House knew of the infringement because Plaintiffs sent over one hundred thousand infringement notices to Bright House, detailing specific instances of specific infringements by specific subscribers—but

Bright House did nothing to curb this rampant infringing activity occurring on its network.  *Id*. ¶¶ 2–3, 87–88.  On July 8, 2020, the Court granted Bright House's motion to dismiss Plaintiffs' vicarious liability claim.  Plaintiffs' claim for contributory copyright liability claim remains.

On July 22, 2020, Bright House filed an Answer to Plaintiffs' Complaint, and asserted 13 affirmative defenses and two counterclaims.  ECF No. 151.  One counterclaim sought damages for Plaintiffs' alleged violation of § 512(f) of the DMCA by knowingly sending materially inaccurate infringement notices to Bright House.  *Id.* at Countercl. ¶¶ 124–38.  The other sought damages under the FDUTPA for deceptive and unfair trade practices.  *Id.* ¶¶ 139–51.  Bright House also pled, as an affirmative defense, protection from liability under the DMCA's "safe harbor" provision in 17 U.S.C. § 512(a)—which applies to so-called "conduit" service providers, such as internet service providers (as compared to "platform" service providers such as YouTube).  *Id.* at Aff. Def. 13.

## II.  Bright House's Factual Allegations

For purposes of this motion, Plaintiffs treat Bright House's allegations in support of its Counterclaims as if they were true.  Prior to its acquisition by Charter Communications, Inc. ("Charter") in or around June 2016, Bright House was an internet service provider ("ISP") providing internet service to approximately 2.2 million residential and business subscribers across 41 states.  Countercl. ¶¶ 3–4.  Today, Charter continues to serve Bright House's customers under the Spectrum brand, offering high-speed internet service to some 29 million U.S. customers across 41 states.  *Id.* ¶ 4.

Bright House alleges that it does not store its subscribers' content on its servers, cannot control what its customers store on their own or others' computers, and cannot remove third-party material from the internet unless it is stored on Bright House's own servers, which it is not.

*Id.* ¶¶ 1, 12.  Bright House also claims that it "had no ability to remove or take down infringing content from its customers' computers."  *Id.* ¶ 13.

Plaintiffs collectively own or control a substantial majority of copyrighted musical compositions and sound recordings in the United States, including many millions of works.  *Id.* ¶¶ 115–16.  The Record Company Plaintiffs, through their trade association, the Recording Industry Association of America ("RIAA"), used a company called MarkMonitor to monitor and detect infringing activity and send copyright infringement notices to Bright House.  *Id.* ¶ 60.  During the relevant period, Plaintiffs sent over a hundred thousand notices to Bright House alleging infringement of their copyrighted works.  *Id.* ¶ 82.  Bright House acknowledges that it received Plaintiffs' infringement notices and claims that it incurred costs to process them and engage with its subscribers concerning Plaintiffs' notices.  *Id.* ¶¶ 113, 134–37.

In March 2019, Plaintiffs sued Bright House for secondary infringement of 7,554[1] sound recordings and musical compositions ("Works in Suit") during the Claim Period.  On February 15, 2020, Plaintiffs amended the lists of Works in Suit, withdrawing 283 of the Works in Suit (3.7% of the original total) from this case.  *Id.* ¶¶ 64–65.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Fellner v. Cameron*, No. 2:10-CV-155-FTM-99, 2012 WL 1648886,

---

[1] Bright House incorrectly states in its Counterclaims that Plaintiffs initially sued Bright House for infringement of 11,482 works.  *See* Countercl. ¶ 61.  Plaintiffs' Exhibits A and B to their Original Complaint list 7,554 total works.  *See* ECF 1.

at *2 (M.D. Fla. May 10, 2012) (quoting *Iqbal*, 556 U.S. at 678) (quotation marks omitted).

Thus, "the court discards allegations that, 'because they are no more than conclusions, are not

entitled to the assumption of truth[.]'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the

complaint "has not shown . . . that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679

(quoting Fed. R. Civ. P. 8(a)(2)) (quotation marks omitted).

## **ARGUMENT**

### I. **Bright House's counterclaim for knowing misrepresentation under Section 512(f) of the DMCA should be dismissed with prejudice.**

The basic bargain embodied in the DMCA was that service providers would be provided

safe harbors from liability for infringing activities occurring in connection with four types of

service provider activities (as codified in §§ 512(a)–(d), respectively)—*provided that* they met

certain conditions. These included, among other things, that they adopt and reasonably

implement, and inform subscribers of, a policy that provides for termination of repeat infringers

(codified in § 512(i)).

