# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al*., | |
| Plaintiffs, | |
| v. | Case No. 8:19-cv-00710-MSS-TGW |
| BRIGHT HOUSE NETWORKS, LLC | |
| Defendant. | |
| BRIGHT HOUSE NETWORKS, LLC, | |
| Counter-Plaintiff, | |
| v. | |
| UMG RECORDINGS, INC., *et al*., | |
| Counter-Defendants, and | |
| RECORDING INDUSTRY ASSOCIATION OF AMERICA and MARKMONITOR, INC., | |
| Counter-Defendants. | |

**SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL; INJUNCTIVE RELIEF SOUGHT**

Defendant Bright House Networks, LLC ("Defendant" or "Bright House")[1] by and through

its counsel, hereby answers and asserts its affirmative defenses to the First Amended Complaint

---

[1] On or about January 1, 2020, Bright House Networks, LLC changed its name to Spectrum Sunshine State, LLC. It filed an amendment to its corporate registration in Florida showing the new name on or about January 2, 2020. To avoid confusion, for purposes of this litigation, which was commenced in 2019, Defendant will continue to be referred to as "Bright House Networks, LLC" or "Bright House."

1

of Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Universal/MCA Music Limited, Universal/MCA Music Publishing Pty. Limited, Music Corporation of America, Inc., Musik Edition Discoton GmbH, Polygram Publishing, Inc., Songs of Universal, Inc., Warner Records Inc. (f/k/a Warner Bros. Records Inc.), Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Maverick Recording Company, Nonesuch Records Inc., Rhino Entertainment Company, The All Blacks U.S.A., Inc., Warner Music Inc., Warner Records/SIRE Ventures LLC, WEA International Inc., Warner Chappell Music, Inc. (f/k/a Warner/Chappell Music, Inc.), Warner-Tamerlane Publishing Corp., W Chappell Music Corp d/b/a WC Music Corp. (f/k/a WB Music Corp.), W.C.M. Music Corp (f/k/a W.B.M. Music Corp.), Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Chappell & Co. Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, The Century Family, Inc., Volcano Entertainment III, LLC, Zomba Recordings LLC, Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Jemaxal Music Inc., EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI U Catalog Inc., Famous Music LLC, Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., and Stone Diamond Music Corp. (collectively, the "Plaintiffs"), dated January 6, 2020 (the "First Amended Complaint") as follows:

## INTRODUCTION[2]

1.      Plaintiffs are record companies that produce, manufacture, distribute, sell, and license commercial sound recordings, and music publishers that acquire, license, and otherwise exploit musical compositions, both in the United States and internationally. Through their enormous investments of money, time, and exceptional creative efforts, Plaintiffs and their representative recording artists and songwriters have developed and marketed some of the world's most famous and popular music. Plaintiffs own and/or control exclusive rights to the copyrights to some of the most famous sound recordings performed by classic artists and contemporary superstars, as well as the copyrights to large catalogs of iconic musical compositions and modern hit songs. Their investments and creative efforts have shaped the musical landscape as we know it, both in the United States and around the world.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 1 of the First Amended Complaint and on that basis denies those allegations.

2.      As one of the largest Internet service providers ("ISPs") in the country, Bright House has marketed and sold high-speed Internet services to consumers nationwide. Through the provision of those services, Bright House has knowingly contributed to, and reaped substantial profits from, massive copyright infringement committed by thousands of its subscribers, causing great harm to Plaintiffs, their recording artists and songwriters, and others whose livelihoods depend upon the lawful acquisition of music. Bright House's contribution to its subscribers'

---

[2] For the Court's convenience, Defendant has reproduced the headings from Plaintiffs' First Amended Complaint. Defendant does not thereby concede, affirm, or otherwise adopt any of those headings.

infringement is both willful and extensive, and renders Bright House equally liable. Indeed, for years, Bright House deliberately refused to take reasonable measures to curb customers from using its Internet services to infringe on others' copyrights, including Plaintiffs' copyrights—even after Bright House became aware of particular customers engaging in specific, repeated acts of infringement. Plaintiffs' representatives (as well as others) sent hundreds of thousands of statutory infringement notices to Bright House, under penalty of perjury. Those notices advised Bright House of its subscribers' blatant and systematic use of Bright House's Internet service to illegally download, copy, and distribute Plaintiffs' copyrighted music through BitTorrent and other online file-sharing services. Rather than working with Plaintiffs to curb this massive infringement, Bright House did nothing, choosing to prioritize its own profits over its legal obligations.

Answer:      Defendant admits that Bright House operates as an Internet service provider, and markets and sells high-speed Internet services to consumers. Defendant admits that it received notices of alleged infringement from third parties, but lacks knowledge or information as to whether and which of these notices were sent on behalf of which Plaintiffs, whether such notices complied with statutory requirements, and whether they were made under penalty of perjury, and on that basis, Bright House denies those allegations. Defendant denies the remaining allegations in Paragraph 2 of the First Amended Complaint.

3.      It is well-established law that a party may not assist someone it knows is engaging in copyright infringement. Further, when a party has a direct financial interest in the infringing activity, and the right and practical ability to stop or limit it, that party must act. Ignoring and flouting those basic responsibilities, Bright House deliberately turned a blind eye to its subscribers' infringement. Bright House failed to terminate or otherwise take meaningful action against the accounts of repeat infringers of which it was aware. Despite its professed commitment to taking

action against repeat offenders, Bright House routinely thumbed its nose at Plaintiffs by continuing to provide service to subscribers it knew to be serially infringing copyrighted sound recordings and musical compositions. In reality, Bright House operated its service as an attractive tool and safe haven for infringement.

<u>Answer:</u>      The first two sentences of Paragraph 3 of the First Amended Complaint constitute Plaintiffs' characterization of copyright law and legal conclusions to which Defendant is not obligated to respond. Defendant denies the remaining allegations of Paragraph 3 of the First Amended Complaint.

4.      Bright House has derived an obvious and direct financial benefit from its customers' infringement. The unlimited ability to download and distribute Plaintiffs' works through Bright House's service has served as a draw for Bright House to attract, retain, and charge higher fees to subscribers. By failing to terminate the accounts of specific recidivist infringers known to Bright House, Bright House obtained a direct financial benefit from its subscribers' continuing infringing activity. That financial benefit included improper revenue that it would not have received had it appropriately shut down those accounts. Bright House decided not to terminate infringers because it wanted to maintain the revenue that is generated from their accounts.

<u>Answer:</u>      Defendant denies the allegations in Paragraph 4 of the First Amended Complaint.

5.      The infringing activity of Bright House's subscribers that is the subject of Plaintiffs' claims, and for which Bright House is secondarily liable, occurred after Bright House received multiple notices of each subscriber's infringing activity. Specifically, Plaintiffs seek relief for claims that accrued between March 24, 2013 and May 17, 2016 for infringement of works by

Bright House subscribers after those particular subscribers were identified to Bright House in multiple infringement notices.[3] These claims have been preserved through tolling agreements entered into with Bright House in March, April, and June 2016, as applicable.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 5 of the First Amended Complaint regarding the nature of Plaintiffs' claims, but denies that Plaintiffs are entitled to any relief, including for any period of time. Defendant admits that it entered into tolling agreements with certain of the Plaintiffs, but denies that those tolling agreements preserved all of Plaintiffs' claims. Defendant denies the remaining allegations of Paragraph 5 of the First Amended Complaint.

## NATURE OF ACTION

6.        This is a civil action in which Plaintiffs seek damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101, et seq.

Answer:        Defendant admits that Plaintiffs have filed this action under the copyright laws of the United States, but denies that there has been any wrongdoing.

7.        This Court has original subject matter jurisdiction over Plaintiffs' copyright infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

Answer:        Defendant admits that this Court has subject matter jurisdiction over Plaintiffs' claims.

8.        This Court has personal jurisdiction over Bright House pursuant to Fla. Stat. § 48.193. Bright House has continuously and systematically transacted business in Florida and

---

[3] Specifically, the Universal Plaintiffs seek relief for claims that accrued on or after March 24, 213; the Sony Music Plaintiffs and Warner Plaintiffs seek relief for claims that accrued on or after April 18, 2013; and the Sony/ATV and EMI Plaintiffs seek relief for claims that accrued on or after June 15, 2013.

maintained sizable operations in the state—employing thousands of people, and providing an array of services to customers, within the state during the relevant time period. Bright House has engaged in substantial activities purposefully directed at Florida from which Plaintiffs' claims arise, including establishing significant network management operations in Florida; employing individuals within Florida with responsibility for overseeing its network and subscriber use policies; providing Internet service to Florida subscribers who used Bright House's network to directly and repeatedly infringe Plaintiffs' copyrights; continuing to provide Internet service to, and failing to suspend or terminate the accounts of Florida customers, even after receiving multiple notices of their infringing activity; advertising its high-speed Internet services in Florida to serve as a draw for subscribers who sought faster download speeds to facilitate their direct and repeated infringements; and/or responding or failing to respond to repeated notices of copyright infringement directed to infringing subscribers located in the state.

     <u>Answer:</u>     Defendant admits that Bright House conducts business in Florida, has employees in Florida, provides services to customers in Florida, and maintains network management operations in Colorado. Defendant denies the remaining allegations in Paragraph 8 of the First Amended Complaint.

     9.     Much of the misconduct complained of herein arises directly from Bright House's forum-directed activities—including specific and continuing acts of infringement by specific subscribers using Bright House's network; Bright House's awareness of those activities; Bright House's receipt of and failure to act in response to Plaintiffs' notices of infringement activity; and Bright House's failure to take reasonable measures to terminate repeat infringers.

     <u>Answer:</u>     Defendant denies that there has been any unlawful conduct by Defendant giving rise to the claims in this case. Defendant lacks knowledge or information sufficient to admit

or deny the allegations in Paragraph 9 regarding the residence or location of any allegedly infringing subscribers, and on that basis denies the allegation. Defendant denies the remaining allegations in Paragraph 9 of the First Amended Complaint.

10.     Many of the acts complained of herein occurred in Florida and in this judicial district. For example, a number of egregious repeat infringers, who are Bright House subscribers, reside in and infringed Plaintiffs' rights in Florida and this judicial district using Internet service provided by Bright House in the state. Indeed, Plaintiffs have identified thousands of Bright House subscribers who appear to reside in Florida and who have repeatedly infringed Plaintiffs' copyrighted works. For example, one Bright House subscriber believed to be located in this district, with IP address 75.115.37.74 at the time of infringement, was identified in infringement notices 174 times between August 13, 2013 and September 24, 2014. A different Bright House subscriber believed to be located in this district, with IP address 75.115.115.76, was identified in infringement notices 88 times between August 20, 2013 and September 24, 2014. Yet another Bright House subscriber believed to be located in this district, with IP address 75.115.227.25, was identified in infringement notices 87 times between August 22, 2013 and November 27, 2014. Still another Bright House subscriber believed to be located in this district, with IP address 71.47.207.198, was identified in infringement notices 146 times between March 5, 2014 and February 27, 2015. Yet another Bright House subscriber believed to be located in this district, with IP address 142.196.247.23 at the time of the infringing conduct, was identified in infringement notices 203 times between December 21, 2012 and November 27, 2014.

Answer:     Defendant denies that there has been any unlawful conduct by Defendant giving rise to the claims in this case. Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 10 regarding the residence, location or identity of any

allegedly infringing subscribers, and on that basis denies the allegation. Defendant denies the remaining allegations in Paragraph 10.

11.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c), and 1400(a). A substantial part of the acts of infringement, and other events and omissions complained of herein, occur or have occurred in this district, and this is a district in which Bright House resides or may be found.

<u>Answer:</u>        Defendant denies that there has been any unlawful conduct by Defendant giving rise to the claims in this case. Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 11 regarding the residence or location of any allegedly infringing subscribers, and on that basis denies the allegation. Paragraph 11 contains legal conclusions to which no response is required. To the extent that a response is required, Defendant denies the remaining allegations of Paragraph 11.

## **PLAINTIFFS AND THEIR COPYRIGHTED MUSIC**

12.     Plaintiffs are the copyright owners of, and/or control exclusive rights with respect to, millions of sound recordings (i.e., recorded music) and/or musical compositions (i.e., the songs embodied in the sound recordings), including many written and recorded by some of the most prolific and well-known songwriters and recording artists throughout the world.

<u>Answer:</u>        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 12 of the First Amended Complaint and on that basis denies those allegations.

13.     Plaintiff UMG Recordings, Inc. ("UMG") is a Delaware corporation with its principal place of business at 2220 Colorado Avenue, Santa Monica, California 90404.

<u>Answer:</u>        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 13 of the First Amended Complaint and on that basis denies those allegations.

14.     Plaintiff Capitol Records, LLC ("Capitol Records") is Delaware Limited Liability Company with its principal place of business at 1750 N. Vine Street, Los Angeles, California 90068.

<u>Answer:</u>        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 14 of the First Amended Complaint and on that basis denies those allegations.

15.     Plaintiff Warner Records Inc. (f/k/a Warner Bros. Records Inc.) ("WRI") is a Delaware corporation with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

<u>Answer:</u>        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 15 of the First Amended Complaint and on that basis denies those allegations.

16.     Plaintiff Atlantic Recording Corporation ("Atlantic") is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York 10019.

<u>Answer:</u>        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 16 of the First Amended Complaint and on that basis denies those allegations.

17.     Plaintiff Bad Boy Records LLC ("Bad Boy") is a Delaware Limited Liability Company with its principal place of business at 1633 Broadway, New York, New York 10019.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 17 of the First Amended Complaint and on that basis denies those allegations.

18.    Plaintiff Elektra Entertainment Group Inc. ("Elektra") is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York 10019.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 18 of the First Amended Complaint and on that basis denies those allegations.

19.    Plaintiff Fueled By Ramen LLC ("FBR") is a Delaware Limited Liability Company with its principal place of business at 1633 Broadway, New York, New York 10019.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 19 of the First Amended Complaint and on that basis denies those allegations.

20.    Plaintiff Maverick Recording Company ("Maverick") is a California general partnership, with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 20 of the First Amended Complaint and on that basis denies those allegations.

21.    Plaintiff Nonesuch Records Inc. ("Nonesuch") is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York 10019.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 21 of the First Amended Complaint and on that basis denies those allegations.

22.      Plaintiff Rhino Entertainment Company ("Rhino") is a Delaware corporation, with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 22 of the First Amended Complaint and on that basis denies those allegations.

23.      Plaintiff The All Blacks U.S.A., Inc. ("The All Blacks") is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York 10019.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 23 of the First Amended Complaint and on that basis denies those allegations.

24.      Plaintiff Warner Music Inc. ("Warner Music") is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York 10019.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 24 of the First Amended Complaint and on that basis denies those allegations.

25.      Plaintiff Warner Records/SIRE Ventures LLC ("Warner Records/SIRE") is a Delaware Limited Liability Company with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 25 of the First Amended Complaint and on that basis denies those allegations.

26.     Plaintiff WEA International Inc. ("WEA") is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York 10019.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 26 of the First Amended Complaint and on that basis denies those allegations.

27.     Plaintiff Sony Music Entertainment ("Sony") is a Delaware general partnership, the partners of which are citizens of New York and Delaware. Sony's headquarters and principal place of business are located at 25 Madison Avenue, New York, New York 10010.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 27 of the First Amended Complaint and on that basis denies those allegations.

28.     Plaintiff Arista Music ("Arista Music") is a New York partnership with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 28 of the First Amended Complaint and on that basis denies those allegations.

29.     Plaintiff Arista Records LLC ("Arista Records") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 29 of the First Amended Complaint and on that basis denies those allegations.

30.     Plaintiff LaFace Records LLC ("LaFace") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 30 of the First Amended Complaint and on that basis denies those allegations.

31.     Plaintiff Provident Label Group, LLC ("Provident") is a Delaware Limited Liability Company with its principal place of business at 741 Cool Springs Boulevard, Franklin, Tennessee 37067.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 31 of the First Amended Complaint and on that basis denies those allegations.

32.     Plaintiff Sony Music Entertainment US Latin ("Sony Latin") is a Delaware Limited Liability Company with its principal place of business at 3390 Mary Street, Suite 220, Coconut Grove, Florida 33133.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 32 of the First Amended Complaint and on that basis denies those allegations.

33.     Plaintiff The Century Family, Inc. ("Century") is a California corporation with its principal place of business at 12706 West Washington Boulevard, Culver City, California 90066.

14

Answer:         Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 33 of the First Amended Complaint and on that basis denies those allegations.

34.     Plaintiff Volcano Entertainment III, LLC ("Volcano") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:         Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 34 of the First Amended Complaint and on that basis denies those allegations.

35.     Plaintiff Zomba Recording LLC ("Zomba") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:         Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 35 of the First Amended Complaint and on that basis denies those allegations.

36.     Plaintiffs UMG, Capitol Records, WRI, Atlantic, Bad Boy, Elektra, FBR, Nonesuch, Maverick, Rhino, The All Blacks, Warner Music, Warner Records/SIRE, WEA, Sony, Arista Music, Arista Records, LaFace, Provident, Sony Latin, Century, Volcano, and Zomba are referred to herein collectively as the "Record Company Plaintiffs."

Answer:         Paragraph 36 of the First Amended Complaint does not contain factual allegations to which Defendant is obligated to respond.

37.     The Record Company Plaintiffs are some of the largest record companies in the world, engaged in the business of producing, manufacturing, distributing, selling, licensing, and otherwise exploiting sound recordings in the United States through various media. They invest

substantial money, time, effort, and talent in creating, advertising, promoting, selling, and licensing unique and valuable sound recordings embodying the performances of their exclusive recording artists.

     <u>Answer:</u>     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 37 of the First Amended Complaint and on that basis denies those allegations.

     38.     Plaintiff Universal Music Corp. ("UMC") is a California corporation with its principal place of business at 2100 Colorado Avenue, Santa Monica, California 90404.

     <u>Answer:</u>     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 38 of the First Amended Complaint and on that basis denies those allegations.

     39.     Plaintiff Universal Music – MGB NA LLC ("MGB") is a California Limited Liability Company with its principal place of business at 2100 Colorado Avenue, Santa Monica, California 90404.

     <u>Answer:</u>     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 39 of the First Amended Complaint and on that basis denies those allegations.

     40.     Plaintiff Universal Music Publishing Inc. ("Universal Music Publishing") is a California corporation with its principal place of business at 2100 Colorado Avenue, Santa Monica, California 90404.

     <u>Answer:</u>     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 40 of the First Amended Complaint and on that basis denies those allegations.

41.     Plaintiff Universal Music Publishing AB ("AB") is a company organized under the laws of Sweden.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 41 of the First Amended Complaint and on that basis denies those allegations.

42.     Plaintiff Universal Music Publishing Limited ("Publishing Limited") is a company incorporated under the laws of England and Wales.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 42 of the First Amended Complaint and on that basis denies those allegations.

