# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UMG RECORDINGS, INC., *et al*.,

    Plaintiffs,

    v.

BRIGHT HOUSE NETWORKS, LLC,

    Defendant.

Case No. 8:19-cv-00710-MSS-TGW

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO DENY WAYNE COLEMAN'S DESIGNATION AS A QUALIFIED PERSON <u>UNDER THE PROTECTIVE ORDER</u>**

Plaintiffs submit this Reply, pursuant to the Court's Order (Dkt. 166), to address Bright House Networks' ("BHN") mischaracterizations that (i) a "risk of serious harm" under the Protective Order (Dkt. 58) requires a showing of *competitive* harm, *see* Opp'n 6–7, and (ii) BHN made a proposal that "obviates Plaintiffs' objections" to the retention of Mr. Coleman, *see* Opp'n 11.

## I. Contrary to BHN's Characterization, "Risk of Serious Harm" Under the Protective Order Is Not Limited to Competitive Harm.

BHN does not dispute that a "risk of serious harm" can exist in the event Mr. Coleman is unable to "compartmentalize and selectively suppress [confidential] information" he has learned in previous engagements or will learn in this case. *See* Mot. at 6 (citing cases). Instead, BHN contends that Plaintiffs' Motion fails because the harm at issue would flow from Plaintiffs' information being used by an adverse consultant, auditor, or litigation party, rather than a *competitor*. Opp'n at 6–7. There is no basis for this argument. The Protective Order states that a "risk of harm" includes the risk of "competitive *or* financial injury *or* potential legal liability." Dkt. 58 at 2 (emphasis added). The cases cited by BHN stand for the unsurprising proposition that *one type* of "serious harm" occurs when a competitor gains access to a party's sensitive information. *See* Opp'n at 6–7. But the Protective Order makes clear that this is not the *only type* of serious harm that a party may suffer from unwarranted disclosure. Here, Plaintiffs may suffer financial or legal harm from Mr. Coleman's use of their confidential information in auditing, consulting, or litigation roles adverse to Plaintiffs. *See* Mot. at 4–5. It is irrelevant whether Mr. Coleman works for one of Plaintiffs' competitors.

— 1 —

### II. BHN's Proposal Did Not "Obviate[] Plaintiffs' Objections" to the Retention of Mr. Coleman.

Contrary to BHN's characterization, *see* Opp'n 11, BHN's July 20 proposal to Plaintiffs does not obviate Plaintiffs' concerns. Specifically, BHN proposed to Plaintiffs that (1) Mr. Coleman would "sign an amendment to the Protective Order" agreeing not to recruit potential class members in cases adverse to Plaintiffs, and (2) BHN would allow Plaintiffs to redact identifying information from agreements for artists whom Mr. Coleman is currently representing in audits, to the extent Mr. Coleman has not otherwise been provided copies of the agreements. *See* Opp'n 4; Sahni Decl. Ex. 1 at 3–4.

As to (1), BHN's proposal fails to account for the meaningful risk that Mr. Coleman could use nonpublic information learned in this engagement to solicit clients for his future auditing work (or the opposite—using nonpublic information learned through that work to inform his efforts in this case). As to (2), BHN's proposal to limit Mr. Coleman's access to agreements for his current clients misunderstands the risk identified by Plaintiffs. Mr. Coleman presumably already has access to his own clients' agreements. The problem here is that he will be granted unfettered access to hundreds of *other* artist and publisher agreements—to which he wouldn't otherwise have access—which Mr. Coleman could use to recruit other clients or, in violation of the terms under which he performs audits, to inform arguments that he makes in audits.[1] Plaintiffs repeatedly raised these concerns to BHN, and

---

[1] Far from simply crunching numbers, royalty auditors routinely make claims on behalf of their clients, including based on interpretation and application of contract terms as well as allegations of what is common in the industry. In connection with such audits, artists and composers agree that the audits will be limited to inspection of particular documents that are specifically relevant to transactions upon which the artists and composers are paid and not

responded with a modified version of BHN's proposal, which BHN has refused, and which Plaintiffs ask the Court to order, as set forth below. *See* Sahni Decl. Ex. 1 at 2–3.

## **CONCLUSION**

Plaintiffs request that Mr. Coleman's designation as a Qualified Person under the Protective Order be permitted only subject to ***one*** of the following forms of relief, which Plaintiffs have previously proposed to BHN:

1. Require that Mr. Coleman sign an addendum to the Protective Order specifically agreeing:

    o  Not to use, disclose, or share any nonpublic information learned in this engagement—including but not limited to the terms of artist or publishing agreements, artist contact information, or even potential artist names—with counsel in any other pending or future actions in which he serves as a consultant or expert adverse to any of the Plaintiffs;

    o  Not to use, disclose, or share in this case, including with BHN or their counsel, any nonpublic information learned in the course of his engagement as a consultant in any other pending action adverse to any of the Plaintiffs;

    o  Not to disclose or share in this case, including with BHN or their counsel, any nonpublic information learned in the course of any of his engagements as a royalty auditor adverse to any of the Plaintiffs; and

    o  Not to use, disclose, or share any nonpublic information learned in this engagement—including but not limited to the terms of artist or publishing agreements, digital service provider agreements, or otherwise—in any audits adverse to any of the Plaintiffs, or to identify or solicit clients for future audits.

2. Require that Mr. Coleman be provided Plaintiffs' Highly Confidential artist agreements, publishing or administration agreements, and Digital Service provider agreements only after those documents have been sufficiently redacted and anonymized by Plaintiffs' counsel to prevent disclosure of the identity of the counterparties.

---

inclusive of other artists' or composers' agreements or the label's or publisher's broader blanket agreements with third parties such as Apple or Spotify.

— 4 —

Dated: September 3, 2020

David C. Banker, Esquire
Florida Bar No. 0352977
Bryan D. Hull, Esquire
Florida Bar No. 020969
BUSH ROSS, P.A.
1801 North Highland Avenue
P.O. Box 3913
Tampa, FL 33601-3913
Telephone: (813) 224-9255
dbanker@bushross.com
bhull@bushross.com

Matthew J. Oppenheim (*pro hac vice*)
Scott A. Zebrak (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*/s/ Jonathan M. Sperling*

Jonathan M. Sperling (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin (*pro hac vice*)
Neema T. Sahni (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

*Attorneys for Plaintiffs*

— 5 —

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on September 3, 2020, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered

with CM/ECF.                                             */s/ Jonathan M. Sperling*
                                                        Attorney for Plaintiffs