**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 8:19-cv-00710-MSS-TGW |
| BRIGHT HOUSE NETWORKS, LLC, | |
| Defendant. | |

## PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................2

I. Plaintiffs' Complaint and Bright House's Answer, Affirmative Defenses, and Counterclaims. ....................................................................................2

II. Bright House's Factual Allegations...............................................................4

LEGAL STANDARD ................................................................................................5

ARGUMENT ..............................................................................................................5

I. Bright House's counterclaim for knowing misrepresentation under Section 512(f) of the DMCA should be dismissed with prejudice. ...............................5

    A. Bright House admits that it cannot remove or disable access to infringing material as required under Section 512(f). ...............7

    B. Bright House does not adequately plead the required mental state of "actual knowledge." ...............9

II. Bright House's FDUTPA claim should be dismissed with prejudice. .........................13

    A. The DMCA preempts Bright House's FDUTPA counterclaim. ...............13

    B. Bright House fails to state a FDUTPA claim. ...............15

        i. Bright House fails to satisfy Rule 9(b)'s heightened pleading standard. ...............15

        ii. Bright House fails to allege a deceptive or unfair trade practice in trade or commerce. ...............16

        iii. Bright House fails to allege cognizable harm to itself or consumers caused by allegedly false notices. ...............18

            1. No actual damages. ...............18

            2. No causation. ...............19

III. Amendment would be futile, and dismissal should therefore be with prejudice...........20

# INTRODUCTION

In February 2020, Plaintiffs made the unremarkable decision not to pursue claims on a tiny fraction of more than 7,500 works originally at issue in this mass infringement case. Bright House now asserts, based on rank speculation, that Plaintiffs do not own or control exclusive rights in "at least some of these works," and did not own those rights years ago, but knowingly sent Bright House false infringement notices about them anyway. It further alleges, again based on information and belief, that Plaintiffs did not verify infringements before sending Bright House infringement notices. Relying on this conjecture, Bright House alleges counterclaims under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), for sending knowingly false infringement notices, and under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. (2019) §§ 501.201 et seq. ("FDUTPA"), for deceptive trade practices.

On August 11, 2020, Plaintiffs moved to dismiss Bright House's initial version of these counterclaims with prejudice and explained why an amendment would be futile. ECF No. 156. Bright House responded with amended counterclaims on August 25 but did not—because it cannot—cure the same fatal pleading defects that plagued its initial counterclaims. ECF No. 164. As before, the counterclaims should be dismissed with prejudice.

To state a DMCA § 512(f) claim, Bright House must plead that (1) Plaintiffs sent Bright House infringement notices that they *subjectively knew were false at that time*, and (2) Bright House relied on those notices *in removing or disabling access* to the material alleged to be infringing. But Bright House has failed sufficiently to plead either. *First*, Bright House does not even purport to allege that it removed or disabled access to any allegedly infringing material. That omission is fatal to its claim. In fact, Bright House expressly pleads that it *cannot* remove or block such access. *Second*, Bright House has not plausibly alleged, nor can it, that Plaintiffs *actually knew* that any infringement notices were false when they were sent. Instead, Bright

House speculates, upon information and belief, that Plaintiffs knew, should have known, or "deliberately avoided confirming a high probability" that some unidentified subset of infringement notices was materially false because Plaintiffs allegedly did not own "at least some of these works" or did not verify the infringements.  Not only does Bright House plead the wrong mental state, but Bright House pleads no facts in support of its conclusory allegations that Plaintiffs did not own their works or of Plaintiffs' state of mind.

Bright House's deceptive trade practices counterclaim under FDUTPA also fails for independent reasons.  *First*, the DMCA's comprehensive notice-and-takedown regime preempts state law tort claims based on alleged misrepresentations in takedown notices.  Every court that has addressed this issue agrees.  *Second*, the FDUTPA claim fails on its own terms under Rule 12(b)(6) and Rule 9(b)'s heightened pleading standard for such fraud-based claims.  Far from pleading the requisite who, what, where, when and how of any known misrepresentation, Bright House fails to even identify which Plaintiffs made misrepresentations and which Plaintiffs it is suing on this claim.  More fundamentally, Bright House fails to plead a deceptive trade practice *in the course of trade or commerce*, or any cognizable harm caused by such practice, as those elements are defined by FDUTPA.

As explained more fully below, Bright House's § 512(f) and FDUTPA counterclaims should be dismissed with prejudice.

