**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UMG RECORDINGS, INC., *et al.*,

    Plaintiffs,

v.

BRIGHT HOUSE NETWORKS, LLC,

    Defendant.

**Case No. 8:19-cv-710-MSS-TGW**

**PLAINTIFFS' PARTIAL OBJECTION TO MAGISTRATE**
**JUDGE WILSON'S OCTOBER 9, 2020 DISCOVERY ORDER (ECF NO. 210)**

**INTRODUCTION**

Plaintiffs object to the portion of Magistrate Judge Wilson's October 9, 2020 Order compelling Plaintiffs to respond to an interrogatory from Defendant Bright House Networks ("BHN") that seeks information solely for a purpose that the Eleventh Circuit has expressly held is legally irrelevant.

In this lawsuit, Plaintiffs seek to hold BHN secondarily liable for infringement of over 4,500 of Plaintiffs' copyrighted sound recordings. BHN contends that for every sound recording initially released as part of an album, compilation or collective work, Plaintiffs are limited to a *single* statutory damages award for each such album and cannot recover separate statutory damage awards for infringement of *each* sound recording appearing on that album. Based on that argument—and only that argument—BHN's Interrogatory 13 asks Plaintiffs to identify which sound recordings in suit were "first issued or released together" on an album or compilation. Over Plaintiffs' objection, Magistrate Judge Wilson ordered Plaintiffs to respond to the interrogatory. ECF 210 at ¶ 2(b) (the "Order"); Decl. of Jeffrey M. Gould ("Gould Decl."), Ex. A at 35–48 (Oct. 9, 2020 Hr'g Tr.).[1]

The Order is clearly erroneous and directly contrary to binding Eleventh Circuit precedent, which holds that when an infringed work "has an independent economic value and is, in itself, viable," it is entitled to a separate statutory damage award under 17 U.S.C. § 504(c)(1), regardless of whether the work was also released at some point as part of an album or compilation. *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996). Because the unrebutted evidence before the Court establishes that Plaintiffs (i) release and monetize their sound recordings *individually* even when they are also included on an album, (ii) promote and

---

[1] All Exhibits cited are attachments to the Gould Declaration.

1

market tracks *individually*, and (iii) license their sound recordings at the *individual* track level, the information sought by BHN is irrelevant as a matter of law under *Feltner*. At most, the *only* relevant question under *Feltner* could be whether any recordings in suit have been *exclusively* commercialized as part of an album—not whether they *first* appeared on one, which is a different question altogether and the only question that BHN's interrogatory asks.

Magistrate Judge Wilson also erred as a matter of law in assessing the severe burdens this discovery would impose on Plaintiffs. As Plaintiffs' declarations attest, the requested information will be onerous to adduce and may not be available at all. Rather than weigh those burdens against the evidence's negligible relevance, however, Magistrate Judge Wilson only considered the total dollar amount at issue in this case. This Court previously reversed Judge Wilson in this case for making precisely the same error and should do so again here.

Finally, Magistrate Judge Wilson clearly erred by ignoring the ambiguity of the interrogatory. The interrogatory's reference to a sound recording's date of "first issue or release" is consummately ambiguous given industry practice, which substantially impedes Plaintiffs' ability to answer it even were it legally relevant (which it is not), and even were the burden associated with answering the interrogatory warranted (which it also is not).

For any and all of these reasons, the Order should be reversed.

**BACKGROUND**

On August 17, 2020, BHN filed a motion to compel Plaintiffs to respond to BHN's Interrogatory 13. ECF No. 159 at 5–7. Interrogatory 13 asked the Record Label Plaintiffs to "[i]dentify which sound recordings listed on Exhibit A (including any amendments to same) to

2

Plaintiffs' Complaint were first issued or released together on or as albums or compilations, including for each the name of the corresponding album or compilation." Ex. B at Interrog. 13.

