**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs and Counter-Defendants, <br><br> v. <br><br> BRIGHT HOUSE NETWORKS, LLC, <br><br> Defendant and Counter-Plaintiff. | Case No. 8:19-cv-710-MSS-TGW |

**DEFENDANT BRIGHT HOUSE NETWORKS, LLC'S RESPONSE TO PLAINTIFFS' PARTIAL OBJECTION TO THE MAGISTRATE JUDGE'S OCTOBER 9, 2020 DISCOVERY ORDER**

In their Partial Objection, Dkt. 216 ("Obj."), to the Magistrate Judge's October 9, 2020 Discovery Order (Dkt. 210) Plaintiffs ask the Court to reverse the portion of the Order compelling Plaintiffs to respond to Bright House Networks, LLC's ("Bright House") Interrogatory 13 by identifying which of Plaintiffs' works-in-suit were first issued or released together as albums or compilations. In doing so, Plaintiffs argue that the requested information is not relevant and would be unduly burdensome to produce, and that the interrogatory is irredeemably vague and ambiguous. As the Magistrate Judge correctly determined, Plaintiffs' arguments are without merit.

***First***, it is beyond dispute that this interrogatory seeks relevant information. The Copyright Act provides that "all the parts of a compilation or derivative work constitute one work" for the purpose of calculating statutory damages. 17 U.S.C. § 504(c)(1). Thus, the requested information is directly relevant to the legal and factual question of which of the over 7,000 works-in-suit may be entitled to separate statutory damages awards under the Copyright

1

Act—a determination that will have a significant impact on the amount of damages Plaintiffs may seek in this case.

As Plaintiffs acknowledge, under Eleventh Circuit law, answering this question will in part require factual analysis of whether the works-in-suit "can live their own copyright life" and are independently "viable." *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996) (internal marks and citation omitted). Plaintiffs argue that because they have monetized many of their sound recordings through platforms such as iTunes or Spotify, these recordings are independently "viable" under *Feltner* and thus, as a matter of law, Plaintiffs are entitled to separate awards for each work, regardless of whether the recordings were initially released as a compilation. Obj. 6. But the test articulated in *Feltner* involves a mixed question of fact and law uniformly left for summary judgment or after the development of a factual record at trial. The Magistrate Judge correctly declined to rule on the ultimate legal question at this stage and granted Bright House the opportunity to take the discovery needed to test Plaintiffs' assertions.

***Second***, the Magistrate Judge fully considered and rightly rejected Plaintiffs' burden argument. Having made the tactical decision to seek damages relating to over 7,000 works, Plaintiffs should not be heard to complain about the burden of producing information to substantiate their astronomical damages claims. Moreover, Plaintiffs have already been ordered by the Special Master to respond to a near-identical interrogatory submitted in *Warner Records, Inc., et al. v. Charter Commc'ns, Inc.,* No. 1:19-cv-00874-RBJ-MEH (D. Colo.) ("*Charter*") regarding the majority of the works-in-suit that are at issue here, further reducing their claimed burden. Order at 17-20, *id.*, Dkt. 230 (Aug. 12, 2020). Providing this basic

information about the few hundred non-overlapping works-in-suit specifically at issue in this matter imposes no undue burden on the Plaintiffs.

*Finally*, as Magistrate Judge Wilson noted, "[t]he notion that this is an ambiguous interrogatory is frivolous.  It's clear as it can be." Ex. 1, Oct. 9, 2020 Hr'g Tr., at 47:2-3.

Plaintiffs' Partial Objection should be overruled.

## BACKGROUND

Bright House provided high speed internet service to businesses and individuals prior to merging with Charter Communications, Inc. in May 2016.  Plaintiffs—a collection of the world's largest and most profitable record labels and music publishers—have brought lawsuits across the country against internet service providers premised on the theory that these companies committed contributory copyright infringement when their subscribers allegedly shared Plaintiffs' sound recordings on the internet.[1]  In this suit, Plaintiffs seek over a billion dollars in statutory damages from Bright House for the thousands of works they claim Bright House's subscribers unlawfully shared online.

