## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UMG RECORDINGS, INC.,** *et al.*,

      **Plaintiffs,**

**v.**                                      **Case No: 8:19-cv-710-MSS-TGW**

**BRIGHT HOUSE NETWORKS, LLC,**

      **Defendant.**

---

### ORDER

    **THIS CAUSE** comes before the Court for consideration of Plaintiffs' Motion to Dismiss Defendant's Counterclaims, (Dkt. 171), Defendant's response in opposition thereto, (Dkt. 189), and Plaintiffs' reply, (Dkt. 229); and Defendant's Motion to Modify the Scheduling Order and for Leave to File Second Amended Answer, Affirmative Defenses, and Counterclaims, (Dkt. 165), Plaintiffs' response in opposition thereto, (Dkt. 172), and Defendant's reply. (Dkt. 200) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** the Motion to Dismiss Defendant's Counterclaims and **DENIES** the Motion to Modify the Scheduling Order and for Leave to File Second Amended Answer, Affirmative Defenses, and Counterclaims.

### I.    BACKGROUND

#### A.  Factual Background

    This action arises from copyright infringement allegedly committed by thousands of subscribers to Bright House Networks, LLC, formerly one of the largest internet service providers ("ISPs") in the country. (Dkt. 94 at ¶¶ 1-2) Plaintiffs—a collection of record companies and music publishers that hold copyrights in "some of the world's most famous

and popular music"—seek to hold Bright House liable for refusing to take steps to stop its subscribers from illegally downloading and distributing Plaintiffs' music through BitTorrent and other file-sharing services. (Id. at ¶ 2) Plaintiffs allege that, even after their representatives sent hundreds of thousands of notices to Bright House identifying specific instances of infringement by its subscribers, Bright House declined to terminate or otherwise take meaningful action against the infringing subscribers. (Id. at ¶¶ 2-3) According to Plaintiffs, Bright House's failure to act in the face of this knowledge subjects it to secondary liability for the direct infringement committed by its users. (Id. at ¶ 5)

The Motions now before the Court concern Bright House's counterclaims. Bright House alleges that Plaintiffs, through their trade association, the Recording Industry Association of America ("RIAA"), used a company called MarkMonitor to send Bright House materially false infringement notices. (Dkt. 164 at ¶ 132) The notices claimed to have identified Bright House users engaged in copyright infringement and represented that the sender had "a good faith belief that this activity is not authorized by the copyright owner, its agent, or the law." (Id. at ¶ 71) Bright House alleges that several of these notices contained material misrepresentations, including that (i) the record company "on whose behalf the notice was sent owned or controlled the work," and (ii) "the actions alleged to have been taken by Bright House's subscribers constituted infringement of the [record company's] rights." (Id. at ¶ 73) In fact, according to Bright House, Plaintiffs did not own hundreds of the works for which they sent infringement notices. (Id. at ¶¶ 66-67, 74)

Bright House claims to have discovered the alleged misrepresentations in February 2020, approximately one year after Plaintiffs filed this lawsuit. (Id. at ¶ 89) What prompted the discovery was Plaintiffs' request to file an Amended Complaint removing

283 works from this action. (Id. at ¶¶ 65-66)[1] Bright House alleges, on information and belief, that Plaintiffs dropped at least some of these works because they either do not own them or Bright House subscribers did not infringe them. (Id. at ¶¶ 67-68) Although they ultimately dropped these compositions and recordings, Plaintiffs had previously sent Bright House infringement notices in connection with the challenged works. (Id. at ¶ 71)

To process the infringement notices, Bright House used a system called ECATS— the Enterprise Copyright Automation Tools System. (Id. at ¶ 33) ECATS converted infringement notices that met certain basic requirements into "tickets." (Id. at ¶ 35) Bright House then forwarded the "notices to accused subscribers, reminding them that infringing copyright violates Bright House's Acceptable Use Policy and emphasizing that they should take immediate action to stop the exchange of any infringing material." (Id. at ¶ 37) Significantly, Bright House alleges that it "had no ability to remove or take down infringing content from its customers' computers." (Id. at ¶ 14) Nor could it "restrict, or even detect, the specific content that its customers accessed or shared." (Id.) Bright House further alleges that, as an ISP, it "did not store its subscribers' content on its servers" and "could not control what its customers stored on their own or others' computers." (Id. at ¶¶ 1, 13) Although Bright House pleads that the steps it "took in response to receiving the inaccurate notices *could* result in the 'removal or blocking' of the noticed material," it does not allege that it ever blocked or removed access to any allegedly infringing material. (Id. at ¶ 144 (emphasis added))

