IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

     Plaintiffs,

*v.*

BRIGHT HOUSE NETWORKS, LLC

     Defendant.

Case No. 8:19-cv-00710-MSS-TGW

## BRIGHT HOUSE NETWORKS, LLC'S MOTION TO COMPEL

Bright House Networks, LLC ("Bright House") brings this motion to compel Plaintiffs to comply with their discovery obligations by (1) producing readily available materials from other substantially similar lawsuits (RFPs Nos. 100-103) and (2) admitting or denying whether Plaintiffs in fact hold the rights to certain works that formed a basis of their copyright infringement claims (RFAs Nos. 110-364).

## BACKGROUND

### I.     THE PARALLEL SUITS

This lawsuit is part of a nationwide set of actions brought by music publishers and record labels seeking to hold various internet service providers liable for alleged copyright infringement of musical compositions and sound recordings carried out by third-party internet users.  This protracted litigation campaign has included two lawsuits in Virginia and one each in New Jersey and Texas, as well as Plaintiffs' current parallel case in Colorado against Bright House's successor, Charter

Communications.  *See Sony Music Ent. v. Cox Commc'ns, Inc.*, No. 1:18-cv-950-LO-IDD (E.D. Va.) (the "*Sony* Litigation"); *UMG Recordings v. Grande Commc'ns*, No. 1:17-cv-00365-DAE (W.D. Tex.) (the "*Grande* Litigation"); *BMG Rights Mgmt. (US) LLC v. Cox Enters., Inc.*, No. 1:14-cv-01611-LOG-JFA (E.D. Va.) (the "*BMG* Litigation"); *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. 3:19-cv-17272-MAS-ZNQ (D.N.J.) (the "*RCN* Litigation"); *Warner Records Inc. v. Charter Commc'ns, Inc.*, No. 19-cv-00874-RBJ-MEH (D. Colo.) (the "*Charter* Litigation").

Each of these suits asserts the same claims and are based on the same legal theories as the instant litigation and involve many of the same plaintiffs, with much of the claims periods and works-in-suit also overlapping.  Plaintiffs have repeatedly invoked these other cases before this Court in arguing they are entitled to discovery, making clear they consider discovery in the copycat litigations to be closely connected with the discovery implicated by this case.  *See, e.g.*, Ex. A, Sept. 24, 2020 Hr'g Tr. 29:6-21 (Plaintiffs arguing they should receive discovery that "has been ordered to be produced in every single contributory copyright infringement case against an ISP that we're aware of").

In light of the fact that discovery in these parallel cases implicates many of the same parties, third parties, fact witnesses, expert witnesses, core facts, and legal theories, Bright House served discovery requesting that Plaintiffs produce a variety of materials developed in discovery in those cases or used in pleadings or at trial in the *Sony, Grande, BMG*, and *RCN* Litigations.  Ex. B, Bright House's 4th Set of RFPs (Nov. 25, 2020) at RFP Nos. 100-103.  Plaintiffs agreed to produce a limited set of materials

from the *Sony* and *Grande* Litigations, but otherwise stonewalled Bright House's requests.  Ex. C, Pls.' Objs. & Resps. to Bright House's 4th Set of RFPs (Jan. 8, 2021) at RFP Nos. 100-203.

Meanwhile, Bright House's successor, Charter, served similar requests in the *Charter* Litigation seeking materials from the *Sony* and *Grande* Litigations.  After Plaintiffs there likewise largely refused to comply, the Special Master and the Magistrate Judge jointly ordered Plaintiffs to produce deposition transcripts, declarations, and exhibits thereto of plaintiff witnesses, defendant witnesses, third party witnesses, and expert witnesses, as well as expert reports. *See* Ex. D, *Charter* Feb. 23, 2021 Hr'g Tr. 186:2-24.  The Special Master and Magistrate Judge rejected Plaintiffs' argument that it was improper for Charter to "piggyback" on others' work and must "plow [its] own road," holding that there was not any "principled reason not to produce the material" Charter sought. *Id.* at 181:23-182:4, 183:17-20,186:2-3.

In light of this ruling and Plaintiffs' prior objections, Bright House offered to narrow the scope of its requests to what Plaintiffs were already producing in the *Charter* Litigation, namely deposition transcripts, declarations, and expert reports from the *Sony* and *Grande* Litigations as well parallel material from the *BMG* and *RCN* Litigations.  Ex. E, Mar. 17, 2021 K. Akopjan Email.  Plaintiffs stood on their (by then outdated) objections and refused to produce anything beyond the limited set of documents they had already agreed to provide.  Ex. F, Mar. 19, 2021 K. Goler Email.

## II.    **THE DROPPED WORKS**

On January 7, 2020, Plaintiffs amended their Complaint to abruptly drop, without explanation, more than 250 works-in-suit (the "Dropped Works").   To determine whether Plaintiffs sent notices of alleged infringement for and brought suit on works they did not own, Bright House first sought documents sufficient to show Plaintiffs' ownership of the Dropped Works.   This Court denied Bright House's request.   Ex. G, Oct. 9, 2020 Hr'g Tr. 117:7-118:13.   Based on the Court's guidance, Bright House served narrower discovery requests directly focused on the core issue, requesting Plaintiffs simply admit or deny that they did not own the Dropped Works. Ex. H, Bright House's 3d Set of RFAs (Nov. 25, 2020) at RFAs Nos. 110-364. Plaintiffs have refused to answer these requests for admission—leaving Bright House with no way to determine ownership of the Works.   Ex. I, Pls.' Objs. & Resps. to Bright House's 3d Set of RFAs (Jan. 8, 2021) at RFAs Nos. 110-364; Ex. J, Feb. 3, 2021 P. Hill Email (dismissing Bright House's detailed explanation of why the requests were proper in light of the case law and the Court's prior ruling).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b) provides for discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."   Fed. R. Civ. P. 26(b)(1).   The Federal Rules "strongly favor full discovery whenever possible."   *Cotto v. Notter Sch. of Culinary Arts, LLC*, 2014 WL 12623795, at *1 (M.D. Fla. July 7, 2014)(quoting *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)).   To avoid discovery, a party bears the burden

of demonstrating "either that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26 or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosures," and must do so "with specificity." *Heflin Bus., Inc. v. Aviation Engine Serv., Inc.*, 2012 WL 12864935, at *2 (S.D. Fla. Aug. 14, 2012) (citations omitted).

