**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>　　　　Plaintiffs,<br><br>*v.*<br><br>BRIGHT HOUSE NETWORKS, LLC<br><br>　　　　Defendant. | Case No. 8:19-cv-00710-MSS-TGW<br><br>████████████████████ |

### BRIGHT HOUSE NETWORKS, LLC'S RESPONSE TO PLAINTIFFS' APRIL 28, 2021 MOTION TO COMPEL AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs' motion to compel (Dkt. 272 ("Mot.")), which was filed with no advance notice to Defendant Bright House ("BHN") and without any meaningful attempt to meet and confer, highlights the unreasonable, scorched-earth approach to discovery Plaintiffs have taken in this litigation.  For many of the requests at issue in the motion, BHN had already run the agreed-upon search terms and produced the resulting responsive documents.  For others, no agreement was possible because Plaintiffs refused to even consider narrowing their original requests, despite the fact that the requests lack reasonable limitations and are cumulative of other discovery already provided.  In other instances, BHN offered reasonable compromises that Plaintiffs flatly rejected.  With respect to the remainder of the requests at issue, BHN maintains its position that the requests are improper and the motion to compel further responses should be denied.

## LEGAL STANDARD

"The court must limit the frequency or extent of discovery otherwise allowed …
[if] the discovery sought is unreasonably cumulative or duplicative, or can be obtained
from some other source that is more convenient, less burdensome, or less expensive."
Fed. R. Civ. P. 26(b)(2)(C); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d
1292, 1314 (11th Cir. 2011) (no abuse of discretion in denying motion to compel
discovery that was "overbroad, irrelevant, or redundant").

## ARGUMENT

### I.   Plaintiffs' RFPs Are Irrelevant, Cumulative, And/Or Overbroad.

Plaintiffs accuse BHN of having failed to produce an adequate volume of
communications purportedly relevant to three broad categories: (1) Plaintiffs'
contributory infringement claims, (2) BHN's safe harbor defense, and (3) statutory
damages.  Mot. 5.  BHN has in fact reviewed hundreds of thousands of documents in
response to Plaintiffs' requests and has produced the responsive documents identified
in the course of its review.[1]  For example, BHN applied the agreed-to search terms for
RFPs 95 and 33, reviewed tens of thousands of documents hitting on those terms, and
produced hundreds of responsive communications.  For the three requests at issue that
seek communications among BHN employees or with its subscribers, *see* RFPs 80, 64,
33, BHN has already produced all extant call notes logged in its ESAT system for
subscribers identified as having received an RIAA notice, and thousands of additional

---

[1]   In connection with its document productions in response to Plaintiffs' requests, BHN has already
reviewed over 218,000 documents in this litigation to date.

notes from ESAT that contain records and summaries of interactions with subscribers who received three or more notices from any complainant (a compromise proposal to which Plaintiffs agreed).[2]  And, for a number of the requests Plaintiffs identify, BHN had agreed to search for and produce the information Plaintiffs now seek to compel, and has completed its production.[3]

Unhappy with the results, Plaintiffs now seek to compel BHN to nearly double these efforts—at the end of the discovery period—by demanding the addition of eight new custodians and additional expansive and burdensome reviews.   Plaintiffs' overbroad, eleventh-hour demands ignore years of negotiations between the parties and are inconsistent with the requirements of the Federal Rules of Civil Procedure.

### A.   BHN Has Adequately Responded To RFPs 95 and 81.

RFP 95 seeks communications discussing the re-activation of accounts that were previously "terminated for violation of any policy relating to copyright infringement."  Pl. Ex. F at 56.  Plaintiffs claim that this information is relevant to determine whether BHN "had a 'nod-and-a-wink' policy of nominally terminating subscribers, but then quickly reinstating them and wiping clean their slate."  Mot. 9.

---

[2]   While Plaintiffs criticize BHN for the number of documents produced in this case, the statistics Plaintiffs have provided are misleading.  Mot. 1.  For instance, BHN has produced summaries of thousands of interactions between BHN and its subscribers from BHN's ESAT system, but Plaintiffs treat that production as only "one document" because the notes are contained in a single, data-rich Excel document containing thousands of separate rows.  Further, Plaintiffs' assertion that they have produced over 200,000 documents in the case (thereby eclipsing BHN's production) is also incorrect. *See, e.g.*, Mot. 1 n.1.  Aside from the notices of alleged infringement, Plaintiffs have only produced approximately 1,700 emails in this case (excluding families).

[3]   *See, e.g.*, Pl. Ex. H at 5 (agreeing to produce informal policies responsive to RFP 95); Pl. Ex. I at 3 (agreeing to produce materials responsive to RFP 126); Pl. Ex. I at 16 (agreeing to produce communications "beyond the accused subscribers" for RFP 33).

BHN already agreed to provide documents responsive to this request.  Indeed, Exhibit H to Plaintiffs' motion to compel is a letter in which BHN explains that "BHN's response was not intended to be (and was not) limited just to policies that were 'formally adopted,' but would include relevant policies, however characterized," and acknowledged that this approach was "fully consistent with the negotiated search terms that Plaintiffs proposed and BHN agreed to."  Pl. Ex. H at 5.  BHN ran the search terms the parties agreed upon, reviewed nearly 30,000 documents, and produced responsive communications.  If it were true that BHN had a formal policy stating one thing, but communicated an informal policy of doing another, this would be captured by these searches.  The fact that Plaintiffs are disappointed that they received only a few responsive documents is not a basis for a motion to compel.[4]

Likewise, BHN already agreed to produce all materials responsive to RFP 81. This request seeks "complaint reports" (reports generated in response to a customer request) associated with any accounts that received final warning letters.  Mot. 19. Plaintiffs suggest that BHN agreed to produce only those complaint reports related to subscribers identified in Plaintiffs' infringement notices, as opposed "to *all* of its subscribers."  Mot. 19.  But as BHN explained to Plaintiffs, BHN agreed to produce such reports to the extent they concern third-party complaints as well as Plaintiffs'

---

[4]    In the parallel proceeding in the District of Colorado, Plaintiffs' similar argument regarding Charter's production failed to persuade the Court. Ex. 1, *Warner Bros. Records, Inc. v. Charter Commc'ns, Inc.*, 1:19-cv-00874 (D. Colo.) ("*Charter*"), 2/22/21 Hr'g Tr. at 26:7-12 ("Do you believe they're hiding the ball on specific documents so effectively that among the 7,000 they've produced, they were so skilled at what they decided to produce, that they were able to avoid this one, little gold vein of stuff that would win your case?  Is that what you think?").

4

complaints.  *Id.*; *see also* Pl. Ex. I at 3.  That is, BHN did *not* limit its search to complaint reports involving only Plaintiffs' notices; instead it produced complaint reports for any accounts that received a final warning.  Nothing more is required by RFP 81.

## B.   Plaintiffs' Requests For "All Communications" Should Be Denied.

During the relevant period, BHN processed millions of notices of alleged infringement sent on behalf of Plaintiffs and other complainants, and forwarded the notices on to its subscribers.  Out of the millions of notices sent, Plaintiffs claim to have sent hundreds of thousands of notices to BHN during the approximately three-year claims period in this case.  *See* Dkt. 94, First Am. Compl. ¶ 2.  BHN employed a team of people and multiple technical systems to forward notices to its subscribers.

Through RFPs 126, 33, and 164, Plaintiffs now seek to compel "all communications" related to any notice ever received by BHN, including those unrelated to Plaintiffs.  To justify this grossly overbroad discovery, Plaintiffs claim that "documents showing how BHN actually implemented its policies are relevant and discoverable," and cite the Court's prior statement that notices of alleged infringement from non-party rights-holders may be "relevant in the broad sense."  Mot. 6-7; Pl. Ex. L at 22:9-12.[5]

Plaintiffs fail to articulate the link between this additional information and the

---

[5]   In conclusory fashion, Plaintiffs declare that "the requests below are also relevant to Plaintiffs' contributory infringement claim," and that "BHN must provide discovery relating to its state of mind."  Mot. 8.  Neither of these statements is accompanied by any explanation, much less support, linking the discovery to these issues.  *See id.*

purported purpose of the discovery. For instance, determining whether BHN reasonably "implemented its [copyright] policies" does not require that the parties review every communication related to millions of notices.[6] The Federal Rules of Civil Procedure require the opposite, limiting discovery that is "unreasonably cumulative or duplicative" and for which "the burden or expense … outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C). Given that BHN has produced thousands of notes summarizing interactions with subscribers who received notices during the relevant period, nothing further should be required, particularly as BHN would have to bear the burden and expense associated with the review and redaction of the personally identifying information of BHN's subscribers.[7] Plaintiffs' pursuit of more documents (indeed, hundreds of thousands more, at minimum) is the exact type of overbroad discovery the Federal Rules were designed to prohibit. *See, e.g.*, *Keys v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2019 WL 5080572, at *3 (M.D. Fla. Oct. 10, 2019) ("[T]he Court retains an obligation to limit discovery that is unreasonably cumulative or

---

[6]   Plaintiffs quote *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) for the proposition that such communications are relevant to determine whether BHN reasonably implemented a repeat infringer policy. Mot. 7. But here, BHN already provided ticket data showing its "actions towards copyright holders" by producing data identifying how BHN responded to thousands of notices sent by non-party rights-holders. Determining whether BHN reasonably implemented its copyright policies does not require the production of all communications. *See, e.g.*, *Perfect 10*, 488 F.3d at 1109 ("[A] service provider 'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications.").

[7]   The production of subscriber communications requires BHN to review and redact large amounts of personal identifying information, which is in and of itself a substantial burden. *See, e.g.*, *Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.*, 2010 WL 779494, at *4 (S.D. Ind. Feb. 26, 2010) (sustaining objection to discovery of materials that would require costly review and redaction); *see also* The Sedona Principles, Third Edition, 19 Sedona Conf. J. 1 at 163 (2018) ("Redactions or other actions necessary to protect private, personal information to meet required safeguards can be costly and time-consuming.").

duplicative" (quotations omitted)); *Jeld-Wen, Inc. v. Nebula Glass Int'l Inc.*, 2008 WL 11333404, at *9 (S.D. Fla. Mar. 12, 2008) (interrogatory was unduly burdensome where it sought details on all customer complaints and would require review of hundreds of thousands of documents).  BHN next addresses these three RFPs in turn.

### 1.    BHN Has Adequately Responded To RFP 126.

RFP 126 broadly requests all internal communications "discussing any Infringement Notice, any instance of alleged copyright infringement, or any 'ticket' generated in response to any Infringement Notice," including those "concerning the actual or potential termination of any Subscriber's account."  Pl. Ex. B at 6.  With respect to this request, BHN has already agreed to produce "communications regarding quarantining, suspending, or terminating any subscriber for receiving too many notices."  Pl. Ex. I at 3.  Further, as set forth below, BHN also agreed to produce "employee communications regarding Plaintiffs' notices" in response to RFP 33 as well as RFP 126.   In total, BHN has produced hundreds of communications after review of over 10,000 documents hitting on search terms for RFP 126.  That Plaintiffs have not found these communications helpful does not mean BHN is withholding information or should be required to engage in further burdensome document review.

### 2.    BHN Has Adequately Responded To RFP 33.

RFP 33 seeks all communications between BHN's Security and Abuse team and subscribers that relate to "any Infringement Notice," "violation of any DMCA policy," or "any 'ticket' generated in response to any Infringement Notice."  Pl. Ex. A at 9.  In response, BHN agreed to produce communications beyond just a subset of

communications with accused subscribers, including communications regarding the implementation of its DMCA policy, suspensions, and terminations.  Pl. Ex. I at 16. In so doing, BHN applied the parties' agreed-upon search terms, reviewed nearly 30,000 documents, and produced all responsive communications.  BHN also produced thousands of notes summarizing interactions between its Security and Abuse Team and subscribers who received notices on behalf of Plaintiffs and other rights-holders, all of which had to be reviewed for personally identifying information.

Plaintiffs' request for further subscriber communications (that by definition do not relate to BHN's DMCA policy, suspensions, or terminations) should be denied as irrelevant,[8] overbroad, and unduly burdensome.  As but one example of the request's overbreadth as written, it would require BHN to review, redact, and produce "auto-reply" vacation bounce-back messages from subscribers in receipt of an automated notification alleging that someone at that IP address allegedly shared copyrighted materials.  This burden cannot be justified.  BHN's current agreement to produce any subscriber communications regarding the hundreds of thousands of Plaintiffs' notices, as well as any subscriber communications reflecting BHN's implementation of its DMCA policy, suspensions, and terminations, provides more than enough for Plaintiffs to evaluate BHN's response to alleged copyright infringement on its network.

---

[8]   The Court should reject Plaintiffs' argument that the information requested in RFP 33 is relevant because a different district court in Texas relied upon internal communications of a different ISP defendant to reject that defendant's safe harbor defense.  *See UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 754-58 (W.D. Tex. 2019) ("*Grande*").  As written, RFP 33 seeks external communications between BHN's employees and its subscribers—the "internal emails" discussing company policies at issue in *Grande* are not even covered by this request, and have already been produced in response to RFP 95 in any event.

### 3.    RFP 64 Is Overbroad And Cumulative.

RFP 64 seeks additional information regarding BHN's interactions with its subscribers in very broad terms, demanding the production of documents reflecting "any calls" with subscribers.  However, as detailed above, BHN has already provided substantial information and documents regarding its subscribers receiving three or more notices, including "notes" held in its ESAT system in which BHN employees summarized their interactions with subscribers.  As specifically requested by Plaintiffs in RFP 80, BHN has also agreed to produce thousands of similar notes contained in its ICOMS system for subscribers who received a final warning letter.  Additionally, BHN has produced all records of calls in its ECAT system that concern any copyright infringement notices for subscribers identified as having received notices sent on behalf of Plaintiffs.  This is ample information for Plaintiffs' purposes and sufficiently enables Plaintiffs to determine how BHN "implemented its repeat infringer policies." Plaintiffs' motion to compel duplicative information of "any calls" with any subscriber receiving three or more notices should be denied as impermissibly overbroad and cumulative.  *See, e.g.*, *Keys*, 2019 WL 5080572, at *3 (denying cumulative discovery).

### C.    RFP 48 Seeks Discovery For A Claim That Has Been Dismissed.

RFP No. 48—which seeks "growth targets, strategic plans, and other strategies in which [BHN] linked higher bandwidths (internet download and upload speeds) to downloading music"—is directly related to Plaintiffs' vicarious liability claim and therefore is impermissible discovery, as that claim has been dismissed from the case. Indeed, in dismissing the claim, the Court noted that:

> Plaintiff[s] advance a sort of "dog-whistle" theory that BHN advertises faster internet speeds to surreptitiously entice the prospective infringer.  It is not readily apparent or plausibly alleged that an internet thief would be "drawn" by the efficiency of internet service any more than the average law-abiding purchaser of copyrighted content.  All users presumably seek faster, more reliable internet service.

Dkt. 142 at 12.

Plaintiffs' attempt to pursue its dismissed vicarious liability claim under the guise of a newly minted theory (*e.g.*, a claim that discovery into BHN's "internal strategies" to offer higher bandwidth to subscribers shows a state of mind to "profit off of its subscribers' copyright infringement") should be rejected.[9]  Mot. 20.  Plaintiffs provide no cognizable basis to link BHN's offer of higher bandwidth to its subscribers, which is a legitimate and legal endeavor, with an alleged intent to encourage copyright infringement.  Nor is Plaintiffs' request limited to "internal strategies" for offering higher bandwidth to those downloading music illegally or through peer-to-peer networks.  Instead, Plaintiffs seek to compel broad discovery based on the bald assertion that "[u]sers of P2P technologies benefit from ISPs that can provide higher bandwidth speeds to optimize their use of the technology." Mot. 20.  High bandwidth speeds benefit all BHN subscribers, and evidence that BHN generally wanted to increase its subscribers' bandwidth is not probative of an alleged intent to contribute to infringement.  This discovery should be foreclosed.

---

[9]   While Plaintiffs explain that a request similar to RFP 48 was allowed to go forward in *Warner v. Charter*, *see* Mot. 21, a vicarious liability claim still remains in that case.  Further, the Special Master in *Charter* granted the request "subject to certain conditions," one of which was for the parties to first determine the number of documents that hit on relevant search terms and, if the number was large, to return to the Special Master for guidance.  *Charter*, Dkt. 181 at 41-42 (May 29, 2020).

### D.     RFP 80 Is Moot.

Finally, with respect to RFP 80, BHN has agreed to produce information maintained in its ICOMS system noting interactions with customers who received a final warning letter.  BHN believes this should resolve the dispute regarding RFP 80.

## II.     BHN Complied With Production Obligations Related To RFP 59.

Plaintiffs' motion to compel a further response to RFP 59 should be rejected. BHN has complied in good faith with the Court's prior order on RFP 59.  Specifically, BHN compiled available information on average revenues per subscriber for various years and produced the information to Plaintiffs.  Pl. Ex. P at 44-45.  When Plaintiffs followed up to request an explanation as to why the revenues did not date back to 2012, *see* Pl. Ex. Q at 3, counsel for BHN promptly explained that BHN either did not compile the requested information for the 2012-2013 time period or no longer had it available.  *Id.* at 2.  Counsel for BHN specifically explained that BHN would continue to look for materials responsive to the request and search other potential repositories for non-duplicative information and produce what it could find, if anything.  *Id.*  The email chain reflecting that conferral process, cited by Plaintiffs as Exhibit Q, occurred nearly six months ago.  It shows that BHN undertook a diligent search for the information and, although able to produce information for 2014 to 2018, was unable to find the same information for other years requested.  Pl. Ex. Q at 2.

To the extent Plaintiffs now seek all documents used to compile the information provided by BHN, their request should be denied.  The underlying documents from which the information was derived contain highly sensitive financial information

11

wholly irrelevant to BHN's copyright policies or the information Plaintiffs seek, including budgeting information related to employee headcount, expenses, and capital investment. *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 222 (N.D. Ill. 2013) ("Withholding and redacting documents that are non-responsive to Defendants' document requests is appropriate."). And BHN already provided over 100,000 lines of data on revenues generated specific to the accused subscribers. An eleventh hour demand for more data from BHN is unwarranted.

## III.   Plaintiffs' Demand for Additional Custodians Should Be Rejected.

Two months from the close of fact discovery, Plaintiffs ask this Court to compel BHN to add eight new document custodians simply because Plaintiffs posit that the custodians are "likely to have discoverable information." Mot. 22. Plaintiffs' conclusory allegations do not support this request. Should the Court be inclined to entertain this type of late discovery, notwithstanding Plaintiffs' failure to meet their burden, BHN will agree as a compromise to add five new document custodians requested by Plaintiffs:   Bruce Jones (former Director of Online Solutions Development), Gary Doda (former Senior Manager Technical Communications & Customer Forums), Kathleen Rowett-O'Neil (former Corporate Customer Relations Advocate), Chris Droessler (former Principal Software Engineer), and Trace Hollifield (former Director of Enterprise Security), although BHN maintains that targeted

searches of these individuals' files is more appropriate than applying all search terms.[10]

However, BHN opposes Plaintiffs' request to add Nomi Bergman (former President of BHN), Steve Miron (former Chief Executive Officer of BHN), and William Futera (former Executive Vice President and Chief Financial Officer of BHN) as document custodians. These senior executives are unlikely to possess unique information that has not otherwise been (or will be) produced to Plaintiffs and the burden on BHN of reviewing and producing their documents outweighs any benefit to Plaintiffs. Plaintiffs' mere speculation that a senior executive *may* possess relevant information is not sufficient to justify adding high-level executives as document custodians. Fed. R. Civ. P. 26(b) (where "the discovery sought is unreasonably cumulative or duplicative or if the burden of the proposed discovery outweighs the likely benefits," a court must limit the scope of discovery).

## A.   Plaintiffs Misstate The Procedural History Of The Dispute.

In May 2020, BHN agreed to produce documents from ten document custodians in this case, which included all BHN employees identified in its initial disclosures and in response to Plaintiffs' Interrogatory No. 1. In November 2020, Plaintiffs made a new demand for additional custodians. After several months of conferring by email, during which Plaintiffs inflexibly refused to add certain custodians on its end while demanding more from BHN, BHN offered to run certain

---

[10]   While BHN does not agree that Plaintiffs have met their burden to show that these five custodians possess information relevant to the issues in dispute in this litigation, each of these custodians was more closely involved in the day-to-day operations of BHN's DMCA program—and the claims at issue—than Ms. Bergman, Mr. Miron, or Mr. Futera.

targeted searches but explained to Plaintiffs that a request to run all existing search terms across four new document custodians—Nomi Bergman, Gary Doda, Bruce Jones, and Kathleen Rowett-O'Neil—was unwarranted due in part to the breadth of the request as well as the late stage of the proceedings.  Pl. Ex. J.  Instead of accepting that compromise, on February 11, 2021 Plaintiffs demanded that BHN add another four custodians—Steve Miron, William Futera, Christopher Droessler, and Trace Hollifield—and again insisted that BHN "run all of the negotiated and agreed-upon search terms" against these individuals' files.  Pl. Ex. K.  Rather than making any further attempts to meet and confer, Plaintiffs moved to compel the addition of all eight custodians almost three months later.[11]  Plaintiffs have not provided any legitimate basis to nearly double the number of custodians at this late stage.

### B.    Plaintiffs Have Not Shown That Ms. Bergman, Mr. Miron, Or Mr. Futera Possess Unique, Relevant Information.

Plaintiffs acknowledge they are required to show that adding new custodians is necessary to provide "unique relevant information not already obtained."  Mot. 23 (citing *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 4501794, at *1 (N.D. Fla. Aug. 5, 2020)).  Plaintiffs have not done so.  Instead, Plaintiffs simply assert that Ms. Bergman, Mr. Miron, and Mr. Futera may possess "relevant" information due to their senior positions at BHN.  Mot. 24-25.  This type of speculative assertion is not

---

[11]    Plaintiffs never followed up on its February 11, 2021 request before filing the present motion.  As a result, and contrary to Plaintiffs' Local Rule 3.01(g) Certification, the parties did not confer regarding Plaintiffs' request to add Steve Miron, William Futera, Christopher Droessler and Trace Hollifield as custodians.

enough to justify the fishing expedition.  *See, e.g.*, *Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (rejecting argument that specific individuals must be included as custodians because they occupied senior roles); *Houston v. Papa John's Int'l, Inc.*, 2020 WL 6588505, at *2-3 (W.D. Ky. Oct. 30, 2020) (rejecting speculation that high-ranking position increases relevance of custodial files).

### 1.    Nomi Bergman

Nomi Bergman is the former President of BHN.  She left the company at the time of BHN's merger with Charter in May 2016.  She is currently a senior officer of Advance Publications, the prior owner of BHN.  Plaintiffs argue that Ms. Bergman was "intimately involved" with BHN's DMCA program (Mot. 24), but the documents cited by Plaintiffs do not support this assertion.

For example, BHN_00001561 does not reflect Ms. Bergman's so-called intimate involvement in BHN's DMCA program but shows a senior executive referring an inquiry about that program to a more appropriate employee—Marva Johnson (who is already a document custodian in this case).  *See* Pl. Ex. P at BHN_00001561. Similarly, BHN_00001563 does not show Ms. Bergman "direct[ing]" BHN's responses to questions about its DMCA program.  It is simply the email attached to BHN_00001561, which Ms. Bergman referred to Ms. Johnson.  To the extent responsive documents exist regarding BHN's DMCA program, these documents have already been produced to Plaintiffs through document custodians who were members of the Security and Abuse team and directly involved in the processing and handling of notices alleging copyright infringement, including Tim Frendberg, Michael

Tomasullo, Jeff Coleman, Ashley Ferrar, Robert Kuszmar, Jason Liebold, and Leonard Neely.

Further, Plaintiffs' assertion that Ms. Bergman "received elevated calls regarding abuse violations" is not supported by the evidence. In support of this assertion, Plaintiffs cite a *filename*: ███████████████████████ Pl. Ex. P at BHN_00001409. But the filename that Plaintiffs rely upon refers to ███████ ████████████████████████████████████████████ ███████████ and which have no connection to alleged copyright infringement, subscriber abuse, or BHN's ISP services. Further, Plaintiffs admit that Ms. Bergman was one of multiple recipients of the monthly "Customer Care" reports, such as BHN_00001651, which were sent to dozens of people (including existing document custodians in this case). Mot. 24. To the extent Plaintiffs seek documents regarding "statistics on the total number of complaints received during a month's period and the total number of responsive actions taken," such statistics and reports have been produced from existing documents custodians, including Tim Frendberg, Bill Futch, and Marva Johnson. Notably, Plaintiffs do not allege that certain "Customer Care" reports (let alone other documents) have not been produced because Ms. Bergman is not a custodian.

Plaintiffs' suggestion that BHN has "selectively" produced materials from Ms. Bergman's files is also wrong and undercuts their request that she be added as a custodian. BHN's production of a small number of the files Ms. Bergman sent or received indicates her limited involvement in matters relevant to this case and shows

that, to the extent she had any involvement, any materials from her files have already been captured by existing custodians.[12]  *See Lauris v. Novartis AG*, 2016 WL 7178602, at *4-5 (E.D. Cal. Dec. 8, 2016) (denying discovery duplicative of that produced from lower-level custodians).  For example, as a result of searching the files of the existing BHN custodians (all of whom have some connection to the matters at issue in this dispute), BHN has reviewed nearly ▮ documents that overlap with Ms. Bergman's custodial collection.  Of these, only ▮ documents (approximately ▮%) were responsive and have been produced to Plaintiffs.[13]  Nothing suggests that a separate search of her files for materials that *do not* include other relevant personnel will result in a higher responsiveness rate and, as discussed below, the opposite is likely true.

### 2.    Steve Miron and William Futera

Steve Miron is the former Chief Executive Officer of BHN.  He left the company at the time of BHN's merger with Charter in May 2016.  He is currently a senior officer of Advance Publications, the prior owner of BHN.  William Futera is the former Chief Financial Officer of BHN.  He left the company in May 2015.

Plaintiffs attempt to justify searching the custodial files for BHN's CEO and

---

[12]   Plaintiffs' assertion that Ms. Bergman "is particularly likely to possess communications not yet produced because she held a more senior position than the existing custodians" (Mot. 24) is based only on speculation and Plaintiffs do not even attempt to describe what those "communications" might include or their relevance.

[13]   Similarly, approximately ▮ documents were reviewed that overlapped with Mr. Miron's files with a resulting ▮ responsive documents produced (▮%) and approximately ▮ documents were reviewed that overlapped with Mr. Futura's files, resulting in ▮ responsive documents produced (▮%).

CFO because these senior executives were "likely aware of and participated in decisions related to how BHN would handle [alleged] copyright infringement." Mot. 24. This bare assertion does not discharge Plaintiffs' burden to show that those executives possess unique information relevant to the claims and defenses in this case. *See, e.g.*, *BlackBerry Ltd. v. Facebook, Inc.*, 2019 WL 4544425, at *6-7 (C.D. Cal. Aug. 19, 2019) (denying request for CEO as document custodian where plaintiffs could not show importance in resolving the issues in the case); *Lutzeier v. Citigroup Inc.*, 2015 WL 430196, at *7 (E.D. Mo. Feb. 2, 2015) (denying request for CEO and CFO as document custodians). Plaintiffs' request should be rejected for this reason alone.

The documents cited by Plaintiffs do not assist them either. As with Ms. Bergman, Plaintiffs seek to justify their request because Messrs. Miron and Futera received "Customer Care" reports. Plaintiffs also purport to rely on unsolicited correspondence sent from third-party Rightscorp to BHN's executives (in addition to BHN's copyright agent) to suggest that Messrs. Miron and Futera "appear to have participated in meetings regarding copyright infringement on BHN's network," even though the document does not refer to any meetings ever taking place. Mot. 25. These arguments do not support Plaintiffs' extraordinary request to add BHN's highest level executives as discovery custodians at the eleventh hour. *See Papa John's*, 2020 WL 6588505, at *2-3.

## C.    The Demand Is Not Proportional To The Needs Of The Case.

Additionally, Plaintiffs ignore the substantial burden that would be associated with the review and production of documents from these three custodians at this late

stage in fact discovery.  To aid the Court's analysis of burden, BHN has run all of Plaintiffs' broad search terms over the custodial data for these three custodians. Plaintiffs' search terms hit on approximately ████ unique documents.  Even a cursory review shows many of the "hits" on these custodial files are false (*i.e.*, hits that yield non-responsive documents).  For example, more than ███ documents hit on one of Plaintiffs' search terms because they contain an email footer beginning with: "CONFIDENTIALITY *NOTICE*" (emphasis added, "notice" being one of Plaintiffs' search terms) and one other broad search term (for example, the footer combined with the search terms "capability," "hold," "block," "restrict," and/or "ignore").[14] Specifically in the context of the custodial records for these executive custodians, Plaintiffs' search terms are capturing large numbers of documents entirely unrelated to the issues in this case, including ███████████████████████ ███████████████████████████████████████████████████ ████████████ .

Simply put, the burden on BHN in having to review these documents is not proportional to the needs of the case.  Given the impending close of fact discovery, and the need to conduct depositions before that date, reviewing approximately ████ documents would take an estimated 1,300 hours for a team of 20 reviewers and a review manager to complete (excluding any second-level review, privilege log, or

---

[14]   Plaintiffs' full search term string is: ("Notice" or "complaint" or "claim" or "notif*" or infring* or ECAT or ticket or tkt or DMCA) and ("cap*" or "reject*" or (roll* w/3 up) or "hold*" or "limit*" or "block*" or blacklist* OR whitelist* OR restrict* OR quota* OR ignore* OR bundl*).

redaction review).   Courts do not hesitate to deny motions to compel in such circumstances.  *See, e.g.*, *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 94 (D.D.C. 2017) (denied on burden grounds where completing a search with a 99.5% non-responsive rate would take 150 hours).

### D.   BHN's ESI Loss Does Not Justify Plaintiffs' Fishing Expedition.

Finally, there is no basis for Plaintiffs' assertion that BHN's disclosure of ESI loss for certain custodians requires the late addition of these three custodians.  Mot. 25.  In September 2020, after its original disclosure of the e-mail loss, BHN informed Plaintiffs that it had located almost ███████ of additional e-mail data.  Ex. 2.  BHN has searched the total volume of ███████ records within the newly identified data for messages sent or received by its existing discovery custodians using Plaintiffs' search terms and produced responsive documents to Plaintiffs.  *See* Ex. 3.  That BHN suffered ESI loss—which it has addressed by expanding its search for responsive documents—is not a basis to compel the production of custodial documents from these executives.  Moreover, Plaintiffs have not sought any relief under Rule 37(e) and thus cannot compel additional discovery on this basis without satisfying the requirements of that Rule, which BHN maintains they cannot do.  *See* Fed. R. Civ. P. 37(e).

### CONCLUSION

For the foregoing reasons, BHN respectfully requests that the Court deny Plaintiffs' motion to compel.

Dated: May 19, 2021

Respectfully submitted,

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Tel: (415) 591-1506
Email: jgolinveaux@winston.com

Michael S. Elkin (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Email: melkin@winston.com

Erin R. Ranahan (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
Tel: (213) 615-1933
Email: eranahan@winston.com

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro (*pro hac vice*)
Allison Huebert (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Email: andrewschapiro@quinnemanuel.com
Email: nathanhamstra@quinnemanuel.com
Email: allisonhuebert@quinnemanuel.com

Todd A. Anten (*pro hac vice*)
Jessica Rose (*pro hac vice*)
Katy Akopjan (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7192
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com
Email: katyakopjan@quinnemanuel.com

Charles K. Verhoeven (*pro hac vice*)
David Eiseman (*pro hac vice*)
Linda Brewer (*pro hac vice*)
Michael F. Trombetta (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com
Email: michelleclark@quinnemanuel.com
Email: miketrombetta@quinnemanuel.com

William J. Schifino, Jr.
Florida Bar No. 564338
GUNSTER, YOAKLEY & STEWART, P.A.
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
Tel: (813) 228-9080
Email: bschifino@gunster.com

*Counsel for Defendant*
*Bright House Networks, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 19, 2021, I caused a true and correct copy of the foregoing BRIGHT HOUSE NETWORKS, LLC'S RESPONSE TO PLAINTIFFS' APRIL 28, 2021 MOTION TO COMPEL AND INCORPORATED MEMORANDUM OF LAW and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro