## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

      Plaintiffs,

*v.*

BRIGHT HOUSE NETWORKS, LLC

      Defendant.

Case No. 8:19-cv-00710-MSS-TGW

### BRIGHT HOUSE NETWORKS, LLC'S RESPONSE TO
### PLAINTIFFS' JUNE 2, 2021 MOTION TO COMPEL

Plaintiffs' Motion to Compel (Dkt. 287 ("Motion")), filed nine days after the
Court's denial of their prior motion regarding the same discovery requests, continues
to highlight the scorched-earth approach to discovery Plaintiffs have taken in this
litigation.  Notably, their prior motion ("Original Motion) included a number of
"disputes" that BHN had already agreed to resolve, or would have agreed to resolve,
had Plaintiffs actually made an effort to confer with BHN as the local rules require.
And three written discovery requests have now been dropped from this Motion
because BHN's response to the Original Motion and subsequent meet and confer
revealed no dispute actually existed.

The requests that remain at issue are overly broad and cumulative of other
discovery already provided.  Plaintiffs admit BHN offered to run targeted searches
intended to focus on the information Plaintiffs claim to be lacking from BHN's
responses, but Plaintiffs unreasonably "declined to engage further" in the conferral

process.  Mot. 6.  BHN agrees the parties are at impasse on the remaining requests, but only because, for nearly all of the requests, Plaintiffs refused to consider any narrowing of the requests' original and unworkable terms, such as in RFP No. 126, which seeks internal communications discussing "any" of the millions of notices of alleged infringement BHN received during the discovery period (the vast majority of which were not sent by or on behalf of Plaintiffs).  Plaintiffs' relevancy justification for this unlimited discovery is insufficient to overcome the burden inherent in producing the universe of discovery they seek.  Plaintiffs' Motion should be denied.

## LEGAL STANDARD

"The court must limit the frequency or extent of discovery otherwise allowed … [if] the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011) (no abuse of discretion in denying motion to compel discovery that was "overbroad, irrelevant, or redundant").

## ARGUMENT

### I.   Plaintiffs' RFPs Are Irrelevant, Cumulative, And/Or Overbroad.

Contrary to Plaintiffs' complaints about the sufficiency of BHN's document production,[1] BHN has reviewed hundreds of thousands of documents in response to

---

[1]   While Plaintiffs criticize BHN for the number of documents produced in this case, the statistics Plaintiffs have provided are misleading.  Mot. 1.  For instance, BHN has produced summaries of thousands of interactions between BHN and its subscribers from BHN's ESAT system, but Plaintiffs treat that production as only "one document" because the notes are contained in a single, data-rich

Plaintiffs' requests and has produced the responsive documents identified in the course of its review.[2]  Unhappy with the results, Plaintiffs now seek to compel BHN to expand discovery efforts further—at the end of the discovery period—by demanding additional expansive and burdensome reviews.  Plaintiffs' overbroad, eleventh-hour demands ignore years of negotiations between the parties and are inconsistent with the requirements of the Federal Rules of Civil Procedure.

### A.   Plaintiffs' Requests For "All Communications" Should Be Denied.

During the relevant period, BHN processed millions of notices of alleged infringement some of which were sent to BHN on behalf of Plaintiffs, while others were sent by unrelated parties.  Out of these millions of notices, Plaintiffs claim to have sent hundreds of thousands of notices to BHN during the approximately three-year claims period in this case.  *See* Dkt. 94, First Am. Compl. ¶ 2.  BHN employed a team of people and multiple technical systems to forward notices to its subscribers.

Through RFPs 126, 33, and 64, Plaintiffs now seek to compel "all communications" related to "any" notice ever received by BHN, including the millions of notices unrelated to Plaintiffs or the works-in-suit.  To justify this grossly overbroad discovery, Plaintiffs claim that "documents showing how BHN actually implemented its policies are relevant and discoverable," and cite the Court's

---

Excel document containing thousands of separate rows.  Further, Plaintiffs' assertion that they have produced over 200,000 documents in the case (thereby eclipsing BHN's production) is also misleading.  *See, e.g.*, Mot. 1 n.1.  Aside from the notices of alleged infringement, Plaintiffs have only produced approximately 1,700 emails in this case (excluding families).

[2]   In response to Plaintiffs' requests, BHN has reviewed over 218,000 documents.

September 24, 2020, statement that notices of alleged infringement from non-party rights-holders may be "relevant in the broad sense."  Mot. 8; Pl. Ex. L at 22:9-12.[3] However, just last week during the June 10, 2021 discovery hearing, the Court denied BHN's motion to compel responses to certain requests for admissions on the grounds that admissions related to notices associated with non-asserted works are irrelevant and such evidence would not be admissible at trial.  *See, e.g.*, Ex. 1, June 10, 2021, Hr'g Tr. 59:13-22, 61:10-15.  Because BHN has been foreclosed from taking discovery related to notices associated with non-asserted works, which discovery BHN would need in order to defend itself if Plaintiffs were permitted to broaden the scope of the case beyond the works-in-suit, the principles of fairness and equity warrant denial of RFPs 126, 33, and 64.

Additionally, Plaintiffs fail to articulate the link between the vast amount of additional information they seek and the claims or defenses in this case.  For instance, determining whether BHN reasonably "implemented its [copyright] policies" does not require that the parties review every communication related to millions of notices associated with non-asserted works.[4]  The Federal Rules of Civil Procedure require the

---

[3]    In conclusory fashion, Plaintiffs declare that "the requests below are also relevant to Plaintiffs' contributory infringement claim," and that "BHN must provide discovery relating to its state of mind." Mot. 9-10.  Neither of these statements is accompanied by any explanation, much less support, linking the discovery to these issues.  *See id.*

[4]    Plaintiffs quote *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) for the proposition that such communications are relevant to determine whether BHN reasonably implemented a repeat infringer policy.  Mot. 9.  But here, BHN already provided ticket data showing its "actions towards copyright holders" by producing data identifying how BHN responded to thousands of notices sent by non-party rights-holders.  Determining whether BHN reasonably implemented its copyright policies does not require the production of all communications.  *See, e.g.*, *Perfect 10*, 488 F.3d at 1109

4

opposite, limiting discovery that is "unreasonably cumulative or duplicative" and for which "the burden or expense … outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1)-(2)(C).  Given that BHN has produced thousands of notes summarizing interactions with subscribers who received notices during the relevant period, nothing further is required, particularly as BHN would have to bear the burden and expense associated with the review and redaction of the personally identifying information of BHN's subscribers.[5]  Plaintiffs' pursuit of cumulative documents showing similar interactions is the exact type of overbroad discovery the Federal Rules were designed to prohibit. *See, e.g.*, *Keys v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2019 WL 5080572, at *3 (M.D. Fla. Oct. 10, 2019) ("[T]he Court retains an obligation to limit discovery that is unreasonably cumulative or duplicative" (quotations omitted)); *Jeld-Wen, Inc. v. Nebula Glass Int'l Inc.*, 2008 WL 11333404, at *9 (S.D. Fla. Mar. 12, 2008) (interrogatory was unduly burdensome where it sought details on all customer complaints and would require review of hundreds of thousands of documents).  BHN next addresses these three RFPs in turn.

---

("[A] service provider 'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications.").

[5]   The production of subscriber communications requires BHN to review and redact large amounts of personal identifying information, which presents a substantial burden.  *See, e.g.*, *Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.*, 2010 WL 779494, at *4 (S.D. Ind. Feb. 26, 2010) (sustaining objection to discovery of materials that would require costly review and redaction); *see also* The Sedona Principles, Third Edition, 19 Sedona Conf. J. 1 at 163 (2018) ("Redactions or other actions necessary to protect private, personal information to meet required safeguards can be costly and time-consuming.").

### 1.    BHN Has Adequately Responded To RFP 126.

RFP 126 broadly requests all internal communications "discussing any Infringement Notice, any instance of alleged copyright infringement, or any 'ticket' generated in response to any Infringement Notice," including those "concerning the actual or potential termination of any Subscriber's account."  Pl. Ex. B at 5.  BHN has already agreed to produce "communications regarding quarantining, suspending, or terminating any subscriber for receiving too many notices."  Pl. Ex. I at 3.  Further, BHN also agreed to produce "employee communications regarding Plaintiffs' notices" in response to several of Plaintiffs' RFPs.  In total, BHN has produced hundreds of communications after review of over 10,000 documents hitting on search terms for RFP 126.  That Plaintiffs have not found these helpful to their case does not mean BHN should be required to engage in further burdensome review and redaction.

Plaintiffs manufacture controversy by suggesting BHN's review and production excludes "communications in which BHN *failed* to implement its repeat infringer policy."  Mot. 12.  But as BHN explained during the parties' June 1, 2021 meet and confer, BHN's review considered communications to be responsive that discussed ***whether or not*** to quarantine, suspend, or terminate an account receiving notices of alleged infringement.   And Plaintiffs' argument that they need internal communications relating to millions of non-party notices beyond that scope does not follow.  For example, Plaintiffs explain that in another case, an ISP sent emails "in which [it] repeatedly warned customers about infringing activity but declined to terminate," which showed a "failure to reasonably implement [a] repeat infringer

policy." Mot. 12. But emails sent to subscribers are not sought by Request No. 126, which is limited to *internal* communications. Regardless, in response to other requests, BHN has already provided thousands of call notes summarizing interactions with subscribers, along with ticket data detailing the actions it took for all subscribers who received three or more notices of alleged infringement from *any* complainant, which provides exactly the information about BHN's implementation of its policies that Plaintiffs now claim to need.

### 2. BHN Has Adequately Responded To RFP 33.

RFP 33 seeks all communications between BHN's Security and Abuse team and subscribers that relate to "any Infringement Notice," "violation of any DMCA policy," or "any 'ticket' generated in response to any Infringement Notice." Pl. Ex. A at 9. To assuage Plaintiffs' concerns regarding BHN's original response, which limited production to Plaintiffs' notices, BHN agreed to produce additional communications, including those regarding the implementation of its DMCA policy, suspensions, and terminations generally. Pl. Ex. I at 16. In so doing, BHN applied the parties' agreed-upon search terms, reviewed nearly 30,000 documents, and produced all responsive communications. BHN also produced thousands of call notes summarizing interactions between its Security and Abuse Team and subscribers who received notices on behalf of Plaintiffs and other rights-holders, all of which had to be reviewed for personally identifying information.

Plaintiffs' request for further subscriber communications beyond those related to BHN's DMCA policy, suspensions, or terminations should be denied as irrelevant,

overbroad, and unduly burdensome.[6]  Indeed, Plaintiffs' motion once again attempts to manufacture controversy where there is none:  during the parties' June 1, 2021 meet and confer, BHN explained that it did not limit its review to instances in which its DMCA policy, suspensions, or terminations were actually implemented, but considered responsive and produced any correspondence relating to the implementation of its DMCA policy, whether or not BHN actually suspended or terminated the subscribers who were the subject of the communications.

That Plaintiffs' agreed search terms did not uncover the substance Plaintiffs hoped for does not mean BHN failed to adequately search.  As explained above and below, BHN has also provided Plaintiffs with thousands of notes from its various systems summarizing interactions with subscribers receiving notices, and has produced ticket data showing exactly which actions BHN took in response.  The idea that Plaintiffs do not have the information they need to determine "instances where BHN *should have* implemented its policy, or terminated or suspended a subscriber, but did not" is simply untrue.  *See* Mot. 14-16.  Moreover, for obvious reasons, communications with subscribers contain personally identifying information that must be reviewed and redacted, and Plaintiffs offer nothing to justify imposing this additional burden on BHN in light of the communications already produced.

---

[6]   The Court should reject Plaintiffs' argument that the information requested in RFP 33 is relevant because a different district court in Texas relied upon internal communications of a different ISP defendant to reject that defendant's safe harbor defense.  *See UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 754-58 (W.D. Tex. 2019) ("*Grande*").  As written, RFP 33 seeks external communications between BHN's employees and its subscribers—the "internal emails" discussing company policies at issue in *Grande* are not even covered by this request, and have already been adequately produced in response to other RFPs, such as Nos. 95 and 126.

### 3. RFP 64 Is Overbroad And Cumulative.

RFP 64 seeks information regarding BHN's interactions with its subscribers in the broadest possible terms, demanding the production of documents reflecting "any calls" with subscribers identified in any notices, including non-party notices. However, BHN has already provided or agreed to provide (1) call notes in its ESAT system for any subscribers who received three or more notices, as well as any subscribers who received notices sent on behalf of Plaintiffs; (2) in its response to RFP 80, thousands of notes contained in its ICOMS system for subscribers who received a final warning letter; and (3) all records of calls in its ECAT system that concern any notices of alleged infringement for subscribers identified as having received notices sent on behalf of Plaintiffs.[7]  All three sets of information contain summaries of calls between BHN employees and subscribers regarding notices of alleged infringement. These three data sets are more than sufficient for Plaintiffs to determine how BHN "implemented its repeat infringer policies."  Mot. 17.  Plaintiffs' motion to compel further information should be denied as impermissibly overbroad and cumulative.  *See, e.g.*, *Keys*, 2019 WL 5080572, at *3 (denying cumulative discovery).

Regardless of how Plaintiffs characterize their request for additional ECAT data, they cannot dispute that it would require BHN to review and redact thousands

---

[7]  During the claims period, BHN used two systems to respond to notices of alleged infringement, known by the acronyms ESAT and ECAT.  The ECAT system was developed later in time and its subscriber interaction fields were more automated than the older ESAT system.  A third system, ICOMS, was BHN's primary billing system, but it was also used to notate and store interactions with subscribers.

of additional notes.  That BHN has agreed to do this for thousands of call notes already is not license to demand that BHN continue to review and redact further duplicative and cumulative call notes *ad infinitum*.

### B.    RFP 48 Seeks Discovery For A Claim That Has Been Dismissed.

RFP No. 48—which seeks "growth targets, strategic plans, and other strategies in which [BHN] linked higher bandwidths (internet download and upload speeds) to downloading music," Mot. 19—is directly related to Plaintiffs' vicarious liability claim and therefore is impermissible discovery, as that claim has been dismissed from the case.  Indeed, in dismissing the claim, the Court noted that:

> Plaintiff[s] advance a sort of "dog-whistle" theory that [BHN] advertises faster internet speeds to surreptitiously entice the prospective infringer.  It is not readily apparent or plausibly alleged that an internet thief would be "drawn" by the efficiency of internet service any more than the average law-abiding purchaser of copyrighted content.  All users presumably seek faster, more reliable internet service.

Dkt. 142 at 12.

Plaintiffs' attempt to pursue its dismissed vicarious liability claim under the guise of a newly minted theory (*e.g.*, a claim that discovery into BHN's "internal strategies" to offer higher bandwidth to subscribers shows a state of mind to "profit off of its subscribers' copyright infringement") should be rejected.[8]  Mot. 20.  Plaintiffs provide no reasonable basis to link BHN's offer of higher bandwidth to its subscribers, which is a legitimate and legal service, with an alleged intent to encourage copyright

---

[8]    While Plaintiffs explain that a request similar to RFP 48 was allowed to go forward in *Warner v. Charter*, *see* Mot. 20, a vicarious liability claim still remains in that case.  Further, the Special Master in *Charter* granted the request "subject to certain conditions," one of which was for the parties to first determine the number of documents that hit on relevant search terms and, if the number was large, to return to the Special Master for guidance.  *Charter*, Dkt. 181 at 41-42 (May 29, 2020).

infringement.  High bandwidth speeds benefit all BHN subscribers, and evidence that BHN generally wanted to increase its subscribers' bandwidth is not probative of an alleged intent to contribute to infringement.  This discovery should be foreclosed.

## II.     BHN Complied With Production Obligations Related To RFP 59.

Plaintiffs' motion to compel a further response to RFP 59 should be rejected. BHN has complied in good faith with the Court's prior order on RFP 59 by compiling available information on average revenues per subscriber and producing the information to Plaintiffs.  Pl. Ex. P at 23-24.  When Plaintiffs followed up to request an explanation as to why the revenues did not date back to 2012, *see* Pl. Ex. Q at 3, counsel for BHN promptly explained that BHN either did not compile the requested information for the 2012-2013 time period or no longer had it available.  *Id*. at 2. Counsel for BHN explained that BHN would search other potential repositories for information for those years and produce what it could find, if anything.  *Id*.  The email chain reflecting that conferral process, cited by Plaintiffs as Exhibit Q, occurred nearly six months ago.  It shows that BHN undertook a diligent search for the requested revenue information and produced it to the extent it was reasonably available.  Pl. Ex. Q at 2.

Plaintiffs now seek all documents used to compile the information provided by BHN.  That request should be denied.  The underlying documents from which the information was derived contain highly sensitive financial information wholly irrelevant to this dispute, including budgeting information related to employee headcount, expenses, and capital investment.  *RBS Citizens, N.A. v. Husain*, 291 F.R.D.

209, 222 (N.D. Ill. 2013) ("Withholding and redacting documents that are non-responsive to Defendants' document requests is appropriate."). And BHN already provided over 100,000 lines of data on revenues generated specific to the accused subscribers. An eleventh hour demand for the additional underlying data is not proportional to the needs of the case.

## III.   Plaintiffs' Demand for Additional Custodians Should Be Rejected.

Plaintiffs' Original Motion requested eight new custodians. Dkt. 272 at 22. BHN agreed as a compromise to meet Plaintiffs more than halfway by adding five of those requested, although it maintained that Plaintiffs had not met their burden to show that these five custodians possess information relevant to the issues in dispute. *See* Dkt. 282 at 13 n.10. In response, Plaintiffs have offered no compromise, instead demanding that the Court compel BHN to include the remaining three. Going further (and highlighting their scorched earth approach to discovery), Plaintiffs seek to use BHN's good faith efforts to compromise against it: they argue that BHN's statements at the June 1, 2021 meet and confer, including its suggestion that the parties might reach agreement on more limited searches of the proposed custodians' files, are evidence that the "Court should order BHN to produce the custodial files of these individuals." Mot. 23.

But Plaintiffs do not and cannot justify addition of these custodians. Indeed, Plaintiffs' Motion, which comes less than two months prior to the close of fact discovery, posits only that the custodians are "likely to have discoverable information." Mot. 22. BHN disagrees. The custodians—Nomi Bergman (former

President of BHN), Steve Miron (former Chief Executive Officer of BHN), and William Futera (former Executive Vice President and Chief Financial Officer of BHN)—are senior executives unlikely to possess unique information, and the burden on BHN of reviewing and producing their documents outweighs any benefit to Plaintiffs. Plaintiffs' mere speculation that a senior executive *may* possess relevant information is not sufficient to justify adding high-level executives as document custodians. Fed. R. Civ. P. 26(b) (where "the discovery sought is unreasonably cumulative or duplicative" or if "the burden of the proposed discovery outweighs the likely benefits," a court must limit the scope of discovery).

### A.      Plaintiffs Misstate The Procedural History Of The Dispute.

In May 2020, BHN agreed to produce documents from ten custodians, which included all BHN employees identified by BHN in its initial disclosures and in response to Plaintiffs' Interrogatory No. 1. In November 2020, Plaintiffs made a new demand for additional custodians. After several months of conferring by email, during which Plaintiffs inflexibly refused to add certain custodians on their end while demanding more from BHN, BHN offered to run certain targeted searches but explained to Plaintiffs that a request to run all existing search terms across four new custodians was unwarranted due to the breadth of the request as well as the late stage of the proceedings. Pl. Ex. J at 2. Instead of accepting that compromise, on February 11, 2021 Plaintiffs demanded that BHN add *another* four custodians and again insisted that BHN "run all of the negotiated and agreed-upon search terms" against these individuals' files. Pl. Ex. K at 2. Without making any further attempts to meet and

confer, Plaintiffs moved to compel the addition of all eight custodians almost three months later.  To reach compromise, BHN agreed to add five of Plaintiffs' eight proposed custodians, increasing the number of document custodians by fifty percent. Nonetheless, Plaintiffs insist on adding more custodians without any legitimate basis and have refused BHN's offer to compromise on targeted search terms meant to reduce burden.

### B. Plaintiffs Have Not Shown That Ms. Bergman, Mr. Miron, Or Mr. Futera Possess Unique, Relevant Information.

Plaintiffs acknowledge that they are required to show that new custodians will provide "*unique* relevant information *not already obtained*."  Mot. 23 (emphasis added) (citing *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 4501794, at *1 (N.D. Fla. Aug. 5, 2020)).  Plaintiffs have not done so.  Instead, Plaintiffs simply assert that Ms. Bergman, Mr. Miron, and Mr. Futera may possess "relevant" information due to their senior positions at BHN.  Mot. 23-25.  Such a speculative assertion of potential relevance, without any discussion of the uniqueness of the information sought, does not justify this fishing expedition.  *See, e.g.*, *Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (rejecting argument that specific individuals must be included as custodians because they occupied senior roles); *Houston v. Papa John's Int'l, Inc.*, 2020 WL 6588505, at *2-3 (W.D. Ky. Oct. 30, 2020) (rejecting speculation that high-ranking position increases relevance of custodial files).

### 1. Nomi Bergman

Nomi Bergman is the former President of BHN.  She left the company at the

time of BHN's merger with Charter in May 2016.  She is currently an executive with Advance, the prior owner of BHN.

Plaintiffs argue that Ms. Bergman was "intimately involved" with BHN's DMCA program (Mot. 23), but the documents cited by Plaintiffs do not support this assertion.  For example, BHN_00001561 does not reflect Ms. Bergman's personal involvement in BHN's DMCA program but shows a senior executive referring an inquiry about that program to a more appropriate employee, Marva Johnson, who is already a document custodian.  *See* Pl. Ex. P at 8.  Similarly, BHN_00001563 does not show Ms. Bergman "direct[ing]" BHN's responses to questions about its DMCA program.  It is simply the attachment to BHN_00001561, which Ms. Bergman referred to Ms. Johnson.  Pl. Ex. P at 10.  Further, Plaintiffs' suggestion that "Ms. Bergman participated in discussions regarding the DMCA policy that included only smaller groups of more senior participants" is not supported by the email they cite, which was sent by an existing document custodian in the case and to which Ms. Bergman responds in total: "Thanks for this update, and most of all, I appreciate your thoughtful approach to this situation."  Pl. Ex. P at 25.  Ms. Bergman provides no unique information in the email, and Plaintiffs have not carried their burden to show she will do so for the case.[9]  As to BHN_00004146, Plaintiffs are wrong that this is an email

---

[9]  Plaintiffs also grasp at straws in their citation to BHN_00003488, which is an email in which Ms. Bergman—in response to an update sent to six people, including existing document custodians— states, "These are such great strides—we have come such a long way!"  Pl. Ex. P at 29.  Without explanation, Plaintiffs argue that this generic comment "impl[ies] that [Ms. Bergman] was involved in BHN's program more than would be revealed by the approximately 100 documents of hers that BHN has produced from other custodians' files."  Mot. 24.  To the contrary, this general comment

chain between Tim Frendberg and William Futera, who Plaintiffs seek to have added as a custodian—in fact, it is between Tim Frendberg and William Futch, both of whom are already custodians. *See* Pl. Ex. P at 26. This mistake underscores the point: To the extent responsive documents exist regarding BHN's DMCA program, these documents have been produced to Plaintiffs through current document custodians who were members of the Security and Abuse team and directly involved in the processing and handling of notices alleging copyright infringement.

Further, Plaintiffs' assertion that Ms. Bergman "received elevated calls regarding abuse violations" is not supported by the evidence. In support of this assertion, Plaintiffs cite a *filename*: ████████████████████. Pl. Ex. P at 7 (BHN_00001409). But the filename that Plaintiffs rely upon refers to ██████

████████████████████████████████████

██████ and which have no connection to alleged copyright infringement, subscriber abuse, or even BHN's ISP services. Further, Plaintiffs admit that Ms. Bergman was one of multiple recipients of the monthly "Customer Care" reports, such as BHN_00001651, *see* Mot. 23-24, which were sent to dozens of people (including existing document custodians in this case). Pl. Ex. P at 12. To the extent Plaintiffs seek documents regarding "statistics" on the total number of complaints received during a month's period and the total number of responsive actions taken, such statistics and reports have been produced from existing documents custodians,

---

does not show Ms. Bergman has unique knowledge to add to the case, nor does it support the proposition for which Plaintiffs cite it.

including Tim Frendberg, William Futch, and Marva Johnson. Plaintiffs do not allege that "Customer Care" reports (or any other documents) are unavailable to them because Ms. Bergman is not a custodian.

In addition, a search of Ms. Bergman's files likely will be duplicative of the small number of documents concerning Ms. Bergman that already have been produced from the files of other document custodians, and the documents returned are likely to be nonresponsive. *See Lauris v. Novartis AG*, 2016 WL 7178602, at *4-5 (E.D. Cal. Dec. 8, 2016) (denying discovery duplicative of that produced from lower-level custodians). For example, as a result of searching the files of the existing BHN custodians, BHN has reviewed nearly ▇▇▇▇ documents that overlap with Ms. Bergman's custodial collection. Of these, only ▇▇ documents (approximately ▇▇%) were responsive and have been produced to Plaintiffs.[10] Nothing suggests that a separate search of her files for materials that ***do not*** include other relevant personnel will result in a higher responsiveness rate—in fact, the opposite likely is true.

### 2.   Steve Miron and William Futera

Steve Miron is the former Chief Executive Officer of BHN. He left this position at the time of BHN's merger with Charter in May 2016, and Mr. Miron is currently an executive with Advance, the prior owner of BHN.[11] William Futera is the former

---

[10]   Similarly, approximately ▇▇▇ documents were reviewed that overlapped with Mr. Miron's files, resulting in ▇ responsive documents (▇%) and approximately ▇▇ documents were reviewed that overlapped with Mr. Futura's files, resulting in ▇ responsive documents (▇%).

[11]   Although Mr. Miron is currently on Charter's Board of Directors, his position as a Director began after both the discovery and claims periods ended in this case.

Chief Financial Officer of BHN.  He left the company in May 2015.

Plaintiffs attempt to justify searching the custodial files for BHN's CEO and CFO because these senior executives allegedly "participated in relevant communications," which Plaintiffs describe generically as "regarding BHN's contributory copyright infringement and its implementation of repeat infringer policies."  Mot. 23.  This bare assertion does not discharge Plaintiffs' burden to show that those executives possess *unique* information relevant to the claims and defenses in this case.  *See, e.g.*, *BlackBerry Ltd. v. Facebook, Inc.*, 2019 WL 4544425, at *6-7 (C.D. Cal. Aug. 19, 2019) (denying request for CEO as document custodian where plaintiffs could not show importance in resolving the issues in the case); *Lutzeier v. Citigroup Inc.*, 2015 WL 430196, at *7 (E.D. Mo. Feb. 2, 2015) (denying request for CEO and CFO as document custodians).  Plaintiffs' request should be rejected for this reason alone.

The two documents cited by Plaintiffs do not provide any support for the addition of Messrs. Miron and Futera as custodians.  As with Ms. Bergman, Plaintiffs seek to justify their request because Messrs. Miron and Futera received "Customer Care" reports—and as with Ms. Bergman, the fact that these senior level executives were two of dozens of people receiving those reports via email does not demonstrate any unique value in adding them as document custodians.  Plaintiffs also purport to rely on unsolicited correspondence sent from a third party to BHN's executives (in addition to BHN's copyright agent) to suggest that Messrs. Miron and Futera "appear to have participated in meetings regarding copyright infringement on BHN's network," even though the document does not refer to any meetings ever taking place.

18

Mot. 24; Pl. Ex. P at 20. These arguments do not support Plaintiffs' extraordinary request to add BHN's highest level executives as discovery custodians at the eleventh hour. *See Papa John's*, 2020 WL 6588505, at *2-3.

### C.   The Demand Is Not Proportional To The Needs Of The Case.

Plaintiffs ignore the substantial burden that would be associated with the review and production of documents from these three custodians at this late stage in fact discovery. To aid the Court's analysis of burden, BHN has run all of Plaintiffs' broad search terms over the custodial data for these three custodians. Plaintiffs' search terms hit on approximately ▉▉▉ unique documents. Even a cursory review shows many of the "hits" on these custodial files are false (*i.e.*, hits that yield non-responsive documents). For example, more than ▉▉▉ documents hit on one of Plaintiffs' search terms because they contain an email footer beginning with: "CONFIDENTIALITY *NOTICE*" (emphasis added, "notice" being one of Plaintiffs' search terms) and one other broad search term (for example, the footer combined with the search terms "capability," "hold," "block," "restrict," and/or "ignore"). Specifically in the context of the custodial records for these high-level executive custodians, Plaintiffs' search terms are capturing large numbers of documents entirely unrelated to the issues in this case, including ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

Simply put, the burden on BHN in having to review these documents is not proportional to the needs of the case. Given the impending close of fact discovery, and the need to conduct depositions before that date, reviewing approximately ▉▉▉

19

documents would take an estimated 1,300 hours for a team of 20 reviewers and a review manager to complete (excluding second-level review, privilege log, and redactions). Courts do not hesitate to deny motions to compel in such circumstances. *See, e.g., Prasad v. George Washington Univ.*, 323 F.R.D. 88, 94 (D.D.C. 2017) (motion to compel denied on burden grounds where completing a search with a 99.5% non-responsive rate would take 150 hours).

### D. BHN's ESI Loss Does Not Justify Plaintiffs' Fishing Expedition.

Finally, there is no basis for Plaintiffs' assertion that BHN's disclosure of ESI loss for certain custodians requires the late addition of these three custodians. Mot. 24. In September 2020, after its original disclosure of the e-mail loss, BHN informed Plaintiffs that it had located more than ███████ of additional e-mail data. Ex. 2 at 2. BHN has searched the total volume of ███████ records within the newly identified data for messages sent or received by its existing discovery custodians using Plaintiffs' search terms and then produced responsive documents to Plaintiffs. *See* Ex. 3. That BHN suffered ESI loss—which it has addressed by expanding its search for responsive documents—is not a basis to compel the production of custodial documents from these high-level executives. Moreover, Plaintiffs have not sought any relief under Rule 37(e) and thus cannot compel additional discovery on this basis without satisfying the requirements of that Rule, which they cannot do. *See* Fed. R. Civ. P. 37(e).

### CONCLUSION

BHN respectfully requests that the Court deny Plaintiffs' Motion.

Dated: June 16, 2021                   Respectfully submitted,

Jennifer A. Golinveaux (*pro hac vice*)   */s/ Andrew H. Schapiro*
WINSTON & STRAWN LLP                    Andrew H. Schapiro (*pro hac vice*)
101 California Street, 35th Floor         Allison Huebert (*pro hac vice*)
San Francisco, CA 94111                 QUINN EMANUEL URQUHART &
Tel: (415) 591-1506                      SULLIVAN, LLP
Email: jgolinveaux@winston.com            191 N. Wacker Drive, Suite 2700
                                         Chicago, IL 60606
Michael S. Elkin (*pro hac vice*)         Tel: (312) 705-7400
WINSTON & STRAWN LLP                    Email: andrewschapiro@quinnemanuel.com
200 Park Avenue                         Email: nathanhamstra@quinnemanuel.com
New York, NY 10166                      Email: allisonhuebert@quinnemanuel.com
Tel: (212) 294-6700
Email: melkin@winston.com               Todd A. Anten (*pro hac vice*)
                                         Jessica Rose (*pro hac vice*)
Erin R. Ranahan (*pro hac vice*)          Katy Akopjan (*pro hac vice*)
WINSTON & STRAWN LLP                    QUINN EMANUEL URQUHART &
333 S. Grand Avenue, 38th Floor          SULLIVAN, LLP
Los Angeles, CA 90071                   51 Madison Avenue, 22nd Floor
Tel: (213) 615-1933                      New York, NY 10010
Email: eranahan@winston.com              Tel: (212) 849-7192
                                         Email: toddanten@quinnemanuel.com
                                         Email: jessicarose@quinnemanuel.com
                                         Email: katyakopjan@quinnemanuel.com

                                         Charles K. Verhoeven (*pro hac vice*)
                                         David Eiseman (*pro hac vice*)
                                         Linda Brewer (*pro hac vice*)
                                         Michael F. Trombetta (*pro hac vice*)
                                         QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
                                         50 California Street, 22nd Floor
                                         San Francisco, CA 94111
                                         Tel: (415) 875-6600
                                         Email: charlesverhoeven@quinnemanuel.com
                                         Email: davideiseman@quinnemanuel.com
                                         Email: lindabrewer@quinnemanuel.com
                                         Email: michelleclark@quinnemanuel.com
                                         Email: miketrombetta@quinnemanuel.com

                                         William J. Schifino, Jr.
                                         Florida Bar No. 564338
                                         GUNSTER, YOAKLEY & STEWART, P.A.
                                         401 E. Jackson Street, Suite 2500
                                         Tampa, FL 33602
                                         Tel: (813) 228-9080
                                         Email: bschifino@gunster.com

                                         *Counsel for Defendant*
                                         *Bright House Networks, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 16, 2021, I caused a true and correct copy of the foregoing BRIGHT HOUSE NETWORKS, LLC'S RESPONSE TO PLAINTIFFS' JUNE 2, 2021 MOTION TO COMPEL and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro
