UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BRIGHT HOUSE NETWORKS, LLC, <br><br> Defendant. | Case No. 8:19-cv-710-MSS-TGW |

**PLAINTIFFS' OPPOSITION TO DEFENDANT BRIGHT HOUSE NETWORKS, LLC'S PARTIAL OBJECTION TO
JUNE 10, 2021 DISCOVERY ORDER**

For the second time, Defendant Bright House Networks, LLC ("BHN") objects to a common-sense ruling by the Magistrate Judge denying burdensome discovery related to copyrighted works that are not at issue in this case (what BHN calls the "Dropped Works"). Simply put, BHN's *255 separate Requests for Admission* concerning works for which Plaintiffs are *not* asserting claims have no bearing on BHN's secondary liability for the infringement of over 7,000 works that Plaintiffs *are* asserting in the case, nor on BHN's failure to take meaningful action to address millions of notices alerting it to repeat and rampant infringement by its subscribers. The Dropped Works are thus irrelevant to the issues in this case, and BHN's hundreds of RFAs concerning those works impose a substantial and

unwarranted burden. Nothing about Magistrate Judge Wilson's order denying BHN's latest attempt to expand discovery beyond the works in suit was clearly erroneous or contrary to law, and Plaintiffs therefore respectfully request that the Court overrule BHN's objection.

## BACKGROUND

In March 2019, Plaintiffs filed this case seeking damages for BHN's secondary liability for its subscribers' repeated use of BHN's network to infringe Plaintiffs' copyrighted sound recordings and musical compositions. On November 4, 2019, following a Rule 16(f) Scheduling Conference, the Court issued a Scheduling Order providing that "Plaintiffs may file amended versions of Exhibit A (list of sound recordings at issue) and/or Exhibit B (list of compositions at issue) to the Complaint on or before Friday, February 14, 2020 to conform those exhibits to information learned in discovery." Dkt. 68 at 6.

As expressly contemplated by the Scheduling Order, in February 2020, Plaintiffs took the unremarkable step of filing an amended list of works-in-suit, omitting 283 of the 7,554 works on which they initially sued (the "Dropped Works"), but for which Plaintiffs chose to no longer pursue claims. Dkt. 116 (Mot. for Leave to File Am. Exs. to the Compl.); Dkt. 117 (Order granting Mot. for Leave to File Am. Exs.). It is these "Dropped Works"—works on which Plaintiffs are *not* suing, and that are *not* at issue in this case—that are the subject of BHN's instant motion.

In July 2020, BHN filed counterclaims seeking damages based on the information-and-belief allegation that Plaintiffs had knowingly sent BHN false notices of infringement by BHN subscribers. That allegation was predicated solely on BHN's speculation that the reason Plaintiffs chose not to pursue the Dropped Works must have been that Plaintiffs did not own them. Dkt. 151. Correspondingly, in June 2020, just before filing the counterclaims, BHN served RFP 98, seeking documents "sufficient to demonstrate" Plaintiffs' ownership of or exclusive rights to the Dropped Works. Plaintiffs objected to RFP 98 as seeking irrelevant discovery. BHN moved to compel, making clear that the discovery was tied to its pending counterclaims: "[t]he information sought by this request is necessary to establish that Plaintiffs did not own the Dropped Works at the time notices were sent" and "BHN should be entitled to explore why Plaintiffs sent notices on the Dropped Works, sued on them, and subsequently dropped them." Dkt. 159 at 24–25.

In October 2020, following oral argument, Magistrate Judge Wilson denied BHN's motion to compel because the discovery BHN sought concerning Plaintiffs' ownership of the Dropped Works was both irrelevant and speculative. Ex. A (Hr'g Tr., Oct. 9, 2020) at 117:7–11. BHN argued then (as it does again here) that whether Plaintiffs owned the Dropped Works "will help us not only with our counterclaims, but also with the theme in our case about the reliability entirely of the process here." *Id.* at 116:11–13. Magistrate Judge Wilson rejected both of BHN's arguments and

stated that, even if the Court "thought it were really pertinent and relevant and not burdensome, I would grant it subject to not producing it until after the ruling [by the District Judge] on the [motion to dismiss BHN's] counterclaims, but I'm just denying this one outright." *Id.* at 117:08–11.  BHN objected to Magistrate Judge Wilson's order denying RFP 98.  Dkt. 212 at 21–23; Dkt. 230 at 18–20.

Despite Judge Wilson's order, on November 25, 2020, BHN served the 255 separate RFAs at issue here, which seek substantially the same information as RFP 98, but now in the form of admissions.  Each RFA requests that Plaintiffs "[a]dmit that You did not own, or have authorization to assert rights on behalf of the owner for, the Dropped Work [individually identified by title] during the Claims Period."

In December 2020, this Court dismissed with prejudice BHN's counterclaims, which had provided the supposed predicate for seeking discovery regarding the Dropped Works.  Dkt. 244 at 6–10.  BHN nevertheless continued pursuing such discovery via the RFAs.  Following Plaintiffs' objections to the RFAs on various grounds including relevance and burden, BHN moved to compel.  On June 10, 2021, Magistrate Judge Wilson heard oral argument on BHN's motion and denied the portion of the motion related to RFAs 110–364, holding the requested discovery was "not relevant" and overly burdensome to produce.  *See* Dkt. 298-2 at 60–61. Contrary to BHN's assertion, *see* Dkt. 298 at 5, Magistrate Judge Wilson decidedly

4

did *not* deny BHN's motion on the basis that Plaintiffs "would likely not be permitted to refer to the Dropped Works at trial or make the argument that Bright House received notices beyond the works-in-suit." *See generally* Dkt. 298-2 at 60–63.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(a), "a district court reviews a magistrate judge's ruling on non-dispositive matters under the clearly-erroneous or contrary-to-law standard." *Rodriguez v. Powell*, No. 19-12632, 2021 WL 1688766, at *5 (11th Cir. Apr. 29, 2021) (citation omitted). An order is contrary to law only "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Malibu Media, LLC v. Does*, 923 F. Supp. 2d 1339, 1347 (M.D. Fla. 2013). As for factual findings, "[c]lear error is a highly deferential standard of review," *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350, and, as a result, "[t]he standard for overturning a Magistrate Judge's Order is a very difficult one to meet," *NAACP v. Fla. Dep't of Corr.*, 122 F. Supp. 2d 1335, 1337 (M.D. Fla. 2000).

## ARGUMENT

Magistrate Judge Wilson's order holding that Plaintiffs' ownership of the Dropped Works is not relevant to the issues in this case, and that answering hundreds of RFAs unrelated to any of the works-in-suit would be unduly burdensome, was not

5

clearly erroneous or contrary to law. BHN's objection therefore should be overruled. Moreover, BHN's far-reaching demand that Plaintiffs be precluded from relying on the millions of notices that Plaintiffs and other copyright holders sent to BHN—critical evidence relevant to BHN's knowledge, material contribution to infringement, willfulness, and defenses—should be rejected.

**I. MAGISTRATE JUDGE WILSON CORRECTLY DENIED DISCOVERY INTO PLAINTIFFS' OWNERSHIP OF WORKS THAT ARE NO LONGER IN SUIT.**

BHN argues that it is entitled to discovery into the Dropped Works because it purportedly is relevant to the accuracy of Plaintiffs' notices. But BHN's speculation about ownership rights to works not claimed in this case fails to establish the relevance of the discovery it seeks, and it ignores the burden of answering hundreds of irrelevant RFAs.

As background, BHN received millions of infringement notices from rightsholders, not limited to Plaintiffs, during the relevant period—the overwhelming majority of which are not linked to the 7,000 works in suit. BHN's failure to take meaningful action in response to these millions of notices that Plaintiffs and other copyright holders sent to BHN bears on a multitude of issues, including: (1) the extent of BHN's knowledge of specific repeat infringers on its network and its continued provision of service to known repeat infringers, which goes to BHN's liability for contributory infringement; and (2) whether BHN can

6

establish its "safe harbor" affirmative defense under the DMCA, which requires BHN to show that it "adopted and reasonably implemented" a policy to terminate repeat infringers in appropriate circumstances, without regard to who sent the notices or what works were infringed, 17 U.S.C. § 512(i)(1)(A).

Accordingly, evidence of voluminous infringement notices sent from all copyright holders, regardless of the works infringed or who owned them, has featured prominently in every similar case against an ISP. *See, e.g.*, *Sony Music Ent. v. Cox Commc'ns, Inc.*, 464 F. Supp. 3d 795, 838 (E.D. Va. 2020) (affirming jury verdict of contributory liability against an ISP, in part, based on evidence of just "20 terminations for copyright infringement out of 5.8 million total notices during the Claim Period" from all rightsholders); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 758 (W.D. Tex. 2019) (denying ISP's safe harbor defense and relying, in part, on the fact that the ISP did not terminate any customers despite receiving roughly 1.2 million notices, including hundreds of thousands from rightsholders other than plaintiffs).

Here, BHN argues that discovery into the ownership of the Dropped Works is "necessary to challenge Plaintiffs' theory of this case: that the volume of infringement notices that BHN received is evidence of rampant piracy on its networks." Dkt. 298 at 7. This argument fails for at least three reasons.

First, there is no evidence that BHN believed *at the time that it received the notices* that any senders did not hold the copyrights to the works for which they sent notices, or that BHN did not believe that infringement was rampant on its network. Thus, even if BHN could show today that some small handful of notices from rightsholders were inaccurate, that would be irrelevant to both whether BHN knew at the time that piracy was "rampant" on its networks, and why BHN chose not to take meaningful action in response.

Second, notices concerning the 255 Dropped Works represent a small fraction of the millions of notices that BHN received during the relevant period. Consequently, discovery regarding those works cannot inform an assessment of whether "the volume of infringement notices that Bright House received"—the overwhelming majority of which are *not* the subject of any discovery sought by Bright House—"is evidence of rampant piracy on its networks." Nor can such discovery speak to BHN's knowledge of infringement on its network or the reasonableness of its response, given that BHN failed to take meaningful action in response to *millions* of notices for works that were *never* in this case, the ownership of which BHN is not investigating.

Finally, and relatedly, BHN's requests are a quintessential fishing expedition based on nothing more than speculation, as the Magistrate Judge recognized in twice denying this discovery, and as the Court recognized in dismissing BHN's Dropped

Works-counterclaims. Plaintiffs have repeatedly explained that a variety of strategic or legal reasons can inform the decision to pursue or not pursue certain works—whether Plaintiffs sent notices on those works but never asserted claims for them, or initially asserted claims but then chose to omit the works. *See, e.g.*, Ex. A (Hr'g Tr., Oct. 9, 2020) at 17:10–18:11 (explaining that, for example, some works were dropped because they were erroneously listed twice on the original list and others were dropped because they were registered outside the claim period, making them ineligible for statutory damages, which Plaintiffs have elected in this case). The Magistrate Judge well understood this, and likewise understood the true (and improper) purpose of the requested discovery: "You'd like to know what went on in their minds to drop it. I'm not sure that's a valid inquiry." Dkt. 298-2 at 59–60.

In the face of this, BHN presents no genuine argument as to why the Dropped Works are a proper subject of discovery, any more than the many thousands of other works for which Plaintiffs and other rightsholders sent BHN notices, but for which no claim is asserted in this case. Instead, BHN offers only rank speculation—despite the fact that the Scheduling Order in this case *expressly contemplated* that Plaintiffs would amend their list of works in suit—that such amendment "suggest[s] that Plaintiffs may not in fact have been the rightful owners of the Dropped Works." Dkt. 298 at 2. But "[g]ood cause for discovery cannot arise from mere speculation . . . ." *Smith v. United States*, 627 F. App'x 852, 854 (11th Cir. 2015) (citation

9

omitted); *see Palma v. Metro PCS Wireless, Inc.*, 18 F. Supp. 3d 1346, 1348 (M.D. Fla. 2014) (denying discovery that was "too broad and hinges on the hope of finding something—anything—relevant to this litigation"); *Moore v. Club at Orlando Condo. Ass'n*, No. 609-cv-274, 2009 WL 10670494, at *3 (M.D. Fla. Aug. 21, 2009) (denying discovery that party contended "could lead" to relevant information as a "fishing expedition").

While the discovery BHN seeks is thus not relevant, it is decidedly and disproportionately burdensome.[1] To answer BHN's 255 separate RFAs, Plaintiffs would have to collect and review documents underlying the ownership of any copyrights associated with each Dropped Work.[2] Thus, responding to the RFAs would be no less burdensome than responding to BHN's RFP 98, which sought documents sufficient to show ownership of the same works and which was denied months earlier. Dkt. 284 at 15. Magistrate Judge Wilson agreed and correctly noted that "there's a whole lot of stuff [Plaintiffs] have to look through" to provide

---

[1] Contrary to BHN's argument, *see* Dkt. 298 at 5 n.3, Magistrate Judge Wilson also denied RFAs 110–364 on the basis that providing a response would be unduly burdensome. *See* Dkt. 298-2 at 60:6–7.

[2] BHN erroneously contends that responding to RFAs 110–364 should not be unduly burdensome, because Plaintiffs already had an obligation to determine ownership of the works they asserted before filing the complaint. Dkt. 298 at 5–6 n.3. Rule 11 requires counsel to affirm only that, "to the best of the person's knowledge, information, and belief, formed after an *inquiry reasonable under the circumstances*," Fed. R. Civ. P. 11(b) (emphasis added), "any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose,'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Plaintiffs and their counsel did so, but BHN's RFAs seek something else: a binding and conclusive evidentiary response, which would entail extensive scrutiny of the chain-of-title documentation for each and every one of the Dropped Works.

responses to BHN's RFAs. Dkt. 298-2 at 60:6–11. Because the Dropped Works are not at issue, requiring Plaintiffs to answer hundreds of RFAs—and in the process collect, review, analyze and make legal determinations concerning many hundreds of underlying documents—related to those works would be disproportionately burdensome.

## II. BHN'S DEMAND THAT THE COURT EXCLUDE ALL EVIDENCE AND ARGUMENT CONCERNING INFRINGEMENT NOTICES FROM ANY COPYRIGHT HOLDER FOR WORKS NOT IN SUIT WAS NOT PRESENTED BELOW AND IS PREMATURE.

BHN's Objection appears to seek a ruling that Plaintiffs should be precluded from presenting evidence or argument concerning the full universe of infringement notices BHN received. *See* Dkt. 298 at 6–7. That request—which clearly aims to prevent Plaintiffs from presenting the bread-and-butter evidence of any mass infringement case—should be denied.

First, BHN incorrectly claims that Magistrate Judge Wilson stated "Plaintiffs should only be able to rely on, or refer to, notices for the works-in-suit at trial[.]" Dkt. 298 at 6. What Magistrate Judge Wilson *actually* stated was that Plaintiffs would *not* allege infringement of the Dropped Works, since they are no longer in the pleadings, and that "7,000 or 7,250, it ain't going to make any difference. That's not going to change a juror's mind." Dkt. 298-2 at 62:6–7; *see also id.* at 61:2–6 ("THE COURT: So they come up with 7,000 and they make a mistake about 250 of them.

11

So what?  MS. BREWER:  So what, Your Honor, is that my client is liable in this case.  THE COURT:  For what?  Not the 250.").

Nor did Magistrate Judge Wilson suggest he was denying the requested discovery "on the basis that Plaintiffs would likely not be permitted to refer to the Dropped Works at trial or make the argument that Bright House received notices beyond the works-in-suit," as BHN wrongly contends.  *See* Dkt. 298 at 5.  In fact, he said nothing about what Plaintiffs could or could not refer to at trial, or what arguments they could or could not make about notices beyond the works in suit.  *See generally* Dkt. 298-2 at 60–62.

Second, BHN failed to argue below for any kind of preclusion and therefore cannot seek that relief for the first time in this objection.  *See, e.g.*, *Mitchell v. Hunt*, No. 8:15-cv-2603, 2017 WL 1135296, at *1 (M.D. Fla. Mar. 27, 2017) (holding that an argument not raised before the magistrate judge cannot be used as the basis on which to object to the report) (citing *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009)).

Third, any demand for preclusion is premature.  If BHN wants "a clear ruling that no argument, evidence or testimony about notices related to non-asserted works . . . will be admitted at trial," Dkt. 298 at 7, BHN should file a motion *in limine* before trial.  An objection to a discovery ruling that did not even address the issue is not the appropriate vehicle by which to seek such relief, nor does it provide the Court

a sufficient record on which to make such a determination. Indeed, BHN offers no actual explanation for why denial of discovery regarding ownership of the Dropped Works would warrant the extraordinarily broad measure of precluding Plaintiffs "from presenting any argument, evidence, or testimony at trial that extends beyond the specific works-in-suit." *Id.* at 2.

Rather, BHN's request is a transparent attempt to constrain Plaintiffs from presenting compelling evidence concerning the extent of infringement occurring on BHN's network—critical evidence that is commonplace in such cases, and that Plaintiffs need to demonstrate BHN's knowledge of and material contribution to infringement, and to rebut BHN's safe harbor defense. Indeed, by asserting the safe harbor defense, BHN has put at issue whether its policies and practices for responding to infringement notices generally—beyond those sent by Plaintiffs— were reasonable, so Plaintiffs should be permitted to present evidence concerning that broader universe of notices in response. Likewise, the fact that BHN had notice of millions of instances of infringement is directly relevant to whether it had knowledge of widespread infringement on its network, and that remains the case whether those notices came from Plaintiffs or other copyright holders.

## CONCLUSION

For these reasons, BHN's Partial Objection to the June 10, 2021 Discovery Order, Dkt. 298, should be overruled.

Dated: July 8, 2021 　　　　　　　　　　/s/ Neema T. Sahni

| | |
|---|---|
| Matthew J. Oppenheim (*pro hac vice*) | Jonathan M. Sperling (*pro hac vice*) |
| Scott A. Zebrak (*pro hac vice*) | Joshua B. Picker (*pro hac vice*) |
| Jeffrey M. Gould (*pro hac vice*) | Phil Hill (*pro hac vice*) |
| OPPENHEIM + ZEBRAK, LLP | COVINGTON & BURLING LLP |
| 4530 Wisconsin Ave. NW, 5th Floor | The New York Times Building |
| Washington, DC 20016 | 620 Eighth Avenue |
| Telephone: (202) 621-9027 | New York, NY 10018-1405 |
| matt@oandzlaw.com | Telephone: (212) 841-1000 |
| scott@oandzlaw.com | jsperling@cov.com |
| jeff@oandzlaw.com | jpicker@cov.com |
| | pahill@cov.com |
| David C. Banker, Esquire | |
| Florida Bar No. 0352977 | Mitchell A. Kamin (*pro hac vice*) |
| Bryan D. Hull, Esquire | Neema T. Sahni (*pro hac vice*) |
| Florida Bar No. 020969 | Hardy Ehlers (*pro hac vice*) |
| BUSH ROSS, P.A. | COVINGTON & BURLING LLP |
| 1801 North Highland Avenue | 1999 Avenue of the Stars, Suite 3500 |
| P.O. Box 3913 | Los Angeles, CA 90067-4643 |
| Tampa, FL 33601-3913 | Telephone: (424) 332-4800 |
| Telephone: (813) 224-9255 | mkamin@cov.com |
| dbanker@bushross.com | nsahni@cov.com |
| bhull@bushross.com | |

Stacey Grigsby (*pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
sgrigsby@cov.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 8, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

Dated: July 8, 2021

<em>/s/ Neema T. Sahni</em>