UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BRIGHT HOUSE NETWORKS, LLC,<br><br>Defendant. | Case No. 8:19-cv-710-MSS-TGW |

**PLAINTIFFS' PARTIAL OBJECTION TO
JULY 21, 2021 DISCOVERY ORDER (ECF 311)**

Plaintiffs object to the portion of Magistrate Judge Wilson's July 21, 2021 Order concerning RFPs 126 and 64 ("Order," at ECF 311), which permitted Bright House Networks, LLC ("BHN") to shield from discovery BHN's internal communications about, and notes of calls with subscribers discussing, copyright infringement notices. The Order permitted BHN to withhold these documents notwithstanding that BHN conceded their relevance, and that BHN presented no evidence of burden.

As the Court is aware, this case turns on what BHN, an internet service provider, did (or did not do) in response to the millions of statutory infringement notices it received from Plaintiffs and others; what BHN knew and did about specific repeat infringers; and whether BHN "adopted *and*

*reasonably implemented* . . . a policy that provides for the termination in *appropriate circumstances* of subscribers . . . who are repeat infringers," as would be required for it to be eligible for the DMCA's "safe harbor" from liability.  17 U.S.C. § 512(i)(1)(A) (emphasis added).

The requests at issue bear directly on these critical questions.  They seek BHN's internal communications about how to respond to infringement notices, and contemporaneous notes describing BHN's telephone calls with subscribers who were the subject of multiple infringement notices.  Those documents would include, for example, internal emails and call notes describing a subscriber who was the subject of 1,000 infringement notices, in which BHN employees decided "to just ignore this" or "issue a warning; that's enough."  As explained below, multiple courts have relied on precisely these kinds of critical, internal documents in rejecting other ISPs' DMCA safe harbor defense on summary judgment.

And yet, Magistrate Judge Wilson denied Plaintiffs' motion to compel both requests.  In doing so, Magistrate Judge Wilson erred in three respects.  First, he failed to appreciate the critical relevance of the requested documents.  Second, he credited BHN's claim of burden without requiring BHN to substantiate it in any way.  And finally, his purported "remedy" to mitigate the prejudice of these errors was no remedy at all.  Instead, he illogically concluded that Plaintiffs were "protected" because he would not

allow BHN to use any unproduced documents in support of its safe harbor affirmative defense. That does not help Plaintiffs at all, because BHN has no use for these documents; they can only harm BHN, and Plaintiffs are absolutely entitled to discover them to rebut BHN's defense. Discovery cannot function on the basis that a party can withhold "smoking gun" documents so long as it does not seek to rely on them; under that principle, a party would never produce documents harmful to its case. The Order should be reversed.

## LEGAL STANDARD

A non-dispositive order by a magistrate judge may be reversed by the district court if, as here, the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). A magistrate judge's order "is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Palma v. Fla. Neurological Ctr., LLC*, No. 5:10-CV-117-OC-34-TBS, 2011 WL 6153423, at *2 (M.D. Fla. Dec. 12, 2011). An order is "clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definitive and firm conviction that a mistake has been committed." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350-52 (11th Cir. 2005) (citation omitted).

# ARGUMENT

## I. The Order on RFP 126 Should be Overturned as Contrary to Law and Clearly Erroneous.

A month after BHN asserted its safe harbor defense, and in order to obtain the internal documents needed to rebut that defense, Plaintiffs served RFP 126:

> Your internal communications discussing any Infringement Notice, any instance of alleged copyright infringement, or any "ticket" generated in response to any Infringement Notice, including internal communications concerning the actual or potential termination of any Subscriber's account with BHN.

ECF 287-3 at 5.  Before asserting the safe harbor defense, BHN previously agreed to produce documents in response to a similar request[1] focused only on the subscribers identified in Plaintiffs' infringement notices ("Plaintiff-Accused Subscribers").  For RFP 126, BHN conceded the relevance of documents concerning infringing subscribers *beyond* the Plaintiff-Accused Subscribers by agreeing to produce some such documents, but it asserted a critical, self-serving limitation that it had not imposed for RFP 34:  BHN would produce communications with this broader universe of subscribers <u>only if they discussed whether to terminate or suspend the subscriber</u>—leaving out, for example, communications acknowledging a particular subscriber was

---

[1] Plaintiffs' RFP 34 sought "Your internal communications discussing any Infringement Notice, any instance of alleged copyright infringement, or any "ticket" generated in response to any Infringement Notice, including internal communications concerning the actual or potential termination of any [Plaintiff-Accused] Subscriber's account with BHN." *See* ECF 287-2 at RFP 34.

a repeat infringer but not even considering whether to suspend or terminate that subscriber. *See* ECF 287 ("Mot.") at 11-12; ECF 295 ("Opp.") at 6. Such documents are plainly relevant and critical to showing the countless instances in which BHN did *not* discuss suspension or termination but absolutely should have.

As detailed below, in denying RFP 126, Magistrate Judge Wilson failed to recognize that the internal emails sought by the request are highly relevant—both to Plaintiffs' ability to rebut BHN's safe harbor defense, and to their ability to demonstrate BHN's knowledge of repeat infringement and willfulness in ignoring it. Magistrate Judge Wilson then compounded this error by denying the request based on overbreadth and burden grounds with no record evidence of either.

### A. Magistrate Judge Wilson failed to recognize the highly probative nature of the internal communications that BHN is withholding.

Internal communications in which BHN acknowledged the infringement on its network but failed to even consider suspension or termination are of paramount importance in this case. They bear on BHN's eligibility for safe harbor, and its willfulness and knowledge of repeat infringement on its network. Magistrate Judge Wilson failed to appreciate these legal principles when he denied Plaintiffs this much-needed discovery.

5

*First*, BHN's safe harbor defense puts squarely at issue its treatment of and communications regarding *all* repeat infringers—not just the Plaintiff-Accused Subscribers. The Court has already recognized this principle, *see* ECF 197; ECF 157, and even BHN agreed to produce *some* communications about other subscribers—just not the damning ones in which it should have (but failed to) consider suspension or termination.

*Second*, it is not enough for BHN merely to *have* a repeat-infringer policy. To qualify for safe harbor, BHN must have "reasonably implemented" a policy that provides for *actual* termination in "appropriate circumstances." 17 U.S.C. § 512(i)(1)(A). At minimum, "appropriate circumstances" requiring termination arise when BHN knows of blatant, repeat infringers. *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 654-55 (E.D. Va. 2015). Failure to terminate despite such knowledge can be dispositive on summary judgment. *Id.* at 655-662; *UMG Recordings, Inc. v. Grande Commc'ns Networks*, 384 F. Supp. 3d 743, 754-58 (W.D. Tex. 2019). And that failure may be demonstrated by internal documents revealing BHN's knowledge "that at least some [] account holders were intentionally and repeatedly infringing." *BMG*, 149 F. Supp. 3d at 662; *see also Grande*, 384 F. Supp. 3d at 757-58 (relying on "internal emails demonstrat[ing] that [the ISP] viewed notices as evidence that a customer had infringed a copyright").

6

Though BHN received close to 6 million infringement notices during the March 2012 through May 2016 Discovery Period, it terminated just *one* subscriber during the vast majority of that timeframe (and only a handful more in the last few months of the period after it purportedly changed its practices).[2] *Compare* Sahni Decl. Ex. B at 7-13 with *id.* at 18-20. Despite terminating almost no one, BHN asserts in this litigation that it is nonetheless entitled to the DMCA safe harbor. BHN thus claims that it "reasonably implemented" a policy to terminate repeat infringers, based on the theory that none of the millions of infringement notices that it received from Plaintiffs and other rights-holders apprised it of repeat infringement on its network.

Critically, BHN will not be entitled to safe harbor if its contemporaneous documents—those it is refusing to produce in response to RFP 126—demonstrate otherwise: *i.e.*, that BHN treated the infringement notices it received as affirmative evidence of infringement, or that it otherwise *did* know that account holders were repeatedly infringing. *See, e.g., BMG*, 149 F. Supp. 3d at 662; *Grande*, 384 F. Supp. 3d at 757-58.

Courts routinely rely on precisely such documents in granting summary judgment against ISPs on safe harbor, including those that do not

---

[2] BHN terminated [Redacted per L.R. 1.11(d)] subscribers' accounts for non-payment from March 2013 through May 2016 ("Claim Period"). *Id.* Ex. C at 21-23.

7

specifically reference suspension or termination. In *BMG v. Cox*, for instance, the court concluded its safe harbor discussion by noting that:

> critically, the emails in the record reveal that Cox had knowledge that at least some of its account holders were intentionally and repeatedly infringing. *See, e.g.*, Theodore Decl. Ex. 47 ("This customer is well aware of his actions and is upset that '*after years of doing this*' he is now getting caught. Customer was advised to shop sharing, check his wireless and remove *his* PTP programs." (emphases added)); *id.* Ex. 49 ("This Customer knows 'it's *his fault*' ...." (emphasis added)).

*BMG*, 149 F. Supp. 3d at 662. Later in the case, when ruling on post-trial and attorneys-fees motions, the *BMG* court summed up Cox's ineligibility for the safe-harbor by referring to a single email: one in which the head of Cox's Abuse Group exclaimed "F the dmca!!!" *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 967 (E.D. Va. 2016); *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 234 F. Supp. 3d 760, 768 (E.D. Va. 2017). None of the emails the *BMG* court quoted discussed termination or suspension. It was enough that "Cox was able to tell from these account holders' statements and conduct that infringement was occurring. Yet, Cox continued to provide service." *BMG*, 149 F. Supp. 3d at 662.

Similarly, in *UMG v. Grande*, the court relied, in part, on emails such as one from "a senior Grande official stat[ing] that 'we have some customers who are up to their 54th notice . . . [yet] there is no 'three strikes' law or anything that we follow like some ISPs." *Grande*, 384 F. Supp. 3d at 757-58. Also probative were "[o]ther internal emails [that] also demonstrate[d] that

8

Grande viewed notices as evidence that a customer had infringed a copyright." *Id*.

In all of these examples, the quoted internal communications were key to denying safe harbor protection because they demonstrated that the ISP knew a subscriber was repeatedly infringing—in other words, that "appropriate circumstances" to terminate existed. And yet none of these examples would be produced under BHN's limitation because they do not discuss "whether or not to quarantine, suspend, or terminate an account receiving notices of alleged infringement."[3] Opp. at 6.

*Third*, the requested documents are also relevant to Plaintiffs' affirmative claims. To prevail on its contributory infringement claim, for example, Plaintiffs must establish that BHN knew about the repeat infringement on BHN's network, and that BHN materially contributed to it by continuing to provide its network for its subscribers to repeatedly infringe. And if Plaintiffs prove that BHN's conduct was willful, they may be entitled to increased statutory damages. As with any other case, these state-of-mind facts—knowledge and willfulness—are best established with contemporaneous documents like those sought by RFP 126. But again,

---

[3] "Quarantin[ing]" a subscriber, as Plaintiffs understand it, refers to ████████ [Redacted per L.R. 1.11(d)] ████████. *See* Sahni Decl. Ex. D.

BHN's self-imposed limitation would shield from Plaintiffs the most probative documents on these key issues, which Magistrate Judge Wilson failed to adequately consider when he endorsed that approach.

### B. Magistrate Judge Wilson relied on an unsubstantiated and insufficient burden and overbreadth claim.

The discussion at the hearing focused almost entirely on BHN's claim that responding to RFP 126 would be unduly burdensome. Sahni Decl. Ex. A ("Tr.") at 20:13-55:13. Following that lengthy discussion, Magistrate Judge Wilson concluded, "I'm going to deny 126 on the ground that it's overly broad. And as I understand it, the documents that responded to your [termination, suspension, or quarantine search] terms have already been produced." *Id.* at 55:14-17. That burden and overbreadth ruling was erroneous for four reasons.

*First*, this district requires actual evidence of undue burden or overbreadth to oppose a motion to compel relevant documents:

> [w]hen the discovery requests seek relevant information, the responding party has the burden of showing that the discovery is improper, unreasonable, or burdensome. *The responding party must show specifically how the requested discovery is burdensome, overbroad, or oppressive by submitting detailed affidavits or other evidence establishing the undue burden*.

*Jones v. Gov't Emps. Ins. Co.*, 2019 WL 2613284, at *3 (M.D. Fla. Apr. 22, 2019) (emphasis added and cleaned up). That never happened here. BHN included no burden declaration with its Opposition. Insofar as burden was

10

concerned, the Opposition stated only that "BHN should not be required to engage in further burdensome review and redaction."  ECF 295 at 6.

Not surprisingly, Magistrate Judge Wilson therefore acknowledged during the hearing that he had *no basis* to determine whether complying with the full scope of RFP 126 would be unduly burdensome: "What impresses me is the indication that what you have asked for in 126 is burdensome.  Maybe it is, maybe it isn't.  At this point, *I can't tell*."  Tr. at 34:14-17 (emphasis added).  From that point forward, the *only* specific assertions that BHN's counsel made concerning burden were:

1. That BHN had already reviewed the relevant universe of documents for RFP 126, having deployed agreed-upon search terms broad enough to encompass documents responsive to the RFP.  *See* Tr. at 42:16-43:13.
2. That the search terms hit upon either "30,000" or "tens of thousands" of documents.  Tr. at 47:8-11, 50:16-19.
3. That the "delta here" is thus whether BHN should be required to re-review that corpus of documents for those discussing other rightsholders' infringement notices that failed to mention termination or suspension.  *Id*. at 44:18-22.

Again, none of that attorney argument was supported by any declaration or other evidence, and thus could not properly be considered.  *See, e.g.*, *Jones*, 2019 WL 2612284, at *3.

*Second*, even if it were permissible to accept an unsupported burden conclusion, the sole burden BHN identified—that it would have to re-review documents it *already* reviewed—is not a cognizable burden.  The relevant

11

inquiry the Court *should* have considered is whether *Plaintiffs'* request is itself burdensome—not whether it would be burdensome for BHN to comply with that request in full after doing it incorrectly the first time. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 360-62 (N.D. Ill. 2005) (overruling defendant's claim of undue burden based on re-review of 350 boxes of documents—millions of pages—that could have been avoided had relevant documents been produced in first instance).

We know that RFP 126 is *not* burdensome because BHN voluntarily undertook the burden of reviewing the relevant universe of documents, and then assumed the *extra* work of excluding those sought by the full scope of RFP 126, knowing full well Plaintiffs sought them. By reviewing but excluding relevant documents during its initial review, BHN "chose to produce documents in a fashion that either ignored the unresolved controversy or unreasonably assumed that the plaintiffs had agreed to make no further demands, [and thus] they did so at their peril." *In re Sulfuric Acid*, 231 F.R.D. at 362.

The complained-of re-review is thus nothing more than a byproduct of BHN's improper decision to withhold these highly relevant documents when they were initially reviewed, and BHN should not be permitted to rely on a purported burden of its own creation. *Id.* (noting the defendants were "the cause of whatever increased burdens may be incurred in producing" the

12

requested documents and that "[i]n any event, having reviewed the universe of documents once, a second review would be far less burdensome").

*Third*, even if the burden BHN had articulated was a cognizable one, Magistrate Judge Wilson further erred by never performing the proportionality analysis required by Rule 26(b)(1)—namely, whether the cost of re-reviewing approximately 30,000 documents could be considered unduly burdensome when (1) the documents are potentially dispositive to a defense through which BHN seeks to avoid liability and substantial money damages completely; and (2) re-reviewing 30,000 documents would be an unremarkable expenditure in the context of this case and these parties.

*Fourth*, to the extent that, by "overly broad," Magistrate Judge Wilson meant that Plaintiffs do not *need* further internal communications beyond what BHN has produced, that too would be legal error.  Again, from March 2012 to December 2015, BHN terminated a total of one subscriber for copyright infringement.  Sahni Decl. Ex. B at 18-20.  *Any* documents from that period in which BHN acknowledges the infringements described in the copyright notices would be potentially fatal to BHN's safe harbor defense. *See BMG*, 149 F. Supp. 3d at 662; *see also Grande*, 384 F. Supp. 3d at 757-58. And *all* such documents are independently probative—especially colorful documents expressing disregard for the law, of the type that the *BMG* and *Grande* courts cited in making their safe-harbor rulings on summary

13

judgment. *Id.* Plaintiffs are entitled to adduce as much evidence of BHN's knowledge of specific repeat infringers as BHN possesses.

## II.  The Order on RFP 64 Should be Overturned as Contrary to Law and Clearly Erroneous.

Magistrate Judge Wilson committed the same legal errors for RFP 64 as he did for RFP 126. RFP 64 seeks notes of calls between infringing subscribers and BHN's employees:

> Documents sufficient to reflect the content of any calls between your employees, customer service representatives, or members of your internet security or customer safety team, on one hand, and Subscribers or Users identified in Infringement Notices or otherwise identified in connection with actual or alleged copyright infringement, on the other.

ECF 287-2 at 12. BHN previously agreed to produce such call notes related to Plaintiff-Accused Subscribers. Mot. at 17-18. When BHN asserted its safe-harbor defense, Plaintiffs requested that BHN provide responsive notes for <u>all repeat infringers</u> who were the subject of at least three infringement notices in the Claim Period—<u>not just Plaintiff-Accused Subscribers</u>. Here, too, BHN insisted on another hide-the-ball limitation: it refuses to produce the expanded data from the main database in which it is housed—ECAT, the database described in *BHN's own pleadings* as its tool for tracking infringement notices, ECF 164 at 51-52—instead confining BHN's production to two more limited databases, Opp. at 9-10. Again, Magistrate Judge Wilson erred by (1) failing to appreciate the relevance of the call notes in question, and (2) crediting BHN's unsubstantiated burden and overbreadth claims.

14

### A. Magistrate Judge Wilson failed to recognize the highly probative nature of the subscriber call notes that BHN is withholding.

There may be no better source of "actual knowledge of particular account holders who blatantly or repeatedly infringed," *BMG*, 149 F. Supp. At 661, than notes of calls with subscribers who were the subject of multiple notices. These would include, for example, notes reflecting that a subscriber admitted to the infringements detailed in multiple notices and expressed no intent to stop the infringing activity. As with the internal communications described above, such notes would bear directly on whether BHN reasonably implemented a repeat infringer policy that provided for termination in appropriate circumstances, and on whether it had knowledge of repeat infringement on its network and willfully failed to do anything about it. *See* § I.A, *supra*.

By agreeing to produce documents from two of three relevant databases, BHN concedes that notes of calls between its employees and subscribers who had been the subject of three or more infringement notices are relevant and discoverable. It simply refuses to produce such notes from a third database—the most important one—without articulating any basis for this distinction. That is improper, and Magistrate Judge Wilson erred in endorsing this Swiss cheese approach.

### B.     The Order was based on an unsubstantiated and insufficient burden claim.

In denying Plaintiffs' motion as to RFP 64, Magistrate Judge Wilson repeated the same errors with respect to BHN's nonexistent burden evidence:

> PLAINTIFFS' COUNSEL: Well, actually, if the issue is burden, the onus is on them to put forward the burden and they haven't. If they're arguing burden, they should be coming forward with an affidavit and declaration.
>
> THE COURT: No, the burden is somebody tell me why you need this stuff, because you already have a substantial amount of that information.

Tr. at 81:7-13.  BHN not only submitted no declaration in support of its burden claim, but could not even state the volume of call notes contained in the database it claimed was too burdensome to search:

> THE COURT: Okay. In terms of volume in the three systems, which is -- has the biggest volume?
> …
> BHN'S COUNSEL: I don't know, but I do know that we've produced thousands of call notes for non-plaintiff notices from the system we did pull from.

*Id*. at 80:7-18.

In fact, the sum total of BHN's burden showing was the statement that granting Plaintiffs' request "would require BHN to review and redact thousands of additional notes." Opp. at 9-10.  Like the re-review for RFP 126, that vague statement fails a proportionality test for this case.  *See* p.13, *supra*.

Moreover, counsel's regrettable forgetfulness at the hearing resulted in Magistrate Judge Wilson not having before him the information called for by

16

his question. In fact, there is no dispute that ECAT (and not the other two databases that BHN agreed to search in part) is the main source of such call notes; *BHN's own pleadings* describe ECAT as BHN's tool for tracking infringement notices. ECF 164 at 51-52. BHN cannot simply ignore its primary source of core documents, all of which are independently probative, simply because it produced similar documents from two databases it preferred.

### III. The Order's purported remedy of precluding BHN from using the same discovery is no remedy at all.

Magistrate Judge Wilson committed yet another error in concluding, without basis, that Plaintiffs would not be prejudiced by failing to receive the discovery sought by RFPs 126 and 64, as long as BHN was likewise precluded from affirmatively relying on that discovery for its safe harbor defense. Tr. at 18:2-4, 75:9-11; *see also* ECF 310 at 2. This purported "remedy" is anything but.

At the hearing, Magistrate Judge Wilson remarked, "Under safe harbor, if [BHN is] just barred from bringing in on that issue anything [it] didn't produce, I don't see how [Plaintiffs] would be prejudiced." Tr. at 18:2-4; *see also id.* at 75:9-11 ("[A]s far as I'm concerned, I've sort of protected you on the safe harbor stuff. If they don't give you stuff, they can't use it.").

17

In failing to "see how [Plaintiffs] would be prejudiced" by the Order and suggesting Plaintiffs would be "protected" if BHN was barred from using the requested discovery, Magistrate Judge Wilson displayed a fundamental misunderstanding of what Plaintiffs need to rebut BHN's safe-harbor claim, why Plaintiffs need the withheld documents, and why BHN is withholding them. BHN has no use for these documents, which can only undercut its affirmative defense. *See* § I.A, *supra*. Indeed, BHN's qualification for the safe harbor depends on *Plaintiffs not* showing that BHN knew about infringers that it should have terminated. Plaintiffs, by contrast, need BHN's internal e-mails and call logs with repeat infringers to demonstrate that knowledge. It is no solution to state that BHN cannot use those e-mails and call logs either; it would never do so in any case.

Thus, Magistrate Judge Wilson's purported "fix" to mitigate the prejudice of denying the requested discovery is not really a fix at all. This error is yet another reason why his ruling should be overturned.

## CONCLUSION

For these reasons, the Court should overturn Magistrate Judge Wilsons's July 21, 2021 Order pertaining to RFPs 126 and 64.


Dated: August 4, 2021                    */s/ Neema T. Sahni*

Matthew J. Oppenheim (*pro hac vice*)
Scott A. Zebrak (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

David C. Banker, Esquire
Florida Bar No. 0352977
Bryan D. Hull, Esquire
Florida Bar No. 020969
BUSH ROSS, P.A.
1801 North Highland Avenue
P.O. Box 3913
Tampa, FL 33601-3913
Telephone: (813) 224-9255
dbanker@bushross.com
bhull@bushross.com

Jonathan M. Sperling (*pro hac vice*)
Joshua B. Picker (*pro hac vice*)
Phil Hill (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
jpicker@cov.com
pahill@cov.com

Mitchell A. Kamin (*pro hac vice*)
Neema T. Sahni (*pro hac vice*)
Hardy Ehlers (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Stacey Grigsby (*pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
sgrigsby@cov.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 4, 2021, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

Dated:  August 4, 2021

<i>/s/ Neema T. Sahni</i>