IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>BRIGHT HOUSE NETWORKS, LLC<br><br>    Defendant. | Case No. 8:19-cv-710-MSS-TGW |

## BRIGHT HOUSE NETWORKS, LLC'S RESPONSE TO PLAINTIFFS' PARTIAL OBJECTION TO JULY 21, 2021 DISCOVERY ORDER

In their August 4, 2021 Objection, Plaintiffs argue that Bright House Networks, LLC ("BHN") should be compelled to provide further materials in response to two requests for production, RFPs 126 and 64. *See* Dkt. 317, Partial Objection ("Obj."). These requests have a long history, as they were first served a year ago. Since that time, BHN has reviewed and produced reams of data and documents in response to these and other discovery requests. Nonetheless, Plaintiffs have continued to push for more documents after their requests did not turn up the types of admissions they hoped for, speculating (without any evidentiary basis) that BHN must have documents about repeat infringers "in which BHN employees decided 'to just ignore this' or 'issue a warning; that's enough.'" Obj. at 2. After the parties twice briefed Plaintiffs' motion to compel and Judge Wilson held a lengthy discovery hearing, Judge Wilson ruled that BHN did not need to produce additional materials in response to the RFPs at issue. In particular, Judge Wilson held that RFP 126 was overly broad and that

1

Plaintiffs had already received the documents called for by RFP 64. Plaintiffs cannot show that either ruling was clearly erroneous or contrary to law. Plaintiffs' objections to Judge Wilson's rulings should be overruled.

## BACKGROUND

Plaintiffs served the requests at issue long ago—February 2020, in the case of RFP 64, and August 2020, in the case of RFP 126. *See* Dkt. 287-2, Ex. A to Plaintiffs' Motion to Compel ("Mot."); Dkt. 287-3, Ex. B. to Mot. As served, RFP 126 requests BHN's internal communications discussing "any Infringement Notice, any instance of alleged copyright infringement, or any 'ticket' generated in response to any Infringement Notice," including those "concerning the actual or potential termination of any Subscriber's account." *See* Obj. at 4. And RFP 64, as served, calls for "[d]ocuments sufficient to reflect the content of any calls" between BHN employees and subscribers "identified in Infringement Notices or otherwise identified in connection with actual or alleged copyright infringement." *See id.* at 14.

Despite these requests suffering from a number of flaws, including a grossly overbroad scope, BHN responded by reviewing and producing a large volume of materials, along with closely related materials in response to other requests that overlapped in substance. As relevant here, BHN has provided Plaintiffs:

- BHN's internal communications discussing any notice of alleged infringement sent on behalf of Plaintiffs;
- BHN's internal communications discussing any notice of alleged infringement sent by any party and discussing terminating, suspending, or quarantining an account (including any discussions regarding a decision *not* to take such actions);

2

- records of calls from BHN's "ECAT" system[1] that concern any notice of alleged infringement for any subscriber identified as having received notices sent on behalf of Plaintiffs;

- records of calls from BHN's "ESAT" system for any subscriber that received a notice of alleged infringement sent on behalf of Plaintiffs *or* who received three or more notices sent by any party, amounting to thousands of records;

- notes from BHN's "ICOMS" system for any subscriber that received a final warning letter, including records of calls with such subscribers, totaling thousands of records; and

- data for "tickets" generated in response to notices of alleged infringement, which detail the actions BHN took with regards to any subscriber that received a notice sent on behalf of Plaintiffs *or* who received three or more notices sent by any party, amounting to hundreds of thousands of records reflecting BHN's response to copyright infringement allegations.

*See* Dkt. 295, Response to Motion to Compel ("Resp.") at 6-7, 9-10 (June 16, 2021). And of course, BHN has provided additional documents relevant to the case in response to Plaintiffs' many other requests.

Nonetheless, Plaintiffs assert that BHN's production in response to RFPs 126 and 64 is inadequate, purportedly because the documents BHN has produced do not say what Plaintiffs wish them to say. But Judge Wilson heard extensive argument on these issues and correctly recognized that BHN had responded adequately to both of the requests. *See* Dkt. 317-2, Ex. A. to Obj., Excerpts of July 20, 2021 Hr'g Tr. ("Hr'g Tr.") 55:14-17 (denying Plaintiffs' request for more materials in response to RFP 126

---

[1] During the claims period, BHN used two systems to respond to notices of alleged infringement, known by the acronyms ECAT and ESAT. The ECAT system was developed later in time and its subscriber interaction fields were more automated than the older ESAT system. A third system, ICOMS, was BHN's primary billing system, but it was also used to notate and store interactions with subscribers.

as "overly broad" and noting that responsive documents "have already been produced"); *id.* at 85:22-23 (denying Plaintiffs' request for additional materials for RFP 64 because sufficient materials had already been produced). Plaintiffs cannot show that either of these well-reasoned rulings were "clearly erroneous or contrary to law." *See* Fed. R. Civ. P. 72(a).

Moreover, the scheduling order in this case has already been extended multiple times. Fact discovery is set to close in less than a month. Plaintiffs' Objection should be overruled so that this case can proceed to summary judgment.[2]

## LEGAL STANDARD

"Magistrate judges are afforded broad discretion in the resolution of nondispositive discovery disputes." *Tracy P. v. Sarasota Cnty.*, 2007 WL 1364381, at *2 (M.D. Fla. May 9, 2007) (overruling objection to magistrate judge's decision on motion to compel). Such decisions may be modified if clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). "Clear error is a highly deferential standard of review" and is not met merely because the reviewing court "is convinced that it would have decided the case differently." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350-51 (11th Cir. 2005) (citation omitted). Instead, "the reviewing court on the

---

[2] In addition to its substantive failings, Plaintiffs' Objection is untimely as it was filed more than 14 days after Judge Wilson ruled on their motion to compel. Federal Rule of Civil Procedure 72 requires objections to a magistrate judge's nondispositive pretrial ruling to be filed "within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). Plaintiffs were served with Judge Wilson's decision at the discovery hearing on July 20, 2021. *See* Fed. R. Civ. P. 72 advisory committee's note to 1983 amendments ("The rule calls for a written order of the magistrate's disposition to preserve the record and facilitate review. An oral order read into the record by the magistrate will satisfy this requirement.")

4

entire evidence [must be] left with the definite and firm conviction that a mistake has been committed." *Id*. at 1350 (citation omitted). A magistrate judge's order "is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Malibu Media, LLC v. Does*, 923 F. Supp. 2d 1339, 1347 (M.D. Fla. 2013) (internal quotation marks and citation omitted).

## ARGUMENT

I. **JUDGE WILSON DID NOT ERR IN DENYING PLAINTIFFS' MOTION TO COMPEL FURTHER PRODUCTION IN RESPONSE TO RFP 126.**

A. **Judge Wilson Recognized That RFP 126 Is Over Broad.**

Plaintiffs wrongly contend that all of BHN's internal communications referencing *any* notice of alleged infringement—even ones that do not address whether or not to terminate, suspend, or quarantine an account—are "highly probative" of BHN's hypothetical "know[ledge] of blatant, repeat infringers." Obj. at 5-6, 9. Plaintiffs also argue that such materials are relevant to demonstrate BHN's alleged willful conduct, and hence could potentially justify increased statutory damages under Plaintiffs' world view. *Id.* at 5, 9; *see also* Mot. at 11.[3] As Judge Wilson appropriately recognized, however, these arguments are not sufficient to justify Plaintiffs' scorched earth discovery in this case. In particular, RFP 126 encompasses categories of documents with little to no relevance to the issues Plaintiffs have identified, and Judge

---

[3] BHN does not concede that Plaintiffs' statements of the law related to safe harbor, contributory infringement, or statutory damages are correct, but simply accepts them for the sake of responding to Plaintiffs' arguments in their Objection.

5

Wilson correctly denied RFP 126 as overly broad. *See* Hr'g Tr. 55:14-15 ("I'm going to deny 126 on the ground that it's overly broad.").

Importantly, Judge Wilson recognized that BHN did not decline to search for and produce documents responsive to RFP 126 outright. Instead, BHN agreed to produce a reasonable subset of responsive materials. For example, BHN produced all its internal communications discussing any notice of alleged infringement sent by or on behalf of Plaintiffs. *See* Obj. at 4. BHN also produced all internal communications discussing any notice sent by *any* party if it discussed *whether or not* to terminate, suspend, or quarantine an account. Resp. at 6. Additionally, BHN produced detailed "ticket data" showing the precise actions it took for each individual subscriber that received three or more notices of alleged infringement from any rightsholder, not limited to the Plaintiffs. Having received these materials and not found the documents they had hoped for, Plaintiffs now argue that Judge Wilson should have ordered BHN to go back and search for, re-review, and redact documents reflecting communications with subscribers that *did not* receive Plaintiffs' notices and where BHN employees *did not* substantively discuss the enforcement (or non-enforcement) of BHN's DMCA policies. Obj. at 4-5, 13. But Judge Wilson's denial of this request—raised during the twilight of the discovery period—was well-supported by the record.

In support of their expansive request, Plaintiffs cite documents that they claim were the key to success in two related cases and that, allegedly, would not have been "produced under BHN's limitation because they do not discuss whether or not to quarantine, suspend, or terminate an account." Obj. at 7-9 (citing examples from *BMG*

6

*Rts. Mgmt. (US) LLC, et al. v. Cox Commc'ns, Inc.* (E.D. Va. No. 14-cv-1611) and *UMG Recordings, Inc., et al. v. Grande Commc'ns Networks, LLC* (W.D. Tex. No. 1:17-cv-365-DAE)). But, in fact, many of those documents *do* discuss such corrective measures, undermining Plaintiffs' theory that the most "damning" documents are ones in which termination or suspension are not referenced at all. *See* Obj. at 6. In an email quoted by the *Grande* court and cited by Plaintiffs here, *see id*. at 8, a senior official at Grande Communications wrote:

> Understand that the DMCA law requires us to expeditiously notify customers and we can't have knowledge of the content being shared, but there is no 'three strikes' law or anything that we follow like some ISPs. Also, we don't have any verbiage here other than '… may **terminate** the Service at any time…' in our residential AUP policy.

Ex. 1, *Grande* ECF 128-4 (ellipses in original; emphasis added); *see also* Ex. 2, *Grande* ECF 127-17 ("This is notice that continued abuse of the Grande service may result in **termination** of the data services." (emphasis added)). Plaintiffs likewise state that "[n]one of the emails the *BMG* court quoted" in certain key decisions "discussed termination or suspension," and point to a "single email" produced in the *BMG v. Cox* case in support. Obj. at 8. That email and the other documents from *BMG v. Cox* that Plaintiffs cite are not available to BHN, but the version of the same email chain that the plaintiffs in the follow-on *Sony v. Cox* case relied upon did, in fact, discuss suspension. All of these types of documents would have been covered by BHN's prior searches and production if they existed. The fact that Plaintiffs are unhappy that no similarly "colorful" emails have been turned up by BHN's production is no basis to overrule Judge Wilson's ruling. *See id.* at 13.

7

In particular, Judge Wilson did not fail to understand Plaintiffs' argument that "smoking gun" documents demonstrating BHN's knowledge of infringement—if they in fact existed—could be relevant to the case. Instead, he rightfully recognized that Plaintiffs' expansive request was unlikely to uncover any such materials that had not already been produced. *See* Hr'g Tr. 51:8-13 ("This is way too broad, it's clear to me, so I'm giving you a chance, and I regularly say this to the lawyers, don't get greedy on your request for production. So if you have something to be specific about that they already have[n't] produced, then I'm prepared to hear about it."). It was entirely within Judge Wilson's discretion to find Plaintiffs' request overly broad. *See id*. 26:3-8 ("But what you have in this request is something that is seemingly overbroad…. Because it is all communications discussing any infringement notice, any instance of alleged copyright, or any ticket.").[4]

### B.  Judge Wilson Did Not Deny RFP 126 Solely On The Basis Of Burden And, Regardless, Any Such Ruling Would Have Been Proper.

Plaintiffs also argue that Judge Wilson's ruling on RFP 126 should be reversed because he improperly focused on the burden to BHN in responding to the request. *See* Obj. at 10-14. But burden was not the only basis for Judge Wilson's ruling. As described above, Judge Wilson also based his ruling on a finding that Plaintiffs' request was overbroad. That conclusion is unsurprising, as BHN's argument in the underlying briefing focused not just on burden, but also on the fact that Plaintiffs' request was

---

[4]   In contrast, when Judge Wilson denied requests on the basis of relevance, he did so explicitly. *See, e.g.*, Hr'g Tr. 91:23-25 ("But it is -- it appears burdensome and I don't -- I think that its relevance is attenuated. So that's denied.").

"[i]rrelevant, [c]umulative, [a]nd/[o]r [o]verbroad." Resp. at 2. Although Judge Wilson did note that the request was burdensome, Plaintiffs' counsel argued that this concern was moot. Hr'g Tr. 24:12-19 ("The Court: … [I]t sounds like it's burdensome for them to search for everything that just have some complaints of -- … That sounds too burdensome to me. Plaintiffs' Counsel: I agree and that's why we narrowed it, Your Honor."). Judge Wilson then went on to deny the request as overly broad. *Id.* at 51:8 ("This is way too broad …."); *id.* at 52:7-8 ("126 is too broad."); *id.* at 55:14-15 (denying 126 "on the ground that it's overly broad").[5]

Even if Judge Wilson had premised his ruling exclusively on burden, however, that ruling would not constitute clear error. RFP 126 seeks all of BHN's internal communications discussing any notice of alleged infringement, from any rightsholder. As BHN explained in the underlying briefing, there were millions of such notices in the relevant time period. Resp. at 3-4. That point is undisputed. *See, e.g.*, Obj. at 7 (stating that "BHN received close to 6 million infringement notices during the March 2012 through May 2016 Discovery Period"). In situations such as these where the expansive scope of a request is self-evident, it is proper for the Court to readily draw conclusions about burden. *See, e.g.*, *Palma v. Metro PCS Wireless, Inc.*, 18 F. Supp. 3d 1346, 1348 (M.D. Fla. 2014) ("[T]he burden of requiring all [plaintiffs] to review all of their postings on potentially multiple social media sites over a period of four years"

---

[5] As with relevance, Judge Wilson was clear in those instances when he was ruling on the basis of burden. *See supra* note 4 ("[I]t appears burdensome and I don't -- I think that its relevance is attenuated." (quoting Hr'g Tr. 91:23-25)).

9

would be "an extremely onerous and time-consuming task" (internal quotation marks and citation omitted)).

BHN likewise explained that it would be burdensome to manually redact all personally identifiable information ("PII"), such as subscribers' addresses and phone numbers, from millions of notices directed at individual subscribers. Resp. at 5; Hr'g Tr. 35:1-11, 42:21-22. Although Plaintiffs argued that BHN could forgo this effort, Judge Wilson sensibly rejected the argument that BHN "d[id] n[o]t need to redact for PII," because such measures are important to protect the privacy concerns of non-litigants. Hr'g Tr. 53:6-16.[6]

Plaintiffs further argue that Judge Wilson "erred by never performing the proportionality analysis" related to burden "required by Rule 26(b)(1)." Obj. at 13. But this analysis did not need to be explicitly stated at the hearing, as the briefing and the oral argument by BHN provided a sufficient basis for the Court to find that the proportionality analysis favored BHN. Specifically, Rule 26 calls for a consideration of "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In this case, it was uncontroverted that Plaintiffs' request implicated millions of notices and Judge Wilson found that the request was so

---

[6] Plaintiffs also argue that BHN needed to put forward a "burden declaration" in order for Judge Wilson's ruling to not constitute clear error, citing one unpublished order by a magistrate judge in support of their proposition that affidavits are required in this district when assessing burden. Obj. at 10-11. In fact, there is no controlling precedent to that effect, nor does such a requirement appear in this district's local rules or discovery handbook, and burden determinations have been sustained even in the absence of affidavits. *See, e.g.*, *Palma*, 18 F. Supp. 3d at 1348; *McArdle v. City of Ocala,* 451 F. Supp. 3d 1304, 1313 (M.D. Fla. 2020); *Sharp v. Vanguard Realty, Inc.*, 2019 WL 9091658, at *2 (M.D. Fla. Oct. 24, 2019).

10

broad as to be unlikely to lead to beneficial discovery. As such, there was no error in Judge Wilson's finding that the scales tipped decidedly in favor of denying Plaintiffs' request.

Finally, Plaintiffs assert that Judge Wilson's ruling should be overruled because he should have required BHN to conduct a second review for responsiveness before denying Plaintiffs' request. Obj. at 11-13. In support of this argument, Plaintiffs cite one out of circuit opinion by a magistrate judge for the proposition that a party that "cho[o]se[s] to produce documents in a fashion that either ignore[s] [an] unresolved controversy or unreasonably assume[s] that the [other party] had agreed to make no further demands … d[oes] so at their peril." *Id*. at 12 (quoting *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 362 (N.D. Ill. 2005)). However, this theory is squarely contradicted by the directives of this Court, which state that "[i]f a party objects to a request as overbroad when a narrower version of the request would not be objectionable, the documents responsive to the narrower version ordinarily should be produced without waiting for a resolution of the dispute over the scope of the request." Middle District Discovery (2021) at Section III.A.8. That is precisely what BHN did in response to RFP 126. And Plaintiffs were aware of BHN's intent to narrow the scope of its response as far back as early November 2020, but waited until late April 2021 to bring a motion to compel. Dkt. 287-10, Ex. I. to Mot., at 14; Dkt. 272, Initial Mot. to Compel (Apr. 28, 2021). Even if it could be said that Plaintiffs' request for more documents is not overly broad, re-reviewing communications dealing with millions of notices at this late date is unwarranted.

## II. JUDGE WILSON DID NOT ERR IN DENYING PRODUCTION OF FURTHER MATERIALS IN RESPONSE TO RFP 64.

### A. Judge Wilson Correctly Found That BHN Had Sufficiently Produced The Materials Called For By RFP 64.

Plaintiffs argue that Judge Wilson erred when he declined to order BHN to respond further to RFP 64 by producing additional logs of calls with subscribers who had received infringement notices. *See* Obj. at 14-17. But in denying this request, Judge Wilson properly took into account the voluminous materials that Plaintiffs have already received in response to the request. Indeed, BHN has produced all records of calls in its ECAT system[7] that concern any notice of alleged infringement for any subscriber identified as having received notices sent on behalf of Plaintiffs. Resp. at 9. BHN has also produced an even more expansive set of materials from its legacy ESAT system, namely call notes for any subscriber who received notices sent on behalf of Plaintiffs *and* for any subscriber who received three or more notices, amounting to thousands of call records. *Id.* And BHN has produced thousands of responsive records in connection with another (overlapping) discovery request, consisting of notes from BHN's ICOMS system for subscribers who received a final warning letter, including summaries of calls with subscribers regarding notices of alleged infringement. *Id.* Nonetheless, Plaintiffs argued in their underlying motion to compel that BHN had not produced "[d]ocuments sufficient to reflect the content" of such calls in response to RFP 64. Mot. at 16-17. Plaintiffs therefore asked Judge Wilson to compel production

---

[7] On the different systems BHN used during the claims period, see note 1 above.

of *yet more* materials in connection with this RFP, namely, call notes from the ECAT system for calls with subscribers who were the subject of three or more notices. *Id.* at 17-18.

In their Objection, Plaintiffs assert that Judge Wilson failed to credit their argument about the relevance of "notes of calls with subscribers who were the subject of multiple notices." Obj. at 15. BHN need not address the relevance or irrelevance of such notes, as Plaintiffs' assertion that Judge Wilson overlooked the potential relevance of such materials—an assertion for which they provide no support, *see id.* at 14-15—is incorrect. In fact, Judge Wilson did not find the materials irrelevant, but simply recognized that nothing further was required from BHN in light of the extensive materials it had already provided:

> PLAINTIFFS' COUNSEL:  … They [BHN] [a]re not giving us the entirety of the puzzle to see how they were interacting with these infringers.
> THE COURT:  *You're not getting the entirety of the puzzle because you asked for documents sufficient to reflect the content.*  That's this one.
> PLAINTIFFS' COUNSEL: So they -- yes, that's right.
> THE COURT:  *So that's an appropriate way to state it, but you're limited to that.*

Hr'g Tr. 82:15-23 (emphasis added); *see also id.* at 85:22-23 ("That's denied. What's been produced is documents sufficient to show that.").

Plaintiffs do not articulate why Judge Wilson's ruling that they had already received "sufficient" documents, as called for by their request, was erroneous. The closest Plaintiffs come is their assertion that the ECAT system, from which they seek additional records, was "the most important" of BHN's databases. Obj. at 15. In fact, ECAT was only one of several databases in use during the claims period which

13

included call notes. *See* Resp. at 9 n.7. And while Plaintiffs point to statements about ECAT in BHN's counterclaims, those statements simply identify ECAT as a system used "to process, respond to, and to address" notices, and make no mention of the call notes that Plaintiffs seek. *See* Obj. at 14 (citing Dkt. 164, Am. Countercls. at 51-52 (Aug. 25, 2020)). Plaintiffs' argument that ESAT is an inadequate system to provide the information they seek rings hollow given that they have received thousands of notes from that system already, many of which summarize calls between BHN employees and subscribers regarding notices of alleged infringement.

Ultimately, Plaintiffs' motion and objection are no more than a reflection of their frustration that, having received documents "sufficient to show" the content of BHN's calls with alleged infringers, none of the materials BHN produced turned up the "smoking gun" they had hoped for. *See* Hr'g Tr. 83:9. That is not a basis to overturn Judge Wilson's ruling.

### B. BHN Properly Set Forth The Burden That Would Be Required To Respond Further To RFP 64.

Plaintiffs' argument that Judge Wilson's order concerning RFP 64 "was based on an unsubstantiated and insufficient burden claim" is also incorrect. *See* Obj. at 16.

Plaintiffs did not contest that BHN's briefing demonstrated that a further response to RFP 64 would require the review and redaction of thousands of notes about calls with subscribers. *See* Resp. at 9-10; Hr'g Tr. 68:23-24. It is also uncontested that BHN received millions of notices of alleged infringement during the claims period, which is indicative of the call volume related to subscribers who received multiple

14

notices. *See supra* at 9.[8] Courts readily acknowledge the burden associated with extensive redactions for PII, as would have been required here. *See, e.g.*, *Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.*, 2010 WL 779494, at *4 (S.D. Ind. Feb. 26, 2010); *see also* The Sedona Principles, at 163 (3d ed. 2018) ("Redactions or other actions necessary to protect private, personal information to meet required safeguards can be costly and time-consuming."). Even if it could be said that Judge Wilson's finding that BHN had already sufficiently responded to Plaintiffs' request was not enough to sustain his ruling, the evidence BHN put forward was more than adequate to show that responding further would subject it to a burden that could not be balanced by the potential benefit of further cumulative discovery.

### III. JUDGE WILSON DID NOT ERR IN HOLDING THAT A BAR ON BHN USING UNPRODUCED DOCUMENTS WOULD CURE ANY POTENTIAL PREJUDICE TO PLAINTIFFS.

Judge Wilson also ruled, with respect to both RFPs 126 and 64, that "the defense cannot use any documents in support of a Safe Harbor that they have not produced." Hr'g Tr. 55:24-56:2. Plaintiffs argue that this sensible order fails to remedy the prejudice they now purportedly face because BHN was not compelled to produce the documents Plaintiffs sought. Obj. at 17-18.

In particular, Plaintiffs argue that "Judge Wilson displayed a fundamental misunderstanding of what Plaintiffs need to rebut BHN's safe-harbor claim, why

---

[8] For the reasons described above, *see supra* note 6, Plaintiffs' argument that such facts should not be credited because BHN did not submit a declaration is meritless. *See* Obj. at 16. This is particularly true as the relevant facts are not disputed.

15

Plaintiffs need the withheld documents, and why BHN is withholding them." Obj. at 18. The key issue (according to Plaintiffs) is whether "BHN knew about infringers that it should have terminated." *Id.* But Plaintiffs do not, and cannot, explain why it would be that "BHN has no use for th[e] documents [that Plaintiffs seek], which can only undercut its affirmative defense." *Id.*

As to RFP 64, Plaintiffs have a broad set of notes from calls between BHN and allegedly infringing subscribers. *See supra* Part II.A. There is no reason to believe that the additional notes that Plaintiffs seek here—those that were maintained in the ECAT database, and that logged calls with subscribers who were *not* the subject of notices of alleged infringement sent by Plaintiffs, but were the subject of notices from others— are the are ones that BHN would "never" use or that would be especially probative of BHN's knowledge. *See id.*; Obj. at 18.

Likewise, it cannot be said with regard to RFP 126 that BHN's internal communications discussing notices not sent by Plaintiffs that do not discuss terminating, suspending, or quarantining an account are the key to BHN's knowledge of purported infringement. *See supra* Part I.A. As shown above, the documents Plaintiffs cite for this point do not support its argument. *See supra* at 7. And regardless, there is no reason to think that such documents would be harmful to BHN such that it would "never" use them. Obj. at 18. An email that discusses notices but not termination or suspension could just as well support the conclusion that BHN did not believe the notices were reliable proof of infringement and therefore such actions were not necessary as the contrary.

16

In sum, no error flowed from Judge Wilson's decision. His ruling prohibiting BHN from using any subsequently produced documents in support of a safe harbor argument was sufficient to address Plaintiffs' claim of prejudice.

## CONCLUSION

For the foregoing reasons, BHN respectfully requests that the Court overrule Plaintiffs' August 4, 2021 Objection.

Dated: August 18, 2021                Respectfully submitted,

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Tel: (415) 591-1506
Email: jgolinveaux@winston.com

Michael S. Elkin (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Email: melkin@winston.com

Erin R. Ranahan (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
Tel: (213) 615-1933
Email: eranahan@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
E-mail: mbrody@winston.com

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro (*pro hac vice*)
Nathan A. Hamstra (*pro hac vice*)
Allison Huebert (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Email: andrewschapiro@quinnemanuel.com
Email: nathanhamstra@quinnemanuel.com
Email: allisonhuebert@quinnemanuel.com

Todd A. Anten (*pro hac vice*)
Jessica Rose (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7192
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

Charles K. Verhoeven (*pro hac vice*)
David Eiseman (*pro hac vice*)
Linda Brewer (*pro hac vice*)
Michelle A. Clark (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com
Email: michelleclark@quinnemanuel.com

William J. Schifino, Jr.
Florida Bar No. 564338
GUNSTER, YOAKLEY & STEWART, P.A.
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
Tel: (813) 228-9080
Email: bschifino@gunster.com

*Counsel for Defendant*
*Bright House Networks, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 18, 2021, I caused a true and correct copy of the foregoing and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

>*/s/ Andrew H. Schapiro*
>Andrew H. Schapiro