UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

      **Plaintiffs,**

**v.**                                   **Case No: 8:19-cv-710-MSS-TGW**

**BRIGHT HOUSE NETWORKS,
LLC,**

      **Defendant.**

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant's Objections to the Magistrate Judge's Discovery Rulings, (Dkts. 212, 298), and Plaintiffs' responses in opposition thereto, (Dkts. 230, 304); and Plaintiffs' Objections to the Magistrate Judge's Discovery Rulings, (Dkts. 216, 317), and Defendant's responses in opposition thereto. (Dkts. 233, 318) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **SUSTAINS IN PART and OVERRULES IN PART** the Parties' objections to the discovery rulings.

## I.    BACKGROUND

### A. Factual Background and Procedural History

This action arises from copyright infringement allegedly committed by thousands of subscribers to Bright House Networks, LLC, formerly one of the largest internet service providers in the country. (Dkt. 94 at ¶¶ 1-2) Plaintiffs—a collection of record companies and music publishers that hold copyrights in "some of the world's

most famous and popular music"—seek to hold Bright House liable for refusing to take steps to stop its subscribers from illegally downloading and distributing Plaintiffs' music through BitTorrent and other file-sharing services. (Id. at ¶ 2) Plaintiffs allege that, even after their representatives sent hundreds of thousands of notices to Bright House identifying specific instances of infringement by its subscribers, Bright House declined to terminate or otherwise take meaningful action against the infringing subscribers. (Id. at ¶¶ 2-3) According to Plaintiffs, Bright House's failure to act in the face of this knowledge subjects it to secondary liability for the direct infringement committed by its users. (Id. at ¶ 5)

Plaintiffs initiated this action on March 22, 2019, and subsequently filed an Amended Complaint asserting two claims against Bright House: contributory copyright infringement and vicarious copyright infringement. (Dkt. 1; Dkt. 94 at ¶¶ 90-107) Bright House moved to dismiss the vicarious liability claim, and the Court granted that motion on July 8, 2020. (Dkts. 99, 142) The surviving claim for contributory infringement asserts that, "[t]hrough Plaintiffs' infringement notices and other means," Bright House knew its subscribers were infringing Plaintiffs' works "on a massive scale." (Dkt. 94 at ¶ 93) Nevertheless, according to Plaintiffs, Bright House "facilitated, encouraged, and materially contributed to such infringement by continuing to provide its network and the facilities necessary for its subscribers to commit repeated infringements." (Id.) Plaintiffs seek relief for infringement that allegedly occurred from March 24, 2013 to May 17, 2016. (Id. at ¶ 5)

2

Following the dismissal of the vicarious liability claim, Bright House answered the Amended Complaint and filed counterclaims, which it subsequently amended. (Dkts. 151, 164) The counterclaims asserted that Plaintiffs violated the Digital Millennium Copyright Act, 17 U.S.C. § 512(f), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, by sending Bright House knowingly false infringement notices. (Dkt. 164 at ¶¶ 131-63) Bright House alleged that the notices were false because they incorrectly asserted that Plaintiffs owned the works in question. (Id. at ¶¶ 66-67, 73-74) Bright House claimed to have discovered the alleged misrepresentations in February 2020, when Plaintiffs sought leave to file an Amended Complaint removing 283 works (the "Dropped Works") from this action. (Id. at ¶¶ 65-66)[1] Bright House alleged, on information and belief, that Plaintiffs dropped at least some of these works because they either did not own them or Bright House subscribers did not infringe them. (Id. at ¶¶ 67-68) Plaintiffs moved to dismiss the Amended Counterclaims, and the Court granted that motion on December 29, 2020. (Dkts. 171, 244)

## B. The Discovery Rulings and the Parties' Objections

The Parties have litigated multiple discovery disputes since this action commenced. This Order concerns the Parties' objections to a series of discovery rulings by Judge Wilson.

---

[1] There are approximately 7,000 musical works at issue in this lawsuit. (Dkt. 94-1; Dkt. 94-2)

First, Bright House objects to Judge Wilson's denial of its motion to compel Plaintiffs to produce additional documents in response to four requests for production ("RFPs"). (Dkt. 212 at 1-2, 7) The RFPs read as follows:

> **RFP 27**: All documents that mention, refer to, or relate to Bright House and/or the above-captioned litigation that were created, received, or sent from 2013 to the present.

> **RFP 65**: For the time period May 1, 2012 through present, documents sufficient to demonstrate the relationship, agreement, and/or communications between You and/or any other Plaintiff and the RIAA and/or MarkMonitor[2] regarding this lawsuit, the Copyright Works, and/or Bright House.

> **RFP 67**: Documents concerning any technical or qualitative analysis of any computer code or other systems responsible for the process in identifying infringement and/or producing the infringement notices that were sent to Bright House or upon which You will rely in this litigation, including any documents drafted by the Center for Copyright Information ("CCI"), MarkMonitor, StrozFriedberg, or Harbor Labs.

> **RFP 68**: For the time period May 1, 2012 through present, documents and correspondence addressing the reliability and/or efficacy of the MarkMonitor System, including but not limited to audits related thereto, and documents and communications with MarkMonitor, Stroz Friedberg, and/or Harbor Labs containing or addressing any technical assessments of the MarkMonitor System.

Plaintiffs agreed to produce documents responsive to each of these requests but declined to produce any documents postdating May 2016, the end of the claim period in this action. (Id. at 7) With respect to RFPs 67 and 68, Plaintiffs agreed to produce documents assessing the reliability of the system their representatives used to send

---

[2] Plaintiffs hired MarkMonitor, an antipiracy vendor, to detect online infringement of Plaintiffs' works, generate notices of infringement, and then send those notices to Bright House when MarkMonitor believed that Bright House subscribers had infringed Plaintiffs' works. (Dkt. 230 at 3)

infringement notices to Bright House, but declined to produce documents concerning the "Copyright Alert System," a private, voluntary arrangement between various movie studios, record companies (including Plaintiffs), and certain internet service providers—but *not* Bright House. (Id. at 16-17) Judge Wilson denied Bright House's motion to compel Plaintiffs to produce (i) post-May 2016 documents responsive to these requests, and (ii) documents related to the Copyright Alert System. (Dkt. 210 at 2) These rulings were consistent with Judge Wilson's earlier decisions to define the relevant time period for discovery as March 1, 2012 to May 31, 2016, and to reject Bright House's request for "documents related to the technology considered and used in connection with the [Copyright Alert System] to monitor or mitigate copyright infringement." (Dkt. 80 at 20; Dkt. 93 at 1-3)

Second, Bright House objects to Judge Wilson's denial of its motion to compel production of documents responsive to RFP 98. (Dkt. 212 at 21-23) That RFP sought "[d]ocuments sufficient to demonstrate Your ownership of, or possession of an exclusive right in, each of the Dropped Works at the time You sent a Notice of Alleged Infringement for that Dropped Work, and that You were authorized to send Notices of Alleged Infringement concerning those works between January 2013 and March 2015." (Id. at 7-8) Plaintiffs declined to produce any documents in response to this request. (Id. at 8) Bright House principally contended that RFP 98 was appropriate because it sought information relevant to its counterclaims, which have since been dismissed. (Dkt. 159 at 24-25; Dkt. 244)

5

Third, Bright House objects to Judge Wilson's denial of its motion to compel responses to Requests for Admission ("RFAs") 110-364, which asked Plaintiffs to "[a]dmit that You did not own, or have authorization to assert rights on behalf of the owner for, the Dropped Work [individually identified by title] during the Claims Period." (Dkt. 298 at 3) As Bright House concedes, the RFAs were an "alternative way to obtain" the same information as RFP 98. (Id.) Judge Wilson denied the motion to compel on the ground that the information sought was not relevant and would be overly burdensome to produce. (Dkt. 298-2 at 60:9-11, 61:13-15, 62:24-63:1)

Fourth, Plaintiffs object to Judge Wilson's decision to grant Bright House's motion to compel Plaintiffs to respond to Interrogatory 13. (Dkt. 216) That Interrogatory asked Plaintiffs to "[i]dentify which sound recordings listed on Exhibit A (including any amendments to same) to Plaintiffs' Complaint were first issued or released together on or as albums or compilations, including for each the name of the corresponding album or compilation." (Id. at 2-3) Bright House contended that this information was relevant in light of 17 U.S.C. § 504(c), which provides that "all the parts of a compilation or derivative work constitute one work" for the purpose of calculating statutory damages. (Dkt. 159 at 6) Plaintiffs maintained that the Interrogatory sought irrelevant information because "each sound recording at issue was individually exploited during the Claim Period," and thus "each is eligible for its own [statutory damages] award." (Dkt. 174 at 5)

Fifth, Plaintiffs object to Judge Wilson's denial of their motion to compel Bright House to produce additional documents in response to RFPs 64 and 126. (Dkt. 317)

RFP 64 sought "[d]ocuments sufficient to reflect the content of any calls between [Bright House's] employees, customer service representatives, or members of [Bright House's] internet security or customer safety team, on one hand, and Subscribers or Users identified in Infringement Notices or otherwise identified in connection with actual or alleged copyright infringement, on the other." (Id. at 14) RFP 126 sought Bright House's "internal communications discussing any Infringement Notice, any instance of alleged copyright infringement, or any 'ticket' generated in response to any Infringement Notice, including internal communications concerning the actual or potential termination of any Subscriber's account with [Bright House]." (Id. at 4)

Bright House agreed to search for and produce some documents responsive to these requests, including (i) internal communications concerning notices of infringement sent by Plaintiffs, (ii) internal communications concerning notices of infringement sent by any party as long as those communications discussed whether to terminate, suspend, or quarantine a Bright House user's account, and (iii) call records concerning notices of infringement for any subscribers who (a) received notices from Plaintiffs or (b) received three or more notices sent by any party. (Dkt. 318 at 2-3) Plaintiffs nonetheless contended that Bright House's production was inadequate because (among other things) it excluded internal Bright House communications about infringers that contain "no discussion about quarantining, suspending, or terminating." (Dkt. 317-2 at 12:5-12) Judge Wilson rejected Plaintiffs' arguments, concluding that Bright House had responded adequately to both RFPs. (Id. at 55:14-17, 85:22-23)

## II.    LEGAL STANDARD

A district judge is required to defer to a magistrate judge's non-dispositive order unless it is clearly erroneous or contrary to law. See TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC, 929 F. Supp. 2d 1255, 1259-60 (M.D. Fla. 2013). Further, Federal Rule of Civil Procedure 72(a) states:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

A finding is clearly erroneous when, although there is evidence to support it, the reviewing court upon reviewing the entirety of the evidence is left with the definite and firm conviction that a mistake has been committed. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985). This standard does not entitle a reviewing court to reverse a finding simply because it would have decided the matter differently. Id. Further, an order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." TemPay, Inc., 929 F. Supp. 2d at 1260.

## III.    DISCUSSION

### A. RFPs 27, 65, 67, and 68

Bright House's RFPs 67 and 68 sought documents relating to analyses of any "MarkMonitor System" used to detect copyright infringement and send notices of infringement. (Dkt. 212 at 7) Bright House's RFP 65 sought, from "May 1, 2012

through present, documents sufficient to demonstrate the relationship, agreement, and/or communications between [Plaintiffs] and the RIAA and/or MarkMonitor regarding this lawsuit, the Copyright Works, and/or Bright House." (Id. at 7) Judge Wilson denied Bright House's motion to compel Plaintiffs to produce (i) post-May 2016 documents responsive to these requests, and (ii) documents related to the Copyright Alert System. (Dkt. 210 at 2) Bright House objects to these rulings on two principal grounds. First, Bright House contends that the denial of the request for documents postdating May 2016 was erroneous because "it failed to account for the two-plus-year period *after* May 2016 when Plaintiffs used MarkMonitor to manufacture virtually all of the evidence they will use to support their direct infringement case." (Dkt. 212 at 9) Second, Bright House argues that, although Plaintiffs agreed to produce analyses of the MarkMonitor system used to send notices to Bright House, Plaintiffs should also be compelled to produce analyses of the MarkMonitor program used in the Copyright Alert System. (Id. at 15-19) Neither objection warrants reversing Judge Wilson's rulings.

Bright House's timing objection fails because it has not shown that Plaintiffs used MarkMonitor after May 2016 to gather evidence of copyright infringement. In January 2016, Plaintiffs tasked MarkMonitor, an antipiracy vendor, with locating and downloading music files on the internet that matched the files MarkMonitor had previously determined to be infringing. (Dkt. 222-1) This project was necessary because when MarkMonitor initially searched the internet for music files that infringed Plaintiffs' copyrights, it would download an infringing file, use the metadata to

determine whether a Bright House subscriber had unlawfully shared the file, and then discard the file. (Dkt. 222 at 2-3) The 2016 download project was complete by February 2016, and the downloaded files were saved to a hard drive in March 2016 and subsequently produced to Bright House in discovery. (Dkt. 230 at 8) Although 18 out of the approximately 104,000 files on the hard drive appeared to be dated December 2018, that was a result of the drive "being mounted to a computer in December 2018." (Dkt. 230-3) At Bright House's request, MarkMonitor subsequently sent Bright House an additional copy of the hard drive; all of the files on that drive were dated March 2016. (Dkt. 230-4) Bright House has not shown that, as part of its work for Plaintiffs, MarkMonitor continued downloading files after May 2016. Thus, there is no basis to compel Plaintiffs to supplement their document production to include documents postdating May 2016.[3]

Two additional considerations weigh against requiring Plaintiffs to produce post-May 2016 documents. First, several months before issuing the challenged decision, Judge Wilson had defined the discovery period as March 1, 2012 to May 31, 2016. (Dkt. 93 at 1-3; Dkt. 230-1 at 38:16-20) Bright House did not object to this ruling. Second, the Special Master in a related case—Warner Records v. Charter Communications, Inc., No. 1:19-cv-874-RBJ-MEH (D. Colo.)—denied materially identical RFPs by Charter Communications, Inc., Bright House's parent company. (Dkt. 230-8 at 10-11) The Special Master reasoned that "Charter ha[d] not established

---

[3] The Court notes that Plaintiffs will not be permitted to use in this litigation any documents postdating May 2016 that MarkMonitor may have created as part of its download project.

that the requested documents post-dating the claim period [March 1, 2012 to May 17, 2016] are sufficiently relevant to this matter and the burden of producing such documents therefore outweighs their probative value." (Id.)

Bright House's next objection—that Judge Wilson erroneously failed to compel Plaintiffs to produce analyses of the MarkMonitor program used in the Copyright Alert System—fares no better. As noted above, Bright House did *not* participate in the Copyright Alert System, a voluntary arrangement between movie studios, record companies (including Plaintiffs), and certain internet service providers to deter online infringement. (Dkt. 230-1 at 134:25-135:8) Significantly, Plaintiffs produced documents assessing the reliability of the MarkMonitor program their representatives actually used to send infringement notices to Bright House. (Dkt. 212 at 16-17) Moreover, Judge Wilson previously rejected as "too broad" Bright House's separate request for "documents related to the technology considered and used in connection with the [Copyright Alert System] to monitor or mitigate copyright infringement." (Dkt. 80 at 20; Dkt. 93 at 23; Dkt. 230-1 at 136:7-9) Bright House did not object to that earlier ruling. Accordingly, Judge Wilson did not err in rejecting Bright House's request for documents assessing the reliability of the Copyright Alert System.

Finally, the Court sustains in part Bright House's objection to Judge Wilson's denial of its motion to compel Plaintiffs to produce additional documents in response to RFP 27. That RFP sought "[a]ll documents that mention, refer to, or relate to Bright House and/or the above-captioned litigation that were created, received, or sent from 2013 to the present." (Dkt. 212 at 7) In response to that request, Plaintiffs agreed to

11

produce responsive, non-privileged documents for the time period January 1, 2013 to May 17, 2016. (Id. at 19) Plaintiffs declined, however, to produce any responsive, non-privileged documents postdating May 17, 2016. Judge Wilson acknowledged that Plaintiffs had already agreed to produce documents through May 17, 2016. (Dkt. 222-2 at 104:21-25) However, Judge Wilson declined to compel Plaintiffs to provide any responsive documents after the discovery period ending May 17, 2016, on the ground that the request was overbroad. (Id.) This decision was clearly erroneous. Relevant documents in Plaintiffs' possession do not become less discoverable simply because they were created after the claim period in this action. The request is also only overbroad to the extent that it requests documents that may relate to Bright House but not relate to this lawsuit. Otherwise, requests that seek documents that relate to this lawsuit or that relate to Bright House and this lawsuit are not overbroad, and those documents are not irrelevant. Accordingly, the Court orders Plaintiffs to respond to a narrowed version of RFP 27 that covers January 1, 2013 to the present. Specifically, by November 12, 2021, Plaintiffs must produce to Bright House all non-privileged documents that mention, refer to, or relate to Bright House *and* the above-captioned litigation and all non-privileged documents that mention, refer to, or relate to the above-captioned litigation that were created, received, or sent from January 1, 2013 to the present. If the documents simply relate to Bright House but not to the above-captioned litigation, they are not subject to production, and, if they are privileged, obviously, they may be withheld under a claim of privilege.

### B. RFP 98 and RFAs 110-364

Bright House's RFP 98 sought "[d]ocuments sufficient to demonstrate [Plaintiffs'] ownership of, or possession of an exclusive right in, each of the Dropped Works at the time [Plaintiffs] sent a Notice of Alleged Infringement for that Dropped Work, and that [Plaintiffs] were authorized to send Notices of Alleged Infringement concerning those works between January 2013 and March 2015." (Dkt. 212 at 7-8) Bright House's RFAs 110-364 sought the same information through interrogatories, asking Plaintiffs to "[a]dmit that You did not own, or have authorization to assert rights on behalf of the owner for, the Dropped Work [individually identified by title] during the Claims Period." (Dkt. 298 at 3) There is no basis to reverse the denial of Bright House's motion to compel responses to these two discovery requests.

First, the discovery requests can no longer be defended on the ground that they are relevant to Bright House's counterclaims. Those counterclaims were predicated on the assertion that Plaintiffs violated federal and state law by sending Bright House infringement notices that falsely represented Plaintiffs owned the Dropped Works. (Dkt. 164 at ¶¶ 131-63) As noted above, this Court dismissed Bright House's counterclaims for failure to state a claim in December 2020. (Dkt. 244) Thus, RFP 98 and RFAs 110-364 cannot be justified on the basis that they will lead to information relevant to the now-dismissed counterclaims.

Second, the Court rejects Bright House's argument that the requested discovery is appropriate because it could call into question the reliability of Plaintiffs' system for sending infringement notices. (Dkt. 298 at 4) This argument rests on Bright House's

speculation that Plaintiffs removed the Dropped Works from this action because they did not own those works when they sent the infringement notices. (Dkt. 212 at 21) Bright House has not, however, pointed to any evidence supporting this assertion. Notably, the Case Management and Scheduling Order ("CMSO") entered in this action expressly permitted Plaintiffs to "file amended versions of Exhibit A (list of sound recordings at issue) and/or Exhibit B (list of compositions at issue) to the Complaint on or before Friday, February 14, 2020 to conform those exhibits to information learned in discovery." (Dkt. 68 at 5) Plaintiffs' decision to remove the Dropped Works in accordance with the CMSO does not obligate them to collect and review documents for musical works for which they are no longer seeking relief. Because the Dropped Works are no longer at issue in this action, Judge Wilson correctly denied Bright House's motion to compel responses to RFP 98 and RFAs 110-364.

### C. Interrogatory 13

Judge Wilson ordered Plaintiffs to respond to Bright House's Interrogatory 13, which asked Plaintiffs to "[i]dentify which sound recordings listed on Exhibit A (including any amendments to same) to Plaintiffs' Complaint were first issued or released together on or as albums or compilations, including for each the name of the corresponding album or compilation." (Dkt. 210 at 2; Dkt. 216 at 2-3) Plaintiffs object to this ruling primarily on the ground that the Interrogatory seeks irrelevant information. (Dkt. 216 at 1-2) Specifically, Plaintiffs contend that, because Plaintiffs release, license, promote, and monetize their sound recordings on an individual basis,

14

Plaintiffs are necessarily entitled to a separate statutory damages award for each infringed song. (Id.) Thus, Plaintiffs argue, any discovery about which sound recordings were first issued as part of an album or compilation is irrelevant as a matter of law. (Id.) Plaintiffs' objection lacks merit.

The Copyright Act states that "all the parts of a compilation or derivative work constitute one work" for the purpose of calculating statutory damages. 17 U.S.C. § 504(c)(1). A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. The Eleventh Circuit has held that "separate copyrights are not distinct 'works' unless they can live their own copyright life." MCA Television Ltd. v. Feltner, 89 F.3d 766, 769 (11th Cir. 1996). "This test focuses on whether each expression has an independent economic value and is, in itself, viable." Id. Courts look to whether the copyright holder "chose to create, market, deliver, register, and describe the [works] as collections" or as individual works. Yellow Pages Photos, Inc. v. Ziplocal, LP, 795 F.3d 1255, 1278 (11th Cir. 2015).

Contrary to Plaintiffs' assertion, Interrogatory 13 seeks relevant information. Whether the approximately 7,000 musical works at issue in this action were first issued or released together as albums or compilations bears directly on how Plaintiffs "chose to create, market, deliver, register, and describe" those works. Id. Accordingly, the information sought by Interrogatory 13 is relevant to determining whether each work

"can live [its] own copyright life" and thus support a separate statutory damages award. Feltner, 89 F.3d at 769.

Citing "[t]he widespread availability of popular music for downloading, streaming, and licensing by the track," Plaintiffs claim that it is "self-evident that the sound recordings in this case are distinct works with independent economic value." (Dkt. 216 at 6 (emphasis omitted)) This argument is premature. As explained above, courts look to several factors in determining whether a work can "live [its] own copyright life." Feltner, 89 F.3d at 769. Indeed, "the independent economic value test does not begin and end with an inquiry into whether a separate unit in a multi-work project could possibly have some independent economic value if sold separately." Yellow Pages Photos, Inc., 795 F.3d at 1281. On this record, the Court cannot determine as a matter of law that each of the approximately 7,000 sound recordings at issue in this case satisfies the independent economic value test. Plaintiffs may renew this argument at summary judgment or trial.

Plaintiffs further contend that collecting the evidence necessary to respond to Interrogatory 13 will be unduly burdensome. (Dkt. 216 at 8) The Special Master in Warner Records, however, previously ordered Plaintiffs to respond to a materially identical interrogatory covering the vast majority of the works at issue in the present action. (Dkt. 233-4 at 17-20) As a result, responding to Interrogatory 13 will require Plaintiffs to compile the relevant information for only a few hundred non-overlapping works. (Dkt. 233 at 11-2) This significantly reduces Plaintiffs' burden in responding to the Interrogatory. Finally, the Court concurs in Judge Wilson's rejection of the

argument that Interrogatory 13 is ambiguous. The Interrogatory seeks information regarding which works "were first issued or released together on or as albums or compilations." (Dkt. 216 at 2-3) As Judge Wilson correctly concluded, the language of this Interrogatory is as "clear as it can be." (Dkt. 233-2 at 47:2-3)

### D. RFPs 64 and 126

The final set of objections concerns Judge Wilson's denial of Plaintiffs' motion to compel Bright House to produce additional documents in response to RFPs 64 and 126. (Dkt. 317) RFP 64 sought "[d]ocuments sufficient to reflect the content of any calls between [Bright House's] employees, customer service representatives, or members of [Bright House's] internet security or customer safety team, on one hand, and Subscribers or Users identified in Infringement Notices or otherwise identified in connection with actual or alleged copyright infringement, on the other." (Id. at 14) RFP 126 sought Bright House's "internal communications discussing any Infringement Notice, any instance of alleged copyright infringement, or any 'ticket' generated in response to any Infringement Notice, including internal communications concerning the actual or potential termination of any Subscriber's account with [Bright House]." (Id. at 4)

The Court sustains Plaintiffs' objection to Judge Wilson's denial of their motion to compel Bright House to produce additional documents responsive to RFP 64. In response to RFP 64, Bright House produced all records of calls with subscribers concerning notices of infringement sent by Plaintiffs. (Dkt. 318 at 3) Bright House also

provided call records from its ESAT database[4] for any subscriber "who received three or more notices sent by any party." (Id.) Finally, Bright House produced call records for any subscriber who received a "final warning letter" about alleged infringement. (Id.) Plaintiffs contend that Judge Wilson erroneously declined to compel Bright House to produce additional documents in response to RFP 64—specifically, call records from Bright House's ECAT database for subscribers who received three or more notices of infringement from any party. (Dkt. 317 at 14)

The Court concludes that Judge Wilson erred in declining to compel the production of these documents. Without the requested call records from the ECAT system, Bright House's document production cannot be considered "sufficient to reflect the content of *any calls*" between Bright House and its subscribers concerning alleged copyright infringement. (Dkt. 317 at 14 (emphasis added)) Indeed, the requested call records from the ECAT system could provide evidence relevant to Bright House's entitlement to safe harbor under the Digital Millennium Copyright Act—specifically, whether Bright House had "actual knowledge of particular account holders who blatantly or repeatedly infringed." BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc., 149 F. Supp. 3d 634, 661 (E.D. Va. 2015). Moreover, Bright House itself described the ECAT system as "a tool for processing and addressing copyright infringement notices." (Dkt. 164 at ¶ 33) Although Bright House now contends that

---

[4] Bright House used two systems (ESAT and ECAT) to respond to notices of alleged infringement. (Dkt. 318 at 3 n.1) The ECAT system "was developed later in time and its subscriber interaction fields were more automated than the older ESAT system." (Id.)

producing the requested call records would be unduly burdensome, Bright House's counsel at the discovery hearing could not estimate the volume of call notes contained in the ECAT system or otherwise show that production would be unduly burdensome from a proportionality perspective. (Dkt. 317-2 at 80:7-18) Accordingly, by November 12, 2021, Bright House must produce, for the time period of March 1, 2012 to May 31, 2016, all call records from its ECAT database for subscribers who received three or more notices of infringement from any party.

Judge Wilson did not err, however, in concluding that Bright House sufficiently responded to RFP 126. In response to this request, Bright House produced (i) internal communications concerning notices of infringement sent by Plaintiffs, (ii) internal communications concerning notices of infringement sent by any party as long as those communications discussed whether to terminate, suspend, or quarantine a Bright House user's account, and (iii) ticket data showing the actions Bright House took for each subscriber who received three or more notices of infringement from any party. (Dkt. 318 at 2-3) Plaintiffs argue that Judge Wilson erroneously failed to compel Bright House to provide additional documents in response to RFP 126—namely, internal Bright House communications about infringing subscribers that do *not* discuss whether to terminate, suspend, or quarantine those subscribers. (Dkt. 317 at 4-5) Judge Wilson was well within his discretion, however, to conclude that Plaintiffs' request was "overbroad" because it effectively sought "all communications discussing any infringement notice, any instance of alleged copyright, or any ticket." (Dkt. 317-2 at

26:3-8) Because Plaintiffs identify no clear error in Judge Wilson's decision to narrow the scope of RFP 126, this objection is overruled.

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. The Parties' objections to Judge Wilson's discovery rulings, (Dkts. 212, 216, 298, 317), are **SUSTAINED IN PART and OVERRULED IN PART**.

   a. The Court **SUSTAINS IN PART** Bright House's objection to Judge Wilson's denial of its motion to compel Plaintiffs to produce additional documents in response to RFP 27. By November 12, 2021, Plaintiffs must produce to Bright House all non-privileged documents that mention, refer to, or relate to Bright House *and* the above-captioned litigation and all non-privileged documents that mention, refer to, or relate to the above-captioned litigation that were created, received, or sent from January 1, 2013 to the present.

   b. The Court **SUSTAINS** Plaintiffs' objection to Judge Wilson's denial of their motion to compel Bright House to produce additional documents in response to RFP 64. By November 12, 2021, Bright House must produce, for the time period of March 1, 2012 to May 31, 2016, all call records from its ECAT database for subscribers who received three or more notices of infringement from any party.

c.  The Parties' remaining objections are **OVERRULED**.

**DONE** and **ORDERED** in Tampa, Florida, this 7th day of September 2021.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person