### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

      Plaintiffs,

    v.                            **Case No. 8:19-cv-710-MSS-TGW**

BRIGHT HOUSE NETWORKS, LLC,

      Defendant.

### TIME-SENSITIVE MOTION TO COMPEL PRODUCTION OF
### <u>DOCUMENTS AND FURTHER DEPOSITION TESTIMONY</u>

Plaintiffs move on a time-sensitive basis to compel non-parties Advance Publications, Inc. ("Advance"), Sabin, Bermant, and Gould LLP ("Sabin"), and former Sabin attorney Jerry Birenz (collectively, "Respondents") to produce documents they are wrongfully withholding on the basis of attorney-client privilege and work product protection in response to Plaintiffs' subpoenas. Plaintiffs further move on an expedited basis for an order compelling Mr. Birenz to sit for an additional four-hour deposition to answer questions he improperly refused to answer at his August 30, 2021, deposition on privilege grounds, and to provide testimony on the documents Respondents have wrongfully withheld.

Plaintiffs are record companies and music rights holders who have brought suit against the former internet service provider Bright House Networks LLC ("Bright House" or "BHN"). Plaintiffs claim that BHN is contributorily liable for continuing to provide high-speed internet service to subscribers whom BHN

*knew* repeatedly infringed Plaintiffs' works on the BHN network.

For many years, Mr. Birenz, through the Sabin firm, served as BHN's "DMCA Agent," the agent registered with the U.S. Copyright Office to receive and forward notices of infringement from copyright holders to BHN. He also served as counsel to both BHN and Advance, which held a stake in BHN's parent company through various intermediaries.

Plaintiffs served document subpoenas on each of Mr. Birenz, Advance, and Sabin (the latter being the legal remnant of an otherwise non-functioning law firm) over a year ago. In response, Respondents withheld responsive files on the basis of privilege. ███████████████████████████████

████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

████████████████████████

Plaintiffs further move for an order compelling Mr. Birenz to sit for an additional four hours of deposition time to answer questions he improperly refused to answer on privilege grounds and to provide testimony on the Sabin documents wrongfully withheld. Mr. Birenz repeatedly refused to answer

Plaintiffs' questions concerning non-privileged business communications and communications regarding his non-legal role as BHN's registered agent designated to receive and forward to BHN notices from copyright holders concerning subscribers who were committing copyright infringement on BHN's network. Mr. Birenz also improperly refused to provide answers to questions that called for basic factual information that would not disclose the content of privileged attorney-client communications. Given Mr. Birenz's non-legal role as DMCA agent and his involvement with business decisions concerning BHN's system for handling notices of copyright infringement, he should not be able to shroud his factual knowledge beneath sweeping claims of privilege.

Expedited relief is warranted here: as fact discovery comes to a close on September 15, Plaintiffs are set to depose key witnesses starting Monday, September 13, including three of BHN's 30(b)(6) witnesses, who are together responsible for 58 of the 71 topics listed in Plaintiffs' 30(b)(6) notice. Plaintiffs are entitled to the benefit of the documents and testimony requested in this motion for those critical depositions and therefore request a ruling not later than Friday, September 10, 2021. Moreover, even though the subpoenas at issue were served well over a year ago, Plaintiffs learned of the issues raised in this motion only last week at the deposition of Mr. Birenz, sought to confer with counsel to Respondents (who also represent BHN) immediately thereafter on September 1, 2021, and yet Respondents did not provide their final position until today.

## FACTUAL BACKGROUND

### A.    Case Background and the Respondents

Plaintiffs' initiated suit against BHN in March 2019. Since then, the parties have participated in a years-long discovery process, which is set to end on September 15, 2021—one week from today.

Prior to May 2016, Advance had been the co-owner of BHN's parent company, the Advance/Newhouse Partnership ("Advance/Newhouse"). In turn, Advance/Newhouse, a privately held company controlled by the Newhouse Family, was until May 2016 the sole manager of BHN with *de facto* control of and a 100% economic interest in BHN. *See* Ex. C,[1] FCC Rcd. Public Interest Statement, Charter Communications, filed June 25, 2015 at 353. The Advance/Newhouse Partnership agreed on May 23, 2015 to sell its stake in BHN to Charter Communications and its affiliates for $10.4 billion. *See id*. at 7. The transaction closed on May 18, 2016. *See* Ex. D. The merger agreement between Charter and BHN provided that the rights and obligations of BHN passed to Charter upon the sale. *See* Ex. R at 25.

███████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████

---

[1] Unless otherwise noted, all references to exhibit numbers refer to the exhibits to the Declaration of Joshua B. Picker dated September 8, 2021 ("Picker Decl.").



*Fourth*, Mr. Birenz served as BHN's registered agent ("DMCA agent") to receive notices of infringement from copyright holders under the Digital Millennium Copyright Act ("DMCA"), codified at Section 512 of the Copyright Act.

In each of these roles, Mr. Birenz would have received and sent correspondence that is highly relevant to Plaintiffs' claims.

---

[2] For instance, the major ISP Altice USA, Inc. lists its internal internet security department as its registered DMCA agent. *See* Ex. U.

The Sabin firm effectively dissolved in December 2018 when many of its lawyers—including Mr. Birenz—went in-house at Advance. Ex. E 42:8-13.

## B.    Subpoenas to Advance, Sabin and Birenz

Plaintiffs served separate document subpoenas on Jerry Birenz on June 18, 2020, Advance on June 12, 2020, and Sabin on January 6, 2021. *See id.* Exs. H-L. From Mr. Birenz, Plaintiffs sought documents related to, *inter alia*, Mr. Birenz's role as DMCA agent and his involvement in the development and implementation of BHN's DMCA program. *See id.* Ex. H. Plaintiffs sought documents covering substantially the same topics from Advance and Sabin. *See id.* Exs. J, L.

Winston served responses and broad objections to the subpoenas to Mr. Birenz, Advance, and Sabin. *See id.* M-O. Mr. Birenz refused outright to conduct *any* search or production in response to a number of requests directed at his non-privileged business knowledge and experience as DMCA agent, because he claimed those requests sought "core privileged material."[3]  He produced only 17 documents, 9 of which were communications with Plaintiffs' counsel in this case. Picker Decl. ¶ 24. Given Mr. Birenz's role as BHN's registered DMCA Agent, and his firm's active representation of BHN in disputes directly related to Plaintiffs

---

[3] For instance, Mr. Birenz refused to produce documents responsive to: Topic 3, seeking "Sabin's document retention policies and practices *as DMCA agent for Bright House*" (emphasis added); Topic 16, seeking "actual or potential changes to Bright House's policies or procedures concerning actual or alleged copyright infringement on its network by Subscribers or User";  and Topic 28, seeking "Documents and communications concerning Bright House's retention of data stored in ECAT," the computer system Bright House used to receive the notices of infringement Sabin forwarded and to process those notices.  *See id.* Ex M.

claims, Mr. Birenz's production was sorely lacking.  Advance and Sabin served similarly broad objections and claimed they had no responsive documents.[4] *See id.* Exs. N, O.

In each instance, Plaintiffs sought to confer with Winston regarding the document subpoenas. As part of that conferral process, Plaintiffs requested that each party produce a privilege log. Mr. Birenz refused to do so. *See id.* Ex. P. (Dec. 14, 2020 Email from T. Kearney to M. Fields) at 3-7. Advance provided a privilege log of less than a page and a half that did not disclose that Advance possessed any Sabin files. *See id.* Ex. Q (Privilege Log produced by Advance Publications, dated February 25, 2021). In conferrals between Plaintiffs and Winston, Winston claimed that the documents on Advance's log were being withheld on the basis of BHN's attorney-client privilege. *See* Ex. R. (Feb. 25, 2021 Email from T. Kearney to M. Fields) at 2.

On November 25, 2020, Plaintiffs specifically asked whether Advance had received Sabin's BHN files after Sabin ceased to be an active law firm. *See* Ex. P at 5. Winston responded that to "the best of our knowledge, Advance is not in possession of Sabin's client files concerning its representation of Bright House[.]" *See id.* at 6.  On December 16, 2020, Plaintiffs followed up to ask where, then, the Sabin files went after its wind-down in December 2018. *See id.* at 2.  Winston

---

[4] In August 2021—more than a year after Plaintiffs served Advance—Advance produced two documents, both of which were copies of BHN's publicly-filed DMCA agent registrations. Picker Decl. ¶ 23.

refused to answer that question, claiming it was outside the scope of the subpoenas. *See id.*

### C.    Deposition Testimony of Jerry Birenz

Plaintiffs served a deposition subpoena on Mr. Birenz on August 3, 2021.

*See* Ex. S.




.6

---

5 Mr. Birenz's counsel has since represented that Respondents had searched for and not located the files ████████████████████████████████████████ nor that Respondents have conducted a specific search for that correspondence or other Sabin files in Advance's possession.

6 Mr. Birenz refused to answer or modified his answer on the basis of attorney-client privilege in response to 47 questions at the following locations in his deposition transcript: 33:2–33:15, 33:22–34:11, 36:4–36:32, 42:22–43:14, 44:15–46:4, 64:13–65:7, 70:15–71:18, 72:6–72:21, 74:9–74:19, 83:19–84:10, 12:18–130:8, 130:24–131:6, 132:2–132:14, 156:25–157:20, 183:6–184:7, 195:20–196:9, 196:25–197:9, 197:10–197:18, 205:7–205:20, 269:23–270:19, 270:20–270:14, 273:21–274:21, 274:22–275:17, 276:2–276:8, 281:20–281:25, 287:11–288:14, 292:14–292:21, 210:12–310:24, 313:14–314:3, 314:4–314:17, 315:8–315:17, 315:18–315:23, 316:5–316:14, 326:22–327:9, 327:10–327:22, 330:14–331:8, 332:17–333:13, 343:13–344:4, 344:13–335:4, 345:9–345:23, 347:19–348:15, 351:2–351:15, 353:10–353:21, 355:4–355:22, 355:23–356:5, 356:16–357:17, 361:13–361:19.

████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████

Particularly disturbing are the instances in which Mr. Birenz selectively invoked privilege in order to provide answers that were favorable to BHN's position, but refused to provide answers *on the same subject* where the information likely was harmful to BHN's position. ████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

D.    **Conferral History**

By letter dated September 1, 2021, Plaintiffs notified counsel to Birenz, Sabin, Advance, and defendant BHN of their intent to move for the relief requested herein. *See* Ex. A. at 2–4. Plaintiffs further requested Respondents' consent that the motion be heard before the U.S. District Court for the Middle District of Florida, the court that issued the subpoenas and where the underlying

case is proceeding, given the likelihood that if Plaintiffs filed the motion in the Southern District of New York, which is the place of compliance, the Court there would likely transfer the motion to this Court either at Respondents' request or *sua sponte*. Ex. B at 5–6.

Counsel to Plaintiffs and Respondents conferred on September 7, 2021, and confirmed that they could not come to resolution of the disputes raised herein.  Ex. B at 2–3.  By email of September 8, 2021, Respondents consented to the jurisdiction of the U.S. District Court for the Middle District of Florida to hear the instant motion.  Ex. B at 1.

## LEGAL STANDARD

A party propounding a subpoena under Federal Rule of Civil Procedure 45 may move for an order under Rules 45 and 37 compelling the production of documents, including where the subpoena target wrongfully invokes a privilege to resist production. Fed. R. Civ. P. 37(a)(3)(B); Fed R. Civ. P 45(d)(2)(B)(i); *see also Solidda Grp., S.A. v. Sharp Elecs. Corp.*, 2013 WL 12091057, at *4 (S.D. Fla. Mar. 19, 2013) (granting motion to compel non-party to produce documents improperly claimed as protected by the attorney-client privilege); *Rynd v. Nationwide Mut. Fire Ins. Co.*, 2010 WL 5161838, at *4 (M.D. Fla. Dec. 14, 2010) (granting motion to compel under Rule 45 for target's belated and improper claims of attorney-client privilege).

Likewise, "[a] party cannot disclose [at a deposition] only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related

facts adverse to its position." *Friction Div. Prod., Inc. v. E.I. Du Pont De Nemours & Co.,* 117 F.R.D. 535, 538 (D. Del. 1987) (holding attorney-deponent in contempt for improper refusal to answer questions at deposition). The court has "authority to compel [a deponent] to attend another deposition, even after the discovery deadline," if the deponent has improperly refused to answer questions. *Isaac v. RMB Inc.,* 604 F. App'x 818, 821 (11th Cir. 2015); *see also Bandsuch v. Werner Enterprises, Inc.,* 2008 WL 11334547, at *2 (M.D. Fla. Apr. 25, 2008).

### ARGUMENT[7]



I.

---

[7] Strict compliance with Former Local Rule 3.04 is not required under M.J. Wilson's individual rules where, as here, "the motion makes only a general, overall challenge and does not address specific objections or deficiencies."

[8]



Nor can Advance invoke the common interest privilege because, as of 2019, Advance lacked an (1) identical, (2) legal interest with BHN's successor, Charter, as is required to assert the common interest privilege, and it has made no showing that the documents in its files concern any common anticipated or actual litigation.

**A.**

The elements of the attorney-client privilege are: "(1) Where legal service advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived." *E.E.O.C. v. v. DiMare Ruskin, Inc.*, 2012 WL 12067868, at *6 (M.D. Fla.

Feb. 15, 2012). The party asserting the privilege bears the burden of showing that each of the requirements are met. *See id.*

Accordingly, unless documents transmitted under the privilege are kept confidential, the privilege is waived. *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 270 F. Supp. 3d 1332, 1338 (S.D. Fla. 2017) ("[T]he privilege is lost if there is a disclosure inconsistent with maintaining the confidential nature [of] the attorney-client relationship, such as the release of otherwise privileged communication to a third party."); *Hurley v. Kent of Naples, Inc.*, 2011 WL 13141481, at *1 (M.D. Fla. July 28, 2011).

Advance was not a party to Sabin's and BHN's attorney-client relationship even before the Charter sale in 2016, and was most certainly rendered a third-party to any applicable privilege following that sale.[9] ███████████████

███████████████████████████████████████

███████████████.[10]

## B.   Advance Transmitted All of Its Rights in BHN to Charter in 2016.

Even if Advance and BHN shared an attorney-client privilege *before* the sale of BHN to Charter in 2016 (which is doubtful given the attenuated corporate

---

[9] *See* Section I.C, *infra* (discussing lack of common interest privilege).

[10] ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

relationship between Advance and BHN[11]), they shared no privilege *after* the sale.

In particular, when the Advance/Newhouse Partnership sold its stake in BHN to Charter in 2016, Advance/Newhouse transmitted its control of all of BHN's assets and rights to Charter under the Contribution Agreement between them. *See* Ex. R ("[Advance/Newhouse] shall contribute, assign, convey, transfer and deliver to [Charter] all of [Advance/Newhouse]'s right, title and interest in and to (i) the Membership Interests and (ii) any property, assets or other rights (whether tangible or intangible)…"). It is black-letter law that the transfer of complete control from one corporation to another transfers with it the attorney-client privilege. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985) (stating that new managers in a merger control the attorney-client privilege); *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLP*, 80 A.3d 155, 159 (Del. Ch. 2013) ("the attorney-client privilege—like all other privileges—passes to the surviving corporation in the merger as a matter of law.")

After the sale, then, Advance/Newhouse became a minority shareholder in Charter and was rendered a third-party for purposes of the privilege. After May 2016, then, neither Advance's status as a part-owner of a minority shareholder in

---

[11] It is unclear that Advance could ever be properly characterized as BHN's parent since it held its interest in BHN jointly with Newhouse in the Advance/Newhouse Partnership. Prior to the sale of BHN, Advance was three steps removed from BHN on the corporate chain, holding a minority stake in the Advance/Newhouse Partnership, which controlled BHN. *See* Ex. C at 353. *See also* Section I.C, *infra* (discussing lack of common interest that would permit Advance to share in the privilege).

Charter nor as a shareholder of BHN's former parent brought it within Charter's or BHN's privilege.[12]

Respondents' suggestion in conferrals that a parent company maintains attorney-client privilege with its wholly-owned subsidiary even after a sale is inapposite. *See* Ex. R. at 2. Respondents cited two out-of-district cases, neither of which stands for the proposition that a former parent can years later obtain the documents of its former subsidiary for the first time, and yet assert privilege over those documents. One of the cases, *In re Teleglobe*, merely acknowledged that communications among a parent, subsidiary, and their joint counsel are privileged when made, but only "when common attorneys are affirmatively doing legal work for both entities on a matter of common interest." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 379 (3d Cir. 2007), as amended (Oct. 12, 2007). Advance and Bright House have nowhere asserted that Sabin's legal work on

---

[12] The status of a company as a minority shareholder does not automatically give rise to a privileged relationship. *See, e.g.*, *United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 615 (D.D.C. 1979) (holding that, for privilege purposes, parent AT&T could claim a blanket privilege with its wholly owned and majority-owned subsidiaries, but not its minority-owned companies, and rejecting the notion that AT&T could maintain a privileged relationship with its *formerly* affiliated companies); *Argos Holdings Inc. v. Wilmington Tr. Nat'l Ass'n,* 2019 WL 1397150, at *7 (S.D.N.Y. Mar. 28, 2019) ("[S]hareholders are not entitled to corporate documents protected by attorney-client privilege absent litigation between the shareholders and the company and a showing of good cause.").

*AT&T* also confirms that a former parent company cannot assert privilege over the documents of a former subsidiary that it obtains well after a sale. This is distinct from the situation in which a parent holds on, after a sale, to documents it already possessed before the sale. In that circumstance, some courts have permitted the former parent to keep the documents of the subsidiary without destroying a privilege. *See e.g.*, *Robinson Mech. Contractors Inc. v. PTC Grp. Holding Corp.*, 2017 WL 2021070, at *2 (E.D. Mo. May 12, 2017) (finding that parent company could maintain privilege over documents transferred *before* the dissolution of a subsidiary company). But those aren't the facts at issue here.

Bright House's copyright enforcement program constituted legal work for Advance, either at the time Sabin did the work for Bright House or in 2019 when Sabin disclosed the Bright House files to Advance.

The second case, *Robinson Mech. Contractors Inc. v. PTC Grp. Holding Corp.*, likewise described the joint client privilege for a parent and subsidiary but in doing so expressly noted that "at all times and for all matters relevant to this action," the parent and subsidiary "shared a common interest and shared in-house counsel."  2017 WL 2021070, at *3. Here, in contrast, Bright House and Advance ceased to have a common interest, and Sabin ceased to be their shared counsel, in May 2016—nearly three years before the transfer of the Sabin files to Advance.

Further, in this circuit, the joint-client privilege applies only when the attorney represents the clients "*in the same litigation.*" *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 594 (S.D. Fla. 2013) (emphasis added). Since Advance is not a party to this litigation, the joint-client privilege is plainly inapplicable here.

### C.  There is No Common Legal Interest Between Advance and BHN.

Respondents have also broadly asserted that BHN documents in Advance's possession are protected by the "joint-defense privilege" by virtue of Advance's prior status as parent company to BHN. *See* Ex. R. at 2. Even prior to 2016, BHN and Advance did not participate in formulating a common legal strategy in regards to BHN's copyright enforcement program. And especially by 2019, there

is no colorable argument that BHN and Advance cooperated in any way beyond

Advance owning a percentage of BHN's successor, Charter.

As an initial matter, the common interest doctrine does not function as an

independent privilege, but instead as "an exception to the general rule that a

voluntary disclosure of privileged material to a third party waives the attorney-

client privilege." *United States v. Patel*, 509 F. Supp. 3d 1334, 1340 (S.D. Fla.

2020). To the extent that BHN is asserting a common interest privilege, it

maintains the burden of demonstrating the common interest, which it cannot do

here. The common interest doctrine requires "the parties among whom privileged

matter is shared [to] have a common legal, as opposed to commercial, interest."

*Spencer v. Taco Bell, Corp.*, 2013 WL 12156093, at *2 (M.D. Fla. Apr. 23, 2013).

In practice, the parties "must have demonstrated cooperation in formulating a

common legal strategy . . . . [T]he common interest doctrine *does not encompass

a joint business strategy which happens to include as one of its elements a

concern about litigation*." *Id*. (emphasis added). The common interest doctrine

protects "only those communications made in the course of an *ongoing* common

enterprise and intended to further the enterprise[.]" *Patel*, 509 F. Supp. 3d at

1341 (emphasis added) (quoting *United States v. Schwimmer*, 892 F.2d 237,

243–244 (2d Cir. 1989).

There is no evidence that Advance ever had direct involvement in the

formulation or execution of BHN's DMCA response policy and copyright

enforcement program in the years leading up to the Charter sale. Indeed, the 1.5-

page privilege log Advance served in this matter showed not a single Advance executive involved in any privileged communication regarding the formulation of BHN's DMCA program. *See* Ex. Q. This lack of involvement is even more pronounced as of 2019, by which point Advance had not controlled BHN in any way for three years.



*See, e.g., Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 696 (M.D. Fla. 2005) (finding defendant waived its privilege "by failing to timely and adequately make its objections" and approving of standard that "in the absence of mitigating factors, production of a privilege log five months after the [30 day] Rule 34 time limit supports a finding that the privilege was waived") (citation omitted).

## II.    Mr. Birenz Should Be Compelled To Sit For an Additional Deposition to Answer the Questions he Refused to Answer on Privilege Grounds.

Mr. Birenz improperly used his role as BHN's counsel as a shield to refuse to answer questions regarding his factual knowledge of BHN's business practices and policies, his non-legal role as DMCA registered agent, and communications

with a third party, Charter. Plaintiffs did not seek, nor did their questions implicate, the contents of a request for or the provision of legal advice, nor attorney work product. The Court should order Mr. Birenz to sit for an additional deposition of four hours and answer the questions he refused to answer, along with those relating to the documents from Sabin's Bright House files.

Plaintiffs are entitled to discovery of any nonprivileged matter relevant to any party's claim or defense. *See McArdle v. City of Ocala, FL*, 451 F. Supp. 3d 1304, 1308 (M.D. Fla. 2020) (citing Fed. R. Civ. P. 26(b)(1)). Consistent with that proposition, former outside counsel are not immune from testifying at a deposition. *See Dovin v. Nair & Co.*, 2009 WL 10670058, at *2 (M.D. Fla. Aug. 7, 2009) (finding that former counsel could testify at a deposition as a fact witness regarding an employment letter and its contents without violating the attorney-client privilege). And, in this case, Mr. Birenz effectively served as BHN's in-house counsel. Further, "[i]nvocation of the privilege must be specific and must be asserted on a question-by-question or document-by-document basis; blanket claims of privilege will not justify a wholesale refusal to testify or produce documents in response to a request." *In re Hillsborough Holdings Corp.*, 118 B.R. 866, 869 (Bankr. M.D. Fla. 1990) (citations omitted).

The proponent of the privilege must show "that the primary purpose and intent of the allegedly privileged communications was to seek or give *legal advice*." *Payne v. Seminole Elec. Coop., Inc.*, 2021 WL 3017392, at *9 (M.D. Fla. Feb. 2, 2021) (emphasis added) (ordering deposition testimony of in-house

attorney with direction to differentiate between counsel's legal and business roles within the company). In order to assert privilege in a deposition context, the witness must reference a specific privileged communication as the basis not to answer. *See In re Alexander Grant & Co. Litig.*, 110 F.R.D. 545, 548 (S.D. Fla. 1986) (stating a deponent must describe with specificity the communication over which they are claiming privilege).

Furthermore, even if intended to be confidential, "[b]usiness advice, as opposed to legal advice, is not protected by the attorney-client privilege." *Ray v. Cutter Lab'ys, Div. of Miles, Inc.*, 746 F. Supp. 86, 87 (M.D. Fla. 1990); *see also United States v. Lockheed Martin Corp.*, 995 F. Supp. 1460, 1464 (M.D. Fla. 1998).

Likewise, an attorney's knowledge of and involvement in technical matters (such as the receipt, processing, and forwarding of DMCA notices and duties ancillary thereto) is not privileged. *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1236 (S.D. Fla. 2018) (stating that "test results and other technical information, taken by themselves, are clearly not privileged.") (quotations omitted).

Even in the context of communications where an attorney is giving legal advice, the *facts* communicated are not generally privileged unless the revelation of those facts would necessarily lead to the disclosure of privileged *communications*. *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 690–91 (M.D. Fla. 2005) ("It is generally recognized that the

communication of factual information is not protected by the attorney-client privilege. For example, reports reflecting the status of litigation and containing purely factual information are not privileged."); *Davila v. Odum & Sons Trucking, Inc.*, 2006 WL 8431572, at *4 (S.D. Fla. July 24, 2006) ("The privilege, however, protects only the disclosure of confidential communications; it does not protect the disclosure of the underlying facts.").

The proper remedy for counsel's improper instruction not to answer at a deposition or the witness's refusal to answer is for the deponent to sit for a subsequent deposition to answer those questions. *Isaac*, 604 F. App'x at 821 (ordering a second deposition where deponent improperly refused to answer questions).

Mr. Birenz's refusal to answer Plaintiffs' questions that implicated his involvement in the business-related activities of BHN under the guise of privilege necessitates an order compelling him to reappear. The record reflects manifold examples of Mr. Birenz's improper refusals to answer: for example, Plaintiffs asked Mr. Birenz to provide, under Bright House's policies, "the facts of what would have caused Bright House to terminate customers that it believed to be repeat infringers." Ex. E. 314:4–314:23.

Likewise, Plaintiffs asked Mr. Birenz to describe BHN's actions with respect to subscribers whose accounts it had suspended for repeated copyright

infringement but later reactivated and then continued to infringe. 

In each of these circumstances, Plaintiffs merely sought percipient evidence of how BHN operated its business, not the content of any legal advice that was requested of or given by Mr. Birenz on these subjects.









The proper remedy for Mr. Birenz's repeated refusal to answer Plaintiffs' questions is for him to sit for additional deposition time to answer those questions. *Isaac*, 604 F. App'x at 821. The Court should also permit Plaintiffs to ask him questions about the documents Respondents wrongfully withheld.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court issue an order not later than September 10, 2021, (1) compelling Advance, Sabin, and Mr. Birenz to produce all responsive documents transferred from Sabin to Advance on January 1, 2019, or, in the event the Court finds no privilege waiver, to order Advance to produce all non-privileged documents and log the remainder; and (2) requiring Mr. Birenz to sit for an additional deposition of four hours and to answer all questions he improperly refused to answer on privilege grounds at his August 30, 2021 deposition and any questions arising out of the documents to be produced by Advance, Sabin, and Mr. Birenz.

---

[18] *Compare also, e.g., id.* 326:14-21 (confirming that BHN forwarded all notices of infringement to subscribers in 2016) *with id.* 326:22-327:9, 330:14-331:8 (claiming privilege when asked to confirm that from 2012-2016 BHN did *not* forward all notices of infringement to subscribers).

## LOCAL RULE 3.01(G) CERTIFICATION

Plaintiffs' counsel conferred by email and teleconference with BHN's counsel prior to bringing this motion, both with respect to the issues raised herein and with respect to Plaintiffs' intent to file this motion. The parties have been unable to resolve the issues in this motion.

Dated: September 8, 2021

Respectfully submitted,

 /s/ Neema T. Sahni

Neema T. Sahni (*pro hac vice*)
Mitchell A. Kamin (*pro hac vice*)
Hardy Ehlers (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-8800
nsahni@cov.com
mkamin@cov.com
jehlers@cov.com

Jonathan M. Sperling (*pro hac vice*)
Joshua B. Picker (*pro hac vice*)
Phil Hill (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
jpicker@cov.com
pahill@cov.com

Stacey Grigsby (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20001

Telephone: (202) 662-6000
sgrigsby@cov.com

Matthew J. Oppenheim (*pro hac vice*)
Scott A. Zebrak (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

David C. Banker
Florida Bar No. 0352977
Bryan D. Hull
Florida Bar No. 020969
BUSH ROSS, P.A.
1801 North Highland Avenue
P.O. Box 3913
Tampa, FL 33601-3913
Telephone: (813) 224-9255
dbanker@bushross.com
bhull@bushross.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2021, I caused the foregoing document and all accompanying materials to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

Dated: September 8, 2021

<u>/s/ *Neema T. Sahni*</u>
Neema T. Sahni

*Attorney for Plaintiffs*