**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UMG RECORDINGS, INC., *et al.*

      Plaintiffs,

v.

BRIGHT HOUSE NETWORKS, LLC,

      Defendant.

Case No. 8:19-cv-00710-MSS-TGW

**NON-PARTIES' ADVANCE PUBLICATIONS, INC. ("ADVANCE"), SABIN, BERMANT, & GOULD LLP ("SABIN"), AND JERRY BIRENZ ("BIRENZ") ("RESPONDENTS")[1] OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FURTHER TESTIMONY**

## I.    INTRODUCTION

In June 2020, Plaintiffs served non-party document subpoenas on Bright House Networks, LLC's ("BHN") former outside attorney Jerry Birenz and its former parent company Advance.[2] Birenz and Advance responded promptly, including by asserting claims of privilege as to certain documents, and produced responsive nonprivileged documents.[3] Birenz had been a partner at the New York law firm Sabin, Bermant & Gould, which was BHN's outside counsel during the relevant claim period from 2012 to 2016 until BHN was sold to Charter. While at Sabin, Birenz advised BHN (as well as its Advance affiliates) on legal matters, in large part copyright matters.

---

[1] Because the issues herein implicate its privilege, Charter Communications, Inc., as successor in interest to BHN, joins this brief.

[2] In January 2021, Plaintiffs also issued a document subpoena to BHN's former outside law firm, Sabin. ECF 338-13 (Pls' Ex. L). As explained below, Sabin no longer performs legal services.

[3] *See* ECF 338-14, 338-15; Mot. at 6, 7 n.4.

Almost a year later, near the close of discovery in this action, Plaintiffs sought Birenz's deposition pursuant to Rule 45, and on August 30, 2021, deposed him as a fact witness for the *full seven hours* allowed. Plaintiffs examined him extensively about his knowledge of BHN's policies and practices during the time he was BHN's outside counsel, and repeatedly sought to elicit information about Birenz's confidential communications with and legal advice to BHN. Plaintiffs repeatedly demanded that Birenz divulge the contents of confidential client communications on the spurious basis that their questions sought "factual" information. But even a cursory review of Plaintiffs' questions shows that what they actually sought to discover was Birenz's legal advice and work product concerning core legal issues at the heart of this case.

Two days later, Plaintiffs demanded that Advance produce various legal files and documents in which Charter Communications, Inc. (as successor to BHN) holds the privilege. ECF 338-2. Plaintiffs do not challenge the underlying claim of attorney-client and work product protections, but argue that Charter's privilege in the documents was "waived" in 2019 when Sabin's attorneys were subsumed into the in-house legal department at Advance ("Advance Legal").

There has been no waiver, for multiple reasons. First, these privileges are Charter's, as successor in interest to BHN: it never waived them, and BHN's former counsel has no authority to do so on its behalf. Second, Birenz and Sabin were entitled under New York's ethics rules to maintain copies of former clients' files, so their lawful retention of the files does not constitute a waiver. Third, neither Birenz nor Sabin ever put at risk the confidentiality of the documents at issue. After the merger, the files

Sabin retained were not accessed or used for any purpose until copies were reviewed in connection with this lawsuit, at Charter's request, and were not disclosed to any third party. Fourth, BHN and Advance have operated under a common interest and joint defense agreement since Plaintiffs first threatened litigation in April 2016, before Charter acquired BHN. Because Advance had a common interest in defending the instant claims, the fact that the files physically remained with Advance Legal does not constitute grounds for waiver. This portion of Plaintiffs' Motion should be denied.

The Court should also deny Plaintiffs' motion to compel *four more* hours of testimony from Birenz, who is semi-retired and has not represented BHN since 2016. Mr. Birenz has already testified for a full seven hours, and the information Plaintiffs seek to obtain by deposing him yet again has been made available through multiple fact witnesses. The proper invocation of privilege, unsurprising when a party's former outside counsel is deposed, is not a legitimate basis to expand his deposition beyond the seven-hour limit. Plaintiffs and third parties have designated attorneys as corporate representatives—but none of their depositions exceeded seven hours, despite repeated invocations of privilege. This portion of Plaintiffs' Motion should also be denied.

## II.   <u>RELEVANT FACTS</u>

### A.   <u>The Relevant Players</u>

BHN was founded in 2003 as a wholly-owned subsidiary of a partnership between Time Warner Cable subsidiary Time Warner Entertainment ("TWE", the two collectively "TWC") and Advance subsidiary Advance/Newhouse Partnership (the two collectively "Advance"). Dec. of Martin Petraitis ¶ 2. Advance and TWC had

a common legal interest arising from their joint ownership of BHN. *Id.* ¶ 3. At all relevant times, including from 2012 through May 18, 2016, the Sabin Firm was BHN's primary outside counsel. *Id.* ¶ 4; ECF 338-6 (Aug. 30, 2021 Dep. Tr. of Jerry Birenz) ("Birenz Tr.") 203:2-20. Sabin was an independent law firm, substantially all of whose clients were members of the Advance/Newhouse corporate family or individual Newhouse family members: these included BHN, Advance Publications, Inc., the Advance/Newhouse Partnership, and other Advance subsidiaries and affiliates. Birenz Tr. 47:10-25, 203:12-15. Sabin's physical offices sat within Advance's corporate headquarters. *See id.* 100:10-101:13. Birenz was a partner with Sabin, and participated in its representation of BHN beginning no later than 2012. *Id.* 23:17-21, 24:19-25:16. Birenz advised BHN and other Advance companies on legal issues, in large part copyright issues. Petraitis Dec. ¶ 4. By no later than 2012, BHN had also designated Birenz as its agent to receive copyright notices pursuant to DMCA § 512(c). Birenz Tr. 163:7-12. As such, Birenz's sole duties were those defined by the statute: to receive notices of claimed infringement; counter notifications from the subjects of such notices; and notices from copyright owners who had filed for a court order to restrain alleged infringers. 17 U.S.C. § 512(c)(2); (g)(2)(C); (g)(3). Outside counsel and DMCA agent were Birenz's only roles relating to BHN. Petraitis Dec. ¶ 4.

### B. <u>Plaintiffs' Secondary Copyright Infringement Claims Against BHN</u>

In mid-2015, Charter announced plans to buy BHN. *Id.* ¶ 5. Shortly thereafter, Charter announced that it would merge with TWC, BHN's co-owner. *Id.* Previously, BHN had received communications from a company called Rightscorp, making

claims against BHN on behalf of various copyright owners. Dec. of Jennifer A. Golinveaux ¶ 2, Ex. A. In April 2016, before the BHN sale and TWC merger were consummated, BHN was contacted by Mr. Oppenheim, counsel for Plaintiffs in this case, regarding potential copyright litigation against BHN. Birenz Tr. 82:19-20, 306:10-307:24. Birenz responded for BHN and began negotiating an agreement to toll the statute of limitations. Golinveaux Dec. ¶ 3, Ex. B.

### C.   Sale of BHN to Charter

On May 18, 2016, Charter acquired BHN, the same day Charter merged with TWC. Petraitis Dec. ¶ 6. Sabin undertook to transfer its legal duties and responsibilities relating to BHN to Charter. *Id.* At or shortly after the acquisition of BHN, Charter directed Sabin to send it the files related to BHN. *Id.*; Dec. of Kirill Abramov ("Abramov Dec.") ¶ 4. The paper files were sent, without Sabin retaining a copy, Petraitis Dec. ¶ 6, except that Birenz copied the file relating to Peer-to-Peer ("P2P") copyright issues ("the P2P File") (the subject of the instant motion). Birenz Tr. 105:18-106:3.[4] Birenz did so because: (i) it reflected his work product; (ii) he anticipated that Charter may have continuing questions about pending copyright issues, including the threatened litigation by Oppenheim and the tolling agreement;[5] and (iii) his role as BHN's DMCA agent had not yet been transferred. *Id.* 243:4-244:9, Abramov Dec. ¶ 6.

---

[4] The P2P File that Birenz kept contained materials that he worked with related to BHN peer-to-peer copyright matters and includes attorney-client communications; opinion work product (such as notes memorializing Birenz's opinions and analysis, and annotations to emails and letters including attorney-client communications); and/or litigation work product (including documents concerning communications from Rightscorp and Oppenheim). *See* Birenz Tr. 105:23-106:3.

[5] Advance as BHN's prior owner and Charter as successor were operating under an oral joint defense/ common interest agreement regarding that potential liability. Petraitis Dec. ¶ 6; Abramov Dec. ¶ 6.

Shortly after the merger, Charter was operating under the impression that its instructions had resulted in the transfer of all BHN files to it.  Abramov Dec. ¶ 4. Charter never authorized the use or disclosure of the files, and certainly never authorized waiver of its attorney-client privilege or work product protections. *Id.* ¶ 5.

## D.   The Sabin Firm Ceases Legal Operations

In January 2019, almost all Sabin lawyers and staff (including Birenz) became formal employees of Advance Legal.[6] Petraitis Dec. ¶ 7; Birenz Tr. 42:8-13. Sabin's offices already sat within Advance's headquarters, so the attorneys' physical offices and file room remained the same. Petraitis Dec. ¶ 7. Sabin's files, including the P2P File, remained in place in the same secure locations, now within Advance Legal. *Id.* ¶ 8. The file transfer was wholesale in nature and not conducted on a client-by-client or matter-by-matter basis. *Id.* At no time after that did anyone use or disclose the BHN P2P File, nor did anyone outside the former Sabin Firm (now Advance Legal) have access to it. *Id.* In May 2019, at Charter's request, Birenz sent an electronic copy of the P2P File to Charter's attorneys representing Charter in this case. *Id.*

## E.   Birenz's August 2021 Deposition

Plaintiffs sought for the first time to depose Birenz in August 2021. ECF 338-20.[7] Despite the fact that Birenz had been BHN's outside counsel during the entire

---

[6] The Sabin Firm continues to this day to exist as a legal entity. Petraitis Dec. ¶ 9.

[7] On June 8, 2020, Plaintiffs issued third-party document subpoenas to Birenz and Advance pursuant to Fed. R. Civ. P. 45. Birenz and Advance each agreed to (and did) provide responsive nonprivileged documents to the extent they could be located, while objecting to requests calling for privileged materials. ECF 338-14, 338-15; Mot. at 6, 7 n.4. Birenz and Advance complied with FRCP 26 by "expressly mak[ing] the claim" and describing "the nature of the documents, communications, or tangible things not produced or disclosed … in a manner that, without revealing information itself

period covering Plaintiffs' copyright claims against BHN, and notwithstanding the obvious privilege issues that would arise due to that relationship, Birenz agreed to sit for a deposition on August 30, 2021. Many of Plaintiffs' questions sought core privileged material and the substance of Birenz's communications with his client BHN.[8] Birenz explained that he could not answer such questions without divulging the contents of attorney-client communications or his work product. Mot. at 24 n.17.

## III.   ARGUMENT

### A.   Plaintiffs' Motion Is Brought in the Wrong Court

As a threshold matter, Plaintiffs' Motion is improperly filed in this Court and should be dismissed on that basis alone.[9] Rules 45 and 37 require that any motion to compel a non-party to produce documents or be deposed be filed in the district where compliance with the subpoena is required. Fed. R. Civ. P. 45(d)(2)(B)(i), 37(a)(2).[10] Transfer is permitted only at the compliance court's discretion even where, as here, the non-parties consent to transfer.[11] Similarly, under Rule 37 "[a] motion for an order

---

[8] For example, Plaintiffs asked "What did you discuss with [Charter's attorney] Mr. Abramov on the telephone call?", Birenz Tr. 74:9-10, and "Why didn't Bright House license Cox's [automated notice handling] system?", *id.* 281:20-21.

[9] During meet and confer before Plaintiffs filed their Motion, Respondents' counsel stressed that any related motion practice concerning the subpoenas must be initiated in the district where compliance is required as set forth in Rule 45 even if Respondents consented to transfer to Florida.

[10] Before 2013, Rule 45 required a subpoena on a non-party to issue from a district court with personal jurisdiction over the non-party. In 2013, it was amended to permit the trial court to issue a subpoena, but continued to require any motion to be filed in the court "where compliance is required."

[11] Plaintiffs' cases are not to the contrary. *Solidda Group, S.A. v. Sharp Electronics Corp.* involved a motion by a non-party in Florida to quash a subpoena issued by a Florida district court in Florida litigation. 2013 WL 12091057, at *3 (S.D. Fla. Mar. 19, 2013). That was also the case in *Rynd v. Nationwide Mutual Fire Ins. Co.*, 2010 WL 5161838, at *4 (M.D. Fla. Dec. 14, 2010).

privileged or protected, [would] enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i), (ii). Through their attorneys, Birenz and Advance engaged in meet-and-confer discussions with Plaintiffs' counsel for the next several months. Plaintiffs made no attempt to seek relief from this or any other court before filing this Motion on September 10, 2021, more than a year later.

to a non-party [seeking to compel deposition testimony] must be made in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(2). Both rules provide that the compliance court "*may* transfer a *motion* … to the issuing court if the person subject to the subpoena consents," but only when the compliance court, at its discretion, determines that transfer is "warranted." Fed. R. Civ. P. 45(f) (emphases added), *accord* Fed. R. Civ. P. 37(b)(1), 2013 Advisory Committee Notes. The issuing court is powerless to provide relief no matter which party seeks it. *See, e.g.*, *Alexander v. BF Labs Inc.*, 2014 WL 12661263, at *2 (D. Kan. Sept. 15, 2014) (holding "the [issuing] court cannot quash or modify the subpoena" and denying relief "without prejudice to refiling in the district where compliance is required"); *S. Point Wholesale, Inc. v. Vilardi*, 2017 WL 9285528, at *2 (W.D. Ky. Oct. 6, 2017) (finding "no basis upon which to conclude that this Court has authority under Rule 45 to compel compliance with the subpoenas. That decision must be made by the appropriate district court in [the judicial district where compliance is required]."); *Finerman v. Marriott Ownership Resorts, Inc.*, 2017 WL 9613964, at *1 (M.D. Fla. June 6, 2017). Because Advance is headquartered in Manhattan, Plaintiffs were required to file any motion to enforce the Advance subpoena in the Southern District of New York. *See* ECF 338-11. Non-party Birenz resides in New Jersey, where any motion to compel his further testimony "must" be made. Plaintiffs' attempted end run around mandatory procedure is manifestly improper, and their Motion should be denied.

## B.   <u>Privilege Was Not Waived</u>

The gravamen of Plaintiffs' motion is that Charter's privilege relating to the P2P

File was waived because Birenz retained a copy of it after the sale of BHN, and it was later transferred from the Sabin Firm to Advance Legal with the closure of the Sabin Firm. Plaintiffs' theory of waiver lacks merit.

### 1.   Charter Has Not Waived Its Attorney-Client Privilege

Plaintiffs ignore *whose* privilege is at issue. The attorney-client privilege in these documents was owned by BHN—the client. When BHN was sold, ownership of that privilege largely transferred to Charter. *See Bass Pub. Ltd. v. Promus Cos.*, 868 F. Supp. 615, 619-20 (S.D.N.Y. 1994). Thus, ***Charter alone*** has the power to waive the privilege. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994), *modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *In re von Bulow*, 828 F.2d 94, 100 (2d. Cir. 1987) ("Of course, the privilege belongs solely to the client and may only be waived by him. An attorney may not waive the privilege without his client's consent.").

Waiver may occur expressly or by implication, yet Plaintiffs make no attempt to argue that Charter waived its privilege in *any* manner. *See Cox*, 17 F.3d at 1417; *Bulow*, 828 F.2d at 101. Nor could they do so plausibly. It is undisputable that Charter has not *expressly* waived privilege in any BHN files or attorney-client communications by knowingly disclosing them to a third party. And even if Plaintiffs argued for implied waiver—they do not—no facts support it. "[I]mplied waiver may be found where the *privilege holder* asserts a claim that in fairness requires examination of protected communications." *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000) (internal quotation omitted, emphasis added). Such considerations arise when the holder of the privilege attempts to "partially disclose privileged communications or affirmatively

rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party," as when a "defendant … asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received." *Id.* at 182-83. No similar circumstances apply here. To the contrary, Plaintiffs complain that the files in question were withheld from production and that Birenz declined to answer questions to protect the attorney-client communications.

### 2.   Sabin's Retention of the File Did Not Waive BHN's Privilege

Under New York's legal ethics rules, attorneys are entitled to retain copies of a former client's legal documents, and under some circumstances may be obligated to do so.[12] "A lawyer may generally retain copies of documents in the client's file … even over the client's objection." N.Y. State Bar. Ass'n Comm. Pro. Ethics 780, 2004 WL 3021155, at *1 (Dec. 8, 2004) ("there can be little doubt" that a lawyer has "an interest

---

[12] Plaintiffs mistakenly rely on Eleventh Circuit precedent to support their Motion. The law of the compliance court governs privilege issues arising from a non-party subpoena. Where a case turns on a question of federal law, courts apply the law of the federal circuit where discovery is sought against the subject of a subpoena. *See, e.g.*, *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 31 (2d Cir. 1999); *Breaking Media, Inc. v. Jowers*, 21 Misc. 194 (KPF) 2021 WL 1299108, at *4 (S.D.N.Y. Apr. 7, 2021) (holding, where underlying lawsuit was pending in Texas, that assertion of privilege by non-party target of subpoena "will be considered under the Second Circuit's articulation of the … privilege, with consideration of the congruent federal and state policies"); *see also In re Ramaekers*, 33 F. Supp. 2d 312, 316 (S.D.N.Y. 1999) (noting that courts "uniformly" apply the law of the federal circuit where non-party subject of a Rule 45 subpoena resides, and collecting cases in the Second and Third circuits). This is consistent with the principles underlying Rule 45, requiring "local resolution of disputes about subpoenas" in order "[t]o protect local nonparties[.]" Fed. R. Civ. P. 45(c)-(e), 2013 Advisory Committee Notes; Fed. R. Civ. P. 37(b)(1). Because Advance is headquartered in New York, the Second Circuit's law of privilege applies to it. *See Procaps S.A. v. Patheon Inc.*, 2015 WL 1722481, at *3 (S.D. Fla. Apr. 15, 2015) (holding that district of compliance for Rule 45 subpoena is where non-party corporation was headquartered). Because Birenz resides in New Jersey, the Third Circuit's law applies to his deposition. While Birenz was a partner with Sabin, a New York LLP, he practiced law in New York, and thus was bound by its law of privilege, including its ethics opinions discussed below.

in the file that would permit the lawyer to retain copies of file documents"); *see also Moore v. Ackerman*, 876 N.Y.S.2d 831, 836 (Sup. Ct. 2009). Indeed, a lawyer "'subject to an independent duty of retention' by ethical or other court rule … 'cannot satisfy his ethical obligations by delivering such documents to the client for safekeeping along with the client's file'; '[t]he lawyer should keep them himself.'" *Moore*, 876 N.Y.S.2d at 836 (quoting N.Y. Cnty. Law Ass'n Comm. Pro. Ethics 725, 1998 WL 707703, at *2.). Accordingly, Sabin and Birenz unquestionably did *not* waive privilege when Birenz retained a copy of the P2P File. Not only was Sabin's (and Birenz's) retention of files relating to a former client expressly permitted by New York's ethical rules, but Birenz had good reason to retain a copy of the file, since he remained BHN's DMCA agent for a short period of time and was consulting with Charter regarding Plaintiffs' threatened claims and proposed tolling agreement. Abramov Dec. ¶ 6. Moreover, as BHN's former counsel, Birenz had an obligation to BHN to "devote reasonable efforts to transferring responsibility for [any] matter[s]" ongoing at the time of the acquisition. Restatement (Third) of the Law Governing Lawyers § 33, cmt. b (2000). And as the facts show, Birenz and Sabin maintained BHN's file at all times in confidence, under conditions that preserved the privilege.

### C.   Sabin's Transfer of the P2P File to Advance Legal Did Not Waive BHN's Privilege

#### 1.   New York Ethical Guidelines Permitted BHN's Former Attorneys to Retain the Files

There was also no waiver of privilege when Sabin's files were transferred to Advance Legal in January 2019. As explained above, the conduct of the attorneys

involved in the transfer was governed by New York's ethics guidelines, under which "[a] lawyer should … provide for the protection of the confidences and secrets of his client following the termination of the practice of the lawyer … For example, a lawyer might provide … for the papers of the lawyer to be delivered to another lawyer[.]" N.Y. State Bar. Ass'n Comm. Pro. Ethics 460, 1977 WL 15688, at *2 (Feb. 28, 1977). "A lawyer, upon termination of his practice may properly cause the closed files to be delivered to another lawyer, but the receiving lawyer will hold them only as custodian." *Moore*, 876 N.Y.S.2d at 837 (quoting N.Y. State Bar. Ass'n Comm. Pro. Ethics 460, 1977 WL 15688, at *2). BHN's former attorneys, including Birenz, could properly maintain copies of the files, which were transferred to the attorney's *new* employer *at the same time* the attorneys were hired, under circumstances that were calculated to—and demonstrably did—preserve their confidentiality.

Plaintiffs' reliance on *In re Chiquita Brands Int'l, Inc.* for waiver of the privilege on these facts is wholly unpersuasive. 270 F. Supp. 3d 1332, 1338 (S.D. Fla. 2017); *see* Mot. at 14. The *Chiquita Brands* court found waiver when a party produced certain documents "voluntarily" to a government agency "in the hopes of receiving more lenient treatment, compromising the asserted confidentiality of the documents for its own benefit, and … decid[ing] not to assert any privileges when it was appropriate to do so[.]" *Id.* at 1340. Plaintiffs' other cited case, *Hurley v. Kent of Naples, Inc.*, is completely inapposite: there, the court found that documents an attorney had created for the purpose of filing with the EEOC were not subject to privilege because they were "intended to be conveyed to a third party," with no expectation that they would remain

confidential. 2011 WL 13141481, at *1 (M.D. Fla. July 28 2011); Mot. at 14. Neither case applies where, as here, confidential, privileged documents held by an attorney's *previous* firm were contemporaneously transferred to the attorney's *new* employer, under circumstances that were calculated to—and did—preserve their confidentiality.

### 2.   Advance's Possession of the P2P File Does Not Constitute a Waiver Given the Common Interest/Joint Defense

Nor is there merit to Plaintiffs' position that Advance cannot assert attorney-client privilege with respect to its attorneys' pre-acquisition communications with BHN, based on their unsupported (and incorrect) contention that Advance and BHN "shared no privilege after the sale" of BHN to Charter. *See* Mot. at 14–15. As numerous courts have recognized, the attorney-client privilege attaches to inter-corporate communications where common ownership and other aspects of corporate affiliation make entities sufficiently interrelated that they are treated as one entity or client for privilege purposes. A leading case, *U.S. v. United Shoe Machinery Corp.*, held on strikingly similar facts that the "client" for purposes of the attorney-client privilege was the parent corporation *and* all its affiliates and subsidiaries. 89 F. Supp. 357, 359 (D. Mass. 1950) ("These corporations all used the same outside and inside counsel. The legal affairs of these corporations were closely related. Except for convenience in billing and formal accounting there was no attempt to regard one particular corporation as 'the client.'"); *see also Crabb v. KFC Nat'l Mgmt. Co.*, 1992 WL 1321, at *3 (6th Cir. 1992) ("The cases clearly hold that a corporate 'client' includes not only the corporation by whom the attorney is employed or retained, but also parent,

13

subsidiary and affiliate corporations.") (quoting *U.S. v. AT&T*, 86 F.R.D. 603, 616 (D.D.C. 1979)); *see, e.g.*, *Music Sales Corp. v. Morris*, 1999 WL 974025, at *8 (S.D.N.Y. 1999) (holding that jointly owned corporations "operate, in effect, as a single entity, [and thus] they need not establish a substantial identity of legal interest in order to assert the attorney-client privilege. There consequently is no basis for disclosure of any attorney-client communications which they may have shared.").[13]

*Prior* to Charter's acquisition of BHN, Advance and BHN shared a common interest in legal issues concerning BHN, since Advance was the parent of Advance/Newhouse—which co-owned BHN—and both were part of a tightly knit corporate family that Sabin (and Birenz) advised on a host of legal issues, including copyright and potential litigation. Petraitis Dec. ¶¶ 2, 4. As courts universally recognize, "[t]he privilege … applies when an attorney provides legal advice or assistance jointly" to a company *and* its "wholly owned subsidiaries and majority-owned subsidiaries" "considered collectively[.]" *AT&T*, 86 F.R.D. at 616 ("The cases clearly hold that a corporate 'client' includes not only the corporation by whom the attorney is employed or retained, but also parent, subsidiary, and affiliate corporations.… The cases in which the issue has arisen as to the identity of the client also involved facts in which

---

[13] *See also Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 472 (W.D. Mich. 1997) ("The universal rule of law… is that the parent and subsidiary share a community of interest, such that the parent (as well as the subsidiary) is the 'client' for purposes of the attorney-client privilege."); *Duplan Corp. v. Deering Milliken Research Corp.*, 397 F. Supp. 1146, 1184-85 (S.D. Cal. 1974) ("[T]he fact that the communications are among formally different corporate entities which are under common ownership or control leads us to treat such inter-related corporate communications in the same manner as intra-corporate communications… if a corporation with a legal interest in an attorney-client communication relays it to another related corporation, the attorney-client privilege is not thereby waived.").

the two related corporations had a substantial identity of legal interest in the matter in controversy."). So too here: "notwithstanding that the corporations were distinct, the representation by the attorney was common … representation and hence the communications among them were still covered by the attorney-client privilege. If the claimant of the privilege can show a substantial identity of legal interest in the specific matter, it therefore makes no difference whether the two corporations were so affiliated as to be a single 'client.'" *See id.* Only "if there is no such community of interest in seeking advice, for example when the matter is transmitted simply for information, [does] the question of closeness of affiliation … arise." *Id.*

*After* the sale of BHN, Advance and Charter (the new owner of BHN) shared a protection over communications and work product relating to this litigation under a joint defense or common interest extension of the attorney-client privilege.[14] That protection applies where "parties among whom privileged matter is shared … have a common legal… interest. In practice, they must have demonstrated cooperation in formulating a common legal strategy[.]" *Spencer v. Taco Bell Corp.*, 2013 WL 12156093, at *2 (M.D. Fla. April 23, 2013) (internal quotations omitted). To assert the protection over shared communications, the "proponent … must establish that when communications were shared among individuals with common legal interests, the act of sharing was part of an ongoing common legal enterprise." *Id.* at *2 (internal

---

[14] "Under the 'common interest' exception to waiver, a party may share its work product with another party without waiving the right to assert the privilege when the parties have a shared interest in actual or potential litigation against a common adversary, and the nature of their common interest is legal, and not solely commercial." *Mitsui Sumitomo Ins.*, 2011 WL 2682958, at *4 (S.D. Fla. July 11, 2011).

quotations omitted). Such enterprises may include a "shared interest in avoiding litigation," *id.* at \*3, or sharing communications as part of a "shared litigation strategy or as an effort to arrive at a common defense to such possible litigation," *Del Monte Int'l GMBH v. Ticofrut, S.A.*, 2017 WL 1709784, at \*9 (S.D. Fla. May 2, 2017) (internal quotations omitted). Here, Plaintiffs had threatened legal action against BHN (through Birenz) before Charter's acquisition. After the acquisition, that threat of litigation continued. During that time, Advance (as the former owner) and Charter (as the new owner) operated under an oral joint defense/common interest agreement regarding this threatened litigation. Petraitis Dec. ¶ 6; Abramov Dec. ¶ 6. The fact that Birenz, Sabin, or Advance retained a copy of the P2P File is of no moment from a waiver perspective as the underlying communications and documents remain protected under the joint defense/common interest extension of attorney-client privilege.

Plaintiffs fail to substantively address the common interest doctrine. Instead, they cite *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985), and *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 80 A.3d 155, 159 (Del. Ch. 2013), for the general rule that when a company is purchased, the company's attorney-client privilege passes to the purchasing entity. *See* Mot. at 15. Neither case addresses the common interest doctrine, and both turned on issues of statutory interpretation that are irrelevant here. *See Great Hill*, 80 A.3d at 156 (interpreting Delaware state statute); *Weintraub*, 471 U.S. at 352–53 (interpreting federal bankruptcy code). Importantly, while *Weintraub* did not address issues of privilege under the common interest doctrine, it noted that when control of a

corporation passes to new management, the power "to assert and waive the corporation's attorney-client privilege passes as well." 473 U.S. at 349.[15]

### D.      Work Product Protection in BHN Files Was Not Waived

Absent from Plaintiffs' Motion is any discussion of work product protection in the P2P File. The work product doctrine is distinct from and broader than the attorney-client privilege: it protects material prepared by attorneys or their agents, whether disclosed to the client or not. *See, e.g.*, *In re Grand Jury Proc.*, 601 F.2d 162, 171 (5th Cir. 1979). It shelters the mental processes of the attorney, providing a privileged area within which the attorney "can analyze and prepare the client's case." *U.S. v. Nobles*, 422 U.S. 225, 238 (1975). Attorney work product generally is protected from discovery unless the materials are otherwise discoverable, or the party shows it has substantial need for the materials and cannot otherwise obtain the information without undue hardship. *Promenades Mall (E&A), LLC v. Allstate Ins. Co.*, 2009 WL 10670070, at *2 (M.D. Fla. May 11, 2009) (citing Fed. R. Civ. P. 26(b)(3)). In any event, "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" must be protected against disclosure. Fed. R. Civ. P. 26(b)(3)(B). Although the protection is not absolute, waiver generally occurs

---

[15] Plaintiffs also incorrectly cite *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.* to confusingly argue that the "joint-client privilege" "only" applies where an attorney represents multiple clients "in the same litigation." Mot. at 17 (citing 295 F.R.D. 550, 594 (S.D. Fla. 2013)). That is incorrect: *MapleWood Partners* merely states that the joint client *doctrine* "recognizes" that attorney client privilege "*can* apply to joint clients of the same attorney, in the same litigation." 295 F.R.D. at 594. As the court explains, the doctrine is not limited to that context, but broadly "provides that disclosure by a client or her attorney, which otherwise might constitute a waiver of the attorney-client privilege, is not considered a waiver if the disclosure is made to a co-client of that attorney." *Id.*

only when protected materials are voluntarily disclosed in a manner inconsistent with maintaining secrecy *against opponents*, or in a manner that "substantially increases the opportunity for *potential adversaries* to obtain the information." *In re Grand Jury Subpoenas*, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982) (emphasis added).

Work product protection potentially applies to BHN documents beginning no later than January 2015, when Rightscorp made demands against BHN. It applies even more plainly to documents, including documents in the P2P File, prepared in the shadow of Plaintiffs' communications beginning no later than April 2016 threatening litigation against BHN. Plaintiffs have not shown any "substantial need" justifying invading that protection. Moreover, some of those materials constitute opinion work product, to which there is an absolute protection, regardless of need. Plaintiffs do not argue that such work product protection was ever waived and could not plausibly do so—there is no evidence that any Sabin files were ever disclosed in a manner that would expose them to "potential adversaries" of BHN or Charter.

### E.   Plaintiffs' Demand for a Second Birenz Deposition Should Be Denied

#### 1.   Birenz Properly Refused to Answer Plaintiffs' Questions Seeking Privileged Information

Courts universally recognize that the very core of attorney-client privilege lies in its application to communication between client and attorney that "relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding[.]" *United Shoe*, 89 F. Supp.

at 358. The privilege covers disclosure of facts that an attorney learns from his client, "if the only reason the attorney has knowledge of the fact is by communications with a client[.]" *In re ML-Lee Acq'n Fund II, L.P. & ML-Lee Acq'n Fund (Ret. Accts.) II, L.P. Sec. Litig.*, 848 F. Supp. 527, 566 (D. Del. 1994) (where this is the case, the "attorney can not be compelled to reveal [the fact] absent some exception to the attorney-client privilege"); *accord*, *U.S. v. Rakes*, 136 F.3d 1, 4 n.4 (1st Cir. 1998); *see, e.g.*, *H.W. Carter & Sons, Inc. v. William Carter Co.*, 1995 WL 301351, at *2 (S.D.N.Y. May 16, 1995) (attorney cannot "be compelled to disclose facts that he or she learns from a client"); *Elliott Assocs., L.P. v. Republic of Peru*, 176 F.R.D. 93, 98–99 (S.D.N.Y. 1997) (attorney's knowledge of client's address was privileged); *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 2012 WL 5415108, at *4 (M.D. Fla. Nov. 6, 2012) ("the content of what was communicated to legal counsel by the client" is generally protected). The cases Plaintiffs cite to support their misguided theory merely state, as *dicta*, the general principle that facts are not, in and of themselves, protected by attorney-client privilege. *See* Mot. at 21–22 (citing *Universal City*, 230 F.R.D. at 690–91 and *Davila v. Odum & Sons Trucking, Inc.*, 2006 WL 8431572, at *4 (S.D. Fla. July 24, 2006)). Those vague statements lack relevance here, where the issue is the *communication*, not the facts as such. Neither decision provides any analysis of a situation like this, where a litigation adversary seeks to compel a party's outside attorney to disclose the factual content of client communications concerning key legal issues, in circumstances where the attorney *only* knows the information as a result of the confidential communications. The over-

19

whelming weight of authority supports Birenz's assertions of privilege in his confidential communications with his client in his capacity as its attorney.

Plaintiffs' argument that "facts communicated" to an attorney cannot be subject to privilege, "[e]ven … [when] an attorney is giving legal advice[,]" Mot. at 21, fundamentally misapprehends the nature of the privilege Birenz claimed. First, the vast majority of Plaintiffs' questions sought Birenz's knowledge about core legal information, not mere "facts."[16] Second, where an attorney's knowledge of facts derives exclusively from confidential communications with his client, the communications and their content are privileged. Plaintiffs also argue, absurdly, that "[i]n order to assert privilege in a deposition context, the witness *must reference a specific privileged communication* as the basis not to answer." Mot. at 21 (emphasis added). Nothing supports this bizarre theory. Indeed, one of Plaintiffs' own cited cases specifically notes that "[i]f … questions and/or answers at the depositions implicate attorney-client communications, objections based on privilege can be raised and preserved until such issues are decided on a proper motion." *Payne v. Seminole Elec. Coop., Inc.*, 2021 WL 3017392, at *10 (M.D. Fla. Feb. 2, 2021). *Payne* stands for the unremarkable proposition that a party's claim of privilege with respect to a *particular* communication must be supported with respect to that communication. *Id.* at *9.

---

[16] Plaintiffs' own examples of their questioning expose their supposed focus on "facts" as mere semantic pretext. As just one example, it is clear that questions posed *to BHN's lawyer* for "the facts of what would have caused Bright House to terminate customers that it believed to be repeat infringers" seek privileged information about the attorney's legal knowledge about and legal advice to BHN about BHN's policies and practices, not any supposedly "objective" facts. *See* Mot. at 22.

Birenz's assertion of privilege was plainly within the ambit of the uniform authority that the privilege covers any "fact of which the attorney was informed … by his client" in confidence, for a primarily legal purpose. *See United Shoe*, 89 F. Supp. at 358. To the extent Birenz's knowledge of facts was derived solely from such communications with BHN, he properly declined to answer questions that would have required him to disclose their substance or content. And, as Plaintiffs acknowledge, Birenz "repeatedly" explained that he was unable to answer certain questions "without divulging *the contents* of attorney-client communications." Mot. at 23 n.13 (emphasis in original); *id.* at 24. His assertion of privilege was entirely proper.

### 2.    Birenz Acted Primarily as BHN's Outside Legal Counsel and Has a Legal Obligation to Protect His Former Client's Privileges

Plaintiffs claim that Birenz acted in four different "business roles" in his representation of BHN, and thus improperly declined to answer questions at his deposition based upon the attorney-client privilege or work product protections. *See id.* at 5. But a careful examination shows that Birenz acted in three of these roles primarily (if not solely) as outside legal advisor to BHN (as well as to Advance), and that the "primary purpose" of the communications over which privilege was asserted was to obtain legal advice, as opposed to business advice. *U.S. v. Davita, Inc.*, 301 F.R.D. 676, 682 (M.D. Ga. 2014); *see also Sedco Int'l, S. A. v. Cory*, 683 F.2d 1201, 1205-06 (8th Cir. 1982); *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d. Cir. 2007) (noting attorney-client confidential communications are privileged so long as the "predominant purpose" of the communications was to "render or solicit legal advice"). Communications between BHN and

Birenz are presumably privileged and primarily legal because Birenz was outside counsel. *See U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996); *Davita*, 301 F.R.D. at 682. Nor can Plaintiffs rebut this presumption because Birenz was never "employed without reference to his knowledge and discretion in the law." *See Chen*, 99 F.3d at 1501. Plaintiffs concede, for example, that Birenz acted in one role as a "Partner at Sabin who provided legal representation to BHN." Mot. at 5. There is little question that this role satisfied the primary purpose test. Plaintiffs state that in another role Birenz worked on the design and implementation of the copyright response program—yet provide not a shred of evidence—there is none—to support their contention that Birenz, BHN's outside counsel who held no position with BHN, Petraitis Dec. ¶ 4, served a business role merely because he was "involved in … discussions" and "participated in meetings" *concerning legal copyright issues*, Mot. at 5. That is what lawyers *do*—and the "primary purpose" test is met when "lawyers act in a counseling and planning role." *Chen*, 99 F.3d at 1501; *see also Erie*, 473 F.3d at 421 (finding predominant purpose test met because client communicated with attorney "to ascertain its obligations under the Fourth Amendment and how those requirements may be fulfilled, rather than to save money"). Birenz's communications and actions around this counseling work are privileged. [17]

---

[17] Plaintiffs' cited cases simply recite the commonplace understanding that business advice is not protected by the attorney-client privilege. Mot. at 21. Neither is relevant here: *Ray v. Cutter Lab'ys, Div. of Miles, Inc.* concluded that the document in question, a legal memorandum inadvertently produced in discovery, "was indeed protected by the attorney-client privilege[.]" 746 F. Supp. 86, 87 (M.D. Fla. 1990). And *U.S. v. Lockheed Martin Corp.* analyzed documents prepared by the company's *accountant*, concluding that those prepared for his business purposes were not privileged, but that privilege covered documents "intended specifically and exclusively for communication … to enable [an attorney] to

Plaintiffs state that in yet another role, Birenz represented BHN in "disputes" regarding claims of infringement. Mot. at 5. But Birenz undertook these communications in his role as outside lawyer. Birenz Tr. 23:17-21, 24:19-25:16, 203:12-15. At his deposition, he testified to his communications with Plaintiffs relating to such disputes and, more specifically, communications with Plaintiffs' own lead trial attorney in this action. *Id.* 307:1-308:4. Birenz, however, exercised his right not to testify as to otherwise privileged communications with BHN regarding the dispute. *E.g.*, *id.* 205:17-20, 310:21-24, 314:14-17. Plaintiffs cannot seriously contend Birenz's communications with BHN about this dispute fail to satisfy the primary purpose test. Moreover, the goose-gander test has to apply here: Plaintiffs have asserted attorney-client and work product protections over Oppenheim's communications with his client relating to his dispute, despite the fact that he engaged in conversations with Birenz.[18]

Finally, Plaintiffs correctly note that Birenz acted as BHN's DMCA agent, *and* that his only role in that position was as "the administrative handler of infringement notifications, ensuring those notifications were received by the Sabin e-mail account and forwarded from there to BHN." Mot. at 5. Birenz did not communicate with alleged infringers in this "administrative" role, and the receipt and forwarding of notifications was automated. Birenz Tr. 239:23-240:2. Moreover, Birenz *testified* about

---

advise higher authority within Lockheed on legal issues[.]" 995 F. Supp. 1460, 1465 (M.D. Fla. 1998)).
[18] Birenz's invocation of privilege is no different than Plaintiffs have done, allowing testimony and producing documents relating to communications with their legal representative (Oppenheim) while also asserting privilege during deposition or document production as it relates to those same privileged actors or other activities covered by attorney-client or work product protection. *E.g.*, Golinveaux Dec. ¶ 4, Ex. C, Entry Nos. 197, 208, 249 (June 14, 2021 Privilege Log); *Id.* ¶ 5, Ex. D 132:3-6, 153:3-8 (Aug. 30, 2021 Dep. Tr. of Marks); *Id.* ¶ 6, Ex. E 73:4-13 (Aug. 12, 2021 Dep. Tr. of McMullan).

his role, and activities relating to it. *Id.* 124:22-128:16. Nothing about this administrative role changes the fact that Birenz primarily acted as a legal advisor to BHN—*not* a businessperson—and, as such, he properly exercised his ethical obligations to protect his former client's privilege.[19]

### 3. Plaintiffs' Sword/Shield Argument Is Without Merit

Plaintiffs' argument that Birenz "selectively provid[ed] testimony on issues he believed to be in BHN's favor while claiming privilege over unfavorable facts," Mot. at 24, is nonsense, as well shown by the "example" Plaintiffs provide, of Birenz answering one question and declining to answer a second, completely different question. Those questions themselves make it clear why Birenz answered as he did. The first was a straightforward question about BHN's six-step process for handling notices that called for a straightforward, procedural answer: "What did the six steps entail in your understanding?" Birenz Tr. 264:22-23. The second, by contrast, was an elaborate hypothetical, which inquired about BHN's analysis, procedures, and practices in a specific, complex scenario, precisely the type of situation where BHN would be likely to seek legal advice from its copyright attorney:

---

[19] Plaintiffs advance the sweeping argument that "an attorney's knowledge of and involvement in technical matters" is categorically "not privileged." Mot. at 21. Nothing supports this astonishing claim, which if true would effectively eliminate attorney-client privilege for technology companies. But it is not true, and Plaintiffs' cited case does not support it. *See id.* (citing *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1236 (S.D. Fla. 2018)). *Burrow* states the unremarkable proposition that "test results and other technical information, *taken by themselves*," are not privileged. 334 F. Supp. 3d at 1236 (emphasis added). That has no bearing on whether privilege covers confidential client communications concerning legal aspects of "the receipt, processing, and forwarding of DMCA notices and duties ancillary thereto," since such communications are not remotely similar to the type of "test results" or "technical information" contained in the engineering reports, photos, and videos at issue in *Burrow*. *See id.* To the extent Birenz's knowledge about those topics derived solely from protected client communications, he properly declined to answer questions about them. *See supra* Part II.E.

> Q. So for a customer who had reached the sixth step and had gotten that second requirement to call in to inquire to restore their service. If BHN restored their service in that phone call and then subsequently they were the subject of additional (inaudible) infringement of peer-to-peer issues what would happen to them in terms of the six step process?

*Id.* 269:23-270:9; Mot. at 23 n.13. As Birenz explained, answering the second question would have required "divulging the contents of attorney-client communications[,]" since "whatever I know on that subject … I learned from my client in the course of attorney-client privileged communications." Birenz Tr. 270:16-19, 271:9-14. That he *was* able to answer the first, far simpler, question *without* divulging the contents of privileged communications is both unsurprising and irrelevant.

### 4.   Plaintiffs' Requested Relief Has No Legal Support

Plaintiffs have not justified as a factual or legal matter the extraordinary relief sought. They ask this Court to require Birenz to sit for another *four* hours of testimony and be required to answer every question to which privilege was properly invoked at the deposition. Plaintiffs have not demonstrated as a general matter—much less on a question-by-question basis—that the invocation of privilege was without merit. Given Birenz's role as BHN's outside lawyer, the relief sought, which would act as a broad waiver of BHN's privilege, is without serious merit.

Dated: September 24, 2021          Respectfully submitted,

By: */s/ Jennifer A. Golinveaux*
Jennifer A. Golinveaux (*pro hac vice*)
Winston & Strawn LLP
101 California Street 35th Floor
San Francisco, CA 94111
Fax: 415.591.1400
Email: jgolinveaux@winston.com

John J. Rosenthal
Winston & Strawn LLP (*pro hac vice* pending)
1901 L Street NW
Washington, D.C. 20036
Email: jrosenthal@winston.com

William J. Schifino Jr.
Florida Bar No. 564338
John A. Schifino
Florida Bar No. 72321
GUNSTER, YOAKLEY & STEWART, P.A.
401 East Jackson Street, Suite 2500
Tampa, Florida 33602
Phone: 813.228.9080
Fax: 813.228.6739
Email: wschifino@gunster.com
Email: jschifino@gunster.com
Secondary Email:
cmarlowe@gunster.com
Secondary Email:
adavis@gunster.com

*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I certify that on September 24, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the parties of record.

*/s/ Jennifer A. Golinveaux*