**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UMG RECORDINGS, INC., *et al*.,

     Plaintiffs and Counter-Defendants,

v.

BRIGHT HOUSE NETWORKS, LLC

     Defendant and Counter-Plaintiff.

Case No. 8:19-cv-00710-MSS-TGW

## NON-PARTIES RONALD HUGHES, ROBERT KUSZMAR, AND MICHAEL TOMASULLO'S OPPOSITION TO PLAINTIFFS' SEPTEMBER 15, 2021 MOTION TO COMPEL

Plaintiffs' motion to compel text messages post-dating the relevant discovery period from the personal devices of ***three former, non-executive*** employees of Bright House Networks, LLC ("BHN") should be denied. In the underlying litigation against BHN, Plaintiffs have served 442 written discovery requests on BHN. Over the past three months, Plaintiffs have also deposed 16 party and third party witnesses, for a cumulative total of over 100 hours. Without question, Plaintiffs have had a full and fair opportunity to take discovery of BHN and to explore factual testimony from third parties to the extent such testimony relates to the claims, defenses, and applicable discovery period. Against this backdrop, an eleventh hour motion to compel the production of personal cell phone data from three former, non-executive employees—who have not been employed by BHN for years—is over-reaching and unjustified.

First, Plaintiffs have failed to demonstrate how the personal text messages of non-parties that were exchanged in 2021 are relevant to any party's claims or defenses

1

or proportional to the needs of this case. Plaintiffs' request is also harassing and unduly burdensome on non-parties to this litigation. Indeed, Plaintiffs deposed the former employees for over 18 hours collectively and learned that the former employees do not have any documents or communications still in their possession from their employment at BHN, but only briefly communicated with each other about the case in June 2021 after being unexpectedly served with deposition subpoenas at their private residences. When asked by Plaintiffs' counsel about the communications, the witnesses testified truthfully and fully about the substance of the communications and disclosed that the communications were merely an effort to learn more about the subpoenas after being unpleasantly surprised with a process server at their homes.

Second, as Plaintiffs know from the depositions of these individuals, the requested text messages are no longer accessible. The former employees testified under oath that the text messages were deleted shortly after transmission as a matter of each individual's personal practices. This was not for nefarious reasons, but because these individuals—who are all retired or otherwise out of the work force—do not have high data limits on their phones. Since they are on friendly terms with each other as former colleagues, they occasionally communicate by text message with respect to personal matters unrelated to the lawsuit, and then delete the messages after reading them. Despite knowing this, Plaintiffs have demanded the full production of their personal cell phone data through repeated informal and formal requests without justification.

Ronald Hughes, Robert Kuszmar, and Michael Tomasullo respect the Court's authority, and dutifully and promptly complied with the deposition subpoenas served on them, sitting for very long deposition days in July and August without complaint. However, the document subpoenas subsequently served on them, which seek access to their personal cell phone data from 2021, have caused these individuals considerable angst due to the invasive nature of the requests. Because the document subpoenas are not reasonably calculated to lead to the discovery of admissible evidence, and are a burdensome invasion of their privacy, Mr. Hughes, Mr. Kuszmar, and Mr. Tomasullo respectfully request that the Court deny the motion to compel.

## FACTUAL BACKGROUND

### A. Plaintiffs Served Deposition Subpoenas On Non-Parties Ronald Hughes, Robert Kuszmar, And Michael Tomasullo At Their Personal Residences.

Ronald Hughes, Robert Kuszmar, and Michael Tomasullo (collectively referred to herein as the "Non-Parties") are former non-executive employees of BHN, who worked as part of BHN's Security and Abuse team during the discovery period of March 1, 2012 to May 17, 2016. Ex. 4, Kuszmar Dep. Tr. 15:1-21; Ex. 5, Tomasullo Dep. Tr.: 16:20-17:7, Ex. 6, Hughes Dep. Tr: 23:19-24:1. These individuals do not currently work for BHN or its successor in interest, Charter Communications, Inc., and have not worked for either company on the Security and Abuse team since 2018. Ex. 4, Kuszmar Dep. Tr. 15:17-16:21; Ex. 5, Tomasullo Dep. Tr.: 11:1-4, Ex. 6, Hughes Dep. Tr: 14:22-23. Mr. Hughes, Mr. Kuszmar, and Mr. Tomasullo are not parties to this litigation and do not have any claimed interest in this lawsuit's outcome.

On June 22, 2021, Plaintiffs' counsel emailed counsel for BHN stating that they intended to serve Mr. Hughes and Mr. Kuszmar with deposition subpoenas and requested that counsel for BHN confirm by close of business *the very same day* whether or not they would be accepting service on behalf of Mr. Hughes and Mr. Kuszmar. Ex. 1, at 3-4, June 22, 2021 M. Swears Email. Plaintiffs' counsel emailed again that evening stating that if no response was heard from counsel for BHN by "9 AM ET tomorrow", Plaintiffs would proceed with personal service. *Id.* at 2-3, June 22, 2021 M. Swears Email.

Counsel for BHN promptly responded, requesting that Plaintiffs "not proceed to personally serve the noticed individuals while [counsel for BHN] determine whether [they] can accept service on their behalf." *Id.* at 1-2, June 22, 2021 K. Akopjan Email. Instead of extending the professional courtesy, Plaintiffs' counsel proceeded to personally serve Mr. Hughes and Mr. Kuszmar at their homes on June 24, 2021, less than two days after they had first notified BHN's counsel of the subpoenas to the Non-Parties.[1] *See* Ex. 2, at 3-4.

---

[1]  A similar fact pattern occurred with respect to Mr. Tomasullo's deposition subpoena. On June 24, 2021, Plaintiffs' counsel emailed counsel for BHN stating that they intended to serve Mr. Tomasullo with a subpoena, and demanding that counsel for BHN confirm by 12:00 pm *the next day* whether or not they would be accepting service on behalf of Mr. Tomasullo. *See* Ex. 2, at 3, June 24, 2021 M. Swears Email. Although counsel for BHN informed Plaintiffs' counsel that they were trying to contact Mr. Tomasullo, Plaintiffs had a process server personally serve Mr. Tomasullo at his home on June 28, 2021. *See* Ex. 3, at 1, June 28, 2021 M. Swears Email.

When process servers unexpectedly appeared at the Non-Parties' doorsteps, they were understandably confused.  The Non-Parties resorted to resources available to them to understand the meaning behind the subpoenas they had just received.  Mr. Hughes testified that he "basically cut and pasted" the case number "into Google" to learn about the case, *see* Ex. 6, Hughes Dep. Tr. 10:24-11:3, and asked his wife what she thought the subpoena meant, *id.* at 14:6-18.  The Non-Parties also reached out to each other because "[they] had been served a subpoena and [they] were just curious . . . what this was all about."  *Id.* at 15:13-15; *see also* Ex. 4, Kuszmar Dep. Tr. 29:9-10 ("I'm trying to find out what might be going on, but, again, no one knew anything.").

One day later, on June 25, 2021, counsel for BHN confirmed that they represented Mr. Hughes and Mr. Kuszmar, Ex. 2, at 2-3, June 25, 2021 J. Young Email, and on July 1, 2021, counsel for BHN confirmed that they also represented Mr. Tomasullo, *id.* at 1, July 1, 2021 J. Young Email.

### B.  Plaintiffs Deposed The Non-Parties For Over 18 Hours.

Each of the Non-Parties has been deposed in the underlying litigation.  Mr. Kuszmar was deposed on July 22, 2021 for over six hours.  Brewer Decl. ¶ 5.  Mr. Tomasullo was deposed on August 18, 2021 for over seven hours.  *Id.*  Mr. Hughes was deposed on August 19, 2021 for over five hours.  *Id.*  Cumulatively, these depositions spanned over 18 hours on the record.

Despite struggling to recall information from over four years ago due to age and the passage of time, *see, e.g.,* Ex. 4, Kuszmar Dep. Tr. 12:6-12 ("I am getting a little bit older and one thing that has happened is that memory isn't what it used to be."), the

Non-Parties dutifully sat for hours of depositions and, to their best of their abilities, answered all of Plaintiffs' counsels' questions. Plaintiffs asked Mr. Kuszmar and Mr. Hughes over 49 questions relating to their communications with former colleagues about this litigation and the text messages. Ex. 4, Kuszmar Dep. Tr. 26:17-32:10; Ex. 6, Hughes Dep. Tr. 15:5-20:16.

Mr. Kuszmar testified that because he had no idea what the subpoena meant after he had just been served, he texted Mr. Tomasullo, a former colleague that he kept in touch with "to see if there was anything similar that had happened to him." Ex. 4, Kuszmar Dep. Tr. 27:12-14. Mr. Kuszmar explained that after seeing the subpoena and "because of [his] position" at BHN, he thought the case "was something that was associated with copyright infringement." *Id.* at 27:16-19. Mr. Kuszmar also testified that he texted two other former employees, Ash Ferrar and Mr. Hughes, in an attempt to "determine . . . what was going on." *Id.* at 30:15; *see also id.* at 30:1-3 (Mr. Kuszmar explaining that he texted to "ask[] if there was anything that [Mr. Ferrar] knew that may have been involving a deposition."); *id.* at 30:20-23 ("[Mr. Hughes) and I like to fish and that's basically the reason why we were chatting, to try to set up a day that we could go fishing.").

During the deposition, Mr. Kuszmar testified that he no longer had the text messages with Mr. Tomasullo, Mr. Ferrar, or Mr. Hughes because he deletes his texts regularly after he receives them. *Id.* at 31:19-25. Despite Mr. Kuszmar explaining that he no longer had possession of the text messages, Plaintiffs nevertheless demanded access to the personal cell phone data. *Id.* at 32:1-5.

Similarly, Mr. Hughes testified that after receiving the subpoena, he had called Mr. Kuszmar, Mr. Ferrar, and Mr. Tomasullo and spoke with them each for less than five minutes.  Ex. 6, Hughes Dep. Tr. 16:20-17:1.  Together, they realized that the subpoena was related to copyright infringement allegations being asserted against BHN.  *Id.* at 17:9-11.  Mr. Hughes confirmed that a group text with Mr. Ferrar, Mr. Kuszmar, and Mr. Tomasullo was created, *id.* at 18:4-5, but that he did not speak about the substance of his testimony with any of the individuals, *id.* at 17:16-19.  Mr. Hughes also testified that he deleted the text messages because he "[u]sually delete[s] messages a couple days after they take place."  *Id.* at 19:14-19.

Despite deposing Mr. Tomasullo for over seven hours, Plaintiffs' counsel chose not to question Mr. Tomasullo about the text messages at issue.  Counsel for Mr. Tomasullo has confirmed that the requested text messages are not available on Mr. Tomasullo's personal device because, like Mr. Hughes and Mr. Kuszmar, he also routinely deletes his messages after reading them.  Brewer Decl. ¶ 13.

### C. Plaintiffs Demanded Production Of The Non-Parties' Personal Text Messages After The Deposition Of Mr. Kuszmar.

After the deposition of Mr. Kuszmar, Plaintiffs' counsel emailed counsel for Mr. Kuszmar, making the sweeping demand that "Mr. Kuszmar search for and produce documents in his possession, custody, or control concerning this dispute."  *See* Ex. 7, at 9, July 23, 2021 N. Salsberg Email.  Plaintiffs' counsel tried to justify their request by claiming Mr. Kuszmar testified that the text messages "reflect discussions between deponents in this case about the copyright infringement that they believed

likely led to this action." *Id.* at 7, July 26, 2021 N. Salsberg Email.  Mr. Kuszmar's counsel responded, explaining that Plaintiffs mischaracterized Mr. Kuszmar's testimony and that "[d]iscovery into a former employee's personal text messages is neither necessary, relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 6, July 27, 2021 A. Huebert Email.

Nevertheless, on August 9, 2021. Plaintiffs' counsel served document subpoenas directed to the Non-Parties requesting the production of "All Documents and communications between You and any current or former BHN employee concerning the above-captioned lawsuit, dated June 24, 2021 through the present . . . ." Dkt. 343, Sahni Decl., Exs. A-C.  The Non-Parties timely served their Objections on August 23, 2021.  *Id.* at Exs. D-F.  On September 7, 2021, counsel for Plaintiffs and the Non-Parties conferred via conference call upon Plaintiffs' request and confirmed they were at an impasse.  Ex. 7, at 1, Sept. 7, 2021 M. Fields Email.  Ten days later, on the last day of fact discovery, Plaintiffs filed this motion to compel seeking the production of the Non-Parties' personal text messages.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Rule 45(d)(1), which governs non-party subpoenas, requires that a party seeking discovery through the use of a subpoena

"must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed R. Civ. P. 45(d)(1).

When ruling on motions to compel in the Rule 45 context, courts apply a balancing test, weighing the probative value of the documents sought against the burden of complying with the subpoena.  *See Cytodone Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003).  Courts consider factors such as: the relevance of the information requested, the requesting party's need for the documents, the breadth of the document request, the time period covered by the request, and the burden imposed on the person ordered to produce the desired information.  *Id.*  An individual's status as a non-party status is a "significant factor" considered in determining whether discovery is unduly burdensome  *Id.*; *see also Pinehaven Plantation Prop., LLC v. Mountcastle Family LLC,* No. 1:12-CV-62(WLS), 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013) ("[I]t is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery." (internal citations omitted)).

## ARGUMENT

**I.    Plaintiffs Should Not Be Not Entitled To The Production Of Text Messages From Personal Cell Phones Belonging To The Non-Parties.**

The Court should reject Plaintiffs' demand for the production of the Non-Parties' text messages because (i) Plaintiffs have not demonstrated and cannot demonstrate that the text messages contain any relevant information that would be admissible in Court; (ii) Plaintiffs have not shown and cannot show any compelling

need for the production of these text messages; and (iii) Plaintiffs' request is burdensome, harassing, and invasive.

## A. The Text Messages Are Not Relevant To Any Claims or Defenses In The Action.

Text messages between former (non-executive, non-managerial) employees, transmitted on their personal devices five years after the end of the relevant discovery period, that simply address their personal confusion over the subpoenas served on them, are irrelevant to any claims or defenses asserted by the parties in this action, and should not be subject to discovery. *See C.H. v. Sch. Bd. Of Okaloosa Cty. Fla.*, No. 3:18-CV-453-MCR-HTC, 2020 WL 6572430 at *3 (N.D. Fla. Nov. 4, 2020) (denying the "fishing expedition" into non-party communications because Plaintiffs failed to establish relevance). Indeed, Plaintiffs have not met their burden of establishing the relevance of these messages for multiple reasons.

First, Plaintiffs mischaracterize the testimony of Mr. Kuszmar in an attempt to make the text messages appear more relevant than the record reflects. Plaintiffs argue that Mr. Kuszmar's testimony "suggests that he discussed with his former colleagues *why* based on his work experience at BHN he believed that the company had been sued for copyright infringement." Mot. 7 (emphasis in original). But this fundamentally misinterprets his testimony. Nowhere in the 270-page transcript of Mr. Kuszmar's deposition testimony does it state that Mr. Kuszmar discussed with former colleagues historical facts as to "why" BHN was sued. Instead, Mr. Kuszmar testified that he reached out to his former colleagues because he had no idea what the subpoena meant

10

and that he was trying to "determine . . . what was going on." *See* Ex. 4, Kuszmar, Dep. Tr. 30:15.  Mr. Kuszmar further testified that his conversations "didn't go anywhere because of – it was just – there was no true knowledge of anything." *Id.* at 28: 15-17; *see also id.* 29:9-10 ("I'm trying to find out what might be going on, but, again, no one knew anything.").  The text messages are not relevant because they are not, as Plaintiffs claim, substantive discussions of why BHN has been sued for copyright infringement or evidence of BHN's actions during the relevant time period.

Second, even if the messages did contain the Non-Parties' impressions of the litigation, Plaintiffs' argument that these impressions are "squarely relevant to this case" still lacks merit.  Mot. 7.  The Non-Parties are all ***non-executive and non-managerial former*** employees—not owners, officers, directors, or managers of BHN. As such their statements ***do not*** have the authority to bind BHN.  *See Zaben v. Air Prods. & Chemicals, Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997) (holding that statements by lower-level supervisors were not admissions of party opponent); *Rentclub, Inc. v. Transam. Rental Fin. Corp.*, 811 F. Supp. 651, 657 (M.D. Fla. 1992), *aff'd* 43 F.3d 1439 (11th Cir. 1995) ("[P]ersons whose statements constitute admissions by the corporation . . . are clearly limited to current employees"); *see also Equal Emp. Opportunity Comm'n v. Austal USA, LLC*, 447 F. Supp. 3d 1252, 1261 (S.D. Ala. 2020) (former employees' statements represent "personal viewpoints as to how they felt" and do not constitute "general statements" about the employer's actions).  The Non-Parties' impressions of the litigation in 2021, communicated by text, years after the

11

discovery period and well after their employment at BHN has ended, are not admissions but instead are hearsay statements by third parties that are not admissible at trial.

Third, Plaintiffs concede that the requested messages post-date the discovery period. Mot. 7. That admission, alone, should end the Court's inquiry. Seeking documents and communications from June 24, 2021 to the present is improper and a violation of the Court's prior orders foreclosing Plaintiffs' discovery requests aimed beyond the discovery period for a lack of relevance. *See, e.g.*, Ex. 8, Jan. 8, 2020 Hr'g Tr. 44:3-45:11; Ex. 9, Sept. 24, 2020 Hr'g Tr. 21:2-5, 36:11-20. Plaintiffs themselves have routinely objected to discovery outside of the discovery period. *See, e.g.*, Ex. 10, Aug. 10, 2021 Record Company Pls.' Am. Objs. and Resps. to BHN's Notice of 30(b)(6) Dep. 3-4 ("Record Company Plaintiffs object to the Notice as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it is not limited to (1) a reasonable time period, or (2) the claims or defenses in the action. Unless otherwise stated, Record Plaintiffs interpret the Notice to include a reasonable time period of March 24, 2013 to May 17, 2016."); Dkt. 230, Pls.' Opp'n 6 ("Because the appropriate time period for discovery has already been full litigated and established, the Magistrate Judge did not clearly err in following his prior rulings to deny discovery beyond the Discovery Period.").

In an effort to support their argument that the ***Non-Parties*** should be ordered to produce messages that post-date the discovery period, Plaintiffs cite to Judge Scriven's September 7, 2021 Order (Dkt. 330) requiring ***Plaintiffs*** to produce documents that

post-date the discovery period because the requested records had been created by *Plaintiffs*. *Id.* at 12. But this argument stretches the September 7, 2021 Order beyond its intended parameters. Notably, the September 7, 2021 Order did not hold that any and all documents and communications that post-date the discovery period are "clearly relevant." Mot. 7. The Order was *very specific* as to which documents are relevant and discoverable—communications or documents created by *Plaintiffs* addressing evidence of purported copyright infringement by BHN. *See* Dkt. 330, at 12. Plaintiffs cannot equate the relevance of documents they created about the case, when they are the party seeking more than $1 billion in damages from BHN, to text messages between the Non-Parties expressing confusion as to why they were subpoenaed. *See, e.g., Pinehaven Plantation Prop., LLC*, 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013) ("[I]t is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery."). Plaintiffs' efforts to contort the Non-Parties' deposition testimony and the Court's Order, in an effort to make the messages appear "relevant," should be rejected.

**B. Plaintiffs Have Not Demonstrated Any Need For The Text Messages.**

Plaintiffs' motion should also be denied because they have not demonstrated any compelling need for the text messages. *See Cytodone Techs., Inc.,* 216 F.R.D. at 535

(citing need as a factor in the analysis to determine whether a non-party production is warranted).

Plaintiffs' thin explanation for why they need the text messages (purportedly to determine "whether the facts [the Non-Parties] testified to in depositions are consistent with their private telling and whether they coordinated their testimony", Mot. 2) is belied by the fact that Plaintiffs cite no evidence for this baseless concern. Nothing in each of Mr. Hughes, Mr. Kuszmar, and Mr. Tomasullo's depositions suggests that anything but truthful testimony was given; indeed, Mr. Hughes definitively testified that he did not speak about the substance of his testimony with any of the other Non-Parties. Ex. 6, Hughes Dep. Tr. at 17:16-19. Additionally, despite counsel for BHN asking counsel for Plaintiffs at least four times why they need these text messages, Plaintiffs **never** raised concerns about coordinated testimony. *See, e.g.,* Ex. 7. Moreover, although Plaintiffs claim that they need these messages now, they chose not to ask Mr. Tomasullo a single question during his seven-hour deposition about the text messages at issue or his communications with the other Non-Parties.

In sum, there is no justifiable need for these text messages. Instead, Plaintiffs' motion appears to be a "Hail Mary" attempt on the last day of fact discovery to uncover personal communications from former employees to parade around at trial in an effort to put tactical pressure on BHN.[2] Such a fishing expedition is not an

---

[2] The facts speak for themselves: the case has been pending for over two years and the parties have had 24 months to conduct fact discovery. Plaintiffs have taken 16 party

acceptable need for the Non-Parties' personal records and should be denied by this Court.

### C. Plaintiffs' Request Is Unduly Burdensome On Non-Parties To This Litigation And An Invasion Of Their Privacy.

Plaintiffs' persistent demand for the former employees' personal text messages is especially inappropriate given that Mr. Kuszmar, Mr. Hughes, and Mr. Tomasullo are non-parties to this action and have legitimate privacy concerns. *See C.H.*, 2020 WL 6572430, at *3 (recognizing a third party's "personal interest in the privacy of her cell phone records"); *Smith v. Pefanis*, No. 1:08-CV-1042-JOF-RGV, 2008 WL 11333335, at *3 (N.D. Ga. Oct. 30, 2008) (denying an overbroad request for a third party's cellular data including because it "raises significant privacy concerns"(internal citations omitted)).[3] Again, these gentlemen were not and are not high-level BHN executives or managerial employees with any authority to bind BHN. They are retired individuals living private lives in Florida. They did not keep, and therefore do not possess, any BHN documents from the relevant time period. A demand that these individuals allow Plaintiffs access to their personal devices, which contain personally sensitive information and communications (such as communications with or about

---

and third party depositions spanning over 100 hours, and propounded 442 written discovery requests on BHN. *See* Brewer Decl. ¶¶ 14-15.

[3] Contrary to Plaintiffs' arguments that the cases cited by the Non-Parties in their objections to the subpoenas are not applicable (Mot. 8), the cited cases make clear that "the threshold for any discovery dispute is relevance." *See C. H.*, 2020 WL 6572430 at *2. Where, as here, the party demanding production cannot make out a clear case for relevance, the burden to the non-party in exposing personal information outweighs the party's "fishing expedition." *See id.* at *3.

their spouses, finances, and/or health) is unwarranted, especially given that this demand has not been made of any *party* representatives.  The motion to compel should be denied on this additional basis as well.

## II.    Plaintiffs' Motion Should be Denied Because The Requested Text Messages Do Not Exist.

Finally, as Mr. Kuszmar and Mr. Hughes testified at their depositions, the requested text messages no longer exist.  *See* Ex. 4, Kuszmar Dep. Tr. 31:18-25 (testifying that he routinely "delete[s]" his text messages and that he deleted the messages in question); Ex. 6, Hughes Dep. Tr. 19:14-19 (same).  Although Mr. Tomasullo was not asked at his deposition, counsel for Mr. Tomasullo has confirmed that the requested text messages also do not exist on Mr. Tomasullo's personal device because he also follows the same practice of deleting messages after reading.  Brewer Decl. ¶ 13.  Because the requested text messages are no longer accessible, Plaintiffs' motion should be denied.  *See, e.g., Sandoz, Inc. v. United Therapeutics Corp.*, No. 20-MC-1444, 2021 WL 230980, at *1 (Jan. 22, 2021 W. D. Pa.) (holding that where the "text messages with other nonparty individuals . . . do not exist" the non-party need not produce them.)

The Non-Parties regret that Plaintiffs' pursuit of their personal cell phone data has necessitated this briefing.  After being served with deposition subpoenas at their homes, being questioned for hours, testifying under oath that the requested text messages are not available, and nevertheless receiving document subpoenas demanding access to their personal cell phones, Mr. Kuszmar, Mr. Hughes, and Mr.

16

Tomasullo have become increasingly distressed and worried about their privacy.  To put a sensible end to the considerable distress that has flowed from this invasive discovery, the Non-Parties respectfully request that the Court deny Plaintiffs' motion to compel production of their personal cell phone data.

## CONCLUSION

For the foregoing reasons, Mr. Hughes, Mr. Kuszmar, and Mr. Tomasullo respectfully request that the Court deny Plaintiffs' September 15, 2021 Motion to Compel the Production of Documents.

Dated: September 29, 2021          Respectfully submitted,

*/s/ Linda J. Brewer*
Charles K. Verhoeven (*pro hac vice*)
David Eiseman (*pro hac vice*)
Linda J. Brewer (*pro hac vice*)
Michelle A. Clark (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Email: charlesverhoeven@quinnemanuel.com
Email: davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com
Email: michelleclark@quinnemanuel.com

Andrew H. Schapiro (*pro hac vice*)
Nathan A. Hamstra (*pro hac vice*)
Allison Huebert (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Email: andrewschapiro@quinnemanuel.com
Email: nathanhamstra@quinnemanuel.com
Email: allisonhuebert@quinnemanuel.com

Todd A. Anten (*pro hac vice*)
Jessica Rose (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7192
Email: toddanten@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

William J. Schifino, Jr.
Florida Bar No. 564338
GUNSTER, YOAKLEY & STEWART, P.A.
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
Tel: (813) 228-9080
Email: bschifino@gunster.com

*Counsel for Non-Parties*
*Ronald Hughes, Robert Kuszmar, and Michael*
*Tomasullo*

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 29, 2021, I caused a true and correct copy of the foregoing and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Linda J. Brewer*
Linda J. Brewer
