UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

      Plaintiffs,

v.

CASE NO. 8:19-cv-710-T-35TGW

BRIGHT HOUSE
NETWORKS, LLC,

      Defendant.

_____/

## O R D E R

THIS CAUSE came on to be heard upon the plaintiffs' Time Sensitive Motion to Compel Production of Documents and Further Deposition Testimony (Doc. 339).

The plaintiffs issued subpoenas *duces tecum* to respondents, non-parties Advance Publications, Inc. (Advance); Sabin, Bermant, and Gould LLP (Sabin law firm); and former Sabin attorney Jerry Birenz (Birenz). The respondents object to producing documents on the grounds of attorney-client privilege and the work product doctrine (id.). The plaintiffs argue, among other things, that protection has been waived by the disclosure of these documents to a third party (Doc. 347).

I.

During the pertinent time period, the Sabin law firm served as Bright House Network's (BHN) primary outside counsel (Doc. 347-3, ¶4). Jerry Birenz was a partner at the Sabin law firm who performed legal work for BHN, and he was also BHN's agent to receive notices of copyright infringement in compliance with the Digital Millennium Copyright Act (DMCA) (id.).

Advance was also a Sabin law firm client (Doc. 339, p. 4). During the pertinent time period, the Sabin law firm's offices were within the corporate headquarters of Advance (id., ¶7). Thus, the attorneys' physical offices, including the file room, were housed within Advance's building (id.).

In May 2016, Charter Communications acquired BHN (id., ¶6). Kirill Abramov, who is Associate General Counsel for Intellectual Property Law at Charter, avers that Charter directed the Sabin Firm to send it the files related to BHN, and that Charter was operating under the impression that its instructions had resulted in the transfer of all BHN files to Charter (Doc. 347-2, ¶1, 2, 4). In this respect, Martin Petraitis, Executive Vice President and Senior Deputy General Counsel for Advance, states that the BHN "paper files were boxed and sent, without the Sabin Firm retaining a copy, except that Birenz copied the file relating to Peer-to-Peer ("P2P") copyright issues

2

("the Peer-to-Peer File")" (Doc. 347-3, ¶¶, 1, 6).*

In December 2018, the Sabin law firm disbanded, and "[i]n January 2019, almost all the Sabin Firm lawyers and staff (including Birenz) became formal employees of Advance's Legal Department" (id., ¶7). Petraitis added that, "[a]s a practical matter, however, since the Sabin Firm's offices already sat within the corporate headquarters of Advance, the attorneys' physical offices, including the file room, remained the same" (id.). Furthermore, Petraitis avers that

> [t]he Sabin Firm's files, including [BHN's] Peer-to-Peer File, remained in place in the same secure locations, now in the Advance Legal Department The transfer was wholesale in nature and not conducted on a client-by-client basis (not specific to BHN) or matter-by-matter level. At no time after the closing of the Sabin Firm and the transfer to Advance did anyone use or disclose the Peer-to-Peer File nor was anyone outside the former Sabin Firm and now Advance Legal Department given access to them.

(id., ¶8). Additionally, Abramov, who provides legal counsel to Charter on intellectual property-related issues, attests that "Charter has never authorized the use or disclosure of these files and certainly never authorized the waiver of its attorney-client privilege or work product protections" for those

---

*Therefore, the defendant argues, this "Peer to Peer" file, consisting of 118 documents, is the only documentation at issue in this motion. The plaintiffs do not appear to agree on this point (see Doc. 339, pp. 8-9).

3

documents (Doc. 347-2, ¶¶2, 5).

The plaintiffs argue that the respondents "must produce the Sabin firm's Bright House files ... because Sabin's transfer of those files to Advance in 2019 ... breached the confidentiality of those documents and thus vitiated the attorney-client privilege" (Doc. 339, p. 12). The defendant contends that there has been no waiver because "these privileges are Charter's ... [and] it never waived them" (Doc. 347, p. 2). Furthermore, the defendant contends, "neither Birenz nor Sabin ever put at risk the confidentiality of the documents at issue" (id.). Oral argument was held on the motion (Doc. 389).

II.

The proponent of the attorney-client privilege has the burden to demonstrate its applicability. United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982). It must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived. Id.

"[T]he [attorney-client] privilege belongs solely to the client." Baker v. David Alan Dorfman, P.L.L.C., 232 F.3d 121, 123 (2d Cir. 2000) quoting In re von Bulow, 828 F.2d 94, 100 (2d Cir.1987). Therefore, "the privilege ... may only be waived by [it]." In re von Bulow, supra, 828 F.2d at 100. On the other hand, a client may, by its actions, impliedly waive the

4

privilege, or consent to disclosure. Id. at 101.

"[A] voluntary disclosure of information which is inconsistent with the confidential nature of the attorney client relationship waives the privilege." Alldread v. City of Grenada, 988 F.2d 1425, 1434 (5th Cir. 1993). However, "absent a client's consent or waiver, the publication of confidential communications by an attorney does not constitute a relinquishment of the privilege by the client." In re von Bulow, supra, 828 F.2d at 100.

### III.

The plaintiffs argue that, "[w]hen Sabin transferred its BHN-related files to third-party Advance in January of 2019, it destroyed the confidentiality of those documents and effected a waiver of any applicable privilege, thus rendering them discoverable" (Doc. 339, p. 13). The defendant argues, among other things, that there is no waiver because "these privileges are Charter's ... it never waived them, and BHN's former counsel has no authority to do so on its behalf" and "neither Birenz nor Sabin ever put at risk the confidentiality of the documents at issue" (Doc. 347, p. 2). The defendant's contentions are well taken.

It is undisputed that Charter has been the owner of the privileges since May 2016, when Bright House was sold to Charter. Therefore, Charter is the only entity that can waive the privilege. In this connection, Abramov

5

attests that, "Charter has never authorized the use or disclosure of these files and certainly never authorized the waiver of its attorney-client privilege or work product protections" (Doc. 347-2, ¶5). Additionally, Charter avers that it "was operating under the impression that its instructions [to Sabin to send the BHN files] had resulted in the transfer of all BHN files to Charter" (id., ¶4).

The defendant argues, furthermore, that Sabin, BHN's former counsel, cannot waive Charter's privilege by retaining these files, and that former counsel is permitted under New York Bar Rules to maintain a copy of a former client's file (Doc. 347, p. 12). Plaintiffs' counsel appeared to agree generally with this assertion, as he stated at the hearing that the plaintiffs would not be arguing waiver if Birenz had kept the BHN file locked in his drawer.

Rather, the plaintiffs contend that the privilege was lost when the documents were transferred to Advanced, a third-party worldwide conglomerate (Doc. 339, p. 13). Thus, plaintiffs' counsel argues, the BHN files were "uploaded and managed and available" in Advance's document management system, which resulted in the loss of their confidentiality.

The plaintiffs' argument fails because the defendant has presented undisputed evidence that, not only do these documents remain confidential, but that they have been maintained from the outset in a manner

6

consistent with their confidential nature. Thus, Petraitis avers that, when Birenz and other former Sabin firm attorneys became employed in Advance's legal department,

> [t]he Sabin Firm's files, including [BHN's] Peer-to-Peer File, remained in place in the same secure locations, now in the Advance Legal Department.... <u>At no time after the closing of the Sabin Firm and the transfer to Advance did anyone use or disclose the Peer-to-Peer File nor was anyone outside the former Sabin Firm and now Advance Legal Department given access to them</u>.

(Doc. 347-3, ¶8) (emphasis added).

Thus, the defendant has presented evidence that these documents were transferred to former counsel's new employer in its legal department; they are not generally accessible at Advance, but are only available to the legal department, which includes former Sabin attorneys; and that the BHN files have remained confidential at Advance (<u>see</u> <u>id</u>.). Notably, although plaintiffs' counsel argues that the BHN files are "available" through Advance's computer system, counsel acknowledged upon my questioning that the plaintiffs do not know what Advance did with these documents.

In sum, the defendant has presented undisputed evidence that the confidentiality of these communications has been maintained and, therefore, there has not been an express or implicit waiver of Charter's

7

attorney-client privilege or work product protection concerning the subject documents.

IV.

This finding, however, does not resolve the motion. Thus, the parties dispute, but do not adequately address, whether a privilege log is required when the documents allegedly protected under the attorney-client or work product doctrine involve outside counsel. Therefore, a supplemental memorandum on this issue is necessary.

It is, therefore, upon consideration,

ORDERED:

That the parties have 10 days from the date of this Order to submit supplemental legal memoranda on this issue.

DONE and ORDERED at Tampa, Florida, this 20th day of October, 2021.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE