# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

    Plaintiffs,

v.

BRIGHT HOUSE NETWORKS, LLC,

    Defendant.

Case No. 8:19-cv-710-MSS-TGW

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

Plaintiffs submit this supplemental memorandum to respond to the Court's question regarding "whether a privilege log is required when the documents allegedly protected under the attorney-client [privilege] or work product doctrine involve outside counsel." Dkt. 394 at 8.

Courts sometimes alleviate the burden on outside counsel to log privileged documents but not in the situation the Court encounters here. Respondent Advance, which possesses the documents Plaintiffs seek—all of which were created during the claim period—is not a law firm and thus cannot claim any exemption to producing a log of documents in its possession, custody, or control that do not include outside counsel.

The other two Respondents, the Sabin firm and its former partner Mr. Birenz, functioned as Defendant BHN's *in-house* counsel. As discussed below, courts acknowledge that in-house lawyers should not benefit from the leniency in privilege

logging that outside counsel sometimes receive, because in-house lawyers are often involved in non-privileged business discussions and have less independence from their corporate employers than do outside counsel. The benefit of affording the challenging party sufficient information to evaluate the in-house attorney's privilege claims exceeds any burden of logging those communications.

In that vein, courts separately hold that it is appropriate even for *outside* counsel to log documents where that counsel occupies both legal and business roles. Here, Mr. Birenz served not only as BHN's *de facto* general counsel but also in a business position, as BHN's agent to process notices of copyright infringement from rightsholders. Accordingly, the Court should require Respondents to serve a privilege log to substantiate that they are not withholding business communications.

## I. Where, as here, outside counsel functionally serve as in-house counsel, courts find the benefit of requiring a privilege log outweighs any burden.

Attorneys are not subject to a generalized exemption from the obligation to log documents they are withholding on the basis of privilege. Rather, like any subpoena recipient, attorneys and law firms bear the burden to substantiate the privilege. *See, e.g.,* Fed. R. Civ. P. 45(e)(2); *EFCG, Inc. v. AEC Advisors, LLC*, 2020 WL 6378943, at *3 (S.D.N.Y. Oct. 30, 2020) (quotation omitted) (noting general rule that the proponent "bears the burden of establishing [the privilege's] essential elements"); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008) ("[I]n order to assert a valid claim of privilege, [a lawyer or law firm] must produce a privilege log . . . ."). And courts can and do require attorneys to log documents where appropriate.

*See Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1328 (11th Cir. 2016) (remanding case so that non-party attorney could serve a privilege log or otherwise formally assert any privilege); *AP Links, LLC v. Glob. Golf, Inc.*, 2014 WL 1338316, at *3 (E.D.N.Y. Mar. 31, 2014) (ordering non-party law firm to produce a privilege log).

While attorneys are not generally exempt, courts sometimes elect to lessen the obligation on outside counsel to produce a privilege log, at least with respect to communications concerning the litigation at issue.[1]  *See iSmart Int'l Ltd. v. I-DocSecure, LLC*, 2006 WL 2263910, at *3 (N.D. Cal. Aug. 8, 2006) (requiring party to log correspondence with outside counsel only to the extent it occurred before litigation was inevitable or was unrelated to the litigation); *Carley Cap. Grp. v. Deloitte & Touche LLP*, 1999 WL 35797591, at *1 n.1 (N.D. Ga. June 30, 1999) (similar).  Courts that exempt outside counsel do so on the theory that many of outside counsel's communications with its client concerning the litigation at issue necessarily will be privileged, and the burden of logging those communications would therefore be excessive.  *See, e.g.*, *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 2013 WL 139560, at *2 (S.D.N.Y. Jan. 11, 2013) (finding undue burden for outside counsel to produce a document-by-document log because of potential for legitimate claims of privilege).

---

[1] Similarly, the Parties here agreed that they "need not log privileged and/or protected material dated after the claim period, or any documents authored by outside counsel."  N. Sahni Letter (Dec. 4, 2019).  That agreement is inapplicable here because Sabin and Mr. Birenz were not outside counsel to BHN, and certainly not with respect to this litigation.  As such, Sabin and Mr. Birenz have not invoked this agreement in connection with Plaintiffs' motion to compel.

Courts typically insist that parties *do* log communications involving *in-house* counsel, however. *First*, "because in-house counsel may have mixed business-legal responsibility . . . their day-to-day involvements in their employers' affairs may blur the line between legal and nonlegal communications." *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 491 (S.D.N.Y. 2019) (quotation omitted); *see also, e.g.*, *TVT Recs., Inc. v. Island Def Jam Music Grp., a Div. of UMG Recordings, Inc.*, 2003 WL 749801, at *2 (S.D.N.Y. Mar. 5, 2003) (stating that inside counsel may be more likely to play dual roles than outside counsel). *Second*, "[t]he stricter standards [courts apply to in-house counsel] are the result of suspicion that because they are employees of their client, and their livelihood depends on that single corporate client, in-house counsel are not as independent as outside counsel." *Bank Brussells Lambert v. Credit Lyonnais (Suisse)*, 220 F. Supp. 2d 283, 286 (S.D.N.Y. 2002) (internal quotation marks omitted).

That extends to so-called "captive" law firms—those dependent on a very small number of clients—which courts typically regard as equivalent to in-house counsel. *See, e.g.*, Aviva Abramovsky, *The Enterprise Model of Managing Conflicts of Interest in the Tripartite Insurance Defense Relationship*, 27 CARDOZO L. REV. 193, 219 (2005) (quoting *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 633 (Tex. 1998) (noting "key feature" of a captive law firm "is its almost total dependence on a limited number of clients"); *Consol. Edison Co. of New York v. Lexington Ins. Co.*, 2015 WL 4611206, at *2 (S.D.N.Y. July 30, 2015) (equating a captive law firm with in-house counsel); *Charlton v. Wells Fargo Bank, N.A.*, 2016 WL 7338527, at *6 (D.N.J. Dec. 19, 2016) (same);

4

*Hartford Cas. Ins. Co. v. A & M Assocs.*, Ltd., 200 F. Supp. 2d 84, 90 (D.R.I. 2002) (same).

Here, BHN admits that the Sabin firm effectively served as BHN's in-house law department. Both ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—and former BHN President Nomi Bergman characterized Sabin as a "captive law firm" of Advance and its affiliates, including BHN, because Sabin ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; Bergman Dep. at 48:1–8 (emphasis added). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *see also* Bergman Dep. at 46:24–47:22 ("[BHN's] legal guidance was provided to us by Sabin, Bermant."). Documents BHN has produced support that Sabin served as in-house counsel. For example, BHN business personnel routinely copied Sabin attorneys and no other in-house lawyer on business correspondence, such as discussions concerning plans to terminate individual subscribers for repeat copyright infringement. *See* ECF 338-8 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Because the Sabin firm was BHN's *de facto* in-house counsel, it must log the documents it is withholding. Indeed, the considerations that typically inform imposing that requirement on in-house counsel all apply here. *First*, Sabin and Mr. Birenz lacked independence from BHN. Sabin is less independent than a typical outside firm because it derived nearly all of its business from Advance affiliates including BHN. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ When the Sabin firm effectively dissolved in 2016, many of its attorneys, including Mr. Birenz, simply became employees of Advance. *See* Dkt. 338-6 (Birenz Dep.) at 42:11–42:13 ("The firm dissolved and the attorneys at the firm were hired by Advance Publications."). Such a lack of independence militates toward requiring an attorney to serve a privilege log. *See Bank Brussells*, 220 F. Supp. 2d at 286.

*Second,* Sabin and Birenz provided business advice to BHN in addition to legal advice. As Plaintiffs explained in their motion to compel, Dkt. 339, not only did Mr. Birenz provide legal representation to BHN, but he was also involved in business discussions concerning the design and implementation of BHN's copyright abuse response program and served as BHN's DMCA agent to receive notices of infringement from copyright holders. Dkt. 339 at 5; Birenz Dep. at 192:6–195:19; BHN_00004193 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Mr. Birenz's communications thus "blur[red] the line between legal and nonlegal communications," as is typical of in-house counsel, *Parneros*, 332 F.R.D. at 491, and suggests that the need to scrutinize communications and documents that Respondents are withholding to determine if any privilege applies outweighs the burden of producing the privilege log, *see In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *4–5 (S.D.N.Y. June 11, 2019) (finding potential relevance of documents to outweigh the burden on outside counsel of logging those documents).

## II. Where, as here, an outside attorney serves in both legal and business roles, a log is required to meaningfully evaluate the attorney's privilege claims.

Irrespective of whether Sabin and Mr. Birenz served as in-house or outside counsel to BHN, Respondents remain obligated to produce a privilege log in light of Mr. Birenz's dual legal and business roles.

"[W]here a lawyer is engaged to advise a person as to business matters as opposed to legal matters, or when he is employed to act simply as an agent to perform some non-legal activity for a client the authorities uniformly hold there is no privilege." *Castillo Grand LLC v. Sheraton Operating Corp.*, 2009 WL 10741786, at *1 (S.D.N.Y. June 17, 2009) (quoting *Skorman v. Hovnanian of Fla., Inc.*, 382 So. 2d 1376, 1378 (Fla. Dist. Ct. App. 1980)).

Respondents have the burden to substantiate that the documents they are withholding are privileged. In light of Mr. Birenz's dual business and legal roles, *see* Section I, *supra*, production of a privilege log is the only way that Plaintiffs will meaningfully be able to evaluate Respondents' privilege claims. *See, e.g.*, *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 328 (S.D.N.Y. 2020) (directing party to produce document-by-document privilege log demonstrating that obtaining legal advice was the "predominant purpose" of each communication).

To the extent Respondents now argue that it would be unduly burdensome to provide a privilege log, any such argument has been waived because, despite repeated requests, Respondents have refused for more than a year to provide Plaintiffs with the number of documents they are withholding. *See* Dkt. 338–17 at 1–2, 5.

7

Dated: November 1, 2021

Respectfully submitted,

/s/ *Jonathan M. Sperling*

Jonathan M. Sperling (*pro hac vice*)
Joshua B. Picker (*pro hac vice*)
Phil Hill (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com
jpicker@cov.com
pahill@cov.com

Stacey Grigsby (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20001
Telephone: (202) 662-6000
sgrigsby@cov.com

Mitchell A. Kamin (*pro hac vice*)
Neema T. Sahni (*pro hac vice*)
Hardy Ehlers (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
mkamin@cov.com
nsahni@cov.com

Matthew J. Oppenheim (*pro hac vice*)
Scott A. Zebrak (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com

scott@oandzlaw.com
jeff@oandzlaw.com

David C. Banker
Florida Bar No. 0352977
Bryan D. Hull
Florida Bar No. 020969
BUSH ROSS, P.A.
1801 North Highland Avenue
P.O. Box 3913
Tampa, FL 33601-3913
Telephone: (813) 224-9255
dbanker@bushross.com
bhull@bushross.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2021, I caused the foregoing document and all accompanying materials to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF, including counsel to BHN and to Respondents Sabin, Advance, and Birenz.

Dated: November 1, 2021

                                          */s/ Jonathan M. Sperling*
                                          Jonathan M. Sperling

                                          *Attorney for Plaintiffs*