**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>        Plaintiffs,<br><br>*v.*<br><br>BRIGHT HOUSE NETWORKS, LLC<br><br>        Defendant. | Case No. 8:19-cv-710-MSS-TGW<br><br>**FILED PURSUANT TO**<br>**LOCAL RULE 1.11(d)** |

**BRIGHT HOUSE'S MOTION FOR CURATIVE MEASURES AND**
**SANCTIONS FOR PLAINTIFFS' SPOLIATION OF EVIDENCE**

Pursuant to Federal Rule of Civil Procedure 37(e), Bright House Networks,

LLC ("Bright House") respectfully requests that the Court grant curative measures and

impose sanctions on Plaintiffs for their failure to preserve evidence central to this case.

Plaintiffs are repeat litigants who spent ███████████████████████

████████████████████████████████████

██████████. Specifically, in ███████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████. While 110,000

of these notices provide the foundation for Plaintiffs' $1 billion damages claims against

Bright House under Plaintiffs' theory of the case, ███████████████

████████████████████████████████████

██████. ███████████████████████████████

███████████████████████████████████████████.  Plaintiffs'
destruction of evidence has unduly prejudiced Bright House's ability to challenge
Plaintiffs' direct infringement case—the bedrock of the entire lawsuit.   In these
circumstances, curative measures and sanctions are warranted.

## BACKGROUND

### A.   Plaintiffs Anticipated Litigation As Early As December 2011



███████████████████████████████████████.  *See* Ex. A, ██████████████;
Ex. B, Feb. 23, 2021 *Charter* Hr'g Tr. 87:9-17.[1]

---

[1]   Exhibits cited herein as "Ex." are attached to the Declaration of Andrew Schapiro.

2



███████████████████████████████████████████ *Id.* at -04.

███████████████████████████████████████████

███████████████████████ . *Id.* ████████████████████████

███████████████████████████████████████████

██████████████████████ *Id.* █████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████ *See, e.g.*, Ex. C, ██████,[2] at -33-34.

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████ ("ISP"). *Id.*

at -34.  There is no conflict between ██████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████ Ex. A, ██████

██████, at -02; *see also* Ex. C, ██████ at -33.  Simply put, ████████████

███████████████████████████████████████████

████████ and that they were under an obligation to preserve all of it.

---

[2]  The ██████ (attached as Exhibits C, D, E, and F) are, for this discussion, near-identical, and therefore citations are solely to the ██████ (Ex. C).

**B.**   **The 2012-2015 "Notice Program"**

      1.   MarkMonitor's Software Used to Identify Plaintiffs' Files

From 2012 to 2015, Plaintiffs, with MarkMonitor, carried out a "Notice Program." ████████████████████████████████████████

████████████████████████████████████ *See* Ex.

C, ████ at -23, -34. ██████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████ *Id.* at -32.

      2.   Audible Magic's Software Used To "Verify" Files

████████████████████████████████████████

██████████████████████████. Ex. G, Bahun Tr. 100:22-102:11, 103:10-22.

██████████████████████████████████████████

██████████████████████████████████████████

██████. Ex. J, Ikezoye Tr. 45:7-25. ████████████████

██████████████████████████████████████████

██████. *Id.* 35:19-36:15. ██████████████████████

██████████████████████████████████████. Ex. H, Paczkowski

Tr. 96:21-97:8. ████████████████████████████

██████████████████████████. Ex. K, Snow Rep. ¶¶ 123-26; *see also* Ex. L,

Wold Tr. 28:18-29:21; Ex. G, Bahun Tr. 103:25-104:9. ████████████

██████████████████████████████████████████



Ex. G, Bahun Tr. 35:10-36:5; Ex. H, Paczkowski Tr. 164:20-167:2.

. Ex. C, ███ at -32; Ex. G, Bahun Tr. 49:10-24. ███

. Ex. C, SOW, at -32.

. See *id.* at -32, 35; Ex. W, Sheckler Tr. 196:6-19.

3. <u>MarkMonitor Transmitted Notices To ISPs</u>

. Ex. C, ███ at -33; Ex. G, Bahun Tr. 162:20-164:7.

. Ex. C, ███ at -33-34.  According to MarkMonitor,

---

<sup>3</sup>   A torrent is a collection of files shared on a P2P network.  *See* Ex. M, Chatterjee Rep. ¶ 29.

 *See* Ex. N, Frederiksen-Cross Rep. ¶¶ 152, 156

Each notice stated that "the RIAA is authorized to act on behalf of its member companies in matters involving the infringement of their sound recordings, including enforcing their copyrights and common law rights on the Internet," and expressly reserved the RIAA member's rights.  Ex. U, Notice.

      4. <u>Plaintiffs Anticipated Using Evidence Generated By The Notice Program In Litigation</u>

During the 2012-2015 Notice Program, Plaintiffs  . *See, e.g.*, Ex. O, Pls.' June 14, 2021 Priv. Log No. 333

*Id.* at No. 112 ("                    "); *id.* at No. 113 ("              "); *id.* at Nos. 32-33, 313, 318 (similar).  Notably,

 *Id.* at No. 208 ("███████████████████ ███████████████████"). Litigation was also a part of Plaintiffs' anti-piracy strategy.  Ex. P, McMullan Tr. 91:6-15 ("We sue a lot of folks, a lot of companies"); Ex. X, ███████████████████ ████████████████████████████████████████). During this time, Plaintiffs were aware that ███████████████████ ███████████. Ex. Q, Email chain, at -00.

### C.    MarkMonitor Knowingly Discarded Evidence Underlying The Notices

Plaintiffs contend that, as a result of the Notice Program, Bright House received ███████notices alleging infringement of more than 7,271 works by Bright House subscribers.[4]  Ex. N, Frederiksen-Cross Rep. ¶ 152; Dkt. 116-1 & 116-2, Am. Exs. A & B to First Am. Compl.  These notices are the "evidence" relied on by Plaintiffs in asserting secondary infringement claims against Bright House.  It is undisputed, however, that the following information underlying the 2012-2015 Notice Program is no longer available:

-  *See* Ex. I, Marks Tr. 211:8-212:19; Ex. H, Paczkowski Tr. 164:20-167:2.

---

[4]    Almost half of these notices were never received by Bright House, as they were sent to an entirely separate ISP, as set out in Bright House's motion for summary judgment. Nonetheless, Plaintiffs incorrectly point to all of these notices in support of their theory of the case.



- ██████████████████████████████████████████████████ ███████████████████████████████████ *See* Ex. G, Bahun Tr. 109:12-21. ███████████████████████

- ██████████████████████████████████████████████████ ████████████████ *See* Ex. G, Bahun Tr. 216:3-14. ████████████ *See* Ex. K, Snow Rep. ¶ 86. █████████████████████████████████████████ ████████████████████████████████████████.

- ██████████████████████████████████████████████[5] *See* Ex. H, Paczkowski Tr. 33:24-34:15. ██████████████████████████████

- ████████████████████████████████████████████████. *See* Ex. G, Bahun Tr. 203:23-204:14. ████████████████████████

---

[5]   On January 5, 2022, Plaintiffs' counsel informed Bright House ███████████ ████████ Ex. Y, Email chain.  Bright House is still in the process of conferring with MarkMonitor about this untimely disclosure.

   Notably, this Motion addresses the unavailability of ██████████████ █████

This information directly relates to the parties' claims and defenses and, specifically, Bright House's ability to analyze the reliability of Plaintiffs' notices.  *See* Ex. M, Chatterjee Rep. ¶¶ 320-28.  While Plaintiffs contend the notices are sufficient evidence of direct infringement, significant gaps in the evidentiary chain handicap Bright House's ability to counter this assertion.

Bright House sought this information from Plaintiffs, RIAA, MarkMonitor, and Audible Magic during fact discovery.  But it is no longer available, in material part, because █████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████.  Ex. L, Wold Tr. 86:21-24; Ex. G, Bahun Tr. 204:15-24, 209:8-13; Ex. R, MM Priv. Log Nos. 5, 8; Ex. V, Demand Letter.[6]

**D.** ████████████████████████████████████████████

On December 17, 2015, a jury awarded a multimillion-dollar verdict against Cox Communications in *BMG v. Cox*, ████████████████████████████

████████████████████████  *See* Ex. O, Pls.' June 14, 2021 Priv. Log No. 333

(████████████████████████████████████).  ████████████████

████████████  ████████████████████████████████████

████████████████████████████████████████████  Ex. S, RIAA Nov. 25, 2020 Priv. Log No. 35 (████████████████████████████

---

[6] ████████████████████████████████████████████████████████

██████████████████████████████████



*See id*. at Nos. 36-68; Ex. O, Pls.' June 14, 2021 Priv. Log Nos. 374-86; *see also* Ex. B, Feb. 23, 2021 *Charter* Hr'g Tr. 64:7-65:1.

Ex. T, ▮▮▮▮, at -90.

Ex. I, Marks Tr. 221:17-222:4.

Ex. T, ▮▮▮▮, at -91; *see also* Ex. C, ▮▮▮ at -34.

Ex. T, ▮▮▮▮, at -90.

*Id.*

*Id.*

██████████████████████████████ Ex. K, Snow Rep. ¶ 130. ███████████████

█████████████████████████████████████████████████████████████████

████████████ ███ █████ █████ ██████ ███ ██████ ██████ ████████

██████████ Ex. G, Bahun Tr. 109:12-21; Ex. L, Wold Tr. 69:19-70:15.

██████████████████████████████████████████████████████

████████████████████████████. ███████████████████████████████

███████████████████████████ Ex. K, Snow Rep. ¶ 142.

Plaintiffs produced the hard drive during fact discovery and it was relied on by Plaintiffs' testifying experts, including a team of "listeners" who listened to only a subset of the files, purportedly to confirm that the allegedly infringing files corresponding to a "hash" matched Plaintiffs' works. *Id.* ¶¶ 143-44. But, as noted above, ██████████████████████████████████████████

████████████████. Unless the Court imposes the requested relief, Plaintiffs intend to rely on *all* the notices they claim were sent to Bright House, █████████████

████████████████████████████████. *See* Dkt. 94, First Am. Compl. ¶ 82.

Notwithstanding these substantial evidentiary deficiencies, and the fact that Plaintiffs ████████████████████████████, *see* Ex. V, ███████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████. Plaintiffs did not take any steps at all to ensure █████████████████████████████

██████. Ex. L, Wold Tr. 86:21-24. Because Plaintiffs failed to take reasonable steps to

preserve information in anticipation of litigation, ████████████████

████████████████████████████████████████

████████████.

## LEGAL STANDARD

Rule 37(e) provides for remedial measures and sanctions for spoliation of electronically stored information ("ESI") where (1) the spoliated materials should have been preserved in the anticipation of litigation, (2) the materials were lost due to failure to take reasonable steps to preserve them, and (3) the lost materials cannot be restored or replaced through additional discovery. *Ahrens Enters., Inc. v. Winning*, 2019 WL 12520080, at *2 (S.D. Fla. Apr. 18, 2019). The rule sets out two categories of relief. If the Court finds that a party is prejudiced by the failure to preserve, it has "broad discretion" to order curative measures under Rule 37(e)(1), including exclusion of evidence, curative jury instructions, and permission to present evidence and argument regarding the loss of the materials. *O'Berry v. Turner*, 2016 WL 1700403, at *3 (M.D. Ga. Apr. 27, 2016). Under Rule 37(e)(2), if the spoliating party acted with intent, the Court may instruct the jury that it may presume the destroyed evidence was unfavorable. Fed. R. Civ. P. 37(e)(2)(B).

## ARGUMENT

## I.   EVIDENCE WAS DESTROYED DESPITE ANTICIPATION OF LITIGATION

The duty to preserve "is triggered not only when litigation is pending but also when it is reasonably foreseeable to [the spoliating] party." *Ala. Aircraft Indus., Inc. v.*

*Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017); *see also Pope v. Wal-Mart Stores East, LP*, 2013 WL 12086325, at *4 (N.D. Ga. Nov. 12, 2013) (duty attaches "when a party should have known that the evidence may be relevant to future litigation") (quotations omitted).   Whether litigation was reasonably foreseeable is an objective standard. *Nationwide Life Ins. Co. v. Betzer*, 2019 WL 5700288, at *6, 8 (M.D. Fla. Oct. 28, 2019); *Virtual Studios, Inc. v. Stanton Carpet Corp.*, 2016 WL 5339601, at *10 (N.D. Ga. June 23, 2016) (record showed plaintiff anticipated litigation in 2009, "even though [plaintiff] did not send its final e-mails threatening litigation until 2014 and did not file this lawsuit until 2015").   "[A]nyone who anticipates being a party … to a lawsuit" is barred from destroying "evidence that might be useful to an adversary."   *FTC v. F&G Int'l Grp. Holdings, LLC*, 339 F.R.D. 325, 331 (S.D. Ga. 2021) (citation omitted).

Here, 

Ex. A,

, at -04.   Plaintiffs have argued elsewhere that the Notice Program was intended to avoid litigation, and not prepare for it.   *See, e.g.*, *Sony Music Ent. v. Cox Commc'ns, Inc.*, No. 1:18-cv-00950-LO-JFA (*"Sony v. Cox"*), ECF 353 at 15-16 (E.D. Va. Sept. 13, 2019).

. *See supra*.

███████████████████████████████████████████████ *Virtual*

*Studios*, 2016 WL 5339601, at *10 (litigation anticipated based on plaintiff's knowledge

of alleged infringement).   The clear terms of the ███████████████████████

███████████████████████████████████████████████████

██████████████████████████████.  Ex. A, ████████████ at -02.   In

contemplation of such litigation, ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████. *See supra*, at 6-7, 9-10.  As

stated by UMG's 30(b)(6) representative: "we sue a lot of folks."  Ex. P, McMullan

Tr. 91:6-15.

████████████████████████████████████████ *See*

Ex. C, ██████ at -33-34. ██████████████████████████████

███████████████████████████████████████████████████

█████████████.  Ex. A, █████████████ at -02.  Rather, it provides compelling

evidence that Plaintiffs breached their duty to preserve.   Because the ███████

███████████████████████████████████████████████████

██████████████████████████, Plaintiffs' duty of preservation

extended to all material evidence, not just the evidence that it determined would be

helpful to their affirmative case.

        Likewise, ██████████████████████████████████████.

Following the *BMG v. Cox* verdict, ██████████████████████████

14



████████ Ex. I, Marks Tr. 221:17-222:4; Ex. T, 2016 SOW, at -90.  Indeed, ████

████████████████████████████████████████████████████████

████████████████ Ex. T, ████████ at -90.

Bright House notes that Cox filed a somewhat similar (but not identical) motion for sanctions in *Sony v. Cox* regarding MarkMonitor's destruction of data underlying Plaintiffs' direct infringement case, which was denied.   *Sony v. Cox*, ECF 238. However, Cox did not raise the issues of ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████. *Sony v. Cox*, ECF 738 at 1. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████. *Sony v. Cox*, ECF 749 at 2.

## II.     PLAINTIFFS DID NOT TAKE REASONABLE PRESERVATION STEPS

Once a preservation obligation arises, Rule 37(e) requires a party to take "reasonable steps" to preserve relevant electronically stored information. Fed. R. Civ. P. 37(e).  Where a party's agent collects information in anticipation of litigation, the burden of preservation remains with the principal.  *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 522 n.16 (D. Md. 2009) (reiterating that a party is responsible for

spoliation of evidence by its agents and collecting cases).  The steps taken by Plaintiffs to preserve evidence in this case were not reasonable.



Ex. A,

, at -04.

.  *Id.* at -02.  Notwithstanding

but did nothing to stop this.  Ex. Q, Email chain, at -00.  *See Nuvasive, Inc. v. Absolute Med., LLC*, 2021 WL 3008153, at *5 (M.D. Fla. May 4, 2021) (unreasonable not to take any steps to preserve emails after being informed web domain would be suspended).  It was not reasonable to knowingly permit

.  *Sosa v. Carnival Corp.*, 2018 WL 6335178, at *19 (S.D. Fla. Dec. 4, 2018) (failure to preserve evidence party knew was relevant to future litigation unreasonable).  As a result of Plaintiffs' failure to take reasonable steps to preserve information,

—that is, information that is inherently *favorable* to Plaintiffs.  Ex. C,       at -33-34.  Plaintiffs' belated and unsuccessful attempt                                                shows that the steps they took to preserve this information were not reasonable.  *See, e.g.*, Ex. I, Marks

Tr. 221:17-222:4 (███████████████████████████████████

██ █████████████████████████████████████████████).

    It was also unreasonable for Plaintiffs to ███████████████████

███████████████████████████████████. ████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████. *See* Ex. A, █████████████ at -04; Ex. T, █████████, at -90; Ex.

V, Demand Letter.  Beyond the data that was discarded with Plaintiffs' knowledge

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████.  Plaintiffs violated their preservation duties by failing to ███████

███████████████████████████.  *In re Skanska USA Civil Se. Inc.*, 2021

WL 5226547, at *5 (N.D. Fla. Aug. 23, 2021).

## III.   THE SPOLIATED MATERIALS CANNOT BE RESTORED

    As a result of Plaintiffs' actions, ████████████████████████

███████████████████████.  Plaintiffs have tried to argue that ████████████

███████████████████████, but neither Bright House nor the Court should be

required to accept that contention as fact.  *See Ahrens*, 2019 WL 12520080, at *4

(rejecting idea that party should have to "attempt to piece together the larger puzzle of

what might have been" through other sources).  For example, ████████████████

███████████████████████████████████████████████████

████████████████████████  Ex. M, Chatterjee Rep. ¶¶ 377-84.  Plaintiffs' putative

technical expert, Barbara Frederiksen-Cross, cites █████████████████████████

███████████████████████████████████████████████████

██████████████████████████.  Ex. N, Frederiksen-Cross Rep. ¶ 242.  But

███████████████████████████████████████████████████

████████████████████████████████████

Further, the ██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████.  Ex. K, Snow Rep. ¶ 131.  Bright House's expert

compared █████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████.  Ex. K, Snow Rep.

¶ 147.  As such, Plaintiffs' contention that ████████████████████████

███████████████████████████ is dubious, particularly given the significant

evidentiary loss.

Nor does Plaintiffs' retention of purported experts to conduct a technical

analysis of the files replace the lost evidence.  As an initial matter, ████████████

███████████████████████████████████████████████████

████████████████████████████████████.  Ex. K, Snow Rep. ¶¶ 139-43.

███████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████. When Bright House's expert

compared ████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████. Ex. K, Snow Rep. ¶ 150.

There is also no dispute that ████████████████████████████

████████████████████ are irretrievably lost. ████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████. Ex. G, Bahun Tr. at 196:2-197:5; *see*

Ex. K, Snow Rep. ¶¶ 20, 76. ████████████████████████████████

█████████████████████████████████████████████

█████████████████████████. Ex. G, Bahun Tr. at 195:19-199:11. ████

██████████████████████████████████████████████. ████

████████████████████████████████ may be available from other sources

does not negate the loss; even if a party "could conceivably attempt to piece together

the larger puzzle of what might have been … in [an] email account[]," the party could

"never know for sure without direct access" to the lost materials. *Ahrens*, 2019 WL

12520080, at *4.

In addition, ██████████████████████████████████████████

████. Ex. G, Bahun Tr. 109:12-21. ████████████████████████████

███████████████████████████████████████████████. Likewise,

██████████████████████████████████████████████████████

███████████████████████

Finally, Plaintiffs cannot argue that the lost materials are redundant of other materials they did retain, nor can they rely on the argument that the materials are of limited importance to Bright House; the question on this prong is simply whether the materials are irretrievable.  *See F&G*, 339 F.R.D. 325, 332 (spoliating party cannot argue that it did not "destroy[] or fail[] to maintain any unique evidence," as there is no way to know what the lost materials contained); *Sosa*, 2018 WL 6335178, at *19 (rejecting contention that irretrievable evidence must have been "crucial").

## IV.   BRIGHT HOUSE IS PREJUDICED BY PLAINTIFFS' DESTRUCTION OF EVIDENCE

The destruction of materials that Plaintiffs should have preserved has severely prejudiced Bright House.  The import of lost materials can be inferred where the "actions and communications by [the spoliating party] during the timeframe" of the loss would be "crucial to the issues in th[e] case."  *Nuvasive*, 2021 WL 3008153, at *6.

Plaintiffs intend to rely on the notices from the 2012-2015 Notice Program and on ████████████████████████████████ to argue that Bright House's subscribers distributed or downloaded certain musical works owned by Plaintiffs.  But Bright House is limited in its ability to challenge the reliability of the notices and their applicability to the songs ███████████████████████████████

██████████████████████████████████████████████████████

███████████████.  In other words, Plaintiffs allowed evidence to be destroyed not once, but *twice*.  The evidence that does remain relates only to ████████████ ██████████████████████████████, which inherently favors Plaintiffs.  *See* Ex. M, Chatterjee Rep. ¶ 174.  This type of incomplete and misleading evidentiary record is inherently prejudicial.

Also prejudicial is the fact that Plaintiffs intend to offer opinion testimony at trial about the reliability and accuracy of MarkMonitor's system.  *See* Ex. N, Frederiksen-Cross Rep. ¶ 114.  But they did not preserve ████████████████ ████████████████████████████████████████████ necessary to contest that contention.  Bright House has also been deprived of ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████  *See Nuvasive*, 2021 WL 3008153, at *7 (prejudice where loss of evidence meant party would be unable to disprove spoliating party's "self-serving declaratory and testimonial evidence").

Plaintiffs' ████████████████████████████████ ████████████████████████████.  ████████████████ ████████████████████████████████████████████████ ████████████████████████████████.  ████████████ ██████████████████████████████ almost 110,000 notices Plaintiffs claim were sent to Bright House, even though Plaintiffs seek to rely on evidence of all those notices.

## V.    BRIGHT HOUSE IS ENTITLED TO REMEDIES FOR PLAINTIFFS' SPOLIATION

Rule 37(e)(1) allows for a range of curative measures, subject to the Court's "broad discretion," that are proportionate to the prejudice.   *See O'Berry*, 2016 WL 1700403, at *3.  Given the scope of the spoliation and the attendant prejudice to Bright House, evidentiary exclusion, curative jury instructions, and permission to present evidence and argument to the jury regarding the loss of the materials are appropriate here.   *See id.*   At a minimum: (i) Plaintiffs should be precluded from presenting the materials created ███████████████████████████████ and any opinion testimony based on those materials; (ii) Bright House should be permitted to present evidence and argument regarding Plaintiffs' failure to take reasonable steps to preserve the lost materials; and (iii) the jury should be instructed that it may consider Plaintiffs' failure to preserve materials and ████████████████████ in evaluating witness credibility and making factual determinations.   *See AXIS Ins. Co. v. Terry*, 2018 WL 9943825, at *8-9 (N.D. Ala. Apr. 23, 2018) (ordering evidence precluded where party suffered "at least some apparent prejudice" from loss of materials).

In addition, where a party destroys information with an "intent to deprive" the other party of it in litigation, the Court may "presume that the lost information was unfavorable" and "instruct the jury that it may or must presume the information was unfavorable."  Fed. R. Civ. P. 37(e)(2).  An intent to deprive can be established by circumstantial evidence.  *Betzer*, 2019 WL 5700288, at *10-14; *see also O'Berry*, 2016

WL 1700403, at *4 (finding intent where party did not take measures to preserve information following receipt of spoliation letter or investigate following requests from plaintiff's counsel).  Here, because Plaintiffs █████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████, the Court may conclude that Plaintiffs acted with an intent to deprive Bright House of evidence.  *See Nuvasive*, 2021 WL 3008153, at *6 (intent to deprive where party deactivated email accounts despite knowing that emails would be deleted by doing so); *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 774 (E.D. Mich. 2019) (intent to deprive where agent "selectively preserved" evidence).

During the 2012-2015 Notice Program, ███████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ Ex. A, ████████████████ at -04; *see also* Ex. Q, Email chain, at -00.  Then, ████████ ████████████████████████████████████████████████████████████████ █████████████████████.  Although Plaintiffs knew ████████████████████ █████████████████████████████████████████████, █████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████     █████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ *See Skanska*, 2021 WL 5226547, at *7 (intent where

entity failed to properly implement litigation hold). This conduct further shows Plaintiffs' intent to deprive Bright House of evidence. *Ala. Aircraft*, 319 F.R.D. at 746 (finding intent to deprive based on "unexplained, blatantly irresponsible behavior").

Against this backdrop, where Plaintiffs ████████████████████████████ ████████████████████████████████████████████████, it is proper to instruct the jury that it may presume the destroyed evidence was unfavorable. *See, e.g.*, *id*. at 746-47.

## **CONCLUSION**

Bright House respectfully requests the Court grant its motion for curative measures and sanctions and, if the Court concludes warranted, grant Bright House such other and further relief as the Court deems just and proper, including attorneys' fees.

Dated: January 14, 2022

Charles K. Verhoeven (*pro hac vice*)
David Eiseman (*pro hac vice*)
Linda Brewer (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
charlesverhoeven@quinnemanuel.com
davideiseman@quinnemanuel.com
lindabrewer@quinnemanuel.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Tel: (415) 591-1000
jgolinveaux@winston.com

Michael S. Elkin (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
melkin@winston.com

Respectfully submitted,

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro (*pro hac vice*)
Nathan A. Hamstra (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
andrewschapiro@quinnemanuel.com
nathanhamstra@quinnemanuel.com

Todd Anten (*pro hac vice*)
Jessica Rose (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
toddanten@quinnemanuel.com
jessicarose@quinnemanuel.com

William J. Schifino, Jr.
Florida Bar No. 564338
GUNSTER, YOAKLEY &
STEWART, P.A.
401 E. Jackson Street, Suite 1500
Tampa, FL 33602
Tel: (813) 228-9080
wschifino@gunster.com

*Counsel for Bright House Networks, LLC*

## **L.R. 3.01(g) CERTIFICATION OF COUNSEL**

Pursuant to Local Rule 3.01(g), counsel for Bright House has conferred with counsel for Plaintiffs regarding the relief sought in this motion, and the parties do not agree on the resolution of this motion, in whole or in part.  The parties conferred by telephone on January 10, 2022.  Bright House then re-confirmed the impasse and that it would proceed with filing this motion via email on January 14, 2022 .

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 14, 2022, I caused a true and correct copy of the foregoing and all supporting materials thereto to filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro
