IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BRIGHT HOUSE NETWORKS, LLC <br><br> Defendant. | Case No. 8:19-cv-710-MSS-TGW |

**BRIGHT HOUSE'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE PORTIONS OF THE DECLARATIONS OF DUNCAN HALL, TIMOTHY FRENDBERG, AND ANDREW SCHAPIRO**

In support of its Motion for Summary Judgment, Bright House Networks, LLC ("Bright House") submitted declarations from: (1) Duncan Hall, an employee of the Internet Archive ("Nov. 15 Hall Decl."); (2) fact witness Timothy Frendberg ("Frendberg Decl."); (3) Bright House's outside counsel, Andrew Schapiro ("Schapiro Decl."). Plaintiffs now move to strike certain portions of these three declarations. Dkt. 483 ("Mot."). Not only is Plaintiffs' motion to strike a procedurally improper, but all of the challenged materials are admissible at trial. The Court should deny the motion.

**ARGUMENT**

**I.   PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER**

As a threshold matter, the Court should deny Plaintiffs' motion to strike because it is not a permissible vehicle for challenging summary judgment evidence. As the Eleventh Circuit has explained, after Congress's 2010 amendment of Rule 56,

1

"objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily." *Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013). Courts in this District have since confirmed that "the practice is now outdated," and that "[m]otions to strike should be reserved for the situations described in Rule 12(f)." *Cont'l 332 Fund, LLC v. Kozlowski*, 2020 WL 1234808, at *9 (M.D. Fla. Mar. 13, 2020) (denying motion to strike); *see also, e.g.*, *Fluid Control Specialties, Inc. v. Watts Water Techs., Inc.*, 2020 WL 11269994, at *1 (M.D. Fla. Mar. 5, 2020) ("a motion to strike is not the proper vehicle for challenging matters not contained in pleadings" and citing cases where such motions "are routinely denied as improper").

The proper place to object to summary judgment evidence is in the party's brief. As one court in this District explained in denying a motion to strike, "[t]o the extent Defendants wished to raise objections to the evidence Plaintiffs tendered in their [summary judgment] response, that is what a reply brief is for." *Gov't Emps. Ins. Co. v. KJ Chiropractic Ctr. LLC*, 2014 WL 12831948, at *2 (M.D. Fla. Dec. 12, 2014) (separate "notice" of objections circumvents summary judgment page limits).  So too here, if Plaintiffs wished to object to evidence Bright House submitted, Plaintiffs needed to do so in their response brief.  Plaintiffs asked for—and obtained—an extra five pages, so they cannot complain about space. Dkt. 475.  In fact, in their response, Plaintiffs *did* raise some objections, *see, e.g.*, Pls. SJ Opp. at 2-3 (objecting to statements as "hearsay").  However, Plaintiffs also expressly incorporate by reference into their summary judgment brief the *entirety* of their motion to strike.  See Pls. SJ Opp. 5 n.5

2

(incorporating "§ I" of motion to strike); *id.* 25 n.17 (incorporating "§ II" of motion to strike on ground that testimony and exhibits are "inadmissible").  The Court should not accept Plaintiffs' skirting of page limits by considering an extra 11 pages of summary judgment argument under the guise of a "motion to strike" on top of the extra five pages Plaintiffs already obtained.  *See Fluid Control Specialties*, 2020 WL 11269994, at *1 & n.2 (denying motion to strike where "it appears that [movant's] admissibility arguments were more properly raised—and were raised to an extent—in the reply to the response to the motion for summary judgment," and the motion's "additional 8 pages would exceed the page limit" for summary judgment briefs).

Plaintiffs point to two instances where this Court ruled on motions to strike submitted with summary judgment briefs.  Mot. 1-2 n.1.  But *Barry v. Silver*, 2011 WL 13298552, at *2-4 (M.D. Fla. Feb. 28, 2011) (Scriven, J.) involved a motion to strike an expert's opinions as undisclosed pursuant to Rules 26 and 37(c)(1), not on grounds of substantive admissibility.  And *Popson v. 21st Century Centennial Ins. Co.*, 2015 WL 12838834, at *1-2 (M.D. Fla. Sept. 29, 2015) (Scriven, J.) had no need to address this procedural infirmity because it denied the motion to strike anyway.  In any event, not only do Plaintiffs' list of cases largely rely on pre-2010 law, but there is no indication that any of those decisions rejected a challenge that the motion was procedurally improper on such grounds.  Waiver by a party in a different case certainly cannot justify adopting an improper procedure here.

3

## II. THE COURT SHOULD NOT STRIKE EXHIBIT A TO THE HALL DECLARATION

### A. Exhibit A To The Hall Declaration Satisfies FRE 901

To authenticate two printouts that had appeared on the website for the Copyright Center for Information ("CCI"), Bright House submitted a declaration from Duncan Hall, an Internet Archive employee.[1] Mr. Hall attests that two website printouts attached as Exhibit A: (1) are true and accurate copies of the screenshots attached; and (2) represent "archived files for the URLs and the dates specified" on the coversheet of each printout. Nov. 15 Hall Decl. ¶ 6. Those coversheets indicate that the attachments reflect what appeared: (1) at the URL http://www.copyrightinformation.org/node/704 on July 10, 2011; and (2) at the URL http://www.copyrightinformation.org/alerts on July 9, 2011. *Id.* ¶ 5, Ex. A at 4, 7. This satisfies FRE 901 that the printouts are what they appear to be.

As courts recognize, a declaration from an Internet Archive employee satisfies FRE 901 regarding how a particular webpage appeared on a particular date. *See, e.g.*, *Marten Trans., Ltd. v. Plattform Advert., Inc.*, 2016 WL 1718862, at *2 (D. Kan. Apr. 29, 2016) (Internet Archive affidavit "is sufficient to authenticate the screenshots under Rule 901"); *Sanchez v. Am. Media, Inc.*, 2021 WL 4731344, at *4 (C.D. Cal. July 13, 2021) (Internet Archive affidavit accepted as "authenticating the Wayback Machine

---

[1] Technically, Mr. Hall submitted an affidavit, not a declaration. *See* Nov. 15 Hall Decl. But because this distinction is not relevant to resolving the motion to strike, and because Plaintiffs describe it as a declaration, Bright House uses that label for the purposes of this motion. In addition, unless otherwise noted, all exhibits cited as "Ex." herein are to the declaration of Jessica Rose.

4

screenshots"); *Foster v. Lee*, 93 F. Supp. 3d 223, 232 (S.D.N.Y. 2015) (authentication through "affidavit from an employee of Internet Archive").

This Court already considered this issue in *St. Luke's Cataract & Laser Institute, P.A. v. Sanderson*, 2006 WL 1320242, at *2 (M.D. Fla. May 12, 2006) (Scriven J.), where the plaintiff relied on an Internet Archive declaration that had been filed for *different* printouts in a *different* case. The Court ruled:

> In order to satisfy the requirement of Fed. R. Evid. 901, that is, to show that the printouts from Internet Archive are accurate representations of the laserspecialist.com and lasereyelid.com websites on various dates since 2000, Plaintiff must provide the Court with a statement or affidavit from an Internet Archive representative with *personal knowledge* of the contents of the Internet Archive website. … [Internet Archive employee] Ms. Davis' affidavit from a previous litigation, without more, is insufficient to satisfy this requirement. However, ***an affidavit by Ms. Davis, or some other representative of Internet Archive with personal knowledge of its contents, verifying that the printouts Plaintiff seeks to admit are true and accurate copies of Internet Archive's records would satisfy Plaintiff's obligation to this Court.***

*Id.* (second emphasis added). Mr. Hall establishes his personal knowledge of the contents of the Internet Archive and verifies that Exhibit A—"the printouts [Bright House] seeks to admit," *id.*—are true and correct copies of webpages it archived. This satisfies FRE 901. The Court need go no further.

While Plaintiffs concede that Mr. Hall's declaration establishes that accurate copies of Internet Archive's records of the archived webpages at issue are attached as Exhibit A to his declaration, they argue that Bright House must also separately establish "what the archived pages are" through a CCI witness. Mot. 4-5. Plaintiffs are wrong. Mr. Hall's declaration establishes that the printouts are what he says they

5

are: what appeared on certain webpages on a certain date. *See, e.g.*, *St. Luke's Cataract & Laser Inst., P.A.*, 2006 WL 1320242, at *2 (Internet Archive affidavit "would satisfy Plaintiff's obligation" under FRE 901); *Abu-Lughod v. Calis*, 2015 WL 12746198, at *2 (C.D. Cal. May 20, 2015) (affidavit verifying "unaltered copy of a website as it appears on a given day is sufficient to authenticate"); *Shell v. Henderson*, 2013 WL 2394935, at *9 n.15 (D. Colo. May 31, 2013) (treating printout as "a true and accurate copy of what the Internet Archive reports when queried for the website and date in question"). Plaintiffs do not identify a single case where an affidavit of an Internet Archive employee attesting to the authenticity of attached screenshots did not satisfy FRE 901.

Plaintiffs' reliance on *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 583-84 (5th Cir. 2022) (Mot. 3-4) as requiring some separate act of authentication is misguided. That case concerned a request that a court take judicial notice of an Internet Archive printout, *unaccompanied* by an Internet Archive affidavit.[2] But as *Weinhoffer* explained, appellate courts "have allowed district courts to rely on archived webpages where someone with personal knowledge of the reliability of the archive service" has "authenticated [the webpages] pursuant to Rule 901." *Id.* at 584. In noting that "there was no testimony to authenticate the archived webpage" in that case, *Weinhoffer* pointed out that the Internet Archive's "webpage instructs users on how to request affidavits to authenticate Wayback Machine pages *as certified records for use in legal*

---

[2] The same is true of *Nassar v. Nassar*, 2017 WL 26859, at *5 (M.D. Fla. Jan. 3, 2017) (cited at Mot. 3), which would not take "judicial notice" of the historical contents of websites where no Internet Archive affidavit was submitted.

*proceedings.*" *Id.* at 584 & n.22 (emphasis added) (quotations omitted).  That is exactly what Mr. Hall does here.[3]

B. **Exhibit A To The Hall Declaration Is Not Inadmissible Hearsay**

Exhibit A is not inadmissible hearsay, as Plaintiffs contend.  Mot. 5-6.  In its summary judgment motion, Bright House uses Exhibit A to support the *fact* that certain statements appeared on CCI's website, regardless of whether those statements are actually true.  For example, Exhibit A shows that CCI—which administered the Copyright Alert System ("CAS") program—*represented to the public and the ISP industry*, including Bright House, that the CAS program was a set of "best practices" with a cornerstone of customer education.  Hall Decl. Ex. A at 5.  Bright House's summary judgment brief makes clear that this is how Exhibit A is being used.  *See* BHN Mot. SJ at 3 (describing Ex. A as reflecting what was "touted").

As blackletter law establishes, "statements [that] are not offered for the truth of the matter asserted but instead for the fact of whether or not they were stated … do not constitute hearsay." *Munnings v. Fedex Ground Package Sys., Inc.*, 2008 WL 1849003, at *19 n.15 (M.D. Fla. Apr. 22, 2008); FRE 801(c) adv. comm. note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to

---

[3]  For this reason, additional testimony from witnesses, such as the Executive Director of the CCI, "about the … printouts" (Mot. 4) is unnecessary to authenticate Hall Ex. A; such testimony would be one way to authenticate, but the Internet Archive affidavit is another.  Even if Plaintiffs' position were accepted, the Executive Director of the CCI did testify that Internet Archive printouts of pages from www.copyrightinformation.org—the same website depicted in Hall Ex. A—appear to be "from our website." Ex. A (Lesser Tr.) 34:17-24, 84:1-85:11; Ex B (Copyright Alert System FAQs).  This merely confirms that Hall Ex. A satisfies FRE 901.  In any event, because "there is no indication that [Bright House] will be unable to lay the requisite foundation" at trial, "this Court can consider the content for the purposes of this motion." *Pinder v. 4716 Inc.*, 494 F. Supp. 3d 618, 626 (D. Ariz. 2020).

the truth of anything asserted ….").  For example, one court recently recognized that representations on a website are not hearsay where used "to illustrate the business capabilities FMNow *represented to the public* it possessed" and "not to prove the truth of the website's contents."  *Powers v. Emcon Assocs., Inc.*, 2017 WL 2718476, at *5 (D. Colo. June 23, 2017) (emphasis added).  So too here.  In its motion, Bright House relies on *the fact* that the website "represented to the public" that CAS was a set of "best practices."  Plaintiffs further err in arguing that website statements are "particularly unreliable" (Mot. 5)—there is no dispute that the statements were made, so whether they are or are not true is irrelevant to their consideration here.[4]

Independently, the statements in Exhibit A also are admissible as "made by a person whom the party authorized to make a statement on the subject."  FRE 801(d)(2)(c).  The statements were issued on behalf of participating members of the CAS program, including Plaintiffs.  *See* Nov. 15 Hall Decl. Ex. A at 6 (listing members "Universal Music Group Recordings, Sony Music Entertainment, Warner Music Group").  That "no Plaintiff is quoted" (Mot. 5-6) is immaterial because Plaintiffs do not dispute that the CCI could speak on Plaintiffs' behalf concerning the promotion of the CAS program that Plaintiffs helped create and promulgate.  This is self-evident:

---

[4]  Plaintiffs also err in quoting *Sun Protection Factory, Inc. v. Tender Corp.*, 2005 WL 2484710, at *5 (M.D. Fla Oct. 7 2005) for the proposition that website contents are "particularly unreliable" because websites should not be taken at "face value."  Mot. 5.  First, no such language appears in *Sun Protection Factory*.  Second, that court refused to consider website printouts because they were not authenticated by the declarant and website printouts standing alone are not self-authenticating.  *Id.* at *6 & n.4.  Third, the case that Plaintiffs appear to actually quote, *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007), ruled on why a court should hesitate to take judicial notice of the truth of facts that appear on an unauthenticated website printout, and does not address hearsay at all.

8

Exhibit A concerns statements about a program described as a "landmark agreement on a common framework" to address "online content theft"; describes Plaintiffs as "collaborating on the framework"; and even speaks about Plaintiffs' state of mind. Nov. 15 Hall. Decl. Ex. A at 5-6 (representing "[t]he parties are very grateful to Governor Andrew Cuomo"). This is entirely different from *Calvert v. Doe*, 648 F. App'x 925 (11th Cir. 2016) (cited at Mot. 6), which involved statements made by an employee, whose duties did not rise "above a ministerial role," about a matter in which he was not "sufficiently involved." *Id.* at 928. By any account, Plaintiffs were deeply "involved" in the CAS program's creation and promotion.

As yet another independent ground, Exhibit A satisfies the residual hearsay exception because it is supported by sufficient guarantees of trustworthiness. FRE 807. Plaintiffs do not dispute that these statements (1) were made at the time by CCI on its website, (2) were endorsed by Plaintiffs and other rightsholders, or (3) are independently corroborated by deposition testimony. *See, e.g.*, Ex. A (Lesser Tr.) 45:5-48:4, 54:4-21, 59:1-17; Ex. C (Sheckler Tr.) 69:2-70:24, 74:8-76:21.

### III. THE COURT SHOULD NOT STRIKE THE CHALLENGED FRAGMENT OF MR. FRENDBERG'S DECLARATION

#### A. Mr. Frendberg's Statement About The "Promotion" Of CAS Is Sufficiently Based On His Personal Knowledge

Plaintiffs challenge one part of one sentence in Mr. Frendberg's declaration, arguing that he "has no independent knowledge" (Mot. 7) to state that CAS "was promoted by rightsholders and ISP's as a set of best practices for discouraging online infringement." Frendberg Decl. ¶ 10. Plaintiffs are wrong for multiple reasons.

9

The CAS program was in effect throughout the time Mr. Frendberg worked at Bright House overseeing its anti-infringement efforts. *Id.* ¶¶ 1, 10. Mr. Frendberg states, without challenge by Plaintiffs, that "Bright House's anti-infringement program was designed to track the Copyright Alert System," *id.* ¶ 10, establishing his personal knowledge of and familiarity with CAS. At his deposition, he not only recalled that there was support for the fact that CAS was proposed or promoted as a set of best practices "based on … published documentation, including a press release by the Copyright Alert System," but *also* that he was "aware of what Time Warner was doing with respect to the copyright alert system." Ex. D (Frendberg Tr.) 41:5-10, 96:3-15. He therefore supports his testimony with his personal knowledge.

Plaintiffs hypothesize that Mr. Frendberg's personal knowledge about CAS "could have been based only on the inadmissible screenshot" (Mot. 7), but that argument lacks any support in the record. While he said he recalled "public documentation, *including* a press release" (emphasis added), Plaintiffs never asked him: (1) about any of the other "published documentation," or (2) *which* "press release" was included among the materials he recalled. Plaintiffs, for example, never showed Mr. Frendberg the Internet Archive screenshots attached as Hall Exhibit A. Plaintiffs now merely speculate, without any explanation or evidence, that "[i]t can come only from the inadmissible screenshots." Mot. 7. Moreover, Bright House's website described CAS at the time as "a common framework of best practices to better educate consumers, not punish them" and stated that its own anti-infringement program (which Mr. Frendberg oversaw) was "similar" to CAS. Frendberg Decl. Ex.

10

A. Because Mr. Frendberg attests that his declaration is based on his personal knowledge, and because he confirms without challenge that he was familiar with CAS and the activity of rightsholders and other ISPs, Mr. Frendberg has sufficient personal knowledge for his statement.

Even if the Court should disagree, FRE 602 "does not require first-hand observation or experience" or "that personal knowledge be acquired contemporaneous with the events at issue"; rather, "[p]ersonal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry practice, is a sufficient foundation for lay opinion testimony." *In re RFC & RESCAP Liquidating Tr. Action*, 2020 WL 504661, at *6 (D. Minn. Jan. 31, 2020) (quotations omitted). Mr. Frendberg attests (without challenge) that Bright House's website explained its "anti-infringement program and its similarities to the 'common framework' developed through CAS." Frendberg Decl. ¶ 10. This confirms his personal knowledge through his experience in the ordinary course of business, including his oversight of Bright House's Security and Abuse Team. *Id.* ¶ 1.

### B. Mr. Frendberg's Statement Is Not Inadmissible Hearsay

Plaintiffs obliquely suggest that Mr. Frendberg's statement is inadmissible "hearsay" (Mot. 7), but offer no explanation for how this statement is hearsay (other than unsupported accusation that he must be repeating what is reflected in Hall Ex. A). Having failed to separately articulate a hearsay-based ground, this challenge fails.

Even assuming that Mr. Frendberg relied on a hypothetical press release, his statement still would not be hearsay because in its motion Bright House uses this

statement not to show that the CAS program was *in fact* a set of "best practices," but rather how CAS "*was promoted* by rightsholders and ISP's." Frendberg Decl. ¶ 10 (emphasis added). Such a statement shows the effect of such promotion on Bright House. *See supra* Part II.B; *Blash v. City of Hawkinsville*, 856 F. App'x 259, 262 n.2 (11th Cir. 2021) (statements used "to show the effect of the statement on the listener, rather than to prove the truth of the matter stated, are not hearsay").

IV. **THE COURT SHOULD NOT STRIKE EXHIBIT S TO THE SCHAPIRO DECLARATION OR MR. SCHAPIRO'S SENTENCE DESCRIBING IT**

    A. <u>Exhibit S Is A Proper Rule 1006 Summary</u>

Exhibit S of the Schapiro Declaration is a chart that presents information contained in the copyright registrations for 52 specific works-in-suit identified in Exhibits A and B to the First Amended Complaint and the corresponding notices sent by Plaintiffs. Schapiro Decl. ¶ 21. Specifically, Exhibit S lists: (i) the artist and track; (ii) the copyright registration number; (iii) the date of registration, (iv) the date of publication; (v) the Bates number of the registration certificate; and (vi) the date Plaintiffs last sent a notice to Bright House for that work. Plaintiffs do not dispute that all of this information is derived from discovery produced by Plaintiffs. *Id.* ¶¶ 21-22 & Ex. S at 1-2 nn.1-2. Further, Mr. Schapiro's presentation of information is based on his "personal knowledge" (*id.* ¶ 1) and describes how the exhibit was created (*id.* ¶ 22). Plaintiffs also do not dispute the accuracy of any of the information in Exhibit S.

Plaintiffs' sole complaint is that Mr. Schapiro is an attorney who "cannot testify for his client," and so he cannot lay a foundation for the exhibit at trial. Mot. 8-9. But

courts routinely consider FRE 1006 summaries at the summary judgment stage where the materials at issue may be admitted at trial through other means. *See, e.g.*, *Danielson v. Huether*, 2021 WL 217706, at *7 (D.S.D. Jan. 21, 2021) (admitting FRE 1006 exhibit in attorney declaration on summary judgment because "the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form") (quotations omitted); *Schmidt v. DIRECTV, LLC*, 2017 WL 3575849, at *8 (D. Minn. Aug. 17, 2017) (considering FRE 1006 summary drafted by counsel on summary judgment where "Defendants do not dispute that there are other ways Plaintiffs may introduce [the information] at trial").

The Eleventh Circuit likewise recognizes that "evidence considered at the summary judgment stage need not be in a form that would be admissible at trial, as long as the evidence could ultimately be presented in an admissible form." *Bruno v. Greene Cty. Sch.*, 801 F. App'x 681, 684 n.2 (11th Cir. 2020) (quotations omitted). Plaintiffs thus correctly concede (Mot. 8) that a Florida court rejected the argument they offer here, and considered an attorney-prepared "summary for purposes of ruling on the summary judgment motion" understanding that it would need to be admitted at trial in a different form. *Rosenwasser v. All Scripts Healthcare, LLC*, 2012 WL 3639057, at *6 n.2 (S.D. Fla. Aug. 24, 2012). This Court should do the same.

Plaintiffs do not even address, let alone dispute, that the information in Exhibit S is admissible at trial. Nor could they—the information in Exhibit S is available on the face of *Plaintiffs'* pleadings, copyright registrations, notices and interrogatory

13

responses. Schapiro Decl. ¶¶ 21-22. This information is admissible (including through Plaintiffs' own witnesses), and can be summarized in proper form at trial.

### B. Mr. Schapiro's One-Sentence Description Of The Contents Of Exhibit S Is Not "Attorney Argument"

Plaintiffs wrongly argue that Mr. Schapiro engages in "attorney argument" by "characteriz[ing] … Plaintiffs' documents" (Mot. 9) when he states that the chart in Exhibit S "shows that for each of the 52 works-in-suit listed, the work-in-suit was (a) not registered at the time a Notice was sent to Bright House, and (b) not registered within three months of the date the work was first published." Schapiro Decl. ¶ 21. Mr. Schapiro's statement merely describes what Exhibit S is, listing undisputed facts regarding: (i) the work, (ii) the registration date, (iii) the publication date, and (iv) the last date a notice was sent. Describing the contents of an attached chart is not "argument." As courts recognize, "[s]ome degree of characterization of attached documents is permissible" on summary judgment. *Gasser v. Infanti Int'l, Inc.*, 2008 WL 2876531, at *7 (E.D.N.Y. July 23, 2008).

Nor do Plaintiffs otherwise identify any "argument" in Mr. Schapiro's description of Exhibit S. Courts routinely permit—and welcome—attorney declarations that summarize evidence to aid the Court's review. *See, e.g., Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y 2016) ("it is well established that an attorney's affidavit can be used, in connection with a summary judgment motion," to make "summaries of evidence in the record") (quotations omitted); *Ada Liss Grp. (2003) Ltd. v. Sara Lee Corp.*, 2013 WL 9637196, at *5 (M.D.N.C. Sept. 3, 2013)

14

(accepting attorney's summaries as "an organizational guide for the Court as to relevant facts to consider with regard to the surrounding issues in Plaintiff's pending motion for partial summary judgment"). That is all Mr. Schapiro does here.

## CONCLUSION

Bright House respectfully requests that the Court deny Plaintiffs' motion to strike portions of the declarations of Duncan Hall, Timothy Frendberg and Andrew H. Schapiro.

Dated: February 28, 2022

Charles K. Verhoeven (*pro hac vice*)
David Eiseman (*pro hac vice*)
Linda Brewer (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
charlesverhoeven@quinnemanuel.com
davideiseman@quinnemanuel.com
lindabrewer@quinnemanuel.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Tel: (415) 591-1000
jgolinveaux@winston.com

Michael S. Elkin (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
melkin@winston.com

Respectfully submitted,

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro (*pro hac vice*)
Nathan A. Hamstra (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
andrewschapiro@quinnemanuel.com
nathanhamstra@quinnemanuel.com

Todd A. Anten (*pro hac vice*)
Jessica Rose (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
toddanten@quinnemanuel.com
jessicarose@quinnemanuel.com

William J. Schifino, Jr.
Florida Bar No. 564338
GUNSTER, YOAKLEY &
STEWART, P.A.
401 E. Jackson Street, Suite 1500

>Tampa, FL 33602
>Tel: (813) 228-9080
>wschifino@gunster.com
>
>*Counsel for Bright House Networks, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 28, 2022, I caused a true and correct copy of the foregoing document and all supporting materials thereto to be sent via email to all counsel of record.

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro