# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

      Plaintiffs,

v.

BRIGHT HOUSE NETWORKS, LLC,

      Defendant.

Case No. 8:19-cv-00710-MSS-TGW

## BRIGHT HOUSE NETWORKS, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS

Stripped of the rhetoric in Plaintiff's Motion, the record demonstrates Bright House Networks, LLC ("BHN") took reasonable steps to preserve documents, the data in question was restored or is available from other sources, and the prejudice Plaintiffs allege is without factual or legal support. The Motion should be denied.

Earlier in the litigation, BHN disclosed that certain ███████████ ███████████████████████████████████████████████████████ ███████████████████████ from BHN to Charter Communications, Inc. ("Charter") as part of the merger of those entities. But that lost ESI has been restored in full or predominantly replaced from other sources. Unable or unwilling to take "no" for an answer, Plaintiffs now allege that data from *other* BHN custodians has been lost, giving rise to a claim of curative measures under Federal Rule 37(e)(1). But several independent facts demonstrate that they are not entitled to curative measures.

*First*, BHN (then owned by Advance Publications) undertook reasonable steps to preserve documents relevant to Plaintiffs' claims. By the time Plaintiffs sent BHN notice of their claims in April 2016, BHN already had in place ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████.[1] Beyond this legal hold, the BHN system used to track notices of alleged infringement by BHN subscribers (the Enterprise Copyright Alert Tool, or "ECAT") was set to indefinitely retain all of its contents. While Plaintiffs argue the legal hold BHN implemented was inadequate because it covered only three custodians and was ████████ in nature ████████████████████████████████████, the law does not require a party to achieve perfection in its preservation efforts. Rather, a party need only engage in reasonable and proportional preservation steps based on the knowledge available to the party at the time the obligation arises, which were undertaken here. These reasonable steps alone preclude any relief under Rule 37(e).

*Second*, because the original loss disclosed as to those three custodians has been cured, Plaintiffs now argue they are entitled to relief because emails and documents of 13 other custodians were not placed on hold by BHN until some later point in time. Plaintiffs' arguments regarding these other custodians have no merit. ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████. For several other custodians, BHN maintains

[1] ████████████████████████████████████████████████████████████████ ████████████████████████████████████

they are not relevant to the litigation. As to the remaining, Plaintiffs speculate that there is ESI loss, but they offer no proof of such loss relevant to their claims. In fact, the scope of any speculative loss is extremely limited, comprising at most a few months during the Claim Period—January 16 to May 17, 2016, as Plaintiffs waited until April 15, 2016, to place BHN on notice despite contemplating litigation as early as 2011. *See* ECF 447 (BHN's Motion for Sanctions). Any loss of data prior to April 2016 (before an obligation to preserve) cannot form the basis of a Rule 37(e) Motion. *Living Color Ent's, Inc. v. New Era Aquaculture, Ltd.*, 2016 WL 1105297, at *4 (S.D. Fla. Mar. 22, 2016).

*Third*, Plaintiffs' claim of prejudice is entirely speculative, and the curative measures sought have no relationship to the claimed loss or prejudice. Specifically, Plaintiffs claim, without support, that lost e-mails may establish that BHN was aware of infringement on its network and/or BHN received all Plaintiffs' notices. Mot. 2. But speculation is not evidence of prejudice. Notably, Plaintiffs seek as relief denial of BHN's Motion for Summary Judgment and preclusion of *BHN's* evidence concerning Plaintiffs' failure to transmit infringement notices to BHN for most of the Claim Period. This relief has nothing to do with the loss alleged, but rather is an attempt to obfuscate the fact that Plaintiffs sent notices of infringement to the wrong e-mail address between 2013 and 2015. Moreover, the loss Plaintiffs allege occurred well after March 2015, when Plaintiffs concede they stopped sending notices to BHN. Plaintiffs thus actually seek to cure a prejudice of their own making and fail to establish a causal

link between the loss alleged and the remedy sought.[2]

## FACTUAL BACKGROUND

### A.   BHN Took Reasonable Steps to Preserve Documents.

On January 20, 2016, BHN initiated a ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████. Harrison Tr.

369:17-24. Although Rightscorp had not explicitly threatened to sue, at that time ███

████████████████████████████████████████████████████

████████████████████████████████.[3] Harrison Dec. ¶ 9-10;

Harrison Tr. 370:16-373:17, 375:2-376:2. BHN believed Rightscorp ███████

████████████████████████████████████████████████████

████████████████████████ *Id.*  376:13-19,  377:16-378:2. ███

████████████████████████████████████████████████████

████████████████████████████████████*Id.* 371:7-372:2;

Harrison Dec. ¶ 10-11. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[2] As for the other forms of curative measures sought, such as the right to present "evidence" of loss to the jury, this record does not support such draconian remedies, which certainly do not satisfy the requirement that curative measures be "no greater than necessary to cure" Plaintiffs' speculative prejudice.
[3] In 2014, Rightscorp clients BMG Music and Round Hill Music sued Cox Communications, another internet service provider, for copyright infringement. Rightscorp was involved in the prosecution of the case, which resulted in a jury verdict finding Cox secondarily liable on December 17, 2015. *See* No. 14-cv-1611, Dkt. No. 763 (E.D. Va.).

███████████████ [4] Harrison Tr. 407:16-21.

In implementing the legal hold, BHN undertook to identify then known "key players" involved in BHN's policies and enforcement regarding claims of secondary copyright infringement, including: ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ [5,6] *Id.* 406:22-407:12; Harrison Dec. ¶ 12. These custodians included ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ . [7] Harrison Tr. 408:8-22.

_____

[4] At the time of these events, █████████████████████████████████████ *Id.* 300:9-11. BHN used one of two approaches for preserving emails ████████████████████████████████████████████████████████████████████ *Id.* 389:15-390:3; Harrison Dec. ¶¶ 7-8.

[5] ███████████████████████████████████████████ Plaintiffs dispute the testimony of BHN witnesses to that effect. Mot. 4, n.2. Produced documents reflect that ████████████████████████████████████████████ *See* Moore Dec. at Ex. 2 [BHN_00001324] (" ████████████████ ").

[6] ████████████████████████████████████████████████████████ *See id.* 392:21-393:2; 410:24-416:14; Harrison Dec. ¶¶ 12. BHN created the Rightscorp legal hold as a ████████████████████████ Harrison Tr. 389:12-18.

[7] ECAT was the system used by BHN for receiving, processing, forwarding, and tracking notices of alleged copyright infringement by BHN subscriber. Importantly to this motion, the ECAT system was set not to delete or purge any data. Plaintiffs' Motion does not raise any issues regarding the loss of any data from ECAT, but rather complains that notices it sent to third-party TWC never reached ECAT—a problem of Plaintiffs' own creation. *See infra* 19.

**B.     Plaintiffs' Demand Letters**

On April 15, 2016, Plaintiffs' counsel Matt Oppenheim sent letters to BHN CEO Steve Miron on behalf of Plaintiffs, asserting claims against BHN for copyright infringement and inviting BHN to sign tolling agreements pending settlement discussions. *See* Miller Dec. Ex. 1. While they were heavy on rhetoric and accusations that BHN "deliberately facilitated and profited off of massive copyright infringement," they were light on details about Plaintiffs' claims, asserting only that "in analogous circumstances companies like BHN have been held responsible for such infringing activity" (citing the *Cox* matter) and that "BHN is liable for copyright infringement." *Id*. Upon receiving those letters, ████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████. Harrison Tr. 363:15-25, 365:3-15, 368:23-369:14; Harrison Dec. ¶¶ 14-15.[8]

**C.     BHN Transferred Its Preserved Legal Hold Documents to Charter.**

On May 18, 2016, Charter completed its acquisitions of BHN and Time-Warner Cable ("TWC"). As part of merging the three companies' operations, data preserved under legal holds at those companies was transferred to Charter for preservation purposes. Vasey Dec. ¶¶ 6-14. This included ████████████████████ ████████████████████████████████████, Vasey Tr. 70:3-72:14,

---

[8] Although Plaintiffs assert that no documents have been produced to support BHN's "claim" that ███, correspondence with Mr. Oppenheim produced by Jerry Birenz (former counsel to BHN)████████████ ███████████████████. Moore Dec. Ex. 3 at 1 & 2 ("████████████████████████ ██████████.").

████████████████████████████████████████████████████

██████████████████████████ *id.* 79:2-80:2, 97:16-25, 116:25-118:17, 119:20-120:8, 122:13-123:5, 126:5-8, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ [9] *Id.* 146:19-147:7, 147:19-150:22; Vasey Dec. ¶¶ 13-14.[10]

**D.   Data BHN Transferred to Charter for This Litigation Is Available.**

In April 2019, shortly after the complaint in this action was filed, ████████

████████████████████████████████████████████████████

██████████████████████.[11] After an investigation, BHN disclosed that it had ████

████████████████████████████████████████████████████

████████████████████████████. Moore Dec. Ex. 5 at 5.

In September 2020, BHN located its original copies of most of the data

_____

[9] ████████████████████████████████████████████████████
████████████████████████████████████████. Vasey Dec. ¶ 13. Contrary to Plaintiffs' assertion, Mot. 4, ████████████████████████████████████

████ *See* Miller Dec. Ex. 19 (listing ████████████████████ ████████████
[10] The snapshot data captured for the Rightscorp custodians included ██████████████
████████████████████. *See* Vasey Dec. ¶ 14 & Ex. 1. Of the files collected for Mr. Frendberg, ████████
██████████. *Id.* ¶ Moore Dec. ¶ 13.
[11] ██████████████████████████████████████ *Id.* 100:18-101:2, 106:5-107:17, 146:19-147:18, 154:5-12. Mr. Vasey, head of Charter's internal e-discovery organization who was responsible for overseeing the transfer and preservation of BHN's legal hold data, testified in his capacity as BHN's 30(b)(6) representative that ██████████████████████
██████████████. *Id.* 91:17-93:8, 146:19-147:7.
██████ *Id.* 93:9-16, 105:5-106:11. ██████████████████████
████████████████████ *Id.* 99:12-15, 100:18-103:17.

described in its previous disclosures, sitting on servers at BHN as it resided prior to the transfers to Charter. ████████████████████████

████████████████████████████████████████

████████████████████████████████████ *See* Vasey Tr. 65:5-12, 137:2-9, 147:19-149:17; Vasey Dec. ¶ 17-18. BHN informed Plaintiffs that this data had been recovered in September 2020, almost a year before the close of fact discovery. *See* Moore Dec. Ex. 6 at 4; Miller Dec. Ex. 19.[12]

In addition to the original data for the Rightscorp custodians, BHN also searched email collections for numerous other BHN employees—more than ██████ ██████ derived from more than ██████████████ including more than ██████ ██████ sent or received by the discovery custodians not otherwise subject to legal holds. Vasey Dec. ¶¶ 17; Moore Dec. ¶ 18. From all of these sources, BHN reviewed more than ██████████████████ that hit on Plaintiffs' search terms. *Id.* ¶ 19.

## LEGAL STANDARD

To support a finding that curative measures are available under Rule 37(e)(1),



---

[12] As BHN's 30(b)(6) representative Dan Vasey testified about how much data had been recovered and for what time periods, *id.* 132:3-133:17, 147:151:9, ████████████████████████████
████████████████ *Id.* 101:3-102:7, 136:2-11, 150:4-18, 151:10-152:16. ███████████
████████████████████████████████████████████████
██████████ *Id.* 65:5-12; Moore Dec. ¶ 15. ████████
████████████ *Id.* 137:2-9. ████████████████████
████████████████████ Vasey Dec. ¶ 17. ████████
████████ *Id.* ¶ 18; Vasey Tr. 151:21-152:8. ████████
████████████████ Moore Dec. ¶ 17.

"'the Court must first make some preliminary determinations'": First, "whether the allegedly spoliated ESI should have been preserved"; second, "whether the allegedly spoliated ESI was lost because the alleged spoliator failed to take reasonable steps to preserve it"; and third, "whether the ESI cannot be restored or replaced through additional discovery." *Staple v. Northw'n Mut. Life Ins. Co.*, 2020 WL 11272799, at *3 (M.D. Fla. Sept. 30, 2020) (J. Scriven) (quoting *Chi Nguyen v. Costco Wholesale Corp.*, 2020 WL 413898, at *2 (S.D. Fla. Jan. 27, 2020)). If any answer is "no," "the Court need proceed no further, and [the] motion . . . must be denied." *Id.*

If each requirement is satisfied, the Court must evaluate whether the moving party has been prejudiced by the loss. Fed. R. Civ. P. 37(e)(1). To prove prejudice, the moving party must put forward "some evidence regarding the particular nature of the missing ESI in order to evaluate the prejudice it is being requested to mitigate." *Eshelman v. Puma Biotech., Inc.*, 2017 WL 2483800, at *5 (E.D.N.C. June 7, 2017). Prejudice will be established where the missing evidence would have been "crucial to [the moving party] being able to prove her *prima facie* case." *Marshall v. Dentfirst, P.C.*, 313 F.R.D. 691, 697 (N.D. Ga. 2016) (citing *In re Delta/AirTran Baggage Fee Antitrust Litig.*,770 F.Supp.2d 1299, 1310 (N.D. Ga. 2011) ("Where, as here, the moving party is not able to establish that the allegedly destroyed evidence is critical to the case, courts have consistently refused to impose spoliation sanctions.")). Only upon finding prejudice may the Court "order measures no greater than necessary to cure the prejudice" and "tailored toward remedying the alleged prejudice caused" by the loss. *Reed v. Royal Caribbean Cruises, Ltd.*, 2021 WL 515624, at *7 (S.D. Fla. Feb. 11, 2021)

(quoting Fed. R. Civ. P. 37(e)(1)) (rejecting request for curative measure "not reasonably related to the alleged harm caused").

## ARGUMENT

## I. BHN UNDERTOOK REASONABLE STEPS TO PRESERVE ESI, PRECLUDING THE IMPOSITION OF CURATIVE MEASURES

Rule 37(e) is "inapplicable when the loss of information occurs despite the party's reasonable steps to preserve." *Staple*, 2020 WL 11272799, at *5 (quoting Rule 37(e) Adv. Cmt. N.); *Easterwood v. Carnival Corp.*, 2020 WL 6781742, at *8 (S.D. Fla. Nov. 18, 2020) (a "failure to preserve all relevant ESI is not fatal where [a party] has undertaken reasonable steps and adequately preserved the most pertinent" evidence). The "rule recognizes that reasonable steps to preserve suffice; it does not call for perfection." *Burns v. Medtronic, Inc.*, 2017 WL 11633269, at *4 (M.D. Fla. Aug. 9, 2017) (quoting Rule 37(e) Adv. Cmt. N.) (finding that, while defendant "could have done more to ensure no relevant ESI was lost," Rule 37(e) only "requires that a litigant take 'reasonable steps'"). To that end, the reasonableness of a party's preservation efforts is informed by the circumstances, and "must be considered in the context of whether 'what was done—or not done—was *proportional* to that case and consistent with clearly established applicable standards.'" *Zbylski v. Douglas County Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010)) (emphasis in original).[13]

---

[13] *See also Peals v. QuikTrip Corp.*, 2021 WL 2043185, at *7 (E.D. Tex. May 21, 2021) (finding that the defendant took reasonable steps when it preserved the ESI "it believed was relevant based on the information it had at the time"); *The Sedona Principles, Third Ed.: Best Practices, Recommendations &*

### A. BHN Implemented a Legal Hold For Anticipated Secondary Copyright Claims in the Form of the Rightscorp Legal Hold.

Plaintiffs argue BHN failed to take reasonable steps by not instituting a separate legal hold specific to their claims. Mot. 14. This is incorrect, as undisputed testimony establishes BHN intended the ████████████████████████████████████ ██████████████████████████████ Harrison Tr. 371:24-372:2, ████████████ ████████████████████████████████████████████████████████ ████████████████████████ *Id*. 375:24-25.[14] But either way, Plaintiffs do not deny that the Rightscorp hold applied to custodians and documents relevant to their claims. As such, applying the hold to Plaintiffs' claims was reasonable: as Courts have recognized, "not every case requires a legal hold" because "'where all potentially relevant information is already secured' a legal hold notice 'will not be necessary.'" *Radiologix, Inc. v. Radiology & Nuc. Med., LLC*, 2019 WL 354972, at *10 (D. Kan. Jan. 29, 2019) (quoting *The Sedona Principles*, 19 Sedona Conf. J. 1, 104, 103–08 cmt. 5.d).

### B. BHN Undertook Reasonable Steps to Preserve in January 2016 Based Upon the Information Available.

Plaintiffs argue that, even if it was reasonable for BHN to apply the Rightscorp

---

*Principles for Addressing Electronic Document Production* at Principle 5, 19 Sedona Conf. J. 1 (2008) (preservation obligations require "reasonable and good faith efforts," and that it is "unreasonable to expect parties to take every conceivable step or disproportionate steps to preserve each instance of relevant electronically stored information").

[14] Plaintiffs ask the Court to disregard Mr. Harrison's testimony because BHN has maintained certain communications about the Rightscorp hold are privileged or subject to work product protection. Mot. 15-15. This is improper. Plaintiffs have not moved to pierce that privilege, nor to argue that BHN has waived it. Further, Plaintiffs cite no privileged communication that BHN has selectively disclosed and placed its contents at issue. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994). To the contrary, Mr. Harrison testified about facts as a corporate designee under Rule (30)(b)(6) as well as specifically as to events and decisions that fall within his personal knowledge.

hold to their claims, the scope of that hold was not itself reasonable, as it included "only three custodians" and was not ████████ Mot. 15-16. These arguments do not change the conclusion that BHN engaged in "reasonable steps" to preserve.

*First,* Plaintiffs attempt to apply a standard that implicitly demands perfection informed by hindsight – a proposition that has been uniformly rejected by courts and authoritative commentators.[15] BHN's actions were reasonable at the time based on the information available, which included a general threat of litigation stemming from business activities involving notice processing, unshaded by pleaded claims, a factual narrative, a preservation demand, or requests for production. *Peals,* 2021 WL 2043185, at *6-7 (preservation choices reasonable based on thin details in plaintiff's preservation letter). That BHN did not perfectly predict all of those employees it would list on initial disclosures *after* it had a complaint in hand, or all the custodians Plaintiffs would eventually seek documents from as discovery progressed, does not mean its choice to place on hold the key custodians related to its copyright notice program was unreasonable. *See supra* 5; *Marshall,* 313 F.R.D. at 697.

*Second*, BHN acted reasonably in exercising its judgment at the time to make the Rightscorp hold ████ in nature. The touchstone for placing a ████████████ ████████████████████████████████████████████████████████ ████████. Plaintiffs have described the period January to May 2016 as "critical"

---

[15] The Sedona Conference, *Commentary on Legal Holds, Second Edition: The Trigger & The Process,* 20 Sedona Conf. J. 341, 383 ("The reasonableness of an organization's preservation decisions, such as whether to implement a legal hold and the scope of such a hold, should be made in light of the facts and circumstances reasonably known to it at the time of its decisions, and should not be evaluated on the basis of hindsight or information acquired after the decisions are made.").

because "BHN substantially revamped its DMCA compliance policies" in December 2015, a month before the Rightscorp hold was implemented. Plaintiffs have not explained why BHN should have anticipated future communications might be relevant to claims stemming from past policies, nor why that period should have been viewed as "critical," looking forward at the time, *after* those policies had been changed. Absent such a showing, Plaintiffs' after-the-fact judgment should not be substituted for that of BHN and its counsel.

*Third,* Plaintiffs' assertions about whether the remaining custodians were or should have been placed on hold earlier are not accurate.



*Supra* n.9.

.[16] As to Bruce Jones, Gary Doda, Kathleen Rowett-O'Neil, Chris Droessler, and Trace Hollifield, BHN has never conceded that they are relevant to this litigation. To the contrary, BHN expressly disagreed that "Plaintiffs have met their burden to show that these five custodians possess information relevant to the issues in dispute in this litigation" when Plaintiffs moved to compel these custodians be added; BHN only agreed to add them for the sake of compromise to resolve Plaintiffs' Motion. ECF 282, n.10. And the remaining

---

[16] Plaintiffs issued Mr. Harrison a Rule 45 subpoena in his personal capacity, in response to which Mr. Harrison—not BHN—searched his personal files and did not identify any responsive documents.

custodians about whom Plaintiffs complain all worked within the BHN unit supervised by the custodians on the Rightscorp hold (the Security and Abuse Team).

### C. BHN/Charter's Inadvertent Loss of the Transferred Data Noes Not Change the Reasonable Steps Analysis.

Plaintiffs next argue that Charter's transition of legal hold data from BHN was not reasonable. But this does not change that BHN took reasonable steps: ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ Vasey Tr. 70:3-72:14 (*supra* 7).

That data transferred for preservation purposes was inadvertently misplaced by Charter at some point during the pendency of the Rightscorp Hold does not change the reasonable steps analysis. There is no evidence (and Plaintiffs do not point to any) that this loss was anything more than inadvertent during a massive integration of data from the newly acquired BHN and TWC entities. But perfection in preservation is not the standard and courts have found that "reasonable steps" exist even where there is a loss during the preservation process. *See, e.g., Burns*, 2017 WL 11633269, at *4 ("reasonable steps" did not require defendant to do more under the circumstances to ensure relevant ESI was not lost); *MB Realty Grp., Inc. v. Gaston Cty. Bd. of Educ.*, 2019 WL 2273732, at *4 (W.D.N.C. May 28, 2019) (defendant "took reasonable steps" to preserve emails even if the court were to assume that messages were nevertheless lost);

*Duran v. Cnty. of Clifton*, 2019 WL 2867273, at \*5 (W.D. Pa. July 3, 2019) (finding emails lost despite reasonable steps to preserve where "inadvertent error during server maintenance" led to destruction of two years of custodian emails).[17]

## II.   PLAINTIFFS HAVE NOT DEMONSTRATED ESI IS LOST THAT IS NOT AVAILABLE FROM OTHER SOURCES

"The moving party has the burden to show that the evidence was in fact lost and cannot be restored or replaced through additional discovery." *Packrite, LLC v. Graphic Packaging Int'l, LLC*, 2020 WL 7133806, at \*7 (M.D.N.C. Dec. 4, 2020) (quoting *Brittney Gobble Photo., LLC v. Sinclair Broad. Grp., Inc.*, 2020 WL 1809191, at \*5 (D. Md. Apr. 9, 2020)) ("[a] successful claim for spoliation of [ESI] cannot be premised on mere speculation on the existence of such [unrecovered ESI].").

Plaintiffs have not carried their burden here. First, as described *supra* at 7-8, although BHN disclosed a loss of ESI to Plaintiffs, that ESI was subsequently located on BHN's own network during the fact discovery period, including data for all four custodians subject to the Rightscorp hold. That ESI initially disclosed as "lost" was actually found on the original BHN server and, thus, even if it was lost for purposes of Rule 37(e), it was restored, and Plaintiffs present no *facts* to dispute this.[18] *Id.* at \*7;

---

[17] Plaintiffs cite two cases for the proposition that Charter's inability to explain what happened to the preserved data may be viewed as evidence of a failure to take reasonable steps, neither of which applies to these facts. In both *Williford v. Carnival Corp.*, 2019 WL 2269155 (S.D. Fla. May 28, 2019), nor *Sosa v. Carnival Corp.*, 2018 WL 6335178 (S.D. Fla. Dec. 4, 2018), there was insufficient evidence to find the defendants took any steps to preserve ESI and the only explanations proffered were incomplete or speculative.  But here, BHN has shown it did preserve data, but that it was lost (along with data relevant to other matters) during a large-scale data transfer.

[18] Plaintiffs invite the Court to reject Mr. Vasey's 30(b)(6) testimony as "not reliable" and "unsupported." Mot. 19. Plaintiffs are wrong. Mr. Vasey has personal knowledge sufficient to provide this testimony and his testimony is proper and admissible in his capacity as a 30(b)(6) witness. *See, e.g.*, *Sunbelt Worksite Mktg., Inc. v. Metro. Life Ins. Co.*, 2011 WL 3444256, at \*2 (M.D. Fla. Aug. 8,

*Steves & Sons, Inc. v. JELD–WEN, Inc.*, 327 F.R.D. 96, 110 (2018) (movant failed to demonstrate lost ESI was not available through other sources).

As to the remaining twelve custodians[19] that Plaintiffs claim BHN failed to preserve emails for, Plaintiffs have not even attempted to define the scope of loss they allege, describing it merely as "enormous but not quantifiable." Mot. 9. It is well settled that "Rule 37(e) does not apply . . . when information or evidence is lost before a duty to preserve attaches." *Living Color Ent's, Inc. v. New Era Aquaculture, Ltd.*, 2016 WL 1105297, at *4 (S.D. Fla. Mar. 22, 2016). Here, Plaintiffs waited until April 15, 2016 (one month before the end of the Claim Period) to give BHN notice of their claims for secondary copyright infringement, despite the fact that they anticipated litigation as early as 2011. *See* ECF 447. Assuming *arguendo*, that BHN should have preserved emails for these 12 custodians, the scope of any loss of ESI (much less any ESI relevant to the claims) is at best *de minimis* for the following important reasons. BHN policy limited ███████████████████████████████████████, *supra* n.4, and Plaintiffs do not allege BHN had notice of their claims prior to April 15, 2016.

---

2011). To that end, Mr. Vasey provided clear and consistent testimony based on his review of multiple reports and manifests. *See* Vasey Tr. 112:13-20, 117:22-118:3, 119:20-121:24. Mr. Vasey has independent personal knowledge sufficient to support his testimony and not all his testimony concerning BHN's available data was based upon the reference exhibit. *See id.* 152:1-16 Plaintiffs also argue that this testimony was based on a document "created by counsel." Mot. 18. But that too is wrong. As an aide to support his 30(b)(6) testimony, counsel provided Mr. Vasey a document that summarized certain of the specific datapoints that were otherwise derived from those underlying reports and manifests Mr. Vasey reviewed (e.g., sizes of mailboxes, date ranges, etc.).

[19] Plaintiffs cite 16 custodians for whom emails are "lost," but: (1) ███████████████████████████, *see supra* 13 & n.16; (2) ███████████████, *see supra* n.9, Harrison Dec. ¶ 12; and (3) emails were preserved for Tim Frendberg and William Futch between January and May 2016. *Supra* 7-8. This leaves twelve custodians for whom Plaintiffs maintain BHN should have preserved emails as of April 2016.

Therefore, the maximum possible scope of loss is not "enormous"; it includes email messages not otherwise available from other sources for the period January 16 (90 days prior to April 15) to May 17, 2016—a mere 123 days—for 12 custodians.

Plaintiffs speculate that emails must have existed that BHN no longer possesses, and implicitly ask the Court to speculate that those messages were dated in the narrow window of January 16, 2016 to May 17, 2016. This speculation does not suffice to carry their burden, as Plaintiffs only point to a presumption that indeterminate relevant messages must have existed. *Packrite*, 2020 WL 7133806, at *6–7 (rejecting speculation that "some" emails would "go unrecovered" if they were not shared with custodians in the litigation); *Friedman v. Phil. Park. Auth.*, 2016 WL 6247470, at *8 (E.D. Pa. Mar. 10, 2016) (requiring movant to present "some indicia of a lost document" to support a request for curative measures). Further, for those 12 custodians, BHN was able to search a volume of more than ████████████ in which it located more than ████ ████ sent or received by those custodians during the discovery time period, Plaintiffs' search terms were run and responsive materials produced. *Envy Haw. LLC v. Volvo Car USA LLC*, 2019 WL 1292288, at *2 (D. Haw. Mar. 20, 2019) (noting emails are not lost when one custodian deletes them but they remain available in the mailboxes of other custodians); *Packrite*, 2020 WL 7133806, at *7 (same) (quoting *Morgan Art Found. Ltd. v. McKenzie*, 2020 WL 5836438, at *18 (S.D.N.Y. Sept. 30, 2020)).

## III. PLAINTIFFS HAVE NOT BEEN PREJUDICED, AND THE RELIEF THEY SEEK IS NOT RELATED TO THE PREJUDICE ALLEGED

### A. The Prejudice Plaintiffs Allege is Not Related to the Loss They Say Has Occurred.

Assuming Plaintiffs can establish the predicates to Rule 37(e) (which they have not), curative measures are authorized only if they have been prejudiced by the loss. *Staple*, 2020 WL 11272799, at *2 (quoting Fed. R. Civ. P. 37(e)(1)). Plaintiffs' Motion describes the material they believe they lack as including "contemporaneous emails" about policies and repeat infringement that they view as "crucial" based on other cases involving copyright claims against ISPs. Mot. 20-21. But it provides the Court no reason to conclude those emails (1) ever existed, (2) if they existed, they were not sent or received by either the *key* or *many* custodians for whom BHN retains journaled emails, and most importantly, (3) existed in the period for which emails subject to a duty to preserve could have been lost, January 16 to May 17, 2016. It also does not describe why such emails within *that* narrow window may be so particularly important that their absence is prejudicial. *Marshall*, 313 F.R.D. at 697. Even if everything Plaintiffs allege is true, there is no basis for the Court to conclude any loss that may have occurred caused the prejudice Plaintiffs describe.

**B.    The Relief Plaintiffs Seek Is Greater Than Necessary to Cure the Prejudice Alleged.**

Even if Plaintiffs carried their burden to show they are entitled to curative measures, the measures they seek are do not comply with Rule 37(e)(1), as they are "not reasonably related to the alleged harm caused" and are "greater than necessary to cure the prejudice." *Reed*, 2021 WL 515624, at *7. The prejudice Plaintiffs claim results from a lack of "contemporaneous emails" about BHN's policies and practices with respect to copyright infringement. Mot. 20-21. Yet the primary *relief* they seek is

denial of BHN's Motion for Summary Judgment and preclusion of **BHN's** evidence concerning an entirely different subject: that Plaintiffs failed to effectively transmit infringement notices to BHN throughout most of the Claim Period. *Id.* 21.

As is described more fully in BHN's Motion for Summary Judgment, between August 1, 2013 and February 18, 2015, Plaintiffs' agent, MarkMonitor, directed nearly 52,000 infringement notices for BHN subscribers to email addresses controlled by TWC. *See* Moore Dec. Exs. 7 ¶ 5 & 8 ¶ 36.[20]  Documents produced in discovery show that nearly 35,000 of the notices erroneously sent to TWC were "bounced back" to the sender by Time Warner Cable's servers, such that on February 19, 2015, MarkMonitor acknowledged the issue had been caused ███████████████████████████ ████████████████████████ Moore Dec. Ex. 10. MarkMonitor began sending new notices to the correct e-mail address for BHN's DMCA agent that day, only to stop altogether sending *any* notices to BHN in March 2015. *See* Moore Dec. Ex. 7 ¶ 5a.

The extreme measures of evidence preclusion and denial of summary judgment are not only  "greater than necessary to cure" but also are not in any way "reasonably related" to prejudice caused by a lack of emails about "what BHN understood [its] policies to be," "how [it] implemented those policies," its "knowledge of repeat infringement on its network," its "interactions with repeat infringers," or its "response to [] known infringement." Mot. 20. None of those categories of materials would tend

---

[20] BHN's registered agent for purposes of receiving notices of infringement during the Claim Period was Jerry Birenz of Sabin, Bermant & Gould, who posted a registered address for notices to the U.S. Copyright Office website. ██████████████████████████████████████████████ ████████ Birenz Tr. at 212:21-24; 134:12-135:7.

to "show whether [BHN] received all of Plaintiffs' notices," Mot. 22, so that the requested relief does not cure the prejudice articulated.

Rather, Plaintiffs seek a windfall in order to solve a problem of their own making, which is that BHN cannot be held liable for infringement of a work if it received no notice from Plaintiffs. But ***that*** problem is entirely unrelated to whether BHN lost emails subject to a duty to preserve between January 16 and May 17, 2016. Plaintiffs do not suggest BHN possessed in April 2016, but then lost, messages dating from the time of their failures to effectively transmit notices to BHN in 2013-2015, nor that there is any reason to believe BHN created *new* messages in 2016 related to that earlier fiasco which it then lost. Such irresponsible speculation cannot form the basis for such extreme curative measures. *Snider v. Danfoss LLC*, 2017 WL 2973464 (N.D. Ill. July 12, 2017) (rejecting "pure speculation" that missing ESI would be of use to plaintiffs).[21]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied.

Dated: March 7, 2022                    Respectfully submitted,

Andrew H. Schapiro (*pro hac vice*)          *s/ Jennifer A. Golinveaux*
QUINN EMANUEL URQUHART &            Jennifer A. Golinveaux (*pro hac vice*)
SULLIVAN, LLP                                  WINSTON & STRAWN LLP
191 N. Wacker Drive, Suite 2700              101 California Street, 35th Floor
Chicago, IL 60606                            San Francisco, CA 94111-5840

---

[21] The other extreme measures Plaintiffs seek are just as inappropriate. Because the prejudice Plaintiffs allege cannot result from any destruction of ESI subject to a duty to preserve that BHN could have caused, the opportunity to present "evidence" about destruction of ESI to the jury is far greater than necessary to cure the prejudice described.

(312) 705-7400 (telephone)
Email:
andrewschapiro@quinnemanuel.com

Charles K. Verhoeven (*pro hac vice*)
David Eiseman (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600 (telephone)
Email:
charlesverhoeven@quinnemanuel.com
Email:
davideiseman@quinnemanuel.com

GUNSTER, YOAKLEY & STEWART,
P.A.
William J. Schifino, Jr.
Florida Bar Number 564338
John A. Schifino
Florida Bar Number 0072321
401 E. Jackson St., Ste. 2500
Tampa, FL 33602
(813) 228-9080 (telephone)
(813) 228-6739 (facsimile)
E-mail: wschifino@gunster.com
E-mail: jschifino@gunster.com

(415) 591-1506 (telephone)
(415) 591-1400 (facsimile)
E-mail: jgolinveaux@winston.com

Michael S. Elkin (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
E-mail: melkin@winston.com

*Counsel for Defendant*
*Bright House Networks, LLC*