**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | |
| Plaintiffs, | |
| *v.* | Case No. 8:19-cv-710-MSS-TGW |
| BRIGHT HOUSE NETWORKS, LLC | |
| Defendant. | |

## JOINT NOTICE REGARDING SPECIAL MASTER'S ORDERS AND TRANSCRIPTS

Pursuant to the Court's instruction at the March 15, 2022 hearing, Plaintiffs, Bright House Networks, LLC ("Bright House"), and non-party MarkMonitor, Inc. ("MarkMonitor") jointly notify the Court of the following regarding the confidentiality status of the Special Master's Orders and Hearing Transcripts in the case, *Warner Records Inc. et al. v. Charter Communications. Inc.* (D. Colo. No. 1:19-CV-00874-RBJ-MEH) ("*Charter*"), which have been filed in the above-captioned matter or in *Bright House Networks, LLC v. MarkMonitor, Inc.,* No. 8:20-mc-00064-MSS-TGW (the "miscellaneous action"):

1.     **Exhibit Q to the Schapiro Declaration filed in support of Bright House's Feb. 4, 2022 Motion Contempt for Discovery Sanctions Against MarkMonitor, Inc. Pursuant to Fed. R. Civ. P. 37(c) And 45(g)**, filed in the miscellaneous action.  This exhibit is an excerpt from the February 9, 2021 hearing transcript before Special Master Rodriguez in *Charter*.  Neither party nor any non-party

1

designated any portion of this transcript excerpt confidential in the *Charter* case.  The entire excerpt may be filed publicly and publicly referenced in the above-captioned case and miscellaneous action.

2.   **Exhibit V to the Schapiro Declaration filed in support of Bright House's Feb. 4, 2022 Motion for Sanctions Against Plaintiffs Pursuant to Fed. R. Civ. P. 37(c)**, filed in the above-captioned case.  This exhibit is an excerpt from the February 9, 2021 hearing transcript before Special Master Rodriguez in *Charter*. Neither party nor any non-party designated any portion of this transcript excerpt confidential in *Charter*.  The entire excerpt may be filed publicly and publicly referenced in the above-captioned case and miscellaneous action.

3.   **Exhibit 2 to the Castricone Declaration filed in support of MarkMonitor's Feb. 25, 2022 Opposition to Bright House's Motion For Contempt and Discovery Sanctions**, filed in the miscellaneous action.  This exhibit is the Special Master's October 5, 2020 Order Re: Charter's Motion to Compel Compliance With Subpoena *Duces Tecum*.  A redacted version of the Special Master's October Order was issued by the Special Master in *Charter,* reflecting the confidentiality designations of MarkMonitor, and is attached hereto as **Exhibit A**.  The same redacted version may be filed publicly and publicly referenced in the above-captioned case and miscellaneous action.

4.   **Exhibit 3 to the Castricone Declaration filed in support of MarkMonitor's Feb. 25, 2022 Opposition to Bright House's Motion For Contempt**

**and Discovery Sanctions**, filed in the miscellaneous action.  This exhibit is the Special Master's December 22, 2020 Order Regarding Plaintiffs' Request for Reconsideration of Special Master Order on Charter's Motion to Compel MarkMonitor's Compliance With Subpoena Duces Tecum.   Neither party nor any non-party designated any portion of this December 22, 2020 Order confidential in *Charter*.  The entire Order may be filed publicly and publicly referenced in the above-captioned case and miscellaneous action.

Dated: March 29, 2022

Respectfully submitted,

*/s/ Jeff Gould*
Jeffrey M. Gould
Matthew J. Oppenheim
Alexander Kaplan
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com
alex@oandzlaw.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Ste. 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
nsahni@cov.com

David C. Banker, Esq. (0352977)
Bryan D. Hull, Esq. (020969)
BUSH ROSS, P.A.
1801 North Highland Ave.
P.O. Box 3913
Tampa, FL 33601-3913
Telephone: (813) 224-9255
dbanker@bushross.com
bhull@bushross.com

*Attorneys for Plaintiffs*

Respectfully submitted,

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Email:
andrewschapiro@quinnemanuel.com

Charles K. Verhoeven (*pro hac vice*)
David Eiseman (*pro hac vice*)
Linda Brewer (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Email:
charlesverhoeven@quinnemanuel.com
Email:
davideiseman@quinnemanuel.com
Email: lindabrewer@quinnemanuel.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Tel: (415) 591-1000
Email: jgolinveaux@winston.com

Michael S. Elkin (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Email: melkin@winston.com

William J. Schifino, Jr.
Florida Bar No. 564338
GUNSTER, YOAKLEY & STEWART
P.A.
401 E. Jackson Street, Suite 1500
Tampa, FL 33602
Tel: (813) 228-9080

_/s/ Andrew D. Castricone_
Andrew D. Castricone
GORDON REES SCULLY
MANSUKHANI, LLP
275 Battery St. Ste, 2000
San Francisco, CA 94111
Email: acastricone@grsm.com

*Counsel for Non-Party*
*MarkMonitor, Inc.*

_/s/ Racquel A. White_
Racquel A. White
Florida Bar No. 0392669
GORDON REES SCULLY
MANSUKHANI, LLP
Miami Tower
100 SE Second St., Ste 3900
Miami, Fl. 33131
Tel: (305) 428-5330
Email: rwhite@grsm.com

*Counsel for Non-Party*
*MarkMonitor, Inc.*

Email: wschifino@gunster.com

*Counsel for Defendant*
*Bright House Networks, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 29, 2022, I caused the foregoing document and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

Dated: March 29, 2022

/s/ *Andrew H. Schapiro*

*Attorney for Bright House Networks, LLC*

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00874-RBJ-MEH

WARNER BROS. RECORDS INC., et al.,

       Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

       Defendant.

---

### SPECIAL MASTER'S ORDER RE: CHARTER'S MOTION TO COMPEL
### COMPLIANCE WITH SUBPOENA *DUCES TECUM*

**Entered by Regina M. Rodriguez, Special Master, on October 5, 2020,**

Pending before me is Charter's motion to compel non-party MarkMonitor, Inc. ("MarkMonitor") to comply with a subpoena served by Charter on December 20, 2019. Pursuant to Fed. R. Civ. P. 45, Charter filed its Motion to Compel in the United States District Court for the Northern District of California, the district in which MarkMonitor is located. *See Charter Communications, Inc. v. MarkMonitor, Inc.*, 3:20-mc-80084-SK-Misc, (D. Cal. 2019), ECF 1. Charter thereafter filed a motion to transfer the matter to the District of Colorado for resolution. *Id.* at ECF 7. The Court granted Charter's motion and transferred the matter to the District of Colorado. *Id.* at ECF 15. On July 29, 2020, Judge Jackson referred Charter's motion to Magistrate Judge Hegarty. *Warner Records Inc. v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH, ECF 222. The same day, Judge Hegarty referred Charter's motion to me. ECF 223.

This issue has been fully briefed and is ripe for review. For the following reasons, Charter's Motion to Compel is granted in part and denied in part.

## I.   BACKGROUND

This action arises out of the alleged secondary infringement by the Defendant of Plaintiffs' copyrighted musical compositions and sound recordings. Plaintiffs allege that thousands of their works were unlawfully distributed online by Charter's internet service subscribers to third parties using BitTorrent or other peer-to-peer file sharing programs between 2013 and 2016. As evidence of the infringement, Plaintiffs offer notices that were served on Charter notifying Charter that subscribers on its network were infringing Plaintiffs' works. MarkMonitor was retained by Plaintiffs, or entities acting on their behalf, to detect this infringement and notify Charter and other ISPs of such infringement. Indeed, MarkMonitor acknowledges that "[t]he *Warner* plaintiffs' claims rely, in part, on work performed by MarkMonitor under produced agreements with the RIAA ("Record Industry Association of America") to detect, report, and facilitate notification for infringement in the form of unauthorized downloads of songs on peer-to-peer file sharing sites." MarkMonitor, Inc.'s Opposition to Motion to Compel Compliance with Subpoena Duces Tecum ("Opp.") at 1. MarkMonitor has described its role in this litigation as a percipient witness and as a litigation consultant. Sept. 17, 2020 R. Tr. 9:24-10:3.What MarkMonitor did or did not do pursuant to its agreements and the validity of its processes has been the subject of discovery in this matter.

On December 20, 2019, Charter served a subpoena duces tecum on MarkMonitor seeking responses to fifty-two requests for production. MarkMonitor served its response to the subpoena

on January 30, 2020. After a series of meet and confer discussions, MarkMonitor served an amended response to the subpoena on March 14, 2020. Since that time, MarkMonitor has produced additional documents it agreed to produce as part of its March 14, 2020 amended response.

Charter seeks an order directing MarkMonitor to comply with Requests for Production 6, 9, 11–27, 31, 35–40, 43, 47–48 and setting a deadline for MarkMonitor to produce documents that it has already agreed to produce.

## II.   LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure governs the use of subpoenas. In relevant part, Rule 45 permits a party to an action to serve a nonparty with a subpoena commanding the nonparty to produce designated documents within that nonparty's possession, custody, or control. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). The nonparty on whom a subpoena is served to produce documents or tangible things may serve on the party or attorney designated in the subpoena "a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested." *Id*. at (d)(2)(B). Upon receiving the objection, the serving party may move the court for the district where compliance is required for an order compelling production, as Charter has done here. *Id*. at (d)(2)(B)(i).

A subpoena served on a third party pursuant to Rule 45 is considered discovery within the meaning of the Federal Rules of Civil Procedure and thus must comply with the same standards that govern discovery between the parties: to be enforceable, a subpoena must seek information

that is relevant to a party's claims or defenses and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

## III.   CHARTER'S MOTION TO COMPEL

Charter seeks an order requiring MarkMonitor to fully comply with Charter's Requests for Production Numbers 6, 9, 11–27, 31, 35–40, 43, 47–48 of the subpoena. In its motion, Charter has grouped these requests by topic, arguing that MarkMonitor should be ordered to produce technical information about its system, technical information regarding the RIAA databases, assessments of its system, evidence packages, documents related to the CAS, communications with the Plaintiffs and the RIAA, and document retention policies and privilege logs.

MarkMonitor, however, has indicated that it does not object outright to the production of the requested documents. MarkMonitor asserts that it is only objecting to two categories of documents: documents related to the Copyright Alert System and documents that it contends are privileged. Opp. at 2-3. MarkMonitor has represented that it does not have documents responsive to a majority of Charter's requests, that Plaintiffs have already produced the requested documents, that the requested documents are not relevant, or that the requested documents are privileged.

## IV.   MARKMONITOR'S OBJECTIONS TO CHARTER'S REQUESTS FOR DOCUMENTS RELATING TO THE COPYRIGHT ALERT SYSTEM ("CAS")

MarkMonitor argues that it objects to the production of documents in response to Requests 35-40 and Request 48 because they pertain to assessments and audits of MarkMonitor's system, including but not limited to communications related to the CAS program—a voluntary program to which Charter was not a party.

The requests at issue are as follows:

> **RFP 35**: All Documents and Communications concerning the reliability and/or efficacy of the MarkMonitor System, including Documents and Communications pertaining to any technical assessments of the MarkMonitor System, or the flaws, weaknesses, or potential improvements to the MarkMonitor System, and any proposed and/or implemented remediation of any such flaws or weaknesses, including any such assessments undertaken in connection with the CAS.

> **RFP 36**: All Documents consisting of operational audits of the Mark Monitor system, including any such audits undertaken in connection with the CAS.

> **RFP 37:** All Communications between You and any third party who conducted technical assessments of the MarkMonitor System, including but not limited to Stroz Friedberg and Harbor Labs.

> **RFP 38:** All Documents and Communications concerning the "Independent Expert Assessment of MarkMonitor Anti-Piracy Methodologies," dated November 1, 2012, conducted by Stroz Friedberg.

> **RFP 39**: All Documents and Communications concerning the "Enhancement Recommendations" made by Stroz Friedberg on page 11 of Stroz Friedberg's report titled "Independent Expert Assessment of MarkMonitor Anti-Piracy Methodologies," dated November 1, 2012.

> **RFP 40**: All Documents and Communications concerning the "Evaluation of the MarkMonitor AntiPiracy System," dated March 3, 2014, conducted by Harbor Labs.

> **RFP 48:** All Documents and Communications between You and any Plaintiff the RIAA, or any other third party concerning the CAS or any proposed inter-industry agreement regarding the handling of notices of copyright infringement, including but not limited to Documents and Communications concerning the implementation of CAS by internet service providers, or the impact, if any, of CAS on the scope of copyright infringement through peer-to-peer file sharing technology.

To each of these requests, MarkMonitor responded:

> After the service of the original response to the subpoena and agreement to produce all relevant and non-privileged responsive documents, if any, this Responding Non Party learned of and has received orders from the presiding Court where it was determined that the scope of this request to this Responding Non-Party is not discoverable from the parties, i.e. for all intents and purposes, are irrelevant to this instant dispute.

> MarkMonitor specifically argues that it objects to the production of documents related to

the CAS system "based on a Discovery Order in the *Warner* case that deemed such information as

being irrelevant." Opp. at 2. MarkMonitor does not reflect in its filings that after additional argument during the December 17, 2019 hearing, Judge Hegarty reconsidered and ordered Plaintiffs to permit Defendant to access the agreements. ECF 108 at 99:11-17. Judge Hegarty observed, "The agreements that they entered into could be admissible for all different kind of reasons. And so I understand your relevance objection and, you know, I just think that's going to have to be reserved for Judge Jackson at trial as to admissibility. But for purposes of the discovery, those five agreements, please go get your consents, okay." *Id.*

MarkMonitor cites to Judge Jackson's April 16, 2020 Order where he found that Judge Hegarty's order requiring Plaintiffs to produce certain CAS agreements was not clearly erroneous or contrary to law (ECF 159), but Judge Jackson commented: "It is difficult for me to see how what plaintiffs were willing to accept from those providers in that context is relevant to Charter's legal obligations in this case. Out of court agreements are made for various reasons including avoiding the risks inherent in litigation." *Id.* I believe MarkMonitor's interpretation that Judge Jackson's order precludes evidence related to CAS, or that such evidence is per se irrelevant, goes too far.

Charter argues that information regarding MarkMonitor's work is directly relevant to the integrity of the process MarkMonitor used to identify and provide notice of purported infringement. Charter's Notice of Motion and Motion to Compel Compliance with Subpoena Duces Tecum ("Mot.") at 5-7. Charter specifically cites to certain "Statements of Work" produced by MarkMonitor that describe MarkMonitor's (formerly DtecNet) technical obligations under its agreement with the RIAA:



Charter argues that "documents relating to MarkMonitor's services provided in connection with the CAS program are directly relevant to the services provided by MarkMonitor with respect to Charter, because its ' ███████████████████████████████.'" Charter's Reply in Support of Motion to Compel Compliance with Subpoena Duces Tecum ("Reply") at 5.

The technology deployed in connection with MarkMonitor's services provided with respect to Charter, and more specifically, the data MarkMonitor collected and provided for use as evidence in this matter and the extent to which the *Warner* Plaintiffs' claims, "rely, in part, on work performed by MarkMonitor under produced agreements with the RIAA ("Record Industry Association of America") to detect, report, and facilitate notification for infringement in the form of unauthorized downloads of songs on peer-to-peer file sharing sites" is clearly relevant to the underlying litigation pursuant to the standard set forth in Rule 26. Because MarkMonitor has produced documents █████████████████████████████████████████ █████████████████████████, documents relating to the technology deployed in connection with the CAS agreements are also relevant and should be produced.

MarkMonitor has raised no objection other than relevance and the fact that the discovery is unreasonably cumulative or duplicative or available from other sources. Opp. at 10.

With this in mind, I turn now to Charter's specific requests.

**Charter's Motion to Compel is granted as to Requests 35-40.** These requests seek documents relating to the general reliability and operation of MarkMonitor's systems. Evidence related to the reliability of MarkMonitor's systems is relevant because Plaintiffs rely on MarkMonitor's detection and infringement notices as evidence of copyright infringement. Because the technology used in connection with CAS is the same as the technology used in connection with the work relevant to MarkMonitor, the requested documents, even if related to CAS, are relevant and should be produced. Charter highlights assessments which were reported in the press in relation to the RIAA's use of MarkMonitor for the CAS project. Mot. at 11 n.46. To the extent that the reports or analyses are part of the public record from prior litigation or otherwise, MarkMonitor need not re-produce those documents.

**Charter's Motion to Compel is denied as to Request 48.** While Charter has established that MarkMonitor's technical obligations and technology employed pursuant to CAS may be relevant, Charter has not established the relevance of all communications between MarkMonitor and any third-party concerning CAS.

## V.   MARKMONITOR'S OBJECTION REGARDING THE PRODUCTION OF PRIVILEGED DOCUMENTS

For many of Charter's document requests, MarkMonitor responded that:

> "Responding Non Party has determined that there are no non-privileged documents that are responsive to a reasonable interpretation of this Request, **and no documents are being withheld on the basis of any privilege**."

MarkMonitor, Inc.'s Amended Objections and Responses to Subpoena to produce Documents by Defendant Charter Communications, Inc. ("Amended Resp.") at 4 (emphasis added).

MarkMonitor reiterated its position in its opposition: "MarkMonitor has indicated that it has no documents regarding communications with the RIAA and the *Warner* Plaintiffs other than the agreements that have been produced. **As no documents exist and no documents are being withheld, there is no need for a MarkMonitor privilege log**." Opp. at 11. (emphasis added). However, MarkMonitor's additional statements in opposition to Charter's motion to compel suggest that MarkMonitor may be withholding as privileged communications with Plaintiffs' counsel. *See e.g.* Opp. at 11 ("Here however, and after service of MarkMonitor's amended response to the subpoena, Charter's counsel opines MarkMonitor (and its counsel) are required to produce communications with the Warner Plaintiffs' counsel – yet MarkMonitor is serving as a litigation consultant to the Warner Plaintiffs."). However, MarkMonitor has not provided a privilege log identifying such documents, and I am therefore unable to ascertain whether there are, in fact, documents being withheld on the basis of privilege for each particular request. **Therefore, MarkMonitor should amend its responses to identify requests for which documents are being withheld and to identify any such documents on a privilege log, including but not limited to, communications with Plaintiffs' counsel in this matter. Further detail and analysis of the parties' arguments and my order is provided below.**

### A. Relationship Between MarkMonitor And Plaintiffs

It appears that the relationship between MarkMonitor and the Plaintiffs/RIAA can be divided into three distinct time periods. Counsel for MarkMonitor has represented that MarkMonitor is currently acting as a litigation consultant to the Plaintiffs. Counsel has represented that MarkMonitor entered into a formal litigation agreement with the Plaintiffs on November 1, 2018. Sept. 17, 2020 R. Tr. at 5:1-7. Counsel for MarkMonitor also represented that, prior to the

2018 agreement, there was a 2016 agreement that "directly included a role with respect to litigation." *Id.* at 6:17-22. Finally, prior to 2016, MarkMonitor had a working relationship with the RIAA going back to approximately 2008. *Id.* at 14:1-5.

The relationship between MarkMonitor, Plaintiffs, and Plaintiffs' counsel in this matter (Oppenheim and Zebrak) has also been the subject of some argument. Charter has argued that, in addition to being Plaintiffs' counsel in this matter, Oppenheim and Zebrak acted as an agent of the Plaintiffs with regard to communications with third parties like MarkMonitor. *See, e.g.,* May 18, 2020 Tr. at 14:13-15:4, 17:2-15, 18:2-5. As such, Charter sought previously to search the custodial files of Oppenheim and Zebrak to obtain certain communications with third parties like MarkMonitor. I declined to order that Oppenheim and Zebrak perform searches of its own custodial documents in part because Charter had issued a subpoena to MarkMonitor and because MarkMonitor's documents could be searched for these communications. *Id*. at 20:15-20. I indicated that that these documents could be requested from the third parties to the extent they exist. May 18, 2020 Tr. at 20:15-20.

### B.  Purportedly Privileged Communications

Notwithstanding MarkMonitor's amended responses to Charter's document subpoena, counsel for MarkMonitor confirmed during a September 17, 2020 hearing that MarkMonitor *is* withholding as privileged certain communications with the law firm of Oppenheim and Zebrak. Sept. 17, 2020 R. Tr. 8: 16-21 (Special Master: "…you've indicated that there is a privilege that you are withholding some documents on the basis of with regard to communications with Oppenheim and Zebrak?" Mr. Castricone: "Correct."). It is unclear, however, what the subject of these communications is, or when the communications took place.

MarkMonitor's opposition to Charter's motion to compel focuses on the purported privilege created pursuant to MarkMonitor's role as a litigation consultant. Opp. at 11. MarkMonitor argues that the withheld communications are protected as attorney work product. *Id.* MarkMonitor argues that "[g]iven the dynamic of MarkMonitor's status as a consultant, and its representation by counsel to coordinate MarkMonitor's role and protect its interest individually and as the Warner Plaintiffs' consultant, there is also a common interest privilege against disclosure of communications among them." *Id.* at 11-12. Without additional information about the communications themselves, however, it is not possible to determine what has been withheld and the appropriateness of the withholding. Further, some of MarkMonitor's discovery responses appear to be inaccurate in light of the representations made by MarkMonitor's counsel.

**MarkMonitor is therefore ordered to amend its responses to Charter's subpoena to specifically identify those requests for which documents are being withheld on the basis of privilege or a common interest protection no later than October 20, 2020.**

### C. MarkMonitor Must Produce A Privilege Log Identifying All Withheld Communications.

MarkMonitor states in its opposition to Charter's motion to compel that "MarkMonitor does not dispute the general rule regarding the preparation of a privilege log with respect to materials it is withholding under its own claim of privilege." Opp. at 11. MarkMonitor claims, however, that the privilege holder of the withheld documents is the Plaintiffs. MarkMonitor has therefore suggested that it is not under any obligation to log the withheld documents. Confirming that documents have been withheld as privileged, counsel for MarkMonitor argued: "[I]t's not my privilege or my client's privilege to assert in litigation…[I]f there were documents to produce that

are responsive, then they would have been logged by plaintiffs or they would need to be logged by plaintiffs who are the holder of the privilege." Sept. 17, 2020 R. Tr. at 8:23-9:5.

That documents responsive to a subpoena may be subject to a claim of privilege, however, does not interfere with the producing party's obligation to provide a privilege log. Rule 45 specifically instructs that "A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2). Here, the documents withheld by MarkMonitor appear to be directly responsive to Charter's discovery requests. MarkMonitor therefore has an obligation to provide information about those documents as is required by Rule 45. Further, since MarkMonitor acknowledges that it withheld certain documents as privileged or based upon a common interest protection, MarkMonitor must know which documents are being withheld pursuant to a claim of protection, even if the privilege or other protection is the Plaintiffs'. Thus, it is not unreasonable that MarkMonitor should log and identify the basis for the withholding of such documents.

**MarkMonitor is therefore ordered to provide a privilege log identifying all documents withheld on any basis no later than October 20, 2020. That privilege log shall comply with the requirements set forth by Judge Hegarty during the parties' September 9, 2020 hearing.**

### D.  There Is Insufficient Information To Determine Privilege At This Time

In its opposition, MarkMonitor seeks a ruling that the withheld documents are privileged, and that such privilege has not been waived. I decline to make any such ruling at this time. Without a privilege log identifying and describing the withheld documents, it is impossible to assess MarkMonitor's claim of privilege. To facilitate productive discussions among the parties moving forward, however, I make the following observations with regard to MarkMonitor's claims of privilege.

*First*, the privileged nature of the documents and communications will depend on when those communications took place. Here, MarkMonitor focuses on its status as a litigation consultant. While that agreement *may* render communications made subsequent to the enaction of that agreement privileged, that privilege does not extend to every communication that MarkMonitor has ever had with Plaintiffs or their counsel.

*Second*, communications are not per se privileged because they include outside counsel. Charter has alleged here that Plaintiffs' counsel also acted as an agent of the Plaintiffs with regard to communications with third parties like MarkMonitor. Communications made as an *agent* of MarkMonitor may be subject to different protections than are communications made as outside counsel of Plaintiffs.

Further, Charter's document requests seek documents from as early as 2008. (And MarkMonitor did not indicate in its responses that it was withholding documents based on alleged overbreadth of the discovery period.) In the declaration of Sam Bahun, the declarant specifically states that MarkMonitor's original engagement with the RIAA "was ***not*** in anticipation of litigation

such as this matter or the *UMG* and *Sony* cases. MarkMonitor was later engaged to serve as a litigation consultant in the *Sony*, *Warner* and *UMG* cases." May 26, 2020 Declaration of Sam Bahun at ¶ 9 (emphasis in original). This suggests to me that communications during that time period may not be privileged, even if they were with Oppenheim and Zebrak—notwithstanding that Oppenheim and Zebrak later became Plaintiffs' counsel.

## VI.   MARKMONITOR'S RESPONSE THAT IT DOES NOT HAVE RESPONSIVE DOCUMENTS

In response to thirty-one of Charter's requests, MarkMonitor responded that it had determined that "**there are no non-privileged documents that are responsive to a reasonable interpretation of this Request**, and no documents are being withheld on the basis of any privilege." Amended Resp. at 4. (emphasis added).

Charter seeks an order compelling production in response to thirteen of those document requests. Those requests are as follows:

**RFP 6**: All Documents and Communications concerning the features, functionality, capabilities, or operation of the MarkMonitor System, including all guidelines, data sheets, manuals, and/or instructions.

**RFP 14**: All Documents and Communications regarding MarkMonitor's or the MarkMonitor System's processes or methods of comparing metadata from an allegedly infringing file located online with metadata from MarkMonitor's own database(s), including but not limited to any documents assessing shortcomings or other flaws in relying on metadata to conduct comparisons of allegedly infringing files.

**RFP 15**: All Documents and Communications regarding MarkMonitor's decision to rely upon Audible Magic and/or its systems to fingerprint, identify, and/or verify the Copyright Works, including any evaluations or assessments of the Audible Magic System.

**RFP 16**: All Documents and Communications regarding MarkMonitor's understanding of the processes and methods used by Audible Magic to compare a fingerprint of the Copyright Works sent by MarkMonitor or the MarkMonitor System to Audible Magic's database of Copyright Works.

**RFP 17**: All Documents and Communications between MarkMonitor and Audible Magic, including but not limited to requests from MarkMonitor to Audible Magic for fingerprinting, identification, or verification of the Copyright Works by Audible Magic and Audible Magic's responses to such requests.

**RFP 18**: All Documents and Communications sent by Audible Magic to You regarding the fingerprinting, identification, or verification of the Copyright Works, including manuals, data sheets, and other technical documents describing Audible Magic's services and software, and any responses from Audible Magic to fingerprinting requests made by You.

**RFP 19**: A copy of each version of any database You used to record and/or store information concerning the fingerprinting, identification, and/or verification of the Copyright Works.

**RFP 20**: All Documents and Communications concerning Your retention or destruction of data, including transaction logs, sent to You by Audible Magic.

**RFP 21**: All Communications with Audible Magic concerning the Copyright Works.

**RFP 22**: All recordings or logs of information sent to or received from Audible Magic concerning the Copyright Works, including but not limited to "transaction logs."

**RFP 23**: All Communications with the RIAA concerning the Copyright Works.

**RFP 31**: All Documents and Communications, including but not limited to weekly or monthly reports, that You sent to the RIAA regarding the Peer-to-peer Notice Program

**RFP 43**: Documents sufficient to demonstrate the functional operation of source code with respect to copyright infringement investigations for the RIAA, including for source code that integrate(s) peer-computer investigations with verifications from third parties such as Audible Magic, including but not limited to data sheets and/or operational manuals.

Charter argues that MarkMonitor's claim that it is not in possession of any responsive documents lacks credibility because documents produced by MarkMonitor establish that MarkMonitor "was contractually obligated by the RIAA to 'maintain' exactly this data, and to be able to provide detailed descriptions of its processes, and documentation to verify and prove the

integrity of any evidence it gathers." Mot. at 9. Charter further argues that its requests "seek basic documents that would be maintained by any technology company because these documents are required in order to develop, use, and offer services of the sort provided by MarkMonitor." *Id.* In order to identify potential gaps in MarkMonitor's production, Charter sought document retention policies from MarkMonitor. MarkMonitor contends that such policies do not exist. Opp. at 2.

As MarkMonitor points out, I cannot compel the production of documents that do not exist. Opp. at 9; *Estrada v. Macis*, No. 15-cv-01292-AWI-SAB(PC), 2017 U.S. Dist. LEXIS 152226, at *7-8 (E.D. Cal. Sept. 19, 2017). ("Absent evidence to the contrary, not present here, Plaintiff is required to accept defendant's representation that such documentation either does not exist or cannot be located, and Defendant cannot be compelled to provide copies of documents that do not exist."). The documents sought by Charter, however, do appear to be documents that MarkMonitor would be expected to have, and Charter has produced evidence suggesting that those documents may exist. It is surprising, for example, that documents pertaining to "the operation, features, and functionality of the MarkMonitor system and manner in which it [] detect[s] infringement" do not exist. Mot. at 8.

Furthermore, the Master Services Agreement entered into between MarkMonitor and the RIAA specifies that ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████   Mot. Ex. 7 at MM000004, ¶ 2.1. Charter's contention that the requested documents should exist is therefore not without support.

16

While it has made no such argument, MarkMonitor's responses to Charter's requests suggest that it may be limiting its responses based on what it contends is a "reasonable interpretation" of Charter's requests. To the extent that MarkMonitor is limiting its responsive production based on this statement, such a limitation is improper. Rule 34(b)(2)(B) requires a party objecting to a discovery request to "state with specificity the grounds for objecting to the request, including the reasons." For every one of the requests at issue here, MarkMonitor objected to nearly every word of the request as "vague, ambiguous, and subject to varying interpretations." For example, in response to Request 6, MarkMonitor objected that "'Documents,' 'Communications,' 'concerning,' 'features, functionality, capabilities, or operation,' 'the MarkMonitor System,' and 'guidelines, data sheets, manuals, and/or instructions' are vague, ambiguous, and subject to varying interpretations." Amended Resp. In response to Request 19, MarkMonitor objects to the term "You," notwithstanding that the term is explicitly defined in the document. Because MarkMonitor has objected to every operative word in each Request, it is impossible for me to evaluate the merits of those objections, as is required under Rule 34. *See Convertino v. DOJ*, 565 F. Supp. 2d 10, 12-13 (D.D.C. 2008).

Rule 34 also requires a party objecting to a request to state "whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). MarkMonitor has not indicated whether it is withholding potentially responsive material based on its objections that the terms used in the requests are "subject to varying interpretations," nor has it indicated how it has interpreted the request for the purposes of responding to it. It is therefore yet again impossible to determine whether MarkMonitor has complied with the requirements of Rule 34.

MarkMonitor cannot be compelled to produce documents that do not exist. Charter is, however, entitled to verified responses to its document requests. *Warnick v. DISH Network LLC*, No. 12-cv-01952-WYD-MEH, 2013 WL 788090, at *3 (D. Colo. Mar. 1, 2013) ("[i]t follows then, that when a response to a [request for] production of documents is not a production or an objection, but an answer, the party must answer under oath.") (alterations in original). With respect to the documents that were previously produced in the *Cox* case, but which MarkMonitor allegedly does not possess, those documents should be deemed produced in this case subject to the applicable provisions of the protective order in the *Cox* case and this case.

**With regard requests 6, 14-23, 31, and 43, MarkMonitor is ordered to produce documents responsive to the requests to the extent that such documents exist no later than October 20, 2020. If no such documents exist, MarkMonitor shall state so in a verified response, and Charter shall be entitled to rely on such representations. If MarkMonitor is limiting its production in any way, it shall state so in its response.**

## VII.    MARKMONITOR'S RESPONSE THAT RESPONSIVE INFORMATION HAS ALREADY BEEN PROVIDED TO PLAINTIFFS

For Requests 9, 13, 24, 25, 26, and 27, MarkMonitor responded that "responsive information to this request may be contained in information previously provided to Plaintiffs, and, upon information and belief, already produced to the Defendants." Similarly, for Requests 11 and 12, MarkMonitor responded that "all song titles were provided to Plaintiffs' counsel via hard drive and, if not yet produced, are more readily available from those parties." MarkMonitor argues that requiring it "to provide a duplicate set of the same documents/data, or making the same production with different 'Bates' numbering – especially where the subpoenaing party is already in possession

18

of responsive documents is and would be unduly burdensome, harassing, time consuming and expensive and is therefore in violation of FRCP 45(d)." Amended Resp. at 13.

The parties have both acknowledged that Rule 45 protects individuals subject to a subpoena, instructing that a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). MarkMonitor relies heavily on case law suggesting that nonparties "deserve extra protection from the courts." Opp. at 8 (citing *Cabell v. Zorro Prods.*, No. 15-cv-00771-EJD (VKD), 2018 U.S. Dist. LEXIS 101723, at *4-5 (N.D. Cal. June 18, 2018). Those cases, however, largely relate to decisions regarding who should bear the *costs* of discovery, which is not at issue here. *See United States v. Columbia Broad. Sys., Inc*., 666 F.2d 364, 371 (9th Cir. 1982). Such cases do not replace the general rule that the scope of and limitations on discovery under Rule 45 do not differ from the scope of and limitations on discovery pursuant to Rule 26. The Advisory Committee Notes to the 1991 amendment of Rule 45 explain, "Paragraph (d)(1) extends to non-parties the duty imposed on parties by the last paragraph of Rule 34(b), which was added in 1980." Fed. R. Civ. P. 45 Advisory Committee Notes to 1991 Amendments. Thus, this rule does not impose a different standard for discovery of documents from non-parties than from parties; it is simply a separate recitation of the standard.

Charter is therefore entitled to obtain discovery from MarkMonitor "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

While Rule 26 limits discovery where it is "unreasonably cumulative or duplicative," MarkMonitor has not made such a showing. First, MarkMonitor has not represented that Plaintiffs have produced all documents within MarkMonitor's possession or control that are responsive to the requests. MarkMonitor responded that "responsive information to this request *may* be contained in information previously provided to Plaintiffs." *See e.g.* Amended Resp. at 13. It is also unclear from MarkMonitor's response whether these documents were actually produced.

Second, MarkMonitor has not established that the burden of producing the requested information outweighs its likely benefit. Indeed, MarkMonitor has not provided any information or evidence regarding the burden of producing documents in response to the requests identified in Charter's motion to compel. Charter has, however, established that the documents sought by these requests are relevant, even if they may be duplicative of or similar to documents produced by the Plaintiffs. Reply at 10-11 ("But, as demonstrated in Charter's Motion to Compel, documents produced by the *Warner* Plaintiffs have repeatedly and facially omitted key data. With the spreadsheets specifically, the Warner Plaintiffs produced them omitting at least 10 fields of relevant data that Audible Magic sent to MarkMonitor, and there is no representation that they include the entirety of the databases that MarkMonitor was obligated to create and maintain, and which Charter has sought access to.").

As an additional example, RFP 11 specifically requests: "All potentially infringing copies of the Copyright Works, including all metadata, downloaded by MarkMonitor or the MarkMonitor

System following identification of alleged infringement by Charter's subscribers." In response MarkMonitor stated, "All song titles were provided to Plaintiffs' counsel via a hard drive and, if not yet produced are more readily available from those parties." However, the parties and Special Master have devoted considerable time to this very issue. Specifically, the Plaintiffs failed to produce the accurate metadata for the hard drive identified in MarkMonitor's response to RFP 11. In my Order on April 28, 2020, I noted that Charter sought the hard drive from Plaintiffs because MarkMonitor indicated to Charter that it had already provided a copy of the hard drive to the Plaintiffs. The Plaintiffs production, however, did not contain accurate metadata, nor was it a complete copy of the hard drive. ECF 164 at 7-8. In particular, certain metadata contained in the hard drive was altered when the Plaintiffs attempted to make a copy of the hard drive. April 17, 2020 Tr., 124:21-125:9. I found that the ESI Protocol, ECF 70, clearly requires the production of documents with accurate metadata. Ultimately, the Plaintiffs offered a "pragmatic solution" which they argued would allow them to produce the hard drive with accurate metadata. May 4, 2020 Letter from Special Master.

Given the difficulties surrounding Plaintiffs' production of the hard drive, I specifically noted that Charter could seek to enforce its subpoena against MarkMonitor instead of attempting to obtain the information from the Plaintiffs. ECF 164 at 8. It appears that is precisely what Charter has done.

The record before me therefore suggests that the burden of producing the requested information is outweighed by its likely benefit, and that the requested documents are therefore discoverable.

For these reasons, Charter's motion to compel with regard to Requests 9, 11, 12, 13, 24, 25, 26, and 27 is granted. MarkMonitor shall produce documents responsive to this request no later than October 20, 2020.

## VIII.   DOCUMENTS THAT MARKMONITOR HAS ALREADY AGREED TO PRODUCE

Charter asks that I order a date by which MarkMonitor produce documents that it has already agreed to produce. **To the extent that the agreed-upon documents have not already been produced, MarkMonitor is ordered to produce those documents no later than October 20, 2020.**

## IX.   ISSUES RAISED AFTER FILING

After the parties filed their motions with regard to Charter's motion to compel, Charter confirmed receipt of certain documents and raised a handful of additional and follow-up issues. Sept. 25, 2020 Email from S. Anderson. MarkMonitor was provided an opportunity to respond.

### A.  Evidence Packages

First, Charter confirmed that MarkMonitor has now produced evidence packages and notices that it had previously agreed to produce. However, Charter alleges that this production included 660,000 notices but only 357,000 evidence packages. Sept. 25, 2020 Email from S. Anderson. Charter argues that "there is supposed to be an evidence package supporting each notice. MarkMonitor did not dispute this in its briefing or during meet and confers or at any time since, but it has neither produced the 300,000 packages that were missing from Plaintiffs' production nor explained why they are missing." *Id.* In response, MarkMonitor argues that "the source data of the evidence packages, etc. produced by plaintiffs is the same source data from which any

22

MarkMonitor production would be generated." Sept. 30, 2020 Email from A. Castricone. MarkMonitor further argues that "any questions regarding 'missing' evidence packages are more appropriately addressed in a deposition context." *Id.*

Yet again, I cannot order MarkMonitor to produce documents that do not exist. Charter alleges that the Plaintiffs' and MarkMonitor's production is missing 300,000 evidence packages. The responses from these parties suggests to me that these 300,000 evidence packages do not exist. As such, I cannot order their production. Charter is, however, entitled to a verified response. **MarkMonitor is therefore ordered to amend its responses to verify that all available evidence packages have been produced. To the extent that 300,000 evidence packages corresponding to notices do not exist, Charter is entitled to address this issue in depositions.**

### B. Audible Magic Data

Charter also argues that the spreadsheet produced by MarkMonitor as MM_000096 "appears to be a duplicate of the spreadsheet produced by Plaintiffs as PL_CH_0003189, which purports to contain data received by MarkMonitor from Audible Magic." Sept. 25, 2020 Email from S. Anderson. Charter argues that "both spreadsheets are missing a number of types of data that the Audible Magic document production shows to have been sent by Audible Magic to MarkMonitor." *Id.* (citing Charter Motion, at 10). "Among the missing categories of data ███ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████." *Id.* Charter therefore asks that MarkMonitor "either produce this data or acknowledge that it did not retain this information and explain the circumstances under which it disappeared." *Id.*

MarkMonitor responded that it will "follow up on its prior diligent search and reasonable inquiry to ascertain whether it is in possession, custody or control of any additional non-privileged documents that may be responsive to a reasonable interpretation of Charter's various requests on this issue. However, at this juncture, it is MarkMonitor's understanding and belief that there are no additional non-privileged documents to produce or that are being withheld on the basis of any privilege." Sept. 30, 2020 Email from A. Castricone.

I appreciate MarkMonitor's willingness to respond to Charter's concern. I also believe that Charter is entitled to the information that it seeks, or, in the alternative, to a verified response that the information does not exist.

**MarkMonitor is therefore ordered to produce the data sought by Charter. If the data does not exist, MarkMonitor shall amend its response to verify that all available data has been produced. If documents or information is being withheld for any reason, MarkMonitor shall include the withheld documents or information on a privilege log. To the extent that the information does not exist, Charter may address that issue in depositions.**

### C. Documents Referenced In The 2016 RIAA/MarkMonitor Agreement

Charter finally argues that MarkMonitor has not yet produced documents referenced in the 2016 RIAA/MarkMonitor Agreement. Aug. 28, 2020 Letter from J. Golinveaux at 1-2. Charter has also sought the production of such documents from the Plaintiffs. As set forth in my August 12, 2020 Order, ECF 230, the 2016 Agreement states that the RIAA was to provide MarkMonitor (1) "with a list of up to 7200 hashes" which MarkMonitor was supposed to try to download from the Internet. For the files successfully located, (2) "those files [were to] be processed against

Audible Magic fingerprinting for identification and verification," (3) "MarkMonitor will record packet capture logs to track when and where the files associated with these hashes are downloaded," and (4) "MarkMonitor will deliver a copy of the files downloaded and associated logs/backup material to RIAA." The 2016 RIAA/MM Agreement also states that, (5) "MarkMonitor will provide a report in Excel format to show a list of all successfully downloaded files associated with those hashes with the individual audio tracks extracted to show the full volume of audio tracks." ECF 230 at 26-27.

In response to Charter's motion to compel the Plaintiffs to produce this information, Plaintiffs argued that communications related to the agreement were primarily between RIAA, MarkMonitor, and outside counsel at Oppenheim and Zebrak ("O+Z"). *Id.* at 28. Plaintiffs argued that requiring the production of the requested information would require a search of O+Z's custodial documents, which I declined to order. Instead, I ordered that any such documents in the *Plaintiffs'* custody or control be produced. Consistent with that ruling, I find that Charter is entitled to the documents referenced in the 2016 RIAA/MarkMonitor Agreement that are in MarkMonitor's possession, custody, or control.

**MarkMonitor is therefore ordered to produce the documents referenced in the Agreement. To the extent that MarkMonitor is withholding any responsive documents on the basis of any privilege, it shall include such documents on a privilege log.**

## X.   CONCLUSION

While MarkMonitor is a third party in this matter, it has played the key role in collecting the evidence that forms the basis of Plaintiffs' Complaint. Charter is entitled to the relevant

documents and is further entitled to complete and accurate responses to its document requests. Charter is also entitled to know whether documents are being withheld on any basis, and it is finally entitled to a log identifying the withheld documents and the basis for withholding them.

Dated this 5th day of October, 2020                     BY THE SPECIAL MASTER:


/s/ Regina M. Rodriguez
Regina M. Rodriguez
Special Master