IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

    Plaintiffs,

v.

BRIGHT HOUSE NETWORKS, LLC

    Defendant.

Case No. 8:19-cv-710-MSS-TGW

## DECLARATION OF CODY HARRISON

I, Cody Harrison, declare as follows:

1.    I am Vice President and Associate General Counsel at Charter Communications, Inc. ("Charter"), a position I have held since 2018. From 2003 to August 2018, I was a Senior Corporate Attorney in the legal department of Advance Publications, Inc., which was the parent company of Bright House Networks ("Bright House") during the Claim Period in this case. In this role, one of my responsibilities was to keep abreast of discussions among industry participants about the Copyright Alert System ("CAS"). For a portion of this time period, I was a Partner in the law firm Sabin, Bermant & Gould LLP, which was a captive law firm that operated as in-house counsel for Advance Publications, Inc. My role included serving as Counsel to Bright House during the Claim Period. In the course of my duties, I have become familiar with Bright House's business generally, Bright House's involvement with CAS, and Bright House's notice processing and anti-infringement program.

1

2. I submit this declaration in support of Bright House's Motion for Summary Judgment. I have personal knowledge of the facts stated in this declaration, and if called upon as a witness, I could and would competently testify thereto. Unless otherwise noted, the information contained in the declaration below pertains generally to the period from March 2013 through May 2016.

3. Bright House's program for addressing allegations that its subscribers engaged in copyright infringement on the Internet was modeled on the widely known industry best practices at the time known as the Copyright Alert System or "CAS." CAS was created by members of the movie, television, music and Internet service provider ("ISP") communities and was described as a common framework to educate and notify Internet subscribers when their Internet service accounts are implicated in alleged copyright infringement. I personally participated in many discussions among industry participants about the CAS program.

4. The goal of CAS was for rightsholders and ISPs to work together to reduce copyright infringement on the Internet. It was widely understood by industry participants at the time that the foundation of the CAS program was customer education, and that it was based on data suggesting that once informed about the alleged content theft and its possible consequences, most Internet subscribers would take steps to ensure that the theft didn't happen again.

5. Terminating customer accounts based solely on the receipt of repeated notices of alleged infringement was not required by CAS. The participants in CAS recognized that subscribers may not even be aware that their Internet connection was

used to allegedly infringe copyrights. Rather than punish customers for alleged acts of infringement, CAS required that ISPs alert customers of possible unlawful infringement, educate them on how to prevent such activity from happening again, and provide information about the growing number of ways to access digital content legally.

6. Under the CAS program, ISPs were not required to process every notice sent to them by rightsholders. Rather, ISPs could choose to set a monthly limit on the number of notices it processed per month. For example, Bright House had regular discussions with Time Warner Cable, which participated in CAS and employed a limit on the number of notices it processed. Consistent with the protocol of the CAS program, Bright House also limited the number of notices it processed per month.

7. Although Bright House was not itself an official participant in the CAS program, Bright House's processes for addressing allegations of infringement closely tracked the protocols used by CAS, and its methods were the same: reducing alleged copyright infringement online through customer education and awareness, not termination.

8. During the Claim Period in this case, anti-infringement programs modeled after CAS were employed by most major ISPs in the country.

9. Like CAS, Bright House's anti-infringement program was a graduated response system, which included a series of six steps to alert subscribers of notices and educate them on copyright infringement. Both CAS's and Bright House's anti-infringement programs included email alerts and warnings meant to educate

subscribers about copyright infringement and the allegations in notices from rightsholders, including a statement that any infringing activity violated the ISP's (here Bright House's) Acceptable Use Policy, and both programs used quarantines that would temporarily prevent subscribers from accessing the Internet. Customer accounts were not terminated under the CAS program, or under Bright House's program for most of the Claim Period.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 11th day of January, 2022, at Stamford, Connecticut.

_____
Cody Harrison