UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UMG RECORDINGS, INC. *et al.*,

    Plaintiffs,

    v.

BRIGHT HOUSE NETWORKS, LLC,

    Defendant.

Case No. 8:19-cv-710-MSS-TGW

**PLAINTIFFS' OPPOSITION TO BRIGHT HOUSE'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF TERRENCE P. MCGARTY**

This case puts the operations of Bright House Networks ("BHN")—one of the one of the largest telecommunications companies in the country during the relevant time—in the crosshairs. Yet the average juror is undoubtedly unfamiliar with the details of how the telecommunications industry operates. To assist the jury in understanding the evidence regarding BHN's operations and contextualizing BHN's actions, Plaintiffs have proffered as an expert Dr. Terrence P. McGarty.

Dr. McGarty holds a Ph.D. in Electrical Engineering and Computer Science from the Massachusetts Institute of Technology and has spent more than 40 years in the telecommunications industry in a range of management and operations roles. Mot. Ex. A ¶¶ 1-8 ("McGarty Rept."). Based on his extensive experience in the industry, Dr. McGarty opines regarding technology BHN could have used to monitor repeat infringers. Dr. McGarty also offers, based on his experience, a

framework for how industry participants approach compliance issues, and evaluates BHN's conduct under that framework.

BHN's motion to exclude Dr. McGarty's opinions mischaracterizes Dr. McGarty's opinions and relevant facts and misstates the relevant law. BHN fails to engage with the actual substance of Dr. McGarty's opinions. BHN incorrectly imports requirements into the legal standard to argue Dr. McGarty lacks qualifications, and wrongly argues that the law does not permit his testimony. In accord with established legal precedent, Dr. McGarty's experience qualifies him to offer his opinions, and he reliably applies his experience to the facts, which will aid the jury in understanding complex issues. Accordingly, BHN's motion should be denied.

### I. Dr. McGarty is qualified to offer opinions regarding deep packet inspection technology.

BHN argues that Dr. McGarty should not be permitted to testify on the use of deep packet inspection ("DPI") technology because, BHN claims, he "is not qualified to testify regarding DPI, has no expertise in the peer-to-peer protocols at issue in this case, and admitted that he did not evaluate whether any of the technology at issue would actually work on BHN's network." Mot. 5. BHN is wrong. Dr. McGarty's industry experience, as well as his specific experience with DPI, render him well-qualified to testify on this issue.

2

### A. Dr. McGarty explains how BHN could have used DPI technology to monitor repeat infringers' activity.

DPI is a technology that "allows network managers to collect and analyze a variety of statistics" regarding the data packets being transmitted on a network. McGarty Rept. ¶ 39.  By "enabl[ing] the examination of information regarding data packets such as sources, destinations, time, and length," DPI "allows an ISP to monitor the traffic on its network associated with peer-to-peer protocols." *Id.* Understanding DPI is important because it bears on BHN's ability to corroborate peer-to-peer ("P2P") infringement on its network.

Dr. McGarty's extensive telecommunications industry experience includes founding and serving as Chief Executive for a decade of Zephyr Telecommunications, Inc., one of the largest IP voice and data networks in Central and Eastern Europe, where Dr. McGarty was responsible for the design, development, deployment, and operation of Zephyr's network.  *Id.* ¶ 7.  While Dr. McGarty was running Zephyr, Zephyr deployed DPI technology across its network.  Mot. Ex. B 44:6-22.

Based on his telecommunications industry experience and his experience deploying DPI, Dr. McGarty offers several opinions regarding DPI that will assist the jury.  First, Dr. McGarty explains, from a network operator's perspective, what DPI is and how it works, what DPI's capabilities are, and how network operators use DPI.  McGarty Rept. ¶¶ 38-39.  Second, Dr. McGarty ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 40-42.  Third, Dr. McGarty opines

that BHN could have used DPI to monitor the activity of repeat copyright infringers. *Id.* ¶ 43. In this regard, Dr. McGarty opines that, "[t]o the extent BHN was concerned about the accuracy of DMCA notices for particular repeat infringers, it could have utilized DPI technology as a corroborative tool to monitor the infringing subscriber's traffic for continued use of peer-to-peer applications." *Id.*

### B. Dr. McGarty's experience employing DPI technology qualifies him to opine on BHN's use of that technology.

Dr. McGarty easily possesses the necessary "scientific, technical, or other specialized knowledge" to testify about an ISP's use of DPI. Fed. R. Evid. 702(a). The Court's examination of an expert's qualifications "is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Delta T, LLC v. Dan's Fan City, Inc.*, 2021 WL 458022, at *2 (M.D. Fla. Feb. 9, 2021) (quotations omitted). Dr. McGarty has decades of experience operating and managing telecommunications networks and has actually run a telecommunications network that used DPI. McGarty Rept. ¶¶ 1-8. This experience sufficiently qualifies him to provide opinion testimony that will assist the jury regarding an ISP's use of DPI.

BHN's criticisms of Dr. McGarty's credentials fail to undermine his qualifications. BHN's complaint that Dr. McGarty has no experience implementing DPI across a network like BHN's ignores Dr. McGarty's actual experience implementing DPI across a large network. BHN's only argument for why Dr. McGarty's experience is not applicable to BHN is that his experience involved

4

"early versions of DPI deployed on a European network from 1998 to 2004 . . . ." Mot. 6 (internal quotation marks omitted). But BHN cannot explain why any of these factors render Dr. McGarty unqualified, and BHN is free to cross-examine on the point.

As Dr. McGarty explained at his deposition, while certain aspects of DPI technology may have improved from 1998-04 to the Claim Period, "[a]s I am aware, having keeping touch with the technology changes, effectively, there's been really no fundamental groundbreaking change in DPI. So that my early understanding having developed and deployed it I think gives me a sense of understanding of how DPI functions and what it can do and how it can operate." Mot. Ex. B 44:6-22. While BHN emptily suggests DPI technology "ha[s] been evolving for over ten years," Mot. 6, BHN identifies no significant differences between "early versions of DPI" in use between 1998 and 2004 and the versions of DPI in use during the Claim Period that would render Dr. McGarty's experience inapplicable. Nor does BHN offer any reason why the fact that Dr. McGarty's experience was in Europe, while BHN is America, makes any difference.

BHN is also wrong that Dr. McGarty "made no effort to understand ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Mot. 6. To the contrary, Dr. McGarty's report ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. McGarty Rept. ¶¶ 38-44. Dr. McGarty's testimony that BHN cites shows only that Dr. McGarty is not opining on the details

5

of how, within the specific architecture of BHN's network, BHN would have physically implemented DPI. Further, BHN misunderstands Dr. McGarty's opinion in arguing that Dr. McGarty has "no knowledge regarding whether BHN was actually capable of implementing [DPI] *across its network*." Mot. 7 (emphasis added). Dr. McGarty explained that, to use DPI to monitor a repeat infringer's activity, "BHN would not need to analyze every subscriber's data use," McGarty Rept. ¶ 44, and therefore would not need to implement DPI across its entire network.

BHN criticizes Dr. McGarty's lack of expertise regarding the P2P protocols at issue in this case, but nothing about Dr. McGarty's opinions regarding DPI requires such expertise or turns on the details of how those specific P2P protocols function. Similarly, while Dr. McGarty does not purport to have detailed expertise regarding Sandvine or Deepfield, ███████████████████████████████ he does not need it: nothing in his opinions turns specifically on the details of Sandvine's or Deepfield's technologies as distinct from monitoring technologies generally.

## II. Dr. McGarty's compliance framework for telecommunications companies and conclusion that BHN's conduct did not satisfy that framework are admissible.

BHN urges this Court to exclude the illustrative framework Dr. McGarty puts forward, wrongly arguing that it lacks a reliable methodology and that his opinions are an improper legal opinion. Mot. 9-15. These arguments ignore Dr. McGarty's extensive expertise and mischaracterize his analysis.

### A. Dr. McGarty's evaluation of BHN's conduct under an illustrative compliance framework will assist the jury.

Based on his decades of experience as a telecommunications executive responsible for legal and regulatory compliance issues, Dr. McGarty offers "an illustrative framework that I have followed in my prior experiences of developing business policies and procedures to comply with legal and regulatory standards." McGarty Rept. ¶¶ 1-7, 23.  This framework includes such steps as: obtain advice from attorneys; develop written policies and procedures; develop systems to implement those policies; communicate the policies to employees and customers; create systems to monitor policy compliance; impose consequences for compliance failures that will affect behavior; and continually audit compliance performance.  *Id.* ¶ 23.  Notably, Dr. McGarty does *not* opine that the law requires complying with this framework.  Nor does Dr. McGarty opine that this framework is the only way a company can comply with legal standards.

Dr. McGarty then opines that BHN's efforts to comply with the DMCA did not satisfy this framework in several ways.  *Id.* ¶¶ 65-66.  BHN's practice of ignoring most notices it received prevented BHN from identifying customers' compliance failures and notifying those customers of those compliance failures.  *Id.* ¶ 65.  By hardly ever terminating repeat infringers, BHN "failed to develop systems that would ensure implementation of its policies" and "chose not to take any remedial action." *Id.*  And, despite these glaring weaknesses in its policy, BHN did not update its policies for several years.  *Id.*

### B. Dr. McGarty's experience qualifies him to opine on a compliance framework for telecommunications companies.

BHN's argument that Dr. McGarty is not qualified to offer this testimony ignores Dr. McGarty's extensive telecommunications compliance experience. BHN objects that Dr. McGarty lacks specialized expertise specific to copyright compliance, Mot. 9, but the law does not require such specialized expertise. "An expert may testify regarding narrow sub-topics within his broader expertise—notwithstanding a lack of specific experience within the narrower area—as long as his testimony would still assist the trier of fact." *Remington v. Newbridge Secs. Corp.*, 2014 WL 505153, at *4 (S.D. Fla. Feb. 7, 2014). Dr. McGarty's long experience with telecommunications compliance renders copyright compliance "within the reasonable confines of his subject area" even if he lacks copyright compliance experience specifically. *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008).

Moreover, BHN does not offer any reason why the compliance framework Dr. McGarty puts forward should not apply to copyright compliance. BHN never explains, because it cannot, why implementing a copyright compliance program is sufficiently distinct from other forms of compliance such that the legal compliance framework Dr. McGarty describes is inapplicable. *See Maiz v. Virani*, 253 F.3d 641, 665–66 (11th Cir. 2001) (economic expert was qualified to testify on real-estate fraud damages, even if he lacked specific real-estate experience); *see also Calta v. N. Am. Arms, Inc.*, 2007 WL 4800641, at *6 (M.D. Fla. Nov. 27, 2007) (Scriven, J.) (noting

8

that "an expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case"). The one case BHN cites, *Beam v. McNeilus Truck & Mfg., Inc*, is distinguishable on this basis: in *Beam*, the opinion required cost-benefit analysis of garbage-truck design, implicating industry-specific knowledge, that the proffered expert, a general mechanical engineer, did not have. 697 F. Supp. 2d 1267, 1276 (N.D. Ala. 2010).

### C. Dr. McGarty bases the compliance framework he offers on his professional experience and reliably evaluates BHN's conduct based on the record.

BHN's argument that Dr. McGarty's opinion lacks a reliable basis misconstrues the relevant standard. BHN argues that Dr. McGarty "provides no academic support," and BHN claims his framework "has never been tested[,] . . . has not been subjected to peer review or publication, and is not generally accepted." Mot. 11. But "[s]ome types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise." Fed. R. Evid. 702 advisory comm. note (2000). Indeed, the Eleventh Circuit has rejected BHN's argument that "testimony is not reliable because it is based largely on [an expert's] personal experience rather than verifiable testing or studies," instead holding that "there is no question that an expert may still properly base his testimony on 'professional study or *personal experience*.'" *Maiz*, 253 F.3d at 669 (emphasis added) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999)); *see also United States v. Brown*, 415

9

F.3d 1257, 1268 (11th Cir. 2005) (holding expert testimony can still be admissible even if it "does not meet all or most of the *Daubert* factors" that BHN cites).

Dr. McGarty's opinion is based on his knowledge from decades as a telecommunications executive responsible for compliance, which he then applies to the facts of the case, and so it satisfies the standard for reliability.[1] Courts routinely permit expert testimony in these circumstances, as it is well established that "[a]n expert may [] testify as to the customary practices in a profession or industry." *In re Covington Lodging Inc.*, 2021 WL 2492849, at *2 (Bankr. N.D. Ga. June 17, 2021); *Clarke v. Healthsouth Corp.*, 2021 WL 129821, at *6 (M.D. Fla. Jan. 14, 2021) ("Expert testimony on industry standards is common fare in civil litigation." (quoting *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 79 (1st Cir. 2006)). As one recent case in this district aptly put it:

> [A]n expert may offer reliable testimony by (1) explaining what she knows of [] industry standards and practices based on her experience, (2) explaining the facts and evidence she reviewed in the case, and (3) then opining on the ways she believes [a party's] conduct fell short of, or satisfied, the relevant industry standards (as she understands them).

*Houston Specialty Ins. Co. v. Vaughn*, 2017 WL 11415011, at *3 (M.D. Fla. Apr. 13, 2017).

Following this principle, *Pacinelli v. Carnival Corp.* held an expert's opinion reliable where the expert "has the experience to opine on whether [the defendant]

---

[1] On this point, Dr. McGarty's opinion crucially differs from Bright House's expert Wayne Coleman, who failed to apply his experience to the facts of the case and offered only vague statements without citing any specific supporting facts or data. *See* Pls.' Mot. to Exclude Opinions and Testimony of Wayne C. Coleman 14-16, 20-22.

met industry standards" and the expert "relied on sworn testimony in the record to develop his opinion that [industry standards] may not have been followed." 2019 WL 3252133, at *4 (S.D. Fla. July 19, 2019); *see also Clarke*, 2021 WL 129821, at *4 (expert's opinion based on experience had "adequate factual basis" where expert relied on "specific emails between [defendant's] staff, Powerpoint presentations disseminated by [defendant], and internal [defendant] documents"); *Washington v. City of Waldo, Fla.*, 2016 WL 3545909, at *3 (N.D. Fla. Mar. 1, 2016) (holding "nothing inherently unreliable about this methodology" where expert used his "experience, knowledge, and training" and "evaluated the facts of the instant case to form his opinions")

BHN's attack on Dr. McGarty for not conducting "any independent inquiry or investigation into BHN's actual practices or procedures," Mot. 11, is unavailing. Dr. McGarty properly relied on BHN's documents and testimony developed through discovery that describe BHN's policies and procedures. BHN cites no authority for its suggestion that an expert must collect facts through an independent investigation that is separate from and in addition to the parties' discovery, because there is no such requirement, for obvious reasons. *See Houston Specialty Ins. Co.*, 2017 WL 11415011, at *3. ("[I]t is difficult to think of any facts or data that an expert could reasonably refer to, other than the underlying litigation files . . . and experiential knowledge, in forming her opinions in this case.").

While BHN complains that Dr. McGarty "rel[ied] only on the materials provided to him by his attorneys," *id.*, BHN does not identify *any* relevant evidence

11

regarding BHN's actual practices or procedures that Dr. McGarty failed to consider.[2] For example, BHN criticizes Dr. McGarty for relying on discovery materials to conclude that BHN did not conduct any audits, *id.* 11-12, but cites no evidence Dr. McGarty failed to consider showing that BHN actually did conduct any audits.

Nor does Dr. McGarty's analysis need to incorporate the practices of other ISPs for his opinions to be reliable. Dr. McGarty bases the compliance framework he describes on his extensive experience in the field. McGarty Rept. ¶¶ 1-7, 23. He then evaluates whether BHN's conduct complied with that framework. *Id.* ¶ 65. Whether other ISPs may or may not have complied with Dr. McGarty's framework is not relevant to this analysis, and BHN never explains otherwise. Further, where a party objects, not to an expert's underlying method, but to the data the expert considered in employing that method, the challenge goes to the weight of the evidence and not to its admissibility. *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK, Ltd.*, 326 F.3d 1333, 1343-46 (11th Cir. 2003) (distinguishing between reliability of methodology and reliability of conclusions based on reliable methodology but flawed inputted data and holding that "the identification of [the latter] is precisely the role of cross-examination").

---

[2] BHN's claim that "Plaintiffs' counsel repeatedly instructed Dr. McGarty not to answer questions at deposition regarding whether or not he had the *ability* to request additional materials that he thought might be helpful to inform his opinions," Mot. 12 n.3 (emphasis added), mischaracterizes the record. Plaintiffs' counsel properly instructed Dr. McGarty not to answer questions seeking testimony regarding *communications* between Dr. McGarty and Plaintiffs' counsel that Fed. R. Civ. P. 26(b)(4)(C) protects from disclosure. *See, e.g.*, Mot. Ex. B. 118:23-119:3 (instructing the witness not to answer, "Did you ask your counsel for those documents when preparing your report?").

12

### D. Dr. McGarty neither opines on the reasonableness of BHN's actions nor on the ultimate legal issue.

Dr. McGarty's conclusion that BHN's conduct did not comply with the compliance framework he outlines is admissible because it will assist the jury in evaluating and putting into context BHN's actions. BHN is wrong that Dr. McGarty is opining on the "ultimate legal issue." Mot. 14. The rule against an expert testifying to legal conclusions prevents an expert from "testify[ing] to the legal implications of conduct or tell[ing] the jury what result to reach." *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1128 (11th Cir. 2018) (internal quotation marks omitted). While an expert cannot testify to legal conclusions, "an expert witness may testify as to his opinion on an ultimate issue of fact, so long as the opinion is "based on the personal observations of the witness." *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009) (*quoting Carter v. DecisionOne Corp. Through C.T. Corp. System*, 122 F.3d 997, 1005 (11th Cir.1997). "[T]he pertinent inquiry is whether [the expert's] opinions are admissible factual opinions, or whether they are inadmissible on the grounds that they represent her conclusions as to determinative questions of law in this action." *Feldman v. Target Corp.*, 2021 WL 1172794, at *3 (M.D. Fla. Mar. 29, 2021).

Dr. McGarty satisfies this standard. In opining that BHN's conduct failed to satisfy the compliance framework he outlines, Dr. McGarty does not opine on the legal implications of such a failure. He does not opine that BHN "with knowledge of the infringing activity, induce[d], cause[d] or materially contribute[d] to the

13

infringing conduct of another.'" *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (quoting *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987)). He therefore does not opine on the ultimate legal issue. *See Delatorre*, 308 F. App'x at 383 (holding no "impermissible opinion on an ultimate issue of law" where expert does not directly opine on the legal elements of the claim or offense).

Instead, Dr. McGarty offers an informed perspective on how industry participants approach compliance issues, without opining that the law requires adopting his framework or that his compliance framework is the *only* way to comply with the law. Such testimony does not offend the rule against an expert testifying to the ultimate legal issue. *See Decamp v. State Farm Fire & Cas. Co.*, 2021 WL 4061010, at *4 (M.D. Fla. Sept. 7, 2021) ("opinions on the customs and practices of the [] industry and whether [defendant] complied with those practices . . . will aid the jury" and are not impermissible legal opinion).

BHN is also wrong that that Dr. McGarty opines "that BHN acted unreasonably or improperly." Mot. 15. In offering a compliance framework, Dr. McGarty does not opine that this framework is the *exclusive* framework an ISP *must* adopt when addressing compliance issues. Nor does he opine that BHN's failure to adopt and follow this compliance framework was unreasonable. Dr. McGarty's opinion is limited to presenting a framework as, based on his experience, one viable approach to addressing compliance issues, and showing that BHN did not follow that approach. Dr. McGarty's opinion leaves space for BHN to argue to the jury that its actions were reasonable despite not conforming to the

14

framework presented. His opinion therefore does not improperly invade the province of the jury, and BHN's objections go to weight, not admissibility.

### III. Dr. McGarty's factual analysis contextualizes and supports his opinions and will assist the jury.

BHN's argument that Dr. McGarty's opinions consist of improper factual narrative misstates both the facts and the law. "It is not that an expert witness cannot convey factual narratives to the jury, it is that an expert witness cannot be used *exclusively* for this purpose." *Halaoui v. Renaissance Hotel Operating Co.*, 2015 WL 2250941, at *5 (M.D. Fla. May 13, 2015) (emphasis original). The rule against expert factual narrative is of "limited scope," as an expert can testify to facts that "provide the necessary factual underpinning for his opinions, without which his report would be subject to attack as noncompliant with Rule 26(a)(2)(B)." *FNB Bank v. Park Nat. Corp.*, 996 F. Supp. 2d 1187, 1190 (S.D. Ala. 2014).

Dr. McGarty's discussion and analysis of the facts provide important support and context for his opinions. Dr. McGarty's analysis of BHN's copyright compliance practices, McGarty Rept. ¶¶ 25-35, 45-60, supports his opinions that BHN's practices did not satisfy the compliance framework he describes and that BHN treated copyright violations more leniently than non-payment. *Id.* ¶¶ 61-66. To offer those comparative analyses of BHN's copyright compliance practices, Dr. McGarty first had to analyze what BHN's copyright compliance practices were. Similarly, Dr. McGarty's review of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is context for his opinion that BHN could have used DPI to monitor the activity of repeat infringers.

15

*See Halaoui*, 2015 WL 2250941, at *5 ("Where an expert relies on certain facts or data in forming an opinion, the expert is certainly allowed to explain the basis of his opinion in light of these facts or data."); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 765019, at *44 (N.D. Fla. Feb. 28, 2021) (permitting "factual narrative . . . [that] is necessary to provide the facts supporting [the expert's] opinions" (internal quotation marks omitted)).

This distinguishes Dr. McGarty's opinions from the cases BHN cites, where the expert's factual narrative was not connected to any actual expert opinion. *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding testimony where the expert admitted that "the purpose of this testimony is simply to 'provid[e] an historical commentary of what happened'"); *In re Trasylol Prod. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346-47 (S.D. Fla. 2010) (excluding factual summary where the expert "does not analyze the facts" and "no connection is made" between the facts and the opinion).

In arguing that Dr. McGarty's opinions consist of undisputed factual assertions, Bright house fundamentally mischaracterizes Dr. McGarty's opinions. For example, Dr. McGarty opines not just that "BHN provides high speed internet, which allows its subscribers access to the internet to engage in peer-to-peer activity," Mot. 17, but that "broadband Internet networks such as BHN's provide the *most efficient* means for individuals to distribute copyrighted materials through peer-to-peer systems like BitTorrent" because "the speed and bandwidth that these more advanced networks provide []further *facilitates* the distribution of copyrighted

16

materials." McGarty Rept. ¶ 22 (emphasis added). Similarly, Dr. McGarty opines, not just that "BHN primarily relied on an educational notice program to address copyright infringement on its network," Mot. 17, but that BHN's use of arbitrary caps and grace periods rendered BHN's "claim that it had a six-step graduated response program for copyright infringement violations [] misleading." McGarty Rept. ¶ 45. These statements are self-evidently not the same, and BHN's other characterizations of Dr. McGarty's opinions are equally misleading. BHN cannot rewrite Dr. McGarty's opinions to its liking and then ask the Court to exclude them based on its revisionist account.

BHN also misstates the law. The standard under Fed. R. Evid. 702(a) is whether the expert's opinion "will help the trier of fact to understand the evidence or to determine a fact in issue." As such, courts permit an expert witness to present facts "if [the expert's testimony] concerns matters that are beyond the understanding of the average lay person." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). That is clearly the case here: the average person is undoubtedly unfamiliar with the details of DPI technology or the structures of telecommunications compliance programs, and Dr. McGarty's analysis will help the jury understand and interpret these complex factual issues.

### IV. Dr. McGarty's opinion that BHN handled DMCA notices more leniently than non-payment is relevant and not misleading.

Dr. McGarty opines, based on records BHN produced, that "BHN handled DMCA violations differently, and more leniently, than non-payment by its

17

subscribers. McGarty Rept. ¶¶ 61-64. In particular, BHN disconnected tens of thousands of subscribers every month for non-payment. *Id.* ¶ 62. As a result, Dr. McGarty "concludes that "BHN clearly had the means to disconnect far more subscribers for repeated DMCA violations, but chose to sanction only a small fraction of offenders . . . ." *Id.*

This opinion is clearly relevant, as it establishes BHN's ability to terminate subscribers who do not comply with BHN's policies, a key issue. It also rebuts the arguments of BHN's experts that internet access is a "fundamental human right required to ensure dissemination of information, the availability of education, access to support communities and potentially lifesaving information, and economic opportunities." *See* Pls. Mot. to Exclude Certain Opinions and Testimony of Dr. Kevin C. Almeroth Ex. 1 ¶ 114 (Expert Report of Dr. Kevin C. Almeroth); Pls. Mot. to Exclude Certain Opinions and Testimony of Dr. Aram Sinnreich Ex. 1 29-30 (Expert Rept. of Dr. Aram Sinnreich) (opining that "internet access is a vital public resource" such that termination is a "disproportionate response"). If internet access really is a fundamental human right, as BHN's experts claim, then BHN denies thousands of people their fundamental rights every month by terminating their internet access.

Dr. McGarty's opinion will not mislead the jury. "[T]he ability of these Rule 403 dangers to outweigh substantially the probative force of the evidence is quite slim where the evidence itself is undeniably probative of a central issue in the case." *United States v. 0.161 Acres of Land, more or less, situated in City of Birmingham, Jefferson*

*Cty., Ala.,* 837 F.2d 1036, 1041 (11th Cir. 1988).  The only reasons BHN argues Dr. McGarty's opinion is misleading is that disconnecting for non-payment is a "standard practice" while copyright notices are "third-party allegations regarding unverifiable subscriber behavior."  Mot. 20.  Even if BHN's characterization of DMCA notices were accurate (and it is not), BHN never explains, because it cannot, how these points render Dr. McGarty's comparison so misleading that it must be excluded.  Instead, "[w]ise courts prefer to let the adversary system cure the problem of misleading evidence," 22A Kenneth W. Graham, Jr., Fed. Prac. & Proc. Evid. § 5217 (2d ed.), because "[w]hether [a witness's] testimony will be persuasive is for the jury."  *United States v. Roark*, 753 F.2d 991, 994 (11th Cir. 1985).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court deny BHN's motion to exclude the opinions and testimony of Terrence P. McGarty in its entirety.

Dated:  February 14, 2022

*/s/ Jeffrey M. Gould*

| | |
|---|---|
| Jonathan M. Sperling (pro hac vice)<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>jsperling@cov.com<br><br>Neema T. Sahni (pro hac vice)<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Ste 3500<br>Los Angeles, CA 90067-4643 | Matthew J. Oppenheim (pro hac vice)<br>Jeffrey M. Gould (pro hac vice)<br>Alexander Kaplan (pro hac vice)<br>Corey Miller (pro hac vice)<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 621-9027<br>matt@oandzlaw.com<br>jeff@oandzlaw.com<br>alex@oandzlaw.com<br>corey@oandzlaw.com |

Telephone: (424) 332-4800
nsahni@cov.com

*Attorneys for Plaintiffs*

**Certificate of Service:** I certify that on Feb. 14, 2022, the foregoing document and supporting materials were served by email on counsel of record for defendant.

*/s/ Jeffrey M. Gould*