UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UMG RECORDINGS, INC.,** *et al.***,**

    **Plaintiffs,**

**v.**                                                                         Case No: 8:19-cv-710-MSS-TGW

**BRIGHT HOUSE NETWORKS,
LLC.,**

    **Defendants.**

_____

## ORDER

On May 25, 2022, and May 26, 2022, the Court held a hearing on Plaintiffs' Motion to Strike Portions of the Declarations of Duncan Hall, Timothy Frendberg, and Andrew Schapiro, (Dkt. 483), Plaintiffs' Motion to Strike Portions of the Opposition Declarations of Duncan Hall, Timothy Frendberg, and Andrew Schapiro, (Dkt. 519), Plaintiffs' Motion to Exclude Certain Opinions and Testimony of Dr. Aram Sinnreich, (Dkt. 590), Bright House's Motion to Exclude the Opinions and Testimony of On Amir, (Dkt. 578), Bright House's Motion to Exclude the Opinions and Testimony of Barbara Frederiksen-Cross, (Dkt. 579), Plaintiffs' Motion to Exclude the Testimony and Opinions of Dr. Sandeep Chatterjee, (Dkt. 585), Bright House's Motion to Exclude the Opinions and Testimony of Kristofer Buchan, (Dkt. 580), Plaintiffs' Motion to Exclude or Limit Expert Testimony of Dr. Karl N. Snow, (Dkt. 588), Bright House's Motion to Exclude the Opinions and Testimony of Paul Geluso and the "Listeners", (Dkt. 586), Plaintiffs' Motion to Exclude Certain

Opinions and Testimony of Dr. Kevin Almeroth, (Dkt. 582), Bright House's Motion to Exclude the Opinions and Testimony of Harold Furchtgott-Roth. (Dkt. 583) For the reasons set forth on the record at the hearing, the Court hereby **ORDERS** as follows:

1. Plaintiffs' Motion to Strike Portions of the Declarations of Duncan Hall, Timothy Frendberg, and Andrew Schapiro, (Dkt. 483), and Plaintiffs' Motion to Strike Portions of the Opposition Declarations of Duncan Hall, Timothy Frendberg, and Andrew Schapiro, (Dkt. 519), are **DENIED**. As explained on the Record, the Court, in considering the Parties' motions for summary judgment, will excise any portion of Shapiro's declaration that exceeds summary and descriptiveness.

2. Plaintiffs' Motion to Exclude Certain Opinions and Testimony of Dr. Aram Sinnreich, (Dkt. 590), is **DENIED IN LARGE PART, GRANTED IN LIMITED PART**. The extent to which Dr. Sinnreich will be allowed to testify about the music industry being exploitative of creative labor will be driven largely by any primary argument that the Plaintiffs are altruistic, paternalistic entities seeking to protect the interests of creative labor. As explained at the hearing, with respect to Dr. Chatterjee's ability to testify about the International Sound Recording Codes ("ISRCs"), the Court takes that question under advisement. The Court will reconsider any request as to that aspect of the opinion if he is asked about those questions. Additionally, on further

consideration, the Court **GRANTS** Plaintiffs' motion to preclude Dr. Sinnreich from testifying that termination is an unnecessary and disproportionate response to *demonstrated* infringement. He offers no basis for that opinion, and it runs counter to the instructions the jury will be given if it finds proof of infringement. He may testify that it would be disproportionate to *allegations of possible* infringement if that opinion is preserved in his report.

3. Bright House's Motion to Exclude the Opinions and Testimony of Professor On Amir, (Dkt. 578), is **GRANTED**. On Amir's opinion analyzes the survey research conducted and explained in the two Jupiter Research Reports cited in Dr. Sinnreich's Report and criticizes the reliability of Dr. Sinnreich's conclusions. However, On Amir acknowledges that he never reviewed the surveys. His conclusions about the surveys are all based on assumptions about how the surveys were conducted. Just by way of example, On Amir claims that "[t]he Jupiter Research Reports reflect self-reported data on respondents' behaviors and purchasing decisions[,]" and that "[i]t is unclear whether the Jupiter Research surveys were conducted according to survey best practices." (On Amir Expert Report at ¶ 11) Yet, he cannot verify the accuracy of these criticisms of the underlying surveys because he admits that he never reviewed the survey instruments or protocols. Consequently, the Court finds that he has no basis to offer such opinions on the record.

4. Bright House's Motion to Exclude the Opinions and Testimony of Barbara Frederiksen-Cross, (Dkt. 579), is **GRANTED IN PART AND DENIED IN**

**PART**. The Court finds that Ms. Frederiksen-Cross' lack of a Ph.D., Master's, B.A., or B.S. does not preclude her from offering expert opinions, based on her extensive practical experience. See United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004) (explaining that Fed. R. Evid. 702 provides that "experience in a field may offer another [aside from scientific training or education] path to expert status"). However, the Court will not permit her to rely on unverified hearsay comprised of alleged statements of interested parties and witnesses. Plaintiff will need to authenticate/offer the statements and conversations on which she relies to form her expert opinion. Additionally, Plaintiffs will need to sanitize Ms. Frederiksen-Cross's report of the use of infringement, infringing, abusers, repeat infringers, piracy or other similar language as she concedes she is not offering an opinion on infringement. Finally, the witness will not be allowed to testify as to any review of "portions of Mark Monitor's source code [that] were located after the date of [her] initial expert report." (146:21–148:4) The expert report has not been amended to reflect any such opinions, and the deadlines for expert discovery have expired.

5. Plaintiffs' Motion to Exclude the Testimony and Opinions of Dr. Sandeep Chatterjee, (Dkt. 585), is **DENIED**. He is qualified to issue opinions on all issues for which he is proffered. As explained at the hearing, with respect to Dr. Chatterjee's ability to testify about the International Sound Recording Codes ("ISRCs"), the Court will reconsider any request as to that aspect of the opinion if he is asked those questions at trial.

6. Bright House's Motion to Exclude the Opinions and Testimony of Kristofer Buchan, (Dkt. 580), is **DENIED**. Buchan will be allowed to testify with the limitations in the stipulation agreed to between the Parties: (1) Plaintiffs will sanitize Buchan's Report and (all others) relating to his use of "piracy", "infringed" or "infringers" or "repeat infringers"; and (2) Plaintiff will withdraw paragraphs 19 through 23 and paragraphs 28 and 29 from Buchan's Report. The **Parties** are **DIRECTED** to provide the Court with jointly proposed jury instructions, in advance of Buchan's testimony, that explain the significance and limitations of Buchan's use of three Work-in-Suit Notices in his analysis. Specifically, these instructions must explain that Buchan was instructed by counsel to use the receipt of three notices as a threshold for his analysis. The receipt of three notices does not necessarily equate to imputing Bright House with knowledge of alleged infringement and is a finding the jury is to consider based on the evidence offered at trial and the law as instructed by the Court.

7. Plaintiffs' Motion to Exclude or Limit Expert Testimony of Dr. Karl N. Snow, (Dkt. 588), is **DENIED**. The Court finds, however, that the last sentence of paragraph 68 of Dr. Snow's Report, "[snapshots taken by MarkMonitor of the torrent appearing on a device connected to that subscriber's network] do not necessarily imply multiple (or even any) distributions by the subscriber, nor do they necessarily reflect any additional actions taken by the subscriber between two consecutive detections," is outside his purview of knowledge and he should

not be asked about it or provide an opinion about it at trial. (Snow Expert Report at ¶ 68)

8. Bright House's Motion to Exclude the Opinions and Testimony of Paul Geluso and the "Listeners", (Dkt. 586), is **DENIED** without Prejudice subject to the Court's resolution of the admissibility of an attestation from Epiq that the files marked with <u>Charter</u> bates numbers are the same files as the ones at issue in the Bright House case. The Court additionally reserves on the ultimate admissibility of this testimony subject to a factual showing that the files reviewed by Geluso's team adequately replicate the hash texts associated with the notices provided to Bright House customers from RIAA between 2012 and 2015. Specifically, Plaintiffs claim they will proffer fact witnesses to lay a proper foundation that these files are sufficiently representative of the original hash texts associated with the inquiries of Bright House customers whose alleged infringing material was never downloaded and saved, or otherwise verified except by comparison to hash texts that appear to have been lost at some point and then recompiled in 2016.

9. Plaintiffs' Motion to Exclude Certain Opinions and Testimony of Dr. Kevin Almeroth, (Dkt. 582), is **DENIED IN PART AND GRANTED IN PART.** It is **DENIED** as to (i) his opinion about the feasibility and technical feasibility of the measures proposed by Dr. McGarty and Ms. Frederiksen-Cross, if they are called to testify on those points, (ii) his understanding of Bright House's technical capability as informed by others, whose testimony is properly elicited

or presented on the record, (iii) his testimony as to net neutrality implications as they existed in the time period that is relevant, without regard to changes and modifications in law, and (iv) his testimony about the importance of the internet to provide context for his testimony. Plaintiff's Motion is **GRANTED** as to Almeroth's proposed testimony relating to the human rights violations or implications in footnote 40 of his expert report because, if it is relevant at all, it would be overly prejudicial.

10.   Bright House's Motion to Exclude the Opinions and Testimony of Harold Furchtgott-Roth, (Dkt. 583), is **GRANTED IN PART**. Dr. Furchtgott-Roth will not be permitted to testify to the estimated total revenue [value redacted for confidentiality but found at page 15 of redacted Bright House's Motion to Exclude the Opinions and Testimony of Harold Furchtgott-Roth (Dkt. 583)] realized from the 45,889 subscribers who were the subject of at least three Digital Millennium Copyright Act ("DMCA") Notices. (Dr. Furchtgott-Roth Expert Report at ¶¶ 65–66) This total revenue number has no relevance to this case because these subscribers received notices from "any source" (i.e., other unrelated ISP providers such as Comcast, Time Warner Cable, etc.), and, unless demonstrated otherwise, Plaintiffs will not be providing evidence of these subscribers' infringement. Any marginal relevance of realized revenue from subscribers who received notices from *any* source is substantially outweighed by the risk of unfair prejudice associated with such testimony. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is

substantially outweighed by a danger of one or more of the following: unfair prejudice…"). Similarly, Dr. Furchtgott-Roth will not be permitted to testify about the estimated total revenue realized from the 21,874 Bright House subscribers "who were the subject of *an* RIAA notice." (Id. at ¶¶ 65–66) (emphasis added) [value redacted for confidentiality but found at page 32 of Exhibit A to redacted Bright House's Motion to Exclude the Opinions and Testimony of Harold Furchtgott-Roth, (Dkt. 583)] It is the Court's understanding that Plaintiffs are only making claims of, and will only be offering evidence of, infringement for those subscribers who received at least three RIAA notices. Unless Plaintiffs intend to do otherwise, testimony about alleged unrealized profits from anyone who received fewer than three RIAA notices is confusing, highly prejudicial and has marginal relevance. Additionally, Dr. Furchtgott-Roth will not be permitted to quantify Bright House's economic incentive to retain alleged infringing customers based on the value of Charter's purchase of Bright House in 2016 divided by the number of Bright House residential subscribers. (Id. at ¶ 76) [value redacted for confidentiality but found at page 38 of Exhibit A to Bright House's redacted Motion to Exclude the Opinions and Testimony of Harold Furchtgott-Roth, (Dkt. 583)] This calculation improperly applies the valuation of Bright House's *entire* business over the number of residential subscribers to determine the value of retaining residential Bright House subscribers and is not probative of any fact and is unduly prejudicial. Dr. Furchtgott-Roth offers no basis for such a

valuation, nor does Buchan, on whose assumptions he relies for this calculation. The Court **reserves** ruling on the admissibility of Dr. Furchtgott-Roth's opinions relating to the music industry and the impact of P2P sharing. The Court finds that it is not immediately clear that Dr. Furchtgott-Roth has any expertise that would qualify him to render such opinions. (Compare Furchtgott-Roth testimony on direct at 241:3–241:22 to his cross at 265:7-269:23) Therefore, the admissibility of these opinions, if offered at trial, is subject to Plaintiffs' ability to lay a foundation for his qualifications to opine on these subjects.

11. On their stipulation, the Plaintiffs are to sanitize **ALL** reports that invoke terms of "infringement", "infringer", "repeat infringer" and "piracy" from any expert who is not proffered to offer such opinions. The Parties should also understand that expert reports will not be admitted into evidence as substantive evidence but may be relied upon and referred to by the experts to refresh their memory in rendering their testimony. Thus, to sanitize the report is also to instruct the witness not to refer to infringers and the like unless they have been qualified to offer an opinion on that issue as set forth above.

**DONE** and **ORDERED** in Tampa, Florida, this 8th day of June, 2022.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person