IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>　　Plaintiffs,<br><br>v.<br><br>BRIGHT HOUSE NETWORKS, LLC<br><br>　　Defendant. | Case No. 8:19-cv-710-MSS-TGW |

**BRIGHT HOUSE'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING BRIGHT HOUSE'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF HAROLD FURCHTGOTT-ROTH**

At the Court's two-day *Daubert* hearing on May 25-26, 2022, the Court warned the parties that it would not tolerate further motion practice. Undeterred, Plaintiffs now reargue the Court's exclusion of certain of Dr. Furchtgott-Roth's opinions that the Court has already dedicated significant resources to resolving, based on nothing more than their mere disagreement with the Court's decision.

Plaintiffs identify no ground for the Court to grant the "extraordinary remedy" of reconsideration of its June 8, 2022 Order (ECF 638) ("Order"). The Court heard over an hour of Dr. Furchtgott-Roth's live testimony, where he clearly explained—including in response to the Court's own direct questions—that he seeks to quantify Bright House's supposed "economic incentives" to retain allegedly infringing customers based on nothing more than a calculation of Charter's entire purchase price of Bright House divided by the number of subscribers. Contrary to Plaintiffs'

1

suggestion, the Court displayed no lack of "understanding" of these opinions, but instead properly exercised its role as a gatekeeper. Mot. 3. Importantly, Dr. Furchtgott-Roth did not identify *any* instance where such a method for measuring an ISP's "economic incentive" has ever been used. Unhappy with the Court's decision, Plaintiffs offer the same arguments already heard and rejected by the Court, which cannot support reconsideration.

Further, as the Court properly recognized, the only way Dr. Furchtgott-Roth intends to employ his calculation at trial is to multiply his (unreliable) value by the 45,889 Bright House subscribers who received three or more copyright notices from *any* rightsholder—a figure the Court already has ruled is irrelevant and unduly prejudicial to Bright House. Order at 7. This independently warrants exclusion of Dr. Furchtgott-Roth's opinions and denial of Plaintiffs' reconsideration request.

## LEGAL STANDARD

"Reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Sec. & Exch. Comm'n v. Davison*, 2020 WL 10486309, at *1 (M.D. Fla. Dec. 3, 2020) (Scriven, J.). "The burden is upon the movant to establish the extraordinary circumstances supporting reconsideration." *Id.* (quotations omitted). "Reconsideration of an Order is generally only appropriate to (1) account for an intervening change in controlling law; (2) consider newly available evidence; or (3) correct clear error or prevent manifest injustice." *Id.* (quotations omitted).

## ARGUMENT

Plaintiffs do not argue that there has been an intervening change in controlling law or newly available evidence warranting reconsideration. Rather, Plaintiffs' motion is limited to a supposed need to correct "clear error" or prevent "manifest injustice." Mot. 2. Neither "clear error" nor "manifest justice" has occurred.[1] Before issuing its Order on Bright House's motion to exclude, the Court heard over an hour of attorney argument and live testimony from Dr. Furchtgott-Roth, which included a direct examination and a cross-examination, as well as Dr. Furchtgott-Roth's responses to the Court's own questioning.

And, contrary to Plaintiffs' assertion (Mot. 3-4), Bright House *did* challenge Dr. Furchtgott-Roth's calculation that economic incentives can reach a certain value[2] based upon his use of per-customer purchase price. *See* ECF 583 at 18-19 (Mot. to Exclude). Dr. Furchtgott-Roth's method of calculation was covered extensively during his live testimony before the Court, based on questions asked by both the Court and Bright House's counsel. *See* 5/26 Hr'g Tr. at 277:4-281:16. When Plaintiffs' counsel objected to cross-examination by Bright House's counsel challenging this very

---

[1] Plaintiffs' cited authority of a court granting a motion for reconsideration on the basis of "clear error" or "manifest injustice" is inapposite. *See* Mot. 2 (citing *Evergreen Media Holdings, LLC v. Paul Rock Produced, LLC*, 2015 WL 13730160, at *1 (M.D. Fla. Dec. 11, 2015) (reconsidering orders granting parties' motions to compel "to correct manifest injustice" where the parties subsequently "reached a mutually agreeable resolution [to the motions] that was not brought to the Court's attention")).

[2] Specific values that rely upon confidential information have not been included herein in order to avoid burdening the Court with a motion to seal. This value can be found at page 38 of the Furchtgott-Roth Report.

3

method of calculation, arguing that the challenge was not "even raised in the *Daubert*," the Court expressly overruled Plaintiffs' objection. *Id.* at 279:24-280:12. After Bright House's counsel concluded his cross-examination, Plaintiffs made a strategic decision not to re-direct Dr. Furchtgott-Roth on this or any other issue, despite being given an opportunity to do so by the Court. *Id.* at 298:6-12. When the Court provided its view at the end of the hearing that "[i]t is not likely" that Dr. Furchtgott-Roth would be able to provide opinions "measured by the value of the sale of Bright House that included lots of assets besides residential customers … who were infringing" (*id.* at 309:3-16), Plaintiffs made no effort to "correct" the Court at that time. Having heard extensive testimony on Dr. Furchtgott-Roth's method, and having given Plaintiffs the opportunity to re-direct the witness, present oral argument, and express any disagreement with the Court's articulated views, Plaintiffs cannot now be heard to complain that they did not have a fair opportunity to present their arguments. In any event, the Court "must act as gatekeeper to prevent speculative and unreliable 'expert' testimony from reaching the jury." *Lincoln Rock, LLC v. City of Tampa*, 2016 WL 6818959, at *7 (M.D. Fla. Nov. 18, 2016). The Court properly did so here, and on a robust evidentiary record.

Importantly, Plaintiffs identify no "clear error" or "manifest injustice" in the Court's ruling. As Plaintiffs acknowledge (Mot. 3), Dr. Furchtgott-Roth testified at the May 26 hearing that his method of calculation was "commonly used by financial analysts in looking at the cable industry." 5/26 Hr'g Tr. at 279:7-16. Thus, the exact basis for Dr. Furchtgott-Roth's calculation pressed by Plaintiffs in this motion was

4

heard by the Court, and rejected because it did not present a valid way to "quantify Bright House's economic incentive to retain *alleged infringing customers*." Order at 8; *see also* 5/26 Hr'g Tr. at 309:3-310:7. Whether "industry participants" may have used a similar method to calculate customer value for an entirely different purpose in "cable industry mergers" (Mot. 4-5) has no bearing on Dr. Furchtgott-Roth's opinions about *allegedly infringing subscribers* in this copyright case. Tellingly, Plaintiffs have *still* identified no authority that has deemed reliable such a method for the purpose of assessing damages (or "economic incentives") in the context of an action alleging copyright infringement.

The Court certainly is entitled to exclude an expert's method for which there is no evidence that it has ever been accepted—in the industry or by a court—for the purpose it is being offered. *See, e.g.*, *Carmody v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 5542534, at *3 n.2 (M.D. Fla. Sept. 18, 2015) ("SOAP may be a generally accepted methodology for certain medical treatment purposes—such as forming a diagnosis or treatment plan—but it is not a generally accepted methodology for determining the *cause* of a medical problem."). Given that Plaintiffs have the burden of establishing the reliability and fit of Dr. Furchtgott-Roth's opinions, and have made no such showing, exclusion is neither erroneous nor unjust. And while Plaintiffs spend the bulk of their motion arguing about public documents they could have submitted that they claim would have "confirm[ed] Dr. Furchtgott-Roth's testimony that his valuation method has a sound basis" (Mot. 4-5), "[a] motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first

5

decision." *Turk v. Bergman*, 2016 WL 8929253, at *1 (M.D. Fla. June 23, 2016) (quotations omitted) (Scriven, J.).[3] Even if considered, none of those documents cited by Plaintiffs pertain to calculating the value of a subscriber to determine the "economic incentive" to retain "alleged infringing customers" in the copyright infringement context. Order at 8.[4]

Finally, Plaintiffs' motion should be denied for the independent reason that, even if such a method of calculation were acceptable, Dr. Furchtgott-Roth only uses it to multiply this "average" by the number of Bright House subscribers who were the subject of at least three copyright notices from *any* rightsholder. ECF 583-2 (Furchtgott-Roth Rep.) at ¶ 76. In its June 8, 2022 Order, the Court ruled that Dr. Furchtgott-Roth's opinions relating to revenues realized from these 45,889 subscribers "has no relevance to this case because these subscribers received notices from 'any source' (i.e., other unrelated ISP providers such as Comcast, Time Warner Cable, etc.), and, unless demonstrated otherwise, Plaintiffs will not be providing evidence of these subscribers' infringement." Order at 7. The Court further recognized that "[a]ny marginal relevance" of Dr. Furchtgott-Roth's testimony relating to "subscribers who received notices from *any* source is substantially outweighed by the risk of unfair

---

[3] Given that those "public documents" were not used or cited as part of Dr. Furchtgott-Roth's calculations, any reliance on them would constitute new opinions, and thus subject to exclusion on that separate basis.

[4] Plaintiffs also complain that the Order describes Dr. Furchtgott-Roth as dividing the purchase price by the number of "residential subscribers" rather than by "*all*" subscribers. Mot. 3. This does not undermine the Court's ruling, which does not turn on this supposed distinction.

prejudice associated with such testimony." Order at 7-8. This ruling necessarily applies to all of Dr. Furchtgott-Roth's other opinions concerning these 45,889 "any source" subscribers.

That Dr. Furchtgott-Roth's opinion at issue in this motion is tied to those 45,889 subscribers is underscored by the Court's reference to Mr. Buchan, "on whose assumptions [Dr. Furchtgott-Roth] relies for this calculation." Order at 8-9. While Plaintiffs argue that "Dr. Furchtgott-Roth did not rely on any assumptions for Mr. Buchan for this calculation" (Mot. 3), the record reflects that Dr. Furchtgott-Roth expressly relied on Mr. Buchan's count of 45,889 subscribers to reach his opinion that "[a] valuation of $4,160 [which he derives from the purchase price of Bright House] would imply that Bright House's economic incentive could have been as high as [a confidential value found at page 38 of Furchtgott-Roth Report]." ECF 583-2 (Furchtgott-Roth Rep.) at ¶¶ 76, 65-66; *see also id.* ¶ 17(e) ("I estimate Bright House's financial incentive to retain the 45,889 '3+ Subscribers' *identified by Mr. Buchan* to range from [confidential values found at page 5 of the Furchtgott-Roth Report].") (emphasis added). That is, Dr. Furchtgott-Roth not only provides an unreliable opinion about the value of Bright House subscribers based purely on purchase price, but he compounds his error by applying that figure to a population of subscribers the Court has already deemed irrelevant. Again, the Court's decision was entirely proper and no error has occurred.

\* \* \*

Finally, Bright House notes that the Court has made clear that "no more motions" would be tolerated at this stage of the case. 5/26 Hr'g Tr. at 118:20-21. Because Plaintiffs' motion violates this explicit directive from the Court, lacks any colorable basis, and has placed an unnecessary burden on Bright House during a critical stage of trial preparation, Bright House respectfully requests that the Court exercise its discretion to award Bright House its attorneys' fees expended in responding to Plaintiffs' motion for reconsideration. *See, e.g.*, *Robinson v. Alutiq-Mele, LLC*, 643 F. Supp. 2d 1342, 1343-44 (S.D. Fla. 2009) (awarding defendant its attorneys' fees for responding to a motion for reconsideration where plaintiff's motion "lacked any legal or factual basis for relief").

## **CONCLUSION**

Bright House respectfully requests that the Court deny Plaintiffs' motion and award Bright House its fees associated with responding to the motion.

Dated: July 1, 2022

Respectfully submitted,

/s/ *Andrew H. Schapiro*

| | |
|---|---|
| Charles K. Verhoeven (*pro hac vice*) | Andrew H. Schapiro (*pro hac vice*) |
| David Eiseman (*pro hac vice*) | Nathan A. Hamstra (*pro hac vice*) |
| Linda Brewer (*pro hac vice*) | QUINN EMANUEL URQUHART & |
| QUINN EMANUEL URQUHART & | SULLIVAN, LLP |
| SULLIVAN, LLP | 191 N. Wacker Drive, Suite 2700 |
| 50 California Street, 22nd Floor | Chicago, IL 60606 |
| San Francisco, CA 94111 | Tel: (312) 705-7400 |
| Tel: (415) 875-6600 | andrewschapiro@quinnemanuel.com |
| charlesverhoeven@quinnemanuel.com | nathanhamstra@quinnemanuel.com |
| davideiseman@quinnemanuel.com | |
| lindabrewer@quinnemanuel.com | Todd Anten (*pro hac vice*) |
| | Jessica Rose (*pro hac vice*) |
| Jennifer A. Golinveaux (*pro hac vice*) | QUINN EMANUEL URQUHART & |
| WINSTON & STRAWN LLP | SULLIVAN, LLP |

101 California Street, 35th Floor  
San Francisco, CA 94111  
Tel: (415) 591-1000  
jgolinveaux@winston.com  

Michael S. Elkin (*pro hac vice*)  
WINSTON & STRAWN LLP  
200 Park Avenue  
New York, NY 10166  
Tel: (212) 294-6700  
melkin@winston.com  

51 Madison Avenue, 22nd Floor  
New York, NY 10010  
Tel: (212) 849-7000  
toddanten@quinnemanuel.com  
jessicarose@quinnemanuel.com  

William J. Schifino, Jr.  
Florida Bar No. 564338  
GUNSTER, YOAKLEY & STEWART, P.A.  
401 E. Jackson Street, Suite 1500  
Tampa, FL 33602  
Tel: (813) 228-9080  
wschifino@gunster.com  

*Counsel for Bright House Networks, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 1, 2022, I caused a true and correct copy of the foregoing document and all supporting materials thereto to be sent via email to all counsel of record.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro
