## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

      Plaintiffs,

*v.*

BRIGHT HOUSE NETWORKS, LLC

      Defendant.

Case No. 8:19-cv-710-MSS-TGW

### BRIGHT HOUSE NETWORKS, LLC'S MOTION *IN LIMINE*

Bright House Networks, LLC ("BHN") respectfully moves under Federal Rules of Evidence ("FRE") 401-403, 407, 408, 701-703, 801-803, and 901, and Federal Rule of Civil Procedure 37 to exclude certain evidence, argument, and testimony, as follows:

**1. MarkMonitor Evidence and Testimony:** During the *Daubert* hearing, the Court explained that it would "hold" BHN's *Daubert* motion to exclude Ms. Frederiksen-Cross's opinions on direct infringement because her methodology was "not consistent with what [Plaintiffs'] counsel says her methodology was, and I don't know what to do with that before we hear from MarkMonitor." 5/25/22 Hr'g Tr. at 240:18-21. In fact, MarkMonitor's deposition testimony is not consistent with the opinions Ms. Frederiksen-Cross intends to proffer either. The sworn deposition testimony confirms that MarkMonitor did not ███████████████████████ ████████████████████████████████ Therefore, MarkMonitor could not provide the requisite foundation for Ms. Frederiksen-Cross's opinions at trial.



Specifically, Ms. Frederiksen-Cross acknowledged that ███████████

████████████████████████████████████████████████████

██████████████████████████████  *See, e.g., id.* at 181:17-182:2,

185:10-13, 225:6-12.  But later in the hearing, as the Court accurately pointed out,

Plaintiffs' counsel attempted to repair Ms. Frederiksen-Cross's testimony by stating

that ████████████████████████████████████████████████

████  *Id.* at 235:21-236:7 (emphasis added).  Counsel's suggestion that MarkMonitor

████████████████████████████████████████████████

████████████████████  has no basis in the record and contradicts

MarkMonitor's sworn deposition testimony.  In fact, MarkMonitor's corporate

witness confirmed at deposition that MarkMonitor did ***not*** even attempt to download

any piece of the file content from any BHN subscriber before sending BHN an

infringement notice.  Ex. A (Bahun Tr.) 140:21-141:8.[1]  Because Ms. Frederiksen-

Cross and MarkMonitor both admit that ███████████████████████

████████████████  before sending a notice, MarkMonitor's evidence and

testimony is insufficient to carry Plaintiffs' burden of proof on direct infringement and

is therefore of no probative value.

Unsupported argument of counsel cannot change the undisputed facts.  To

establish copyright infringement, Plaintiffs must show: "(1) ownership of a valid

---

[1]  Exhibits cited herein as "Ex." are attached to the Declaration of Andrew Schapiro, filed herewith.

copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).   Further, to establish secondary liability against BHN, Supreme Court precedent "requires evidence of actual infringement."   *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940 (2005) ("*Grokster*").   Because MarkMonitor's sworn testimony establishes that it did ***not*** download the files that Plaintiffs contend were allegedly distributed using BHN's network before notices were sent, there is no evidence of "actual infringement," and Plaintiffs cannot establish distribution as a matter of law.[2]   The Court should therefore exclude all evidence, expert testimony, and attorney argument related to MarkMonitor as irrelevant and prejudicial under FRE 401-403.

At mininum, to the extent Plaintiffs are permitted to present some MarkMonitor evidence and testimony at trial related to the notices sent to BHN, the Court should exclude any evidence or testimony suggesting that ███████████

███████████████████████████████████████████████████████████

---

[2]   At the *Daubert* Hearing, Plaintiffs' counsel represented that evidence presented in *Grokster*—which ultimately required "evidence of ***actual infringement***"—was "just like" the evidence in this case.   5/25/22 Hr'g Tr. at 235:11.   Plaintiffs' counsel further stated he was counsel in *Grokster*.   *Id.* at 235:3-4.   But, as explained the next day, the statements made about *Grokster* were factually inaccurate.   5/26/22 Hr'g Tr. at 175:8-177:2.   In *Grokster*, the Joint Appendix submitted to the Supreme Court plainly indicated that the Plaintiffs submitted evidence at the summary judgment stage that the RIAA had "***download[ed]*** . . . [the asserted] sound recordings ***from defendants' systems***."   2005 WL 997290, at *202-03 (emphasis added).   That is not "just like" the evidence here, where MarkMonitor admitted at deposition that it ***did not download*** the allegedly infringing files "from defendants' systems" (here, BHN's network) before sending a notice.   Ex. A (Bahun Tr.) 140:21-141:8.

███████ before ever searching for copyright infringement on BHN's network.  In making this argument at the *Daubert* hearing to support their claim that MarkMonitor ████████████████████ Plaintiffs' counsel appears to have been referring to an earlier, ██████████████████████ If this same argument is presented to a jury, it carries a high risk of juror confusion.  For example, the jury might wrongly believe that MarkMonitor █████████████ ████████████████ when in fact this did not occur.  And the probative value of evidence related to *other* ISPs is minimal, as there is little to no relevance in telling the jury that MarkMonitor downloaded files from other ISPs' customers.  Accordingly, because non-BHN files bear no relevance to the case, and the probative value of this █████████████ is substantially outweighed by the confusion and unfair prejudice that would result if this evidence were presented to the jury, it should be excluded under FRE 403.

**2. Expert Testimony/Opinions By Lay Witnesses:**  The Court should exclude expert testimony offered by lay witnesses, including third-party percipient witnesses such as MarkMonitor's Sam Bahun (to the extent he is permitted to testify) and Plaintiffs' corporate witnesses.  Lay witnesses are prohibited from offering testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702" in order to "prevent parties from proffering an expert in lay witness clothing … [and] ensur[e] that testimony that is actually expert passes the strictures of Rule 702." *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1372 (11th Cir. 2014) (quotations omitted); *Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F.4th 1346 (11th Cir.

2022) (quoting *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001)) (holding that district court erred, albeit harmlessly, in admitting testimony of lay witness as to cause of engine failure).

    **3. <u>Evidence of Other Litigations and Verdicts</u>:**   References to the music industry's other litigations against ISPs, and any verdicts or rulings made in those cases, such as *BMG v. Cox* and *Sony v. Cox*, should be excluded under FRE 401-403 and 801-803.   These litigations involved different defendants, and any reference to the music industry's litigation campaign against various ISPs (and particularly to the summary judgment rulings or verdicts) would be irrelevant, highly prejudicial, and misleading to the jury.   *See* FRE 401-403.   For this reason, "most courts forbid the mention of verdicts or damage amounts obtained in former or related cases."   *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1009 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008); *see also, e.g.*, *A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, 2018 WL 5886663, at *9 (S.D. Fla. Nov. 9, 2018) ("evidence of these other cases would lead to a series of mini-trials that would likely confuse and mislead the jury") (quotations omitted); *Bunch v. Pac. Cycle, Inc.*, 2015 WL 11622952, at *7-8 (N.D. Ga. Apr. 27, 2015) (excluding evidence or argument about other lawsuits); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975) ("We consider … the references to the prior verdict … to be prejudicial and to require a new trial.").   Evidence regarding the results of prior or pending litigation against other ISPs should also be excluded as hearsay.

*See Salinero v. Johnson & Johnson*, 2019 WL 7753445, at *3 (S.D. Fla. Sept. 25, 2019) ("evidence of lawsuits is generally considered inadmissible hearsay").

4. **Charter's Copyright Program:**   Evidence, testimony, and argument regarding the copyright program of Charter Communications, Inc. ("Charter") after Charter's acquisition of BHN on May 18, 2016, which post-dated the Claim Period in this case, including evidence and testimony obtained from Charter's witnesses in Plaintiffs' pending lawsuits against Charter, should be excluded.  FRE 401-403, 407. In those pending lawsuits, Plaintiffs have questioned current Charter employees about BHN's copyright program, including how it was perceived by Charter after the acquisition.  It is anticipated that Plaintiffs may try to reference this testimony or evidence to contrast the pre-acquisition copyright program of BHN (relevant to this case) with the post-acquisition copyright program of Charter (irrelevant to this case), and use differences between these programs to improperly suggest to the jury that BHN's copyright program during the Claim Period was inadequate.  Any reference to Charter's copyright program after Charter acquired BHN, or Charter's view of BHN's program, would be irrelevant, unfairly prejudicial, and misleading.  *See* FRE 401-403. It would also be contrary to FRE 407, under which subsequent remedial measures are inadmissible as evidence of a prior deficiency.  *See* FRE 407.

5. **The Financial Condition of BHN, Charter, Advance/Newhouse:** Evidence, testimony, and argument regarding BHN's financial condition, market power, and size (including as compared to Plaintiffs and their artists and songwriters) or BHN's revenues and profits not allegedly derived from the alleged infringement at

issue should be excluded as irrelevant and highly prejudicial.  *See* FRE 401-403.

Appeals to the jury's "passion and prejudice" by refencing a party's size or power are

improper.  *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756-57 (6th Cir.

1980).  Yet Plaintiffs plainly intend to make such appeals here to suggest that a massive

damages award is appropriate due to BHN's financial condition and size.  In their

Complaint, Plaintiffs assert that BHN was "one of the largest Internet service providers

('ISPs') in the country" (Dkt. 94 ¶ 2) and refer eight times to BHN's "profit" or

"profits," including with repeated assertions that BHN "valued corporate profits over

its legal responsibilities" (*id.* ¶¶ 2, 88-89, 97, 102, 106).  Plaintiffs also have offered

testimony from Dr. Furchtgott-Roth attempting to quantify the value to BHN of each

subscriber "based on the value of Charter's purchase of Bright House in 2016 divided

by the number of Bright House residential subscribers."  *See* Dkt. 583-2 (Furchtgott-

Roth Rep.) ¶¶ 53, 76.  However, the Court has not yet accepted Dr. Furchtgott-Roth's

opinion, *see* Dkt. 650 (permitting calculation only "if the proper foundation … can be

laid"), and even if it is permitted, his final average value per subscriber can be presented

to the jury without disclosing the specific purchase price.  Nonetheless, Plaintiffs'

exhibit list includes at least six documents related solely to BHN's financial condition:

BHN_00001712,       BHN_00008544,       BHN_00008545,       BHN_00008546,

BHN_00008547, and BHN_00008548.  Recognizing the irrelevance of and undue

prejudice associated with such evidence, courts routinely exclude it, as this Court

should here.  *See, e.g., In re Homestore.com, Inc.*, 2011 WL 291176, at *1 (C.D. Cal. Jan.

25, 2011) ("Evidence of a party's financial condition is generally not relevant and can be unduly prejudicial, as it can distract the jury from the real issues in the case.").

For the same reasons, the Court should exclude any argument, evidence, or testimony related to: (a) Charter's size, market power, financial condition, and acquisition of BHN (including but not limited to the acquisition price), (b) the size, market power, and financial condition of Advance Publications, and (c) the Newhouse family's financial status, equity, or finances generally. These entities and individuals are not defendants, and the jury will be confused and unduly influenced, to BHN's prejudice, if Plaintiffs are allowed to refer to their financial status in an attempt to bias the jury or to bolster their damages claims against BHN.

**6. <u>Safe Harbor Defense</u>:** Evidence and argument regarding the Safe Harbor provisions of the Digital Millennium Copyright Act ("DMCA") and BHN's decision not to assert its Safe Harbor affirmative defense should be excluded as irrelevant, confusing, and prejudicial. FRE 401-403. Bright House withdrew this defense (Dkt. 384) and does not intend to offer Safe Harbor evidence or arguments at trial. Title II of the DMCA prohibits the use of the absence of Safe Harbor evidence to prove liability. 17 U.S.C. § 512(l) ("failure … to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense … that the service provider's conduct is not infringing"). Courts must first consider liability under the Copyright Act, and "[o]nly if the plaintiff shows … infringement are courts to analyze whether … Section 512's safe harbor" applies. *BWP Media USA, Inc. v. T & S Software Assocs., Inc.,* 852 F.3d 436, 443 (5th Cir. 2017). Informing the jury that BHN withdrew

its Safe Harbor defense would only magnify the risk of an improper adverse inference by inviting the jury to speculate about why BHN is not asserting such a defense, attaching improper significance to the fact. *See United States v. Natson*, 469 F. Supp. 2d 1253, 1258-59 (M.D. Ga. 2007) (excluding evidence under Rules 402 and 403 that a jury would engage in "sheer speculation" by relying on such evidence). The jury also might conflate the Safe Harbor with the ultimate issue of liability, requiring a "trial within a trial" about the significance of a defense that is not at issue. *See Novello v. Progressive Express Ins. Co.*, 2021 WL 1845241, at *3 (M.D. Fla. May 7, 2021) (excluding evidence that "could mislead, confuse, or distract the jury from the actual issue"). Because the Safe Harbor defense is not being asserted at trial, allowing Plaintiffs to refer to it would be error. To the extent any evidence or testimony refers generally to the DMCA, the jury should be instructed that references to the DMCA are merely references to copyright law.

**7. <u>Number of Notices and Counts of Customers</u>:** The Court should exclude all evidence, testimony, and argument regarding the number of copyright notices not directly tied to the works-in-suit. Plaintiffs intend to refer at trial to the fact that BHN purportedly received hundreds of thousands of copyright notices, even though Plaintiffs admit they did not send those notices and/or the notices do not concern the works-in-suit. The quantity of such notices—including from rightsholders unaffiliated with Plaintiffs (such as Rightscorp) and regarding types of media not at issue here (such as video pornography)—is not probative of Plaintiffs' claims. References at trial to

such notice quantities will confuse the issues, mislead the jury, and be substantially more prejudicial than probative. Such evidence should be excluded under FRE 403.

For similar reasons, pursuant to FRE 401-403 and 702, the Court should exclude evidence and argument regarding the number of BHN customers who received notices *other* than those who received three or more RIAA notices. The Court "limit[ed]" Dr. Furchtgott-Roth to relying on, "at most … those who allegedly received three RIAA notices about which Bright House was allegedly informed." Dkt. 650; Dkt. 638 at 7-9 (opinion beyond those notices "is confusing, highly prejudicial and has marginal relevance"). Based on this ruling, Plaintiffs and their other experts, such as Mr. Buchan (Dkt. 580-2 at 22-25), should not be permitted to provide evidence, testimony, or argument about the number of BHN customers who received non-RIAA notices or fewer than three RIAA notices. Dkt. 638 at 7-9. And, because he never disclosed, and will not offer, opinions relying on the number of customers who received "three RIAA notices," *see* 5/26/22 Hr'g Tr. at 294:19-22, 295:23-25, Dr. Furchtgott-Roth should be precluded from offering *any* opinions based on the number of customers who received *any* notices.[3]

**8**. **Duplicate and Misdirected Notices:** The Court should exclude all evidence, testimony, and argument regarding notices that are duplicates or that were not

---

[3] In addition, Dr. Furchtgott-Roth should be precluded from offering any opinions about Bright House's "economic incentives," which now—absent "repeat infringer" opinions—are simply recitations of what he read in BHN documents. *See* Dkt. 583-2 (Furchtgott-Roth Rep.) ¶¶ 68-76 (largely repeating discovery); *see also* Dkt. 583 (Mot.) at 16-18 ("economic incentive" opinions should be excluded as "state of mind").

received by BHN (*i.e.*, sent to the wrong email address).  FRE 401-403.  References to duplicate notices improperly inflate the numbers and will mislead the jury as to the amount of P2P activity on BHN's network during the Claim Period.  Similarly, notices sent by Plaintiffs or their agents to the wrong email address failed to provide BHN with notice of the alleged conduct to which they relate.  The jury should not be invited to impose liability on BHN for alleged infringement supposedly memorialized in such notices.

**9. Subscriber "Admissions" of Infringement:**  Any evidence, testimony, or argument that subscriber communications constitute alleged "admissions" of infringement (particularly of unasserted works), should be excluded under FRE 401-403 and 801.  To allow the jury to consider subscribers' hearsay statements described as "admissions," particularly ones that do not relate to Plaintiffs' works-in-suit, would be confusing and unduly prejudicial.  Plaintiffs have already attempted to improperly rely on these purported "admissions" as proof that BHN "knew at the time" that its subscribers were infringing the works-in-suit.  *See, e.g.*, Dkt. 603 at 1-2; Dkt. 589 at 8.  Yet the communications cited by Plaintiffs concern subscriber conduct that is unrelated to the works-in-suit: the ████████████████████

████████████████████████████████████████

████████████████████████████████████████

To establish liability for secondary copyright infringement, Plaintiffs must prove that BHN had "actual knowledge of [the] specific acts of [direct] infringement" at issue.  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013); *accord*

*Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 2021 WL 5882999, at *12 (S.D. Fla. Dec. 13, 2021).  Communications that do not relate to works-in-suit are irrelevant, and suggestions that they are "admissions" of "infringement" are highly likely to prejudice, confuse, and mislead the jury, which already has to look at evidence on thousands of works-in-suit.  *See, e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 2017 WL 10844685, at *3 (S.D.N.Y. Dec. 8, 2017) ("When considering the staggering number of works the jury will have to wade through, burdening them with even more titles that are not at issue would be confusing and unnecessary").

10. **Prejudicial and Legally Conclusory Language:**  Consistent with its prior ruling, the Court should preclude attorney argument and witness testimony that uses prejudicial or legally conclusory language such as "repeat infringer," "abuser," or "pirate." *See* Dkt. 638 at 9 (ordering Plaintiffs to "sanitize **ALL** reports that invoke terms of 'infringement,' 'infringer,' 'repeat infringer' and 'piracy' from any expert who is not proffered to offer such opinions.").  As the Court recognized, such language usurps the role of the jury and improperly suggests that the jury should assume Plaintiffs have already met their burden of proof, which is highly prejudicial to BHN. *See id*; *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (witnesses cannot "testify to the legal implications of conduct; the court must be the jury's only source of law").  Plaintiffs should therefore be limited to using terms such as "*alleged* infringement" or "*alleged* infringer."

12

**11. Purported "Observations" of "Infringement" of Unasserted Works:**
Evidence, testimony, and argument regarding supposed "observations" by Plaintiffs
or their agents of "other" infringement on BHN's network—that is, infringement other
than what is asserted in the copyright notices regarding the works-in-suit—should be
excluded under FRE 402 and 403.  The only evidence relevant to this case is evidence
that is specifically tied to the works-in-suit during the Claim Period.  Allegations of
infringement relating to unasserted works would be more prejudicial than probative
and could improperly influence the jury's determination on the works-in-suit.

**12**. **Works-in-Suit of Music Publisher Plaintiffs:**  Evidence, testimony, and
argument that the Music Publisher Plaintiffs' works-in-suit were identified in any
copyright notices sent to BHN should be excluded.  FRE 401-403.  The notices list an
infringing work and file name and do not, by Plaintiffs' own admission, identify the
music publishers as rightsholders, or identify the songwriters.  *See, e.g.*, Ex. B (Kokakis
Tr.) 87:18-88:19.   Even the Music Publisher Plaintiffs themselves were unable to
determine from the face of any notice ███████████████████████
████████████████████████████████ *See, e.g.*, Ex. C
(Abitbol Tr.) 66:25-68:3.  It is therefore implausible that BHN was on notice of the
Music Publisher Plaintiffs' rights.  *See, e.g.,* Ex. B (Kokakis Tr.) 88: 20-89:3. ████████
████████████████████████████████████████
████████████████████████████████████████
████████████ *See, e.g.*, Ex. C (Abitbol Tr.) 64:18-25.  Given all of this undisputed
evidence, any argument that the Music Publisher Plaintiffs' works-in-suit were

identified in the notices sent to BHN should be excluded.  *See* FRE 401-403.

13. **Subscriber Monitoring:**  Plaintiffs should be precluded under FRE 401-403, 702, and 703 from presenting evidence, argument, and testimony regarding deep packet inspection ("DPI") and other network-monitoring technologies.   BHN's theoretical ability to determine during the Claim Period whether a subscriber was using P2P—a technology with myriad lawful uses—is not relevant to any issue in this case, and evidence about it could mislead the jury and would require a side trial on the capabilities and limits of those technologies.  Evidence on this issue is speculative and unsupported by competent evidence and analysis.  *See* Dkt. 526-34.

Dr. McGarty—who is admittedly not an expert on the DPI tools at issue and has no understanding of BHN's actual capabilities—suggests inaccurately in his report that BHN monitored individual subscriber P2P use during the Claim Period.  Dkt. 587-2 (McGarty Rep.) ¶¶ 18, 43; Dkt. 587-3 (McGarty Tr.) 286:25-289:7.  His sole basis for doing so are ███████████████████████████████ ███████ (BHN_00008983, NOKIA00000056, NOKIA000000145).  *See* Dkt. 587-2 (McGarty Rep.) ¶ 42.  The ███████████████████████████████████ █████████████████████████████ and there is no evidence that the data came from BHN's network.  *See, e.g.*, Ex. D (Sutterby Tr.) 189:17-190:14;  194:16-195:13.  Similarly, the █████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████Ex. E (Henkart Tr.) 59:17-60:10.  BHN did not have the capabilities described in these "reports"

during the Claim Period (Ex. D (Sutterby Tr.) 85:1-86:218) and a mini-trial on irrelevant, misleading, and prejudicial technical issues should not be permitted.

14. **Throttling and Port Blocking:**  Plaintiffs should be precluded under FRE 402 and 403 from presenting evidence, argument, and testimony regarding the purported ability of BHN to block subscribers' access to P2P protocols, including via throttling and port blocking.  Plaintiffs' sole support for the notion that BHN could have used port blocking to curb P2P activity is Mr. Sutterby's testimony that ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. D (Sutterby Tr.) 233:4-23.  There is no evidence that this could have meaningfully reduced P2P activity generally (much less infringement), been commercially feasible, or was even legal.  *Id.* at 233:4-23.  It is undisputed that P2P has many lawful uses, and Plaintiffs' own purported expert agreed that any attempt to block or throttle P2P during the Claim Period would have been a potential violation of FCC regulations; unsurprisingly, he was also unaware of a single ISP that *ever* employed such methods.  Dkt 587-3 (McGarty Tr.) 279:23-284:15, 322:4-323:20.  Plaintiffs should not be permitted to argue that, to avoid liability for copyright infringement, BHN should have adopted novel, untested procedures that no other ISP adopted at substantial legal risk.  This speculative argument would mislead the jury and unfairly prejudice BHN.

15. **Settlement Negotiations:**  Argument and evidence regarding settlement negotiations between BHN and Plaintiffs and/or BHN and Rightscorp should be excluded under FRE 402, 403 and 408.  FRE 408 bars settlement evidence offered "to prove liability for, invalidity of, or amount of a claim."  Evidence qualifies for

15

protection under Rule 408 if it was intended to be a part of the negotiations toward compromise. *Blu-J, Inc. v. Kemper C.P.A. Grp.*, 916 F.2d 637, 642 (11th Cir. 1990); *see also Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*, 2008 WL 4080205, at *2 (M.D. Fla. Aug. 28, 2008) (excluding fact of settlement offer).[4]

Admitting settlement evidence (particularly settlement correspondence with Rightscorp about works not owned or asserted by Plaintiffs, and settlement correspondence with Plaintiffs' counsel, Mr. Oppenheim, all of which appears on Plaintiffs' exhibit list) would require a time consuming side trial on the meaning and context of settlement communications, and also chill settlement efforts, exactly what FRE 408 is intended to prevent. Settlement discussions are "often irrelevant to liability for the charged conduct, … motivated by a desire for peace rather than from any … weakness of position." *United States v. Arias*, 431 F.3d 1327, 1337 (11th Cir. 2005); *see also In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 848074, at *1 (N.D. Fla. Mar. 7, 2021) (excluding settlement evidence under FRE 403 and 408).

**16. Terminations for Nonpayment:** Plaintiffs should be precluded under FRE 402, 403, 702, and 703 from presenting evidence, argument, and testimony on the number of BHN subscribers terminated for nonpayment. Dr. McGarty's testimony that "BHN clearly had the means to disconnect far more subscribers for repeated DMCA violations" (Dkt. 587-2 (McGarty Rep.) ¶¶ 61-62) is speculative because he

---

[4] The exceptions under which settlement evidence can be offered (*e.g.*, to show a witness's bias) do not apply here. *Walters v. Cent. Fla. Invs*, 2006 WL 821858, at *3 (M.D. Fla. Mar. 28, 2006).

lacks the basis to offer such opinions and failed to investigate, much less consider, the technical process by which BHN suspended or reconnected service for nonpayment during the Claim Period (Dkt. 587-3 (McGarty Tr.) 335:16-23). BHN's ███████ ████████████████████████████████████████████████████ and there is no evidence that BHN could have used an analogous process to permanently terminate user accounts accused by third parties of copyright infringement. The sheer number of BHN's ███████████████████████████████ does not imply a technical capacity to effect permanent terminations in an analogous manner. Suggesting otherwise would require a complex "trial within a trial" on a tangential, irrelevant, and prejudicial issue.

17. **BHN's Document Retention:**   Evidence, testimony, and argument regarding BHN's document retention policy, the scope of its litigation hold, and accusations related to the purported loss of ESI or failure to take reasonable steps to preserve ESI should be excluded as irrelevant and highly prejudicial. *See* FRE 402-403. Despite extensive briefing and argument about these issues, Plaintiffs ultimately can point to no actual evidentiary losses that directly relate to their asserted claims as a result of the failure to preserve information after the notice of litigation. This discovery issue is therefore irrelevant to the merits to be determined by the jury at trial. *See, e.g.*, *Van v. Language Line Servs., Inc.*, 2016 WL 3566980, at *3-4 (N.D. Cal. June 30, 2016) (evidence "regarding discovery disputes … and alleged unethical behavior by counsel for Defendants" is irrelevant). References to or arguments regarding BHN's alleged ESI loss following the Charter acquisition, or failure to take reasonable

17

steps to preserve evidence prior to the acquisition, should be excluded as unduly prejudicial and a waste of time.  *See Knight v. Boehringer Ingelheim Pharmas., Inc.*, 323 F. Supp. 3d 837, 861 (S.D. W. Va. 2018) (excluding evidence of spoliation as unduly prejudicial).

18. <u>**Unauthenticated Blog Posts:**</u> Evidence, testimony, and argument regarding former employee Gary Doda's posts on forum sites, including DSL Reports and Reddit, which were not produced by either side in discovery and are from outside the Claim Period, should be excluded as irrelevant, unauthenticated, and misleading under FRE 402, 403, and 901.  Plaintiffs included such posts as trial exhibits, even though the posts (printed in altered form by Plaintiffs' counsel for use in Mr. Doda's deposition) cannot be authenticated as documents created by or with the knowledge of BHN.  Mr. Doda testified in deposition that he made the forum posts in his individual capacity for a consulting job he held independent from his employment with BHN, not as a representative or employee of BHN.  Ex. F (Doda Tr.) 176:23-177:3, 181:25-182:10.  Mr. Doda also testified that the date and time stamps appeared altered and/or "obliterated."  *Id.* at 193:15-22; 194:6-12.  Even after having this pointed out, Plaintiffs' counsel failed to provide correct, authenticated versions of the posts. Additionally, several of the posts relate to an unidentified person's blocked access to event-ticketing websites Ticketmaster.com and Livenation.com which have no relevance to this case.   Because no one on Plaintiffs' witness list can lay foundation for the posts, and because the documents are inaccurate, inauthentic, and constitute irrelevant hearsay, they should be excluded.

18

**19. <u>Communications by Former BHN Employees</u>:**  Plaintiffs have included in their deposition designations certain communications by former non-managerial BHN employees expressing confusion about having been served with subpoenas in this case, as well as testimony about the text message retention practices of those former employees (all older, retired individuals).  These communications—which occurred well after the individuals' employment with BHN ended and five years after the Claim Period—are irrelevant.  *See Smith v. Pefanis*, 2008 WL 11333335, at *3 (N.D. Ga. Oct. 30, 2008) (nonparty's communications after employment with defendant were irrelevant).  They also are likely to distract the jury, confuse the issues, and waste time. *See* Fed. R. Evid. 403.  Notably, following their depositions, three of the former employees were served with document subpoenas demanding the production of their text messages from 2021, and then motion practice was filed by Plaintiffs' counsel challenging the individuals' failure to retain the text messages, causing each of the individuals considerable distress. (Dkt. 355).  Plaintiffs' motion to compel was denied and Plaintiffs' counsel was instructed not to pursue the issue further.  11/3/21 Hr'g Tr. at 10:16-20 ("No. This is over . . . . This should have been probably decided without even mentioning it in a hearing, but there is no basis, based upon their representations, for pursuing it any further.").  Due to the prejudice and confusion that would result from this issue being re-raised at trial, evidence, testimony, and argument regarding the issue should be excluded under FRE 403.

**20. <u>Allegations of Witness Coaching</u>:**  Plaintiffs have designated for trial their improper questioning of BHN witnesses about conversations with counsel during

deposition breaks.   Evidence, testimony, and argument regarding privileged discussions between witnesses and their counsel, including during deposition breaks, should be excluded as irrelevant and prejudicial.   This questioning also violates the guidelines set forth in this District's Discovery Handbook.   *See* Middle District Discovery (2021) at Section II(B)(4) ("The examining attorney should not attempt to inquire into communications between the deponent and the attorney for the deponent that are protected by the attorney client privilege.").   Witnesses have a "constitutional right" to "confer[] with his or her counsel," including "during breaks and recesses in the litigant's testimony."  *King v. CVS Caremark Corp.*, 2015 WL 12778000, at *8 (N.D. Ala. Feb. 8, 2015) (citation omitted).   Plaintiffs' counsel's inappropriate inquiries, and unfounded allegations or suggestions of coaching, are irrelevant, misleading, highly prejudicial to BHN, and a waste of time, especially because the jury will be instructed to make its own assessment of witness credibility.   *See* FRE 402-403.

21. **Dr. Furchtgott-Roth's Opinions About The Music Industry and P2P:**  As noted, Dr. Furchtgott-Roth does not have the requisite expertise to provide opinions about the music industry and impact of P2P file-sharing.   *See* Dkt. 583 at 5-12. Although the Court "reserve[d] ruling on the admissibility" of these opinions "subject to Plaintiffs' ability to lay a foundation for his qualifications (Dkt. 638 at 8), BHN respectfully submits that a pretrial ruling on this issue would be appropriate under FRE 402-403 and 702 because even such foundational testimony would be highly prejudicial and improperly invoke juror sympathy by suggesting BHN harmed the music industry through an unqualified expert.

20

Dated: July 8, 2022

Charles K. Verhoeven (*pro hac vice*)
David Eiseman (*pro hac vice*)
Linda Brewer (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
charlesverhoeven@quinnemanuel.com
davideiseman@quinnemanuel.com
lindabrewer@quinnemanuel.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Tel: (415) 591-1000
jgolinveaux@winston.com

Michael S. Elkin (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
melkin@winston.com

Respectfully submitted,

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro (*pro hac vice*)
Nathan A. Hamstra (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
andrewschapiro@quinnemanuel.com
nathanhamstra@quinnemanuel.com

Todd Anten (*pro hac vice*)
Jessica Rose (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
toddanten@quinnemanuel.com
jessicarose@quinnemanuel.com

William J. Schifino, Jr.
Florida Bar No. 564338
GUNSTER, YOAKLEY &
STEWART, P.A.
401 E. Jackson Street, Suite 1500
Tampa, FL 33602
Tel: (813) 228-9080
wschifino@gunster.com

*Counsel for Bright House Networks, LLC*

## <u>L.R. 3.01(g) CERTIFICATION OF COUNSEL</u>

Pursuant to Local Rule 3.01(g), counsel for Bright House has conferred with counsel for Plaintiffs regarding the relief sought in this motion, and the parties do not agree on the resolution of this motion, in whole or in part.  The parties conferred by email on July 1-7, 2022 and also by telephone on July 6, 2022.


*/s/ Andrew H. Schapiro*
Andrew H. Schapiro

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 8, 2022, I caused a true and correct copy of the foregoing and all supporting materials thereto to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro
