**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UMG RECORDINGS, INC., *et al.*,

       Plaintiffs,

                               **Case No. 8:19-cv-710-MSS-TGW**

  v.

BRIGHT HOUSE NETWORKS, LLC,

       Defendant.

**<u>PLAINTIFFS' OPPOSITION TO BRIGHT HOUSE'S ("BHN")</u>**
**<u>OMNIBUS MOTION *IN LIMINE*</u>**

      **1. <u>MarkMonitor Evidence</u>.**  BHN asks the Court to exclude "MarkMonitor's evidence and testimony"—that is, Plaintiffs' evidence that BHN's subscribers directly infringed their works—because, BHN claims, it is "insufficient to carry Plaintiffs' burden of proof on direct infringement and is therefore of no probative value."  Mot. at 2.  That is not a motion *in limine*, but an untimely summary judgment motion.  It should be denied for that reason.  *See* July 12, 2022 Hr'g Tr. at 54:13-15 (Court not going to grant motion *in limine* that is "just [] making a summary judgment motion").

      BHN is also wrong on the merits; MarkMonitor's evidence and testimony conclusively establish direct infringement of Plaintiffs' works.  Plaintiffs are forced to explain here why—though it is *not* relevant to admissibility—given the stakes of BHN's so-called motion *in limine*:  essentially, whether a directed verdict should be issued.

      **a.  MarkMonitor's evidence alone is direct proof that BHN's subscribers violated Plaintiffs' exclusive rights by making their works available for download**

1

**over peer-to-peer networks.**  The great weight of authority in the Eleventh Circuit holds that making a work available to the public is, itself, a violation of the right to distribute under Section 106(3) of the Copyright Act.  *See, e.g.*, *Disney Enters., Inc. v. Bartels*, 2007 WL 9702222, at *4 (S.D. Fla. Feb. 23, 2007) ("mak[ing] a copyrighted work available to the public infringes copyright, as it violates the copyright holder's exclusive rights of reproduction and distribution").  Courts in the Eleventh Circuit thus routinely grant summary judgment based only on the fact that the defendant made the work available on a peer-to-peer network.  *See, e.g., Arista Recs., LLC v. Butler*, 2007 WL 4557198, at *1 (M.D. Fla. Dec. 21, 2007) (granting summary judgment on violation of distribution right based on deemed admissions that defendant made recordings available on a peer-to-peer network); *Priority Recs., LLC v. Pearson*, 2007 WL 9702412, at *1-2 (N.D. Ga. May 16, 2007) (same); *Elektra Ent. Grp. Inc. v. Brimley*, 2006 WL 2367135, at *2-3 (S.D. Ga. Aug. 15, 2006) (same); *see also ME2 Prods., Inc. v. A&M Limo*, 2017 WL 8185865, at *3 (N.D. Ga. Dec. 12, 2017) (same, default judgment).[1]

The MarkMonitor evidence that BHN seeks to *exclude from trial entirely* easily meets this standard.  The MarkMonitor system includes two principal steps, referred to as (1) file verification and (2) infringement detection.  *See, e.g.*, Dkt. 589-81 ("Bahun

---

[1] *See also UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 765 (W.D. Tex. 2019) ("using [a peer-to-peer network] to make copies of the [infringing materials] available to thousands of people over the internet . . . violate[s] [a] [p]laintiff['s] exclusive right to distribute"); 2 Nimmer on Copyright § 8.11(D)(4)(a)(ii) ("Making works available via file-sharing implicates the distribution right . . . *there is no need to show consummated acts of actual distribution.*") (emphasis added); *accord Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 204 (4th Cir. 1997) ("[D]istribution occurs, within the meaning of § 106, when a library holds a copy in its collection, lists the copy in its card file, and makes the copy available to the public.")

Decl.") ¶¶ 12-16.   During file verification, MarkMonitor downloads in full a file it suspects contains content that it has been hired to protect and submits it to Audible Magic for identification.  *Id.* at ¶ 15; *see also* Dkt. 641 (May 25, 2022 Hr'g Tr.) at 186:2-16 (Frederiksen-Cross).  This step confirms whether the unique hash value of the file contains unauthorized copyrighted content MarkMonitor was hired to protect.  Bahun Decl. ¶ 15.   Thereafter, during infringement detection, MarkMonitor's system connects with a peer to take the first steps in the download process, including confirming that the peer is online with a valid IP Address, running a peer-to-peer protocol, communicating with peers on the network, and offering to distribute a specific file, identified by hash, that MarkMonitor confirmed contained copyrighted content.  *Id.* ¶ 13.

These steps confirm that a BHN subscriber is "mak[ing] the infringed recordings available to others for downloading or copying," and therefore establish infringement. *Arista Recs.*, 2007 WL 4557198, at *1.  BHN's complaint that "MarkMonitor did not download any piece of a file from a BHN subscriber before sending a notice," MIL at 2, is *completely irrelevant* under the appropriate legal standard (and also not accurate).[2]

**b.  MarkMonitor's evidence is also overwhelming circumstantial proof that subscribers actually disseminated Plaintiffs' works.**  The minority of courts that hold that infringement of the distribution right requires actual dissemination still make clear

---

[2] The evidence will show instances of MarkMonitor downloading portions of the file from BHN subscribers.

that "making available" is circumstantial evidence of such dissemination. *Alticor Inc. v. UMG Recordings, Inc.*, 2015 WL 8536571, at *7 (M.D. Fla. Dec. 11, 2015) ("[A]lthough dissemination needs to be proven to meet the distribution standard in the act, the proof need not be direct and can come from circumstantial evidence").

The MarkMonitor evidence is overwhelming circumstantial proof of actual dissemination. As Ms. Frederiksen-Cross explained at her deposition, P2P systems "are explicitly designed with the purpose and intent of facilitating file distribution," and indeed a "peer that is failing to upload will eventually be, for lack of a better term, frozen out of the swarm," because "the underlying premise is that those who download will also upload." Ex. 1 (Frederiksen-Cross Tr.) 34:12-36:13. A BHN subscriber who has made a work available for distribution in that environment is, to the fact of distribution, what "wet grass outside and people walking into the courthouse carrying wet umbrellas" are to the fact "that it rained." Eleventh Circuit Pattern Jury Instruction 1.1. As another court put it, when evaluating the same MarkMonitor system under an "actual dissemination" standard:

> Peer users in BitTorrent engaged with MarkMonitor, offering infringing files—as indicated by hash value—in an environment where approximately 99.45% of the content is pirated. In other words, the P2P protocols themselves provided overwhelming circumstantial evidence that comfortably supports direct infringement liability from distribution alone, and a reasonable jury could find as much.

*Sony Music Ent. v. Cox Commc'ns, Inc.*, 464 F. Supp. 3d 795, 811 (E.D. Va. 2020).

BHN is thus dead wrong that the MarkMonitor evidence is "insufficient to carry Plaintiffs' burden of proof on direct infringement," but this argument has no place in a motion *in limine*. BHN's motion should be denied.

**2. <u>Expert Testimony/Opinions by Lay Witnesses</u>.** BHN's motion to exclude expert testimony from lay witnesses identifies no specific testimony it seeks to exclude. It should be denied for that reason. *See SFR Servs., LLC v. Lexington Ins. Co.*, 2021 WL 322367, at *3 (M.D. Fla. Feb. 1, 2021) ("The court may deny a motion in limine when it 'lacks the necessary specificity with respect to the evidence to be excluded.'").

While Plaintiffs generally agree a lay witness may not offer expert testimony, none of their lay witnesses intend to do so. And BHN cannot use its ill-defined request to persuade the Court to exclude perfectly appropriate lay testimony "based on particularized knowledge gained from their own personal experiences." *United States v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011); *see also Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003) (affirming admission of employee testimony "about the reasonableness of their corporation's [practices] in light of industry standards" because FRE 701 permits lay testimony "based upon [] particularized knowledge garnered from years of experience within the field").

Indeed, this district has appropriately distinguished expert testimony based on scientific, technical, or other specialized knowledge from lay testimony based on what employees "perceived, saw, or know" from their employment. *See MasForce Eur., BVBA v. MEC3 Co.*, 2013 WL 12156469 (M.D. Fla. Dec. 4, 2013). Plaintiffs' percipient witnesses, including Sam Bahun of MarkMonitor, will offer only the latter. If their testimony veers into impermissible opinion testimony, BHN can object then, and the Court can address any such objections on a case-by-case basis during trial. *See Elardi*

*v. Royal Caribbean Cruises, Ltd.*, 2022 WL 2346360, at *1 (S.D. Fla. Feb. 4, 2022) ("Motions [*in limine*] that fail to identify 'specific pieces of evidence' may be better suited to be presented as objections at trial."). The motion should be denied.

**3. Evidence of Other Litigations/Verdicts.** Plaintiffs agree that neither party should reference "the music industry's other litigations against ISPs" (Mot. at 5) *other than* the *BMG v. Cox* case, references to which are part of the factual record in this case.[3] Specifically, BHN's witnesses testified that Cox's loss of its DMCA safe harbor defense in that case precipitated BHN's decision to "toughen" its graduated response program. For instance, when asked "Why did Bright House need to 'toughen' its process?," BHN's 30(b)(6) witness testified, "[W]e were aware -- the company was aware of ongoing litigation in the industry," and then confirmed that the "litigation" was *BMG v. Cox*. Dkt. 589-15 (Harrison Tr.) at 198:14-199:18.[4] Excluding from evidence that another ISP's liability was the only reason that BHN finally decided to focus its graduated response program would omit relevant facts and unfairly prejudice Plaintiffs.

---

[3] Unless BHN opens the door or suggests that Plaintiffs are unfairly or uniquely targeting it through this litigation, Plaintiffs do not intend to introduce evidence about other ISP infringement cases, including *Sony v. Cox*. If the Court grants BHN's motion, both Parties should be precluded from presenting evidence or argument about other ISP copyright infringement litigations, aside from the limited evidence Plaintiffs seek to introduce about *BMG v. Cox*. Dkt. 655 at 16. And consistent with its own motion to exclude evidence of such litigations, BHN should be precluded from introducing deposition testimony from the *Sony v. Cox* and *UMG v. Grande* cases, which it currently plans to do.

[4] *See also* Dkt. 589-15 (Harrison Tr.) at 206:2-15 (testifying, in response to question whether Cox's loss of the DMCA safe harbor was "one of the reasons that Bright House was toughening its graduated response process," that "the company, obviously, was aware of this very public event happening. And because of such, certainly, there was examination and assessment and re-assessment of Bright House's program."); Dkt. 589-10 (Frendberg Tr.) at 99:24-102:14 (confirming that BHN instituted changes to its graduated response program in the wake of the *BMG v. Cox* decision).

BHN's cited cases are inapposite.  In those cases, the other lawsuits were (1) not central to the factual record and timeline, unlike here, and (2) brought against the same defendants for similar claims, which creates a greater risk of unfair prejudice.[5]  Here, the *BMG* evidence is both relevant and necessary to presenting a complete narrative to the jury.  BHN's motion should be denied.

**4. Charter's Copyright Program.**  BHN's motion should be denied because it asks the Court to decide an issue that is not yet ripe and is based on an incorrect premise. Specifically, BHN's motion assumes that Plaintiffs intend to adduce evidence about "the copyright program of Charter" or "Charter's view of BHN's program." Dkt. 657 at 6.  At present, Plaintiffs do not.  Plaintiffs do intend to supplement their exhibit list with four documents that were produced by Charter, BHN's successor, pending the outcome of a motion seeking relief from the protective order in that case.[6] These documents include documents authored by BHN's primary witness, now a

---

[5] *See Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1008 (9th Cir. 2007) (in federal anti-discrimination lawsuit, excluding evidence of state discrimination lawsuit brought against defendant); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975) (holding that evidence of prior antitrust violation by same defendant should have been excluded in current antitrust case); *Bunch v. Pac. Cycle, Inc.*, 2015 WL 11622952, at *7 (N.D. Ga. Apr. 27, 2015) (excluding evidence of other lawsuits brought against defendant); *A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, 2018 WL 5886663, at *8 (S.D. Fla. Nov. 9, 2018) (similar); *Salinero v. Johnson & Johnson*, 2019 WL 7753445, at *2 (S.D. Fla. Sept. 25, 2019) (similar).  BHN's citation to *Salinero* for the proposition that evidence of other litigations is inadmissible hearsay, Mot. at 5-6, is inapposite.  Plaintiffs seek to introduce evidence regarding *BMG* not just for their truth, but to show the affect it had on BHN and its graduated response program.

[6] As the Court is aware, BHN merged with Charter one day after Claim Period in this case.  Plaintiffs are litigating claims arising from Charter's conduct after that merger, similar to the claims in this case and *Warner Records Inc. v. Charter* (*Charter I*).  *UMG Recordings, Inc. v. Charter Commc'ns, Inc.*, No. 1:21-cv-02020-RBJ-MEH (D. Colo.) ("*Charter II*").  Plaintiffs are filing a motion in *Charter II* seeking an exception from the protective order in that case—which otherwise prohibits use of documents outside of *Charter II*—so that they may add those documents to their exhibit list in this case.

Charter employee, and refute assertions BHN has made in this case.  None of the documents have to do with what Charter thought of BHN's program, or discuss Charter's program after the Claim Period.

**5. <u>The Financial Condition of BHN, Charter, Advance/Newhouse</u>.**  The court should deny BHN's attempt to exclude evidence of its and its owners' finances. One factor that a jury assessing statutory damages may consider is what sort of award would be necessary to deter future infringement.  *See Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1261 (11th Cir. 2014) (identifying "the deterrent value of the damages imposed" as a statutory damages factor).  "[T]he 'wealth of the defendant has been widely recognized as relevant to the deterrent effect of a damages award.'" *Fields v. Baseline Properties, LLC*, 2021 WL 5925870, at *3 (W.D. Okla. May 6, 2021) (quoting *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 461 (D. Md. 2004) (collecting cases)).  For that reason, factfinders regularly consider a defendant's overall financial condition—not just profits directly linked to the infringement—in assessing statutory damages.[7]  Because BHN is now owned by Charter, the jury should be allowed to hear evidence about *both* BHN's and Charter's finances.

---

[7] *See, e.g.*, *Sony Music Ent. v. Cox Commc'ns, Inc.*, 464 F. Supp. 3d 795, 841-42 (E.D. Va. 2020) (finding that "[t]he overall size and wealth of the defendant is a valid consideration for a statutory damages award"); *Jones v. Amicizia Events, Inc.*, 2020 WL 6065927, at *3 (C.D. Cal. Apr. 3, 2020) ("[I]n copyright cases, a defendant's financial condition is relevant to determining statutory damages."); *UMG Recordings, Inc. v. MP3.Com, Inc.*, 2000 WL 1262568, at *6 (S.D.N.Y. Sept. 6, 2000) (finding that "the defendant's size and financial assets are highly relevant to arriving at the appropriate level of statutory damages").

The cases that BHN cites are irrelevant because none concerns statutory damages under the Copyright Act. *See City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756-57 (6th Cir. 1980) (action under Ohio law to recover actual "damages to an old dilapidated waterfront dock"); *In re Homestore.com, Inc. Sec. Litig.*, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) (securities fraud class action).

**6. <u>Safe Harbor</u>.**  BHN's motion to exclude any mention of the DMCA or the DMCA safe harbor should be denied because it is an essential part of the factual story here.  The DMCA is the statutory framework upon which Plaintiffs' evidence is based: Plaintiffs sent DMCA-compliant notices to BHN and other ISPs, with the expectation that they would respond to them in accordance with that law.  Reciprocally, BHN's documents ████████████████████████████████████████████████ ████████.  Ex. 2 at 18 ("████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████").  Similarly, BHN's 30(b)(6) witness testified that "████████████████████████████ ████████████████████████████████████████████████████*bor*."  Ex. 3 (Frendberg Tr.) 92:17-93:1.[8]  And it was the *BMG v. Cox* safe-harbor decision that prompted BHN to change its processes.  *See* § 3, *supra*.  BHN's motion thus gets it

---

[8] Another BHN employee later explained over email, ████████████████████████ ████████████████████████████████████████████████ ████████████████████").  Ex. 4 at 2.

backwards:  what would confuse the jury would be to show them evidence referring to the DMCA and safe harbor, while not explaining what those terms mean.

This precise issue arose in both *Cox* cases.  There, the court concluded that "excising the DMCA from the trial in its entirety [will be] impossible and any resulting prejudice suffered [may be] cured by instructing the jury not to consider the safe harbor in assessing [the ISP's] liability."  *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.,* 199 F. Supp. 3d 958, 987 (E.D. Va. 2016); *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 313 (4th Cir. 2018) (holding that district court's DMCA instruction to the jury was proper); *see also Sony v. Cox*, No. 18-CV-00959 (E.D. Va. Oct. 21, 2019), Dkt. 671, at 19 (instructing that "you have heard testimony and seen documents that refer to the [] DMCA," that the DMCA has a "safe harbor defense, which is . . . not a defense for Cox," but that the unavailability of the safe harbor does not "bear adversely" on other defenses).  Consistent with this, Plaintiffs have proposed an instruction identical to that used in *Sony v. Cox.  See* Joint Pretrial Statement at Exhibit G (Preliminary Jury Instructions).

**7. <u>Number of Notices and Counts of Customers</u>.**  The total number of notices BHN received and the number of BHN customers who were the subject of those notices are directly relevant to Plaintiffs' contributory infringement claim, as they demonstrate BHN's knowledge of infringement on its network, BHN's reckless disregard for infringement, and the effectiveness—or lack thereof—of BHN's program to address that infringement.  BHN seeks to blind the jury to the millions of

infringement notices it was receiving from all types of content owners, which demonstrated that BHN was on notice that it had a significant problem.

Because of the relevance of this information, the *Cox* court denied a materially identical motion *in limine*, noting "third-party infringement notices are relevant and admissible." *Sony Music Ent. v. Cox Commc'ns, Inc.*, No. 18-CV-00950, Dkt. 590, at 2 (E.D. Va. Nov. 19, 2019). Similarly, the *Grande* court explicitly relied on the total number of notices and repeat infringer counts in denying Grande summary judgment on contributory infringement, finding such evidence bore on Grande's "actual knowledge of specific infringement." *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 768 (W.D. Tex. 2019).

BHN's proposal is also unworkable. Among the most important documents in the case are BHN's monthly Security and Abuse reports, which show that BHN identified and tracked subscribers that were the "worst offenders" who "continue[d] to infringe," and which are replete with references to the total number of notices received and "ignored." *See* Dkt. 589-24. BHN's motion would require patchwork redactions to scores of key documents, and omit key evidence of BHN's state of mind.[9]

**8. "Duplicate" and "Misdirected" Notices.** The Court should deny BHN's motion to exclude evidence concerning notices that it claims are "duplicates" or were "misdirected." Mot. at 10-11. This Court already denied BHN's motion for summary

---

[9] BHN also improperly uses this motion as a vehicle to seek reconsideration of the Court's orders regarding Dr. Furchtgott-Roth's testimony. That, too, should be rejected.

judgment regarding "misdirected" notices, concluding that "Bright House's knowledge of the alleged infringement based on Notices sent or not sent or received or not received by Bright House" constituted a material factual dispute, which precluded resolution on summary judgment.  Dkt. 649 at 8.[10]  There is likewise no basis to exclude evidence that MarkMonitor detected, and notified BHN of, multiple distinct instances of infringement of the same work(s) by the same subscriber—which BHN chooses to characterize as "duplicative notices."  *See* Dkt. 588-3 at 60-62.  The jury is fully equipped to weigh this evidence—and the parties' competing testimony and argument related thereto—to reach its own determination as to the extent of infringement on BHN's network and BHN's knowledge thereof.

**9. Subscriber Admissions.**  Evidence concerning subscribers who admitted to the infringement detailed in infringement notices is among the most probative in the case.  It confirms that the notices are accurate, that BHN knew the notices are accurate, and that BHN knew about the infringement on its network.  It also speaks volumes about BHN's procedures and approach to copyright infringement.  For example, BHN's witnesses testified that when subscribers called BHN and admitted to the infringement detailed in their notices, that did not change BHN's response.  Dkt. 589-14 (Hughes Tr.) at 58:24-59:3; Ex. 6 (Kuszmar Tr.) at 93:5-17, 225:6-9.

---

[10] For example, the evidence shows that BHN not only received but processed at least 67 of the notices Plaintiffs sent to what BHN now claims was the wrong email address, abuse@rr.com.  *See* Dkt. 589 at 7-11.  And BHN's internal documents confirm that such notices were being forwarded to BHN. *E.g.*, Ex. 5 at 4 (BHN_00002441).

Notwithstanding their probative value—or perhaps because of it—BHN seeks to exclude subscriber admissions *while retaining the ability to offer evidence of subscriber denials*.[11]  That is as unfair as it sounds.  The sole "prejudice" offered by BHN is that *some* of the admissions do not directly relate to the works-in-suit.  But *all* of the denials that BHN seeks to rely upon concern notices from other rightsholders.[12]  BHN's motion transparently seeks to exclude evidence solely because it is harmful to BHN.

**10. <u>Language Sanitization</u>.**  The Court should deny BHN's motion seeking to limit attorney argument and fact witness testimony to terms such as "*alleged* infringement" or "*alleged* infringer."  Plaintiffs will certainly comply with this Court's prior *Daubert* ruling regarding the sanitizing of expert reports, but BHN seeks to artificially sanitize all evidence—including its own internal documents—that expressly use such terminology.  *See, e.g.*, Ex. 7 at 4 (email from T. Frendberg to BHN personnel: "███████████████████████████████████████████████████ ███████████████████") (emphasis added); Dkt. 589-27 at 20 (BHN identifying and tracking subscribers that, in BHN's own words, were the "worst offenders"); Dkt.

---

[11] On summary judgment, BHN cited 35 purported subscriber denials of infringing activity (none concerning the works-in-suit) to show that they "had the effect on Bright House of raising questions as to whether the subscriber had committed an infringing act."  Dkt. 576 at 20.  These documents are on BHN's exhibit list and BHN confirmed that it intends to rely upon them at trial.

[12] BHN's argument also ignores that Plaintiffs need prove only that BHN knew of specific infringing subscribers, not of specific works infringed. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (standard of knowledge for contributory copyright liability is "[k]now, or have reason to know"); *see also Sony Music Ent. v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 233 (E.D. Va. 2019) (even under actual knowledge test in other jurisdictions, "[t]he standard is focused on the subscriber, not the particular works infringed, and the specific instance of infringement guides service providers to the source").

603-23 at 10 (proposing definition for "repeat complaints," with "Abusers" category receiving "[m]ore than one complaint in 7 days"). BHN apparently wants to redact this harmful evidence and other contemporaneous admissions from its internal emails and communications. That is plainly improper. Nor should Plaintiffs be prohibited from arguing reasonable inferences, including that infringement occurred or that many subscribers were "repeat infringers," based on a plain reading of BHN's internal documents. Any unfair prejudice that may result from the use of such terms can be cured by cross-examination at trial or an appropriate instruction from this Court. Ex. 8 at 8-9, 18-19 (*Warner Records Inc. v. Charter Commc'ns, Inc.*, No. 19-CV-874, Dkt. 768 (Order on *Daubert* motions)) (recognizing that "infringer" and similar terms are common to the case and that jurors can distinguish allegations from proven facts).[13]

**11. <u>Evidence of Infringement of Unasserted Works</u>.** BHN's motion to exclude evidence of infringement of unasserted works is duplicative of MIL 7 and should be rejected for the same reasons. It is otherwise vague, misguided, and targets highly relevant evidence. It is unclear if BHN's motion targets Plaintiffs' notices for works on which they have not sued, or Plaintiffs' and MarkMonitor's evidence of other infringement occurring on BHN's network, including MarkMonitor's business intelligence data produced in the case. In either case, the evidence at issue bears on BHN's knowledge of subscribers engaging in infringing activity on its network, as well

---

[13] This same reasoning applies to evidence, argument, and testimony referring to copyright infringement generally as "piracy."

as the amount of infringing P2P activity on BHN's network, which is critical to explain the difficulty of proving Plaintiffs' actual damages. The substantial relevance of this evidence heavily outweighs any potential prejudice; BHN's counsel is free to point out any limitations to the evidence on cross-examination.

12. **<u>Works-In-Suit of Music Publisher Plaintiffs</u>.** The Court should deny BHN's motion to exclude evidence that Music Publisher Plaintiffs' works-in-suit were identified in copyright notices sent to BHN. BHN does not—and cannot—contest that, as factual matter, each sound recording embodies a composition, which implicates a separate copyright. Thus, a notice of infringement of a sound recording, by its nature, provides notice of infringement of the underlying composition. The court in *Sony v. Cox* thus found that Cox had knowledge of alleged infringement of compositions based on substantially similar notices of infringement. *See Sony Music Ent. v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 233 (E.D. Va. 2019). BHN's motion is an attempt to take away from the jury the decision as to BHN's knowledge of infringement with respect to over 2,500 musical compositions in suit, which the Court already stated should be left for the jury to resolve at trial. *See* Dkt. 649 at 8.[14]

13. **<u>Subscriber Monitoring</u>.** BHN wants to tell the jury there was nothing it could do to detect or stop infringement on its network. Evidence of the technical

---

[14] The practical effect of granting this MIL should also not be lost. It would mean that when multiple rights are implicated in a single infringement, every rightsholder would have to send its own redundant separate notice. The purpose of sending a notice is to put an ISP on notice of infringing behavior so they can do something about it, not to put them on notice of potential claims.

capabilities available to and *actually used by* BHN during the relevant period are relevant to refute that argument.  It is undisputed that BHN's Authorized Use Policy reserved the right to use—and BHN in fact used— █████████████████ and other network-monitoring technologies to monitor aggregate subscriber activity and detect use of P2P protocols.  As BHN appears to acknowledge (Mot. at 14), there is also evidence that BHN used ████ to monitor individual subscribers.  BHN's contentions that such evidence reflects only "unfinished drafts" or was "authored by third parties," if true, goes to its weight, not to its admissibility.  The remainder of BHN's argument merely recites its *Daubert* motion regarding Dr. McGarty.

**14. <u>Throttling and Port Blocking</u>.**  The Court should deny BHN's request to exclude evidence concerning BHN's ability to block subscribers' access to P2P protocols through bandwidth throttling and port blocking.  Mot. at 15.  As BHN acknowledges, *see id.*, BHN had the capability to block P2P ports and throttle network speeds—and did, in fact, throttle bandwidth to punish non-paying subscribers—but chose not to do so for copyright infringement.  Ex. 9 (BHN 30(b)(6) witness, Sutterby Tr.) 241:24-243:6.  At most, BHN's arguments go to weight, not admissibility.

**15. <u>Purported Settlement Communications</u>.**  The Court should deny BHN's request to exclude evidence of "settlement negotiations between BHN and Plaintiffs and/or BHN and Rightscorp."  Mot. at 15-16.  BHN is not seeking to exclude information relating to a settlement dialogue, but rather is seeking to exclude BHN's misrepresentations to Plaintiffs' counsel when issues were raised about BHN's

response to infringement notices.  In April 2016, BHN's lawyer, Jerry Birenz, sent an email to Matt Oppenheim (counsel for Plaintiffs) stating, among other things, that (i) BHN had a policy ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████"; and (ii) ██████████ ███████████████████████████████████████████████████████████████ ██████████████████████ Ex. 10 at 1.  But discovery has shown that each of these things happened only in the three months preceding Mr. Birenz's April 2016 letter and, during the entirety of the Claim Period before then, BHN did neither.  BHN now seeks to characterize this letter as a "settlement" communication to exclude the evidence showing how BHN misled rightsholders.  The fact that BHN was unwilling to truthfully describe what its program had been for the prior years, and was hiding its actual conduct, speaks volumes to what BHN thought of its program.

As an initial matter, Mr. Birenz's letter does not on its face purport to be an offer of settlement.  But even then, BHN overstates the bounds of Rule 408.  The rule precludes admission of the fact or amount of an offer of settlement as evidence of liability or damages.  It does not provide a wholesale exclusion of anything purporting to be a settlement-related communication, including when such communications (like Mr. Birenz's letter) do not provide any offer of compromise or negotiation.  *See, e.g.*, *Hernandez-Sabillon v. Naturally Delicious, Inc.*, 2015 WL 10550934, at *2 (S.D. Fla. Dec. 23, 2015) (holding Rule 408 did not apply when letter at issue was "not an offer of compromise; it is simply a demand that Plaintiffs dismiss [the] action" and was not labeled a confidential settlement document).  Additionally, because Rule 408 does not

17

apply to evidence regarding the settlement of a *different* claim than the one at issue, it does not apply to BHN's communications with Rightscorp.   *E.g.*, *McClandon v. Heathrow Land Co.*, 2010 WL 336345, at *3 (M.D. Fla. Jan. 22, 2010) (collecting cases).

16. **Non-pay Terminations.**   The Court has already ruled that evidence that BHN terminated subscribers for non-payment, but not for infringement, "certainly is relevant" to Defendant's line of defense that "termination of infringers is untenable and essentially unconscionable because internet use is so ubiquitous and essential to the fabric of everyday life."   Dkt. 134 at 2.   BHN's ignores this entirely, asking the Court to now exclude this decidedly relevant information.   That should be denied.[15]

BHN's attempt to restyle its *Daubert* motion regarding Dr. McGarty (Dkt. 587) should also be rejected.   For the reasons explained in Plaintiffs' opposition to that moion (Dkt. 608), Dr. McGarty's opinion is relevant to Plaintiffs' case.

17. **Document Retention.**   BHN failed to preserve critical documents that would have shown whether BHN received all of Plaintiffs' notices.   BHN now intends to tell the jury that Plaintiffs sent roughly 50,000 notices to the wrong email address, abuse@rr.com, even though BHN identified that as a proper email address for BHN notices in a public registry database.   BHN intends to argue that because BHN has only a few records of such notices being forwarded to BHN, that the remainder were not.   That argument ignores that BHN would not have records because it failed to preserve most of those documents.   As such, evidence of BHN's failure to preserve is

---

[15] The *Sony v. Cox* court admitted evidence of terminations for non-payment in the same scenario.

highly relevant to rebut the argument about notice.  Even if the Court denies Plaintiffs' Motion for Spoliation sanctions, evidence of BHN's data and document loss is highly relevant.  *See Scott v. Hess Retail Operations, LLC*, No. 8:14-CV-1437-T-24, 2015 WL 4602605, at *4 (M.D. Fla. July 29, 2015) (denying motion *in limine* to exclude evidence of spoliation despite not granting spoliation instruction).

**18. <u>Gary Doda's Blog Posts.</u>**  BHN seeks to exclude blog posts that its employee, Gary Doda, posted as part of his job responsibilities.  In those posts, Mr. Doda engaged with BHN's customers on behalf of BHN under the moniker BHNtechXpert.  Ex. 11 (Doda Tr.) at 172:15-173:2, 174:1-2.  Mr. Doda often identified himself in his posts as "Gary" from "Bright House Networks."  Ex. 12 at 4.

Contrary to BHN's claims, these posts are neither irrelevant nor misleading. They detail BHN's ability to stop peer-to-peer infringement and its fear of losing customers if it did.  Specifically, Mr. Doda told subscribers that parental controls could prohibit the use of certain types of applications, that the port used to upload and download infringing content could be shut off, and that routers BHN provided had port-blocking capability.  *Id.*; Ex. 11 at 226:14-230:2.  And Mr. Doda's testimony about the posts lays bare why BHN did not take these and other steps to stop infringement: "I don't think any Internet service provider wants to terminate a customer relationship. All right? I mean, that's just the nature of the business. Nobody wants to lose a customer."  Moreover, while Mr. Doda could not specify the "date or time" of one exhibit, *id.* at 194:6-12, he never denied authoring any of the posts, questioned the authenticity of the content therein, or disclaimed the accuracy of what he wrote.

**19. <u>Communications by Former BHN Employees</u>.**  Plaintiffs do not currently plan to elicit this testimony but may do so if BHN elicits testimony that calls for it.

**20. <u>Witness Coaching Allegations</u>.**  BHN's motion seeks a general rule of applicability without specifying any particular testimony or questioning that it contends should be excluded.  This is improper, and on this basis alone, the motion should be denied.  *See SFR Servs., LLC* , 2021 WL 322367, at *3.

In any event, Plaintiffs generally do not intend to offer evidence regarding witness coaching, but reserve the right to do so where a witness contradicted his or her prior statement on a key issue following conferral with counsel.  The Court can address the admissibility of such testimony at trial when presented with a specific instance.

**21. <u>Dr. Furchtgott-Roth's Opinions About the Music Industry and P2P</u>.**  As BHN concedes, the Court reserved ruling "on the admissibility of Dr. Furchtgott-Roth's opinions relating to the music industry and the impact of P2P sharing" because, "if offered at trial," Plaintiffs may "lay a foundation for his qualifications to opine on these subjects."  Dkt. 638 at 9 (*Daubert* order).  BHN effectively seeks reconsideration of that ruling by arguing that such foundational testimony would "improperly invoke juror sympathy."  Setting aside that this argument, if accepted, would lead to the exclusion of any expert's testimony establishing their qualifications, it also fails to meet the high burden warranting the "extraordinary remedy" of reconsideration, *see Sec. & Exch. Comm'n v. Davison*, 2020 WL 10486309, at *1 (M.D. Fla. Dec. 3, 2020) (Scriven, J.) (citation omitted), and should therefore be rejected.

Dated: July 15, 2022

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Ste. 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
nsahni@cov.com

Respectfully submitted,

*/s/ Matthew J. Oppenheim*
Matthew J. Oppenheim
Jeffrey M. Gould
Alexander Kaplan
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com
alex@oandzlaw.com

David C. Banker, Esq. (0352977)
Bryan D. Hull, Esq. (020969)
BUSH ROSS, P.A.
1801 North Highland Ave.
P.O. Box 3913
Tampa, FL 33601-3913
Telephone: (813) 224-9255
dbanker@bushross.com
bhull@bushross.com

*Attorneys for Plaintiffs*