## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UMG RECORDINGS, INC., *et al.*,

      Plaintiffs,

*v.*

BRIGHT HOUSE NETWORKS, LLC

      Defendant.

Case No. 8:19-cv-710-MSS-TGW

## <u>JOINT PRETRIAL STATEMENT</u>

Pursuant to Local Rule 3.06, and the Court's Third Amended Case Management and Scheduling Order (ECF 314), as modified by the Court on June 10, 2022 (ECF 639), Plaintiffs and Defendant Bright House Networks, LLC ("Bright House") respectfully submit this Joint Pretrial Statement (the "Statement") regarding the jury trial scheduled to commence on August 1, 2022.

The parties reserve the right to propose modifications to this Statement, and the attached exhibits, for good cause and subject to the Court's approval. Good cause may include any modifications necessary to address subsequent Court orders, including the Court's rulings on the parties' pending motions, evidentiary issues, or any other matter.

## I.  STATEMENT OF JURISDICTION

This Court has original subject matter jurisdiction over Plaintiffs' contributory copyright infringement claims (brought pursuant to 17 U.S.C. § 101, *et seq*.) under 28 U.S.C. §§ 1331 and 1338(a). The Court's jurisdiction over the subject matter is not disputed. The parties do not contest that the Court has personal jurisdiction over the parties.

## II.  CONCISE STATEMENT OF THE NATURE OF THE ACTION

This is an action for contributory copyright infringement brought by plaintiffs, major record labels and music publishers ("Plaintiffs"), against Defendant Bright House Networks, LLC, an Internet service provider ("Defendant" or "Bright House").

Plaintiffs allege that Bright House is liable for contributory copyright infringement because it provided high-speed internet service to subscribers[1] that Plaintiffs allege are known repeat copyright infringers.  Plaintiffs allege that Bright House's conduct was willful and seek statutory damages for each copyrighted work infringed during the period of March 24, 2013 to May 17, 2016 (the "Claim Period").

Bright House denies that Plaintiffs possess an exclusive right in certain of the works at issue, that Bright House's customers infringed Plaintiffs' claimed copyrights, that Bright House had knowledge of its customers' alleged infringement, and that Plaintiffs can establish any element of contributory infringement.  Bright House further denies that any contributory infringement, if found, was willful and disputes Plaintiffs' calculation of the number of works eligible for a statutory damages award.

## III.   CONTENTIONS OF THE PARTIES

The parties set forth below a summary of their contentions for trial.  The parties do not necessarily agree with each other's summaries and contentions for trial and reserve all rights and objections.

### A.   Plaintiffs' Statement of Its Contentions

Plaintiffs seek to hold Bright House liable under the theory of contributory copyright infringement of over 7,000 of their copyrighted sound recordings and musical compositions because it provided high-speed internet service to known repeat infringers.  Plaintiffs sent Bright House over 100,000 notices pursuant to the Digital

---

[1] Plaintiffs refer to users of Bright House's internet service as subscribers; Bright House uses the term customers.

Millennium Copyright Act ("DMCA") that made Bright House aware that specific subscribers were repeatedly infringing Plaintiffs' copyrighted works by downloading, uploading, or making those works available for downloading using peer-to-peer software over Bright House's internet network.

Bright House purported to create a system to process and track the notices Plaintiffs sent, as well as the millions of DMCA notices Bright House received from other rightsholders. But instead of processing and acting on each notice, Bright House deleted and ignored the overwhelming majority of notices it received, willfully blinding itself to massive infringement on its network. While Bright House did very little in response to the tiny percentage of notices that it did process, Bright House tracked and knew that specific subscribers had been the subject of repeated infringement notices, including some who were the subject of hundreds or even thousands of notices. In spite of those repeated notices, Bright House continued to provide its high-speed internet service to these subscribers.

Bright House told its subscribers that it prohibited its service to be used for copyright infringement and had a public-facing "policy to terminate the access of repeat infringers." Under the law, Bright House had an obligation not to provide the means to infringe to subscribers that it knew were using its network to distribute infringing works. Put another way, Bright House had an obligation to act in response to infringement notices. But Bright House utterly failed to do so. Until 2016, when Bright House became concerned that it might not qualify for the DMCA safe harbor, Bright House never terminated, nor even slowed, the internet service of any infringing

subscribers—irrespective of the number of notices it received concerning a subscriber or whether the subscriber freely admitted that he or she was infringing.  As a result, Bright House enabled and contributed to thousands or tens of thousands of known, repeat infringers using Bright House's high-speed internet service to continue to infringe Plaintiffs' copyrighted works.

Under the law, Bright House is liable for willful contributory copyright infringement and for damages and remedies provided under Sections 504 and 505 of the Copyright Act.

### B.    Bright House's Statement of Its Contentions

Bright House contends that it cannot be liable for contributory infringement because (1) Plaintiffs cannot prove direct infringement, (2) Plaintiffs cannot prove Bright House had actual knowledge of the specific instances of infringement for which they seek to hold Bright House secondarily liable, and (3) Plaintiffs cannot prove Bright House intentionally induced or encouraged any specific instances of infringement, or is otherwise liable for contributory infringement.  Bright House further denies that any contributory infringement, if found, was willful.

Bright House did not contribute to infringement by its customers.  To the contrary, during the Claim Period, Bright House implemented an anti-infringement program to inform customers about allegations contained in the notices received from copyright owners, including Plaintiffs.  The goal of this program was to educate customers about the consequences of copyright infringement and to discourage and prevent online copyright infringement.  Bright House's program was modeled after the

industry-standard, touted by Plaintiffs at the time as a set of "best practices" for ISPs—the Copyright Alert System, or "CAS." Bright House devoted substantial resources to developing and executing this anti-infringement program to address and discourage online infringement.

Bright House contends that Plaintiffs have not—and cannot—demonstrate that its customers infringed each of Plaintiffs' claimed copyrights and that it had knowledge of its customer's alleged infringement. Although Bright House provided a connection to the Internet, it did not know or control what customers did online. Bright House also lacked the technical means to verify allegations of infringement contained in notices. Furthermore, Bright House's internal records reflect that customers would tell Bright House that they disputed the allegations in the notices or state that they were unaware of the alleged infringement. Additionally, Plaintiffs erroneously sent tens of thousands of copyright notices to an email address—abuse@rr.com—which was owned and controlled by Time Warner Cable (a separate and independent ISP), not Bright House. There is no evidence in the record that Bright House ever received these notices, except for 67 notices that appear to have been forwarded by Time Warner Cable to Bright House. Plaintiffs cannot prove Bright House's knowledge of the claimed infringements by Bright House's customers based on notices that Bright House never received.

Bright House disputes that Plaintiffs possess an exclusive right in all of the works at issue. In particular, as to certain works at issue in the case, Plaintiffs cannot prove a contractual relationship between the claimant on the copyright registration

and the Plaintiff asserting the work or the Plaintiff asserting the work otherwise lacks evidence proving that it possesses an exclusive right to that copyright.   In addition, Plaintiffs cannot prove that certain works have been registered, which is a prerequisite to bringing suit and obtaining statutory damages, which they seek here.   Bright House further contends that, should Bright House be found liable, Plaintiffs' damages per work should be at the low end of the statutory range.   Bright House also contends that Plaintiffs cannot recover statutory damages for works not timely registered, that each musical composition/sound recording pair should be considered one "work" for purposes of statutory damages, that each compilation, including a sound recording registration that contains multiple works and that were registered as a collective work or compilation or an album should be considered one "work" for purposes of statutory damages, that any damages award should be reduced due to Plaintiffs' failure to take reasonable steps to mitigate their damages, and that Plaintiffs cannot prove willfulness.

## IV.    LIST OF EXHIBITS

Plaintiffs' exhibit list with Bright House's objections thereto is attached as **Exhibit A.**   Bright House's exhibit list with Plaintiffs' objections thereto is attached as **Exhibit B.**   A key of codes used for objections to individual exhibits on these exhibit lists is attached as **Exhibit C.**

Pursuant to Section III.A.3 of the Third Amended Case Management and Scheduling Order (ECF 314), Plaintiffs and Bright House have provided projections of the "sponsoring witness" for each document, where possible; the named sponsoring witnesses are subject to change at trial.

## V.   <u>LIST OF WITNESSES AND DEPOSITION DESIGNATIONS</u>

### A.   Plaintiffs' Witness and Expert List

Plaintiffs' witness and expert list is attached as **Exhibit D**, and Bright House's objections to Plaintiffs' witness and expert list is attached as **Exhibit E.**

### B.   Bright House's Witness and Expert List

Bright House's witness and expert list is attached as **Exhibit F,** and Plaintiffs' objections to Bright House's witness and expert list is attached as **Exhibit G.**

### C.   Deposition Designations

The parties are continuing to confer on objections to affirmative designations, counter-designations, and objections to counter designations with the aim of minimizing burdens on the Court.  The parties anticipate that the ongoing conferral process, and the Court's rulings on pending motions and motions *in limine,* will help streamline the scope of designations and disputes.  Accordingly, the parties do not request the Court's resolution of specific designation disputes at this time.  Instead, the parties have proposed a procedure for addressing those disputes as needed during trial, when the disputes are ripe and it is clearer which witnesses will be called by designations and which designations will be operative, to minimize the burden on the Court and ensure efficient use of the Court's time and resources.

## VI.   THE TYPE AND AMOUNT OF MONETARY DAMAGES

### A.   Plaintiffs' Position

Plaintiffs are seeking statutory damages for willful copyright infringement of up to $150,000 per work infringed pursuant to the Copyright Act, 17 U.S.C. § 504, as well as the remedies provided under 17 U.S.C. § 505.

Each of the works for which Plaintiffs are asserting claims are works that have been independently exploited, live their own copyright life, and have independent economic value.  Accordingly, each work is entitled to a separate statutory damages award under Eleventh Circuit law.  *See MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996) (even where the works at issue are part of a compilation, whether each separate work is entitled to a separate statutory award is determined by whether each work "can live [its] own copyright life … [t]his test focuses on whether each expression has an independent economic value and is, in itself, viable.").

Plaintiffs dispute Bright House's position that Plaintiffs are not entitled to separate statutory damages awards for sound recordings and musical compositions where the musical composition has been recorded in a sound recording and both have been infringed.  This position is contrary to the Copyright Act, as the text of Section 504 repeatedly uses the singular term "copyright owner," demonstrating that the single-recovery rule applies only where, unlike here, the multiple copyrights have a single owner.  17 U.S.C. § 504(c)(1); *see also Teevee Toons, Inc. v. MP3.com, Inc.*, 134 F. Supp. 2d 546, 548 (S.D.N.Y. 2001) (holding that Congress meant to preclude only a single plaintiff from recovering multiple statutory damages for infringements of

different versions of a single work), *disagreed with by EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 95 (2d Cir. 2016).

Plaintiffs' dispute Bright House's contention that Plaintiffs had a duty to mitigate damages for copyright infringement.

### B.   Bright House's Position

Bright House notes that Plaintiffs have elected to restrict their demand for monetary damages to statutory damages pursuant to 17 U.S.C. § 504(c).  Plaintiffs allege that 7,271 works-in-suit are eligible for separate statutory damages awards. Assuming that liability for contributory copyright infringement is found, Bright House denies that Plaintiffs are entitled to the amount of statutory damages that Plaintiffs request on multiple grounds, including:

1.   <u>Eligibility for statutory damages</u>:  A copyright holder may seek statutory damages for infringement that occurs:  (1) after it registers the work; or (2) during the period after the work is first published and before registration, as long as the plaintiff registers the work within three months of first publication. 17 U.S.C. § 412(2); *Pronman v. Styles*, 676 F. App'x 846, 848 (11th Cir. 2017) (affirming plaintiffs "were clearly not entitled to these [statutory] damages" on such grounds).  Plaintiffs are not eligible for an award of statutory damages where they cannot show the work was infringed after it was registered or within three months after first publication.

2.   <u>Counting of works</u>:  17 U.S.C. § 504(c)(1) allows for a single statutory damages award for each "work" infringed.  Where Plaintiffs assert infringement of a sound recording that is derivative of an asserted musical composition, that pair must

be counted as a single "work" for the purposes of a statutory damages award.  *See* 17 U.S.C. § 504(c)(1); *id*. § 101; *see also, e.g.*, *Capitol Rec., Inc. v. MP3tunes, LLC*, 28 F. Supp. 3d 190, 192 (S.D.N.Y. 2014); *Spooner v EEN, Inc.,* 2010 WL 1930239, at *4 (D. Me. May 11, 2010).  Here, many of the sound recordings-in-suit are derivative of the musical compositions-in-suit.  In addition, where multiple recordings appear on a compilation, Plaintiffs are limited to a single award of statutory damages per compilation and cannot seek statutory damages for individual parts of that compilation.  *See* ECF 330 at 15 (Order) (Sept. 7, 2021); 17 U.S.C. § 504(c)(1); *id.* § 101.  Here, many of the sound recordings-in-suit were registered with the U.S. Copyright Office and commercially released as parts of albums.  The number of "works" eligible for a statutory damages award therefore must be reduced to account for these issues.

3.  <u>Mitigation</u>:  Any potential award of statutory damages should be reduced to account for Plaintiffs' failure to mitigate damages that they could have avoided through reasonable effort.

4.  <u>No willfulness</u>:  Under 17 U.S.C. § 504(c)(2), where a copyright owner proves that the infringement was committed "willfully," the maximum award of statutory damages may be increased from $30,000 per such work to $150,000 per such work.  Plaintiffs cannot sustain their burden of showing that any contributory infringement by Bright House, if found, was "willful," and thus Plaintiffs are not eligible for any award in excess of $30,000 per work.

5.   <u>Additional defenses</u>:   Bright House further reserves the right to assert additional defenses to Plaintiffs' demand for statutory damages, including that any such award may violate due process, would not be reasonably related to Plaintiffs' actual damages, and would otherwise be grossly excessive.

## VII.   STIPULATED FACTS

1.   Plaintiffs are a group of record companies and music publishers, known as Universal Music Group, Sony Music Entertainment, Warner Music Group, Universal Music Publishing Group, Sony Music Publishing, and Warner Chappell Music.

2.   Between 2013 and 2016, Bright House was a provider of cable services in the United States, offering video programming, Internet services, and voice services to residential and commercial subscribers in parts of Florida, California, Alabama, Indiana, and Michigan.

3.   From March 24, 2013 to May 17, 2016, Bright House provided Internet access to between 1.8 and 2.2 million residential customers.

4.   Plaintiffs, through their trade group called the Recording Industry Association of America ("RIAA"), sent notices to Bright House alleging copyright infringement of their works by users of Bright House's internet service.

5.   Throughout the Claim Period, it was a violation of Bright House's Acceptable Use Policy to use Bright House's internet services to commit copyright infringement.

6. Bright House adopted a program for handling copyright notices it received from rightsholders, including the notices sent by RIAA.

7. Bright House maintained a Security and Abuse Team whose members, at times, communicated by phone and email with customers concerning copyright notices.

8. In September 2015, Bright House sent "Final Warning Letters" to a group of customers who were the subject of a high volume of notices. The Final Warning Letter demanded that the customers contact Bright House regarding the notices.

9. After sending a Final Warning Letter, Bright House terminated the accounts of 17 customers based on its continued receipt of notices for such customers.

10. Bright House did not terminate all of the customers who had received Final Warning Letters, including some who never responded to the letter.

11. Plaintiffs have not authorized Bright House or its customers to make the distributions of Plaintiffs' works-in-suit at issue here.

12. Plaintiffs own or control exclusive rights to 6,818 works that Plaintiffs have asserted in this case, and such works are validly registered, as set forth in the Stipulation Regarding the Valid Registration and Plaintiffs' Ownership of or Exclusive Rights to Certain Works-in-Suit (ECF 561 & Ex. A). Bright House disputes ownership or registration of the remaining works Plaintiffs have asserted (ECF 561 & Ex. B).

## VIII.   AGREED PRINCIPLES OF LAW

1.     All claims and defenses must be proved by a preponderance of the evidence.

2.     A plaintiff can prove ownership of a copyright by demonstrating that the plaintiff is the author or creator of the work or that the plaintiff acquired legal ownership by transfer of one or more exclusive rights in the copyright.

3.     For a copyright plaintiff to sue a contributory infringer, there is no legal requirement to also sue the underlying direct infringer.

4.     A plaintiff must establish direct copyright infringement in order to hold another party liable for contributory copyright infringement.

## IX.   CONTESTED ISSUES OF FACT AND LAW

### A.   Plaintiffs' Position

Contested Issues of Fact

1.     Did Bright House's subscribers upload, make available for download, or download each of Plaintiffs' Works in Suit over Bright House's internet service?

2.     Did Bright House know or have reason to know that its subscribers were uploading, downloading, or making available Plaintiffs' Works in Suit?

3.     Did Bright House knowingly provide high-speed internet service to subscribers after it knew, or had reason to know, those subscribers were the subject of multiple infringement notices?

14

Contested Issues of Law

1.      Do Plaintiffs own or control the asserted copyrighted musical compositions and sound recordings to which Bright House has not stipulated (as listed in Dkt. 561 Ex. B) such that Plaintiffs have standing to bring copyright infringement claims over them?

2.      Did Bright House's subscribers infringe Plaintiffs' copyrights by reproducing, distributing, or making available Plaintiffs' Works in Suit without authorization?

3.      Is Bright House liable for contributory infringement of Plaintiffs' copyrighted works asserted in this action?

4.      Did Bright House know, or act with reckless disregard as to whether, its subscribers infringed Plaintiffs' Works in Suit?

5.      If Bright House is liable for contributory infringement, what amount of statutory damages should be awarded to Plaintiffs pursuant to Section 504 of the Copyright Act for each of the works infringed?

6.      Whether the Music Publisher Plaintiffs can establish ownership of or exclusive rights to a copyrighted work based on chain of title, or a grant of rights, from an author who is not the claimant listed on the copyright registration.

7.      Whether to demonstrate Bright House materially contributed to its subscribers' infringement of Plaintiffs' works, Plaintiffs must show that Bright House intended to cause such infringement and, if so, whether Plaintiffs can prove such intent

by demonstrating that Bright House continued to provide its internet service to subscribers knowing that it was substantially certain to result in infringement.

8.     Whether demonstrating that Bright House's subscribers made Plaintiffs' works available for download on peer-to-peer networks is sufficient to establish direct infringement of Plaintiffs' exclusive right to distribute their works.

9.     Whether Plaintiffs are entitled to separate statutory awards for a musical composition and a sound recording embodying such composition, where each is owned by different parties and both have been infringed.

10.     Whether Plaintiffs are entitled to a separate statutory award for each sound recording they assert, even if such sound recording was at some point marketed or distributed as part of a compilation, i.e., an album, because each has an independent economic value.

11.     Whether Plaintiffs have any duty to mitigate damages from copyright infringement.

**B.     Bright House's Position**

Contested Issues of Fact

1.     Whether the works-in-suit were pre-registered comporting with 17 U.S.C. § 412.

2.     Whether Plaintiffs possess exclusive rights in the copyrights in each of the works-in-suit.

3.      How many works-in-suit are alleged by Plaintiffs as being infringed by Bright House's customers during the Claim Period and for which Plaintiffs seek to hold Bright House secondarily liable.

4.      Whether Bright House's customers used Bright House's Internet services to infringe any of the copyrights of the works-in-suit to which Plaintiffs possess an exclusive right.

5.      Whether Bright House had knowledge that its customers used Bright House's Internet services to infringe any of the copyrights of the works-in-suit to which Plaintiffs possess an exclusive right.

6.      Whether Bright House intentionally induced or encouraged the use of Bright House's Internet services by any of its customers to infringe any of the copyrights of the works-in-suit to which Plaintiffs possess an exclusive right.

7.      Whether any contributory infringement by Bright House was willful.   .

8.      The number of works infringed by Bright House's subscribers for which Bright House is found secondarily liable for purposes of calculating statutory damages.

9.      What amount of statutory damages, if any, should be awarded to Plaintiffs for any work that Bright House contributorily infringed.

10.     Whether Plaintiffs failed to take reasonable steps to mitigate their damages such that any award of statutory damages should be commensurately reduced.

Contested Issues of Law

1.      Whether Plaintiffs must show that Bright House's goal in providing its Internet services—its objective—was to encourage infringement.

2.      Whether Bright House's mere knowledge that its Internet services could potentially be used, or was actually used, by its customers to infringe is enough to subject Bright House to contributory infringement liability.

3.      Whether Bright House's failure to take affirmative steps to prevent infringement is enough to subject Bright House to contributory infringement liability.

4.      Whether the receipt of a notice alleging copyright infringement, without more, is enough to establish that Bright House had knowledge of a specific act of infringement.

5.      Whether any award of statutory damages must bear some relationship to the actual damages suffered.

6.      Whether a sound recording that is derivative of a musical composition comprise a single "work" for purposes of statutory damages pursuant to 17 U.S.C. § 504(c)(1).

7.      Whether multiple parts of a compilation comprise  a single "work" for purposes of statutory damages pursuant to 17 U.S.C. § 504(c)(1).

## X.      LIST OF PENDING MOTIONS FOR RESOLUTION BY THE COURT

1.      Bright House's Motion for Spoliation Sanctions (ECF 447).

2.      Plaintiffs' Motion to Strike Certain Expert Testimony of George Strong (ECF 581).

3.      Plaintiffs' Motion to Strike Opinions and Testimony of Wayne C. Coleman (ECF 584).

4.      Plaintiffs' Motion for Spoilation Sanctions (ECF 585).

5.      Bright House's Motion to Strike the Opinions and Testimony of Terrence P. McGarty (ECF 587).

6.      Plaintiffs' Omnibus Motion In Limine (ECF 655).

7.      Plaintiffs' Motion In Limine To Exclude MovieLabs' Internal Documents (ECF 656).

8.      Bright House's Omnibus Motion In Limine (ECF 657).

## XI.   <u>STATEMENT OF THE USEFULNESS OF FURTHER SETTLEMENT DISCUSSIONS</u>

### A.   Plaintiffs' Statement

Plaintiffs remain willing to engage in good faith settlement discussions with Bright House, and remain in communication with the mediator, Judge S. James Otero (Ret.).

### B.   Bright House's Statement

On November 9, 2021, the parties participated in an all-day mediation with Judge S. James Otero (Ret.) of JAMS and Magistrate Judge Hegarty of the United States District Court for the District of Colorado, which did not result in settlement. Bright House has had subsequent communications with the mediators and remains open to good faith settlement discussions with Plaintiffs.

## XII.   <u>ANTICIPATED LENGTH OF TRIAL</u>

The parties estimate that the jury trial will last 15 days.

### A.    **Plaintiffs' Position on Trial Timing**

Plaintiffs' are willing to agree to a reasonable allocation of the trial time that each side has to present its case but believe that Bright House's proposal of a 50-50 split unfairly prejudices Plaintiffs in light of the current posture.  Specifically, Plaintiffs have identified eleven witnesses they expect to call live in their case-in-chief, in addition to those they will present by deposition, whereas Bright House has identified only one witness that it expects to call live in its case.  Further, consistent with the Court's preference that the parties stipulate to authenticity and other basic evidentiary issues, Plaintiffs have attempted to reach agreement with Bright House on a number of evidentiary issues relating to the authenticity of thousands of audio files produced by Plaintiffs and containing the sound recordings and musical compositions at issue, and some remaining issues concerning ownership.  Bright House has not, to date, stipulated to most of these basic evidentiary issues, which will require Plaintiffs to spend hours of trial time presenting evidence and testimony on issues that should not reasonably be in dispute.

Nonetheless, Plaintiffs remain willing to discuss with Bright House the proper allocation of trial time that accounts for these distinctions, and if possible, to propose such an allocation to the Court before the start of the trial.  To the extent the parties cannot agree in advance, Plaintiffs are confident the Court can and will administer a fair, sensible, and orderly trial that accounts for the parties' competing concerns.

## B.      Bright House's Proposed Trial Timing

Bright House proposes that each side have a total of 27.5 hours of time to present its case (including opening statements and closing arguments).[2]

The two primary arguments Plaintiffs make do not warrant departure.  First, Plaintiffs' focus on the number of live witnesses each side will present is misguided because the witness testimony Bright House will present by deposition will also count toward the time limit, just as live testimony would.  And in in addition to presenting its case disputing liability and responding to Plaintiffs' claims for damages and willfulness, Bright House will also have to present its affirmative grounds for limiting statutory damages, including reductions in the number of works eligible for damages based on a number of statutory defenses.  *See* VI.B.  Second, Plaintiffs' difficulty in establishing the authenticity or ownership of certain of its own works cannot be used to prejudice Bright House, particularly when Plaintiffs chose to assert over 7,000 works in a single action.  Bright House already stipulated to Plaintiffs' ownership or exclusive control of 6,818 of the works Plaintiffs assert in this case.  For the remaining works, Bright House has explained the basis for its position.  Earlier this week, Plaintiffs sent positions on 80 works that Bright House is evaluating.  The fact Plaintiffs waited until the eve of trial to address these issues is a problem of their own making and Bright House is entitled to evaluate Plaintiffs' position without having its trial time reduced.

---

[2]   This proposal is based on an estimated 55 hours of total trial time available, based on assumptions of (i) 4.5 hours on the record each day, and (ii) 3.5 days being excluded for voir dire, instructing the jury, the charge conference, and any emergency issues that may arise in the Court's other matters during our trial.

It is likely that both parties will pursue stipulations to streamline trial and those stipulations are not a basis to unequally allocate trial time or change the division of times. Both sides deserve equal time to address their claims and defenses/damages reductions. How the parties allocate that time between live witnesses, deposition designations, stipulations, and evidence is up to each side and is not a reason for an unfair time allocation. The allocation itself should be equal.

## XIII.  TRIAL DISCLOSURE AND OBJECTION PROCEDURES

The parties have attempted to reach agreement on certain administrative trial procedures to ensure a fair and efficient trial process for the benefit of the Court and parties. Due to the likelihood that many of these disputes may be mooted or narrowed as the parties continue their conferral efforts, receive the Court's rulings on motions *in limine*, and further develop their trial strategies as testimony comes in at trial, the parties jointly propose and agree to deferring resolution of certain disputes until they are ripe. The parties have listed below their agreements and disputes on these procedures. These agreements and proposals on disputed procedures are made in good faith with the understanding that trials are dynamic, the COVID-19 situation is uncertain, and adjustments may be required or warranted on a non-waiver basis, including based on the Court's preferences and practices, COVID-19, witness availability or other reasons.

### A.  Agreed Procedures

1.     **Opening statement demonstratives**—The parties will disclose opening statement demonstratives by 7:00 pm the day before the first day of trial,

confer in good faith over any disputes that evening, and present unresolved issues to the Court on the first day of trial.

       2.    **List of witnesses**—Parties will identify live witnesses they intend to call by no later than 7:00 pm at least two calendar days before the expected testimony.  Live witnesses that a party intends to call on a Monday will be disclosed by noon the previous Friday.  Parties will identify witnesses they intend to call by deposition designation by 7:00 pm at least four business day before the expected testimony is played.  Each day at 7:00 pm, the parties will identify the order in which they intend to call their witnesses on the following trial day.

       3.    **Specific deposition designation disputes**—To minimize the burden on the Court to resolve specific designation disputes by all parties, Plaintiffs propose that the party intending to call a witness to testify by deposition will disclose a list of deposition designations, by page and line number, by 7:00 pm at least four business days before the deposition is expected to be played.  Within 24 hours of such disclosure, the other party may disclose objections and affirmative/counter designations.  All disclosed designations must be from within the party's originally-served designations, absent a showing of good cause for minor modifications.  The parties shall promptly confer on disputed issues and present any unresolved disputes to the Court at the Court's earliest convenience (at least one business day before the designation is expected to be played).  The party calling the witness to testify by deposition will provide a copy of the final video clip including all parties' designations

and any resolution of disputes presented to the Court by 11:00 pm one calendar day before the deposition is played.

4.     **Unmodified blow-ups and call-outs**—The parties agree that unmodified blow-ups and call-outs of non-demonstrative exhibits with or without highlighting will not be considered a demonstrative exhibit.  The party intending to use such unmodified blow-ups and call-outs need not disclose the actual non-demonstrative exhibits if they have been previously disclosed.

5.     **No disclosure of cross-examination exhibits**—The parties are not required to identify any non-demonstrative or demonstrative exhibits to be used with any witness on cross-examination; however, non-demonstrative exhibits must be included on the exhibit list of the party using the non-demonstrative exhibits on cross-examination other than those used for impeachment.

6.     **Exhibit binders**—If a party provides a binder of exhibits to a witness (non-demonstrative and/or demonstrative), the party will provide two copies of the binder to the opposing side at the same time as it provides the binder to the witness.  In the event testimony carries into a second or subsequent day, the party offering the binder shall have the right to collect all exhibit binders from the witness and opposing counsel at the end of the trial day.

**B.     Disputed procedures**

1.     **Plaintiffs' Proposal**

Plaintiffs propose the following trial management procedures designed to ensure that disputes on these subjects are resolved in a fair and efficient manner, with

sufficient time for the Court to resolve disputed issues typically by the end of the trial day before an issue is presented to the jury.

(a)     **Disclosure of demonstrative exhibits to be used on direct with live witnesses**—The party calling a live witness will disclose a list of demonstrative exhibits to be used on direct exam at least 24 hours before the witness is called (and by at least 9 a.m. the calendar day before the witness testifies), the parties will promptly confer in good faith over any disputes, and present unresolved issues to the Court at the end of the trial day before the witness testifies.

(b)     **No disclosure of non-demonstrative exhibits to be used on direct with live witnesses**—The parties have already agreed that exhibits to be used with live witnesses on cross examination need not be disclosed in advance; there is no principled basis for applying a different rule for exhibits to be used with live witnesses on direct examination.

(c)     **Global/general designation dispute**—Bright House has identified designations from 57 different deposition transcripts, spanning four separate litigations, which it contends it may play at trial.  In some instances, Bright House has designated three or four separate deposition transcripts from a single witness, who Bright House also deposed in this case.  In other instances, Bright House has designated testimony from witnesses expected to testify live.  As Plaintiffs have repeatedly made clear, since at least June 15, 2022, Plaintiffs object in full to Bright House presenting designations from any case other than this one or the related *Warner*

*Music v. Charter Communications* case, certain of which the parties have agreed to cross-use.  Specifically, Plaintiffs object, pursuant to Federal Rules of Evidence 611(a), 403 and Federal Rule of Civil Procedure 32(a) to Bright House presenting (1) designations from *Sony v. Cox* and *UMG Recordings, Inc. v. Grande Communications*, and (2) designations of any witness who is available to testify live, as duplicative, wasteful, unnecessary, misleading, prohibited and confusing, including pursuant to the Court's discretion to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence."  FRE 611(a).  Because this objection is not a dispute over specific line/pages, Plaintiffs believe this threshold issue can and should be resolved now.

(d)   **Closing argument demonstratives**—The parties will disclose closing argument demonstratives by 7:00 pm the day before closing arguments, confer in good faith over any disputes that evening, and present unresolved issues to the Court at the Court's earliest convenience.  Plaintiffs do not agree with Bright House's proposal to require Plaintiffs to disclose such demonstratives two business days before closing argument, while Bright House is still presenting its case.

2.   **Bright House's Proposal**

Bright House believes the Court should implement trial management procedures that will ensure that disputes on these subjects are crystalized and brought to the attention of the Court in sufficient time for the Court to reasonably be able to hear them and on the schedule indicated by the Court at a hearing earlier this week

(i.e., no later than the end of the trial day on the day prior).  Bright House's proposed trial management procedures are presented below.

        (a)    **Disclosure of demonstrative exhibits to be used on direct with live witnesses**—The party calling a live witness will disclose a list of demonstrative exhibits to be used on direct at 7:00 pm two business days before the witness testifies; the opposing party will serve any objections at 8:30 pm; the parties will meet and confer that evening; and the opposing party may present any objections to the Court the business day before the witness testifies.

        (b)    **Disclosure of non-demonstrative exhibits to be used on direct with live witnesses**—The party calling a live witness will disclose a list of non-demonstrative exhibits to be used on direct at 7:00 pm two business days before the witness testifies; the opposing party will serve any objections at 8:30 pm; the parties will meet and confer that evening; and the opposing party may present any objections to the Court the business day before the witness testifies.

        (c)    **Response to Plaintiffs' global/general designation dispute**—There are 63 Plaintiffs and one Defendant.  It is not surprising that Bright House would have to designate significantly more transcripts to cover all the witnesses that are either outside subpoena power, are corporate designees, or may be needed to rebut potential arguments in Plaintiffs' case.  This issue is compounded by the fact Plaintiffs have filed many copyright infringement litigations in which these same witnesses have testified and those transcripts are designated for cross-use in this case,

further expanding an already daunting number of transcripts for Plaintiffs' witnesses. Since Bright House does not know how Plaintiffs will present their case, it had to designate testimony more broadly at this stage of the pretrial proceedings, so that it could be prepared to rebut Plaintiffs' case.

(d) **Closing argument demonstratives**—The parties will disclose any closing argument demonstratives by 7:00 pm two business days before closing arguments; the parties will exchange objections at 8:30 pm two business days before closing arguments; the parties will meet and confer that evening; and the parties may present any objections to the Court the business day before closing arguments

## XIV. <u>PROPOSED JURY INSTRUCTIONS</u>

Pursuant to the Court's Order on the Joint Motion to Amend the Scheduling Order (ECF 647), the parties anticipate submitting proposed concluding jury instructions on July 22, 2022.  The parties' jointly proposed preliminary instructions (including disputed instructions) are attached as **Exhibit H** and will separately be provided to the Court by email.

## XV. <u>PROPOSED *VOIR DIRE* QUESTIONS</u>

The parties' joint proposed *voir dire* questions to be asked in addition to the Court's default *voir dire* questions (including any disputed issues) are attached as **Exhibit I** and will separately be provided to the Court by email.

## XVI.  **PROPOSED VERDICT FORMS**

Pursuant to the Court's Order on the Joint Motion to Amend the Scheduling Order (ECF 647), the parties anticipate submitting proposed jury verdict forms on July 22, 2022.

Dated:  July 15, 2022

/s/ _Andrew H. Schapiro_
Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
andrewschapiro@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
charlesverhoeven@quinnemanuel.com
davideiseman@quinnemanuel.com
lindabrewer@quinnemanuel.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
melkin@winston.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
jgolinveaux@winston.com

William J. Schifino, Jr.
Florida Bar No. 564338
GUNSTER, TOAKLEY &
STEWART, P.A.
401 E. Jackson St., Ste. 2500
Tampa, FL 33602
Telephone: (813) 228-9080

/s/ _Matthew J. Oppenheim_
Matthew J. Oppenheim
Jeffrey M. Gould
Alexander Kaplan
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com
alex@oandzlaw.com

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
nsahni@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

David C. Banker
Florida Bar No. 0352977
Bryan D. Hull
Florida Bar No. 020969
BUSH ROSS, P.A.
1801 North Highland Avenue P.O. Box
3913 Tampa, FL 33601-3913
Telephone: (813) 224-9255
dbanker@bushross.com
bhull@bushross.com

_Attorneys for Plaintiffs_

bschifino@gunster.com

*Attorneys for Defendant*