"Notably present in §§ 512(b)–(d), and notably absent from § 512(a), is the so-called

notice and take-down provision." *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.,*

*Inc.*, 351 F.3d 1229, 1234 (D.C. Cir. 2003). Section 512(c)(3) specifies a process for receiving

notices of infringement from rights owners. *See* 17 U.S.C. § 512(c)(3). Such notices trigger a

specific obligation by §§ 512(b)–(d) service providers to "remove, or disable access to, the

material that is claimed to be infringing" in order to qualify for the safe harbors under §§ 512(b),

(c) and (d). *See id.* §§ 512(b)(2)(E), (c)(1)(C) and (d)(3). Neither the remove-or-disable-access

provision nor the notice-and-takedown processes apply to service providers claiming safe harbor

under § 512(a) (as does Bright House).  *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 776 (8th Cir. 2005).

Section 512(f), in turn, creates a private remedy against a person or entity who abuses this notice-and-takedown process by making knowing, material misrepresentations that result in a specific type of harm.  It provides that:

> Any person who *knowingly materially misrepresents* under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . as the result of the service provider relying upon such misrepresentation *in removing or disabling access* to the material or activity claimed to be infringing[.]

17 U.S.C. § 512(f) (emphasis added).  Thus, to state a claim under § 512(f), a party must allege that (i) the sender of a DMCA notice made a knowing and material misrepresentation of infringement, and (ii) the party asserting the claim suffered harm in removing or disabling access to the allegedly infringing material or activity identified in the notice.  *See Opinion Corp. v. Roca Labs, Inc.*, No. 8:15-CV-811-17AEP, 2016 WL 6824383, at *3 (M.D. Fla. Nov. 17, 2016) (quoting 17 U.S.C. § 512(f)).  Courts have made clear that the pleading standard under § 512(f) is "high," in view of "the reality that copyright owners face an uphill battle to protect their copyrights on the internet."  *Ouellette v. Viacom Int'l, Inc.*, No. CV 10-133-M-DWM-JCL, 2012 WL 1435703, at *3 (D. Mont. Apr. 25, 2012) (dismissing § 512(f) claim for failure to plead facts demonstrating actual knowledge of misrepresentation at time of notice), *aff'd* 671 F. App'x 972 (9th Cir. 2016).

As detailed below, Bright House fails to plead the basic elements of the counterclaim. Bright House does not and cannot plead the mental state of "actual knowledge" that the statute requires.  And Bright House not only concedes that it has *not* removed or disabled access to any infringing content, but affirmatively alleges that it *cannot* do so.  *See* Countercl. ¶¶ 1, 12–13. Nor has Bright House even identified a single allegedly false infringement notice or dropped

work that was the subject of a false notice.  In light of these defects, Bright House cannot state a claim for violation of § 512(f) and its counterclaim must be dismissed.

### A.  Bright House admits that it cannot remove or disable access to infringing material as required under Section 512(f).

#### i.  Bright House did not remove or disable access to any infringing material.

Bright House's § 512(f) counterclaim must be dismissed with prejudice because Bright House does not and cannot allege that it suffered cognizable harm.  The statutory text is unambiguous: a claim will lie only where a service provider has suffered harm "*in removing or disabling access to the material or activity*."  17 U.S.C. § 512(f) (emphasis added).  In other words, any alleged harm must be the result of an actual removal or disabling of access to infringing material.  Thus, as courts in this district and elsewhere have held, where the claimant did not remove or disable (*i.e.*, "takedown") access to the material, its claim necessarily fails. *See, e.g.*, *Opinion Corp.*, 2016 WL 6824383, at *3 ("Absent some indication that a 'takedown' actually occurred, Plaintiffs fail to allege the requisite injury under Section 512(f), and thus fail to state a plausible claim under the DMCA."); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc*., 790 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011) (dismissing § 512(f) claim with prejudice because no takedown occurred); *Capitol Records, Inc. v. MP3tunes, LLC*, 611 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2009) (dismissing § 512(f) counterclaim because defendant "suffered no injury because it took no action other than filing an anticipatory lawsuit"); *Arista Records, Inc. v. Mp3Board, Inc*., No. 00-CV-4660, 2002 WL 1997918, at *14 (S.D.N.Y. Aug. 29, 2002) (explaining notices are only actionable under § 512(f) where plaintiff is damaged by removing or disabling access).

Here, Bright House does not allege that it removed or disabled infringing content.  Instead, it alleges only that Bright House "processed" or "investigated" Plaintiffs' notices and

"incur[red] costs" or "reputational harm" thereby, and that "[t]he steps Bright House took in response to receiving Plaintiffs' inaccurate notices *could result* in the 'removal or blocking' of the noticed material." Countercl. ¶¶ 36, 75, 132–35 (emphasis added). This vague allusion to the theoretical possibility that removal or blocking "could result"—without alleging that Bright House, in fact, ever removed or blocked access to the infringing material that was the subject of any Plaintiff's notice—fails to plead a fundamental element of the cause of action.

Critically, this is not a drafting oversight that can be cured by repleading. To the contrary, Bright House affirmatively alleges that it *cannot* remove or take down infringing content, nor restrict its users' access to it:

> Bright House *did not* store its subscribers' content on its servers. . . .
>
> Bright House *could not* remove third-party material from the Internet unless that material is stored on Bright House's own servers. . . .
>
> Bright House *had no ability* to remove or take down infringing content from its customers' computers. . . .

Countercl. ¶¶ 1, 12–13 (emphasis added). Thus, Bright House has pled itself out of court by affirmatively alleging that it lacks the capability to do the very thing that is an essential element of its § 512(f) claim. And, in so doing, Bright House has acknowledged that even if the claim had a factual basis, Bright House has not suffered cognizable harm.

### ii. Bright House's § 512(a) safe harbor defense dooms its § 512(f) claim.

Unlike the other three DMCA safe harbor provisions under §§ 512(b)–(d), § 512(a) applies to service providers that merely act as "conduits" that "*can not* remove or disable . . . one user's access to infringing material resident on another user's computer." *In re Charter Commc'ns*, 393 F.3d at 776 (emphasis added) (quotation omitted). Section 512(f), by contrast, provides for damages *only* from precisely what a § 512(a) conduit provider cannot do—*i.e.*, remove or disable access to infringing material. By attempting to shield itself under § 512(a)'s

safe harbor, and affirmatively pleading that it cannot remove infringing material, Bright House again has pled itself out of a § 512(f) claim.[2]

Bright House's claim under § 512(f) is also directly at odds with the successful argument of its owner, Charter, in *In re Charter Commc'ns*, 393 F.3d at 776.  There, Charter argued that the DMCA's § 512(h) subpoena provision *could never apply* to a § 512(a) "conduit" provider, because the subpoena provision *only* applies to service providers that can "locate *and remove* the allegedly infringing material." *Id.* (emphasis added).  The Eighth Circuit agreed.  Having successfully argued (through its owner) that other provisions of the DMCA are limited by their plain terms to providers that can remove infringing material, Bright House cannot be heard to complain that the same is true of § 512(f).  *See also Recording Indus. Ass'n of Am.*, 351 F.3d at 1233–37 (holding notice-and-takedown provisions did not apply to § 512(a) conduit provider).

### B.  Bright House does not and cannot plead the required mental state of "actual knowledge."

Bright House fails to plead that Plaintiffs made a "knowing misrepresentation," nor does it (or can it) plead any facts that would make such an allegation plausible.

A claim under § 512(f) is "an expressly limited cause of action" that requires "a demonstration of some *actual* knowledge of misrepresentation on the part of the copyright owner." *Iroko Partners Ltd. v. Devace Integrated LLC*, No. 1:12-CV-1194, 2014 WL 11716168, at *6 (N.D. Ga. Jan. 6, 2014) (emphasis added) (granting summary judgment on § 512(f) counterclaim because counterclaimant "failed to present evidence to show that [plaintiff] made

---

[2] To the extent Bright House takes issue with the reach of § 512(a), "it is the province of Congress, not the courts, to decide whether to rewrite the DMCA 'in order to make it fit a new and unforeseen internet architecture' and 'accommodate fully the varied permutations of competing interests that are inevitably implicated by such new technology.'" *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 777 (8th Cir. 2005) (quoting *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1238 (D.C. Cir. 2003)). Bright House is not entitled to rewrite the statute to concoct a claim that does not exist.

knowing misrepresentations in its takedown notices") (quoting *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004)); *see also Arista Records, Inc. v. Mp3Board, Inc.*, No. 00-CV-4660, 2002 WL 1997918, at *15 (S.D.N.Y. Aug. 29, 2002) (granting summary judgment on plaintiff's § 512(f) claim where "there is no evidence that any misrepresentation by the RIAA was made knowingly").

To defeat a motion to dismiss, therefore, Bright House must plead "some actual knowledge of misrepresentation on the part of the copyright owner." *Rossi*, 391 F.3d at 1004. Under this subjective standard, "[a] copyright owner cannot be liable simply because an unknowing mistake is made, *even if the copyright owner acted unreasonably in making the mistake*." *Id.* (emphasis added). Indeed, "it is a complete defense to a claim under § 512(f) that the party issuing a takedown notice had a subjective good faith belief that the use in question was not authorized." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 6:17-CV-710, 2019 WL 1014245, at *4 (M.D. Fla. Mar. 4, 2019) (quotation marks and citation omitted) (granting summary judgment on § 512(f) claim absent evidence of actual knowledge of misrepresentation).[3] Thus, if a copyright holder "forms a subjective good faith belief[,]" courts do not dispute that belief—"even if [they] would have reached the opposite conclusion." *Id.*

Bright House fails to meet this pleading requirement, for two reasons. *First*, its sole allegation regarding Plaintiffs' mental state—made on information and belief—is that Plaintiffs

---

[3] *See also* U.S. Copyright Office, SECTION 512 OF TITLE 17: A REPORT OF THE REGISTER OF COPYRIGHTS at 149–50 (May 2020) (concluding that Congress intended to adopt a subjective knowledge standard under § 512(f), rather than an objective standard asking whether a rightsholder "should have known"; also explaining that "[b]ecause Congress incorporated objective standards of liability in other provisions of the DMCA, the fact that it chose not to do so in section 512(f) indicates that Congress did not want an objective standard of liability for notices and counter-notices"), *available at* https://www.copyright.gov/policy/section512/section-512-full-report.pdf (last visited Aug. 11, 2020).

"knew or should have known, or acted with reckless indifference in failing to acquire knowledge," that at least some of their notices were inaccurate.  Countercl. ¶ 126.  But "knew or should have known" is an objective, negligence-based standard that does not apply to § 512(f) claims.  Indeed, an "'objective reasonableness' standard would be inconsistent with Congress's apparent intent [to] . . . protect potential violators from subjectively improper actions by copyright owners."  *Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005) (quoting *Rossi*, 391 F.3d at 1005); *see also Ouellette*, 2012 WL 1435703, at *3 ("Without the subjective standard, copyright owners such as [plaintiff] could face limitless lawsuits just by policing its copyrighted material on the internet."); *TD Bank, N.A. v. Hill*, No. 12-7188 (RBK/JS), 2015 WL 4523570, at *21 (D.N.J. July 27, 2015) (appropriate inquiry is not "whether a copyright owner *should have known* that it was making a material representation"; rather, § 512(f) applies only "where there is a demonstration of some *actual knowledge* of misrepresentation on the part of the copyright owner" (emphases in original; quotation omitted)).  Likewise, no court has ever held that an objective "reckless indifference" satisfies § 512(f)'s subjective knowledge requirement.  *See Piamba Cortes v. Am. Airlines, Inc*., 177 F.3d 1272, 1279 (11th Cir. 1999) (explaining that reckless disregard contemplates an "objective inquiry").[4]

---

[4] Some courts have incorrectly applied an objective knowledge standard on § 512(f) claims, based on one superseded California district court case.  *See Online Policy Grp. v. Diebold*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004) (deciding issue of "first impression" based only on definition of "knowing" in Black's Law Dictionary).  Importantly, *Diebold* was superseded by the Ninth Circuit's *Rossi* decision two months after it issued.  *See Rossi*, 391 F.3d at 1004–05 (§ 512(f) imposes liability only where there is "actual knowledge of misrepresentation," "even if the copyright owner acted unreasonably in making the mistake"); *see also Lenz v. Universal Music Corp*., 815 F.3d 1145, 1153–54 (9th Cir. 2016) (explaining that *Rossi* held a subjective "good faith belief" standard applies to § 512(f) claims).  Cases applying *Diebold*'s "knew or should have known" standard therefore rely on a superseded, incorrect standard.  *See, e.g.*, *Johnson v. New Destiny Christian Ctr. Church, Inc*., No. 6:17-CV-710, 2017 WL 3682357, at *3 (M.D. Fla. Aug. 25, 2017) (citing *Diebold*).

*Second*, and in all events, Bright House has not pleaded (nor could it) any facts that would support an allegation that Plaintiffs knowingly misrepresented that they owned or controlled certain works for which they sent notices.  As Bright House notes in its counterclaims, Plaintiffs' infringement notices "assert that the information in the notice is accurate" and that they have a "good faith belief that this activity is not authorized by the copyright owner, its agent, or the law."  Countercl. ¶ 69.  Although Bright House alleges on information and belief that the reason "Plaintiffs dropped at least some of these works" in January 2020 is because they did not own or control their copyrights, *id*. ¶ 66, that is pure speculation.  Copyright plaintiffs often make strategic decisions concerning which claims to pursue in a case and which to withhold.  *See, e.g.*, *Johnson*, 2019 WL 1014245, at *5 (finding that claims based "exclusively on speculation" or regarding "certain inaccuracies" are not sufficient); *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) (observing that "'[i]nformation and belief' does not mean pure speculation" and concluding that if plaintiff "had any facts to support [his] assertion" made on information and belief, "they should have been set forth"); *Ouellette v. Viacom Int'l, Inc.*, No. 10-CV-133, 2012 WL 850921, at *5 (D. Mont. Mar. 13, 2012) (dismissing § 512(f) claim for failure to plead knowing misrepresentation, explaining that "[i]nferences and implications based on conduct alone, however, are insufficient.  Allegations describing conduct that could be merely parallel to, or consistent with, conduct that would otherwise give rise to liability is not sufficient to satisfy the plausibility standard"), *report and recommendation adopted*,  2012 WL 1435703 (D. Mont. Apr. 25, 2012), *aff'd*, 671 F. App'x 972 (9th Cir. 2016).

Critically, however, even if Plaintiffs *had* dropped works for lack of ownership, that still would not support an inference that Plaintiffs knew *at the time* they sent the notices that they were inaccurate—which is what Bright House must allege.  *See, e.g.*, *Cabell v. Zimmerman*, No.

09 Civ. 10134, 2010 WL 996007, at *4–5 (S.D.N.Y. Mar. 12, 2010) (dismissing § 512(f) claim

where the complaint alleges no facts plausibly supporting allegation that defendant acted "with

actual knowledge *when he sent the takedown notice*") (emphasis added); *Ningbo Mizhihe I&E*

*Co. v. Does 1-200*, No 19 Civ. 6655, 2020 WL 2086216, at *3 (S.D.N.Y. Apr. 30, 2020)

(dismissing § 512(f) counterclaim where defendant made no allegations as to "whether or when"

plaintiff knew that its representations were false).

### C.  Bright House fails to identify any false notices or works that were the subject of false notices.

Bright House's § 512(f) claim also fails under *Twombly* because it fails to even identify

any notices in which Plaintiffs allegedly made a knowing misrepresentation, or a single dropped

work that allegedly was the subject of a false notice.  *See MP3Tunes, LLC v. EMI Grp., PLC*,

No. 07-CV-1844, 2008 WL 11508670, at *8 (S.D. Cal. Apr. 18, 2008) (dismissing § 512(f)

claim with prejudice, where claimant had not alleged a single track as "definitively lawful, non-

infringing, and wrongfully included in Defendants' cease-and-desist letter").

## II.  Bright House's FDUTPA claim should be dismissed with prejudice.

Bright House also alleges that sending allegedly inaccurate infringement notices—*i.e.*,

the same conduct underlying its § 512(f) claim—also constitutes a deceptive or unfair trade

practice under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  This

counterclaim is both preempted by the DMCA and fails to state a claim on its own terms.

### A.  The DMCA preempts Bright House's FDUTPA counterclaim.

Bright House's attempt to shoehorn allegedly inaccurate DMCA notices into a state law

claim under FDUTPA is preempted by the DMCA and should be dismissed.  A state law claim is

preempted when it regulates conduct in a field that Congress intended federal law to occupy

exclusively.  *See, e.g.*, *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998).

Congress's intent for federal law to occupy a field exclusively "'may be inferred from a scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it, or where an Act of Congress touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 486 (11th Cir. 2015) (quoting *English v. Gen. Electric Co.*, 496 U.S. 72, 78–79 (1990)).[5]

As numerous courts have held, the DMCA preempts state law claims based on alleged misrepresentations in infringement notices—like Bright House's FDUTPA claim—because Congress intended for federal law to *exclusively* govern the DMCA notice process. *See, e.g.*, *Quill Ink Books, Ltd. v. Soto*, No. 1:19-CV-476, Doc. No. 24 (E.D. Va. Am. Order filed Aug. 15, 2019) (tortious interference, defamation, and statutory conspiracy claims preempted because they "are all tied directly to the allegedly fraudulent DMCA takedown notices and [the claimant's] remedies lie in that statutory scheme, not in state law") (attached hereto as Exhibit 1); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. 10-CV-05696, 2011 WL 2690437, at *3–5 (N.D. Cal. July 8, 2011) (holding all state law claims based on false DMCA notices preempted, explaining that "a DMCA Takedown Notification is a creature of a federal statutory regime, and . . . that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification"); *Lenz v. Universal Music Corp.*, No. 07-CV-03783 JF, 2008 WL 962102, at *4 (N.D. Cal. Apr. 8, 2008) (same).

---

[5] Plaintiffs do not assert that Bright House's FDUTPA claim is preempted under the express preemption clause in the Copyright Act. *See* 17 U.S.C. § 301(b)(3). As an initial matter, the existence of an express preemption clause does not necessarily preclude the presence of implied preemption. *Irving*, 136 F.3d at 768. More importantly, however, § 301 preemption—which bars state law claims equivalent to the exclusive rights set forth in § 106 of the Copyright Act (*i.e.*, distribution, reproduction, etc.)—is irrelevant to the § 512 preemption analysis here.

Courts apply field preemption to the DMCA notice regime for several reasons. First, the DMCA (and the comprehensive notice-and-takedown regime set forth therein) is entirely a creature of federal law, and copyright law has been overwhelmingly controlled by Congress since the Copyright Act of 1976. As one court explained:

> The DMCA is a complex and comprehensive statutory regime that meticulously details the steps that providers must take to avoid liability and that copyright holders must take to enforce their rights. . . . Federal law's near-total occupation of the field of copyright law further supports an inference that the federal interest in creating remedies to ensure compliance with the DMCA "is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

*Stevens v. Vodka & Milk, LLC*, No. 117-CV-08603, U.S. Dist. LEXIS 43666, at *6–7 (S.D.N.Y. Mar. 12, 2018) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Second, the DMCA provides express remedies for false infringement notices, including a counter-notice system under Section 512(g) and a cause of action under § 512(f) that Bright House has claimed here (albeit insufficiently). *See* 17 U.S.C. §§ 512(f)–(g); *see also Stevens*, U.S. Dist. LEXIS 43666, at *6–7 ("The pervasive nature of the DMCA, including an express remedy for the very wrong that counterclaimants here allege, make[s] reasonable the inference that Congress left no room for the States to supplement the remedies outlined in the DMCA."). Leading copyright scholar "Professor Nimmer notes specifically that '[g]iven that a special provision of the Copyright Act itself regulates misrepresentation in such notifications, that provision constitutes the sole remedy for a customer who objects to its contents and their effects.'" *Lenz*, 2008 WL 962102, at *4 (quoting 1 Nimmer on Copyright 1.01[B][3][a] at 1-77) (dismissing state law claim as preempted by DMCA).

Third, some courts have found that state law causes of action stemming from allegedly false infringement notices conflict with and frustrate Congress's objectives in enacting the DMCA and are thus preempted under principles of conflict preemption. For example, in *Online*

*Policy Grp. v. Diebold*, the court dismissed the state law tort claim based on an allegedly improper takedown notice, holding that "[i]f adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable difference between state and federal law."  337 F. Supp. 2d at 1205–06.

### B.  Bright House fails to state a FDUTPA claim under Rules 12(b)(6) and 9(b).

Even if its FDUTPA claim were not preempted, Bright House nevertheless fails to allege the elements necessary to sustain the claim.  To state a claim under FDUTPA, a claimant "must allege (1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages." *Benjamin v. CitiMortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).  A deceptive act in violation of FDUTPA is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)) (quotation marks omitted).  "This standard requires a showing of 'probable, not possible deception' that is 'likely to cause injury to a reasonably relying consumer.'" *Zlotnick*, 480 F.3d at 1284 (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)).  An unfair practice "is one which causes substantial injury to a consumer which the consumer could not have reasonably avoided and which is not outweighed by countervailing benefits to the consumer or to competition." *Harrod v. Express Scripts, Inc.*, No. 8:17-cv-1607-T-30TGW, 2019 WL 8273650, at *4 (M.D. Fla. Aug. 16, 2019) (quoting *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014)).

Bright House's FDUTPA claim should be dismissed because Bright House (1) fails to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b); (2) fails to allege

a deceptive or unfair trade practice occurring in the conduct of "trade or commerce"; and (3) fails

to allege actual damages or harm to consumers resulting from Plaintiffs' notice program.

### i. Bright House fails to satisfy Rule 9(b)'s heightened pleading standard.

FDUTPA claims grounded in fraud must meet the heightened pleading standard under

Federal Rule of Civil Procedure 9(b).  *E.g.*, *Sunoptic Techs., LLC v. Integra Luxtec, Inc.*, No.

3:08-cv-878, 2009 WL 722320, at *2 (M.D. Fla. Mar. 18, 2009).  Each element of an FDUTPA

claim must be pled with particularity.  *Id.* at *3.  Bright House must therefore allege (a) the

precise statements or misrepresentations made; (b) the time, place, and person responsible for the

statement; (c) the content and manner in which these statements misled the claimant; and

(d) what the accused party gained by the alleged fraud.  *Brooks v. Blue Cross & Blue Shield of

Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997).[6]

Bright House's allegations fall far short of this standard.  *First*, Bright House fails to

identify a specific statement or representation that it claims was false, or the "time, place, and

person responsible" for such a statement.  Nor does Bright House even allege which specific

notices, out of more than one hundred thousand that Plaintiffs sent, were allegedly false.  Nor

does Bright House identify a specific dropped work that was the subject of an allegedly false

notice.  This alone defeats Bright House's FDUTPA claim.  *See, e.g.*, *Roberts v. Victoria's

Secret Stores, LLC*, No. 18-cv-61534, 2018 WL 8059094, at *6 (S.D. Fla. Dec. 3, 2018)

(dismissing FDUTPA claim when plaintiff "fail[ed] to identify the specific misrepresentation,

when it was made, where it was made, the manner in which it was made, or by whom it was

made" and failed to "specify the content of the alleged misrepresentation").  The closest Bright

---

[6] Some district courts in this Circuit have applied Rule 8 to FDUTPA claims *not* based on fraud,
but Rule 9(b) applies where, as here, the FDUTPA claim sounds in fraud.  *See, e.g.*, *Feliciano v.
Ginn Real Estate Co.*, No. 5:08-cv-00327-ORL-35-DAB, 2010 WL 11507487, at *2 (M.D. Fla.
June 4, 2010) (Scriven, J.).

House comes to making any such allegations is "upon information and belief" that "Plaintiffs dropped at least some of [their] works because" they do not own or control the copyrights. Countercl. ¶ 66.  Such an allegation falls far short of the required heightened pleading standard.

*Second*, Bright House fails to identify who the counterclaim-defendants are or who made the supposed misrepresentations.  At varying points in the counterclaim, Bright House ambiguously lumps together all 63 Plaintiffs.  *E.g.*, Countercl. ¶¶ 67–68, 74, 81.  In other places, it refers to the undifferentiated conduct of several dozen Record Company Plaintiffs.  *E.g.*, Countercl. ¶¶ 69, 71–73, 108–09.  Occasionally, the counterclaim allegations refer to the Music Publisher Plaintiffs.  *E.g.*, *id.* ¶¶ 70, 136.  Claim Two, which sets forth the elements of the FDUTPA claim, talks primarily of the Record Company Plaintiffs, *see id.* ¶¶ 139–51, but the prayer for relief on the same claim seeks damages from all Plaintiffs.  This ambiguous group pleading is inadequate.  *See Durham v. Whitney Info. Network, Inc.*, No. 06-CV-00687, 2009 WL 3783375, at *17 (M.D. Fla. Nov. 10, 2009) ("Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").  Without alleging particularized facts regarding the specific notices Bright House alleges contained misrepresentations—including which works are at issue, which Plaintiff(s) sent the notices, or "any other information that better identifies" the works and personnel involved—Bright House "fails to meaningfully provide notice" to Plaintiffs.  *Roberts*, 2018 WL 8059094, at *6.

### ii.  Bright House fails to allege a deceptive or unfair trade practice in trade or commerce.

More fundamentally, Bright House fails to allege a deceptive or unfair trade practice *in the course of trade or commerce*, as required.  *Economakis v. Butler & Hosch, P.A.*, 2014 WL

820623 (M.D. Fla. Mar. 3, 2014) ("There is a 'trade or commerce' component in FDUPTA claims that must also be satisfied.").  The FDUTPA defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."  Fla. Stat. § 501.203(8).  Courts consistently hold that pursuit of legal remedies falls outside FDUTPA's definition of "trade or commerce." *See, e.g.*, *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1374–77 (S.D. Fla. 2010) (granting summary judgment because "conduct ostensibly occurring during the exercise of a legal remedy—had zero connection whatsoever to any 'trade or commerce'"); *Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007) (dismissing FDUTPA claim involving pre-suit communications to collect debts because pursuit of legal remedies did not fall within FDUTPA's "trade or commerce" requirement), *aff'd* 288 F. App'x 571 (11th Cir. 2008).

*Economakis v. Butler & Hosch, P.A.*, 2014 WL 820623, is instructive.  After the plaintiff defaulted on a mortgage debt, the defendant, a debt collection company, sent the plaintiff a letter seeking a settlement prior to initiating a foreclosure action.  2014 WL 820623, at *1.  The plaintiff alleged that the demand letters misrepresented certain amounts due and owed by the plaintiff in violation of FDUTPA.  *Id.*  The court held that even if the demand letter did contain misrepresentations, the defendant was not engaged in "trade or commerce" by virtue of enforcing its legal rights and any misrepresentations in the letter did "not arise to the 'advertising, soliciting, providing, offering, or distributing' definition" of "trade or commerce" required to state a claim under FDUTPA.  *Id.* at *3.  Here, as in *Economakis* and other cases, Plaintiffs sent infringement notices to Bright House in pursuit of a legal remedy—*i.e.*, the notice process set

forth in the DMCA.  Bright House does not allege (nor could it) that Plaintiffs' DMCA notices

are "advertising, soliciting, providing, offering, or distributing . . . any good or service" to Bright

House or its subscribers.  *See* Fla. Stat. § 501.203(8).  There is simply no nexus between

Plaintiffs' actions in enforcing their copyrights through the DMCA-prescribed notice process and

"trade or commerce," as defined in FDUTPA.

### iii.  Bright House fails to allege cognizable harm to itself or consumers caused by allegedly false notices.

#### 1.  No actual damages.

Bright House fails to allege actual damages to itself or any consumers caused by

Plaintiffs' notices.  It is well-established that "a plaintiff may recover only actual damages

incurred as a consequence of a violation of [FDUTPA]."  *City First Mortg. v. Barton*, 988 So. 2d

82, 86 (Fla. 4th DCA 2008) (quotations omitted).  "[C]ourts have consistently applied a narrow

definition" of actual damages under FDUTPA, limiting them strictly to: "(1) the value between

what was promised and what was delivered; or (2) the total price paid for a valueless good or

service."  *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1323 (M.D.

Fla. 2016) (holding claim failed for lack of actual damages), *aff'd*, 703 F. App'x 814 (11th Cir.

2017); *see also Muy v. Int'l Bus. Machines Corp.*, No. 4:19-cv-14-MW/CAS, 2019 WL 8161747,

at *2 (N.D. Fla. June 5, 2019) (dismissing FDUTPA claim where plaintiff failed to "allege[] that

she was financially deprived" by defendants' conduct and thus could not meet the "narrow

definition" of actual damages under FDUTPA).  Bright House pleads neither.

Instead, Bright House claims that it incurred some unenumerated costs in operating a

preexisting automated system for handling infringement notices and regular customer service

operations, as well as suffering reputational harm and loss of goodwill with its subscribers.  *See*

Countercl. ¶¶ 32, 142–45.  But "FDUTPA does not provide for the recovery of nominal

damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Mortg.*, 988 So. 2d at 86 (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 873 (Fla. 2d DCA 2006)) (quotation marks omitted).

Bright House also fails to allege "facts supporting a plausible inference that any *consumers* have or are likely to have suffered damages." *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-cv-186, 2018 WL 905752, at *16 (M.D. Fla. Feb. 15, 2018) (emphasis added) (dismissing FDUTPA counterclaim where plaintiff allegedly misled consumers to believe plaintiff was authorized to distribute defendant's products, but defendant failed to allege harm to consumers by purchasing its products from a non-authorized distributor). At most, Bright House alleges that some of its subscribers may have received infringement notices that Bright House forwarded, *see* Countercl. ¶ 36, and that "[i]n certain circumstances, the subscribers question the veracity of the notices." *Id.* ¶ 113. But neither of these concerns the value of a promised good or service, as required. *HRCC, Ltd.*, 302 F. Supp. 3d at 1323.

## 2. No causation.

A FDUTPA claimant must also allege harm to consumers resulting from the allegedly deceptive or unfair trade practice. *CEMEX Constr.*, 2018 WL 905752, at *15. Harm that is "overly removed" from the conduct at issue and that requires "several somewhat vaguely defined links" to understand is insufficient under FDUTPA. *See, e.g.*, *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, No. 16-24431-CIV, 2018 WL 1393790, at *18, *21 (S.D. Fla. Jan. 26, 2018) (holding that plaintiff failed to sufficiently plead harm to consumers for purposes of FDUTPA claim when the complaint was "vague as to [the] alleged harm" and required the court "to take several logical steps" to digest).

The only harm Bright House alleges to its subscribers is through a daisy chain of Plaintiffs sending false notices, Bright House sending auto-generated emails to subscribers, and

some unidentified "tension" between Bright House and the subscribers.  Apart from its speculative vagueness, this fails to plead the element of causation.

### 3.   No threat of future harm for injunctive relief.

Bright House's request for injunctive relief under FDUTPA also fails because it has not "allege[d] a threat of future harm," as required.  *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2018 WL 4932871, at *4 (S.D. Fla. Apr. 23, 2018) (quotation omitted).  Here, Bright House has alleged only that it was somehow harmed by notices sent *years ago* in connection with the Dropped Works, but it has not alleged that Plaintiffs continue to send it inaccurate notices or will do so in the future.  Losses resulting from past injury, however, cannot support a claim for injunctive relief under FDUTPA.  *See, e.g.*, *Marjam Supply Co.*, 2018 WL 4932871, at *4 (dismissing FDUTPA claim where plaintiff sought lost profits from past injury and alleged no threat of future harm).

### III.  Amendment would be futile, and dismissal should therefore be with prejudice.

"Amendment is futile, and denial of leave to amend is justified, when a proposed amended pleading would not survive a motion to dismiss," as here.  *Robbins v. Robertson*, 782 F. App'x 794, 807 (11th Cir. 2019); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'") (quoting *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir.1985)).

On Bright House's § 512(f) claim, Bright House concedes it cannot remove or disable access to infringing content; that is fatal to the claim.  And Bright House's FDUTPA claim would be preempted regardless of any amendment because it is based expressly on Plaintiffs' notices sent under the comprehensive DMCA notice-and-takedown regime.  Likewise, no amendment to the FDUTPA claim could convert Plaintiffs' challenged notices, sent pursuant to a

legal remedy, into the "course of trade or commerce" or causing "actual damages," as narrowly defined under FDUTPA.  *See infra*.  Dismissal should therefore be with prejudice.  *See Townsend v. Dep't of Revenue*, No. 8:16-CV-1-MSS-AEP, 2016 WL 8914544, at *3 (M.D. Fla. Mar. 16, 2016) (Scriven, J.) (dismissing complaint with prejudice where amendment "would be futile because his claims would be barred for the various reasons discussed above"); *Kaiser v. DePuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1193 (M.D. Fla. 2013) (Scriven, J.) (same).

## **CONCLUSION**

For the reasons above, Bright House's counterclaims should be dismissed with prejudice.

Dated: August 11, 2020

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Respectfully submitted,

*/s/  Jeffrey M. Gould*
Matthew J. Oppenheim
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com

Bryan D. Hull
Florida Bar No. 20969
BUSH ROSS, P.A.
1801 North Highland Avenue
P.O. Box 3913
Tampa, Florida  33601-3913
Telephone: (813) 224-9255
bhull@bushross.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2020, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Jeffrey M. Gould*