43.     Plaintiff Universal Music Publishing MGB Limited ("MGB Limited") is a company incorporated under the laws of England and Wales.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 43 of the First Amended Complaint and on that basis denies those allegations.

44.     Plaintiff Universal Music – Z Tunes LLC ("Z Tunes") is a California corporation with its principal place of business at 2100 Colorado Avenue, Santa Monica, California 90404.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 44 of the First Amended Complaint and on that basis denies those allegations.

45.     Plaintiff Universal/MCA Music Limited ("MCA Limited") is a company incorporated under the laws of England and Wales.

Answer:       Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 45 of the First Amended Complaint and on that basis denies those allegations.

46.    Plaintiff Universal/MCA Music Publishing Pty. Limited ("MCA Publishing Limited") is a company organized under the laws of the Australia.

Answer:       Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 46 of the First Amended Complaint and on that basis denies those allegations.

47.    Plaintiff Music Corporation of America, Inc. ("Music Corp.") is a California corporation with its principal place of business at 2100 Colorado Avenue, Santa Monica, California 90404.

Answer:       Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 47 of the First Amended Complaint and on that basis denies those allegations.

48.    Plaintiff Musik Edition Discoton GmbH ("Musik Edition") is a company incorporated under the laws of Germany.

Answer:       Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 48 of the First Amended Complaint and on that basis denies those allegations.

49.    Plaintiff Polygram Publishing, Inc. ("Polygram Publishing") is a California corporation with its principal place of business at 2100 Colorado Avenue, Santa Monica, California 90404.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 49 of the First Amended Complaint and on that basis denies those allegations.

50.     Plaintiff Songs of Universal, Inc. ("Songs of Universal") is a California corporation with its principal place of business at 2100 Colorado Avenue, Santa Monica, California 90404.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 50 of the First Amended Complaint and on that basis denies those allegations.

51.     Plaintiff Warner Chappell Music, Inc. (f/k/a Warner/Chappell Music, Inc.) ("Warner Chappell") is a Delaware corporation with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 51 of the First Amended Complaint and on that basis denies those allegations.

52.     Plaintiff Warner-Tamerlane Publishing Corp. ("Warner-Tamerlane") is a California corporation with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 52 of the First Amended Complaint and on that basis denies those allegations.

(45)[4] 53.      Plaintiff W Chappell Music Corp. d/b/a WC Music Corp. (f/k/a WB Music Corp.) ("WC Music") is a California corporation with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 53 of the First Amended Complaint and on that basis denies those allegations.

(46) 54.      Plaintiff W.C.M. Music Corp. (f/k/a W.B.M. Music Corp.) ("W.C.M.") is a Delaware corporation with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 54 of the First Amended Complaint and on that basis denies those allegations.

(47) 55.      Plaintiff Unichappell Music Inc. ("Unichappell") is a Delaware corporation with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 55 of the First Amended Complaint and on that basis denies those allegations.

---

[4] There is a paragraph numbering error in Plaintiffs' First Amended Complaint. ECF 96-1. Paragraph 52 on page 12 is followed by Paragraph 45 on page 13, and the numbering continues sequentially from paragraph 45 to the end of the document. For the remainder of this Answer, the erroneous First Amended Complaint numbering is placed in parenthesis before the sequential paragraph numbering, for ease of reference.

(48) 56.     Plaintiff Rightsong Music Inc. ("Rightsong Music") is a Delaware corporation with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 56 of the First Amended Complaint and on that basis denies those allegations.

(49) 57.     Plaintiff Cotillion Music, Inc. ("Cotillion") is a Delaware corporation with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 57 of the First Amended Complaint and on that basis denies those allegations.

(50) 58.     Plaintiff Intersong U.S.A., Inc. ("Intersong") is a Delaware corporation with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 58 of the First Amended Complaint and on that basis denies those allegations.

(51) 59.     Chappell & Co. Inc. ("Chappell") is a Delaware corporation with its principal place of business at 777 South Santa Fe Avenue, Los Angeles, California 90021.

Answer:     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 59 of the First Amended Complaint and on that basis denies those allegations.

(52) 60.     Plaintiff Sony/ATV Music Publishing LLC ("Sony/ATV") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 60 of the First Amended Complaint and on that basis denies those allegations.

(53) 61.     Plaintiff EMI Al Gallico Music Corp. ("EMI Al Gallico"), an affiliate of Sony/ATV, is a Delaware corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 61 of the First Amended Complaint and on that basis denies those allegations.

(54) 62.     Plaintiff EMI April Music Inc. ("EMI April"), an affiliate of Sony/ATV, is a Connecticut corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:     Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 62 of the First Amended Complaint and on that basis denies those allegations.

(55) 63.     Plaintiff EMI Blackwood Music Inc. ("EMI Blackwood"), an affiliate of Sony/ATV, is a Connecticut corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:         Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 63 of the First Amended Complaint and on that basis denies those allegations.

(56) 64.         Plaintiff Colgems-EMI Music Inc. ("EMI Colgems"), an affiliate of Sony/ATV, is a Delaware corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:         Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 64 of the First Amended Complaint and on that basis denies those allegations.

(57) 65.         Plaintiff EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music ("EMI Full Keel"), an affiliate of Sony/ATV, is a New York corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:         Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 65 of the First Amended Complaint and on that basis denies those allegations.

(58) 66.         Plaintiff EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music ("EMI Longitude"), an affiliate of Sony/ATV, is a New York corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:         Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 66 of the First Amended Complaint and on that basis denies those allegations.

(59) 67.       EMI   Entertainment   World   Inc.   d/b/a   EMI   Foray   Music   ("EMI Entertainment"), an affiliate of Sony/ATV, is a Delaware corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:       Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 67 of the First Amended Complaint and on that basis denies those allegations.

(60) 68.       EMI Jemaxal Music Inc. ("EMI Jemaxal"), an affiliate of Sony/ATV, is a Delaware corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:       Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 68 of the First Amended Complaint and on that basis denies those allegations.

(61) 69.       Plaintiff EMI Feist Catalog Inc. ("EMI Feist"), an affiliate of Sony/ATV, is a New York corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:       Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 69 of the First Amended Complaint and on that basis denies those allegations.

(62) 70.       Plaintiff EMI Miller Catalog Inc. ("EMI Miller"), an affiliate of Sony/ATV, is a New York corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 70 of the First Amended Complaint and on that basis denies those allegations.

(63) 71.        Plaintiff EMI Mills Music, Inc. ("EMI Mills"), an affiliate of Sony/ATV, is a Delaware corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 71 of the First Amended Complaint and on that basis denies those allegations.

(64) 72.        Plaintiff EMI U Catalog Inc. ("EMI U"), an affiliate of Sony/ATV, is a New York corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 72 of the First Amended Complaint and on that basis denies those allegations.

(65) 73.        Plaintiff Famous Music LLC ("Famous Music") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 73 of the First Amended Complaint and on that basis denies those allegations.

(66) 74.      Plaintiff Jobete Music Co. Inc. ("Jobete"), an affiliate of Sony/ATV, is a Michigan corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010. Plaintiff Stone Agate Music ("Stone Agate") is a division of Jobete.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 74 of the First Amended Complaint and on that basis denies those allegations.

(67) 75.      Plaintiff Screen Gems-EMI Music Inc. ("Gems-EMI"), an affiliate of Sony/ATV, is a Delaware corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 75 of the First Amended Complaint and on that basis denies those allegations.

(68) 76.      Plaintiff Stone Diamond Music Corp. ("Stone"), an affiliate of Sony/ATV, is a Michigan corporation with its principal place of business at 25 Madison Avenue, New York, New York 10010.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 76 of the First Amended Complaint and on that basis denies those allegations.

(69) 77.      Plaintiffs UMC, MGB, Universal Music Publishing, AB, Publishing Limited, MGB Limited, Z Tunes, MCA Limited, MCA Publishing Limited, Music Corp., Musik Edition, Polygram Publishing, Songs of Universal, Warner Chappell, Warner-Tamerlane, WC Music, W.C.M., Unichappell, Rightsong Music, Cotillion, Intersong, Chappell, Sony/ATV, EMI Al Gallico, EMI April, EMI Blackwood, EMI Colgems, EMI Full Keel, EMI Longitude, EMI

Entertainment, EMI Jemaxal, EMI Feist, EMI Miller, EMI Mills, EMI U, Famous Music, Jobete, Stone Agate, Gems-EMI, and Stone are referred to herein collectively as the "Music Publisher Plaintiffs."

Answer:      Paragraph 77 of the First Amended Complaint does not contain factual allegations to which Defendant is obligated to respond.

(70) 78.      The Music Publisher Plaintiffs are leading music publishers engaged in the business of acquiring, owning, publishing, licensing, and otherwise exploiting copyrighted musical compositions. Each invests substantial money, time, effort, and talent to acquire, administer, publish, license, and otherwise exploit such copyrights, on its own behalf and on behalf of songwriters and others who have assigned exclusive copyright interests to the Music Publisher Plaintiffs.

Answer:      Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 78 of the First Amended Complaint and on that basis denies those allegations.

(71) 79.      Plaintiffs own and/or control in whole or in part the copyrights and/or exclusive rights in innumerable popular sound recordings and musical compositions, including the sound recordings listed on Exhibit A and musical compositions listed on Exhibit B, both of which are illustrative and non-exhaustive. All of the sound recordings and musical compositions listed on Exhibits A and B have been registered with the U.S. Copyright Office.

Answer:      Defendant admits that Exhibits A and B to the First Amended Complaint[5] purport to list the works alleged by Plaintiffs in this action. Defendant lacks knowledge or

---

[5] Plaintiffs' original Exhibits A and B to their First Amended Complaint, ECF 94-1 and 94-2, were ordered to be replaced with amended versions on February 18, 2020. ECF 117. As described in

information sufficient to admit or deny the remaining allegations of Paragraph 79 of the First

Amended Complaint and on that basis denies those allegations.

## BRIGHT HOUSE AND ITS ACTIVITIES

(72) 80.     Bright House is a Delaware Limited Liability Company with its principal

place of business at 12405 Powerscourt Drive, St. Louis, Missouri 63131. Bright House maintains,

and at all pertinent times has maintained, substantial operations and offices in Florida.

Answer:     Defendant admits that Bright House is a Delaware limited liability company

and that Bright House operates an office in Florida but denies the remaining allegations in

Paragraph 80 of the First Amended Complaint.

(73) 81.     Bright House's customers have paid substantial subscription fees for access

to its high-speed Internet network, with Bright House offering a range of options that allow

subscribers to purchase Internet service based on different downloading speeds.

Answer:     Defendant admits that, during the time period relevant to Plaintiffs'

allegations, Bright House offered various products at different price points. Defendant denies the

remaining allegations in Paragraph 85 of the First Amended Complaint.

(74) 82.     Many of Bright House's subscribers are primarily drawn to its service

because it allows them to use Bright House's network to download music and other copyrighted

content—including unauthorized content—as efficiently as possible. Accordingly, in its consumer

marketing material, Bright House has touted how its service enables subscribers to download and

upload large amounts of content, including music, in seconds. In exchange for this service, Bright

House charges its customers monthly fees ranging in price based on the type of service.

---

detail in Bright House's Counterclaims below, these amended versions of Exhibits A and B
dropped hundreds of works that Plaintiffs had previously asserted.

Answer:        Defendant admits that its Internet service allows customers to download content. Defendant admits that, during the time period relevant to Plaintiffs' allegations, Bright House offered various products at different price points. Defendant denies the remaining allegations in Paragraph 82 of the First Amended Complaint.

(75) 83.        At the same time, Bright House has consistently and actively engaged in network management practices to suit its own purposes. This includes monitoring for, and taking action against, spam and other unwanted activity that might otherwise interfere with its provision of Internet service to its subscribers. But Bright House has gone out of its way not to take action against subscribers engaging in repeated copyright infringement, at the expense of copyright owners, ultimately forcing Plaintiffs to bring this litigation.

Answer:        Defendant denies the allegations in Paragraph 86 of the First Amended Complaint.

(76) 84.        At all pertinent times, Bright House knew that its subscribers routinely used its networks for illegally downloading and uploading copyrighted works, especially music. As described below, Plaintiffs repeatedly notified Bright House that many of its subscribers were actively utilizing its service to infringe their works. Those notices gave Bright House the specific identities of its subscribers engaged in copyright infringement, referred to by their unique Internet Protocol or "IP" addresses. Yet Bright House persistently turned a blind eye to the massive infringement of Plaintiffs' works occurring over its network. Bright House condoned the illegal activity because it was popular with subscribers and acted as a draw to attract and retain new and existing subscribers. Bright House's customers, in turn, continued using Bright House's services to infringe Plaintiffs' copyrights. Bright House undoubtedly recognized that if it terminated or otherwise prevented its repeat infringer subscribers from using its service to infringe, or made it

less attractive for such use, Bright House would enroll fewer new subscribers, lose existing subscribers, and ultimately lose revenue. For those account holders and subscribers who wanted to download files illegally at faster speeds, Bright House obliged them in exchange for higher rates. In other words, the greater the bandwidth its subscribers required for pirating content, the more money Bright House made.

> Answer:        Defendant denies the allegations in Paragraph 84 of the First Amended Complaint.

## THE GLOBAL P2P PIRACY PROBLEM

### General Landscape

(77) 85.        While the digital age has brought many benefits, one notable exception is its facilitation of unprecedented online piracy of music and other copyrighted works. As the Supreme Court has recognized, the level of copyright infringement on the Internet is "staggering." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 923 (2005).

> Answer:        Defendant admits that Paragraph 85 includes an accurate one-word quote from the Supreme Court of the United States, but Defendant denies the allegations in Paragraph 88 of the First Amended Complaint that reflect the characterization of the Supreme Court's opinion on the basis that the opinion of the Supreme Court speaks for itself. Defendant denies the remaining allegations in Paragraph 88 of the First Amended Complaint.

(78) 86.        Use of peer-to-peer ("P2P") distribution systems has dominated unauthorized downloading and distribution of copyrighted music. P2P is a generic term used to refer to a decentralized network of users whereby each Internet-connected participant (i.e., a "peer" or a "node") can act as both a supplier and consumer of content files. Early P2P services, such as Napster and KaZaA, have been replaced by even more robust and efficient systems, most notably

a protocol called "BitTorrent." The online piracy committed via BitTorrent is stunning in nature, speed, and scope. Utilizing a BitTorrent client—essentially a tool that manages the uploading and downloading of files through BitTorrent technology—persons connected to the Internet can locate, access, and download copyrighted content from other peers in the blink of an eye. They download copyrighted music from other network users, usually total strangers, and end up with complete digital copies of any music they desire—without payment to copyright owners or creators.

    <u>Answer:</u>       Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 86 of the First Amended Complaint, and on that basis denies those allegations.

    (79) 87.       BitTorrent is uniquely efficient in the way it facilitates illegal file transfers. On earlier P2P networks, a user wanting to download a music file would have to locate another Internet-connected peer with the desired file and download the entire file from that peer. BitTorrent facilitates much faster downloading by breaking each file into pieces, allowing users to download different pieces of content simultaneously from different peers. At the same time, the system allows users to begin disseminating the copyrighted content before the complete file has even downloaded. This means that, at any given time, each user connected to the Internet can be both downloading and uploading different pieces of a file from, and to, multiple other users. Once a user has downloaded all the pieces, the file is automatically reassembled into its complete form and available for playback by the user. Needless to say, acquiring copyrighted music in this fashion eliminates the need to obtain it through legitimate channels and eliminates the requirement of paying a fee.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 87 of the First Amended Complaint, and on that basis denies those allegations.

(80) 88.        Not surprisingly, then, during the time period in which the claims in this action arose, BitTorrent was used widely as a vehicle to infringe content online. In a report from January 2011, a survey conducted by the firm Envisional estimated that 11.4 percent of all Internet traffic involved the unauthorized distribution of non-pornographic copyrighted content via BitTorrent. In a report from September 24, 2013, another company, NetNames, estimated that 99.97 percent of non-pornographic files distributed via BitTorrent systems infringe copyrights. To illustrate, in one well-publicized incident in 2015, millions of individual BitTorrent users downloaded an episode of HBO's "Game of Thrones" within just 24 hours of its airing.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in the first or third sentences in Paragraph 88 of the First Amended Complaint, and on that basis denies those allegations. Defendant denies the remaining allegations in Paragraph 88 of the First Amended Complaint, and where the allegations in Paragraph 88 refer to reports, Defendant refers the Court to those reports for an accurate rendition of their contents.

**Plaintiffs' Enforcement Activities and Bright House's Efforts to Thwart Them**

(81) 89.        Over the past two decades, as P2P piracy became widespread, music and other copyright owners have employed litigation and other means to attempt to curtail the massive theft of their copyrighted works. Bright House has been keenly aware of those efforts and the use of its network for P2P piracy.

Answer:        Defendant lacks knowledge or information sufficient to admit or deny the allegations in the first sentence of Paragraph 89 of the First Amended Complaint, and on that basis

denies those allegations. Defendant denies the remaining allegations in Paragraph 89 of the First Amended Complaint.

(82) 90.     The Record Company Plaintiffs began sending notices to Bright House (and other ISPs) identifying specific instances of its subscribers' infringement through P2P activities. From 2012 through 2015, Bright House received *over one hundred thousand notices*, provided under penalty of perjury, detailing specific instances of its subscribers using P2P protocols on its network to distribute and copy Plaintiffs' copyrighted content unlawfully both within, and beyond, the Bright House network.

Answer:     Defendant lacks knowledge or information sufficient to admit or deny the allegations in the first sentence of Paragraph 90 of the First Amended Complaint, and on that basis denies those allegations. Defendant admits that it received notices from third party, the RIAA, of which the only portion stated under penalty of perjury is that the RIAA was authorized to send the notice on behalf of its member companies in matters involving the infringement of their sound recordings, including enforcing their copyrights and common law rights on the Internet. Defendant denies the remaining allegations in Paragraph 90.

(83) 91.     The infringement notices provided to Bright House identify the unique IP address assigned to each user of Bright House's network, and the date and time the infringing activity was detected. Only Bright House, as the provider of the technology and system used to infringe, had the information required to match the IP address to a particular subscriber, and to contact that subscriber or terminate that subscriber's service.

Answer:     Defendant lacks knowledge or information sufficient to admit or deny the allegations in the first sentence in Paragraph 91 of the First Amended Complaint, and on that basis denies those allegations. Defendant admits that Bright House generally has the ability to match an

IP address, accompanied with the date and time, to particular subscribers, with respect to at least some historic accounts, but denies that Bright House has the ability to determine the identity of the individual using the device on its service. Defendant denies the remaining allegations in Paragraph 91 of the First Amended Complaint.

(84) 92.     Plaintiffs' infringement notices notified Bright House of clear and unambiguous infringing activity by Bright House subscribers—that is, unauthorized downloading and distribution of copyrighted music. Bright House's subscribers had no legal basis or justification for downloading or distributing digital copies of Plaintiffs' sound recordings and musical compositions to thousands or millions of strangers over the Internet. Tellingly, to the extent that Bright House forwarded Plaintiffs' infringement notices to subscribers accused of using Bright House's network to infringe, those subscribers did not challenge the claims of infringement by sending counter-notices to Bright House contesting those claims (a process that Bright House outlined and made available to its users).

Answer:     Defendant lacks knowledge or information sufficient to admit or deny the allegations in the second sentence in Paragraph 92 of the First Amended Complaint, on that basis denies those allegations. Defendant admits that Bright House generally has the ability to match an IP address, accompanied with the date and time, to particular subscribers, with respect to at least some historic accounts, but denies that Bright House has the ability to determine the identity of the individual using the device on its service. Defendant denies the remaining allegations in Paragraph 92 of the First Amended Complaint.

(85) 93.     Apart from attesting to the sheer volume of the infringing activity on its network, the infringement notices sent to Bright House pointed to specific subscribers who were flagrant and serial infringers. The infringement notices identified tens of thousands of Bright

House subscribers engaged in blatant and repeated infringement of Plaintiffs' copyrighted works. To cite just a few specific examples:

- During an 827-day period, Bright House subscriber with IP address 75.114.183.231 was identified in 340 infringement notices, sent on at least 232 separate days.

- During a 706-day period, Bright House subscriber with IP address 142.196.247.23 was identified in 203 infringement notices, sent on at least 154 separate days.

- During a 609-day period, Bright House subscriber with IP address 50.90.203.155 was identified in 182 infringement notices, sent on at least 164 separate days.

- During an 827-day period, Bright House subscriber with IP address 50.89.138.87 was identified in 131 infringement notices, sent on at least 119 separate days.

- During a 576-day period, Bright House subscriber with IP address 174.134.133.106 was identified in 126 infringement notices, sent on at least 105 separate days.

- During a 447-day period, Bright House subscriber with IP address 50.89.140.125 was identified in 114 infringement notices, sent on at least 90 separate days.

These examples and countless others amply illustrate that, rather than terminating repeat infringers—and losing subscription revenues—Bright House simply looked the other way.

Answer:       Defendant denies the allegations in Paragraph 93 of the First Amended Complaint.

(86) 94.       During all pertinent times, Bright House had the full legal right, obligation, and technical ability to prevent or limit the infringements occurring on its network. Under Bright House's terms of service and acceptable use policies, which its subscribers agreed to as a condition of using its Internet service, Bright House was empowered to exercise its right and ability to suspend or terminate a customer's Internet access. Bright House could do so for a variety of reasons, including a subscriber's copyright infringement activity.

Answer:       Defendant admits that it maintains terms of service and acceptable use policies, and those documents speak for themselves. Bright House denies the remaining allegations in Paragraph 94 of the First Amended Complaint.

35

(87) 95.        Despite these alleged policies, and despite receiving over one hundred thousand infringement notices from Plaintiffs, as well as thousands of similar notices from other copyright owners, Bright House knowingly permitted specifically identified repeat infringers to continue to use its network to infringe. Rather than disconnect the Internet access of blatant repeat infringers to curtail their infringement, Bright House knowingly continued to provide these subscribers with the Internet access that enabled them to continue to illegally download or distribute Plaintiffs' copyrighted works unabated. Bright House's provision of high-speed Internet service to known infringers materially contributed to these direct infringements. Bright House's failure to act is entirely consistent with its hollow "graduated response" program for copyright violators, which, as Bright House stated and reinforced to subscribers, was meant only "to educate consumers about copyright infringement" and "not to punish them."

Answer:        Defendant denies the allegations in Paragraph 95 of the First Amended Complaint.

(88) 96.        Bright House's motivation for refusing to terminate or suspend the accounts of blatant infringing subscribers is simple: it valued corporate profits over its legal responsibilities. Bright House did not want to lose subscriber revenue by terminating accounts of infringing subscribers. Retaining infringing subscribers provided a direct financial benefit to Bright House. Nor did Bright House want to risk the possibility that account terminations would make its service less attractive to other existing or prospective users. Moreover, Bright House was simply disinterested in devoting sufficient resources to tracking repeat infringers, responding to infringement notices, and terminating accounts in appropriate circumstances. Considering only its own pecuniary gain, Bright House ignored and turned a blind eye to flagrant, repeat violations by known specific subscribers using its service to infringe, thus facilitating and multiplying the harm

36

to Plaintiffs. And Bright House's failure to police its infringing subscribers adequately drew subscribers to purchase Bright House's services, so that the subscribers could then use those services to infringe Plaintiffs' (and others') copyrights. The specific infringing subscribers identified in Plaintiffs' notices, including the egregious infringers identified herein, knew Bright House would not terminate their accounts despite receiving multiple notices identifying them as infringers, and they remained Bright House subscribers to continue illegally downloading copyrighted works.

Answer:        Defendant denies the allegations in Paragraph 96 of the First Amended Complaint.

(89) 97.        The consequences of Bright House's support of and profit from infringement are obvious and stark. When Bright House's subscribers use Bright House's network to obtain infringing copies of Plaintiffs' copyrighted works illegally, that activity undercuts the legitimate music market, depriving Plaintiffs and those recording artists and songwriters whose works they sell and license of the compensation to which they are entitled. Without such compensation, Plaintiffs, and their recording artists and songwriters, have fewer resources available to invest in the further creation and distribution of high-quality music.

Answer:        Defendant denies the allegations in Paragraph 97 of the First Amended Complaint and denies that Plaintiffs are entitled to any relief.

## **CLAIMS FOR RELIEF**

### **Count I – Contributory Copyright Infringement**

(90) 98.        Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through (89) 97 as if fully set forth herein.

37

<u>Answer:</u>        Defendant incorporates by reference its responses to Paragraphs 1 through 97 of the First Amended Complaint.

(91) 99.        Bright House and its subscribers do not have any authorization, permission, license, or consent to exploit the copyrighted sound recordings or musical compositions at issue.

<u>Answer:</u>        Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 99 of the First Amended Complaint and on that basis denies those allegations.

(92) 100.        Bright House's subscribers, using Internet access and services provided by Bright House, have unlawfully reproduced and distributed via BitTorrent, or other P2P networks, thousands of sound recordings and musical compositions for which Plaintiffs are the legal or beneficial copyright owners or exclusive licensees. The copyrighted works infringed by Bright House's subscribers, which have been registered with the U.S. Copyright Office, include those listed on Exhibits A and B, and many others. The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501, *et seq*.

<u>Answer:</u>        Paragraph 100 contains legal conclusions to which no response is required. Defendant admits that Exhibits A and B to the First Amended Complaint purport to list the works alleged by Plaintiffs in this action. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 100 of the First Amended Complaint and on that basis denies those allegations.

(93) 101.        Bright House is liable as a contributory copyright infringer for the direct infringements described above. Through Plaintiffs' infringement notices and other means, Bright House had knowledge that its network was being used for infringement of Plaintiffs' copyrighted works on a massive scale, and also knew of specific subscribers engaged in such repeated and

flagrant infringement. Nevertheless, Bright House facilitated, encouraged, and materially contributed to such infringement by continuing to provide its network and the facilities necessary for its subscribers to commit repeated infringements. Bright House had the means to withhold that assistance upon learning of specific infringing activity by specific users but failed to do so.

> Answer:     Paragraph 101 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 101 of the First Amended Complaint.

(94) 102.     By purposefully ignoring and turning a blind eye to its subscribers' flagrant and repeated infringements, Bright House knowingly caused and materially contributed to the unlawful reproduction and distribution of Plaintiffs' copyrighted works, including but not limited to those listed on Exhibits A and B hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

> Answer:     Paragraph 102 contains legal conclusions to which no response is required. Defendant admits that Exhibits A and B to the First Amended Complaint purport to list the works alleged by Plaintiffs in this action. To the extent a response is required, Defendant denies the allegations contained in Paragraph 102 of the First Amended Complaint.

(95) 103.     Each infringement of Plaintiffs' copyrighted sound recordings and musical compositions constitutes a separate and distinct act of infringement. Plaintiffs' claims of infringement against Bright House are timely pursuant to tolling agreements.

> Answer:     Paragraph 103 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 103 of the First Amended Complaint.

(96) 104.    The foregoing acts of infringement by Bright House have been willful, intentional, and purposeful, in disregard of Plaintiffs' rights. Indeed, the sound recordings on Exhibit A and the musical compositions on Exhibit B represent works infringed by Bright House's subscribers after those particular subscribers were identified to Bright House in multiple infringement notices.

Answer:    Paragraph 104 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 104 of the First Amended Complaint.

(97) 105.    As a direct and proximate result of Bright House's willful infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amount as may be proper under 17 U.S.C. § 504(c). Alternatively, at Plaintiffs' election, Plaintiffs shall be entitled to their actual damages pursuant to 17 U.S.C. § 504(b), including Bright House's profits from the infringements, as will be proven at trial.

Answer:    Paragraph 105 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 105 of the First Amended Complaint.

(98) 106. Plaintiffs also are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

Answer:    Paragraph 106 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 106 of the First Amended Complaint.

## Count II – Vicarious Copyright Infringement

(99) 107.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 98 as if fully set forth herein.

Answer:    Plaintiffs' Count II for Vicarious Copyright Infringement has been dismissed with prejudice. ECF 142. Bright House is under no obligation to answer this allegation.

(100) 108.    Bright House and its subscribers have no authorization, license, or other consent to exploit the copyrighted sound recordings or musical compositions at issue.

Answer:    Plaintiffs' Count II for Vicarious Copyright Infringement has been dismissed with prejudice. ECF 142. Bright House is under no obligation to answer this allegation.

(101) 109.    Bright House's subscribers, using Internet access and services provided by Bright House, have unlawfully reproduced and distributed via BitTorrent or other P2P services thousands of sound recordings and musical compositions of which Plaintiffs are the legal or beneficial copyright owners or exclusive licensees. The copyrighted works infringed by Bright House's subscribers, which have been registered with the U.S. Copyright Office, include those listed on Exhibits A and B, and many others. The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501, *et seq*.

Answer:    Plaintiffs' Count II for Vicarious Copyright Infringement has been dismissed with prejudice. ECF 142. Bright House is under no obligation to answer this allegation.

(102) 110.    Bright House is liable as a vicarious copyright infringer for the direct infringements described above. Bright House has the legal and practical right and ability to supervise and control the infringing activities that occur through the use of its network, and at all relevant times has had a financial interest in, and derived direct financial benefit from, the infringing use of its network. Bright House has derived an obvious and direct financial benefit

from its customers' infringement. The ability to use Bright House's high-speed Internet facilities to illegally download Plaintiffs' copyrighted works has served to draw, maintain, and generate higher fees from paying subscribers to Bright House's service. Among other financial benefits, by failing to terminate the accounts of specific repeat infringers known to Bright House, Bright House has profited from illicit revenue through user subscription fees that it would not have otherwise received from repeat infringers, as well as new subscribers drawn to Bright House's services for the purpose of illegally downloading copyrighted works. The specific infringing subscribers identified in Plaintiffs' notices, including the egregious infringers identified herein, knew Bright House would not terminate their accounts despite receiving multiple notices identifying them as infringers, and they remained Bright House subscribers to continue illegally downloading copyrighted works.

Answer:    Plaintiffs' Count II for Vicarious Copyright Infringement has been dismissed with prejudice. ECF 142. Bright House is under no obligation to answer this allegation.

(103) 111.    Bright House is vicariously liable for the unlawful reproduction and distribution of Plaintiffs' copyrighted works, including but not limited to those listed on Exhibits A and B hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

Answer:    Plaintiffs' Count II for Vicarious Copyright Infringement has been dismissed with prejudice. ECF 142. Bright House is under no obligation to answer this allegation.

(104) 112.    Each infringement of Plaintiffs' copyrighted sound recordings and musical compositions constitutes a separate and distinct act of infringement. Plaintiffs' claims of infringement against Bright House are timely pursuant to tolling agreements.

Answer:     Plaintiffs' Count II for Vicarious Copyright Infringement has been dismissed with prejudice. ECF 142. Bright House is under no obligation to answer this allegation.

(105) 113.    The foregoing acts of infringement by Bright House have been willful, intentional, and purposeful, in disregard of Plaintiffs' rights. Indeed, the sound recordings on Exhibit A and the musical compositions on Exhibit B are works infringed by Bright House's subscribers *after* those particular subscribers were identified to Bright House in multiple prior infringement notices.

Answer:     Plaintiffs' Count II for Vicarious Copyright Infringement has been dismissed with prejudice. ECF 142. Bright House is under no obligation to answer this allegation.

(106) 114.    As a direct and proximate result of Bright House's willful infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amount as may be proper under 17 U.S.C. § 504(c). Alternatively, at Plaintiffs' election, Plaintiffs shall be entitled to their actual damages pursuant to 17 U.S.C. § 504(b), including Bright House's profits from the infringements, as will be proven at trial.

Answer:     Plaintiffs' Count II for Vicarious Copyright Infringement has been dismissed with prejudice. ECF 142. Bright House is under no obligation to answer this allegation.

(107) 115.    Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

Answer:     Plaintiffs' Count II for Vicarious Copyright Infringement has been dismissed with prejudice. ECF 142. Bright House is under no obligation to answer this allegation.

## PRAYER FOR RELIEF

Plaintiffs' Prayer for Relief contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies any allegations associated with Plaintiffs' Prayer for Relief and denies that Plaintiffs are entitled to any relief.

## JURY TRIAL DEMAND

Defendant demands a trial by jury of all issues that are so triable.

## AFFIRMATIVE DEFENSES

Defendant identifies the following affirmative defenses and reserves the right to raise additional defenses as discovery proceeds. Defendant does not assume the burden of proof on any issue, however characterized, on which it does not bear that burden. Defendant reserves all affirmative defenses not stated herein under Rule 8(c) of the Federal Rules of Civil Procedure and any other defense at law or in equity that may now exist or in the future be available based upon discovery and further investigation in this case.

1. The First Amended Complaint, and each cause of action within it, fails to state facts sufficient to constitute a cause of action.

2. The statute of limitations bars Plaintiffs' claims to the extent Plaintiffs allege infringements that accrued outside the three-year limitations period, including any applicable tolling of the limitations period.

3. Plaintiffs' claims are barred or its damages are limited because any infringement was innocent.

4. Plaintiffs' claims are barred because Defendant's ISP service has substantial non-infringing uses.

5. The doctrine of unclean hands bars Plaintiffs' claims.

6.      Plaintiffs' claims are barred by the doctrine of copyright misuse.

7.      Plaintiffs' failure to mitigate damages bars their claims or limits their recovery.

8.      The doctrine of estoppel bars Plaintiffs' claims.

9.      To the extent that Plaintiffs rely upon copyright registrations that rest upon misstatements or fraud, those misstatements or fraud bar Plaintiffs' claims.

10.     To the extent that Plaintiffs failed to comply with renewal, notice, and registration requirements and/or other formalities, Plaintiffs' claim are barred.

11.     Plaintiffs' claims are barred, in whole or in part, by the First Amendment to the U.S. Constitution, including but not limited to the application of 17 U.S.C § 512(i) to service providers protected by 17 U.S.C § 512(a).

12.     Application of the Copyright Act and its remedies to the conduct of Defendant and its customers as Plaintiffs request would violate due process.

13.     To the extent that Plaintiffs can establish any underlying direct or secondary infringement, Defendant's liability and Plaintiffs' remedies are limited because Defendant qualifies for "safe harbor" under the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. § 512(a).

## COUNTERCLAIMS AND DEMAND FOR JURY TRIAL; INJUNCTIVE RELIEF SOUGHT

Defendant Bright House Networks, LLC ("Bright House" or "Defendant"), by and through its counsel, hereby asserts counterclaims to Plaintiffs' First Amended Complaint against

Plaintiffs[6], the Recording Industry Association of America ("RIAA"), and MarkMonitor, Inc. ("MarkMonitor") (collectively "Counter-Defendants") as follows:

1.     **Introduction**

1.     At all times relevant to this case, Bright House was an Internet service provider ("ISP") providing its customers access to the Internet. As part of its ISP services, Bright House did not store its subscribers' content on its servers. Bright House did not host websites that index infringing files. Bright House did not create or distribute peer-to-peer file-sharing software or other file-sharing software. Bright House was not even aware that the alleged acts of infringement were committed until after they had concluded. Nevertheless, Plaintiffs seek to impose secondary liability on Bright House for alleged copyright infringement by its subscribers—even though Bright House's only role in the alleged infringement was to provide Internet access to these subscribers—in an effort to create a substantial new set of liabilities and burdens for ISPs.

2.     The RIAA is a New York corporation with its principal place of business at 1025 F Street NW, 10th Fl., Washington, DC 20004.

3.     MarkMonitor is a Delaware corporation with its principal place of business at 3540 E Longwing Ln. Suite 300, Meridian, ID 83646.

4.     This Court has subject matter jurisdiction over Bright House's counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

5.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs brought this action in this Court and thereby consented to its jurisdiction.

---

[6] The "Plaintiffs" are the Plaintiffs collectively identified and defined on pages 1-2 of Plaintiffs' First Amended Complaint, Dkt. 96-1. Unless otherwise noted, Bright House also adopts all of the terms defining the parties used in Plaintiffs' First Amended Complaint.

6.      This Court has personal jurisdiction over the RIAA pursuant to Fla. Stat. § 48.193. The RIAA has continuously and systematically transacted business in Florida. The RIAA has engaged in substantial activities purposefully directed at Florida from which Bright House's claims arise, including by sending or directing others to send notices of infringement to Bright House concerning its high-speed Internet service provided to customers in Florida.

7.      This Court has personal jurisdiction over MarkMonitor pursuant to Fla. Stat. § 48.193. MarkMonitor has continuously and systematically transacted business in Florida. MarkMonitor has engaged in substantial activities purposefully directed at Florida from which Bright House's claims arise, including by sending notices of infringement to Bright House concerning its high-speed Internet service provided to customers in Florida.

8.      Venue is proper in this district because Plaintiffs brought this action in this Court and thereby consented to venue and because a substantial part of the events and omissions giving rise to the claims against Plaintiffs, the RIAA, and MarkMonitor occurred in this district, and because Plaintiffs, the RIAA, and MarkMonitor are subject to personal jurisdiction in this district.

## 2.      **Factual Allegations**

### a.      **Bright House's Business**

9.      Prior to its acquisition by Charter Communications, Inc. ("Charter") in or around June, 2016, Bright House was one of the largest communications companies in the country, offering a variety of services, including cable, telephone, and Internet access services.

10.     Bright House provided Internet service to both residential subscribers and businesses. Its high-speed Internet service provided approximately 2.2 million U.S. customers with Internet connections in Southern, Midwestern, and Western states. Today, Charter continues to

serve Bright House's customers under the Spectrum brand, offering high-speed Internet service to some twenty-nine million U.S. customers across 41 states.

11.     As an ISP, Bright House provided its customers with a gateway to the Internet, which was, and still is, virtually indispensable to functioning in the modern world.

12.     The Internet provides access to a host of services, some of them critical. Individuals rely on Internet access to obtain services in the areas of healthcare, employment, education, banking, commerce, social interaction, news and entertainment, and many others.

13.     As the Supreme Court recently emphasized in the case of *Packingham v. North Carolina*, for many people the Internet provides "the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." 137 S. Ct. 1730, 1737 (2017).

14.     The critical importance of the Internet has been highlighted in the current COVID-19 global pandemic. With much of the country currently under some form of shelter in place directive or order, millions of people across the country are reliant on high speed Internet access to work, attend classes, receive news and information, and socialize and communicate with friends and family.

15.     Losing Internet access can have devastating consequences for a subscriber.

16.     As an ISP, Bright House provided connections and enabled connected computers to access the Internet.

17.     Bright House provided Internet access service to its residential subscribers for a flat monthly fee.

18.     Bright House could not remove third-party material from the Internet unless that material was stored on Bright House's own servers. Bright House subscribers were not able to

48

store material on Bright House's own servers. Bright House could not control what its customers stored on their own or others' computers.

19.     Bright House had no ability to remove or take down infringing content from its customers' computers. Bright House could not restrict, or even detect, the specific content that its customers accessed or shared.

20.     Bright House could not supervise the online activities of its customers. Nor could Bright House control its customers' conduct online. While Bright House could potentially have disabled its customers' ability to access its ISP system, or terminated customers' accounts entirely, that did not give Bright House the ability to control or supervise its customers' conduct online. For example, a Bright House subscriber could have continued to access the Internet through other accounts, or through public networks.

21.     Bright House also could not determine whether one of its subscribers was accessing Bright House's network, or whether someone else was using the Bright House subscriber's account (with or without the subscriber's knowledge or permission) to do so.

22.     Bright House did not control the Internet. And, while Bright House's ISP system allowed its subscribers to access the Internet, Bright House's system was not itself "the Internet."

23.     The privacy of its customers was, and remains, of paramount concern to Bright House and its successor, Charter. Internet users frequently transmit private and sensitive information through ISP networks, and trust their ISP to safeguard their privacy and security.

24.     Bright House did not (and Charter does not) spy on its customers or monitor their Internet traffic. Even if it could have done so—which it could not—it would not. Engaging in surveillance in such a fashion would have violated Bright House's policies, ethics, and corporate culture.

25.     Operating an ISP service—and safeguarding customers and other Internet users—entails responding to a number of potential abuses such as security threats, invasion of privacy, identity theft, denial of service attacks, botnets or other malware (such as viruses, spyware, and worms), spam, fraud, phishing scams, copyright infringement, and a host of others.

26.     Bright House's Security and Abuse Team managed issues like these that threaten Bright House's network or customers, as well as other abuses of Bright House's system. This team was tasked with protecting Bright House's customer-facing networks and services by assessing and responding to security threats and attacks, and coordinating threat-mitigation activities with the appropriate organizations and external agencies to ensure a safe and secure communications infrastructure.

27.     Among other things, Bright House's Security and Abuse Team assisted law enforcement and cooperated with other ISPs to combat security and privacy threats; addressed internal security issues; assisted customers; and processed copyright infringement notices that Bright House received from copyright owners and their agents.

**b.     Bright House's Receipt of Copyright Infringement Notices**

28.     When Bright House received a copyright infringement notice alleging copyright infringement had occurred, it reviewed the notice to ensure that it complied with Bright House's policies. Among other things, Bright House required the sender of a copyright infringement notice to identify the copyrighted work claimed to have been infringed and to identify the material that is claimed to be infringing. Copyright infringement notices also had to comply with Bright House's other policies, including its privacy policy.

29.     Bright House reserved the right to terminate subscribers and account holders who repeatedly infringed copyrights, and Bright House's policy was to terminate repeat infringers when

Bright House deemed it appropriate to do so. Bright House informed its subscribers and account holders of this policy.

30.     Bright House could not verify the allegations in infringement notices that it received. In particular, Bright House could not verify whether the information in a notice was accurate.

31.     Bright House could not itself detect infringement, and could not determine whether infringing content was crossing its network. Bright House could not control, examine, or remove material that was on its subscribers' computers. Even if it could have done so, that would have violated Bright House's policies and violated its users' privacy.

32.     Copyright infringement notices that Bright House received for its ISP service always referred to acts of alleged infringement that occurred in the past. Bright House could not examine the material a customer allegedly made available in the past, detect what the customer did with that material, or know whether a subscriber was authorized to possess, reproduce, or distribute that material.

33.     Bright House could not confirm whether the sender of a notice actually owned the copyright for an allegedly infringed work, nor whether the sender was authorized to send notices on behalf of the true owner. Bright House could not determine the true owner of the copyright for an allegedly infringed work.

34.     Bright House could not control alleged infringement on the Internet. Bright House could not supervise or control what its customers store on their computers, and could not locate, view, or remove any content that its customers might be uploading, downloading, or accessing through its ISP service.

35.     With respect to business customers, terminating an account would have severed Internet access for multiple end-users, even if the vast majority of them were innocent of infringement. This was particularly the case with business customers that might be regional or local ISPs, through which hundreds, thousands, or even tens or hundreds of thousands of potentially innocent end-users' Internet access could be severed due to the *alleged* acts of a single end-user.

### c.     Bright House's Abuse Tracking System

36.     In this case, Plaintiffs seek relief for claims of infringement that accrued from March 24, 2013 through May 17, 2016 (the "Claim Period").[7]

37.     During the Claim Period, Bright House received different types of notifications concerning its ISP system. This included security notices, notices about system issues, copyright infringement notices, and others.

38.     Prior to and throughout the Claim Period, Bright House utilized a system called "ECATS" — the Enterprise Copyright Automation Tools System—to partially automate the handling of abuse notifications that Bright House receives. Among other things, Bright House's Security and Abuse Team used ECATS as a tool for processing and addressing copyright infringement notices. This allowed Bright House to process, respond to, and to address such notices more efficiently.

39.     Automation is important, because manual processing of incoming abuse complaints is infeasible for all but the smallest ISP networks in light of the automated techniques used by

---

[7] Plaintiffs allege in the First Amended Complaint that "the Universal Plaintiffs seek relief for claims that accrued on or after March 24, 2013; the Sony Music Plaintiffs and Warner Plaintiffs seek relief for claims that accrued on or after April 18, 2013; and the Sony/ATV and EMI Plaintiffs seek relief for claims that accrued on or after June 15, 2013." Dkt. 96-1, ¶ 5 n.1.

spammers that generate a high volume of abuse complaints. Automation also decreases the risk that complaints from copyright owners could get lost in the flood of other abuse complaints.

40.     ECATS converted copyright infringement notices that meet Bright House's basic requirements into "tickets." ECATS also stored a copy of the copyright notices received (if any) per subscriber.

41.     Accepting and processing notices is both time-consuming and costly, requiring multiple systems and numerous personnel to work in coordination. Bright House incurred costs in connection with undertaking these actions, as well.

42.     During the Claim Period, Bright House processed notices from the RIAA, which were sent by MarkMonitor, purporting to assert rights owned by Plaintiffs, in accordance with its policies and ECATS procedures, and forwarded those notices to accused subscribers, reminding them that infringing copyright violates Bright House's Acceptable Use Policy and emphasizing that they should take immediate action to stop the exchange of any infringing material.

### d.     The Copyright Alert System (CAS)

43.     In July 2011, all of the major record companies and movie studios, along with their industry representatives, the RIAA, and the Motion Picture Association of America ("MPAA"), and five of the largest ISPs in the United States collectively entered into the Copyright Alert System Memorandum of Understanding ("CAS MOU") to establish a "Copyright Alert System" (the "CAS").

44.     Under the CAS, signatory content owners or their representatives, which included the RIAA and MPAA, could send notices of alleged copyright infringement ("ISP Notices") to ISPs. The ISPs would accept and process the ISP Notices.

45.     If an ISP received an ISP Notice that could be associated with the account of a particular ISP subscriber, then the ISP would send a notification—called a Copyright Alert—to the subscriber.

46.     Under the CAS MOU, participating ISPs were required to accept and process only a limited volume of ISP Notices. The CAS MOU also provided that a participating ISP could temporarily cease processing ISP Notices if it received more than its business processes and systems could reasonably address.

47.     After an ISP had forwarded six Copyright Alerts to a single subscriber, the ISP was not required to forward any subsequent Copyright Alerts, regardless of the fact that the subscriber might be the subject of multiple, subsequent infringement notices.

48.     Further, an ISP was not required to forward more than one Copyright Alert to a single subscriber within a seven-day grace period, to give an affected subscriber time to review each Copyright Alert pertaining to such subscriber's account and to take appropriate steps to avoid receipt of further Copyright Alerts.

49.     The participating ISPs were required to track the number of notices their subscribers received so that the information could be provided to the content owners (or their representatives), so that the content owners could institute infringement actions directly against the subscribers—not the ISPs.

50.     The CAS did not require ISPs to terminate subscribers who were repeatedly accused of infringement.

51.     At least some of Plaintiffs are, and during the Claim Period were, well aware of the provisions of the CAS MOU.

54

52.     On information and belief, all of the Warner Plaintiffs are, or during the Relevant Time Period were, affiliates, subsidiaries, or successors of signatories to the CAS MOU.

53.     On information and belief, all of the Sony Music Plaintiffs are, or during the Relevant Time Period were, affiliates, subsidiaries, or successors of signatories to the CAS MOU.

54.     On information and belief, all of the Sony/ATV and EMI Plaintiffs are, or during the Relevant Time Period were, affiliates, subsidiaries, or successors of signatories to the CAS MOU.

55.     On information and belief, all of the Universal Plaintiffs are, or during the Relevant Time Period were, affiliates, subsidiaries, or successors of signatories to the CAS MOU.

56.     The RIAA was a signatory to the CAS MOU.

57.     On information and belief, all of the Record Company Plaintiffs were members of the RIAA during the Relevant Time Period or were affiliates, subsidiaries, or partners of RIAA members.[8]

58.     Bright House was also aware of the CAS MOU during the Relevant Time Period; however, Bright House was not a signatory to the CAS MOU.

59.     On information and belief, one goal of the CAS MOU was to establish industry standard practices for entertainment industry copyright owners to submit copyright infringement notices to ISPs, and for ISPs to process such notices and inform their subscribers of infringement allegations against them.

---

[8] The "Record Company Plaintiffs" are UMG, Capitol Records, WRI, Atlantic, Bad Boy, Elektra, FBR, Nonesuch, Maverick, Rhino, The All Blacks, Warner Music, Warner Records/SIRE, WEA, Sony, Arista Music, Arista Records, LaFace, Provident, Sony Latin, Century, Volcano, and Zomba, as defined in Paragraph 36 of Plaintiffs' First Amended Complaint, Dkt. 96-1, ¶ 36.

60.     Content owners participating in the CAS MOU (including some of Plaintiffs here) and participating ISPs (including SBC Internet Services, Verizon Online, Comcast Cable Communications Management, CSC Holdings, and Time Warner Cable) established the Center for Copyright Information (the "CCI").

61.     An express goal of the CCI was "facilitating the involvement of non-participating ISPs in … the Copyright Alert program."

62.     In May 2014, RIAA Chairman and CEO Cary Sherman described the CCI as "a model for success."[9] Mr. Sherman lauded "the Alert program and all its accomplishments." He stated that the CAS was "moving the needle," and acknowledged that as the CAS program progressed, "there were fewer and fewer Alerts sent at each level."

63.     Further, early reports note that merely sending notices had a meaningful impact on reducing infringement, as evidenced by the fact that fewer subscribers continued to receive subsequent alerts. Further, the CCI believed that the program would be effective against the vast majority of subscribers engaged in on-line infringement and that "very few subscribers, after repeated alerts, will persist (or allow others to persist) in the content theft."

64.     Importantly, the CAS MOU required that the ISPs provide data to the content owners and/or their representatives, so that the participants could assess the effectiveness of the program.

**e.     Plaintiffs Withdrawal of Works for Which They Sent Copyright Infringement Notices to Bright House**

65.     Upon information and belief, the Record Company Plaintiffs claim to own or control the vast majority of music sold in the United States.

---

[9] Cary Sherman, "CCI: A Model for Success," RIAA.com (May 28, 2014) (available online at https://www.riaa.com/cci-a-model-for-success/).

66.     The Record Company Plaintiffs, through their agent the RIAA, engaged the services of rights-enforcement company MarkMonitor to monitor and detect infringing activity and send notices alleging copyright infringement to Bright House. MarkMonitor markets itself as an "antipiracy solution."

67.     On March 22, 2019, Plaintiffs sued Bright House for contributory infringement and vicarious liability, alleging that Bright House's subscribers had infringed the copyrights of at least 11,482 sound recordings and music compositions (the "works in suit"). The works in suit are listed on Exhibits A and B to Plaintiffs' Original Complaint. Dkts. 1-1 (Ex. A) & 1-2 (Ex. B).

68.     In connection with these allegations, Plaintiffs claimed that they "own and/or control in whole or in part the copyrights and/or exclusive rights" in the works in suit. Dkt. 96-1, ¶ 71.

69.     In connection with these allegations, Plaintiffs claimed that between March 24, 2013 and May 17, 2016, their "representatives … sent hundreds of thousands of statutory infringement notices to Bright House, under penalty of perjury," claiming that Bright House's subscribers infringed the works in suit. Dkt. 96-1, ¶ 2. The Music Publisher Plaintiffs[10] did not send any notices, however, as the notices were sent by MarkMonitor and on behalf of the Record Company Plaintiffs' representative, the RIAA.

---

[10] The "Music Publisher Plaintiffs" are Plaintiffs UMC, MGB, Universal Music Publishing, AB, Publishing Limited, MGB Limited, Z Tunes, MCA Limited, MCA Publishing Limited, Music Corp., Musik Edition, Polygram Publishing, Songs of Universal, Warner Chappell, Warner-Tamerlane, WC Music, W.C.M., Unichappell, Rightsong Music, Cotillion, Intersong, Chappell, Sony/ATV, EMI Al Gallico, EMI April, EMI Blackwood, EMI Colgems, EMI Full Keel, EMI Longitude, EMI Entertainment, EMI Jemaxal, EMI Feist, EMI Miller, EMI Mills, EMI U, Famous Music, Jobete, Stone Agate, Gems-EMI, and Stone, as defined in Paragraph 69 of Plaintiffs' First Amended Complaint. Dkt. 96-1, ¶ 69.

70.     On February 15, 2020, Plaintiffs amended the list of works in suit, removing over 280 works from this case (the "Dropped Works").

71.     The Record Company Plaintiffs dropped 132 sound recordings and the Music Publisher Plaintiffs dropped 151 music compositions.

72.     Upon information and belief, Plaintiffs dropped at least some of these works because, contrary to their allegations, they do not "own and/or control in whole or in part the copyrights and/or exclusive rights" to the works.

73.     Upon information and belief, Plaintiffs dropped at least some of these works because, contrary to their allegations, Bright House subscribers did not infringe the works identified in the notices.

74.     For many of the Dropped Works, the claimant listed on the U.S. Copyright Office registration certificate is an entity other than the formerly asserting Plaintiff. Based on review of other publicly available information, these claimant entities appear independent from the formerly asserting Plaintiff. On information and belief, each of the Plaintiffs who formerly asserted claims for Dropped Works sent infringement notices for those Dropped Works despite lacking the right to do so.[11]

---

[11] The following Record Company Plaintiffs formerly asserted claims for Dropped Works: Arista Music; Atlantic Recording Corporation; Elektra Entertainment Group Inc.; Sony Music Entertainment; UMG Recordings, Inc.; and WEA International Inc. In addition, the following Music Publisher Plaintiffs formerly asserted claims for Dropped Works: EMI April Music Inc.; EMI Blackwood Music Inc.; Polygram Publishing, Inc.; Rightsong Music Inc.; Songs of Universal, Inc.; Sony/ATV Music Publishing LLC; Unichappell Music Inc.; Universal Music - MGB NA LLC; Universal Music - Z Tunes LLC; Universal Music Corp.; Universal Music Publishing Limited; Universal Music Publishing Inc.; W.B.M. Music Corp.; Warner-Tamerlane Publishing Corp.; and WB Music Corp.

75.    On information and belief, Plaintiffs dropped these works only after it became clear that they would be required to produce documentation relating to their purported ownership or ability to assert the works in suit in this case.

76.    Despite later dropping these works, the Record Company Plaintiffs, the RIAA, and MarkMonitor nevertheless sent notices to Bright House in connection with the Dropped Works, each claiming to "have identified a user … reproducing or distributing an unauthorized copy of a copyrighted sound recording," and stating that the recipient of the notice "may be liable for infringing activity occurring" on Bright House's network. The Record Company Plaintiffs, the RIAA, and MarkMonitor further claimed in their notices that the targeted user's "Internet account was used to illegally copy and/or distribute copyrighted music over the Internet" and that the notice contained "the details of the illegal file-sharing, including the time, date, and a sampling of the music shared." The notices "assert that the information in the notice is accurate" and that the sender had "a good faith belief that this activity is not authorized by the copyright owner, its agent, or the law."  The notices further stated "[u]nder penalty of perjury" that "the RIAA is authorized to act on behalf of its member companies in manners involving the infringement of their sound recordings, including enforcing their copyrights and common law rights on the Internet."

77.    While the Music Publisher Plaintiffs did not send any notices for the music compositions in suit to Bright House, the Music Publisher Plaintiffs' infringement claims in this case purportedly rely on notices sent by the Record Company Plaintiffs to Bright House, including those for the Dropped Works.

78.    The Record Company Plaintiffs, the RIAA, and MarkMonitor sent notices to Bright House with inaccurate information, including but not limited to the misrepresentation that the RIAA was authorized on behalf of Plaintiffs to send a notice relating to these allegedly infringed

works, that the Record Company Plaintiff on whose behalf the notice was sent owned or controlled

the work, and that the actions alleged to have been taken by Bright House's subscribers constituted

infringement of the Record Company Plaintiffs' rights.

79.     Upon information and belief, the Record Company Plaintiffs did not own the

Dropped Works when they sent notices for them.

80.     Upon information and belief, the Record Company Plaintiffs did not have the right

to send notices to Bright House for the Dropped Works.

81.     Upon information and belief, Plaintiffs, the RIAA, and MarkMonitor, as a matter

of practice, do not confirm whether Plaintiffs "own and/or control in whole or in part the copyrights

and/or exclusive rights" to works before notices are sent to ISPs, like Bright House.

82.     Upon information and belief, Plaintiffs, the RIAA, and MarkMonitor, as a matter

of practice, do not confirm the files identified by MarkMonitor as allegedly infringing are in fact

copies of the works asserted before investigating whether subscribers of ISPs possess such files

and before notices are sent to ISPs, like Bright House.

83.     Upon information and belief, Plaintiffs, the RIAA, and MarkMonitor, routinely fail

to confirm that the files identified by MarkMonitor as allegedly infringing are in fact copies of the

works asserted before notices are sent to ISPs, like Bright House.

84.     After Plaintiffs identified the works in suit, including the Dropped Works, Bright

House investigated Plaintiffs' purported ownership or control of the Dropped Works, or whether

the Record Company Plaintiffs otherwise had the right to send notices to Bright House for them.

85.     Many of the same record companies and music publishers that are Plaintiffs in this

case pursued damages in *Sony Music Entertainment et al. v. Cox Communications, Inc. et al.*, Case

No. 1:18-cv-950 (LO/JFA) (E.D. Va.) ("*Sony/Cox*") for certain of the Dropped Works. The jury

in the *Sony* case returned a verdict for certain of the Dropped Works in an amount of nearly $100,000 per work.

86.     Yet for many other Dropped Works that had also originally been asserted in *Sony/Cox*, Plaintiffs *did* drop those works before that case went to trial, further demonstrating Plaintiffs' belief that they did not possess the right to assert infringement claims—or the concomitant right to send notices of claimed infringement—for these Dropped Works.

87.     Many of the same record companies and music publishers that are Plaintiffs in this case are also plaintiffs in *Warner Records Inc. et al. v. Charter Communications, Inc.*, Case No. 1:19-cv-00874-RBJ-MEH (D. Colo.) ("*Warner/Charter*"). There is substantial overlap in the works asserted in that case and in this case. Further, in early January, 2020, the plaintiffs in *Warner/Charter* also dropped a number of asserted works from that case, including many of the same Dropped Works in this case.

88.     In the *Warner/Charter* case, the plaintiffs' counsel (who is also counsel for Plaintiffs here) could not confirm to the Court either that the *Sony/Cox* plaintiff record companies and music publishers owned or controlled all of the works at issue in that case (including works that had been dropped from the *Warner/Charter* case, but for which the *Sony/Cox* jury had awarded nearly $100,000 per work), or that one of the *Sony/Cox* plaintiffs was the correct legal entity to obtain an award of statutory for each of those works.

89.     Upon information and belief, Plaintiffs devote substantial resources to protecting and exploiting the copyrights they claim to own or control.

90.     Plaintiffs, the RIAA, and MarkMonitor knew that the copyright infringement notices sent to ISPs, including Bright House, contained false allegations of infringement at the time the notices were sent and/or deliberately avoided confirming a high probability that the

copyright infringement notices sent to ISPs, including Bright House, contained false allegations of infringement prior to the notices being sent.

91.     In the alternative, and at a minimum, Plaintiffs, the RIAA, and MarkMonitor should have known that the copyright infringement notices sent to ISPs, including Bright House, contained false allegations of infringement prior to the notices being sent.

92.     A partial list of notices that Bright House alleges contained material misrepresentations is attached as Exhibit A.

93.     Plaintiffs, the RIAA, and MarkMonitor sent millions of notices to ISPs during the Claim Period, including hundreds of thousands of notices to Bright House.

94.     Bright House could not have discovered that the notices for the Dropped Works were inaccurate until February 15, 2020, after Plaintiffs dropped the Dropped Works from this case and Bright House analyzed Plaintiffs' notice data.

95.     Bright House could not have discovered that other notices contained material misrepresentations, because they named works that had not been infringed, until Bright House obtained discovery from Plaintiffs and third parties in this case.

### f.     The Unreliability of The Copyright Infringement Notices

96.     Notices of alleged copyright infringement, such as those sent by MarkMonitor, on behalf of the RIAA, purporting to assert rights owned by Plaintiffs, can be unreliable.

97.     Academic studies have demonstrated that copyright infringement notices sent by third parties to online service providers can be unreliable and are prone to error.

98.     For example, a 2016 study examined a sample of 288,675 copyright infringement notices that were sent to online service providers between May 1, 2013 and October 31, 2013 (the

"Study Period"). Jennifer Urban, et al., *Notice and Takedown in Everyday Practice* (2016) ("Urban Study").[12]

99.     The Urban Study found that 4.2% of the infringement claims examined "were fundamentally flawed because they targeted content that clearly did not match the identified infringed work." *Id.* at 88. In addition, 28.4% of notices that the Urban Study examined "had characteristics that raised clear questions about their validity," including notices with "multiple potential issues." *Id.*

100.    Because some notices in the sample set for the Urban Study contained multiple requests, these notices together represented over 100 million claims of infringement. *Id.*

101.    The RIAA sent notices that were included in the sample that the Urban Study analyzed.

102.    MarkMonitor sent notices that were included in the sample that the Urban Study analyzed.

103.    The Urban Study also discussed specific instances in which notices sent by MarkMonitor were "clear mismatches" between the allegedly infringed work and the online content that was allegedly infringing. *Id.* at 92.

104.    The Urban Study also identified MarkMonitor as having sent tens of thousands of notices during the Study Period alleging infringement by file-sharing websites that had been "dead more than 18 months." *Id.* at 89-90.

---

[12] Available online at
https://papers.ssrn.com/sol3/Delivery.cfm/SSRN_ID2938642_code1788303.pdf?abstractid=2755628&mirid=1 (last visited March 11, 2020).

105.    Multiple news stories, including stories from the time period covered by Plaintiffs' copyright infringement allegations, reported errors in notices sent by MarkMonitor to online service providers. For example, in February and March 2013, multiple news stories highlighted instances in which MarkMonitor (under the name Dtecnet, a division of MarkMonitor) had sent erroneous copyright infringement notices to online service providers.

106.    A February 3, 2013 news story reported that Dtecnet, a division of MarkMonitor, had sent copyright infringement notices to Google, alleging that HBO's own website contained infringing copies of HBO's copyrighted content. *See* Ernesto Van der Sar, "HBO Wants Google to censor HBO.com," TorrentFreak (February 3, 2013).[13]

107.    A March 1, 2013 news story reported that Dtecnet, a division of MarkMonitor, had misidentified a modified version of an online game as a television show, resulting in issuance of multiple inaccurate copyright infringement notices. *See* Masnick, Mike, "System Used By New Six Strikes CAS, Falsely Identifies Game Mods As NBC TV Shows," TechDirt.com (Mar. 1, 2013).[14]

108.    MarkMonitor was also the rights-enforcement organization that the CCI employed to detect instances of alleged infringement and send ISP Notices in connection with the CAS.

109.    In 2012, the CCI hired the firm Stroz Friedberg to perform an assessment of MarkMonitor's technology in connection with the CAS.

---

[13] Available online at https://torrentfreak.com/hbo-wants-google-to-censor-hbo-com-130203/ (last visited March 11, 2020).

[14] Available online at https://www.techdirt.com/articles/20130224/22341022086/system-used-new-six-strikes-cas-falsely-identifies-game-mods-as-nbc-tv-shows.shtml (last visited March 11, 2020).

110.    Stroz Friedberg had been retained by the RIAA as a lobbying firm from 2004 through 2009.

111.    The Stroz Friedberg assessment contained six recommendations that "focused on improving the accuracy and reliability" of MarkMonitor's processes.

112.    Stroz Friedberg further explained that MarkMonitor generates notices for allegedly infringing files before it has verified those files as authentic. MarkMonitor stated that this process results in the collection of thousands of files that are later determined to be not infringing. MarkMonitor also stated that this process increases the chances that notices will be generated for non-infringing files.

113.    Specifically, the RIAA hired a company called Audible Magic to verify that the allegedly infringing files matched copyrighted works owned by the Record Company Plaintiffs. However, documents produced by MarkMonitor and Audible Magic show that notices were sent to Bright House before they were verified by Audible Magic, that MarkMonitor had a low rate of matched works among the works submitted for verification, and that a large percentage of the notices sent by MarkMonitor were not supported by Audible Magic verification.

114.    After it was reported that Stroz Friedberg had been a lobbyist for the RIAA between 2004 and 2009, the CCI hired a second consulting firm, Harbor Labs, to conduct another review of MarkMonitor's system.

115.    Harbor Labs did not analyze MarkMonitor's system directly but relied on test results conducted previously by Stroz Friedberg as part of its assessment in 2012.

116.    On December 5, 2012, Harbor Labs released its evaluation, in which it stated that MarkMonitor should undergo consistent and regular end-to-end and unit testing, improve its verification approaches, and improve its controls over employee access to sensitive data.

117.     Specifically, Harbor Labs noted that MarkMonitor does not maintain any precision-relevant metrics on its live system. In other words, except in the event that a recipient of a notice complains that the notice is inaccurate, MarkMonitor does not maintain any data confirming that its notices are accurate.

118.     On information and belief, Plaintiffs have not directly sued providers of P2P software, and/or companies or individuals who host, index, or link to infringing copies of the works in suit.

119.     On information and belief, Plaintiffs have not sued any individual direct infringers for the infringements they allege here.

### g.     Counter-Defendants' Rampant and Deceptive Enforcement Conduct

120.     MarkMonitor, on behalf of the RIAA, purporting to assert rights owned by Plaintiffs, sent notices of alleged copyright infringement, including during the Claim Period, for works Plaintiffs do not own or otherwise have the right to enforce, and for actions that were not infringing.

121.     The Record Company Plaintiffs, along with the RIAA, have engaged in a decades-long campaign against consumers, threatening expensive, time-consuming litigation, and wielding the prospect of outsized and disproportionate statutory damages.

122.     For example, between approximately 2004 and 2009, the record industry initiated over 30,000 lawsuits against individuals who were alleged to have downloaded music on peer-to-peer networks. Many of these individuals were forced to settle their suits out of fear, as one court observed:

> There is a huge imbalance in these cases. The record companies are represented by large law firms with substantial resources. The law is also overwhelmingly on their side. They bring cases against individuals, individuals who don't have lawyers and don't have access to lawyers and who don't understand their legal rights.
>
> Some category of individuals are defaulted because they read the summons, and they haven't the foggiest idea what it means and don't know where to go, so they're defaulted, and they owe money anywhere from $3,000 to $10,000 as a result of these defaults.[15]

123.    The Record Company Plaintiffs, through the RIAA, exploit and leverage this imbalance of knowledge and resources in order to extract settlements from the consuming public. Upon information and belief, in order to do so, the Record Company Plaintiffs and/or the RIAA exploit sound recordings beyond their legal entitlement.

124.    The Record Company Plaintiffs' practices also target ISPs, like Bright House, whose subscribers were and are consumers of Plaintiffs' goods.

125.    As an ISP, Bright House received notices sent by MarkMonitor, on behalf of the RIAA, purporting to assert rights owned by Plaintiffs, and, in turn, passed them on to its subscribers. In certain circumstances, the subscribers questioned the veracity of the notices. As a result, Bright House bore the cost and burden of processing the notices and engaging with its subscribers to address these and other issues as a result of the actions of Plaintiffs, RIAA and MarkMonitor. To the extent the notices that Bright House forwarded to its subscribers contained inaccurate allegations of copyright infringement, Bright House suffered harm to its reputation and lost the goodwill of its subscribers.

126.    To the extent Bright House's subscribers received notices alleging incorrectly that they infringed copyrights, they were harmed by being forced to review and respond to such notices.

---

[15] *Capitol Records, Inc. et al. v. Noor Alaujan, et al.*, Case No. 03-11661-NG (D. Mass.), June 7, 2008 Mot. Hr'g Tr. at 8:14-25.

In addition, subscribers were harmed because the inaccurate allegations against the subscribers contained in the false notices became part of the record of each accused subscriber's account maintained by Bright House.  Bright House bases corrective actions it takes against subscribers—including termination of their Internet access—on subscribers' record of alleged past transgressions.

> **h.    The Works in Suit Constitute a Small Percentage of Each Plaintiff's Catalogue**

127.    Plaintiffs allege that they collectively own or control the vast majority of music exploited in the United States, if not the world.

128.    Upon information and belief, Plaintiffs collectively own or control *many millions* of works. Yet in this case, they collectively only assert the alleged infringement of 7,271 works.

129.    For example, of the 63 individually named Plaintiffs, approximately 47 (75%) assert fewer than 100 works each.[16] Many of these Plaintiffs assert only a handful of works and, in some cases, all from the same album(s) and/or recording artist(s).

130.    Even the Plaintiffs that assert the highest numbers of works in suit—*i.e.*, UMG Recordings, Inc. (approx. 1,476), Sony Music Entertainment (approx. 1,419), and WC Music Corp. (approx. 513)—assert infringement of only a very small percentage of the total number of works that each of those Plaintiffs owns or controls.

131.    Based on the foregoing, it is clear that Plaintiffs are suing on only a small percentage of the total number of works that each owns or controls.

---

[16] Four of the Music Publisher Plaintiffs (Chappell & Co. Inc.; EMI Al Gallico Music Corp.; EMI Jemaxal Music Inc.; Musik Edition Discoton GmbH; Universal Music Publishing Inc.) apparently assert *no* works after Plaintiffs amended their Exhibits, though it appears that these entities are still named Plaintiffs in the First Amended Complaint. *See* ECF 96-1. If these entities are removed from the calculation, it leaves 43 of 59 Plaintiffs, or 73%, that assert fewer than 100 works.

132.    Of this small percentage of works owned or controlled by each Plaintiff asserted in this case, upon information and belief, Plaintiffs have not elected to only sue for infringement of their most popular works.

133.    Of this small percentage of works owned or controlled by each Plaintiff asserted in this case, upon information and belief, Plaintiffs have not elected to only sue for infringement of their most profitable works.

134.    Of this small percentage of works owned or controlled by each Plaintiff asserted in this case, upon information and belief, Plaintiffs have not elected to only sue for infringement of their works that were allegedly infringed most frequently during the Claim Period.

135.    Plaintiffs instead elected to sue for infringement of those works for which they claim a Bright House subscriber infringed after that subscriber was the subject of "multiple" prior infringement notices received by Bright House, as they allege. *See, e.g.*, First Amended Complaint, ¶¶ 5, 8, 96, 105.

## <u>CLAIM ONE</u>

### VIOLATION OF DMCA SECTION 512(f) FOR KNOWINGLY SENDING MATERIALLY INACCURATE NOTICES OF ALLEGED INFRINGEMENT

136.    Bright House repeats the allegations in Paragraphs 1 through 135 and incorporates them here.

137.    Upon information and belief, during the Claim Period, MarkMonitor, on behalf of the RIAA, which purported to assert rights owned by Plaintiffs sent copyright infringement notices to Bright House that contained inaccurate information, including but not limited to the misrepresentation that the RIAA was authorized on behalf of the Record Company Plaintiffs to send a notice relating to these allegedly infringed works, that the Record Company Plaintiff on whose behalf the notice was sent owned or controlled the work, that the actions alleged to have

been taken by Bright House's subscribers constituted infringement of the Record Company Plaintiff's rights, and that the notice sender had a good faith belief that use of the material in the manner complained of was not authorized by the copyright owner, its agent, or the law.

138.    Upon information and belief, the Record Company Plaintiffs, the RIAA, and MarkMonitor knew that their copyright infringement notices contained false allegations of infringement at the time the notices were sent, or deliberately avoided confirming a high probability that their copyright infringement notices contained false allegations of infringement prior to the notices being sent. For example, the Record Company Plaintiffs, the RIAA, and MarkMonitor knew or deliberately avoided confirming a high probability that the Record Company Plaintiffs did not own or control certain of the works identified in notices sent to Bright House before they were sent.

139.    In the alternative, and at a minimum, the Record Company Plaintiffs, the RIAA, and MarkMonitor should have known that the copyright infringement notices sent to ISPs, including Bright House, contained false allegations of infringement prior to the notices being sent.

140.    The Record Company Plaintiffs, the RIAA, and MarkMonitor knew the Record Company Plaintiffs did not own or control certain works or, alternatively, they did not have the permission to send infringement notices relating to certain works. The Record Company Plaintiffs, the RIAA, and MarkMonitor nevertheless sent, or authorized the sending of, notices to Bright House, despite this knowledge.

141.    The Record Company Plaintiffs, the RIAA, and MarkMonitor knew or deliberately avoided confirming a high probability that the works identified in the notices were not infringed by Bright House subscribers before the notices were sent. The Record Company Plaintiffs, the

RIAA, and MarkMonitor nevertheless sent, or authorized the sending of, notices to Bright House, despite this knowledge.

142.    In the alternative, and at a minimum, Plaintiffs, the RIAA, and MarkMonitor should have known that the works identified in the notices were not infringed by Bright House subscribers before the notices were sent.

143.    The fact that the Record Company Plaintiffs, the RIAA, and/ MarkMonitor sent or authorized the sending of numerous infringement notices for works that they did not own or control evinces a lack of a good-faith belief that the statements in their notices were accurate.

144.    The fact that the Record Company Plaintiffs, the RIAA, and MarkMonitor sent or authorized the sending of numerous infringement notices for acts by subscribers that were not infringing evinces a lack of a good-faith belief that the statements in their notices were accurate.

145.    Because the Record Company Plaintiffs, the RIAA, and/or MarkMonitor lacked knowledge of the true owner of the copyright for the Dropped Works, they could not have formed a good faith belief that the use complained of in notices for those works had not been authorized by the copyright owner, its agent, or the law.

146.    During the Claim Period, Bright House received notices from the RIAA, purporting to assert the rights of the Record Company Plaintiffs, but sent by MarkMonitor, that Bright House could not verify.  Specifically, Bright House could not verify whether any of the Plaintiffs owned or controlled the work identified in the notice. Bright House also could not verify whether the sender of the notice was authorized to send it. Bright House also could not verify whether the activity that was alleged in the notice constituted copyright infringement.

147.    During the Claim Period, Bright House relied on the statement in the notices that "the information in the notice is accurate," that the senders were authorized by the copyright

71

owners to send notices concerning their works, and that the senders "have a good faith belief that this activity is not authorized by the copyright owner, its agent, or the law."

148.    In reliance on these representations, Bright House accepted the notices and processed them accordingly. This includes, but is not limited to, accepting each notice into its ECATS system, processing it, forwarding it to the referenced subscriber, and taking any further necessary action.

149.    The steps Bright House took in response to receiving the inaccurate notices could result in the "removal or blocking" of the noticed material.

150.    Bright House also incurred costs in implementing its ECATS, including when processing the inaccurate notices.

151.    Bright House was also injured when it processed inaccurate notices, causing it to forward false accusations to its subscribers, to the extent this created tension with the impacted subscribers, negatively affected goodwill, and caused reputational harm to Bright House and its successor Charter.

152.    Bright House was additionally injured through its investigation of the veracity of the notices for the Dropped Works, including whether Plaintiffs owned or controlled the works when the false notices were sent, including to the extent they relate to the Music Publisher Plaintiffs' Dropped Works, or whether the Record Company Plaintiffs had the right to send notices to Bright House for the Dropped Works.

153.    Bright House was further injured through its defense of the allegations concerning fallacious notices, including determining whether Plaintiffs own or control the works when the notices were sent or whether the Record Company Plaintiffs, the RIAA, and MarkMonitor had the

right to send notices to Bright House for the Dropped Works, including to the extent they relate to the Music Publisher Plaintiffs' Dropped Works.

154.    Bright House was further injured through having to defend against Plaintiffs' material representations in their notices, including having to conduct substantial investigation to determine whether the notices alleged actual direct copyright infringement by Bright House's subscribers.

155.    Bright House could not have discovered that the notices for the Dropped Works were inaccurate until February 15, 2020, after Plaintiffs dropped the works from this case and Bright House subsequently analyzed Plaintiffs' notice data.

## CLAIM TWO

### VIOLATION OF THE FLORIDA
### DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,
### Fla. Stat. (2019) §§ 501.201 *et seq.* ("FDUTPA")

156.    Bright House repeats the allegations in Paragraphs 1 through 155 and incorporates them here.

157.    Plaintiffs, the RIAA, and MarkMonitor engaged in unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of their trade and commerce, by knowingly or recklessly sending, and causing to be sent, false, deceptive, and misleading copyright infringement notices concerning works for which they did not own the rights and for which they lacked authorization to send such notices. Plaintiffs', the RIAA's, and MarkMonitor's acts and practices offend established public policy, and are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and are misleading or likely to mislead consumers who were acting reasonably in the circumstances, to the consumers' detriment.

158.    In the course of their business, the Record Company Plaintiffs, the RIAA, and MarkMonitor engaged in acts and practices that are unfair, unconscionable, deceptive, misleading or likely to mislead, false, or fraudulent trade practices, as described above.

159.    In the course of Bright House's business, it has been injured and suffered losses as a result of the Record Company Plaintiffs', the RIAA's, and MarkMonitor's unfair and deceptive trade practices described above. Bright House has suffered actual damage as a result of those practices, including because Bright House has incurred costs in implementing its ECATS system and its customer service operations in receiving, processing, and forwarding the inaccurate notices.

160.    Bright House was also subject to and aggrieved by Plaintiffs', the RIAA's, and MarkMonitor's unfair and deceptive trade practices when Bright House processed those inaccurate notices and thereby forwarded false accusations to its subscribers, including to the extent this created tension with the impacted subscribers, negatively affected Bright House's goodwill, and caused reputational harm to Bright House.

161.    Bright House was also aggrieved and suffered loss in the course of its business due to the cost and burden of investigating the veracity of the inaccurate notices for the Dropped Works, including investigating whether Plaintiffs owned or controlled the works at the times the notices were sent; investigating the extent to which those works related to the Music Publisher Plaintiffs' Dropped Works; and investigating whether Plaintiffs otherwise had the right or were authorized to send notices to Bright House for the Dropped Works.

162.    Bright House was also aggrieved and suffered loss in the course of its business by being required to defend itself against Plaintiffs' allegations concerning the Dropped Works and the inaccurate notices, including determining whether Plaintiffs owned or controlled the works at the relevant times, or whether the Record Company Plaintiffs, the RIAA, and/or MarkMonitor had

the right to send notices to Bright House for the Dropped Works; and determining the extent to which the sound recordings at issue in the notices related to the Music Publisher Plaintiffs' Dropped Works.

163.   On information and belief, the Record Company Plaintiffs own or control a significant share of the recorded music distributed, sold, and publicly performed in the United States. Thus, their conduct in sending inaccurate notices to Bright House impacted actual and/or potential consumers of the Record Company Plaintiffs' goods, services, and property.

164.   The Record Company Plaintiffs', the RIAA's, and MarkMonitor's actions in sending and causing to be sent inaccurate notices to ISPs like Bright House—which notices are in turn forwarded to members of the public—significantly impacted these members of the public, who were falsely led to believe that they have violated the law, and who are instructed to take actions based on inaccurate notices and otherwise coerced to comply with baseless threats based on the inaccurate notices.  In addition, the false notices become part of the subscriber's record, which Bright Houses uses to determine whether adverse action should be taken against subscribers—including whether subscribers' Internet access should be terminated.

165.   The Record Company Plaintiffs', the RIAA's, and MarkMonitor's conduct aggrieved and caused loss to Bright House, and Bright House has been and continues to be irreparably harmed by those actions and has no adequate remedy at law.

166.   Upon information and belief, the Record Company Plaintiffs, the RIAA, and MarkMonitor engaged in the conduct described above in bad faith, and their conduct was fraudulent, reckless, willful, knowing, and/or intentional.

167.    Plaintiffs', the RIAA's, and MarkMonitor's conduct described above constitutes unfair or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), including at least violations of Fla. Stat. § 501.204(1).

168.    Bright House could not have discovered that the notices for the Dropped Works were inaccurate until February 15, 2020, after Plaintiffs dropped the works from this case and Bright House subsequently analyzed Plaintiffs' notice data.

## DEMAND FOR JURY TRIAL

Defendant hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Bright House Networks, LLC respectfully requests that this Court enter judgment as follows:

a.    Judgment against Plaintiffs and in favor of Bright House on Plaintiffs' claims set forth in the First Amended Complaint and dismissal of such claims with prejudice;

b.    Judgment against Plaintiffs, the RIAA, and MarkMonitor and in favor of Bright House on each of Bright House's claims as set forth above, *i.e.*, that Plaintiffs have violated 17 U.S.C. § 512(f) and Fla. Stat. (2019) §§ 501.201 *et seq.*;

c.    For damages, in an amount up to the maximum provided by law, arising from Plaintiffs', the RIAA's, and MarkMonitor's violation of 17 U.S.C. 512(f);

d.    For damages, in an amount up to the maximum provided by law, arising from Plaintiffs', the RIAA's, and MarkMonitor's violation of Fla. Stat. 501.201 *et seq.*, including but not limited to Bright House's actual sustained damages and prejudgment interest;

e.    For Bright House's attorneys' fees and court costs, pursuant to Fla. Stat. § 501.211(2);

f.      For a declaratory judgment, pursuant to Fla. Stat. § 501.211(1), that Plaintiffs', the RIAA's, and MarkMonitor's acts and practices described above violate the Florida Deceptive and Unfair Trade Practices Act;

g.      For an injunction, pursuant to Fla. Stat. § 501.211(1), enjoining Plaintiffs, the RIAA, and MarkMonitor from submitting notices of claimed infringement to Bright House for works that they do not own rights to, including without limitation the Dropped Works;

h.      For Bright House's reasonable attorneys' fees and costs incurred in connection with this action pursuant to 17 U.S.C. § 505 and/or § 512(f); and

i.      Such other and further relief in Bright House's favor as the Court shall deem just and proper.

Dated: August 25, 2020                         Respectfully submitted,


Jennifer A. Golinveaux (*pro hac vice*)        */s/ Andrew H. Schapiro*
WINSTON & STRAWN LLP                           Andrew H. Schapiro (*pro hac vice*)
101 California Street, 35th Floor               QUINN EMANUEL URQUHART &
San Francisco, CA 94111-5840                      SULLIVAN, LLP
Tel: (415) 591-1506                            191 N. Wacker Drive, Suite 2700
Email: jgolinveaux@winston.com                 Chicago, IL 60606
                                               Tel: (312) 705-7400
Michael S. Elkin (*pro hac vice*)              Email: andrewschapiro@quinnemanuel.com
Thomas Patrick Lane (*pro hac vice*)
Seth E. Spitzer (*pro hac vice*)               Charles K. Verhoeven (*pro hac vice*)
WINSTON & STRAWN LLP                           David Eiseman (*pro hac vice*)
200 Park Avenue                                QUINN EMANUEL URQUHART &
New York, NY 10166                                SULLIVAN, LLP
Tel: (212) 294-6700                            50 California Street, 22nd Floor
Email: melkin@winston.com                      San Francisco, CA 94111
Email: tlane@winston.com                       Tel: (415) 875-6600
Email: sspitzer@winston.com                    Email: charlesverhoeven@quinnemanuel.com
                                               Email: davideiseman@quinnemanuel.com
Erin R. Ranahan (*pro hac vice*)
WINSTON & STRAWN LLP                           William J. Schifino, Jr.
333 S. Grand Avenue                            Florida Bar No. 564338
Los Angeles, CA 90071                          GUNSTER, YOAKLEY & STEWART, P.A.
Tel: (213) 615-1933                            401 E. Jackson St., Ste. 2500
Email: eranahan@winston.com                    Tampa, FL 33602
                                               Tel: (813) 228-9080
Michael L. Brody (*pro hac vice*)              Email: bschifino@gunster.com
WINSTON & STRAWN LLP
35 W. Wacker Drive                             *Counsel for Defendant*
Chicago, IL 60601-9703                         *Bright House Networks, LLC*
Tel: (312) 558-5600
E-mail: mbrody@winston.com

# Exhibit A

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22277350577 | 2013-07-16 03:13:00.2700000 +00:00 | 142.197.157.186 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Chris Brown - FAME Deluxe (2011)[MP3]-DshareX | DEUCES |
| 22272962181 | 2013-03-28 01:12:45.4500000 +00:00 | 50.88.200.126 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Katy Perry - Teenage Dream The Complete Confection (2012) | TEENAGE DREAM |
| 22278101130 | 2013-08-01 20:54:36.0300000 +00:00 | 50.88.150.109 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Esperanza Spalding - 2012 - Radio Music Society | RADIO SONG |
| 22275982518 | 2013-06-13 06:27:18.1500000 +00:00 | 142.197.190.210 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Beez In The Trap Nicki Minaj (Feat. 2 Chainz) - by NoXoN.mp3 | BEEZ IN THE TRAP |
| 22274841192 | 2013-05-15 16:49:02.0200000 +00:00 | 174.134.117.158 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | keysha cole - let it go ft lil' kim, missy elliott(2).mp3 | LET IT GO |
| 22274943554 | 2013-05-18 22:04:50.7200000 +00:00 | 97.71.47.135 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Elliott Smith - Either or | BETWEEN THE BARS |
| 22278057196 | 2013-08-01 02:28:04.5500000 +00:00 | 71.46.117.228 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kid Cudi - Man on the Moon II - The Legend of Mr. Rager (RapGodFathers.com) | MAN ON THE MOON, VOL. 2: THE LEGEND OF MR. RAGER |
| 22272962242 | 2013-03-28 11:53:46.7000000 +00:00 | 50.90.92.117 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Tony Terry - When I'm With You.mp3 | WITH YOU |
| 22274841168 | 2013-05-15 08:01:22.7700000 +00:00 | 50.88.36.70 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Drake - Thank Me Later [2010-MP3-Cov][Bubanee] | THANK ME LATER |
| 22278233977 | 2013-08-06 02:55:14.4300000 +00:00 | 50.90.13.97 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Britney Spears - Femme Fatale [Deluxe Edition] 2011 [CDRip] CBR320vtwin88cube | FEMME FATALE |
| 22273672463 | 2013-04-15 18:34:38.8900000 +00:00 | 174.134.161.35 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | neon trees - everybody talks(2).mp3 | EVERYBODY TALKS |
| 22278057015 | 2013-07-31 02:43:50.2900000 +00:00 | 72.31.24.171 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 05 adele - crazy for you.mp3 | CRAZY FOR YOU |
| 22271717723 | 2013-02-28 05:47:54.3300000 +00:00 | 174.134.208.238 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West - 808s and Heartbreaks | LOVE LOCKDOWN |
| 22274841159 | 2013-05-14 22:20:50.3200000 +00:00 | 174.134.244.133 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Carrie Underwood - Blown Away | BLOWN AWAY |
| 22278057144 | 2013-07-31 21:26:08.4800000 +00:00 | 71.46.57.65 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 07-rihanna-man_down(2).mp3 | MAN DOWN |
| 22272962258 | 2013-03-28 14:42:59.0500000 +00:00 | 71.45.116.196 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 Chainz - No Lie (feat. Drake) {2012-Single}[NL] | NO LIE |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22272962293 | 2013-03-28 17:07:30.2500000 +00:00 | 50.90.0.21 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Thinkin Bout You | THINKIN BOUT YOU |
| 22278184239 | 2013-08-04 15:52:18.6800000 +00:00 | 75.114.181.253 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | m. ward | NEVER HAD NOBODY LIKE YOU |
| 22278057026 | 2013-07-31 03:25:00.7800000 +00:00 | 174.134.105.100 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 01 justin bieber - baby ft ludacris448.mp3 | BABY |
| 22276095339 | 2013-06-16 03:08:11.5500000 +00:00 | 174.134.87.26 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 04 - carrie underwood - just a dream - copy.mp3 | JUST A DREAM |
| 22274359151 | 2013-05-02 20:09:40.1800000 +00:00 | 172.221.12.250 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | lil wayne ft big sean - my homies still.mp3 | MY HOMIES STILL |
| 22278057192 | 2013-08-01 02:04:08.8900000 +00:00 | 142.196.165.188 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Drake - Take Care (Deluxe Edition) (Album) (2011) | TAKE CARE |
| 22275246677 | 2013-05-26 19:57:57.8900000 +00:00 | 174.84.205.175 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Nonpoint-Nonpoint-2012-FNT | LEFT FOR YOU |
| 22272962224 | 2013-03-28 08:52:25.4400000 +00:00 | 50.90.30.147 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kid Cudi - Man on the Moon II - The Legend of Mr. Rager (RapGodFathers.com) | MAN ON THE MOON, VOL. 2: THE LEGEND OF MR. RAGER |
| 22274754108 | 2013-05-13 07:16:18.8500000 +00:00 | 97.71.61.6 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | lil wayne - gonorrhea(2).mp3 | GONORRHEA |
| 22275666866 | 2013-06-05 01:30:59.0500000 +00:00 | 142.196.237.185 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Ca$h Out - Cashin' Out | CASHIN' OUT |
| 22278057043 | 2013-07-31 04:57:18.1900000 +00:00 | 50.90.231.216 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Drake - Take Care (Deluxe Version) [Official Album][CD-Rip] | TAKE CARE |
| 22272962167 | 2013-03-27 21:17:12.1900000 +00:00 | 142.196.79.104 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West - Mercy {feat Big Sean,Pusha T, 2 Chainz} 2012-Single | MERCY |
| 22272351526 | 2013-03-14 05:41:42.7400000 +00:00 | 50.90.2.125 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | chris brown - dont wake me up (no tags) - hotnewhiphop.mp3 | DON'T WAKE ME UP |
| 22278056976 | 2013-07-30 21:55:16.5400000 +00:00 | 174.134.120.14 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 01 chris_brown_-_forever_(real_cdq)124.mp3 | FOREVER |
| 22272052585 | 2013-03-05 23:51:01.3900000 +00:00 | 50.90.13.97 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Britney Spears - Femme Fatale [Deluxe Edition] 2011 [CDRip] CBR320 vtwin88cube | FEMME FATALE |
| 22272962294 | 2013-03-28 17:08:13.7700000 +00:00 | 50.88.52.49 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | jana kramer - why ya wanna.mp3 | WHY YA WANNA |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22278101137 | 2013-08-01 23:07:45.7000000 +00:00 | 174.134.74.28 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Maroon 5 - One More Night | ONE MORE NIGHT |
| 22273318917 | 2013-04-07 19:56:16.9100000 +00:00 | 50.90.116.230 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Lil.Wayne-Music.God-(Bootleg)-2011-[NoFS] | 6 FOOT 7 FOOT |
| 22274841175 | 2013-05-15 09:40:35.0400000 +00:00 | 174.134.163.137 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2pac - tupac - dear mama.mp3 | DEAR MAMA |
| 22274359034 | 2013-05-02 02:00:37.7800000 +00:00 | 142.196.129.239 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Modest Mouse - We Were Dead Before The Ship Even Sank (2007) | DASHBOARD |
| 22272706715 | 2013-03-22 02:06:48.5400000 +00:00 | 50.88.19.111 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Outkast-ATLiens-1996 | ATLIENS |
| 22276904044 | 2013-07-05 03:53:50.3300000 +00:00 | 50.90.147.134 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Flo Rida Feat Sia - Wild Ones.mp3 | WILD ONES |
| 22272297819 | 2013-03-13 03:34:18.4000000 +00:00 | 75.112.150.226 | Recording Industry Association of America Inc | antipiracy2@riaa.com | 1-800-838-9775 | 04-rascal_flatts-come_wake_me_up.mp3 | COME WAKE ME UP |
| 22274320051 | 2013-05-01 03:18:21.3600000 +00:00 | 174.84.220.38 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 Chainz - No Lie (Feat. Drake) [Single] [2012]-Sebastian[Ub3r].mp3 | NO LIE |
| 22277089727 | 2013-07-08 15:41:59.6200000 +00:00 | 174.84.205.175 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Nonpoint-Nonpoint-2012-FNT | LEFT FOR YOU |
| 22278057118 | 2013-07-31 18:20:55.3600000 +00:00 | 50.88.20.11 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 02-trey_songz-love_faces.mp3 | LOVE FACES |
| 22275666788 | 2013-06-04 12:01:10.0200000 +00:00 | 97.69.174.219 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Band Perry - 07 - Postcard from Paris(1).mp3 | POSTCARD FROM PARIS |
| 22274841160 | 2013-05-14 23:07:55.5800000 +00:00 | 142.197.183.4 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kelly Rowland - Motivation (feat. Lil Wayne) [2011-Single][MJN] | MOTIVATION |
| 22277089777 | 2013-07-09 10:20:30.3700000 +00:00 | 142.197.176.95 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 03 ed sheeran - the a team.mp3 | THE A TEAM |
| 22274841188 | 2013-05-15 15:12:45.0300000 +00:00 | 71.45.18.92 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Lloyd - Street Love.[2007].[www.newpct.com] | GET IT SHAWTY |
| 22278057170 | 2013-08-01 00:02:01.6600000 +00:00 | 50.89.134.224 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | miguel - adorn.mp3 | ADORN |
| 22278101165 | 2013-08-02 05:37:19.4600000 +00:00 | 174.134.106.134 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | maroon 5 - one more night(5).mp3 | ONE MORE NIGHT |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22272614872 | 2013-03-20 04:11:28.4800000 +00:00 | 50.89.137.133 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | owl city and carly rae jepsen - good time.mp3 | GOOD TIME |
| 22277581716 | 2013-07-21 02:05:05.0800000 +00:00 | 174.134.172.156 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | The Lumineers- Ho Hey | HO HEY |
| 22273716505 | 2013-04-15 23:02:59.1100000 +00:00 | 174.134.225.16 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Eminem - Recovery 2010 | RECOVERY |
| 22276806459 | 2013-07-02 08:50:40.5300000 +00:00 | 50.89.251.145 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | katy perry- wide awake [single] {mobicareg} {hkrg}.mp3 | WIDE AWAKE |
| 22272843489 | 2013-03-26 01:29:04.0200000 +00:00 | 71.45.56.38 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Edward Sharpe &amp; The Magnetic Zeros - Home.mp3 | HOME |
| 22272962170 | 2013-03-27 21:52:29.0900000 +00:00 | 174.134.127.182 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West ft. Big Sean, Pusha T 2 Chainz - Mercy .2012.{Mobicareg}.{HKRG}.mp3 | MERCY |
| 22278057085 | 2013-07-31 08:19:27.9500000 +00:00 | 71.45.3.165 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Drake - Take Care (Deluxe Version) [Official Album][CD-Rip] | TAKE CARE |
| 22278057150 | 2013-07-31 22:02:23.0700000 +00:00 | 142.197.224.171 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 01 justin bieber - baby ft ludacris.mp3 | BABY |
| 22278057203 | 2013-08-01 03:16:14.7900000 +00:00 | 50.90.131.34 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Chris Brown - Don't Wake Me Up.mp3 | DON'T WAKE ME UP |
| 22275948586 | 2013-06-12 04:24:39.1700000 +00:00 | 142.197.89.38 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | [2008] Tha Carter III - Lil Wayne - 183mb @ 320kbs [only1joe] | THA CARTER III |
| 22278056998 | 2013-07-31 00:21:05.9400000 +00:00 | 50.88.239.151 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Nelly ft. Fergie- Party People .mp3 | PARTY PEOPLE |
| 22278057142 | 2013-07-31 21:11:47.6400000 +00:00 | 50.90.183.40 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Carrie Underwood | JUST A DREAM |
| 22278184162 | 2013-08-03 22:34:52.2900000 +00:00 | 50.89.176.97 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Maroon 5 - Moves Like Jagger.mp3 | MOVES LIKE JAGGER |
| 22272962222 | 2013-03-28 08:44:53.4600000 +00:00 | 50.90.203.155 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 Chainz - No Lie (Feat.Drake) (2012-Single) | NO LIE |
| 22278057071 | 2013-07-31 11:19:47.8700000 +00:00 | 142.196.240.122 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | alicia keys - try sleeping with a broken heart bmf265.mp3 | TRY SLEEPING WITH A BROKEN HEART |
| 22272962221 | 2013-03-28 08:35:50.0200000 +00:00 | 142.196.5.29 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | In This Moment - Blood (2012) [WwW.ZoNaTorrent.CoM] | BLOOD |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22275752611 | 2013-06-06 08:33:05.0500000 +00:00 | 97.71.16.244 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Elliott Smith - Either or | BETWEEN THE BARS |
| 22278057214 | 2013-08-01 04:53:19.2100000 +00:00 | 174.134.148.58 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Katy Perry - Wide Awake | WIDE AWAKE |
| 22272843491 | 2013-03-26 02:48:29.5200000 +00:00 | 142.197.61.216 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | lil wayne ft big sean - my homies still [umd].mp3 | MY HOMIES STILL |
| 22272962291 | 2016-08-10 10:10:31.5300000 +00:00 | 71.46.49.251 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Flo Rida - Wild Ones (feat. Sia) | WILD ONES |
| 22274841165 | 2013-05-15 04:20:17.8800000 +00:00 | 50.90.241.149 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Drake - Thank Me Later [2010-MP3-Cov][Bubanee] | THANK ME LATER |
| 22272962243 | 2013-03-28 12:12:27.0000000 +00:00 | 174.134.253.231 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | timbaland ft pitbull &amp; david guetta - pass at me im1.mp3 | PASS AT ME |
| 22274841157 | 2013-05-14 20:43:16.0400000 +00:00 | 50.90.134.141 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | lil wayne - got_money_feat _t-pain.mp3 | GOT MONEY |
| 22274569849 | 2013-05-08 02:36:26.9800000 +00:00 | 50.90.157.139 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | back to december' 'taylor swift.mp3 | BACK TO DECEMBER |
| 22275537628 | 2013-06-02 23:22:32.7100000 +00:00 | 71.46.121.217 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Jason Mraz - I Wont Give Up 2012 | I WON'T GIVE UP |
| 22272397163 | 2013-03-14 10:27:05.5900000 +00:00 | 50.90.16.246 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Adele - 19 (Deluxe Edition) | 19 |
| 22273716506 | 2013-04-15 23:07:20.9100000 +00:00 | 50.90.205.155 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Rihanna - We Found Love (feat. Calvin Harris) | WE FOUND LOVE |
| 22273388994 | 2013-04-08 03:10:23.6900000 +00:00 | 71.45.22.78 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Adele - 19 (Deluxe Edition) | 19 |
| 22274841156 | 2013-05-14 17:35:19.0900000 +00:00 | 71.45.97.103 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Miguel Feat Wiz Khalifa - Adorn (Remix).mp3 | ADORN |
| 22273388995 | 2013-04-08 03:11:21.5000000 +00:00 | 142.197.119.4 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 03 ne-yo - let me love you.mp3 | LET ME LOVE YOU (UNTIL YOU LEARN TO LOVE YOURSELF) |
| 22274841189 | 2013-05-15 15:44:05.2200000 +00:00 | 174.134.136.58 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 09-blake_shelton-over(2).mp3 | OVER |
| 22276806466 | 2013-07-02 10:44:08.0000000 +00:00 | 50.90.230.133 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | eminem feat rihanna - love the way you lie.mp3 | LOVE THE WAY YOU LIE |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22278101106 | 2013-08-01 08:40:43.7200000 +00:00 | 71.45.75.231 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 14-future-turn_on_the_lights.mp3 | TURN ON THE LIGHTS |
| 22274841164 | 2013-05-15 01:38:05.9900000 +00:00 | 97.71.33.35 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | eminem - lose yourself(2).mp3 | LOSE YOURSELF |
| 22274841177 | 2013-05-15 10:22:58.1600000 +00:00 | 174.134.113.178 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 chainz ft drake - no lie(2).mp3 | NO LIE |
| 22276095326 | 2013-06-16 02:03:29.7100000 +00:00 | 50.89.224.88 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | keith urban - for you.mp3 | FOR YOU |
| 22274841163 | 2013-05-15 01:13:05.6900000 +00:00 | 174.134.165.39 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Chris Brown - F.A.M.E Deluxe [2011-MP3-Cov][Bubanee] | F.A.M.E. |
| 22272962183 | 2013-03-28 01:31:37.5000000 +00:00 | 50.90.178.198 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Carlos Santana - Gold Greatest Hits 3 CD (2010) by Juledj77 | NO ONE TO DEPEND ON |
| 22275752557 | 2013-06-05 17:45:30.6500000 +00:00 | 142.196.71.246 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Heart - The Essential Heart | BARRACUDA |
| 22274841186 | 2013-05-15 13:31:51.8500000 +00:00 | 50.88.155.202 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | kanye_west_feat _big_sean,_pusha_t_&amp;_2_chainz_-_mercy_(cdq).mp3 | MERCY |
| 22272783266 | 2013-03-24 18:38:56.8400000 +00:00 | 174.134.78.20 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Ed Sheeran  - + (Plus) [2011 Album] | THE A TEAM |
| 22272478358 | 2013-03-17 10:43:22.1100000 +00:00 | 50.90.65.117 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 chainz ft drake - no lie [umd].mp3 | NO LIE |
| 22278184259 | 2013-08-04 20:06:20.3300000 +00:00 | 174.134.157.72 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Maroon 5-Overexposed (Deluxe Edition)(2012) 320Kbit(mp3) DMT | ONE MORE NIGHT |
| 22274841176 | 2013-05-15 09:43:31.3900000 +00:00 | 142.196.251.91 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 chainz ft drake - no lie [umd].mp3 | NO LIE |
| 22277089769 | 2013-07-09 03:52:35.1000000 +00:00 | 142.197.30.47 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Brand_New_Deja_Entendu-2003-fnt | OKAY I BELIEVE YOU, BUT MY TOMMY GUN DON'T |
| 22278057139 | 2013-07-31 20:37:13.9300000 +00:00 | 50.89.62.150 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 Chainz Feat Drake - No Lie (Dirty) [CDQ].mp3 | NO LIE |
| 22274841170 | 2013-05-15 08:11:48.5800000 +00:00 | 174.134.115.34 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 Chainz - No Lie (Feat.Drake) (2012-Single) | NO LIE |
| 22278184199 | 2013-08-04 05:13:11.5800000 +00:00 | 50.90.246.56 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | adele - chasing pavements.mp3 | CHASING PAVEMENTS |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22278057095 | 2013-07-31 14:26:01.0900000 +00:00 | 174.134.205.218 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | eminem feat lil wayne - no love - hotnewhiphop.com.mp3 | NO LOVE |
| 22275830032 | 2013-06-09 16:12:03.6800000 +00:00 | 50.90.224.182 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 14-future-turn_on_the_lights.mp3 | TURN ON THE LIGHTS |
| 22276030948 | 2013-06-13 19:02:38.0700000 +00:00 | 174.134.163.247 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West feat. Rihanna - All Of The Lights.mp3 | ALL OF THE LIGHTS |
| 22278233950 | 2013-08-05 18:59:57.9500000 +00:00 | 142.196.86.12 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | LMFAO - Party Rock Anthem.mp3 | PARTY ROCK ANTHEM |
| 22276903929 | 2013-07-04 04:46:55.3000000 +00:00 | 50.90.30.132 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Bad Meets Evil (Eminem) - Hell The Sequel CDRip 2011 [Bubanee] | HELL: THE SEQUEL |
| 22273244771 | 2013-04-03 20:32:30.3800000 +00:00 | 50.90.211.35 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Wale - Bag of Money (feat. Rick Ross, Meek Mill &amp; T-Pain) | BAG OF MONEY |
| 22278057077 | 2013-07-31 07:05:06.1100000 +00:00 | 142.197.120.175 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | eminem feat lil wayne - no love.mp3 | NO LOVE |
| 22272962182 | 2013-03-28 01:22:46.6600000 +00:00 | 50.88.182.131 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Adele - Rolling In The Deep - Single - 2010 (MP3) | ROLLING IN THE DEEP |
| 22272887760 | 2013-03-26 10:04:01.5000000 +00:00 | 174.134.127.182 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West ft. Big Sean, Pusha T 2 Chainz - Mercy .2012.{Mobicareg}.{HKRG}.mp3 | MERCY |
| 22278057220 | 2013-08-01 05:18:13.3000000 +00:00 | 174.134.113.96 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | ellie goulding - lights(2)(2).mp3 | LIGHTS |
| 22272962287 | 2013-03-28 18:56:00.0500000 +00:00 | 75.112.160.205 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Brad Paisley- This Is Country Music- [2011]-Mp3ViLLe | THIS IS COUNTRY MUSIC |
| 22278057102 | 2013-07-31 15:15:23.5600000 +00:00 | 71.46.117.98 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Carly Rae Jepsen - Call Me Maybe | CALL ME MAYBE |
| 22275168820 | 2013-05-23 11:45:00.5500000 +00:00 | 142.197.147.90 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | good_music_(2_chainz,_big_sean,_kanye_west,_pusha_t)_-_mercy_[cdq_-_dirty](2).mp3 | MERCY |
| 22277581693 | 2013-07-20 23:01:32.5000000 +00:00 | 142.197.89.38 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | [2008] Tha Carter III - Lil Wayne - 183mb @ 320kbs [only1joe] | THA CARTER III |
| 22271862881 | 2013-03-03 03:45:06.2000000 +00:00 | 174.134.188.217 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | ellie goulding - lights (itunes bonus track).mp3 | LIGHTS |
| 22274841185 | 2013-05-15 13:29:50.2000000 +00:00 | 50.89.49.15 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | phillip phillips - home.mp3 | HOME |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22278057189 | 2013-08-01 01:50:30.8200000 +00:00 | 50.89.140.125 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | back to december' 'taylor swift.mp3 | BACK TO DECEMBER |
| 22278057152 | 2013-07-31 22:12:10.7600000 +00:00 | 97.71.45.154 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | kelly clarkson - dark side.mp3 | DARK SIDE |
| 22278056955 | 2013-07-30 18:22:27.0800000 +00:00 | 50.88.234.43 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Nicki Minaj - Beez In The Trap {2 Chainz} {2012-Single} | BEEZ IN THE TRAP |
| 22274485338 | 2013-05-06 23:05:45.7300000 +00:00 | 75.112.161.130 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 11-nicki_minaj-pound_the_alarm.mp3 | POUND THE ALARM |
| 22274841167 | 2013-05-15 07:56:48.5900000 +00:00 | 142.197.147.90 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | j cole ft missy elliott - nobody's perfect im1.mp3 | NOBODY'S PERFECT |
| 22276181444 | 2013-06-17 15:11:20.8200000 +00:00 | 71.45.100.202 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Wyclef Jean ft. Akon, Lil&amp;#39; Wayne &amp; Niia - Sweetest Girl (Dollar Bill).mp3 | SWEETEST GIRL |
| 22275024045 | 2013-05-20 23:53:34.0200000 +00:00 | 174.134.140.40 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Usher - Looking 4 Myself (Deluxe Version) (2012) 320KB TBS | CLIMAX |
| 22272962205 | 2013-03-28 04:50:15.3300000 +00:00 | 75.114.183.231 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 16-kenny chesney - come over(6).mp3 | COME OVER |
| 22272397364 | 2013-03-15 06:51:42.5100000 +00:00 | 174.134.115.244 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Carrie Underwood - Blown Away | BLOWN AWAY |
| 22274841190 | 2013-05-15 16:22:44.8200000 +00:00 | 50.89.180.183 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Jason Mraz - I Wont Give Up 2012 | I WON'T GIVE UP |
| 22272962255 | 2013-03-28 14:27:46.9200000 +00:00 | 142.197.103.14 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Future - Pluto [2012] CR | MAGIC |
| 22278057081 | 2013-07-31 07:52:27.3800000 +00:00 | 50.88.150.42 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | will i am ft nicki minaj - check it out im115.mp3 | CHECK IT OUT |
| 22278101148 | 2013-08-02 00:35:02.8300000 +00:00 | 50.88.66.3 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Pink - Stupid Girls.mp3 | STUPID GIRLS |
| 22274841173 | 2013-05-15 08:34:08.2500000 +00:00 | 174.134.236.78 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | David Guetta - One Love (Special Edition) [2009] | ONE LOVE |
| 22273039016 | 2013-03-30 15:47:34.7100000 +00:00 | 71.45.59.76 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Maroon 5 - One More Night.mp3 | ONE MORE NIGHT |
| 22274841174 | 2013-05-15 09:40:06.5400000 +00:00 | 50.89.8.178 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Chris Brown - F.A.M.E Deluxe [2011-MP3-Cov][Bubanee] | F.A.M.E. |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22276181432 | 2013-06-17 09:02:20.6200000 +00:00 | 50.89.244.14 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Drake - Take Care (Deluxe Version) [Official Album][CD-Rip] | TAKE CARE |
| 22271862884 | 2013-03-03 04:02:08.5800000 +00:00 | 97.71.45.81 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Cee Lo Green - The Lady Killer (Deluxe) -2010- [SW] | THE LADY KILLER |
| 22278101129 | 2013-08-01 20:40:30.0500000 +00:00 | 50.90.253.137 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | lil wayne feat eminem - drop the world-mixfiend.mp3 | DROP THE WORLD |
| 22278184220 | 2013-08-04 10:36:07.7100000 +00:00 | 174.134.188.60 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West ft. Big Sean, Pusha T 2 Chainz  - Mercy.2012.{Mobicareg}.{HKRG}.mp3 | MERCY |
| 22278057175 | 2013-08-01 00:18:20.3000000 +00:00 | 142.197.158.205 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 11 - lil wayne - knockout (feat nicki minaj)-rgf.mp3 | KNOCKOUT |
| 22275537429 | 2013-06-01 21:38:42.4400000 +00:00 | 71.45.16.151 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | miguel - adorn im1.mp3 | ADORN |
| 22278057088 | 2013-07-31 13:10:25.7400000 +00:00 | 50.90.203.155 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 Chainz - No Lie (Feat.Drake) (2012-Single) | NO LIE |
| 22278233947 | 2013-08-05 17:40:46.3400000 +00:00 | 97.71.21.40 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Jason Mraz - I Won't Give Up.mp3 | I WON'T GIVE UP |
| 22272783263 | 2013-03-24 18:09:19.1500000 +00:00 | 97.71.21.69 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Somebody I Used To Know (Radio Edit) [feat. Kimbra] - Single | SOMEBODY THAT I USED TO KNOW |
| 22274841179 | 2013-05-15 11:36:27.3500000 +00:00 | 71.45.75.81 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Justin Bieber - As Long As You Love Me (Feat. Big Sean) [Single] [2012]- Sebastian[Ub3r] | AS LONG AS YOU LOVE ME |
| 22274841171 | 2013-05-15 08:14:24.2900000 +00:00 | 142.197.238.39 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Rihanna - Where Have You Been.mp3 | WHERE HAVE YOU BEEN |
| 22276981722 | 2013-07-07 20:49:00.0300000 +00:00 | 71.46.115.190 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Weird Al Yankovic | ANOTHER ONE RIDES THE BUS |
| 22278057073 | 2013-07-31 11:31:16.8700000 +00:00 | 142.197.176.95 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | wyclef_jean_ft_akon_lil_wayne_nia-sweetest_girl.mp3 | SWEETEST GIRL |
| 22274841187 | 2013-05-15 14:14:25.7800000 +00:00 | 50.88.182.232 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Eminem- I'm Not Afraid.mp3 | NOT AFRAID |
| 22274841166 | 2013-05-15 07:50:13.8500000 +00:00 | 142.197.150.134 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Ace.Hood-Blood.Sweat.And.Tears-(Deluxe.Edition)-2011-[NoFS] | BLOOD, SWEAT AND TEARS |
| 22275246591 | 2013-05-26 06:18:24.3400000 +00:00 | 142.197.128.163 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Rick Ross - Bag Of Money (Dirty) Ft. Wale, Meek Mill &amp; T-Pain - by NoXoN.mp3 | BAG OF MONEY |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22274803695 | 2013-05-14 03:24:07.4800000 +00:00 | 50.88.53.183 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West feat. Rihanna - All Of The Lights.mp3 | ALL OF THE LIGHTS |
| 22278057130 | 2013-07-31 19:12:23.7000000 +00:00 | 50.88.234.43 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Nicki Minaj - Beez In The Trap {2 Chainz} {2012-Single} | BEEZ IN THE TRAP |
| 22271656995 | 2013-02-27 00:32:30.6800000 +00:00 | 142.196.227.14 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Drake Take Care (Deluxe Version) | TAKE CARE |
| 22278184275 | 2013-08-04 23:10:09.7000000 +00:00 | 142.197.26.138 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | ed sheeran - the a team(2).mp3 | THE A TEAM |
| 22275715005 | 2013-06-05 17:05:39.4500000 +00:00 | 50.88.175.221 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Suicide Silence -2011- The Black Crown | WITNESS THE ADDICTION |
| 22272486580 | 2013-03-18 02:01:20.2100000 +00:00 | 75.114.202.88 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Beyonce - I Am...Sasha Fierce (Deluxe Edition) - (2008) | I AM... SASHA FIERCE |
| 22276327978 | 2013-06-20 00:56:42.9600000 +00:00 | 71.45.45.20 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | adele - chasing pavements.mp3 | CHASING PAVEMENTS |
| 22278057092 | 2013-07-31 14:09:33.3500000 +00:00 | 142.196.170.57 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Mumford and Sons  Sigh No More-2009 | SIGH NO MORE |
| 22273244770 | 2013-04-03 20:28:02.4600000 +00:00 | 50.90.161.15 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Wiz Khalifa - O.N.I.F.C. (Deluxe Edition) [ChattChitto RG] | WORK HARD, PLAY HARD |
| 22275537425 | 2013-06-01 20:27:39.3200000 +00:00 | 97.69.163.114 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Somebody I Used To Know (Radio Edit) [feat. Kimbra] - Single | SOMEBODY THAT I USED TO KNOW |
| 22273318920 | 2013-04-07 20:34:55.0800000 +00:00 | 174.134.158.2 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Amy Winehouse - Back To Black [Deluxe] [2006 - MP3 - 320 kbps] [vigoni] | BACK TO BLACK |
| 22278184154 | 2013-08-03 21:28:21.2600000 +00:00 | 50.89.30.152 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Lana Del Rey ++ Born To Die (Special Edition) 2012 | BORN TO DIE |
| 22274485099 | 2013-05-05 14:39:04.3300000 +00:00 | 174.134.117.184 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | pitbull ft ne-yo, afrojack &amp; nayer - give me everything (tonight) im1.mp3 | GIVE ME EVERYTHING |
| 22272052591 | 2013-03-06 00:40:29.3800000 +00:00 | 97.71.20.132 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Nelly - Just A Dream.mp3 | JUST A DREAM |
| 22274841172 | 2013-05-15 08:28:33.3200000 +00:00 | 174.134.127.184 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West - My Beautiful Dark Twisted Fantasy (Explicit) [Bubanee] | MY BEAUTIFUL DARK TWISTED FANTASY |
| 22278184151 | 2013-08-03 20:23:46.1600000 +00:00 | 75.114.215.15 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Rihanna - Talk That Talk (Deluxe) (Limited Edition CD-Rip + Cov) | TALK THAT TALK |

Exhibit A

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22278101108 | 2013-08-01 09:01:40.2500000 +00:00 | 71.45.152.178 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West ft. Big Sean, Pusha T 2 Chainz - Mercy.2012.{Mobicareg}.{HKRG}.mp3 | MERCY |
| 22278057110 | 2013-07-31 15:59:47.3200000 +00:00 | 97.68.42.18 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | drake feat lil wayne- miss me (dirty) (masterized) (elcorillord com).mp3 | MISS ME |
| 22278184173 | 2013-08-04 01:51:24.9000000 +00:00 | 142.196.33.7 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Matchbox Twenty - She's So Mean {2012-Single}[NL] | SHE'S SO MEAN |
| 22278056938 | 2013-07-30 14:24:39.9700000 +00:00 | 50.89.142.133 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | keith urban - for you.mp3 | FOR YOU |
| 22278184308 | 2013-08-05 04:45:18.1800000 +00:00 | 174.134.79.74 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | zac brown band - the wind.mp3 | THE WIND |
| 22278101114 | 2013-08-01 13:58:53.7600000 +00:00 | 142.196.239.156 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | All That Remains | FOREVER IN YOUR HANDS |
| 22278057109 | 2013-07-31 15:53:21.3900000 +00:00 | 50.88.144.120 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | miguel - adorn (remix).mp3 | ADORN |
| 22278057178 | 2013-08-01 00:51:01.9600000 +00:00 | 174.134.170.84 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | kanye west - mercy ft big sean, pusha t &amp; 2 chainz (explicit).mp3 | MERCY |
| 22278184301 | 2013-08-05 03:39:41.2400000 +00:00 | 142.197.101.151 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Starship - We Built This City [The Very Best Of Starship] (1997) 320vtwin88cube | WE BUILT THIS CITY |
| 22278184303 | 2013-08-05 04:18:03.4500000 +00:00 | 97.71.90.46 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | ssbc | SLAVES TO SUBSTANCE |
| 22274841184 | 2013-05-15 13:11:34.9900000 +00:00 | 142.196.132.188 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | j cole ft missy elliott - nobody's perfect im1(2).mp3 | NOBODY'S PERFECT |
| 22278056958 | 2013-07-30 18:55:32.9300000 +00:00 | 71.45.105.156 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Young Jeezy - The Recession[2008][MP3@320kbps]-antecho | THE RECESSION |
| 22278057157 | 2013-07-31 22:24:45.8600000 +00:00 | 142.197.77.190 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 14-future-turn_on_the_lights.mp3 | TURN ON THE LIGHTS |
| 22278057097 | 2013-07-31 14:34:33.7300000 +00:00 | 50.90.183.155 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | drake &amp; lil wayne- miss me (dirty).mp3 | MISS ME |
| 22272962257 | 2013-03-28 14:33:27.7700000 +00:00 | 174.134.9.21 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Jordin Sparks-Jordin Sparks(Retail) | ONE STEP AT A TIME |
| 22274679727 | 2013-05-12 13:36:27.3000000 +00:00 | 50.90.132.160 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | psychosocial - slipknot.mp3 | PSYCHOSOCIAL |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22274320046 | 2013-05-01 03:03:27.0200000 +00:00 | 174.134.43.142 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Foo Fighters - Wasting Light (2CD Deluxe Edition) 2011 (320 kbps) | BRIDGE BURNING |
| 22276328028 | 2013-06-20 19:10:13.2300000 +00:00 | 142.197.174.21 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Akon ft. Snoop Dogg - I Wanna Love You.MP3 | I WANNA FUCK YOU |
| 22274841181 | 2013-05-15 12:16:20.2900000 +00:00 | 142.197.128.181 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 110-taylor_swift-better_than_revenge.mp3 | BETTER THAN REVENGE |
| 22274679726 | 2013-05-12 13:32:03.2400000 +00:00 | 71.45.81.56 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 14-future-turn_on_the_lights.mp3 | TURN ON THE LIGHTS |
| 22272351528 | 2013-03-14 06:05:52.3800000 +00:00 | 174.84.205.175 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Jay-Z and Kanye West - Watch the Throne (RapGodFathers.info) | GOTTA HAVE IT |
| 22276981651 | 2013-07-07 11:02:28.1800000 +00:00 | 71.45.75.81 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Justin Bieber - As Long As You Love Me (Feat. Big Sean) [Single] [2012]- Sebastian[Ub3r] | AS LONG AS YOU LOVE ME |
| 22276030959 | 2013-06-13 22:19:09.3500000 +00:00 | 50.90.131.168 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Brandi Carlile - The Story | THE STORY |
| 22274841183 | 2013-05-15 13:02:38.5300000 +00:00 | 142.197.117.56 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Rihanna - Where Have You Been (The Calvin Harris Extended Remix) | WHERE HAVE YOU BEEN |
| 22272614864 | 2013-03-20 03:29:39.5300000 +00:00 | 75.114.215.185 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Carrie Underwood - Blown Away.mp3 | BLOWN AWAY |
| 22272962206 | 2013-03-28 05:07:26.8200000 +00:00 | 174.134.163.137 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2pac - tupac - dear mama.mp3 | DEAR MAMA |
| 22276505030 | 2013-06-25 14:33:20.1300000 +00:00 | 50.89.92.145 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Somebody That I Used To Know - Gotye feat. Kimbra.mp3 | SOMEBODY THAT I USED TO KNOW |
| 22274841162 | 2013-05-15 01:00:56.7200000 +00:00 | 50.90.182.160 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Britney Spears - Femme Fatale [Deluxe Edition] 2011 [CDRip] CBR320 vtwin88cube | FEMME FATALE |
| 22274485174 | 2013-05-05 23:47:07.4800000 +00:00 | 50.90.87.151 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Somebody That I Used To Know - Gotye feat. Kimbra.mp3 | SOMEBODY THAT I USED TO KNOW |
| 22275715026 | 2013-06-05 22:25:07.8200000 +00:00 | 142.197.30.192 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Amy Winehouse - 2007 - Back To Black | BACK TO BLACK |
| 22274606315 | 2013-05-09 18:47:29.0000000 +00:00 | 174.134.77.166 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 11 - lil wayne - knockout (feat nicki minaj)-rgf.mp3 | KNOCKOUT |
| 22274803716 | 2013-05-14 08:47:30.7300000 +00:00 | 142.196.87.120 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | akon - right now (na na na) ;@.mp3 | RIGHT NOW (NA NA NA) |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22275073263 | 2013-05-21 17:44:17.9900000 +00:00 | 142.197.216.131 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Papa Roach - Greatest Hits (by R.G. DHT-Music) | FOREVER |
| 22272962163 | 2013-03-27 20:12:16.2300000 +00:00 | 97.71.119.112 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Britney Spears - Hold It Against Me [2011-Single][MJN] | HOLD IT AGAINST ME |
| 22274841182 | 2013-05-15 12:50:02.2200000 +00:00 | 142.197.230.219 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Sean Kingston - Take You There.mp3 | TAKE YOU THERE |
| 22274841161 | 2013-05-15 00:01:56.2600000 +00:00 | 75.114.224.139 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | David Guetta - One Love (Special Edition) [2009] | ONE LOVE |
| 22274841158 | 2013-05-14 21:22:10.6200000 +00:00 | 50.88.57.46 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | nicki_minaj_-_beez_in_the_trap_(feat_2_chainz).mp3 | BEEZ IN THE TRAP |
| 22274841169 | 2013-05-15 08:07:56.2800000 +00:00 | 71.46.112.173 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 chainz ft drake - no lie [umd](2).mp3 | NO LIE |
| 22278057056 | 2013-07-31 08:50:02.6900000 +00:00 | 71.46.104.222 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Mumford and Sons - Babel [Deluxe Edition] 2012 | LOVERS' EYES |
| 22276221850 | 2013-06-18 21:45:36.6800000 +00:00 | 50.90.232.214 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | chris brown - don't wake me up im1.mp3 | DON'T WAKE ME UP |
| 22272478357 | 2013-03-17 10:43:01.1100000 +00:00 | 97.69.202.144 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Maroon 5 - Payphone ft. Wiz Khalifa.mp3 | PAYPHONE |
| 22275073226 | 2013-05-21 08:20:16.8500000 +00:00 | 50.90.74.201 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Chris Brown - Dont Wake Me Up.mp3 | DON'T WAKE ME UP |
| 22276405751 | 2013-06-23 11:37:47.4500000 +00:00 | 50.88.255.252 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 Chainz - No Lie (Feat. Drake) [Single] [2012]-Sebastian[Ub3r].mp3 | NO LIE |
| 22278057031 | 2013-07-31 03:30:50.6200000 +00:00 | 174.134.135.242 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | don omar ft lucenzo - danza kuduro (original &amp; comprada itunes)(www fullcallecom).mp3 | DANZA KUDURO |
| 22274841178 | 2013-05-15 11:11:18.2400000 +00:00 | 174.134.101.39 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Waka_Flocka_Flame_-_No_Hands_(feat._Roscoe_Dash_&amp;_Wale)_-_HotNewHipHop.com.mp3 | NO HANDS |
| 22278057154 | 2013-07-31 22:14:21.4200000 +00:00 | 142.196.225.31 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | lil wayne feat eminem - drop the world-mixfiend(9).mp3 | DROP THE WORLD |
| 22274754110 | 2013-05-13 07:56:25.8700000 +00:00 | 97.71.33.35 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | carrie underwood - some hearts - before he cheats.mp3 | BEFORE HE CHEATS |
| 22274943547 | 2013-05-18 21:01:29.1500000 +00:00 | 50.90.6.200 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Incubus- Make Yourself | DRIVE |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22272706718 | 2013-03-22 02:28:38.7900000 +00:00 | 50.89.212.89 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Timbaland - Shock Value II [2009-MP3-Cov][Bubanee] | SHOCK VALUE |
| 22275982454 | 2013-06-12 11:49:00.7600000 +00:00 | 142.197.158.18 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West - Mercy (feat. Big Sean, Pusha T, 2 Chainz) {2012-Single}[NL] | MERCY |
| 22274841193 | 2013-05-15 16:56:23.5900000 +00:00 | 50.88.113.0 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | carrie underwood - blown away.mp3 | BLOWN AWAY |
| 22278056999 | 2013-07-31 00:27:19.7600000 +00:00 | 142.197.149.248 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | ed sheeran - the team(2).mp3 | THE A TEAM |
| 22272962169 | 2013-03-27 21:43:32.6400000 +00:00 | 174.134.98.190 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kid Cudi - Man on the Moon II - The Legend of Mr. Rager [2010-320kbps-Album][plead_5th] | MAN ON THE MOON, VOL. 2: THE LEGEND OF MR. RAGER |
| 22278057122 | 2013-07-31 18:30:00.4300000 +00:00 | 71.45.19.117 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | tyga ft wale, fabolous, young jeezy, meek mill &amp; t i - rack city (remix)im1.mp3 | RACK CITY |
| 22278101138 | 2013-08-01 23:14:15.9700000 +00:00 | 142.196.25.128 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Attila - Rage (2010) | RAGE |
| 22278057002 | 2013-07-31 01:16:55.6600000 +00:00 | 174.134.122.1 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Drake-Thank.Me.Later-(Retail)-2010-[NoFS] | THANK ME LATER |
| 22275948576 | 2013-06-12 03:57:25.3800000 +00:00 | 97.69.214.68 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Drake - The Motto (feat. Lil Wayne) | THE MOTTO |
| 22274841191 | 2013-05-15 16:39:30.0900000 +00:00 | 50.90.85.107 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Chris Brown - F.A.M.E Deluxe [2011-MP3-Cov][Bubanee] | F.A.M.E. |
| 22276405792 | 2013-06-23 21:55:34.6500000 +00:00 | 142.196.165.188 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Drake - Take Care (Deluxe Edition) (Album) (2011) | TAKE CARE |
| 22275024048 | 2013-05-21 00:54:20.5100000 +00:00 | 174.84.238.42 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | chris brown ft busta rhymes &amp; lil wayne - look at me now im1.mp3 | LOOK AT ME |
| 22272962219 | 2013-03-28 08:18:23.2500000 +00:00 | 50.89.8.168 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | gym class heroes ft ryan tedder - the fighter im1.mp3 | THE FIGHTER |
| 22278184294 | 2013-08-05 02:25:22.9800000 +00:00 | 174.134.104.89 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | nicki_minaj_-_beez_in_the_trap_(feat_2_chainz)(2)(3).mp3 | BEEZ IN THE TRAP |
| 22272962292 | 2013-03-28 17:06:14.9000000 +00:00 | 50.90.152.191 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | (kissed you) goodnight - gloriana.mp3 | (KISSED YOU) GOOD NIGHT |
| 22274841180 | 2013-05-15 12:07:19.9800000 +00:00 | 75.114.181.105 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Usher - Looking 4 Myself (2012) | CLIMAX |

**Exhibit A**

| NoticeID | Date and Time | SourceIPAddress | ComplainantEntity | ComplainantEmail | ComplainantPhone | ContentItemFileName | ContentItemTitle |
|---|---|---|---|---|---|---|---|
| 22276221880 | 2013-06-19 01:36:42.7900000 +00:00 | 50.90.203.155 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | 2 Chainz - No Lie (Feat.Drake) (2012-Single) | NO LIE |
| 22271657007 | 2013-02-27 00:54:24.1500000 +00:00 | 97.71.58.198 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | wiz khalifa - work hard play hard.mp3 | WORK HARD, PLAY HARD |
| 22273039013 | 2013-03-30 15:40:13.9500000 +00:00 | 50.90.40.87 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye West ft. Big Sean, Pusha T 2 Chainz - Mercy .2012.{Mobicareg}.{HKRG}.mp3 | MERCY |
| 22274279071 | 2013-04-30 20:37:54.5700000 +00:00 | 142.196.22.113 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Jason Aldean - Tattoos On This Town.mp3 | TATTOOS ON THIS TOWN |
| 22278101116 | 2013-08-01 14:40:39.1600000 +00:00 | 97.71.92.239 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Bad Meets Evil (Eminem) - Hell The Sequel CDRip 2011 [Bubanee] | HELL: THE SEQUEL |
| 22274569857 | 2013-05-08 06:48:19.2700000 +00:00 | 71.45.142.173 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Keyshia Cole - Just Like You - 14 - Work It Out.mp3 | WORK IT OUT |
| 22278101135 | 2013-08-01 22:26:02.0800000 +00:00 | 142.197.150.88 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | miguel - adorn.mp3 | ADORN |
| 22272962223 | 2013-03-28 08:45:01.3500000 +00:00 | 174.134.152.42 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Somebody That I Used To Know.mp3 | SOMEBODY THAT I USED TO KNOW |
| 22275168822 | 2013-05-23 11:54:41.1800000 +00:00 | 142.196.62.171 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Keane - Somewhere Only We Know - EP | SOMEWHERE ONLY WE KNOW |
| 22273672462 | 2013-04-15 18:06:47.7900000 +00:00 | 50.89.169.227 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Bad Meets Evil (Eminem) - Hell The Sequel CDRip 2011 [Bubanee] | HELL: THE SEQUEL |
| 22272962289 | 2013-03-28 16:36:55.6700000 +00:00 | 97.71.43.12 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Kanye.West-My.Beautiful.Dark.Twisted.Fantasy-(Retail)-2010-[NoFS] | MY BEAUTIFUL DARK TWISTED FANTASY |
| 22278056994 | 2013-07-31 00:10:45.9900000 +00:00 | 72.31.16.29 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | Fun. - Some Nights(2012)(MP3@320Kbps)-TBS | FUN. |
| 22278233974 | 2013-08-06 02:14:06.8600000 +00:00 | 142.196.13.59 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | neon trees - everybody talks(2).mp3 | EVERYBODY TALKS |
| 22278057113 | 2013-07-31 16:26:31.5300000 +00:00 | 142.197.156.103 | Recording Industry Association of America Inc | riaa.antipiracy@dtecnet.com | 1-888-868-2124 | DJ Khaled - Take It to the Head (feat. Chris Brown, Rick Ross, Nicki Minaj &amp; LilWayne) | TAKE IT TO THE HEAD |