## BACKGROUND

I.   **Plaintiffs' Complaint and Bright House's Answer, Affirmative Defenses, and Counterclaims.**

Plaintiffs filed their Initial Complaint on March 22, 2019, ECF No. 1, and an Amended Complaint on January 7, 2020, ECF No. 94 ("FAC").  In their FAC, Plaintiffs allege that Bright House is contributorily and vicariously liable for infringement of Plaintiffs' copyrights from

March 24, 2013 through May 17, 2016 (the "Claim Period").  FAC ¶ 5.  Bright House knew its subscribers were uploading and downloading Plaintiffs' copyrighted works without authorization, because Plaintiffs sent over one hundred thousand infringement notices to Bright House, detailing specific instances of specific infringements by specific subscribers.  Yet Bright House did nothing to curb this rampant infringing activity occurring on its network.  *Id*. ¶¶ 2–3, 87–88.  On July 8, 2020, the Court granted Bright House's motion to dismiss Plaintiffs' vicarious liability claim.  Plaintiffs' claim for contributory copyright liability claim remains.

On July 22, 2020, Bright House filed an Answer to Plaintiffs' Complaint, and asserted 13 affirmative defenses and two counterclaims.  ECF No. 151.  One counterclaim sought damages for Plaintiffs' alleged violation of § 512(f) of the DMCA by knowingly sending materially inaccurate infringement notices to Bright House.  *Id.* ¶¶ 124–38.  The other sought relief under FDUTPA for alleged deceptive and unfair trade practices.  *Id.* ¶¶ 139–51.  Bright House also pled, as an affirmative defense, protection from liability under the DMCA's "safe harbor" provision in 17 U.S.C. § 512(a)—which applies to so-called "conduit" service providers, such as internet service providers (as compared to "platform" service providers such as YouTube).  *Id.* at Aff. Def. 13.

On August 11, 2020, Plaintiffs moved to dismiss Bright House's counterclaims with prejudice, explaining that amendment would be futile as several of the pleading defects were incurable.  ECF No. 156.  Specifically, Bright House incurably failed to state a claim under § 512(f) of the DMCA because it conceded that it has not and *cannot* remove or disable access to any allegedly infringing material—a necessary element of that claim.  And Bright House's FDUTPA claim was preempted by the DMCA's comprehensive notice-and-takedown regime. *Id.*  On August 25, 2020, Bright House filed its First Amended Answer, Affirmative Defenses,

and Counterclaims, asserting the same counterclaims, and repeating these same (and other) fatal defects.  ECF No. 164.

## II.        Bright House's Factual Allegations.

For purposes of this motion, Plaintiffs treat Bright House's allegations in support of its Counterclaims as if they were true.  Prior to its acquisition by Charter Communications, Inc. ("Charter") in or around June 2016, Bright House was an internet service provider ("ISP") providing internet service to approximately 2.2 million residential and business subscribers across 41 states.  ECF No. 164, Am. Countercl. ¶¶ 4–5.  Today, Charter continues to serve Bright House's customers under the Spectrum brand, offering high-speed internet service to some 29 million U.S. customers across 41 states.  *Id.* ¶ 5.

Bright House alleges that it does not store its subscribers' content on its servers, cannot control what its customers store on their own or others' computers, and cannot remove third-party material from the internet unless it is stored on Bright House's own servers, which it is not. *Id.* ¶¶ 1, 13.  Bright House also claims that it "had no ability to remove or take down infringing content from its customers' computers."  *Id.* ¶ 14.

Plaintiffs collectively own or control a substantial majority of copyrighted musical compositions and sound recordings in the United States, including many millions of works.  *Id.* ¶¶ 122–23.  The Record Company Plaintiffs, through their trade association, the Recording Industry Association of America ("RIAA"), used a company called MarkMonitor to monitor and detect infringing activity and send copyright infringement notices to Bright House.  *Id.* ¶ 61. During the relevant period, Plaintiffs sent over a hundred thousand notices to Bright House alleging infringement of their copyrighted works.  *Id.* ¶ 88.  Bright House acknowledges that it received Plaintiffs' infringement notices and claims that it incurred costs to process them and engage with its subscribers concerning Plaintiffs' notices.  *Id.* ¶¶ 120, 145, 154.

In March 2019, Plaintiffs sued Bright House for secondary infringement of 7,554[1] sound recordings and musical compositions ("Works in Suit") during the Claim Period.  On February 15, 2020, Plaintiffs amended the lists of Works in Suit, withdrawing 283 of them (3.7% of the original total) from this case.  *Id*. ¶¶ 65–66.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Fellner v. Cameron*, No. 2:10-CV-155-FTM-99, 2012 WL 1648886, at *2 (M.D. Fla. May 10, 2012) (quoting *Iqbal*, 556 U.S. at 678) (quotation marks omitted). Thus, "the court discards allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth . . . .'"  *Id*. (quoting *Iqbal*, 556 U.S. at 679).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint "has not shown . . . that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (quotation marks omitted).

## ARGUMENT

### I.  Bright House's counterclaim for knowing misrepresentation under Section 512(f) of the DMCA should be dismissed with prejudice.

The basic bargain struck between content owners and ISPs, which Congress enacted in the DMCA, was that ISPs would have a "safe harbor" from secondary liability for infringing activities committed by their subscribers over their networks in connection with four types of

---

[1] Bright House incorrectly states in its Counterclaims that Plaintiffs initially sued Bright House for infringement of 11,482 works.  *See* Am. Countercl. ¶ 62.  Plaintiffs' Exhibits A and B to their Original Complaint list 7,554 total works.  *See* ECF 1.

activities (as codified in §§ 512(a)–(d), respectively)—*provided that* the ISPs met certain

conditions.  These included, among other things, that they adopt and reasonably implement, and

inform subscribers of, a policy that provides for termination of repeat infringers (codified in

§ 512(i)).

"Notably present in §§ 512(b)–(d), and notably absent from § 512(a), is the so-called

notice and take-down provision."  *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.,*

*Inc.*, 351 F.3d 1229, 1234 (D.C. Cir. 2003).  Section 512(c)(3) specifies a process for receiving

notices of infringement from rights owners.  *See* 17 U.S.C. § 512(c)(3).  Such notices trigger a

specific obligation by §§ 512(b)–(d) service providers to "remove, or disable access to, the

material that is claimed to be infringing" in order to qualify for the safe harbors under §§ 512(b),

(c) and (d).  *See id.* §§ 512(b)(2)(E), (c)(1)(C) and (d)(3).  Neither the remove-or-disable-access

provision nor the notice-and-takedown processes apply, however, to ISPs claiming safe harbor

**under § 512(a)** (as does Bright House).  *See In re Charter Commc'ns, Inc., Subpoena Enf't*

*Matter*, 393 F.3d 771, 776 (8th Cir. 2005).

Section 512(f), in turn, creates a private remedy against a person or entity who abuses

this notice-and-takedown process by making knowing, material misrepresentations that result in

a specific type of harm.  It provides that:

> Any person who *knowingly materially misrepresents* under this section . . . that
> material or activity is infringing . . . shall be liable for any damages, including costs
> and attorneys' fees, incurred by the alleged infringer . . . as the result of the service
> provider relying upon such misrepresentation *in removing or disabling access* to
> the material or activity claimed to be infringing[.]

17 U.S.C. § 512(f) (emphasis added).  Thus, to state a claim under § 512(f), a party must allege

that (i) the sender of a DMCA notice made a knowing and material misrepresentation of

infringement, and (ii) the party asserting the claim must have relied on that misrepresentation in

actually removing or disabling access to the allegedly infringing material, thereby suffering

harm.  *See Opinion Corp. v. Roca Labs, Inc.*, No. 8:15-CV-811-17AEP, 2016 WL 6824383, at

*3 (M.D. Fla. Nov. 17, 2016) (quoting 17 U.S.C. § 512(f)).  Courts have made clear that the

pleading standard under § 512(f) is "high," in view of "the reality that copyright owners face an

uphill battle to protect their copyrights on the internet."  *Ouellette v. Viacom Int'l, Inc.*, No. CV

10-133-M-DWM-JCL, 2012 WL 1435703, at *3 (D. Mont. Apr. 25, 2012), *aff'd* 671 F. App'x

972 (9th Cir. 2016).

As detailed below, Bright House fails to plead the basic elements of the counterclaim.

Bright House not only concedes that it has *never* removed or disabled access to any infringing

content, but affirmatively alleges that it *cannot* do so.  *See* Am. Countercl. ¶¶ 1, 13–14.  And

Bright House does not and cannot plausibly plead the subjective mental state of "actual

knowledge" that the statute requires.

### A.  Bright House admits that it cannot remove or disable access to infringing material as required under Section 512(f).

Bright House's § 512(f) counterclaim must be dismissed with prejudice because Bright

House does not and cannot allege that it suffered cognizable harm.  The statutory text is

unambiguous: a claim will lie only where a service provider has suffered harm "*in removing or*

*disabling access to the material or activity*."  17 U.S.C. § 512(f) (emphasis added).  Thus, as

courts in this district and elsewhere have held, where the claimant did not remove or disable (*i.e.*,

"takedown") access to the material, its claim necessarily fails.  *See, e.g.*, *Opinion Corp.*, 2016

WL 6824383, at *3 ("Absent some indication that a 'takedown' actually occurred, Plaintiffs fail

to allege the requisite injury under Section 512(f), and thus fail to state a plausible claim under

the DMCA."); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc*., 790 F. Supp. 2d 1024, 1029

(N.D. Cal. 2011) (dismissing § 512(f) claim with prejudice because no takedown occurred);

*Capitol Records, Inc. v. MP3tunes, LLC*, 611 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2009)

(dismissing § 512(f) counterclaim because defendant "suffered no injury because it took no action other than filing an anticipatory lawsuit"); *Arista Records, Inc. v. Mp3Board, Inc.*, No. 00-CV-4660, 2002 WL 1997918, at *14 (S.D.N.Y. Aug. 29, 2002) (explaining notices are only actionable under § 512(f) where plaintiff is damaged by removing or disabling access).

Here, Bright House does not allege that it removed or disabled infringing content. Instead, it alleges only that Bright House "processed" or "investigated" Plaintiffs' notices and "incurred costs," or some non-specific "reputational harm" thereby, and that "[t]he steps Bright House took in response to receiving the inaccurate notices *could result* in the 'removal or blocking' of the noticed material." Am. Countercl. ¶¶ 37, 79, 143–46 (emphasis added). This vague allusion to the theoretical possibility that removal or blocking "could result"—without alleging that Bright House, in fact, ever removed or blocked access to the infringing material that was the subject of any Plaintiff's notice—fails to plead a fundamental element of the claim.

Critically, this is not a drafting oversight that can be cured by repleading—and Bright House did not even attempt to do so in its amended counterclaims. To the contrary, Bright House continues to affirmatively allege that it *cannot* remove or take down infringing content, nor restrict its users' access to it:

> Bright House *did not* store its subscribers' content on its servers. . . .
>
> Bright House *could not* remove third-party material from the Internet unless that material was stored on Bright House's own servers. . . .
>
> Bright House *had no ability* to remove or take down infringing content from its customers' computers. . . .

Am. Countercl. ¶¶ 1, 13–14 (emphasis added). Bright House cannot have it both ways. Indeed, Bright House has pled itself out of court by affirmatively alleging that it lacks the capability to do the very thing that is an essential element of its § 512(f) claim.

In fact, Bright House's § 512(f) claim is fundamentally incompatible with its assertion of a safe harbor defense under § 512(a).  Unlike the other three DMCA safe harbor provisions under §§ 512(b)–(d), § 512(a) applies to service providers that merely act as "conduits" that "*cannot* remove or disable . . . one user's access to infringing material resident on another user's computer."  *In re Charter Commc'ns*, 393 F.3d at 776 (emphasis added) (quotation omitted).  On that basis, Bright House's parent, Charter, has successfully argued that the DMCA's § 512(h) subpoena provision can never apply to a § 512(a) "conduit" provider, because the subpoena provision *only* applies to service providers that can "locate *and remove* the allegedly infringing material."  *Id.* at 777 (emphasis added).[2]  Given that Bright House's parent company successfully argued that other provisions of the DMCA are limited by their plain terms to providers that can remove infringing material, Bright House cannot be heard to complain that § 512(f) is likewise limited by its terms to providers that can remove infringing material.  *See id.; Recording Indus. Ass'n of Am.*, 351 F.3d at 1233–37 (holding notice-and-takedown provisions did not apply to § 512(a) provider).[3]

### B.  Bright House does not adequately plead the required mental state of "actual knowledge."

Bright House fails to plausibly allege that Plaintiffs made a "knowing misrepresentation" in their infringement notices to Bright House.  A claim under § 512(f) is "an expressly limited cause of action" that requires "a demonstration of some actual knowledge of misrepresentation

---

[2] *In re Charter* was a 2005 case in the Eighth Circuit in which RIAA, pursuant to subpoenas issued under § 512(h) of the DMCA, sought the identities of infringing subscribers on Charter's network.  393 F.3d at 776.

[3] To the extent Bright House takes issue with the reach of § 512(a), "it is the province of Congress, not the courts, to decide whether to rewrite the DMCA 'in order to make it fit a new and unforeseen internet architecture' and 'accommodate fully the varied permutations of competing interests that are inevitably implicated by such new technology.'"  *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 777 (8th Cir. 2005) (quoting *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1238 (D.C. Cir. 2003)).

on the part of the copyright owner." *Iroko Partners Ltd. v. Devace Integrated LLC*, No. 1:12-CV-1194, 2014 WL 11716168, at *6 (N.D. Ga. Jan. 6, 2014) (granting summary judgment on § 512(f) counterclaim because counterclaimant "failed to present evidence to show that [plaintiff] made knowing misrepresentations in its takedown notices") (quoting *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004)); *see also Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 6:17-CV-710, 2019 WL 1014245, at *4 (M.D. Fla. Mar. 4, 2019) (same); *Arista Records,* 2002 WL 1997918, at *15 (same).

Bright House attempts to plead "actual knowledge of misrepresentation" by alleging Plaintiffs (i) knew, (ii) should have known, or (iii) "deliberately avoided confirming a high probability" that at least some of their notices were inaccurate.  Am. Countercl. ¶ 133–37.  Each of these allegations fails.

*First*, the objective "should have known" standard does not state a claim because the statute requires subjective knowledge.  *See, e.g.*, *TD Bank, N.A. v. Hill*, No. 12-7188 (RBK/JS), 2015 WL 4523570, at *21 (D.N.J. July 27, 2015) (appropriate inquiry is not "whether a copyright owner *should have known* that it was making a material representation"; rather, § 512(f) applies only "where there is a demonstration of some *actual knowledge* of misrepresentation on the part of the copyright owner") (emphases in original; quotation omitted); *Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005) ("objective reasonableness standard would be inconsistent with Congress's apparent intent [to] . . . protect potential violators from subjectively improper actions by copyright owners."); U.S. Copyright Office, SECTION 512 OF TITLE 17: A REPORT OF THE REGISTER OF COPYRIGHTS at 149–50 (May

2020) (concluding that Congress intended to adopt a subjective knowledge standard under § 512(f)).[4]

Second, as to subjective knowledge, Bright House fails to plead facts sufficient to show that Plaintiffs knew that they did not own works listed in their notices, or that their notices contained false allegations of infringement. Plaintiffs' infringement notices "assert that the information in the notice is accurate" and that they have a "good faith belief that this activity is not authorized by the copyright owner, its agent, or the law." Am. Countercl. ¶ 71. Although Bright House alleges on information and belief that the reason "Plaintiffs dropped at least some of these works" in January 2020 is because they did not own them, id. ¶ 67, that is pure speculation. Copyright plaintiffs often make strategic decisions concerning which claims to pursue in a case and which to withhold. See, e.g., Johnson, 2019 WL 1014245, at *5 (finding that claims based "exclusively on speculation" or regarding "certain inaccuracies" are not sufficient); Ouellette v. Viacom Int'l, Inc., No. 10-CV-133, 2012 WL 850921, at *5 (D. Mont. Mar. 13, 2012) (dismissing § 512(f) claim because "[a]llegations describing conduct that could be merely parallel to, or consistent with, conduct that would otherwise give rise to liability is not sufficient to satisfy the plausibility standard."), report and recommendation adopted, 2012 WL 1435703 (D. Mont. Apr. 25, 2012), aff'd, 671 F. App'x 972 (9th Cir. 2016); Johnson, 2019 WL

---

[4] Some courts have incorrectly applied an objective knowledge standard on § 512(f) claims, based on one California district court case. See Online Policy Grp. v. Diebold, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004) (deciding issue of "first impression" based only on definition of "knowing" in Black's Law Dictionary). Importantly, Diebold was superseded by the Ninth Circuit's Rossi decision two months after it was issued. See Rossi, 391 F.3d at 1004–05 requiring "actual knowledge of misrepresentation"); see also Lenz v. Universal Music Corp., 815 F. 3d 1145, 1153–54 (9th Cir. 2016) (explaining that Rossi held a subjective "good faith belief" standard applies to § 512(f) claims). Cases applying Diebold's "knew or should have known" standard therefore rely on a superseded, incorrect standard. See, e.g., Johnson v. New Destiny Christian Ctr. Church, Inc., No. 6:17-CV-710, 2017 WL 3682357, at *3 (M.D. Fla. Aug. 25, 2017) (citing Diebold).

1014245, at *4 ("[I]t is a complete defense to a claim under § 512(f) that the party issuing a takedown notice had a subjective good faith belief that the use in question was 'not authorized.'") (quotation and citation omitted).

    *Third*, to state a claim based on a "deliberate avoidance" standard, Bright House must allege "two factors: (1) the defendant must *subjectively believe* that there is a *high probability* that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1155 (9th Cir. 2016) (emphasis added) (quotation omitted) (precluding plaintiff from presenting deliberate avoidance theory at trial on § 512(f) claim because "Lenz failed to meet a threshold showing of the first factor").  Bright House offers *no facts* to suggest that Plaintiffs *subjectively believed* there was a *high probability* that they did not own the rights to the very same music they sell in the market every day.  Bright House also pled no facts showing that Plaintiffs subjectively believed in a high probability that the infringements alleged did not actually occur.  *See* Am. Countercl. ¶¶ 74–78, 108; *see also Rossi*, 391 F.3d at 1005 ("A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake.")

    And, critically, even if Plaintiffs *had* omitted certain works from their Amended Complaint due to a loss of rights, as Bright House speculates, or sent a few mistaken notices amongst more than 100,000 others, that still would not support an inference that Plaintiffs knew *at the time* they sent the notices that they were inaccurate—which is what Bright House must, but fails to allege.  *See, e.g.*, *Cabell v. Zimmerman*, No. 09 Civ. 10134, 2010 WL 996007, at *4–5 (S.D.N.Y. Mar. 12, 2010) (dismissing § 512(f) claim where complaint alleged no facts plausibly supporting allegation that defendant acted "with actual knowledge *when he sent the takedown notice*") (emphasis added).

12

## II.     Bright House's FDUTPA claim should be dismissed with prejudice.

Bright House also alleges that sending allegedly inaccurate notices—*i.e.*, the conduct underlying its § 512(f) claim—constitutes a deceptive or unfair trade practice under FDUTPA. This counterclaim is both preempted by the DMCA and fails to state a claim on its own terms.

### A.   The DMCA preempts Bright House's FDUTPA counterclaim.

Bright House's attempt to shoehorn allegedly inaccurate DMCA notices into a state law claim under FDUTPA is preempted by the DMCA and should be dismissed.  A state law claim is preempted when it regulates conduct in a field that Congress intended federal law to occupy exclusively.  *See, e.g.*, *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998).[5]

As numerous courts have held, the DMCA preempts state law claims based on alleged misrepresentations in infringement notices—like Bright House's FDUTPA claim—because Congress intended for federal law to *exclusively* govern the DMCA notice process.  *See, e.g.*, *Quill Ink Books, Ltd. v. Soto*, No. 19-CV-476, Doc. No. 24 (E.D. Va. Am. Order filed Aug. 15, 2019) (tortious interference, defamation, and statutory conspiracy claims preempted because they "are all tied directly to the allegedly fraudulent DMCA takedown notices and [the claimant's] remedies lie in that statutory scheme, not in state law") (attached hereto as Exhibit 1); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. 10-CV-05696, 2011 WL 2690437, at *3–5 (N.D. Cal. July 8, 2011) (holding all state law claims based on false DMCA notices preempted, explaining that "a DMCA Takedown Notification is a creature of a federal statutory regime, and . . . that regime preempts any state law claim based on an allegedly improper DMCA Takedown

---

[5] Plaintiffs do not assert that Bright House's FDUTPA claim is preempted under the express preemption clause in the Copyright Act.  *See* 17 U.S.C. § 301(b)(3).  As an initial matter, the existence of an express preemption clause does not necessarily preclude the presence of implied preemption.  *Irving*, 136 F.3d at 768.  More importantly, however, § 301 preemption—which bars state law claims equivalent to the exclusive rights set forth in § 106 of the Copyright Act (*i.e.*, distribution, reproduction, etc.)—is irrelevant to the § 512 preemption analysis here.

Notification"); *Lenz v. Universal Music Corp.*, No. 07-CV-03783 JF, 2008 WL 962102, at *4

(N.D. Cal. Apr. 8, 2008) (same).

Courts apply field preemption to the DMCA notice regime for several reasons. *First*, the

DMCA (and the comprehensive notice-and-takedown regime set forth therein) is entirely a

creature of federal law, and copyright law has been overwhelmingly controlled by Congress

since the Copyright Act of 1976. As one court explained:

> The DMCA is a complex and comprehensive statutory regime that meticulously
> details the steps that providers must take to avoid liability and that copyright holders
> must take to enforce their rights. . . . Federal law's near-total occupation of the field
> of copyright law further supports an inference that the federal interest in creating
> remedies to ensure compliance with the DMCA "is so dominant that the federal
> system will be assumed to preclude enforcement of state laws on the same subject."

*Stevens v. Vodka & Milk, LLC*, No. 1:17-CV-08603, U.S. Dist. LEXIS 43666, at *6–7 (S.D.N.Y.

Mar. 12, 2018) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

*Second*, the DMCA provides express remedies for false infringement notices, including a

counter-notice system under § 512(g) and a cause of action under § 512(f) that Bright House has

claimed here (albeit insufficiently). *See* 17 U.S.C. §§ 512(f)–(g); *see also Stevens*, U.S. Dist.

LEXIS 43666, at *6–7 ("The pervasive nature of the DMCA, including an express remedy for

the very wrong that counterclaimants here allege, make[s] reasonable the inference that Congress

left no room for the States to supplement the remedies outlined in the DMCA."). Leading

copyright scholar "Professor Nimmer notes specifically that '[g]iven that a special provision of

the Copyright Act itself regulates misrepresentation in such notifications, that provision

constitutes the sole remedy for a customer who objects to its contents and their effects.'" *Lenz*,

2008 WL 962102, at *4 (quoting 1 Nimmer on Copyright 1.01[B][3][a] at 1-77) (dismissing state

law claim as preempted by DMCA).

14

*Third*, some courts have found that state law causes of action stemming from allegedly false infringement notices conflict with and frustrate Congress's objectives in enacting the DMCA and are thus preempted under principles of conflict preemption.  For example, in *Online Policy Group v. Diebold*, the court dismissed the state law tort claim based on an allegedly improper takedown notice, holding that "[i]f adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable difference between state and federal law."  337 F. Supp. 2d at 1205–06.

## B.  Bright House fails to state a FDUTPA claim.

Even if its FDUTPA claim were not preempted, Bright House still fails to allege the necessary elements.  To state a claim under FDUTPA, a claimant "must allege (1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages." *Benjamin v. CitiMortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013).  Bright House's FDUTPA claim should be dismissed because it (1) fails to allege a deceptive or unfair trade practice occurring in the conduct of "trade or commerce," and (2) fails to allege actual damages, or harm to consumers, resulting from Plaintiffs' notice program.

### i.  Bright House fails to satisfy Rule 9(b)'s heightened pleading standard.

FDUTPA claims grounded in fraud must meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b).  *E.g.*, *Sunoptic Techs., LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878, 2009 WL 722320, at *2 (M.D. Fla. Mar. 18, 2009).  Bright House must therefore allege (a) the precise statements or misrepresentations made; (b) the time, place, and person responsible for the statement; (c) the content and manner in which these statements misled the

claimant; and (d) what the accused party gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997).[6]

Bright House's allegations, even as amended, still fail to identify who the counterclaim-defendants are, or which specific person or persons made any supposed misrepresentations. At varying points, Bright House lumps together all 63 Plaintiffs. *E.g.*, Am. Countercl. ¶¶ 69–70, 77–78. In other places, it refers to the undifferentiated conduct of several dozen Record Company Plaintiffs. *E.g.*, *id.* ¶¶ 71, 73–75. Occasionally, the allegations refer to the Music Publisher Plaintiffs. *E.g.*, *id.* ¶¶ 64, 72. Claim Two, which sets forth the elements of the FDUTPA claim, talks primarily of the Record Company Plaintiffs, *see id.* ¶¶ 152–63, but the prayer for relief on the same claim seeks damages from all Plaintiffs. This ambiguous group pleading is inadequate. *See Durham v. Whitney Info. Network, Inc.*, No. 06-CV-00687, 2009 WL 3783375, at *17 (M.D. Fla. Nov. 10, 2009) ("Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

## ii. Bright House fails to allege a deceptive or unfair trade practice in trade or commerce.

More fundamentally, Bright House fails to allege a deceptive or unfair trade practice *in the course of trade or commerce*, as required by FDUTPA. *See Economakis v. Butler & Hosch, P.A.*, No. 2:13-cv-832-FtM-38DNF, 2014 WL 820623, at *3 (M.D. Fla. Mar. 3, 2014) ("There is a 'trade or commerce' component in FDUTPA claims that must also be satisfied."). The

---

[6] Some district courts in this Circuit have applied Rule 8 to FDUTPA claims *not* based on fraud, but Rule 9(b) applies where, as here, the FDUTPA claim sounds in fraud. *See, e.g.*, *Feliciano v. Ginn Real Estate Co.*, No. 5:08-cv-00327-ORL-35-DAB, 2010 WL 11507487, at *2 (M.D. Fla. June 4, 2010) (Scriven, J.).

FDUTPA defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). Courts consistently hold that pursuit of legal remedies falls outside FDUTPA's definition of "trade or commerce." *See, e.g.*, *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1374–77 (S.D. Fla. 2010) (granting summary judgment because "conduct ostensibly occurring during the exercise of a legal remedy—had zero connection whatsoever to any 'trade or commerce'"); *Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007) (dismissing FDUTPA claim involving pre-suit communications to collect debts because pursuit of legal remedies did not fall within FDUTPA's "trade or commerce" requirement), *aff'd* 288 F. App'x 571 (11th Cir. 2008).

  *Economakis v. Butler & Hosch, P.A.*, 2014 WL 820623, is instructive. After the plaintiff defaulted on a mortgage debt, the defendant, a debt collection company, sent the plaintiff a letter seeking a settlement prior to initiating a foreclosure action. 2014 WL 820623, at *1. The plaintiff alleged that the demand letters misrepresented certain amounts due and owed by the plaintiff in violation of FDUTPA. *Id.* The court held that even if the demand letter did contain misrepresentations, the defendant was not engaged in "trade or commerce" by virtue of enforcing its legal rights, and any misrepresentations in the letter did "not arise to the 'advertising, soliciting, providing, offering, or distributing' definition" of "trade or commerce" required to state a claim under FDUTPA. *Id.* at *3. So, too, here. Plaintiffs sent infringement notices to Bright House in pursuit of a legal remedy—*i.e.*, the notice process set forth in the DMCA. Bright House does not allege (nor could it) that Plaintiffs' DMCA notices are "advertising,

soliciting, providing, offering, or distributing . . . any good or service" to Bright House or its subscribers.  *See* Fla. Stat. § 501.203(8).

### iii. Bright House fails to allege cognizable harm to itself or consumers caused by allegedly false notices.

#### 1. No actual damages.

Bright House fails to allege actual damages to itself or any consumers caused by Plaintiffs' notices.  It is well-established that "a plaintiff may recover only actual damages incurred as a consequence of a violation of [FDUTPA]."  *City First Mortg. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quotations omitted).  "[C]ourts have consistently applied a narrow definition of the term" actual damages under FDUTPA, limiting them strictly to: "(1) the value between what was promised and what was delivered; or (2) the total price paid for a valueless good or service."  *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1323 (M.D. Fla. 2016) (holding claim failed for lack of actual damages), *aff'd*, 703 F. App'x 814 (11th Cir. 2017); *see also Muy v. Int'l Bus. Machines Corp.*, No. 4:19-cv-14-MW/CAS, 2019 WL 8161747, at *2 (N.D. Fla. June 5, 2019) (dismissing FDUTPA claim where plaintiff failed to "allege[] that she was financially deprived" by defendants' conduct and thus could not meet the "narrow definition" of actual damages under FDUTPA).  Bright House pleads neither.

Instead, Bright House claims that it incurred some unenumerated costs in operating a preexisting automated system for handling infringement notices and regular customer service operations, and also suffered reputational harm and loss of goodwill with its subscribers.  *See* Am. Countercl. ¶¶ 33, 145–49.  But "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment."  *City First Mortg.*, 988 So. 2d at 86 (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 873 (Fla. 2d DCA 2006)) (quotation marks omitted).  "[H]arm to the goodwill and reputation" are likewise

not cognizable harms under FDUTPA.  *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017) (quotation omitted).

Bright House also fails to allege "facts supporting a plausible inference that any *consumers* have or are likely to have suffered damages."  *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-cv-186, 2018 WL 905752, at *16 (M.D. Fla. Feb. 15, 2018) (emphasis added) (dismissing FDUTPA counterclaim where plaintiff allegedly misled consumers to believe plaintiff was authorized to distribute defendant's products, but defendant failed to allege harm to consumers by purchasing its products from a non-authorized distributor). At most, Bright House alleges that some of its subscribers may have received infringement notices that Bright House forwarded, *see* Am. Countercl. ¶ 37, that "[i]n certain circumstances, the subscribers question the veracity of the notices," *id.* ¶ 120, and that these subscribers had to "review and respond" to the notices.  *Id.* ¶ 121.  But none of these assertions concerns the value of a promised good or the price paid for one, as required.  *HRCC, Ltd.*, 302 F. Supp. 3d at 1323.

Moreover, to constitute "consumers" for FDUTPA purposes, Bright House's subscribers must have been "engaged in the purchase of goods or services" in connection with the allegedly deceptive practice.  *See Midway Labs USA, LLC v. S. Serv. Trading, S.A.*, No. 19-24857-CIV, 2020 WL 2494608, at *4 (S.D. Fla. May 14, 2020)  (dismissing FDUTPA counterclaim where consumer allegedly harmed was not "engaged in the purchase of [plaintiff's] goods" and played only a "logistical" role in connection with distributing plaintiff's goods to other consumers). Bright House fails to plead here that either it or its subscribers engaged in any purchase of goods or services in connection with receiving Plaintiffs' notices (because they obviously were not).

### 2.  No causation.

A FDUTPA claimant must also allege harm to consumers resulting from the allegedly deceptive trade practice.  *CEMEX Constr.*, 2018 WL 905752, at *15.  Harm that is "overly

removed" from the conduct at issue and that requires "several somewhat vaguely defined links" to understand is insufficient under FDUTPA. *See, e.g.*, *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, No. 16-24431-CIV, 2018 WL 1393790, at *18, *21 (S.D. Fla. Jan. 26, 2018) (holding plaintiff failed to sufficiently plead harm to consumers under FDUTPA when the complaint was "vague as to [the] alleged harm" and required the court "to take several logical steps" to digest).

Bright House's allegations of harm, even as amended, are vague and entirely speculative. The only harm Bright House alleges to its subscribers is through a daisy chain of Plaintiffs sending notices, Bright House sending auto-generated emails to subscribers, subscribers reviewing the notices, and some unidentified "tension" between Bright House and subscribers.

### III.   Amendment would be futile, and dismissal should therefore be with prejudice.

Plaintiffs previously argued that amendment of Bright House's initial counterclaims would be futile, *see* ECF No. 156 at 22–23, and the amended counterclaims prove it.  The same is true again.  "Amendment is futile, and denial of leave to amend is justified, when a proposed amended pleading would not survive a motion to dismiss," as here.  *Robbins v. Robertson*, 782 F. App'x 794, 807 (11th Cir. 2019); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'") (quoting *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985)).

On Bright House's § 512(f) claim, Bright House concedes it cannot remove or disable access to infringing content; that is fatal to the claim.  And Bright House's FDUTPA claim would be preempted regardless of any amendment because it is based on Plaintiffs' DMCA notices.  Likewise, no amendment to the FDUTPA claim could convert Plaintiffs' notices, sent pursuant to a legal remedy, into the "course of trade or commerce," nor could amendment convert the harms pled into "actual damages," as narrowly defined under FDUTPA.  *See infra*.

Dismissal should therefore be with prejudice. *See Townsend v. Dep't of Revenue*, No. 8:16-CV-1-MSS-AEP, 2016 WL 8914544, at *3 (M.D. Fla. Mar. 16, 2016) (Scriven, J.) (dismissing complaint with prejudice where amendment "would be futile because his claims would be barred for the various reasons described above"); *Kaiser v. DePuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1193 (M.D. Fla. 2013) (Scriven, J.) (same).

## **CONCLUSION**

For the reasons above, Bright House's counterclaims should be dismissed with prejudice.

Dated: September 8, 2020

Respectfully submitted,

*/s/  Jeffrey M. Gould*

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Matthew J. Oppenheim
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com

Bryan D. Hull
Florida Bar No. 20969
BUSH ROSS, P.A.
1801 North Highland Avenue
P.O. Box 3913
Tampa, Florida  33601-3913
Telephone: (813) 224-9255
bhull@bushross.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2020, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Jeffrey M. Gould*