Plaintiffs opposed BHN's motion on the grounds that the information sought is legally irrelevant, that the interrogatory is ambiguous, and that responding to the interrogatory would impose extreme burdens. ECF No. 174 at 4–6. In support of their opposition, Plaintiffs submitted declarations from individuals at each Plaintiff group averring that:

- Plaintiffs release and monetize their sound recordings individually even when they are also included on an album, and promote and market tracks individually as well. This practice has become particularly important within the past decade, given the emergence of digital downloading and streaming technology as the principal method by which fans consume music. Indeed, the overwhelmingly dominant means of exploitation in the modern digital age is on an individual track basis. Another significant source of revenue for the label Plaintiffs is licensing of sound recordings at the individual track level for inclusion in film, TV shows, commercial advertisements and other audiovisual works. Ex. E (Decl. of Alasdair McMullan at ¶¶ 5–8, 16, ECF No. 174-3 ("McMullan Decl.")); Ex D (Decl. of Wade Leak at ¶¶ 5–8, 16, ECF No. 174-2 ("Leak Decl.")); Ex. C (Decl. of Jonathan Glass at ¶¶ 5–8, 16, ECF No. 174-1 ("Glass Decl.")).

- There would be enormous burdens required to respond to the interrogatory. McMullan Decl. ¶¶ 9–17; Leak Decl. ¶¶ 9–17; Glass Decl. ¶¶ 9–17.

- The phrase "first issued or released" is ambiguous because it is undefined and capable of several different meanings within the context of their companies' operations. McMullan Decl. ¶ 10; Leak Decl. ¶ 10; Glass Decl. ¶ 10.

Magistrate Judge Wilson heard argument on BHN's motion on October 9, 2020. Ex. A at 35–48. BHN made clear in its brief and in argument that the requested discovery concerns only "whether [Plaintiffs] just get one award for the album or whether they're allowed to get an award for every song on the album." *Id.* at 37:5–7; ECF 159 at 6–7. At the argument, Magistrate Judge Wilson (i) ignored the governing substantive law without once addressing it; (ii) misapplied the proportionality standard under Rule 26 by focusing only on the total "amount at issue" without any consideration of the probative value of the information sought, and (iii) disregarded

3

Plaintiffs' declarations explaining the interrogatory's ambiguity in the context of the recording industry. Ex. A at 35–48. On October 9, 2020, Magistrate Judge Wilson issued an order granting BHN's motion to compel. ECF No. 210 at ¶ 2(b). On October 13, 2020, the order was served on counsel. Ex. F (ECF service email). Plaintiffs bring this timely objection to reverse the Order on Interrogatory 13. *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to [a magistrate judge's non-dispositive] order within 14 days after being served with a copy.").

## LEGAL STANDARD

A district court must reverse a magistrate judge's non-dispositive order if, as here, the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). An order is "clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definitive and firm conviction that a mistake has been committed." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350–51 (11th Cir. 2005) (citation omitted). A magistrate judge's order "is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Palma v. Fla. Neurological Ctr., LLC*, No. 5:10-CV-117-OC-34TBS, 2011 WL 6153423, at *2 (M.D. Fla. Dec. 12, 2011) (citation omitted).

## ARGUMENT

**I.     The Order contravenes clear Eleventh Circuit precedent that whether an individual sound recording was "first issued" as part of an album is irrelevant to whether that work is entitled to a separate statutory damage award.**

Eleventh Circuit law is clear that, regardless of whether multiple works were at some point released together as part of an album, compilation or collective work, each work is entitled to a separate statutory damage award under § 504(c)(1) of the Copyright Act so long as they can each "live their own copyright life." *Feltner*, 89 F.3d at 769 (quoting First, Second, and D.C. Circuits). "This test focuses on whether each expression has an independent economic value and

4

is, in itself, viable." *Id.*; *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1279–80 (11th Cir. 2015) (endorsing *Feltner*'s "independent economic value test" and applying the "same factors considered in *Feltner*"). "A protected work has standalone value if the evidence shows that work has distinct and discernable value to the copyright holder." *Sullivan v. Flora, Inc.*, 936 F.3d 562, 571 (7th Cir. 2019) (citing *Feltner*).

Thus, under *Feltner*, whether the sound recordings at issue were "first released" on an album is irrelevant to whether they can be the subject of separate statutory damage awards. As the Seventh Circuit observed in adopting *Feltner*'s test, § 504(c)(1) permits recovery of a separate award for a "song which, although released as part of an album, is likewise marketed and available at the individual level." *Sullivan*, 936 F.3d at 572. By any measure, therefore, the *chronological order* in which an individual sound recording may have been released in various formats (*i.e.*, single vs. album) has no bearing on this inquiry under *Feltner*.

The facts of *Feltner* further demonstrate how the information Interrogatory 13 seeks is irrelevant. In *Feltner*, the defendant had broadcast without authorization episodes of the "The A Team" and "Kojak" television series. *Feltner*, 89 F.3d at 770. The Eleventh Circuit held the plaintiff could recover a separate statutory damages award for each episode broadcast, rather than each series. *Id.* In so holding, *Feltner* held that each episode had "independent economic value," including because "each was aired independently from preceding and subsequent episodes." *Id.* at 769. That the series' distributors had on occasion sold the episodes as a block did not alter the conclusion that each episode could "stand alone." *Id.* By contrast, the court in *Yellow Pages* found that individual photos did not stand alone for purposes of statutory damages, because the photos were created "for the sole purpose of being organized into collections based on the subject matter of the photos," their "usefulness and economic value is derived from their

5

collective nature, not their individuality," and there was "overwhelming evidence" that the "photos were almost exclusively distributed [] as collections." 795 F.3d at 1278-79 & n.11.

The widespread availability of popular music for downloading, streaming and licensing *by the track* makes it self-evident that the sound recordings in this case are distinct works with independent economic value. Beyond what is easily observable, the uncontroverted motion record also establishes that (i) each sound recording in suit is a distinct work, registered for copyright protection, (ii) the overwhelmingly dominant means of exploitation in the modern digital age is on an individual track basis, (iii) Plaintiffs release and monetize their sound recordings as standalone works through multiple platforms, including digital service providers such as iTunes or Spotify, and (iv) Plaintiffs license their sound recordings for inclusion in other audiovisual works at the individual track level. McMullan Decl. ¶¶ 5–8, 16; Leak Decl. ¶¶ 5–8, 16; Glass Decl. ¶¶ 5–8, 16.

These facts plainly demonstrate that each individual sound recording "is, in itself, viable," and can and does "live [its] own copyright life." *Feltner*, 89 F.3d at 769. Whether any sound recordings were *initially* released as part of an album, therefore, is irrelevant. *See Sony Music Entm't v. Cox Commc'ns, Inc.*, No. 1:18-CV-950-LO-JFA, 2020 WL 3121306, at *18 (E.D. Va. June 2, 2020) (affirming separate statutory damages awards for each song that was made available individually, even if those songs were also available for purchase on albums); *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 101 (2d Cir. 2016) (affirming "separate statutory damages awards for songs that the plaintiffs issued as singles, even if those songs were also made available on albums"); *Walt Disney Co. v. Powell*, 897 F.2d 565, 569–70 (D.C. Cir. 1990) (finding works with separate economic value qualify for separate statutory damage awards); *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 984

6

(E.D. Va. 2016) ("Nothing in the Copyright Act bars a plaintiff from recovering a statutory damage award for a sound recording . . . issued as an individual track, simply because that plaintiff, at some point in time, also included that sound recording . . . as part of an album or other compilation."), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018).

At oral argument before Magistrate Judge Wilson, BHN for the first time cited the district court decision in *Lideres Entertainment Group, Inc. v. Valdovinos*, No. 03-21044-CIV, 2005 WL 8157690 (S.D. Fla. Sept. 2, 2005), to dispute the holding of *Feltner*. But BHN's reliance is misplaced because *Lideres* fundamentally misreads *Feltner*. As multiple courts have stated in following *Feltner*, *Feltner* held that separate works are eligible for separate statutory damages awards under § 504(c)(1) when, as there, they have independent economic value. *Feltner*, 89 F.3d at 770–71; *Fractional Villas, Inc. v. Sotolongo*, No. 10-21474-CIV, 2010 WL 11553399, at *2 (S.D. Fla. Dec. 6, 2010) (quoting *Feltner* and applying *Feltner* standard); *Greenberg v. Nat'l Geographic Soc'y*, No. 97-3924-CIV, 2003 WL 25841579, at *5 (S.D. Fla. Feb. 18, 2003) (citing *Feltner*'s "independent economic value" holding). Citing a section of the *Feltner* opinion on an unrelated issue, *Lideres* wrongly interpreted *Feltner* as not having reached the merits of this issue, and therefore erroneously dismissed *Feltner* as non-binding. *Lideres*, 2005 WL 8157690, at *4. Contra *Lideres*, however, the Eleventh Circuit has more recently reaffirmed *Feltner*'s "independent economic value" test in 2015. *See Yellow Pages Photos*, 795 F.3d at 1279–80 (endorsing *Feltner*'s "independent economic value test" and applying the "same factors considered in *Feltner*"). Because *Lideres* failed to apply *Feltner*'s "independent economic

7

value" test, 2005 WL 8157690, at *3–4, it must be disregarded. *Lideres* is also not binding authority on this Court.[2]

In any event, to the extent the *initial* format of a release (*i.e.*, single vs. album) has any relevance under *Feltner*, it could only be for works that have ***never*** been commercialized individually. While Plaintiffs disagree that would demonstrate such works lack independent economic value, to the extent the Court is inclined to permit any discovery on this issue (and it should not), a revised order requiring Plaintiffs to identify any sound recordings in suit that have been commercialized *exclusively* as part of an album or compilation would at least account for the Eleventh Circuit's binding *Feltner* decision (as well as the additional errors discussed below).

## II. The Order flouts proportionality by failing to account for the burden the interrogatory would impose against its minimal relevance.

Answering Interrogatory 13 will impose significant burdens on Plaintiffs to collect evidence of negligible (if any) relevance and is therefore disproportionate to the needs of the case under Fed. R. Civ. P. 26(b)(1). When Magistrate Judge Wilson found that "the extent of the amount of work required is going to have to be done, because it's proportionate ***to the amount at issue***," Ex. A at 48:11–13 (emphasis added), he failed to weigh the burden against its potential legal relevance. That was clear error, and his Order should therefore be reversed. The Court has previously reversed Magistrate Judge Wilson on ***precisely*** this same ground in this case, explaining that balancing the burden against the total amount in controversy "is not the standard

---

[2] BHN's brief before the Magistrate Judge cited a Copyright Office circular. ECF No. 159 at 6 n.7 (citing U.S. Copyright Office, Circular 34 at 3). This reliance is also misplaced. Circular 34 does not take a position on the issue *Feltner* addressed; it only concludes (unremarkably) that "when you register a number of individual works as part of a collective work, you ***may*** be entitled to seek one award of statutory damages for the collective work as a whole rather than a separate award for each individual work." U.S. Copyright Office, Circular 34 at 3 (emphasis added). Nor would this Circular trump *Feltner*'s binding precedent, in any event.

or dispositive question when considering the relative balance of reasonableness against the question of undue burden." ECF No. 134 at 2. Rather, the burden must be "weighed against the likely benefit *of the proposed discovery*." *Id.* (emphasis added).

As set forth in the attached declarations, even attempting to collect the requested information would be extremely burdensome overall and, in some cases, likely impossible. McMullan Decl. ¶¶ 9–17; Leak Decl. ¶¶ 9–17; Glass Decl. ¶¶ 9–17. Plaintiffs have no central database they can systematically query to "compile" the requested data. Answering the interrogatory will require a manual search for each of the 4,582 recordings across multiple databases, physical files, and multiple record label divisions at each of the Plaintiff companies. Among other challenges, the works in suit encompass dozens of so-called "legacy artist" recordings, going back as far as the 1970s, for which Plaintiffs often do not have easily accessible records (or even any records) to look up the requested information. In addition, Plaintiffs acquired ownership rights to many works (for example, through a catalogue acquisition or merger) ***after*** they were initially released by a third party, in which case Plaintiffs typically will have limited, if any, information about the initial release. Plaintiffs estimate it would take several months to attempt to answer the interrogatory as written, with little certainty or comprehensiveness. McMullan Decl. ¶ 17; Leak Decl. ¶ 17; Glass Decl. ¶ 17.[3]

The minimal relevance of the information sought cannot justify this grossly disproportionate burden. As discussed above, under *Feltner*, whether a work was first issued as an album is not relevant under Eleventh Circuit precedent. But even if it were, that relevance

---

[3] BHN argued that the discovery is appropriate and not unduly burdensome because the Special Master in the related *Warner v. Charter* litigation compelled it. But the Special Master in *Charter* merely stated that Plaintiffs had not described in detail the burden of ascertaining the necessary information. Here, by contrast, Plaintiffs have submitted detailed burden declarations.

9

would be slight at best in light of the evidence that Plaintiffs monetize the sound recordings at issue as standalone works.  BHN argues the burden is reduced because similar plaintiffs in the *Charter* case are providing similar information there.  This ignores that *Feltner* renders the information sought irrelevant in this Circuit, and thus the burden is still grossly disproportionate.  It also ignores that there are hundreds of sound recordings in this case that are not in the *Charter* case, so the requested discovery would still impose a significant additional burden.

Magistrate Judge Wilson erred by failing to take this lack of relevance into account and relying only on his finding that the burdens were "proportionate to the amount at issue."  Ex. A at 48:12–13.  As this Court explained in previously reversing Magistrate Judge Wilson on precisely this same ground, Rule 26 requires considering not just the amount at issue but also that the "burden and expense [be] weighed *against the likely benefit of the proposed discovery*.  In this regard, the comments to the rule make clear that '[i]t also is important to repeat the caution that the monetary stakes are only one factor, to be balanced against other factors.'"  ECF 134 at 2. (quoting Fed. R. Civ. P. 26 advisory committee's note) (emphasis added).  Under a proper application of this standard, the minimal benefit (*i.e.*, none) of determining whether a sound recording was first issued as part of an album cannot outweigh the enormous burden involved in collecting and producing that information.

**III.   The Order ignores that, in the context of the recording industry, "first issued or released" is capable of many different meanings.**

Finally, the Order should be reversed because Interrogatory 13 is ambiguous and thus not susceptible to a clear answer.  It asks Plaintiffs to identify which sound recordings in suit were "first issued or released together" on an album or compilation.  But in the context of the recording industry, "first issued or released" is capable of many different meanings.  For

example, it could mean first release for radio promotional airplay purposes, first commercially distributed to the public, first licensed for use in television or movies, or something else. McMullan Decl. ¶ 10; Leak Decl. ¶ 10; Glass Decl. ¶ 10.  For a particular recording, any one of these could be the "first release."  Nor are the data reflecting the dates of these different types of releases likely to all be stored in the same place (or at all)—data showing the date of a release for radio promotional airplay, if it exists, is unlikely to be stored in the same place as data showing the date of first commercial availability to the public.  McMullan Decl. ¶ 12; Leak Decl. ¶ 12; Glass Decl. ¶ 12.  This fundamental ambiguity means that responding to the interrogatory would require Plaintiffs to collect, for each sound recording, the dates for every plausible type of release, so that an analysis could determine which release was first and whether that first release was as part of an album or compilation.

When alerted to this deep ambiguity within the recording industry context, Magistrate Judge Wilson instructed Plaintiffs to "[g]ive it to some lawyer in your firm who doesn't know anything and let him or her read it and then answer it, because it's clear on its face . . . ."  Ex. A at 47:23–25.  Magistrate Judge Wilson's conclusion that the interrogatory is clear only to someone with no knowledge of the relevant factual context in which the interrogatory must be answered reveals the fundamental error in his decision.

## CONCLUSION

For the reasons discussed above, the Court should reverse the Order based on its numerous clear errors.  If the Court compels a response to Interrogatory 13 notwithstanding those errors (and it should not), it should narrow the overbroad Order to only require Plaintiffs to identify any sound recordings in suit that have been commercialized *exclusively* as part of an album or compilation, including the name of the corresponding album or compilation.

11

Dated: October 27, 2020

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Mitchell A. Kamin
Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Respectfully submitted,

*/s/ Jeffrey M. Gould*
Matthew J. Oppenheim
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com

Bryan D. Hull
Florida Bar No. 20969
BUSH ROSS, P.A.
1801 North Highland Avenue
P.O. Box 3913
Tampa, Florida 33601-3913
Telephone: (813) 224-9255
bhull@bushross.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2020, I caused the foregoing document and all accompanying materials to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

Dated: October 27, 2020                        /s/ *Jeffrey M. Gould*