Given that the Copyright Act provides that "***all the parts*** of a compilation or derivative work constitute ***one work***" for the purpose of calculating statutory damages, *see* 17 U.S.C. § 504(c)(1) (emphasis added), Bright House served the following interrogatory seeking basic information about which of Plaintiffs' sound recordings were first released together on albums or as compilations:

---

[1]  Plaintiffs have separately sued Charter in Colorado on similar claims seeking over a billion dollars, *see Charter*, *supra*, and have sued other internet service providers in several other courts under the same theory, *see, e.g.*, *Sony Music Ent., et al. v. Cox Commc'ns Inc.*, 1:18-cv-00950-LO-JFA (E.D. Va.) ("*Sony*"); *UMG Recordings Inc., et al. v. Grande Commc'ns Networks, LLC, et al.*, No. 1:17-cv-00365-DAE (W.D. Tex.).

> **RLP Interrogatory 13**: Identify which sound recordings listed on Exhibit A (including any amendments to same) to Plaintiffs' Complaint were first issued or released together on or as albums or compilations, including for each the name of the corresponding album or compilation.

Ex. 2, Def.'s 2d Set of Interrogatories (Feb. 13, 2020). Plaintiffs refused to provide this information, and Bright House accordingly filed a motion to compel on August 17, 2020. Dkt. 159.

The Magistrate Judge heard the parties' arguments on October 9, 2020. As to Interrogatory 13, argument centered on the relevance of the information sought and Plaintiffs' alleged burden in responding to the request. *See* Ex. 1, Oct. 9, 2020 Hr'g Tr., at 35:22-48:13. Finding the discovery request appropriate and the imposed burden reasonable and proportionate, the Magistrate Judge granted Bright House's motion to compel and required Plaintiffs to respond to Interrogatory 13 by January 31, 2021, *id.* at 121:9-11, the date that Plaintiffs represented would allow them adequate time to respond, *id.* at 120:11-13. The Magistrate Judge read his oral order into the record at the October 9, 2020 hearing, *id.* at 121:9-11, and issued a written order also dated October 9, 2020, Dkt. 210. Plaintiffs filed their untimely objection eighteen days later, on October 27, 2020.[2] Dkt. 216.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

---

[2] Federal Rule of Civil Procedure 72 requires objections to a magistrate judge's nondispositive pretrial ruling to be filed "within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). Plaintiffs were served with the Magistrate Judge's decision at the hearing on October 9. *See* Fed. R. Civ. P. 72 advisory committee's note to Subdivision (a) ("The rule calls for a written order of the magistrate's disposition to preserve the record and facilitate review. An oral order read into the record by the magistrate will satisfy this requirement.")

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"Magistrate judges are afforded broad discretion in the resolution of nondispositive discovery disputes." *Tracy P. v. Sarasota Cnty.*, 2007 WL 1364381, at *2 (M.D. Fla. May 9, 2007) (overruling objections to magistrate judge's decision on motion to compel discovery). Such decisions may be modified if clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a); *Malibu Media, LLC v. Does*, 923 F. Supp. 2d 1339, 1346 (M.D. Fla. 2013) (finding discovery issues that do not "dispose of a claim or defense of any party" to be nondispositive).

"Clear error is a highly deferential standard of review" and is not met merely because the reviewing court "is convinced it would have decided the case differently." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350-51 (11th Cir. 2005) (citation omitted). Instead, "the reviewing court on the entire evidence [must be] left with the definite and firm conviction that a mistake has been committed." *Id.* at 1350 (citation omitted). A magistrate judge's order "is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Malibu Media*, 923 F. Supp. 2d at 1347 (internal marks and citation omitted).

**ARGUMENT**

**I.     THE MAGISTRATE JUDGE DID NOT CLEARLY ERR OR ACT CONTRARY TO LAW WHEN DETERMINING THAT THE DISCOVERY SOUGHT IS RELEVANT**

The Magistrate Judge did not commit clear error when he determined that Bright House's RLP Interrogatory 13 sought relevant information. To satisfy the broad relevancy

5

standard, an interrogatory need only seek information "that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Dobruck v. Borders*, 2017 WL 417184, at *1 (M.D. Fla. Jan. 31, 2017) (citation omitted) (compelling discovery). The Copyright Act provides that "all the parts of a compilation or derivative work constitute one work" for the purpose of calculating statutory damages. 17 U.S.C. § 504(c)(1). The Eleventh Circuit has explained that, under 17 U.S.C. § 504(c)(1), "separate copyrights are not distinct 'works' unless they can 'live their own copyright life.'" *Feltner*, 89 F.3d at 769 (citation omitted). Important to this inquiry is "whether each expression has an independent economic value and is, in itself, viable." *Id*. As part of this inquiry, the factfinder may consider whether the copyright holder "chose to create, market, deliver, register, and describe" the works as collections or individual works. *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1278 (11th Cir. 2015). The discovery sought by Interrogatory 13 is relevant to this determination.

Whether the works-in-suit were first issued or released together as albums or compilations is relevant (indeed, critical) evidence for determining how Plaintiffs "chose to create, market, deliver … and describe" the works at issue—considerations the Eleventh Circuit has used to determine the appropriate number of statutory damages awards for which a plaintiff is eligible. *Yellow Pages Photos*, 795 F.3d at 1278. Indeed, how Plaintiffs introduced and published these works—whether collectively on an album or independently— is the starting point for understanding whether the works are "distinct" and "live their own copyright life" and will aid in determining what further discovery into this subset of works is warranted. *Feltner*, 89 F.3d at 769 (citation omitted).

Moreover, for works never re-released independently or otherwise commercialized, this is likely both the starting *and* ending point of the analysis.³ As the Special Master found in *Charter*, Plaintiffs' declarations suggest that a subset of the works-in-suit there were *never* released as independent tracks:

> The affidavits submitted in support of Plaintiffs' opposition to Charter's motion to compel leave open the possibility that certain works may not have been distributed individually . . . Given the potential amount of statutory damages per work infringed, limiting the number of works for which damages are available by even a small fraction may have a significant impact on any potential damages. Thus, the difference between "all" and "virtually all" may be of importance.

Ex. 3, Order at 18-19, *Charter*, Dkt. 230 (Aug. 12, 2020) (quoting Plaintiffs' declarations). The declarations attached to Plaintiffs' objection in this case have the same shortcomings. *See* Pls.' Ex. C, Decl. Glass ¶ 6 (stating "virtually all" of claimed copyrighted sound recordings were released as individual tracks); Pls.' Ex. D, Decl. Leak ¶ 6 (same); Pls.' Ex. E, Decl. McMullan ¶ 6 (stating "majority" of claimed copyrighted sound recordings were released as individual tracks).

Plaintiffs now argue that because some of the works originally released as a compilation were also made contemporaneously available as an individual track or later re-released as single downloads, these works are eligible for separate statutory damages awards as a matter of law. Obj. 6. But Plaintiffs' suggestion that this issue can be determined as a

---

³ *See, e.g.*, *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010) ("Here, it is the copyright holders who issued their works as 'compilations'; they chose to issue Albums. In this situation, the plain language of the Copyright Act limits the copyright holders' statutory damage award to one for each Album."). While *Bryant* did not apply the independent economic value test, sound recordings never individually commercialized or released are likely to fail the test, given that they are not "distinct" or otherwise "live their own copyright life." *Feltner*, 89 F.3d at 769 (citation omitted).

matter of law on the current record is incorrect, and only further underscores Bright House's need for this discovery. Indeed, in the Eleventh Circuit, the independent economic value test "does not begin and end with an inquiry into whether a separate unit in a multi-work project could possibly have some independent economic value if sold separately." *Yellow Pages Photos*, 795 F.3d at 1281. To the extent Plaintiffs argue it is "***self-evident*** that the sound recordings in this case are distinct works with independent economic value,"[4] Obj. 6 (emphasis added), they seek a pre-discovery ruling on an issue, which, in this Circuit, has uniformly been left for summary judgment or factual development at trial, *see, e.g.*, *Yellow Pages Photos*, 795 F.3d at 1263 (district court reached its conclusion by considering evidence introduced at trial, including witness testimony); *Feltner*, 89 F.3d at 771 (noting defendant failed to offer evidence at trial on the issue); *Lideres Ent. Grp., Inc. v. Valdovinos*, 2005 WL 8157690, at *5 (S.D. Fla. Sept. 2, 2005) (issue decided on reconsideration of motion for partial summary judgment); *Greenberg v. Nat'l Geographic Soc'y*, 2003 WL 25841579, at *6 (S.D. Fla. Feb. 18, 2003) (issue decided as part of ruling on cross motions for summary judgment); *see also Yellow Pages Photos*, 795 F.3d at 1277 (what constitutes a work for statutory damages purposes is a mixed question of law and fact).

---

[4] Indeed, throughout their Objection, Plaintiffs invite the Court to usurp the factfinder's role and adopt their preferred interpretation of the facts, while simultaneously requesting that the Court deny Bright House any opportunity to test those assertions through discovery. *See, e.g.*, Obj. 6 ("[I]t [is] self-evident that the sound recordings in this case are distinct works with independent economic value."); *id*. at 6 ("These facts plainly demonstrate that each individual sound recording 'is, in itself, viable,' and can and does 'live [its] own copyright life.'" (alteration in original) (citation omitted)); *id*. at 1-2 (arguing "unrebutted evidence before the Court" shows the discovery request to be irrelevant).

Plaintiffs are also incorrect that *Feltner* determines how the Court must decide this issue or that it otherwise precludes discovery into these matters. *See* Obj. 8. ***First***, the argument that a case decided last century regarding syndicated television episodes should foreclose the Court from grappling with the factual intricacies and legal effect of modern-day audio streaming platforms is unpersuasive. A neighboring district court has already held as much, explaining that *Feltner*'s television episodes "are not functionally equivalent to individual songs" due to differences in content and duration. *Lideres*, 2005 WL 8157690, at *4. Application of *Feltner*'s logic to other copyrighted works is not a rote process, and the Eleventh Circuit has explained that *Feltner* "evaluated [the] real world conditions related" to the works-in-suit and does not dictate a particular outcome on other facts. *Yellow Pages Photos*, 795 F.3d at 1279 ("[W]e certainly do not read the *Feltner* decision as foreclosing the application of 17 U.S.C. § 504(c)(1)'s directive that 'all parts of a compilation … constitute one work' for all cases." (alteration in original)); *see also Greenberg*, 2003 WL 25841579, at *5-6 (sixty-four photographs were part of four compilations for the purpose of statutory damages).

***Second***, the fact that some of the works-in-suit were purportedly made available for sale as individual tracks is not itself dispositive. The Eleventh Circuit has already rejected such a narrow interpretation of *Feltner*, explaining that "if the dispositive factor for whether a work has an independent economic value is whether it can conceivably be sold on its own, Congress's express mandate in 17 U.S.C. § 504(c)(1) that 'all parts of a compilation [are to] constitute one work' would be rendered meaningless, as the very definition of collective work in the Copyright Act … presupposes that each individual work in the collection has

9

independent value." *Yellow Pages Photos*, 795 F.3d at 1281 (first alteration in original) (rejecting the argument that photos sold individually were necessarily entitled to separate damages awards).[5]

The inquiry under *Feltner* involves more than just determining whether a work-in-suit was made available for sale as an individual track—instead requiring consideration of the "real world conditions related" to a copyrighted work. *Yellow Pages Photos*, 795 F.3d at 1279 . In *Yellow Pages Photos*, this meant consideration of whether the copyright holder "chose to create, market, deliver, register, and describe" the works as collections or individuals. *Id*. at 1278. The way in which Plaintiffs first chose to publish the works-in-suit is squarely relevant to this inquiry. Plaintiffs cannot show that the Magistrate Judge's relevance determination was clear error, and thus their Objection should be overruled.

## II. THE MAGISTRATE JUDGE PROPERLY CONSIDERED THE BURDEN OF PRODUCING THE DISCOVERY

The Magistrate Judge committed no clear error in weighing the benefit and the burden of the requested discovery. Plaintiffs' suggestion that the Magistrate Judge only considered the amount at issue in this dispute—that Plaintiffs are seeking over a billion dollars in damages—when granting Bright House's motion to compel is without merit. *See* Obj. 10. As a threshold matter, the Magistrate Judge was *required* to consider the amount in controversy as one factor among many, including "the parties' relative access to relevant information, the

---

[5] For the same reason, Plaintiffs' request that the Court "narrow" Interrogatory 13 to include only sound recordings that "have been commercialized *exclusively* as part of an album or compilation" is inadequate. Obj. 11 (emphasis in original). As explained, the independent economic value test "does not begin and end with an inquiry into whether a separate unit in a multi-work project could possibly have some independent economic value if sold separately." *Yellow Pages Photos*, 795 F.3d at 1281.

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Magistrate Judge explicitly considered—and properly rejected—Plaintiffs' burden and proportionality arguments.

The Magistrate Judge examined at length the potential burden to Plaintiffs before compelling them to answer discovery on Interrogatory 13. *See, e.g.*, Ex. 1, Oct. 9, 2020 Hr'g Tr., at 39:21-42:16. In response to Plaintiffs' assertion that responding to the interrogatory was burdensome, the Magistrate Judge posed multiple questions to Plaintiffs' counsel in order to fully understand the extent of their alleged burden. *Id.* at 40:11-13 ("So tell me, there's a problem deciding which sound recordings were first issued as an album? Why is that a problem?"); *id.* at 41:2-3 (similar question); *id.* at 40:20-22 (asking how many sound recordings were implicated). The Magistrate Judge also explained that he had read Plaintiffs' declarations regarding what would be required to produce the information. *Id.* at 46:21-47:1. Finally, this lengthy discussion of burden took place in the context of the discovery's legal benefit—the parties argued exhaustively before the Magistrate Judge regarding the relevance of the information under *Feltner*, *Yellow Pages Photos*, and *Lideres*. *Id*. at 38:1-40:10; *id*. at 42:17-46:5.

The Magistrate Judge also considered the fact that the Plaintiffs had already been ordered to produce this exact information regarding the over 11,000 works at issue in *Charter*, nearly all of which overlap with the works Plaintiffs are asserting in this case. *Id.* at 41:19-42:9. Thus, to respond to Bright House's interrogatory here, Plaintiffs will only be required to compile this information for the few hundred works that do not overlap with those asserted in

11

*Charter*, significantly reducing any potential burden. *Id*. Ultimately, the Magistrate Judge came to the same conclusion as the Special Master in *Charter* and found that the benefit of the proposed discovery outweighed Plaintiffs' burden in responding. Plaintiffs have identified no "clear error" that would warrant disturbing the Magistrate Judge's ruling, and thus their Objection should be overruled.

### III. THE MAGISTRATE JUDGE DID NOT ERR IN FINDING THE INTERROGATORY IS NOT AMBIGUOUS

Plaintiffs' final argument—that the interrogatory is fatally ambiguous—also fails. After describing various hypothetical methods by which sound recordings may be released or subsequently re-released, Plaintiffs argue that it is impossible to understand Bright House's straightforward interrogatory. Obj. 10-11. In doing so, Plaintiffs ignore the plain language of Interrogatory 13, which requests information regarding the "*first*" issue or release. Ex. 2, Def.'s 2d Set of Interrogatories, at No. 13 (emphasis added). It is only Plaintiffs who find the language of the interrogatory to be filled with "deep ambiguity." Obj. 11. As the Magistrate Judge correctly noted, "[t]he notion that this is an ambiguous interrogatory is frivolous. It's clear as it can be." Ex. 1, Oct. 9, 2020 Hr'g Tr., at 47:2-3.

### CONCLUSION

For the reasons stated above, Plaintiffs' Partial Objection to the Magistrate Judge's October 9, 2020 Order should be overruled.

Dated: November 10, 2020

Respectfully submitted,

*/s/ Andrew Schapiro*
Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Email: andrewschapiro@quinnemanuel.com

Charles K. Verhoeven (*pro hac vice*)
David Eiseman (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com

William J. Schifino, Jr.
Florida Bar No. 564338
GUNSTER, YOAKLEY & STEWART, P.A.
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
Tel: (813) 228-9080
Email: bschifino@gunster.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1506
Email: jgolinveaux@winston.com

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
Seth E. Spitzer (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Email: melkin@winston.com
Email: tlane@winston.com
Email: sspitzer@winston.com

Erin R. Ranahan (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1933
Email: eranahan@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-5600
E-mail: mbrody@winston.com

*Counsel for Defendant*
*Bright House Networks, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Response to Plaintiffs' Partial Objection to the Magistrate Judge's October 9, 2020 Discovery Order was served by the Court's CM/ECF system on November 10, 2020.

<div style="text-align: right;">

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro

</div>