---

[1] Plaintiffs initially sued Bright House for infringement of a total of 7,554 works. (Dkt. 1-1; Dkt. 1-2)

### B.  Procedural History

Plaintiffs initiated this action on March 22, 2019, and subsequently filed an Amended Complaint asserting two claims against Bright House: contributory copyright infringement and vicarious copyright infringement. (Dkt. 1; Dkt. 94 at ¶¶ 90-107) Bright House moved to dismiss the vicarious liability claim, and the Court granted that motion on July 8, 2020. (Dkts. 99, 142) Bright House then answered the Amended Complaint and filed counterclaims, which it subsequently amended. (Dkts. 151, 164) The counterclaims assert that Plaintiffs violated the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.*, by sending Bright House knowingly false infringement notices. (Dkt. 164 at ¶¶ 131-63)

On August 25, 2020, the same day it filed its Amended Counterclaims, Bright House sought leave to add two new counterclaim-defendants: the RIAA and MarkMonitor. (Dkt. 165) Bright House was required to seek leave because the deadline for adding new parties had passed on January 6, 2020. (Dkt. 69) Notably, Bright House does not propose to add any new factual allegations to its Amended Counterclaims, nor does it seek to bring additional causes of action. (Dkt. 165-2) Plaintiffs oppose the addition of the RIAA and MarkMonitor, contending that Bright House unreasonably delayed in seeking to add new parties and that the proposed amendments would be futile. (Dkt. 172 at 1)

Plaintiffs separately move to dismiss the Amended Counterclaims. (Dkt. 171) They contend that the Section 512(f) claim fails because (i) Bright House has not alleged that Bright House removed or disabled access to any allegedly infringing content and (ii) there are no plausible allegations that Plaintiffs actually knew any infringement notices were

false when they were sent. (Id. at 1) Plaintiffs seek dismissal of the FDUTPA claim on the grounds that (i) the DMCA pre-empts any state-law tort claims based on false infringement notices, (ii) the allegations underlying the FDUTPA claim fail to comply with Federal Rule of Civil Procedure 9(b), and (iii) Bright House fails to plead a deceptive act in the course of trade or commerce or any cognizable harm caused by such act. (Id. at 2)

## II.  LEGAL STANDARD

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." Geter v. Galardi S. Enters., Inc., 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014). A counter-plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007). Although a counterclaim challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a counter-plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 127 S. Ct. at 1964-65). In evaluating the sufficiency of a counterclaim in light of a motion to dismiss, the well-pleaded facts must be accepted as true and construed in the light most favorable to the counter-plaintiff. Quality Foods, 711 F.2d at 994-95. However, the court should not assume that the counter-plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the counterclaim, there is a dispositive legal issue that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

### III.    DISCUSSION

### A.  The Section 512(f) Counterclaim Is Due to Be Dismissed

Bright House alleges that Plaintiffs violated Section 512(f) of the DMCA by sending knowingly false infringement notices. (Dkt. 164 at ¶¶ 131-50) This counterclaim fails as a matter of law because Bright House does not allege that it removed or disabled access to any allegedly infringing content in response to the notices.

The DMCA created four safe harbors "to protect ISPs from liability for copyright infringement under certain conditions" In re Charter Commc'ns, Inc., Subpoena Enf't Matter, 393 F.3d 771, 775 (8th Cir. 2005). Here, Bright House asserts an affirmative defense under the first safe harbor, Section 512(a). (Dkt. 164 at 44-45) That provision "limits the liability of ISPs when they do nothing more than transmit, route, or provide connections for copyrighted material—that is, when the ISP is a mere conduit for the transmission." In re Charter Commc'ns, Inc., Subpoena Enf't Matter, 393 F.3d at 775. To qualify for this safe harbor, an ISP must "satisfy certain 'conditions of eligibility,' including the adoption and reasonable implementation of a 'repeat infringer' policy that 'provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network.'" Viacom Int'l, Inc. v. YouTube, Inc., 676 F.3d 19, 27 (2d Cir. 2012) (quoting 17 U.S.C. § 512(i)(1)(A)). Eligibility for the Section 512(a) safe harbor does *not* depend, however, on compliance with the DMCA's notice-and-takedown provision, which requires a service provider to "respond[ ] expeditiously to remove, or disable access to, the material that is claimed to be infringing upon notification

of claimed infringement." In re Charter Commc'ns, Inc., Subpoena Enf't Matter, 393 F.3d at 776 (quoting 17 U.S.C. §§ 512(b)(2)(E), 512(c)(1)(C), and 512(d)(3)).[2]

"[C]opyright owners who abuse the takedown procedure are subject to liability." Doe v. Geller, 533 F. Supp. 2d 996, 1002 (N.D. Cal. 2008). In particular, Section 512(f) provides that "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by . . . a service provider . . . as the result of the service provider relying upon such misrepresentation *in removing or disabling access* to the material or activity claimed to be infringing." 17 U.S.C. § 512(f) (emphasis added). To "state a plausible claim" under this provision, a plaintiff must allege that "a 'takedown' actually occurred"—that is, that "the service provider . . . 'remov[ed] or disabl[ed] access' to the allegedly infringing material" in reliance on the misrepresentation. Opinion Corp. v. Roca Labs, Inc., No. 8:15-CV-811-17AEP, 2016 WL 6824383, at *3 (M.D. Fla. Nov. 17, 2016) (quoting 17 U.S.C. § 512(f)); see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc., 790 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011) (dismissing plaintiff's Section 512(f) claim "with prejudice because no takedown occurred").

Bright House's Section 512(f) counterclaim fails at the threshold because there are no allegations that it ever responded to the allegedly false infringement notices by "removing or disabling access to the [infringing] material." 17 U.S.C. § 512(f). In other words, "no takedown occurred." Amaretto Ranch Breedables, LLC, 790 F. Supp. 2d at 1029. Indeed, Bright House affirmatively alleges that it lacked the capacity to perform

---

[2] Unlike ISPs that serve as mere conduits for user transmissions, service providers that store user content on their own systems or "refer[ ] or link[ ]" users to infringing content *are* required to comply with the DMCA's notice-and-takedown provision in order to qualify for the safe harbor. Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc., 351 F.3d 1229, 1234 (D.C. Cir. 2003) (quoting 17 U.S.C. §§ 512(d)(1)-(3)).

takedowns. It pleads that it (i) "had no ability to remove or take down infringing content from its customers' computers" and (ii) could not "restrict, or even detect, the specific content that its customers accessed or shared." (Dkt. 164 at ¶ 14) Although Bright House alleges that it forwarded the infringement notices to "accused subscribers" and "emphasiz[ed] that they should take immediate action to stop the exchange of any infringing material," it does not claim to have terminated any user accounts or removed any allegedly infringing content. (Id. at ¶ 37) "Absent some indication that a 'takedown' actually occurred, [Bright House] fail[s] to allege the requisite injury under Section 512(f), and thus fail[s] to state a plausible claim under the DMCA." Opinion Corp., 2016 WL 6824383, at *3.

The court in Warner Records Inc. v. Charter Communications, Inc.—a case involving many of the same plaintiffs as the present action—recently dismissed a similar counterclaim. No. 19-CV-00874-RBJ-MEH, 2020 WL 6511988, at *2-3 (D. Colo. Nov. 5, 2020). There, as here, the defendant ISP premised its Section 512(f) counterclaim on the "the fact that the First Amended Complaint identifie[d] 455 fewer works" than the initial complaint, which allegedly "implie[d] that plaintiffs dropped those works because plaintiffs did not have valid infringement claims as to them." Id. at *2. The court found the counterclaim deficient for several reasons, including that the defendant failed to "allege[ ] that it incurred damages 'as the result of the service provider relying on [the alleged] misrepresentation[s] *in removing or disabling access to the material or activity claimed to be infringing.*'" Id. at *3 (quoting 17 U.S.C. § 512(f)). The court reasoned that "although [the defendant] ha[d] notified some of its subscribers of some of plaintiffs' claims of infringement, it ha[d] not cancelled any subscriptions or taken other actions to disable

subscribers' access to [its] services." Id. Bright House's counterclaim suffers from the same fatal flaw and is therefore due to be dismissed.

### B. The FDUTPA Counterclaim Fails

Bright House also claims that Plaintiffs violated FDUTPA by sending false infringement notices. (Dkt. 164 at ¶¶ 151-63) This counterclaim must be dismissed because Bright House does not allege that the infringement notices were sent "in the course of trade or commerce," as required to state a FDUTPA claim.

"To state a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages." Owens-Benniefield v. Nationstar Mortg. LLC, No. 8:17-CV-540-T-33TGW, 2017 WL 3149429, at *6 (M.D. Fla. July 25, 2017). FDUTPA defines "trade or commerce" as the "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). To satisfy the "trade or commerce" requirement, a plaintiff must plead that "the [deceptive] act or practice *itself* [was] in the conduct of trade or commerce." Copans Motors, Inc. v. Porsche Cars N. Am., Inc., No. 14-60413-CV, 2014 WL 2612308, at *6 (S.D. Fla. June 11, 2014).

The FDUTPA claim is defective because the infringement notices do not constitute "advertising, soliciting, providing, offering, or distributing" any "thing of value" to Bright House, its subscribers, or any other party. Fla. Stat. § 501.203(8). Plaintiffs sent the infringement notices as part of an alleged effort to enforce their legal rights in recordings and compositions they claimed to own. The law is clear that "[c]onduct occurring during

the exercise of a legal remedy . . . cannot give rise to a FDUTPA claim because the pursuit of a legal remedy does not fall within FDUTPA's definition of 'trade or commerce.'" Boat Owners Ass'n of U.S. v. Flagship Towing LLC, No. 2:15-CV-197-FTM-29CM, 2015 WL 4548698, at *2 (M.D. Fla. July 28, 2015); see also Baker v. Baptist Hosp., Inc., 115 So. 3d 1123, 1125 (Fla. 1st DCA 2013) ("[T]he pursuit of legal remedies does not fall within the definition of 'trade or commerce.'"). Even if Plaintiffs sent the notices "in [the] belief that this would increase sales of their products," (Dkt. 189 at 18), it does not follow that Plaintiffs were engaged in the "conduct of trade or commerce" when their representatives informed Bright House that its users were allegedly committing copyright infringement. See Copans Motors, Inc., 2014 WL 2612308, at *6 (dismissing FDUTPA claim premised on the filing of lawsuits designed "to either terminate or drive [the plaintiff-competitor] out of business" because "filing a lawsuit is not in the conduct of trade or commerce").

### C. Bright House's Request to Add New Counter-Defendants Is Denied

Bright House seeks to amend its counterclaims by adding two new counter-defendants: the RIAA and MarkMonitor. (Dkt. 165) As explained above, Plaintiffs, through their trade association, the RIAA, used MarkMonitor to send the allegedly false infringement notices to Bright House. (Dkt. 164 at ¶ 132) Notably, Bright House does not seek to alter or add to any of the factual allegations underlying its Amended Counterclaims. (Dkt. 165-2) Nor does it propose to add new causes of action. (Id.) Instead, Bright House simply wishes to hold the RIAA and MarkMonitor liable under the DMCA and FDUTPA for the same allegedly false notices challenged in the Amended

Counterclaims. (Id.) The request to add these new counter-defendants is denied because any such amendment would be futile.

Because Bright House's request was filed after the expiration of the deadline for adding new parties, it "must first demonstrate good cause under Rule 16(b) before [the Court] will consider whether amendment is proper under Rule 15(a)." Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998). "Although most cases addressing the good cause requirement of Rule 16(b) focus on the diligence of the moving party, futility of amendment is also a proper reason for denying a motion for leave to amend under Rule 16(b)." Bowers v. Am. Heart Ass'n., Inc., 513 F. Supp. 2d 1364, 1367-68 (N.D. Ga. 2007). Futility is established when "the complaint as amended is still subject to dismissal." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004).

Amendment would be futile here because the addition of RIAA and MarkMonitor would do nothing to remedy the defects that require dismissal of Bright House's counterclaims. Leave to amend is therefore denied.

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Plaintiffs' Motion to Dismiss Defendant's Counterclaims, (Dkt. 171), is **GRANTED**.

   a.   Defendant's Amended Counterclaims, (Dkt. 164 at 45-76), are **DISMISSED**.

2. Defendant's Motion to Modify the Scheduling Order and for Leave to File Second Amended Answer, Affirmative Defenses, and Counterclaims, (Dkt. 165), is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida, this 29th day of December 2020.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person