## ARGUMENT

### I.   PLAINTIFFS SHOULD BE ORDERED TO PRODUCE BASIC MATERIALS FROM THE COPYCAT LAWSUITS (RFPs 100-103).

**ORIGINAL RFP 100**:  Documents concerning the lawsuit *Sony Music Entertainment, et al. v. Cox Communications, Inc., et al.*, Case No. 1:18-cv-950-LO-IDD, in the United States District Court, Eastern District of Virginia, Alexandria Division, including but not limited to: documents produced by Plaintiffs in the case; deposition transcripts and exhibits thereto of depositions taken in the case or otherwise admitted as evidence in the case; fact and expert declarations submitted in the case whether at trial or in support of motion practice; expert reports submitted in the case; written discovery responses served or filed by Plaintiffs in that case; unredacted versions of pleadings and submissions to the court in the case; trial exhibits in the case; and source code produced in the case in document format based on print requests by Cox.

**NARROWED RFP 100**:  Deposition transcripts, declarations, and any exhibits thereto of plaintiff witnesses, defendant witnesses, third-party witnesses, and expert witnesses, and expert reports and any exhibits thereto in *Sony Music Entertainment, et al. v. Cox Communications, Inc., et al.*, Case No. 1:18-cv-950-LO-IDD, in the United States District Court, Eastern District of Virginia, Alexandria Division.

**OBJECTIONS & RESPONSE TO RFP 100**:  Plaintiffs object to this omnibus request for virtually all documents created during, produced in, and filed in a separate litigation, because the request is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs also object to this request because it seeks information not relevant or important to resolving issues in the action, as it seeks information on issues that are irrelevant to this case, including but not limited to ownership and notices regarding copyrighted works asserted by the plaintiffs in *Sony Music Entertainment, et al. v. Cox Communications, Inc., et al* (the "*Sony* Litigation"); affirmative defenses not at issue here; works not at issue here; entities that are

not parties to this litigation; and documents concerning information outside the relevant claim period in this litigation. The request is also cumulative and duplicative of Request No. 63.

With respect to documents produced by Plaintiffs in the *Sony* Litigation, Plaintiffs further object to this request as overly broad, irrelevant and cumulative. BHN has already served more than 100 document requests, encompassing many of the same topics addressed and documents produced in the *Sony* Litigation. Plaintiff further object that, to the extent this request seeks documents relevant to this litigation, it unnecessarily duplicates BHN's other requests.

With respect to deposition transcripts and exhibits thereto of *all* depositions taken in the *Sony* Litigation or otherwise admitted as evidence in the case, Plaintiffs further object to producing depositions other than of their own fact witnesses in that case. Plaintiffs further object to this request to the extent it requires Plaintiffs to disclose trade secrets or other confidential or proprietary information of third parties that is subject to the protective order entered in the *Sony* Litigation. Plaintiffs also object to production of expert depositions from the *Sony* Litigation as irrelevant, overbroad and improper. Plaintiffs further object to this request to the extent it seeks documents "admitted as evidence in the case," which are public and equally available to BHN.

With respect to fact and expert declarations submitted in the case whether at trial or in support of motion practice, Plaintiffs further object to this request as vague and ambiguous because it does not specify which declarations are sought. Plaintiffs further object to this request to the extent it seeks documents containing confidential information of third parties that is subject to the protective order entered in the *Sony* Litigation, and because it seeks documents that are public and equally available to BHN.

With respect to expert reports submitted in the case, Plaintiffs further object to this request to the extent it purports to require Plaintiffs to disclose confidential, proprietary, or protected information belonging to third parties, and because BHN has already engaged its own experts and may not freeride on the work of experts in a separate case through an improper document request.

With respect to written discovery responses served or filed by Plaintiffs in the case, Plaintiffs further object to this request as overbroad, vague and ambiguous because it either improperly seeks all written discovery responses regardless of the subject matter of such discovery requests, or does not identify what specific information is being sought. Plaintiffs further object that any discovery responses filed in the *Sony* Litigation are equally available to BHN, and because this request seeks an impermissible end-run around the numeric limits on interrogatories under the Federal Rules of Civil Procedure.

With respect to pleadings and submissions to the court in the case, Plaintiffs further object because the submissions to the court in the *Sony* Litigation are overwhelmingly public and equally available to BHN, and because the request

is overbroad, disproportionately burdensome, and irrelevant in seeking all pleadings and submissions without regard to subject matter.

With respect to the trial exhibits in the case, Plaintiffs further object because the documents sought are public and equally available to BHN, and irrelevant in seeking documents unrelated to the issues in this case.

With respect to the source code produced in the case, Plaintiffs further object to this request because it seeks trade secret, confidential and/or proprietary information of third parties that is subject to the protective order entered in the *Sony* Litigation, as well as additional non-disclosure obligations. Plaintiffs further object because BHN's expert has inspected the source code for both Audible Magic and MarkMonitor and BHN can make its own requests for portions of those companies' source code that its experts deem relevant here. Plaintiffs also object to producing the requested source code as an improper attempt to discover what experts in a different case thought was important in requesting print-outs of certain portions.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs will produce non-public deposition transcripts of the *Sony* Plaintiffs' fact witnesses from the *Sony* Litigation, and the following *Sony* Plaintiffs' declarations submitted under seal: Jeremy Blietz (ECF 325-10), David Kokakis (ECF 325-8), Wade Leak (ECF 325-3), Alasdair McMullan (ECF 325-9), Anish Patel (ECF 325-4), Steven Poltorak (ECF 325-5), Anish Patel (ECF 208-8), Melissa Battino (ECF 208-3), Jeremy Blietz (ECF 208-4), Julie Chen-Burton (ECF 208-5), Chiara Genovese (ECF 207-6), and David Jacoby (ECF 207-7).

Record labels and publishers within the music industry, including the Plaintiffs in this litigation, have brought a series of copycat lawsuits against internet service providers across the country over the past several years, in each case alleging the same conduct and claims as in this lawsuit. In the first major case in Plaintiffs' campaign—the *Sony* Litigation—a group of record labels and music publishers that include the Plaintiffs in this litigation brought claims against internet service provider Cox Communications, premised on the same theories, and seeking the same relief as those asserted against Bright House here. As this Court is aware, Plaintiffs have heavily relied on the *Sony* Litigation when arguing how this case should proceed. Notably,

the scope of discovery Plaintiffs seek in this litigation substantially overlaps with the scope of discovery in the *Sony* Litigation, and Plaintiffs are likely to put forward many of the same corporate representatives as in the *Sony* Litigation.  In addition, Plaintiffs' expert disclosures in this case indicate they will rely on many of the same expert witnesses as in *Sony*.  Plaintiffs in this case have even relied on demonstratives they used in the *Sony* Litigation to argue that they should be able to obtain similar discovery here.  *See* Ex. A, Sept. 24, 2020 Hr'g Tr. 27:16-21 (pointing to exhibit used in *Sony* as an example of what "a demonstrative looks like with th[e] information" that Plaintiffs sought in this case); Ex. K, Dkt. 157-16, *Sony* Demonstrative (Aug. 14, 2020).

Indeed, Plaintiffs here have repeatedly invited this Court to treat the *Sony* Litigation (and the other copycat lawsuits) as substantially identical to this case.  *See, e.g.*, Ex. A, Sept. 24, 2020 Hr'g Tr. 29:6-21 (Plaintiffs arguing they should receive discovery that "has been ordered to be produced in every single contributory copyright infringement case against an ISP that we're aware of, and [ha]s been admitted at trial in those that have gone to trial"); *id.* at 42:23-43:4 (Plaintiffs' counsel arguing that they and Bright House's counsel "can do what parties have managed to do in all these other cases where these claims are brought against ISPs").

Now, despite having ready access to materials bearing on the same claims relating to many of the same parties and witnesses as here, and despite having argued that that the Court should treat this case the same as "all these other cases where these claims are brought against ISPs," *id.* at 42:25-43:1, Plaintiffs improperly refuse to turn

over basic evidence gathered in the *Sony* Litigation—deposition transcripts, declarations, and expert reports.

Against this backdrop, Plaintiffs' arguments that the material Bright House seeks is not relevant are untenable.  The distinctions Plaintiffs draw between the *Sony* Litigation and this case are dwarfed by their similarities.  For example, Plaintiffs object that the *Sony* Litigation involves some "entities that are not parties to this litigation," "affirmative defenses not at issue," "works not at issue," and "information outside the relevant claim period in this litigation."  *Supra*, Objs. & Resps. RFP No. 100.  In fact, thousands of the works-in-suit in this case were also subjects of the *Sony* Litigation. The claims period in the *Sony* case falls entirely ***within*** the claims period in this case. And, as noted above, most of the same plaintiffs are involved in this case.  At any rate, the fact that one particular label or publisher was or was not a plaintiff in the *Sony* case is not a meaningful difference since the record labels and music publishers have consistently treated themselves as coherent entities and often act through their trade associations.[1]

At bottom, Plaintiffs' objections amount to little more than disapproval of a perceived attempt by Bright House to "freeride."  *See supra*, Objs. & Resps. RFP No.

---

[1]  In fact, Plaintiffs essentially admit in their Objections that the material Bright House seeks is relevant, asserting that "B[right] H[ouse] has already served more than 100 document requests, encompassing many of the same topics addressed and documents produced in the [copycat] Litigation[s]."  *Supra*, Objs. & Resps. RFPs Nos. 100-101, 103.  Having conceded that the subject of discovery in this case "encompass[es] many of the same topics addressed and documents produced" in the copycat cases, Plaintiffs cannot credibly assert that the materials produced in the copycat cases are irrelevant.

100.  However, the Federal Rules' liberal standard of discovery does not include a "no freeriding" rule, and courts in this circuit have compelled production of the type of discovery Bright House seeks.  *See Bishop v. Baldwin*, 2020 WL 7320932, at *5-6 (S.D. Fla. Dec. 10, 2020) (ordering production of "[a]ll discovery received from defendants and third parties, and all deposition transcripts" in two separate actions pending in different jurisdictions, as "[a] comparison of the allegations in [the actions] confirm[ed] that the cases all involve the same alleged [unlawful] scheme"); *Strickland v. Tristar Prods., Inc.*, 2017 WL 2874621, at *1 n.2 (S.D. Ga. July 5, 2017) (holding that "'[p]iggyback' discovery" from ten other cases was relevant and permissible "given the similarities and narrow number of cases plaintiffs seek," before denying Plaintiffs' motion to compel without prejudice on other grounds).  And, of course, the Magistrate Judge and the Special Master in the *Charter* Litigation already held that the plaintiffs in that case must produce depositions, declarations, and expert reports from the *Sony* Litigation.  Ex. D, *Charter* Feb. 23, 2021 Hr'g Tr. 186:2-3.  Bright House's narrowed request falls comfortably within the bounds of discovery held to be reasonable and relevant in prior cases.

Plaintiffs' other objections fare no better.  Plaintiffs assert that producing these readily-available materials would be "unduly burdensome," *see supra*, Objs. & Resps. RFP No. 100, but they do not deny—nor could they—that the materials Bright House seeks are readily available.  Indeed, Plaintiffs have already produced in the parallel *Charter* Litigation the materials Bright House seeks here.  Rather than imposing a burden, allowing the parties to rely on information already gathered in a near-identical

10

case will promote efficiency.  Plaintiffs attempt to use the protective order in the *Sony* Litigation to shield them from their discovery obligations, but that order is not an absolute bar on production and provides explicit exceptions for circumstances such as these.  Plaintiffs have proven perfectly capable of working with defense counsel in the *Charter* Litigation to navigate the protective order in order to produce exactly the materials Bright House is seeking here.  And of course, Plaintiffs' productions would similarly be protected by the protective order in this case.

Both the Special Master and the Magistrate Judge in the *Charter* Litigation found that there was no "principled reason not to produce" the categories of material Bright House seeks and ordered it produced.  Ex. D, *Charter* Feb. 23, 2021 Hr'g Tr. 186:2-3.  The outcome should be no different here.

> **ORIGINAL RFP 101**:  Documents concerning the lawsuit *UMG Recordings, et al. v. Grande Communications et al.*, Case No. 1:17-cv-00365-DAE, in the United States District Court, Western District of Texas, Austin Division, including but not limited to: documents produced by Plaintiffs in the case; deposition transcripts and exhibits thereto of depositions taken in the case or otherwise admitted as evidence in the case; fact and expert declarations submitted in the case whether at trial or in support of motion practice; expert reports submitted in the case; written discovery responses served or filed by Plaintiffs in that case; unredacted versions of pleadings and submissions to the court in the case; trial exhibits in the case; and source code produced in the case in document format based on print requests by Grande.
>
> **NARROWED RFP 101**:  Deposition transcripts, declarations, and any exhibits thereto of plaintiff witnesses, defendant witnesses, third-party witnesses, and expert witnesses, and expert reports and any exhibits thereto in *UMG Recordings, et al. v. Grande Communications et al.*, Case No. 1:17-cv-00365-DAE, in the United States District Court, Western District of Texas, Austin Division.
>
> **OBJECTIONS & RESPONSE TO RFP 101**:  Plaintiffs object to this omnibus request for virtually all documents created during, produced in, and filed in a separate litigation, because the request is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs also object

to this request because it seeks information not relevant or important to resolving issues in the action, as it seeks information on issues that are irrelevant to this case, including but not limited to ownership and notices regarding copyrighted works asserted by the plaintiffs in *UMG Recordings, et al. v. Grande Communications et al.* (the "*Grande* Litigation"); affirmative defenses not at issue here; works not at issue here; entities that are not parties to this litigation; and documents concerning information outside the relevant claim period in this litigation. The request is also cumulative and duplicative of Request No. 63.

With respect to documents produced by Plaintiffs in the *Grande* Litigation, Plaintiffs further object to this request as overly broad, irrelevant and cumulative. BHN has already served more than 100 document requests, encompassing many of the same topics addressed and documents produced in the *Grande* Litigation. Plaintiff further object that, to the extent this request seeks documents relevant to this litigation, it unnecessarily duplicates BHN's other requests.

With respect to deposition transcripts and exhibits thereto of *all* depositions taken in the *Grande* Litigation or otherwise admitted as evidence in the case, Plaintiffs further object as irrelevant and overbroad. Plaintiffs further object to this request to the extent it requires Plaintiffs to disclose trade secrets or other confidential or proprietary information of third parties that is subject to the protective order entered in the *Grande* Litigation. Plaintiffs also object to production of expert depositions from the *Grande* Litigation as irrelevant, overbroad, and improper. Plaintiffs further object to this request to the extent it seeks documents "admitted as evidence in the case," which are public and equally available to BHN.

With respect to fact and expert declarations submitted in the case whether at trial or in support of motion practice, Plaintiffs further object to this request as vague and ambiguous because it does not specify which declarations are sought. Plaintiffs further object to this request to the extent it seeks documents containing confidential information of third parties that is subject to the protective order entered in the *Grande* Litigation, and because it seeks documents that are public and equally available to BHN.

With respect to expert reports submitted in the case, Plaintiffs further object to this request to the extent it purports to require Plaintiffs to disclose confidential, proprietary, or protected information belonging to third parties, because BHN has already engaged its own experts and may not freeride on the work of experts in a separate case through an improper document request, and as irrelevant to issues in this case.

With respect to written discovery responses served or filed by Plaintiffs in the case, Plaintiffs further object to this request as overbroad, vague and ambiguous because it either improperly seeks all written discovery responses regardless of the subject matter of such discovery requests, or does not identify what specific information is being sought. Plaintiffs further object that any

discovery responses filed in the *Grande* Litigation are equally available to BHN, and because this request seeks an impermissible end-run around the numeric limits on interrogatories under the Federal Rules of Civil Procedure.

With respect to pleadings and submissions to the court in the case, Plaintiffs further object because the submissions to the court in the *Grande* Litigation are overwhelmingly public and equally available to BHN, and because the request is overbroad, disproportionately burdensome, and irrelevant in seeking all pleadings and submissions without regard to subject matter.

With respect to the trial exhibits in the case, Plaintiffs further object because no trial has occurred and, to the extent a trial does occur, trial exhibits would be public, equally available to BHN, and irrelevant to the extent unrelated to issues in this case.

With respect to the source code produced in the case, Plaintiffs further object that this request seeks documents not in Plaintiffs' possession. Plaintiffs further object to this request as irrelevant to the extent the plaintiffs in that case used different technology and vendors than in this case. Plaintiffs further object to this request because it seeks trade secret, confidential and/or proprietary information of third parties that is subject to the protective order entered in the *Grande* Litigation, as well as additional non-disclosure obligations. Plaintiffs further object because BHN's expert has inspected the source code for both Audible Magic and MarkMonitor and BHN can make its own requests for portions of those companies' source code that its experts deem relevant here. Plaintiffs also object to producing the requested source code as an improper attempt to discover what experts in a different case thought was important in requesting print-outs of certain portions.

Pursuant to the foregoing objections, Plaintiffs will produce non-public deposition transcripts and sworn declarations of the *Grande* Plaintiffs' fact witnesses from the *Grande* Litigation.

RFP No. 101 seeks the same categories of materials as RFP No. 100, simply from the ongoing *Grande* Litigation in Texas as opposed to the *Sony* Litigation, and all the arguments provided above apply with equal force to this request.  In the *Grande* case, just as in the *Sony* case, essentially the same group of plaintiffs as here brought the same secondary copyright liability claims against an internet service provider. Indeed, the lead plaintiff here (UMG Recordings, Inc.) is also the lead plaintiff in the *Grande* Litigation.  Plaintiffs' objection that the claims periods in the *Grande* case and

13

in this case differ misses the mark; the claims period in this case falls entirely within the claims period in *Grande*, meaning that the period in dispute here necessarily falls within the scope of discovery in *Grande.*

As with the *Sony* Litigation, Plaintiffs have relied heavily on the *Grande* Litigation and invited the Court to do the same.  *See, e.g.*, Ex. A, Sept. 24, 2020 Hr'g Tr. 29:6-21 (Plaintiffs' counsel arguing for discovery that was "relied on at the summary judgment stage in those [copyright infringement] cases like *Grande*").  The plaintiffs in the *Charter* Litigation have already been ordered to produce the documents that Bright House seeks from the *Grande* Litigation, and have nearly completed doing so; there would be little to no burden for Plaintiffs to do the same here.  Grande's counsel has proven ready and willing to assist in navigating the controlling protective order and have coordinated with both plaintiff and defense counsel to ensure documents are properly redacted and designated confidential as necessary.  There is no reason for Plaintiffs to withhold relevant and readily accessible materials from the *Grande* Litigation.

> **ORIGINAL RFP 102**:  Documents concerning the lawsuit *BMG Rights Management (US) LLC et al. v. Cox Enterprises, Inc. et al.*, Case No. 1:14-cv-1611-LOG-JFA, in the United States District Court, Eastern District of Virginia, Alexandria Division, including but not limited to: documents produced by Plaintiffs in the case; deposition transcripts and exhibits thereto of depositions taken in the case or otherwise admitted as evidence in the case; fact and expert declarations submitted in the case whether at trial or in support of motion practice; expert reports submitted in the case; written discovery responses served or filed by Plaintiffs in that case; unredacted versions of pleadings and submissions to the court in the case; trial exhibits in the case; and source code produced in the case in document format based on print requests by Cox.

> **NARROWED RFP 102**:  Deposition transcripts, declarations, and any exhibits thereto of plaintiff witnesses, defendant witnesses, third-party

witnesses, and expert witnesses, and expert reports and any exhibits thereto in *BMG Rights Management (US) LLC et al. v. Cox Enterprises, Inc. et al.*, Case No. 1:14-cv-1611-LOG-JFA, in the United States District Court, Eastern District of Virginia, Alexandria Division.

**OBJECTIONS & RESPONSE TO RFP 102**:  Plaintiffs object to this omnibus request for virtually all documents created during, produced in, and filed in a separate litigation, because the request is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs also object to this request because it seeks information not relevant or important to resolving issues in the action, as it seeks information on issues that are irrelevant to this case, including but not limited to ownership and notices regarding copyrighted works asserted by the plaintiffs in *BMG Rights Management (US) LLC et al. v. Cox Enterprises, Inc. et al* (the "*BMG* Litigation"); affirmative defenses not at issue here; works not at issue here; entities that are not parties to this litigation; and documents concerning information outside the relevant claim period in this litigation.

With respect to documents produced by Plaintiffs in the *BMG* Litigation, Plaintiffs further object because Plaintiffs did not produce any documents in that case. Plaintiffs further object to this request as overly broad, irrelevant and cumulative. Plaintiff further object that, to the extent this request seeks documents relevant to this litigation which are actually within Plaintiffs' possession, custody, or control, it unnecessarily duplicates BHN's other requests.

With respect to deposition transcripts and exhibits thereto of *all* depositions taken in the *BMG* Litigation or otherwise admitted as evidence in the case, Plaintiffs further object to this request as irrelevant and overbroad. Plaintiffs further object to this request to the extent it requires Plaintiffs to disclose trade secrets or other confidential or proprietary information of third parties that is subject to the protective order entered in the *BMG* Litigation. Plaintiffs also object to production of expert depositions from the *BMG* Litigation as irrelevant, overbroad and improper. Plaintiffs further object to this request to the extent it seeks documents "admitted as evidence in the case," which are public and equally available to BHN.

With respect to fact and expert declarations submitted in the case whether at trial or in support of motion practice, Plaintiffs further object to this request as vague and ambiguous because it does not specify which declarations are sought. Plaintiffs further object to this request to the extent it seeks documents containing confidential information of third parties that is subject to the protective order entered in the *BMG* Litigation, and because it seeks documents that are public and equally available to BHN.

With respect to expert reports submitted in the case, Plaintiffs further object to this request to the extent it purports to require Plaintiffs to disclose confidential, proprietary, or protected information belonging to third parties,

and because BHN has already engaged its own experts and may not freeride on the work of experts in a separate case through an improper document request.

With respect to written discovery responses served or filed by Plaintiffs in the case, Plaintiffs further object in that they did not serve or file any written discovery responses in the BMG Litigation. Plaintiffs also object to this request as overbroad, vague and ambiguous because it either improperly seeks all written discovery responses regardless of the subject matter of such discovery requests, or does not identify what specific information is being sought. Plaintiffs further object that any discovery responses filed in the *BMG* Litigation are equally available to BHN, and because this request seeks an impermissible end-run around the numeric limits on interrogatories under the Federal Rules of Civil Procedure.

With respect to pleadings and submissions to the court in the case, Plaintiffs further object because the submissions to the court in the *BMG* Litigation are overwhelmingly public and equally available to BHN, and because the request is overbroad, disproportionately burdensome, and irrelevant in seeking all pleadings and submissions without regard to subject matter.

With respect to the trial exhibits in the case, Plaintiffs further object because the trial exhibits are public, equally available to BHN, and irrelevant in seeking documents unrelated to the issues in this case.

With respect to the source code produced in the case, Plaintiffs further object that this request seeks document not in Plaintiffs' possession. Plaintiffs further object to this request as irrelevant to the extent plaintiffs in that case used different technology and vendors than in this case. Plaintiffs further object to this request because it seeks trade secret, confidential and/or proprietary information of third parties that is subject to the protective order entered in the *BMG* Litigation, as well as additional non-disclosure obligations. Plaintiffs further object because BHN's expert has inspected the source code for both Audible Magic and MarkMonitor and BHN can make its own requests for portions of those companies' source code that its experts deem relevant here. Plaintiffs also object to producing the requested source code as an improper attempt to discover what experts in a different case thought was important in requesting print-outs of certain portions.

Pursuant to the foregoing objections, Plaintiffs will not produce documents in response to this request.

With respect to RFP No. 102, Bright House simply requests that Plaintiffs produce the same basic discovery materials from an earlier and related lawsuit, the *BMG* Litigation. Notably, the *BMG* case provided the template for the copycat litigations against internet service providers that followed; it was there that the music

industry first developed their dangerous (and meritless) theory of holding internet service providers secondarily liable for alleged copyright infringement by internet users.  The *BMG* case was substantially smaller in scope than the copycat litigations and this lawsuit (for example, it included only two plaintiffs), such that the scope of discovery and any attendant burden on Plaintiffs is limited.  Plaintiffs' objections to this RFP are identical to their objections to Bright House's other requests dealing with the copycat litigations and are without merit for all the reasons set forth above.

> **ORIGINAL RFP 103**:   Documents concerning the lawsuit *UMG Recordings, Inc. et al. v. RCN Telecom Services, LLC et al.*, Case No. 3:19-cv-17272-MAS-ZNQ in the United States District Court, District of New Jersey, including but not limited to: documents produced by Plaintiffs in the case; deposition transcripts and exhibits thereto of depositions taken in the case or otherwise admitted as evidence in the case; fact and expert declarations submitted in the case whether at trial or in support of motion practice; expert reports submitted in the case; written discovery responses served or filed by Plaintiffs in that case; unredacted versions of pleadings and submissions to the court in the case; trial exhibits in the case; and source code produced in the case in document format based on print requests by RCN Telecom Services.

> **NARROWED RFP 103**:   Deposition transcripts, declarations, and any exhibits thereto of plaintiff witnesses, defendant witnesses, third-party witnesses, and expert witnesses, and expert reports and any exhibits thereto in *UMG Recordings, Inc. et al. v. RCN Telecom Services, LLC et al.*, Case No. 3:19-cv-17272-MAS-ZNQ in the United States District Court, District of New Jersey.

> **OBJECTIONS & RESPONSE TO RFP 103**:  Plaintiffs object to this omnibus request for virtually all documents created during, produced in, and filed in a separate litigation, because the request is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs also object to this request because it seeks information not relevant or important to resolving issues in the action, as it seeks information on issues that are irrelevant to this case, including but not limited to ownership and notices regarding copyrighted works asserted by the plaintiffs in *UMG Recordings, Inc. et al. v. RCN Telecom Services, LLC et al.* (the "*RCN* Litigation"); affirmative defenses not at issue here; works not at issue here; entities that are not parties to this litigation; and documents concerning information outside the relevant claim period in this litigation.

With respect to documents produced by Plaintiffs in the *RCN* Litigation, Plaintiffs further object to this request as overly broad, irrelevant and cumulative. BHN has already served more than 100 document requests, encompassing many of the same topics addressed and documents produced in the *RCN* Litigation. Plaintiff further object that, to the extent this request seeks documents relevant to this litigation, it unnecessarily duplicates BHN's other requests.

With respect to deposition transcripts and exhibits thereto of *all* depositions taken in the *RCN* Litigation or otherwise admitted as evidence in the case, Plaintiffs further object as irrelevant, overbroad, and because no depositions have occurred. Plaintiffs further object to this request to the extent it requires Plaintiffs to disclose trade secrets or other confidential or proprietary information of third parties that is subject to the protective order entered in the *RCN* Litigation. Plaintiffs also object to production of expert depositions from the *RCN* Litigation as irrelevant, overbroad and improper. Plaintiffs further object to this request to the extent it seeks documents "admitted as evidence in the case," which are public and equally available to BHN.

With respect to fact and expert declarations submitted in the case whether at trial or in support of motion practice, Plaintiffs further object to this request as vague and ambiguous because it does not specify which declarations are sought. Plaintiffs further object to this request to the extent it seeks documents containing confidential information of third parties that is subject to the protective order entered in the *RCN* Litigation, and because it seeks documents that are public and equally available to BHN.

With respect to expert reports submitted in the case, Plaintiffs further object to this request because no expert reports have been submitted. Plaintiffs further object to this request to the extent it purports to require Plaintiffs to disclose confidential, proprietary, or protected information belonging to third parties, and because BHN has already engaged its own experts and may not freeride on the work of experts in a separate case through an improper document request.

With respect to written discovery responses served or filed by Plaintiffs in the case, Plaintiffs further object to this request as overbroad, vague and ambiguous because it either improperly seeks all written discovery responses regardless of the subject matter of such discovery requests, or does not identify what specific information is being sought. Plaintiffs further object that any discovery responses filed in the *RCN* Litigation are equally available to BHN, and because this request seeks an impermissible end-run around the numeric limits on interrogatories under the Federal Rules of Civil Procedure.

With respect to pleadings and submissions to the court in the case, Plaintiffs further object because the submissions to the court in the *RCN* Litigation are overwhelmingly public and equally available to BHN, and because the request is overbroad, disproportionately burdensome, and irrelevant in seeking all pleadings and submissions without regard to subject matter.

With respect to the trial exhibits in the case, Plaintiffs further object because no trial has occurred and, to the extent a trial does occur, trial exhibits would be public, equally available to BHN, and irrelevant to the extent unrelated to issues in this case

With respect to the source code produced in the case, Plaintiffs further object that this request seeks document not in Plaintiffs' possession. Plaintiffs further object to this request as irrelevant to the extent the plaintiffs in that case used different technology and vendors than in this case. Plaintiffs further object to this request because it seeks trade secret, confidential and/or proprietary information of third parties that is subject to the protective order entered in the *RCN* Litigation, as well as additional non-disclosure obligations. Plaintiffs further object because BHN's expert has inspected the source code for both Audible Magic and MarkMonitor and BHN can make its own requests for portions of those companies' source code that its experts deem relevant here. Plaintiffs also object to producing the requested source code as an improper attempt to discover what experts in a different case thought was important in requesting print-outs of certain portions.

Pursuant to the foregoing objections, Plaintiffs will not produce documents responsive to this request.

Finally, with respect to RFP No. 103, Bright House seeks the same narrow categories of materials from the *RCN* Litigation as from the other copycat litigations. Plaintiffs do not articulate any difference between the *RCN* case and the other cases discussed above, and their objections fare no better here than they do with regards to Bright House's other requests.  Plaintiffs do correctly state that no depositions have occurred nor any expert reports been submitted in the *RCN* Litigation as of yet, but that is no reason to refuse to produce those materials; parties' discovery obligations are continuous in nature, and an order for Plaintiffs to produce deposition transcripts, expert reports, and exhibits thereto would simply call for their production at the appropriate time.

## II. **PLAINTIFFS SHOULD BE ORDERED TO SIMPLY ADMIT OR DENY WHETHER THEY OWN THE DROPPED WORKS (RFAs 110-364).**

**RFAs 110-364**:[2] Admit that You did not own, or have authorization to assert rights on behalf of the owner for, the Dropped Work [that is specified in the Appendix to this Motion] during the Claims Period.

**OBJECTIONS & RESPONSE TO RFAs 110-364:** Plaintiffs object to this RFA as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of the case, including because it (1) seeks information that is not relevant to any claim or viable defense at issue in the case; (2) is not limited to works at issue in the case; (3) relates only to BHN's improper and now-dismissed counterclaims (Dkt. 244); and (4) is an impermissible subject of discovery in light of Judge Wilson's denial of BHN's motion to compel production of documents concerning so-called "Dropped Works" (*see* Dkt. 210; 10/9 Hr'g Tr. 117:2–13). Plaintiffs further object to this RFA to the extent it calls for legal conclusions. Plaintiffs object to this RFA as vague, ambiguous, and incomprehensible as to the term "authorization to assert rights on behalf of the owner[.]" Plaintiffs object to this RFA as seeking information protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege or protection from disclosure to the extent it seeks information about litigation strategy concerning the so-called "Dropped Works." Based on the foregoing objections, denied.

Bright House's RFAs Nos. 110-364 call for information to test a key aspect of Plaintiffs' theory of this case: that the sheer volume of infringement notices that Bright House received—regardless of whether the notices were for the works-in-suit—is evidence of rampant piracy on its networks. *See* Dkt. 94, First Am. Compl. ("FAC") ¶ 2 (Jan. 7, 2020) (alleging "hundreds of thousands of statutory infringement notices [sent] to Bright House"). Plaintiffs have made clear all along that they intend to rely on notices that they did not send and that do ***not*** implicate the works-in-suit to argue

---

[2]   RFAs Nos. 110-364 and the Responses and Objections thereto are substantively identical, each related to one Dropped Work. The particular Dropped Work identified in each RFA can be found in the Appendix to this motion. Bright House notes this Court's standing order directing parties to quote each request and response in full, immediately followed by argument regarding the request. Given that these RFAs are essentially identical in substance (other than the identification of the specific Dropped Work), Bright House has grouped them together in the interests of efficiency and clarity.

that Bright House was put on notice of infringement, and hence should be held liable for failing to act.  *See, e.g.*, FAC ¶ 87 (alleging that "despite receiving over one hundred thousand infringement notices from Plaintiffs, ***as well as thousands of similar notices from other copyright owners***, Bright House knowingly permitted specifically identified repeat infringers to continue to use its network to infringe" (emphasis added)); Ex. L, Pls.' 2d Set of RFAs (Jan. 15, 2021), at RFA No. 10 (calling for Bright House to admit it "received at least 109,000 Infringement Notices sent by Plaintiffs or on behalf of Plaintiffs during the Claim Period," with no exception for notices for works not in this lawsuit); *see also* Ex. D, *Charter* Feb. 23, 2021 Hr'g Tr. 75:6-15 (Plaintiffs' counsel affirming that Plaintiffs "will rely on all of those [notices, including for works not covered by Plaintiffs' claims] as evidence of an astronomical amount of infringement that was occurring on Charter's network").  Plaintiffs' theory is fundamentally premised on the accuracy of all of the notices of alleged infringement it sent to Bright House, not only notices related to the works-in-suit.  The accuracy of Plaintiffs' entire notice program is drawn sharply into question by Plaintiffs' decision to remove the Dropped Works (for which it sent notices and brought suit) from this action.

Bright House does not seek admissions about Plaintiffs' ownership of every work that was the subject of an infringement notice; rather, Bright House's requests concern only the Dropped Works.  *See supra*, RFAs Nos. 110-364.  Given that the Dropped Works implicated over $38 million in damages, there is strong reason to believe that Plaintiffs only dropped the claims after realizing that they did not, in fact, own the Dropped Works.  *See* FAC ¶ 97 (alleging Plaintiffs were entitled to statutory

damages of up to $150,000 per work, including the Dropped Works).  If Plaintiffs' system indeed generated *en masse* infringement notices for works they did not own, that undermines the reliability of Plaintiffs' core evidence of direct infringement, rendering Plaintiffs' ownership of the Dropped Works directly relevant to this action. Plaintiffs have argued that there are other reasons why they removed some of the works from their Complaint, but notably Plaintiffs have not affirmatively represented that they owned the Dropped Works.  *See* Ex. G, Oct. 9, 2020 Hr'g Tr. 17:17-18:7 (providing "a few examples" of why certain, unnamed works were dropped).  Bright House should not have to rely on these self-serving arguments, but is entitled to a clear and straightforward answer as to whether Plaintiffs in fact own the Dropped Works.[3]

Plaintiffs' objections do not alter this state of affairs.  Given that Plaintiffs themselves plan to ask the jury to find in their favor because Bright House allegedly failed to act on notices for works that are not the subject of any claim, Plaintiffs' objections that the RFAs in question "seek[] information that is not relevant to any claim or viable defense at issue in the case … [and] [are] not limited to works at issue in the case" ring hollow.  *See supra*, Objs. & Resps. RFAs Nos. 110-364.  Likewise, it is incorrect that the RFAs "relate[] only to B[right] H[ouse ]'s improper and now-dismissed counterclaims."  *See id*.  In fact, the admissions Bright House seeks relate directly to the legal theory and litigation theme that Plaintiffs themselves have put

---

[3]   In the alternative, Plaintiffs should be estopped from asserting that they own the Dropped Works if they are unwilling to admit or deny that ownership.

forward, and while the admissions certainly would have been relevant to Bright House's counterclaims were they still part of this case, that does not render the admissions irrelevant to Plaintiffs' current claims.[4]

Nor can Plaintiffs credibly label Bright House's requests "unduly burdensome" given that Plaintiffs had an obligation under Rule 11 to determine the ownership of the works they asserted before filing their original and amended complaints. If Plaintiffs satisfied this obligation, then the information Bright House seeks in these RFAs should be readily available to Plaintiffs, and the burden (if any) of responding would be minimal. If they did not, the principles of integrity require Plaintiffs to come forward with this information now. Further, at a recent hearing in the *Charter* Litigation, Plaintiffs' counsel "affirmatively represent[ed] to [the Court]" that it was counsel's "good faith belief, after a reasonable investigation, that [Plaintiffs] did own those [dropped works]"—but, notably, the Court was only willing to accept that representation because Plaintiffs had already substantively responded to an RFA regarding Plaintiffs' ownership of those dropped works. Ex. D, *Charter* Feb. 23, 2021 Hr'g Tr. 180:6-10.

---

[4]    Bright House has maintained the position that information about whether Plaintiffs owned the Dropped Works is relevant to defending Plaintiffs' affirmative claims, and not only Bright House's counterclaims, throughout. *See e.g.*, Ex. G, Oct. 9, 2020 Hr'g Tr. 116:11-13 ("This will help us not only with our counterclaims, but also with the theme in our case about the reliability entirely of the process here."); *id.* at 19:13-19 ("[O]ur defense in this billion-dollar case is based in part on the fact that there are problems [with the Dropped Works] and we conspicuously didn't hear opposing counsel say that there weren't ownership problems with some of the dropped works. I can assure you discovery will show that there are ownership problems with some of the dropped works.").

Finally, Plaintiffs' objection that discovery regarding their ownership of the Dropped Works "is an impermissible subject of discovery in light of Judge Wilson's denial of B[right] H[ouse ]'s motion to compel production of documents" misstates the record. *See supra*, Objs. & Resps. RFAs Nos. 110-364 (citing Oct. 9, 2020 Hr'g Tr. 117:2-13). The RFAs that are the subject of this motion are readily distinguishable from Bright House's previous RFP and were drafted pursuant to the Court's prior guidance. The Court's prior holding was based in part on Bright House's RFP being "overly broad." Ex. G, Oct. 9, 2020 Hr'g Tr. 117:7. That RFP called for

> Documents sufficient to demonstrate Your ownership of, or possession of an exclusive right in, each of the Dropped Works at the time You sent a Notice of Alleged Infringement for that Dropped Work, and that You were authorized to send Notices of Alleged Infringement concerning those works between January 2013 and March 2015.

Dkt. 159, Mot. Compel at 24 (Aug. 17, 2020). Here, Bright House seeks something far narrower—to admit or deny that:

> [Plaintiffs] did not own, or have authorization to assert rights on behalf of the owner for, the Dropped Work[s] during the Claims Period.

*Supra*, RFAs Nos. 110-364. Plaintiffs are not required to search for or produce documents or to provide extraneous information under this targeted discovery request; they must simply admit or deny ownership. Moreover, at the October 9, 2020 hearing, the Court found that the materials Bright House sought, namely documents sufficient to show that Plaintiffs *did* own the Dropped Works, were not relevant, as such documents by their very nature would not provide the evidence Bright House argued was necessary—proof that Plaintiffs did *not* own the Dropped Works. Ex. G, Oct. 9, 2020 Hr'g Tr. 118:2-7. Bright House's RFAs resolve this problem by requesting a

24

straightforward answer to the question of whether Plaintiffs in fact own each of the Dropped Works. *Supra*, RFAs Nos. 110-364.[5]

## **CONCLUSION**

For these reasons, Bright House respectfully requests that the Court order Plaintiffs to produce documents pursuant to Requests for Production 100-103 and substantively respond to Requests for Admission 110-364.

---

[5]   Plaintiffs' remaining conclusory objections fall short as well.  Bright House's requests do not call for any legal conclusions, but rather pose the factual question of whether Plaintiffs owned certain works or had been authorized by the owners of those works to assert claims on their behalf.  That is, the requests call for "facts [or] the application of law to fact" and therefore fall within the scope of Rule 36.  *See* Fed. R. Civ. P. 36(a)(1) (setting out permissible scope of requests for admission); *see also, e.g.*, *Gurzi v. Penn Credit Corp.*, 2019 WL 8273647, at *2 (M.D. Fla. Dec. 30, 2019) (overruling Defendant's objection that RFA called for a legal conclusion and compelling it to "[a]dmit that the dialing system used to call Plaintiff was an 'automatic telephone dialing system' for purposes of the TCPA").  Nor can Plaintiffs invoke any privilege with respect to the *factual* question of whether they owned particular works—a question that does not implicate legal advice by anyone and does not ask Plaintiffs to produce any communications with or between counsel or any attorney work-product.  Finally, Plaintiffs declined to explain what was, in their view, "vague, ambiguous, and incomprehensible" about the phrase "authorization to assert rights on behalf of the owner" as used in the RFAs after Bright House raised the issue during the meet-and-confer process.  *See* Ex. J, Feb. 3, 2021 P. Hill Email.

Dated: April 30, 2021                     Respectfully submitted,

Jennifer A. Golinveaux (*pro hac vice*)          */s/ Andrew H. Schapiro*
WINSTON & STRAWN LLP                         Andrew H. Schapiro (*pro hac vice*)
101 California Street, 35th Floor            Nathan A. Hamstra (*pro hac vice*)
San Francisco, CA 94111                      Allison Huebert (*pro hac vice*)
Tel: (415) 591-1506                          QUINN EMANUEL URQUHART &
Email: jgolinveaux@winston.com               SULLIVAN, LLP
                                             191 N. Wacker Drive, Suite 2700
Michael S. Elkin (*pro hac vice*)            Chicago, IL 60606
WINSTON & STRAWN LLP                         Tel: (312) 705-7400
200 Park Avenue                              Email: andrewschapiro@quinnemanuel.com
New York, NY 10166                           Email: nathanhamstra@quinnemanuel.com
Tel: (212) 294-6700                          Email: allisonhuebert@quinnemanuel.com
Email: melkin@winston.com
                                             Todd A. Anten (*pro hac vice*)
Erin R. Ranahan (*pro hac vice*)             Jessica Rose (*pro hac vice*)
WINSTON & STRAWN LLP                         QUINN EMANUEL URQUHART &
333 S. Grand Avenue, 38th Floor              SULLIVAN, LLP
Los Angeles, CA 90071                        51 Madison Avenue, 22nd Floor
Tel: (213) 615-1933                          New York, NY 10010
Email: eranahan@winston.com                  Tel: (212) 849-7192
                                             Email: toddanten@quinnemanuel.com
Michael L. Brody (*pro hac vice*)            Email: jessicarose@quinnemanuel.com
WINSTON & STRAWN LLP
35 W. Wacker Drive                           Charles K. Verhoeven (*pro hac vice*)
Chicago, IL 60601                            David Eiseman (*pro hac vice*)
Tel: (312) 558-5600                          Linda Brewer (*pro hac vice*)
E-mail: mbrody@winston.com                   Michelle A. Clark (*pro hac vice*)
                                             QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
                                             50 California Street, 22nd Floor
                                             San Francisco, CA 94111
                                             Tel: (415) 875-6600
                                             Email: charlesverhoeven@quinnemanuel.com
                                             Email: davideiseman@quinnemanuel.com
                                             Email: lindabrewer@quinnemanuel.com
                                             Email: michelleclark@quinnemanuel.com

                                             William J. Schifino, Jr.
                                             Florida Bar No. 564338
                                             GUNSTER, YOAKLEY & STEWART, P.A.
                                             401 E. Jackson Street, Suite 2500
                                             Tampa, FL 33602
                                             Tel: (813) 228-9080
                                             Email: bschifino@gunster.com

                                             *Counsel for Defendant*
                                             *Bright House Networks, LLC*

## <u>L.R. 3.01(g) CERTIFICATION OF COUNSEL</u>

Pursuant to Local Rule 3.01(g), counsel for Bright House conferred with counsel for Plaintiffs multiple times regarding the relief sought in this motion, and the parties were unable to reach agreement on resolution of the relief sought in this motion.  Counsel for Bright House contacted counsel for Plaintiffs before bringing this motion to provide notice of its filing but Plaintiffs declined to provide their position on the motion and therefore it appears the parties remain at an impasse.  In the event Plaintiffs change their position, Bright House will supplement this motion with a statement certifying whether the parties have resolved all or part of the motion, as called for by Local Rule 3.01(g)(3).  The parties conferred by means of email.


<u>/s/ Andrew H. Schapiro</u>
Andrew H. Schapiro

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 30, 2021, I caused a true and correct copy of the foregoing Motion to Compel and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro