IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | |
| Plaintiffs, | Case No. 8:19-cv-710-MSS-TGW |
| v. | |
| BRIGHT HOUSE NETWORKS, LLC | |
| Defendant. | |

## JOINT FINAL JURY INSTRUCTIONS

Pursuant to the Court's Third Amended Case Management and Scheduling Order (ECF 314), as modified by the Court (ECF 639 and ECF 647) (the "Case Management Order"), Plaintiffs and Defendant Bright House Networks, LLC ("Bright House") respectfully submit these Joint Final Jury Instructions. Disputed instructions are identified by yellow highlighting in the title of the instruction and include the parties' objections in footnotes as directed by the Case Management Order. Where an instruction is proposed by only one party, that party is identified in the title. Pursuant to the Court's direction, changes jointly proposed by the parties to the Eleventh Circuit Pattern Jury Instructions for civil cases have been clearly identified, with Plaintiffs' proposed changes highlighted in blue and Bright House's highlighted in green.

The parties respectfully reserve the right to propose modifications for good cause and subject to the Court's approval. The parties specifically reserve the right to

1

further address or propose revisions to the proposed jury instructions as the Court

decides any of the disputed legal issues that remain unresolved, and/or in response

to the parties' trial presentations, orders issued by the Court today, and the evidence

admitted at trial.

Dated:  July 22, 2022

/s/ _Andrew H. Schapiro_
Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
andrewschapiro@quinnemanuel.com

Charles K. Verhoeven
David Eiseman
Linda J. Brewer
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
charlesverhoeven@quinnemanuel.com
davideiseman@quinnemanuel.com
lindabrewer@quinnemanuel.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
melkin@winston.com

Jennifer A. Golinveaux
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
jgolinveaux@winston.com

/s/ _Matthew J. Oppenheim_
Matthew J. Oppenheim
Jeffrey M. Gould
Alexander Kaplan
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Fl.
Washington, DC 20016
Telephone: (202) 621-9027
matt@oandzlaw.com
jeff@oandzlaw.com
alex@oandzlaw.com

Neema T. Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
nsahni@cov.com

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
jsperling@cov.com

David C. Banker
Florida Bar No. 0352977
Bryan D. Hull
Florida Bar No. 020969
BUSH ROSS, P.A.

William J. Schifino, Jr.
Florida Bar No. 564338
GUNSTER, TOAKLEY &
STEWART, P.A.
401 E. Jackson St., Ste. 2500
Tampa, FL 33602
Telephone: (813) 228-9080
bschifino@gunster.com

*Attorneys for Defendant*

1801 North Highland Avenue P.O. Box
3913 Tampa, FL 33601-3913
Telephone: (813) 224-9255
dbanker@bushross.com
bhull@bushross.com

*Attorneys for Plaintiffs*

INSTRUCTION NO. 1.: <u>Introduction</u>[1]

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

---

[1]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 3.1 (Introduction).

INSTRUCTION NO. 2.: <u>Duty to Follow Instructions</u>[2]

Your decision must be based only on the evidence presented here.  You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole.  You must not single out or disregard any of the instructions on the law.

The fact that corporations are involved as parties must not affect your decision in any way.  A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice.  When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

---

[2]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 3.2.2 (The Duty to Follow Instructions – Corporate Party Involved).

INSTRUCTION NO. 3.: <u>Direct and Circumstantial Evidence</u>[3]

As I said before, you must consider only the evidence that I have admitted in the case.  Evidence includes the testimony of witnesses and the exhibits admitted.  But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case.  Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions.  You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact.  There's no legal difference in the weight you may give to either direct or circumstantial evidence.

---

[3]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 3.3 (Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court).

INSTRUCTION NO. 4.: <u>Credibility of Witnesses</u>[4]

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and how important that testimony was.  In making that decision you may believe or disbelieve any witness, in whole or in part.  The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

---

[4]  Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 3.4 (Credibility of Witnesses).

INSTRUCTION NO. 5.: <u>Impeachment of Witnesses Because of Inconsistent Statements</u>[5]

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact.  And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it.  People naturally tend to forget some things or remember them inaccurately.  So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

---

[5]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 3.5.1 (Impeachment of Witnesses Because of Inconsistent Statements).

INSTRUCTION NO. 6.: <u>Expert Witnesses</u>[6]

When scientific, technical, or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion.  As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

---

[6]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 3.6.1 (Expert Witnesses).

INSTRUCTION NO. 7.: <u>Responsibility for Proof:  Plaintiffs' Claim</u>[7]

In this case, for each individual claimed copyrighted work asserted by Plaintiffs,[8]  it is the responsibility of Plaintiffs to prove every essential part of their claim by a "preponderance of the evidence."  This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Plaintiffs' claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiffs.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

---

[7]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 3.7.1 (Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 2017 WL 10844685, at *2 (S.D.N.Y. Dec. 8, 2017) (noting that "copyright infringement is determined on a work-by-work basis"); *id.* No. 1:13-cv-816 (ECF 435) at 3110:17-20 (Jury Charge) (S.D.N.Y. Apr. 26, 2018) (charging jury that for claim of copyright infringement of 142 works, "whether defendants are liable for infringing copyrights "must be determined individually on a copyright-by-copyright basis").  This instruction is necessary for the jury to understand that the burden applies separately to each work, given the number of works at issue.

[8] Plaintiffs object to the inclusion of this clause, which Bright House has added to the Pattern Instruction.  It is unnecessary and redundant of the upcoming clause, "prove every essential part of their claim …."

If the proof fails to establish any essential part of Plaintiff's claim by a preponderance of the evidence, you should find for Bright House as to that claim.

INSTRUCTION NO. 8.: Digital Millennium Copyright Act (Ps ONLY)[9]

As I indicated at the beginning of this case, you have heard testimony and seen documents that refer to the Digital Millennium Copyright Act, commonly known by its initials "DMCA."   The DMCA provides that an internet service provider (commonly referred to as an "ISP") like Bright House may have a defense to liability arising from infringement on its network.   In order to be eligible for that defense, an ISP must have adopted and reasonably implemented a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the ISP's system or network who the ISP knows are repeat infringers.   The ISP also must inform subscribers of that policy.   The DMCA is not a defense for Bright House in this case.   However, the fact that the DMCA is not a defense here does not bear adversely

---

[9] 17 U.S.C. § 512(a), (i); *Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 3:16-CV-907-J-39MCR, 2017 WL 2901695, at *28 (M.D. Fla. Jan. 17, 2017) ("To be eligible for immunity . . . under any of the DMCA's four safe harbor categories, a service provider must demonstrate that it 'has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers.") (citation omitted).  *See also* Final Instructions in *Sony Music Ent., et al. v. Cox Commc'ns, Inc.*, No. 18-cv-950 (E.D. Va.) (ECF No. 628 at 25:15-26:1) ("You'll also hear testimony and see documents that refer to the Digital Millennium Copyright Act, known as the DMCA. The DMCA provides that an internet service provider, like Cox, may have a defense to liability arising from infringement on its network and that there is a defense called a safe harbor defense, which is included in the DMCA in part of the statute. It's not a defense for Cox in this case. However, the failure or the fact that the safe harbor provision does not apply does not bear adversely on the consideration of a defense by the service provider that the service provider's conduct is not infringing under the remainder of the title or for any other defense.").  *See also* ECF __ at 9 (Plaintiffs' Opp. to Bright House's Omnibus *In Limine*, § 6 addressing Safe Harbor).

on the consideration of a defense by Bright House that Bright House's conduct is not

infringing under the Copyright Act or any other defense.[10]

_____

[10]   Bright House Objection:  Bright House recognizes this Court's ruling on its related motion *in limine*, but respectfully objects to the entirety of this proposed instruction on the ground that it is irrelevant, misleading, and prejudicial.  Bright House is not asserting a DMCA defense (it was voluntarily withdrawn, *see* ECF 384) and the elements of an unasserted defense have no bearing on this case.  *See, e.g., Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp.*, 2019 WL 13064870, at *1 (S.D. Fla. Aug. 28, 2019) ("Evidence of a withdrawn defense is irrelevant.").  Plaintiffs have included this instruction to improperly use the fact Bright House is not asserting a DMCA defense to imply it therefore is a copyright infringer and has inadequate policies that do not qualify for safe harbor.  Referencing an irrelevant defense and the eligibility standards for that defense, while stressing that Bright House does not qualify for it, is designed to suggest to the jury that Bright House was required to terminate customers in order to be found not liable for contributory infringement.  This is not the law.  To the contrary, the DMCA expressly states that failure to invoke the defense should have no bearing on the question of the defendant's underlying liability.  17 U.S.C. § 512(l) ("failure … to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense … that the service provider's conduct is not infringing").   There is no basis for instructing the jury on a defense Bright House is not asserting and that erroneously suggests that Bright House was required to terminate customers and improperly implies that Bright House may not have qualified for the defense because its policies toward repeat alleged infringers were inadequate.  Additionally, such an instruction is prejudicial because it invites the jury to speculate as to why Bright House is not asserting such a defense and attach improper significance to that fact.  *See Novello v. Progressive Express Ins. Co.*, 2021 WL 1845241, at *3 (M.D. Fla. May 7, 2021) (excluding evidence that "could mislead, confuse, or distract the jury from the actual issue")*; see also* ECF 657 at 8-9 (Bright House's motion *in limine* No. 6 seeking exclusion of evidence and argument regarding the DMCA).

While the instruction notes that the lack of a safe harbor defense should not bear adversely on other issues in the last sentence, that does not cure the prejudice given the issues noted above.  For example, the instruction proposes to instruct the jury that the DMCA "is not a defense for Bright House in this case," improperly suggesting that Bright House could not qualify for such a defense if it chose to assert it.  Nor is it sufficient to inform the jury that Bright House chose to not assert such a defense, as it would lead the jury to speculate as to why Bright House chose to not assert a defense the jury is not even tasked with considering, again improperly suggesting that Bright

House did not assert it because it did not qualify for the defense.  *See United States v. Natson*, 469 F. Supp. 2d 1253, 1258-59 (M.D. Ga. 2007) (excluding evidence under Rules 402 and 403 that a jury would engage in "sheer speculation" by relying on such evidence).  Moreover, listing the elements of an unasserted defense – such as whether Bright House "adopted and reasonably implemented a policy" for terminating customers who it "knows are repeat infringers" improperly invites the jury to speculate whether Bright House would have satisfied such a standard, and to evaluate the evidence presented through such a standard.  Finally, the proposed instruction incorrectly states the law.

Here, where the DMCA is not at issue, there is no probative value to the instruction and Bright House will be unduly prejudiced if the instruction is given.  This instruction is designed for cases where a DMCA defense is at issue; it is not at issue in this case.  The sole reason for Plaintiffs raising it is to improperly suggest to the jury that the fact Bright House is not raising the defense is significant and suggest that its policies are inadequate under the DMCA.  Bright House further objects on the ground that stating "the DMCA is not a defense for Bright House in this case" suggests that there has been a determination it does not apply and violates this Court's ruling on the related motion *in limine*.  *See* ECF 685.

INSTRUCTION NO. 9.: Copyright – General Charge [11]

Plaintiffs' Proposed Compromise:

In this case, Plaintiffs assert a claim against Bright House for contributory copyright infringement and must prove three things by a preponderance of the evidence:

First, Plaintiffs must prove that at least one of the Plaintiffs owned a valid copyright in [Plaintiffs:  the works][12] [Bright House:  each work][13] Plaintiffs are asserting.

Second, Plaintiffs must prove that Bright House's customers infringed Plaintiffs' copyrighted works using Bright House's internet service.

Third, Plaintiffs must establish the additional elements required for contributory infringement, which I will explain shortly.

---

[11]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.1 (Copyright – Validity – General Charge) (modified for contributory infringement).

[12]   Bright House Objection:  Bright House objects to the use of the phrase "the works" on the grounds that it does not accurately reflect the law and could confuse the jury by mistakenly suggesting a single copyright covers all works at issue. Plaintiffs must establish infringement of each work individual, not all works collectively. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 2017 WL 10844685, at *2 (S.D.N.Y. Dec. 8, 2017) (noting that "copyright infringement is determined on a work-by-work basis"); *id.* No. 1:13-cv-816 (ECF 435) at 3110:17-20 (Jury Charge) (S.D.N.Y. Apr. 26, 2018) (charging jury that for claim of copyright infringement of 142 works, "whether defendants are liable for infringing copyrights "must be determined individually on a copyright-by-copyright basis").

[13]   Plaintiffs object to the term "each work" because it could suggest misleadingly to the jury that Plaintiffs must prove ownership of every work they are asserting in order to establish their contributory infringement claim.

I'll begin with instructions on ownership and infringement.   After that I'll explain defenses and remedies.

==INSTRUCTION NO. 10.: <u>Copyright – Registration (DISPUTED)</u>==[14]

<u>Plaintiffs' Proposal:</u>

For original works created after 1977, the work is automatically copyrighted at the moment of creation – even if the work is never registered with the United States Copyright Office.  But generally, no suit for copyright infringement can be brought if the copyright hasn't been registered.[15]

A certificate of registration made within five years after the first publication of the claimed work is evidence of the copyright's validity and the facts stated in the certificate.  Specifically, the copyright registration creates a rebuttable presumption of validity. This means that the presumption shifts Plaintiffs' burden of proving validity to Bright House to prove that the claimed copyright is invalid.

==As I explained at the beginning of the case, the parties have stipulated that 6,818 of the sound recordings and musical compositions Plaintiffs have asserted in this case were validly registered.[16]  It will be for you to decide whether Plaintiffs have established==

---

[14]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.5 (Copyright – Validity – Registration of Derivative or Collective Work) (modified to address registration generally since the remainder of the instruction is not needed).

[15]   Bright House Objection:  Bright House objects to Plaintiffs' proposed instruction in its entirety on the ground it is not relevant to the disputes relating copyright ownership in the case and is likely to confuse and mislead the jury.  Plaintiffs have not argued that they can bring suit on unregistered works, so there is no reason to instruct the jury on this issue.  There are no disputes about the timing of the creation of works in this case (first paragraph).

[16]   *See* ECF 561 & Ex. A; Joint Pretrial Statement (ECF 664) at VII.12.

valid registration of the remaining [XXX] sound recordings and musical compositions to which the parties have not stipulated.[17]

### Bright House's Proposal:

To pursue a claim for copyright infringement, Plaintiffs must prove that the work that Plaintiffs claim has been infringed was registered (or preregistered).[18]

---

[17] Bright House Objection:  Bright House objects to Plaintiffs' attempt to improperly add language to this instruction that is misleading, prejudicial, and designed to unduly emphasize certain stipulated facts to influence the jury's findings on undisputed facts. There is no basis to selectively incorporate undisputed facts into the jury instructions, particularly in light of the agreed-upon instruction that the Court will have already given on stipulations.

[18] Plaintiffs object to Bright House's registration instruction.  It contains no information for the jury that is contained in the "Effect of Registration" instruction (Pattern No. 9.4), which Plaintiffs propose to include, and omits virtually all of the Pattern instruction (No. 9.5) on which it is based.  Plaintiffs further object that Bright House has omitted reference to the fact that the parties have stipulated that the vast majority of works in suit were validly registered, which Plaintiffs' proposed instruction includes.  Plaintiffs' proposed instruction on registration should appear immediately following Bright House's proposed instruction if Bright House's instruction is to be given to the jury.

INSTRUCTION NO. 11.: Copyright – Ownership – General Charge (DISPUTED)

Plaintiffs' Position[19]

Now that I've explained validity and registration, we'll move to the issue of ownership.[20]

As I explained at the beginning of the case, the parties also have stipulated that Plaintiffs own valid copyrights in 6,818 of the sound recordings and musical compositions they assert have been infringed in this case.[21] [22]  To maintain their claims on the remaining [332] sound recordings and musical compositions asserted in the

---

[19]   Eleventh Circuit Pattern Jury Instruction 9.12: Copyright – Ownership – General Charge.

[20]   Bright House Objection:  Bright House objects to the preamble to this question as misleading because it references issues that are not disputed in this case and may cause the jury to believe that registration is an issue to be decided by the jury.

[21]   See ECF 561 & Ex. A; Joint Pretrial Statement (ECF 664) at VII.12.

[22]   Bright House Objection:  Bright House objects to Plaintiffs' attempt to improperly add language to this instruction that is designed to unduly emphasize certain stipulated facts to influence the jury's findings on undisputed facts.  There is no basis to selectively incorporate undisputed facts into the jury instructions.  This issue is magnified by the fact Plaintiffs have added this description to multiple instructions, further unduly emphasizing the significance of the issue.

case, Plaintiffs must prove ownership or control[23] of a copyright in those works[24] by a preponderance of the evidence.   Plaintiffs can prove ownership or control[25] by evidence showing that they:

- are an author (or creator) of the work,[26] or

---

[23]  Bright House Objection:  Bright House objects to Plaintiffs' use of "control" as an improper attempt to supplement the pattern instruction and a misstatement of the law on copyright ownership.   "Control" is not sufficient to bring a claim for copyright infringement.  17 U.S.C. § 501(b) (only "[t]he legal or beneficial *owner* of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right committed while he or she is the *owner* of it.") (emphases added); *Music Specialist, Inc. v. Atl. Recording Corp.*, 2021 WL 2905410, at *8 n.3 (S.D. Fla. Mar. 8, 2021) ("A copyright claimant is either: (i) the author of a work; or (ii) a person or organization that has obtained *ownership* of all rights under the copyright initially belonging to the author.") (quotations omitted) (emphasis added); *World Thrust Films Inc. v. Int'l Fam. Ent. Inc.*, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996) (quoting 3 M. Nimmer and D. Nimmer, Nimmer on Copyright § 12.02[B], p. 12–54–12–55 (1996)) ("It is only the copyright owner or the owner of exclusive rights under the copyright, as of the time the acts of infringement occur, who has standing to bring an action for infringement of such rights.").  The Eleventh Circuit Pattern Jury Instruction does not contain any support for "control" being sufficient to establish ownership and Plaintiffs do not identify any other authority to support this addition.

[24]  Bright House Objection:  Bright House objects to Plaintiffs' attempt to improperly add language to this instruction that is designed to unduly emphasize certain stipulated facts to influence the jury's findings on undisputed facts, as noted above.

[25]  Bright House Objection:  Bright House objects to Plaintiffs' use of "control" as a misstatement of the law on copyright ownership for reasons set forth above.  *See supra* at n. 23.

[26]  Bright House Objection:  Bright House objects to Plaintiffs' deletion of language from the model instruction stating "and didn't transfer to another the exclusive rights being asserted."  This language is a required element of proof that Plaintiffs improperly omit.  The author or creator must hold the rights alleged to be infringed.

- acquired legal ownership by transfer of the copyright, or grant of control of[27] the exclusive rights that Bright House Network's users allegedly infringed.[28]

Bright House's Position[29]:

The asserting Plaintiff must prove ownership of the copyrights in the asserted musical compositions and sound recordings by a preponderance of the evidence.  The asserting Plaintiff can prove ownership by evidence showing that it:

---

[27]  Bright House Objection:  Bright House objects to Plaintiffs use of "or grant of control over" to establish legal ownership.  This language does not appear in the model nor did Plaintiffs identify any authority for this language.   The law is clear that Plaintiffs must have legal ownership to pursue a claim for copyright infringement.  17 U.S.C. § 501(b) (only "[t]he legal or beneficial *owner* of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right committed while he or she is the *owner* of it.") (emphases added); *Music Specialist, Inc. v. Atl. Recording Corp.*, 2021 WL 2905410, at *8 n.3 (S.D. Fla. Mar. 8, 2021) ("A copyright claimant is either: (i) the author of a work; or (ii) a person or organization that has obtained *ownership* of all rights under the copyright initially belonging to the author.") (quotations omitted) (emphasis added); *World Thrust Films Inc. v. Int'l Fam. Ent. Inc.*, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996) (quoting 3 M. Nimmer and D. Nimmer, Nimmer on Copyright § 12.02[B], p. 12–54–12–55 (1996)) ("It is only the copyright owner or the owner of exclusive rights under the copyright, as of the time the acts of infringement occur, who has standing to bring an action for infringement of such rights.").  Bright House further objects that this omits language in the model stating that the copyright must be *in the* exclusive rights alleged to be infringed.  "Ownership by transfer of the copyright in the exclusive rights," as stated in the pattern instruction, is the correct standard.

[28]  Bright House Objection:  Bright House objects that this instruction is incomplete and does not account for ownership disputes specific to this case, which are addressed in Bright House's proposed instructions.  This instruction leaves the jury without an understanding of the law on the issues that are disputed in the case including purported transfer from an author who is not the copyright owner and transfer of rights to recover for past infringement.

[29]  Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.12 (Copyright – Ownership – General Charge) (modified).

- Is the author (or creator) of the work, and didn't transfer to another the exclusive rights being asserted during the Claims Period,[30] or

- Acquired legal ownership by transfer of the copyright in the exclusive rights Bright House allegedly infringed at the time those rights were alleged to be infringed.[31]  If the asserting Plaintiff is not identified on the copyright registration as the copyright owner, then the asserting Plaintiff must prove a valid transfer of rights to the copyright.[32] [33]

For copyrights that the asserting Plaintiff claims to have acquired from an author listed on the copyright registration who is not the copyright owner, the asserting Plaintiff

---

[30] Plaintiffs object to the inclusion of the entirety of this clause (which the Pattern instruction includes in brackets) as likely to confuse the jury and irrelevant because Bright House is not offering evidence that any author *did* transfer the exclusive rights asserted to another party, as discussed below.

[31] Plaintiffs object to the inclusion of the words Bright House has added to the end of the Pattern instruction in this sentence.  The words "at the time those rights were alleged to be infringed" is so vague and ambiguous that it could only confuse the jury, and could mistakenly suggest that any acquisition or transfer must occur simultaneous to the time of infringement, which is not the law.

[32]  *Nealy v. Atl. Recording Corp.*, 2021 WL 2280025, at *4 (S.D. Fla. June 4, 2021) ("If the plaintiff is not named on the registration as the owner, it has the additional burden of proving valid chain of title.  The Court therefore finds that Plaintiffs have not shown ownership of the MSP-Registered Songs, which Plaintiffs must establish both for standing and as an element of their copyright infringement case."). Reference to the time at which the rights were alleged to be infringed is not vague or confusing, but rather correctly instructs Plaintiffs are required to prove they possessed legal ownership of the exclusive copyright rights alleged to be infringed at the time the infringement occurred, which Plaintiffs do not dispute.

[33] If Bright House proposes to include this sentence then the instruction on transfer of ownership that Plaintiffs propose to include (below) must also be given to the jury in form that Plaintiffs propose.

must prove that the author kept the exclusive rights alleged to be infringed by Bright House and later transferred them to the asserting Plaintiff.[34] [35]

For copyrights that the asserting Plaintiff claims to have acquired after the alleged infringement occurred, the asserting Plaintiff must also prove that it obtained the right to sue for past infringements that occurred prior to the acquisition, in addition

---

[34]   *Music Specialist, Inc. v. Atl. Recording Corp.*, 2021 WL 2905410, at *8 n.3 (S.D. Fla. Mar. 8, 2021) ("A copyright claimant is either: (i) the author of a work; or (ii) a person or organization that has obtained ownership of all rights under the copyright initially belonging to the author.") (quotations omitted).

[35]   Plaintiffs object to the inclusion of this sentence, which has no basis in the Pattern instruction, as likely to confuse the jury.  Bright House is asking that Plaintiffs prove a negative, *i.e.*, that the author did not transfer the exclusive rights asserted to another party, while Bright House is coming forward with no evidence that any such rights were transferred.  There is simply no basis to include this extraneous paragraph. Furthermore, Bright House misapprehends the applicable law.  Even where a copyright registration is claimed in the name of only one joint author, the other authors nevertheless have standing to bring a copyright infringement suit.  *See Novak v. Nat'l Broadcasting Co.*, 724 F. Supp. 141, 144-45 (S.D.N.Y. 1989); *see also Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir. 1978) ("If a work is a product of joint authorship, each co-author automatically becomes a holder of an undivided interest in the whole.").

to ownership of the copyright during the period of infringement by the entity or person

from which the copyright was acquired.[36] [37]

---

[36] *Oracle Corp. v. SAP AG*, 2008 WL 5234260, at *4 (N.D. Cal. Dec. 15, 2008) ("Plaintiffs have not established that OSC is or ever has been an owner or exclusive licensee of the asserted copyrights. The intercompany agreements on which plaintiffs rely do not establish that the right to sue for copyright infringement was expressly transferred to OSC as a consequence of the various mergers."); *World Thrust Films Inc. v. Int'l Fam. Ent. Inc.*, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996) (quoting 3 M. Nimmer and D. Nimmer, Nimmer on Copyright § 12.02[B], p. 12–54–12–55 (1996)) ("It is only the copyright owner or the owner of exclusive rights under the copyright, as of the time the acts of infringement occur, who has standing to bring an action for infringement of such rights."). Such a requirement, well-recognized by law, does not result in "no one … ever be[ing] liable for infringement" – the party that held the rights at the relevant time always has the right to sue for infringement and other parties can later obtain the right to sue if it is properly transferred.

[37] Plaintiffs object to the inclusion of this paragraph, which has no basis in the Pattern instruction, and unnecessarily complicates and lengthens this instruction. Bright House is also wrong in arguing that Plaintiffs have no right to sue for infringements that occurred before Plaintiffs merged with the entities holding exclusive rights to the applicable works. The mergers at issue all were governed by Delaware or California law, and under those laws, the surviving entity in a merger automatically acquires the right to sue from the merged entity. *See In re El Paso Pipeline Partners, L.P. Derivative Litig.*, 132 A.3d 67, 81 (Del. Ch. 2015) (Under Delaware law, "a cause of action belonging to a corporation is a corporate asset that passes in a merger to the surviving entity."), *rev'd. on other grounds sub nom. El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016); *Arzamendi v. Wells Fargo Bank, N.A.*, 2018 WL 1210978, at *5 (E.D. Cal. Mar. 8, 2018) ("Under California law, the surviving entity in a merger acquires all the rights and property' of the other merging entity 'without other transfer.'"). Under Bright House's theory, in the absence of "proof" that the surviving entity acquired the right to sue, no one could ever be liable for infringement of the relevant copyrights, since the merged entity no longer exists.

**INSTRUCTION NO. 12.: Copyright – Ownership – Transfer (Ps ONLY)**[38]

A transfer of copyright ownership, other than by operation of law, must be in writing and signed by the owner of the copyright or the owner's authorized agent. The writing may be an instrument of conveyance, such as a contract or assignment, or a note of memorandum of the transfer.[39] However, where a transfer of copyright ownership occurs by operation of law, such as through a merger or acquisition, a

---

[38]   Eleventh Circuit Pattern Jury Instruction 9.16: Copyright – Ownership – Transfer.

[39]   Bright House Objection: Bright House objects to the entirety of this instruction on the ground that it is irrelevant and misleading.  Plaintiffs have proposed an instruction for a type of transfer they do not even allege occurred.  The issue in dispute in this case is not whether there was a signed written document transferring copyrights, but instead whether the actual rights asserted transferred.  This instruction could mislead the jury into believing that any signed writing referencing the copyright is sufficient to show transfer of ownership, which is not accurate.  The specific rights alleged to be infringed must have transferred.  *See, e.g.,* Eleventh Circuit Pattern Jury Instruction 9.12: Copyright – Ownership – General Charge (noting plaintiffs must prove they "[a]cquired legal ownership by transfer of the copyright in the exclusive rights Bright House allegedly infringed").

25

signed writing is not required.  In addition, a defendant's mere denials of a plaintiff's

ownership, without supporting evidence, are not enough to dispute ownership.[40] [41]

[40] *See also Fantasy, Inc. v. Fogerty*, 664 F. Supp. 1345, 1356 (N.D. Cal. 1987), *aff'd*, 984 F.2d 1524 (9th Cir. 1993*), rev'd on other grounds*, 510 U.S. 517 (1994) ("The 1976 Copyright Act explicitly states that copyright transfers by operation of law [such as, the transfer of assets from a dissolving corporation to its shareholders] do not have to satisfy the writing requirements concerning transfer."); *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428-29 (4th Cir. 2010) (plaintiff established copyright ownership via merger, and was not required to present evidence of the specific assets acquired in the merger; courts should assess "other relevant indicia of ownership, such as the parties' intent and the terms of transfer agreements and other documents establishing a chain of title"; "[defendant] misunderstands that it bears the burden of rebutting the presumption of ownership established by the copyright registrations"); *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 646 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) ("[T]here is an exception to the Copyright Act's general requirement that the transfer of exclusive rights be made in writing where such a transfer occurs by 'operation of law.'") (citing 17 U.S.C. § 204(a)); *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011) (holding that evidence "in the form of unrefuted affidavit testimony," which "establish[ed] chain of title to [] sound recordings" was sufficient, and giving defendants' "unsupported denials . . . without citation to any evidence in the record" no weight).  *See also Sony Music Ent. v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 224 (E.D. Va. 2019) ("While the burden is on the Plaintiff to establish ownership as a matter of law, 'mere denial of these facts is not sufficient to rebut the presumption of ownership or to create a genuine issue of material fact.'") (citing *BMG Rights Mgmt. (US) v. Cox Commc'ns* ("*BMG I*"), 149 F. Supp. 3d 634, 648 (E.D. Va. 2015)).

[41] Bright House Objection:  Bright House objects to these two sentences of this instruction on the ground they are an inaccurate statement of the law, contain argumentative language like "mere denials," misstate the burden of proving ownership, are not included in the Eleventh Circuit Pattern Jury Instruction or any other jury instructions, and are not supported by any authority from this Circuit.  This instruction also fails to address the parties' dispute, which is not whether a copyright can be transferred through merger, but whether the right to recover for past infringement prior to holding the copyright transferred, a distinct issue that requires specific proof.  *Oracle Corp. v. SAP AG*, 2008 WL 5234260, at *4 (N.D. Cal. Dec. 15, 2008) ("Plaintiffs have not established that OSC is or ever has been an owner or exclusive licensee of the asserted copyrights. The intercompany agreements on which plaintiffs rely do not establish that the right to sue for copyright infringement was expressly transferred to OSC as a consequence of the various mergers."); *World Thrust*

*Films Inc. v. Int'l Fam. Ent. Inc.*, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996) (quoting 3 M. Nimmer and D. Nimmer, Nimmer on Copyright § 12.02[B], p. 12–54–12–55 (1996)) ("It is only the copyright owner or the owner of exclusive rights under the copyright, as of the time the acts of infringement occur, who has standing to bring an action for infringement of such rights.").  Further, the jury is to determine the weight of evidence, and it would be prejudicial and confusing to highlight to the jury only what is "not required" or "not enough."  Finally, Plaintiffs' instruction does not provide any support for the proposition that a defendant's denials "are not enough"—rather, Plaintiffs bear the burden of proving ownership; an instruction about a defendant's "mere denials" improperly suggests that Bright House bears the burden, and improperly represents that Bright House's demonstration that Plaintiffs fail to meet their burden of proof "is not enough."

INSTRUCTION NO. 13.: Copyright – Infringement – Direct Infringement –
Elements (DISPUTED)

Plaintiffs' Position[42]:

In order to prove contributory copyright infringement, Plaintiffs first must
establish by a preponderance of the evidence that users of Bright House's internet
service infringed Plaintiffs' copyrighted works.[43]  Plaintiffs are not required to sue the
direct infringer or required to prove their specific identities.[44] [45]

---

[42]   Eleventh Circuit Pattern Jury Instruction 9.17 Copyright – Infringement –
Introduction to Elements.

[43]  Bright House Objection: Bright House objects to this statement on the ground that
that it is an inaccurate and prejudicial statement of law because the alleged
infringement is not connected to use of Bright House's internet.  Bright House is not
liable for any infringement by its customers.

[44]  *See* Joint Pretrial Statement (ECF 664) at VIII.3; *see also* Final instruction in *BMG
Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 14-cv-1611 (E.D. Va.) (O'Grady, J.),
*see* ECF No. 751 at 2146:22–2147:10 (stating, among other things, that plaintiff is not
required to prove the specific identities of the infringing users); *In re Aimster Copyright
Litig.*, 334 F.3d 643, 646 (7th Cir. 2003) (finding secondary liability where direct
infringers could conceal their true identity); *Arista Records v. Lime Group*, 784 F. Supp.
2d 398, 423-24 (S.D.N.Y. 2011) ("evidence that establishes that the Recordings were
downloaded by LimeWire users without authorization"); *Sega Enterprises v. MAPHIA*,
857 F. Supp. 679, 686-87 (N.D. Cal. 1994) (uploads by "unknown users").

[45]  Bright House Objection: Bright House objects to this statement as an unsupported
assertion that is inconsistent with the law.  The Eleventh Circuit Pattern Jury
Instructions require a specific finding of direct infringement.  *See, e.g.*, Eleventh Circuit
Pattern Jury Instruction 9.20 Copyright – Infringement – Contributory Infringement
("If you find that there has been a direct infringement of [name of plaintiff]'s
copyrighted materials by one defendant, you can also consider whether there has been
"contributory infringement" by another defendant (or a third party)."); *see also* 9.17
Copyright – Infringement – Introduction to Elements. ("[Name of plaintiff] must show
that [name of defendant] infringed on [his/her/its] valid copyright.").  A claim for
contributory infringement cannot be based on a speculative or hypothetical assertion
of direct infringement.  *Grokster*, 545 U.S. at 940 (contributory infringement "of course
requires evidence of actual infringement by recipients of the device").  It is up to the

A copyright owner's exclusive right to copy and distribute its copyrighted

work is infringed by the unauthorized downloading or uploading of the work, or by

making the copyrighted work available for downloading without authorization.[46]

---

jury to determine what amount of proof Plaintiffs should provide to support their claim.

[46] *See also Disney Enterprises, Inc. v. Bartels*, 2007 WL 9702222, at *4 (S.D. Fla. Feb. 23, 2007) (granting summary judgment on plaintiff's copyright infringement claim and explaining that "an individual's use of a peer-to-peer file sharing network to download unauthorized reproductions of a copyrighted work or to make a copyrighted work available to the public infringes copyright, as it violates the copyright holder's exclusive rights of reproduction and distribution."); *Arista Recs., LLC v. Butler*, 2007 WL 4557198, at *1 (M.D. Fla. Dec. 21, 2007) (granting summary judgment on violation of distribution right based on deemed admissions that defendant made recordings available on a peer-to-peer network); *Elektra Ent. Grp. Inc. v. Brimley*, 2006 WL 2367135, at *2-3 (S.D. Ga. Aug. 15, 2006) (granting summary judgment on direct infringement of the distribution right, based on deemed admission that defendant "distributed the copyrighted recording . . . and ma[de] the recordings available . . . on the peer-to-peer network"); *ME2 Prods., Inc. v. A&M Limo*, 2017 WL 8185865, at *3 (N.D. Ga. Dec. 12, 2017) (granting default judgment on violation of distribution right based on deemed admission that "Defendant made the Movie available for download to others on the BitTorrent network, a peer-to-peer internet transfer site that allows individuals to share large amounts of data"); *Priority Recs., LLC v. Pearson*, 2007 WL 9702412, at *1-2 (N.D. Ga. May 16, 2007) (granting summary judgment on distribution based on deemed admission that the defendant "made [the songs] available for redistribution to other computers through KaZaa"); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 765 (W.D. Tex. 2019) ("[I]nfringement notices provide evidence of offering to share under a 'making available' theory, and constitute circumstantial evidence of dissemination if actual dissemination is required" and noting that "using [a peer-to-peer network] to make copies of the [infringing materials] available to thousands of people over the internet . . . violate[s] [a] [p]laintiff['s] exclusive right to distribute . . .") (citing *Universal Studios Prod., LLP v. Bigwood*, 441 F. Supp. 2d 185, 190 (D. Me. 2006)); *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 204 (4th Cir. 1997) ("[D]istribution occurs, within the meaning of § 106, when a library holds a copy in its collection, lists the copy in its card file, and makes the copy available to the public.").

If you find that users of Bright House's internet service downloaded, uploaded, or made Plaintiffs' copyrighted works at issue available for downloading over peer to peer networks without authorization, then Plaintiffs have established that users of Bright House's internet service have infringed Plaintiffs' copyrighted works.[47]

---

[47]   Bright House Objection: Bright House objects to the entirety of the language proposed by Plaintiffs for this instruction (that does not appear in the Eleventh Circuit Pattern Jury Instruction) as argumentative, prejudicial, and not supported by the law. The proposed language is an argumentative statement of Plaintiffs' interpretation of the law and theory of infringement in this case; not the actual law.  There is, for example, no copyright contributory liability for making copyrighted works "available" on the Internet.  "Made available" is not one of the exclusive rights set forth in 17 U.S.C. § 106 and thus it is legally incorrect to include such an act as a separate method of infringement, distinct from copying or distribution.  The rights implicated in the authorities cited by Plaintiffs are the rights of distribution and reproduction; not "making available."  *See, e.g., Disney Enters., Inc. v. Bartels*, 2007 WL 9702222, at *4 (S.D. Fla. Feb. 23, 2007) ("an individual's use of a peer-to-peer file sharing network to download unauthorized reproductions of a copyrighted work or to make a copyrighted work available to the public infringes copyright, as it violates the copyright holder's exclusive rights of *reproduction and distribution*") (emphasis added); *Arista Recs., LLC v. Butler*, 2007 WL 4557198, at *2 (M.D. Fla. Dec. 21, 2007) ("defendant infringed the plaintiffs' exclusive rights by *reproducing and distributing* the infringed recordings without authorization"); *Elektra Ent. Grp. Inc. v. Brimley*, No. CV205-134, 2006 WL 2367135, at *2 (S.D. Ga. Aug. 15, 2006) (describing how "the evidence of record demonstrates that Defendant *reproduced and distributed* Plaintiffs' copyrighted sound recordings") (emphasis added).   Plaintiffs' own authorities explicitly describe the "making available" of a copyrighted work merely as a type of evidence pertaining to whether the right of "distribution" has been infringed.  *See, e.g., UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 765 (W.D. Tex. 2019) ("evidence" of "making available" theory may "constitute circumstantial evidence of *dissemination*").  Thus, for the purposes of this instruction, any reference to "making available" is improper and prejudicial because it would wrongly suggest that mere evidence (at best) that a work was "made available" is sufficient when it is (at best) merely potential evidence of a violation of the exclusive right to distribute.

   Nor is it appropriate to state affirmatively that Plaintiffs have established contributory infringement if they merely show that customers used Bright House's internet service to upload or download works or made them available.  That alone is

There are two ways in which Plaintiffs can prove a claim of copyright infringement.[48]

---

not sufficient to establish contributory infringement under any operative legal standard.  Further, it is prejudicial for the Court to instruct the jury as to specific evidence that may or may not satisfy Plaintiffs' burden, such as whether "uploading," "downloading," or "making available" establishes direct infringement. Not only is the role for the jury to determine whether the evidence is sufficient, but Plaintiffs also misstate the law—for example, a subscriber's "uploading," "downloading," or "making available" may be protected by fair use,  even if it is "unauthorized" by the owner.  17 U.S.C. § 107.  The Court should therefore not instruct the jury that any certain specific activity requires a finding that a copyright "is infringed."  For the same reason, stating that if a work was "uploaded," "downloaded," or "made … available" by a customer using Bright House's service "then Plaintiffs "have established that the users … have infringed Plaintiffs' copyrighted works" is prejudicial and legally incorrect, including because it: (a) improperly instructs the jury on how to treat evidence; (b) it is legally incorrect for the reasons stated above (*e.g.*, it may not, in fact, constitute "infringement"); and (c) is not the proper legal standard, as Plaintiffs must prove that Bright House's customers violated a Plaintiff's exclusive right by "copying" or "distributing" the work at issue.  17 U.S.C. § 106.

[48] Bright House Objection: Bright House objects to the language in the following three paragraphs as incorrect statements of law and unduly prejudicial because they set forth how Plaintiffs can prove a claim of *direct* copyright infringement by a Bright House subscriber, not *contributory* copyright infringement by Bright House.  It thus incorrectly suggests that Plaintiffs can satisfy their burden of proof against Bright House and "prove a claim of copyright infringement" based solely on a finding that a Bright House customer infringed a copyright, which is an incorrect statement of law.

First, Plaintiffs can show direct evidence[49] that a Bright House subscriber[50] actually copied, distributed, or made available[51] the copyrighted material. For example, Plaintiffs could introduce believable eyewitness testimony or an admission by a subscriber.[52] Such direct evidence is rare.

---

[49] Bright House Objection: Bright House objects to this reference to direct evidence on the ground that it is duplicative of a prior instruction on types of evidence and is prejudicial to paraphrase that instruction and reemphasize it again here. It may also confuse and mislead the jury as to the difference between the element of "direct infringement" and the direct method of proof.

[50] Bright House Objection: Bright House objects to the use of the term subscriber as inaccurate, unduly prejudicial, and misleading. This instruction alternately employs the term "user" and "subscriber" to describe the alleged direct infringers. The term subscriber is argumentative and a not a term Bright House uses to describe its customers nor is it a term used to describe the relationship between internet service providers and their customers in copyright law.

[51] Bright House Objection: Bright House objects to the inclusion of the term "made available" as descriptions of infringement as inconsistent with the law and not included in the Eleventh Circuit Pattern Jury Instructions, as noted in the preceding objection. *See supra* n. 47.

[52] Bright House Objection: Bright House objects to the Plaintiffs' added language as inaccurate and unduly prejudicial. This proposed language inaccurately suggests that an admission "by a subscriber" is direct evidence of Bright House's infringement and unduly highlights just one form of possible evidence in this case. There are many subscriber denials as well, and those are not identified or emphasized in this instruction, resulting in an imbalanced presentation of evidence. It is particularly prejudicial here because the inclusion of such language would suggest that Bright House was required to treat an "admission" with legal import, when it is merely potential evidence of, but not conclusive proof of, direct infringement.

Or second, Plaintiffs can show indirect or circumstantial evidence[53] that a Bright House subscriber[54] copied, distributed, or made available one or more of Plaintiffs'[55] works. For example, indirect evidence of infringement may be proof from the notices Plaintiffs sent to Bright House or Bright House's internal records or witness testimony.[56]

---

[53]   Bright House Objection:  Bright House objects to this reference to indirect and circumstantial evidence on the grounds that it is duplicative of a prior instruction on types of evidence and is prejudicial to paraphrase the instruction and reemphasize it again here.

[54]   Bright House Objection: Bright House incorporates by reference its prior objection to the term subscriber.

[55]   Bright House Objection: Bright House objects to the inclusion of the term "made available" as a description of infringement as inconsistent with the law and not included in the Eleventh Circuit Pattern Jury Instructions, as noted in the preceding objection.  *See supra* n. 47.

[56]   Bright House Objection:  Bright House objects to this sentence as inaccurate, unduly prejudicial, and crafted in whole by Plaintiffs.  There is no basis for selectively highlighting one type of evidence (indirect) and suggesting that it is more important than direct evidence.  It is also highly prejudicial to highlight only some pieces of evidence and suggest to the jury that this evidence is more important than other evidence and/or is evidence that the Court believes establishes infringement.  This language unduly emphasizes the notices and suggests that the Court has determined those notices are more important than other evidence in the case.  Doing so conditions the jury to believe that these notices are the most important evidence in the case.  Unsubstantiated notices are not evidence of infringement by Bright House and suggesting that a notice establishes contributory infringement by Bright House is inconsistent with the law and a highly prejudicial recitation of Plaintiffs' *theory* as the operative law.  *See Millennium Funding, Inc. v 1701 Mgmt. LLC*, 2021 WL 5882999, at *13 (S.D. Fla. Dec. 13, 2021) (number of copyright notices received "is legally irrelevant" because they do not give notice of any specific acts of infringement that are actually occurring) (citations omitted).  Similarly, Bright House's "internal records" or undefined "witness testimony" is vague and confusing, as it would indicate that *any* "internal records" or "witness testimony" may be sufficient, which is legally incorrect.  Because the Court will have already provided an instruction to the jury about direct

Bright House's Position[57]

In this case, Plaintiffs claim that Bright House engaged in contributory infringement, but before there can be contributory infringement by Bright House, there must first be a direct infringement by Bright House's customers.[58]

If you're persuaded that Plaintiffs own valid copyrights,[59] you can consider whether Bright House's customers copied or distributed Plaintiffs' copyrighted works using Bright House's Internet service.[60]

---

and indirect evidence in the preliminary instructions, the Court should not do so again here, particularly with Plaintiffs' prejudicial and deficient instructions.

[57]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.17 (Copyright – Infringement – Introduction to Elements) (as modified).

[58]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.15 (Copyright – Infringement – Contributory Infringement) (Annotations & Comments) ("Before there can be contributory infringement by one Defendant, there must first be a direct or primary infringement by another.") (as modified).

[59]   Plaintiffs object to the inclusion of this clause as unnecessary and unfairly prejudicial.   Bright House has stipulated that Plaintiffs own over 6,800 of the copyrights asserted in this case such that the jury will necessarily consider the question of infringement.

[60]   Plaintiffs object to the phrasing of this clause as limiting direct infringement to "distribution" alone.   Plaintiffs assert copyright infringement by violation of the exclusive rights of reproduction and/or distribution, and that those rights were infringed by Bright House subscribers having downloaded, uploaded, or made Plaintiffs' copyrighted works at issue available for downloading through peer-to-peer networks without authorization over Bright House's network.   The great weight of authority in the Eleventh Circuit holds that making a work available to the public is, itself, a violation of the right to distribute under Section 106(3) of the Copyright Act. *See, e.g., Disney Enters., Inc. v. Bartels*, 2007 WL 9702222, at *4 (S.D. Fla. Feb. 23, 2007) ("mak[ing] a copyrighted work available to the public infringes copyright, as it violates the copyright holder's exclusive rights of reproduction and distribution").   Courts in the Eleventh Circuit thus routinely grant summary judgment based only on the fact that the defendant made the work available on a peer-to-peer network. *See, e.g., Arista*

It is the burden of Plaintiffs to show that Bright House's customers infringed on their valid copyrights.  This is called "infringement" of a copyright.  Plaintiffs must show that Bright House's customers directly infringed on their valid copyrights.

In this case, Plaintiffs claim that Bright House's customers directly infringed their copyrights in the asserted works by copying or distributing the works using Bright House's Internet service.   To succeed on this claim, Plaintiffs must prove by a preponderance of the evidence that Bright House's customers actually copied or distributed Plaintiffs' copyrighted works using Bright House's Internet service.[61]

_Recs., LLC v. Butler_, 2007 WL 4557198, at *1 (M.D. Fla. Dec. 21, 2007) (granting summary judgment on violation of distribution right based on deemed admissions that defendant made recordings available on a peer-to-peer network); _Priority Recs., LLC v. Pearson_, 2007 WL 9702412, at *1-2 (N.D. Ga. May 16, 2007) (same); _Elektra Ent. Grp. Inc. v. Brimley_, 2006 WL 2367135, at *2-3 (S.D. Ga. Aug. 15, 2006) (same); _see also ME2 Prods., Inc. v. A&M Limo_, 2017 WL 8185865, at *3 (N.D. Ga. Dec. 12, 2017) (same, default judgment).  _See also UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC_, 384 F. Supp. 3d 743, 765 (W.D. Tex. 2019) ("using [a peer-to-peer network] to make copies of the [infringing materials] available to thousands of people over the internet … violate[s] [a] [p]laintiff['s] exclusive right to distribute"); 2 Nimmer on Copyright § 8.11(D)(4)(a)(ii) ("Making works available via file-sharing implicates the distribution right . . . _there is no need to show consummated acts of actual distribution._") (emphasis added); _accord Hotaling v. Church of Jesus Christ of Latter-Day Saints_, 118 F.3d 199, 204 (4th Cir. 1997) ("[D]istribution occurs, within the meaning of § 106, when a library holds a copy in its collection, lists the copy in its card file, and makes the copy available to the public.").
This objection also applies to Bright House's use of the phrases "distributing the works" and "actually distributed Plaintiffs' copyrighted works" in the final paragraph of this instruction.

[61] In addition to objecting to Bright House's use of the terms "distributing the works" and "actually distributed Plaintiffs' copyrighted works" for the reasons stated above, Plaintiffs object to Bright House having cut from the Pattern instruction the final three paragraphs that explain to the jury that copyright infringement may be established through either direct or circumstantial evidence.  Plaintiffs' proposed version of this

==INSTRUCTION NO. 14.: Copyright – Infringement – Contributory Infringement (DISPUTED)==

==Plaintiffs' Position[62]:==

If you find that there has been a direct infringement of Plaintiffs' copyrighted ==works by Bright House's subscribers,==[63] you must then consider whether there has been "contributory infringement" by Bright House.

In this case, Plaintiffs claim that Bright House is a contributory infringer.  A "contributory infringer" is one who, with knowledge of another's infringing conduct, induces, causes, or materially contributes to the infringing conduct.[64]

---

==instruction (above) includes these paragraphs, which should be included, consistent with the Pattern.==

[62]   Eleventh Circuit Pattern Jury Instruction 9.2 Copyright – Infringement – Contributory Infringement.

[63]  ==Bright House Objection: Bright House objects to the use of the term subscriber and incorporates its prior objection to the term.==

[64]  ==Bright House Objection: Bright House objects to Plaintiffs' description of the legal standard "induces, causes, or materially contributes" as misstating the law as it pertains to this case.  Where, as here, the defendant's alleged contribution to the infringement consists only of providing a product or service capable of substantial noninfringing uses, under Supreme Court precedent, a defendant is not liable for contributory infringement unless it acted "with the *object* of promoting [the service's] use to infringe copyright, as shown by *clear expression* or other *affirmative steps* taken to foster infringement."  *Grokster*, 545 U.S. at 918-19 (emphasis added).  Intent to cause infringement is a required element.  Mere passive participation or failure to prevent infringement is not enough, nor is mere continued provision of Internet service.  *Id.* at 939 n.12.  Plaintiffs' proposed language improperly omits the intent requirement and is inapplicable to this case.  *See also infra* n. 66 (discussing inapplicability and error of Plaintiffs' standard).==

"Knowledge" means the alleged contributory infringer actually knew, or had reason to know, of the infringement.  Knowledge may also be established under the standard of willful blindness, *i.e.*, that Bright House was aware of a high probability of infringement by its subscribers and consciously avoided learning of specific instances of infringement.[65] [66]

---

[65] *See BMG*, 881 F.3d at 308 ("the law recognizes willful blindness as *equivalent* to actual knowledge") (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)); *In re Aimster*, 334 F.3d at 650 ("Willful blindness is knowledge, in copyright law . . . as it is in the law generally."); *Alper Auto., Inc. v. Day to Day Imps., Inc.*, 2021 WL 5893161, at *16 (S.D. Fla. Nov. 3, 2021) ("decision to not pursue information that would have helped confirm whether [a party] was infringing on a protected copyright constituted willful blindness").

[66] Bright House Objection:  Bright House objects to this statement as inaccurate, argumentative, and prejudicial.  Jury instructions should only include statements of law; not argumentative statements on fact issues reserved for the jury to decide.  For example, there is no basis to include a statement saying "Bright House was aware of a high probability of infringement by its subscribers and consciously avoided learning of specific instances of infringement."  It is also inaccurate to claim that liability can be established by mere awareness of the activity of any customer when even the law that Plaintiffs cite states that this applies, at most, to customers who were repeat infringers.  *BMG Rts. Mgmt., LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 966-68 (multiple references to "repeat infringers"); *Grande Commc'ns Networks*, 384 F. Supp. at 768 (liability for "continuing provision of internet services to customers who engage in *repeated copyright infringement*") (emphasis added).  *Michael Grecco* is distinguishable for the reasons explained *infra* at n. 66.  And in any event, Supreme Court precedent is clear that "mere knowledge … of *actual infringing uses*," no matter how many, is not enough to create contributory liability.  *Grokster*, 545 U.S. at 937; *see also infra* at n. 66.  Bright House further objects to the inclusion of language regarding "willful blindness" as prejudicial and outside of the Eleventh Circuit's Pattern Jury Instructions, which contains no such language.  The language of "had reason to know," as contained in both parties' proposed language, sufficiently captures the concept without prejudicing Bright House or risking the jury convoluting the concepts of willful blindness and willful infringement.

An ISP may be found to have materially contributed to the infringement by its subscribers if it continued to provide internet service to subscribers who were the

subject of multiple copyright infringement notices and the ISP had specific enough knowledge of infringing subscribers that it could do something about it.[67] [68]

---

[67] *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) ("Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials . . . [Thus, it] could be held contributorily liable if it had knowledge that infringing . . . images were available using its search engine, could take simple measures to prevent further damage to [plaintiffs'] copyrighted works, and failed to take such steps."); *see also BMG*, 881 F.3d at 306-08, 311-12 (Cox could be found contributorily liable for continuing to provide internet service to subscribers to whom infringement notices were directed if Cox had specific enough knowledge of infringement that it could do something about it; remanding on other grounds); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) ("[P]roviding the site and facilities for known infringing activity is sufficient to establish contributory liability."); *Capitol Recs., LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 658 (S.D.N.Y. 2013), *aff'd*, 910 F.3d 649 (2d Cir. 2018) (granting summary judgment for plaintiff on contributory infringement claim and explaining that "courts have consistently found that material support existed where file-sharing systems provided the site and facilities for their users' infringement") (citations omitted); *Venus Fashions, Inc.*, 2017 WL 2901695, at *24 (applying *Perfect 10* and holding that plaintiff established likelihood of success on contributory claim in light of evidence that the defendant website operator could implement a system that would identify copyrighted images but resisted implementing it; citing *A&M Recs., Inc. v. Napster*, 239 F.3d 1004, 1022 (9th Cir. 2001) for proposition that a party can contribute to direct infringement by providing the site and facilities for direct infringement).

*See also Michael Grecco Prods., Inc. v. RGB Ventures, LLC*, 2017 WL 4077045, at *8 (M.D. Fla. Sept. 14, 2017) (holding that plaintiff stated a contributory infringement claim based on allegations that defendant continued to provide third parties access to copyrighted images after its license to the images expired, and failed to act to prevent further infringement when it was in a position to do so); *Grande Commc'ns Networks, Inc.*, 384 F. Supp. at 768 ("it is beyond debate that [an ISP's] continuing provision of internet services to customers who engage in repeated copyright infringement substantially facilitates access to and the distribution of infringing materials"); *BMG Rts. Mgmt. (US) LLC*, 199 F. Supp. 3d 958, 979 (E.D. Va. 2016) (reversed in part and remanded for new trial on other grounds) ("There can be no question that the provision

of high-speed internet service materially contributes to infringement via BitTorrent and that [an ISP] had the means to withhold that assistance upon learning of specific infringing activity.").

[68] Bright House Objection: Bright House objects to Plaintiffs' proposed instruction because the legal standard Plaintiffs advocate is wrong under binding Supreme Court precedent. The Supreme Court's rulings in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ("*Grokster*") and *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ("*Sony*") strictly limit the circumstances under which a claim of contributory infringement can be asserted against a party selling a product or service capable of substantial noninfringing use--as Bright House's Internet service plainly is. *Grokster* held that the mere sale of a product or service "capable of both lawful and unlawful use" does not constitute contributory infringement unless there is additional evidence that the defendant acted "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." 545 U.S. at 918-19 (emphasis added). Contributory liability cannot be based on a defendant's "mere knowledge of infringing potential or of actual infringing uses." *Id.* at 937. The *Grokster* court further made clear that "in the absence of other evidence of intent, a court would be unable to find contributory infringement merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses." *Id.* at 939 n.12.

While the Eleventh Circuit has not had occasion to apply *Grokster* in a comparable case, district courts in the Eleventh Circuit have correctly applied *Grokster* to require proof of a contributory-infringement defendant's *intent* to cause infringement. *See, e.g., Millennium Funding, Inc. v 1701 Mgmt. LLC*, 2021 WL 5882999, at *12-13 (S.D. Fla. Dec. 13, 2021) (dismissing contributory infringement claim because Plaintiffs failed to allege that Defendant "acted with culpable intent" under *Grokster*); *Cambridge Univ. Press v. Becker*, 2010 WL 11507617 at *12 (N.D. Ga. Sept. 30, 2010) (no judgment of contributory infringement because "there is no indication in the record of a 'clear expression or other affirmative steps taken to foster infringement' by Defendants" (quoting *Grokster*, 545 U.S. at 919)); *Space Coast Bus., LLC v. Coastal Media Assocs.*, LLC, 2011 WL 1213299573, at *2 (M.D. Fla. July 6, 2011) (dismissing claim where plaintiff failed to allege "what steps [defendant] took to induce or encourage [the] infringements").

Instead of the *Grokster* intent standard, Plaintiffs ask the Court to apply the test created by the Ninth Circuit in *Perfect 10 v. Amazon*, 508 F.3d 1146 (9th Cir. 2007), under which a defendant may be held liable for copyright infringement based on mere failure to "take simple measures" to prevent infringement. *Id.* at 1172. The *Perfect 10* test cannot be squared with *Grokster*'s express holding that, where the defendant's conduct consists only of providing a product or service with substantial noninfringing uses, contributory liability can lie only if the evidence establishes that the defendant's

Bright House's Position[69]:

If you find that there has been a direct infringement of Plaintiffs' copyrighted works by Bright House customers, you must then consider whether there has been "contributory infringement" by Bright House.[70]

In this case, Plaintiffs claim that Bright House is a contributory infringer.  A "contributory infringer" is one who, with knowledge of another's direct infringing

---

objective was to foster infringement, as shown by clear expression or affirmative acts.  545 U.S. at 936-37.  *Grokster* also expressly holds that a mere "failure to take affirmative steps to prevent infringement" is not enough for contributory liability.  *Id.* at 939 n.12.  But of course, the very premise of the Perfect 10 test is to allow liability based on mere failure to "take simple measures."  508 F.3d at 1172.  As a result, Plaintiffs' proposed test directly conflicts with *Grokster* and is wrong as a matter of law.

The only two in-circuit decisions Plaintiffs cite applying Perfect 10 are inapposite.  In one the defendant actually hosted the specific infringing content on its servers and was thus in a position to remove it to cure the ongoing infringement.  *Venus Inc. v. ContextLogic, Inc.*, 2017 WL 2901695 at *9, *25 (M.D. Fla. Jan. 17, 2007).  In the second, the plaintiff alleged that the defendant both (1) "actually assisted in the distribution of the [copyrighted] images" beyond merely providing a lawful service and (2) hosted the specific copyrighted content on its servers.  *Michael Grecco v. RGB Ventures, LLC*, 2017 WL 4077045 at *8 (M.D. Fla. Sept. 14, 2017).  Here, Bright House's only alleged conduct purportedly giving rise to liability is the provision of Internet service (which plainly has substantial noninfringing uses), and this case thus falls squarely within the class of cases in which *Grokster* requires proof of intent to encourage infringement.

[69] The Court has not yet determined which legal standard will apply to this issue.  Bright House respectfully submits that this instruction reflects the proper legal standard based upon Supreme Court authority.  Should the Court determine another standard applies, Bright House reserves the right to submit an instruction reflecting that standard.

[70] Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.20 (Copyright – Infringement – Contributory Infringement) (as modified).

conduct, intentionally induces or encourages that direct infringement.[71]  To prove that Bright House intentionally induced or encouraged its customers' direct infringement, Plaintiffs must prove that Bright House had the object of promoting the use of its Internet services to infringe copyrights.  To do so, Plaintiffs must show evidence of Bright House's clear expression or other affirmative steps taken to foster direct

---

[71]  Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.20 (Copyright – Infringement – Contributory Infringement) (Annotations & Comments) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement.")).

infringement by its customers.[72] You cannot find contributory liability merely based

on a failure to take affirmative steps to prevent infringement.[73] [74]

---

[72] *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) ("[O]ne who distributes a device [or service] with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties."); *id.* at 936 (intent can be found from "[e]vidence of active steps … taken to encourage direct infringement … such as advertising an infringing use or instructing how to engage in an infringing use"); Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.20 (Copyright – Infringement – Contributory Infringement) (Annotations & Comments). *Grokster* is not limited to a "theory of inducement;" its plain language states that where a company sells a product "capable of both lawful and unlawful use," as is the case here, and such a "widely shared service or product is used to commit infringement … [o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." *Grokster, Ltd.*, 545 U.S. at 918-19, 929-30.  Other courts in this Circuit have similarly rejected that the argument that Grokster does not apply to claims that plaintiffs try to frame as "material contribution." *See, e.g.*, *Cambridge Univ. Press v. Becker*, 2010 WL 11507617, at *12 (N.D. Ga. Sept. 30, 2017); *(Grokster* intent applies to material contribution claim); *Hydentra HLP Int'l Ltd. v. Luchian*, 2016 WL 5951808, at *12-15 (S.D. Fla. Jun. 2, 2016) (similar); *Corbis Corp. v. Lognikov*, 2006 WL 8432686, at *6-7 (S.D. Fla. Sept. 18, 2006) (similar).  *See also infra* n. 66.

[73] *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 n.12 (2005) ("in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses").

[74] Plaintiffs object to the entirety of what Bright House has added to this paragraph, because it applies the wrong legal standard.  The contributory infringement claim in *Grokster* was under the theory of inducement, which Plaintiffs do not assert here.  Plaintiffs' claim is one for material contribution.  *See* Am. Compl.  Accordingly, Bright House's instruction addressing intentional inducement and encouragement has no place in this case.  Plaintiffs submit that the Court should adopt Plaintiffs' proposed instruction on contributory infringement, which adheres to the Eleventh Circuit Pattern Jury Instruction No. 9.20.

In the event the Court decides over Plaintiffs' objection that intent is an element of Plaintiffs' contributory infringement claim, even though the claim is asserted under material contribution, Plaintiffs submit that the paragraph proposed as Instruction 14(A) should address the element of intent.

---

Every court to consider the matter has held that *Grokster*'s "intent" standard is met under traditional common law principles when an ISP continues to provide service to known infringing subscribers. *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 307-08 (4th Cir. 2018) ("*BMG*") (Offering the following analogy applicable to ISP subscribers: "Consider a company that leases VCRs, learns that specific customers use their VCRs to infringe, but nonetheless renews the lease to those infringing customers. Given those facts, the company knows that its action—renewing the lease of the VCR to these specific customers—is substantially certain to result in infringement, and so an intent to cause infringement may be presumed."); *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, 2020 WL 5204067, at *9 (D.N.J. Aug. 31, 2020) ("ISP's failure to take remedial action against repeat copyright infringers is tantamount to encouraging infringement"); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 767–68 (W.D. Tex. 2019) (following *BMG*'s analysis).

Proposing an instruction that requires the jury to find that "Bright House had the object of promoting the use of its Internet services to infringe copyrights," as Bright House does, and that "Plaintiffs must show evidence of Bright House's clear expression or other affirmative steps taken to foster direct infringement by its customers," misreads *Grokster* and the fifteen years of case law that has followed and interpreted it. Bright House ignores that "*Grokster* also directs us to analyze contributory liability in light of 'rules of fault-based liability derived from the common law.'" *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007) (quoting *Grokster*, 545 U.S. at 934–35). Critically, "common law principles establish that intent may be imputed." *Id.* at 1171. "The most relevant of these common law rules is that if a person 'knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.'" *BMG*, 881 F.3d at 307 (quoting Restatement (Second) of Torts).

Accordingly, as another court in this district has held: "[W]here the defendant knows of specific infringing content available on its system yet fails to remove it—that defendant may be liable, by operation of law, just as if he had actually intended to infringe under *Grokster* . . . [C]ontributory infringement may be found based on a material contribution theory in instances where a defendant did not express an intention to foster infringement but provided the means for infringement …." *Michael Grecco Prods., Inc. v. RGB Ventures, LLC*, 2017 WL 4077045, at *8 (M.D. Fla. Sept. 14, 2017) (quoting *Disney Enters., Inc. v. Hotfile Corp.*, 2013 WL 6336286, at *35 (S.D. Fla. Sept. 20, 2013) (recognizing that, under *Grokster*, "traditional principles permit a court to impute intent")).

"Knowledge" means that Plaintiffs must prove that Bright House actually knew, or had reason to know, of its customers' specific acts of alleged direct infringement.[75] The receipt of a notice alleging copyright infringement, without more, is not enough to establish that Bright House had knowledge of a specific act of infringement.[76] [77] In addition, evidence of Bright House's mere knowledge that its

---

[75] Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.20 (Copyright – Infringement – Contributory Infringement) (as modified).

[76] *Millennium Funding, Inc. v 1701 Mgmt. LLC*, 2021 WL 5882999, at *13 (S.D. Fla. Dec. 13, 2021) (number of copyright notices received "is legally irrelevant" because they do not give notice of any specific acts of infringement that are actually occurring) (citations omitted). In *Millennium Funding*, the court held that a notice that a rightsholder made an accusation about an act of infringement *in the past* cannot confer knowledge that infringement actually had occurred, or that future infringement will occur, regardless of whether the notice provides an IP address or date and time. *Id.* (notices do not confer knowledge of actual or ongoing infringement). Because Bright House did not host the files at issue on its servers and could not inspect the files on a subscriber's computer, it had no way of "knowing" that infringement had in fact occurred.

[77] Plaintiffs object to this sentence as highly misleading, including because it suggests that Plaintiffs have adduced no evidence of Bright House's knowledge of specific acts of infringement beyond the notices—for example, the multitude of Bright House internal records and communications recognizing repeat infringement by subscribers—and is unsupported by anything in the Pattern instruction. Moreover, in the *Millennium* case, on which Bright House relies, the court made clear that the notices there did not provide the defendant with knowledge of "any specific infringing activity." 2021 WL 5882999, at *12. In contrast, here, the evidence will show that Plaintiffs' notices contained, *inter alia*, an identification of the Bright House subscriber by IP address, the date and time of the infringing act, the name and hash value of the infringing file, and a representative sample of what was infringed by song title. Further unlike here, the *Millennium* court found that the defendant was "not a computer system operator … [and] was never aware of the end users' online activity on [its] servers." *Id.* Bright House, on the other hand, *is* a computer system operator, with contractual relationships with its subscribers, and, as the evidence will show, knew, or at least had reason to know, that its subscribers were infringing.

Internet service could potentially be used, or was actually used, by its customers to infringe is not enough to subject Bright House to contributory liability.[78] [79]

---

[78] *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) ("mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to [contributory] liability"); Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.20 (Copyright – Infringement – Contributory Infringement) (Annotations & Comments) ("In *Grokster*, the Supreme Court held that … where the claim for contributory infringement is based on sale of a copying device, "mere knowledge of infringing potential or of actual infringing uses" of the defendant's device is not enough to support a finding of intent. 545 U.S. at 937.").

[79] Plaintiffs object to this sentence as highly misleading because Plaintiffs are not arguing that Bright House "merely" knew that its Internet service could be or even was used by its subscribers to infringe.  Rather, the evidence will show based on Plaintiffs' notices and Bright House's internal records that Bright House had actual knowledge that *specific* subscribers were repeatedly infringing using Bright House's Internet service. Such knowledge is sufficient to subject Bright House to contributory liability. *See BMG*, 881 F.3d at 307–08; *Perfect 10*, 508 F.3d at 1172.

Plaintiffs' Conditional Proposal on Intent (Instr. No. 14.A): (Ps ONLY (and only to be given if the Court decides that intent is an element of Plaintiffs' contributory infringement claim)

A "contributory infringer" is one who, with knowledge of another's infringing conduct, induces, causes, or materially contributes to the infringing conduct with the intent to cause the infringement.  Plaintiffs can prove intent if they can demonstrate that Bright House continued to provide its internet service to subscribers[80] knowing that it was substantially certain to result in infringement.[81]

---

[80] Bright House Objection:  Bright House incorporates its objection to the term "subscriber."

[81] Bright House Objection:  Bright House objects to Plaintiffs' proposed description of the requisite intent on the grounds it is an inaccurate statement of the law and contains an inaccurate and prejudicial description of the factual proof of intent in this case.  Bright House incorporates its position on the law setting forth intent.  *See supra* at n. 66.  It is extremely prejudicial for the Court to identify specific evidence that purportedly proves intent (with no balancing evidence that disproves intent).  It is also not the law that merely providing internet to customers can establish the requisite intent.  *See supra* at n. 66.

INSTRUCTION NO. 15.: Copyright – Three Or More Notices (BHN ONLY)[82]

During this trial, you may have heard one or more witnesses provide testimony about whether a Bright House customer received "three plus" or "three or more" notices from the Recording Industry Association of America ("RIAA") alleging infringement. I instruct you that the number "three" has no legal significance. Any testimony about whether a customer did or did not receive "three or more" notices has no bearing on whether that customer infringed any works, or whether Bright House had any knowledge of infringement.[83]

---

[82] ECF 638 at 5 (Order) (June 8, 2022) ("The Parties are DIRECTED to provide the Court with jointly proposed jury instructions, in advance of Buchan's testimony, that explain the significance and limitations of Buchan's use of three Work-in-Suit Notices in his analysis. Specifically, these instructions must explain that Buchan was instructed by counsel to use the receipt of three notices as a threshold for his analysis. The receipt of three notices does not necessarily equate to imputing Bright House with knowledge of alleged infringement and is a finding the jury is to consider based on the evidence offered at trial and the law as instructed by the Court.") (emphasis in original). This instruction is necessary to clarify and remind that any testimony the jury may have heard from witnesses, including those other than Mr. Buchan, about "three plus" or "three or more" notices has no legal significance, to cure any prejudice from Plaintiffs' repeated references to such a threshold. Such a reminder does not "prejudice" Plaintiffs, as it accurately states the law and is consistent with this Court's ruling.

Plaintiffs' proposal of a separate, unrelated instruction under the guise of an "objection" is improper. Testimony about "duplicate notices" is unrelated to Plaintiffs' choice to use the number "three," and respectfully requests the Court disregard Plaintiffs' request to insert a new instruction as a response to an objection. Bright House's specific objections to Plaintiffs' proposed instruction appear in its objection to Instruction No. 16.

[83] Plaintiffs object to the inclusion of this instruction as unnecessary and incorrect; the fact that a subscriber was the subject of three or more notices that Bright House received has significant bearing on whether Bright House had knowledge (actual or constructive) of infringement. The Court has indicated that it intends to issue the

Plaintiffs' Proposed Version

During the trial, you heard testimony about whether a Bright House subscriber was the subject of "three plus" or "three or more" notices from the Recording Industry Association of America ("RIAA"). The receipt of three notices does not necessarily equate to imputing Bright House with knowledge of infringement. Whether Bright House had knowledge of infringement is a finding that you, the jury, are to consider based on the evidence offered at this trial and the law as instructed by the Court.[84]

---

substance of this instruction to the jury before Plaintiffs' expert Kristofer Buchan testifies and the parties have submitted competing instructions for that purpose with the Joint Preliminary Jury Instructions. Repeating that instruction here will serve only to lengthen and complicate the final jury instructions and will unfairly prejudice Plaintiffs. If the Court determines that an instruction on "Three or More Notices" is appropriate here, Plaintiffs offer an accurately stated version below.

Further, if this instruction is to be given to the jury in any form, then a similar instruction must be given to the jury concerning Bright House's and Dr. Snow's use of the term "duplicate notices." That instruction is included as Instruction No. 16.

[84] Bright House Objection: Bright House objects to the entirety of this instruction because it does not conform to the Court's direction (ECF 638 at 5 (Order) (June 8, 2022)) and is unduly prejudicial to Bright House. It improperly omits informing the jury that the number "three" has no legal significance. In addition, the phrase "[t]he receipt of three notices does not necessarily equate to imputing Bright House with knowledge of infringement" is prejudicial and incorrect because it indicates that the receipt of three or more notices *may* impute knowledge of infringement to Bright House. This is inaccurate – the number "three" has no legal import, and the Court should not prejudicially instruct the jury that "three" may or may not satisfy a self-serving threshold created by Plaintiffs. Moreover, the third sentence is prejudicial, confusing and unnecessary because it discusses "knowledge of infringement" in the context of receipt of "three or more" notices, when the instruction should be limited simply to instructing that the number "three" has no legal import. Further, the last sentence improperly suggests that knowledge of a notice is sufficient to convey knowledge of infringement, which is not the law. *See supra* n. 84. Bright House's proposed instruction faithfully follows the Court's Order.

INSTRUCTION No. 16.: Defendant's Terminology – " Duplicate Notices" (DISPUTED)[85]

Plaintiffs' Proposal

During the trial, you heard testimony about whether Bright House received what it described as "duplicate notices" from the Recording Industry Association of America ("RIAA"). That term has no meaning under the law. Bright House's knowledge of specific instances of infringement, and the scope of any such infringement and knowledge, are questions that you, the jury, are to consider based on the evidence offered at this trial and the law as instructed by the Court.[86]

---

[85]   May 26, 2022 Hrg. Tr. at 118:15-25 ("THE COURT: When you all prepare your jury instruction that you're going to come to together, work it out and make sure that it covers both parties not being able to offer legal opinions as to what constitutes infringement, and if you can't work it out I'll hear it at the charge conference. I don't want a motion on it because we're going to get to no more motions at the end of this hearing. So I don't think that's what Dr. Snow was doing. If the plaintiff thinks it is what he's doing, you all work it out in whatever this drafted jury instruction is going to be so nobody does it.").

[86]   Bright House Objection:  For the reasons stated in its objection to Plaintiffs' Preliminary Instruction No. 16 & n.36, incorporated herein, Bright House objects to the entirety of this instruction, as it does not conform to the Court's direction and is unduly prejudicial to Bright House.  This instruction also improperly references all evidence related to duplicate notices, not just Dr. Snow's testimony on that issue. Because there could be other evidence jurors believe are duplicate notices, it is not proper to broaden the instruction to iclnude that evidnece.  It is inaccurate and prejudicial to suggest that these notices are knowledge of "specific instances of infringement." .The phrasing of the instruction improperly suggests that "Bright House's knowledge of … infringement" is an undisputed fact.  Moreover, there is no need to reference "knowledge" or "infringement" in the context of this instruction.

Bright House's Proposal

Members of the Jury:

Dr. Snow has offered testimony about whether a Bright House customer received "duplicative" notices from the Recording Industry Association of America ("RIAA") alleging infringement. I instruct you that his definition of "duplicative" has no legal significance – it is simply the methodology he has chosen for his analysis. You, the jury, make your own determination of whether you consider certain notices duplicative.

---

Bright House further objects that the instruction is inaccurate, argumentative, and unnecessary. It is not correct to suggest that Dr. Snow's opinions have "no meaning under the law" – the opinions are relevant to facts the jury will determine under the law. It is also inaccurate and prejudicial to suggest that Dr. Snow's opinion and these notices are knowledge of "infringement" as opposed to notices of alleged infringing activity. Bright House's instruction faithfully follows the Court's Order by simply instructing that Dr. Snow's use of "duplicate" has no legal significance, and that the jury is to decide whether Bright House had knowledge of any infringement proven by Plaintiffs based on the law as the Court instructs.

## INSTRUCTION NO. 17.: Damages – General Charge (Ps ONLY)[87]

If you find that Plaintiffs have failed to prove their copyright infringement claims or that Bright House has proved its affirmative defense[s] by a preponderance of the evidence, you won't consider the question of damages.  If you find that Plaintiffs have proved by a preponderance of evidence that Bright House has infringed Plaintiffs' copyrights, and Bright House has not proved a defense, then you must determine the amount of statutory damages to which Plaintiffs are entitled.

In the next instruction, I'll explain statutory damages and define how you must determine the amount of statutory damages to award to Plaintiffs.[88]

---

[87]   Eleventh Circuit Pattern Jury Instruction 9.30 – Damages – General Charge.

[88]   Bright House Objection: Bright House objects on the ground that this instruction is not necessary and also incorrectly suggests that some damages "must" be awarded for every work that infringement is established.  It does not account for the fact that certain of those works may not qualify as individual works for statutory damages.  Plaintiffs must first establish that the works at issue qualify for a statutory damages award.

INSTRUCTION NO. 18.: Damages – Defining A "Work" For Statutory Damages (BHN ONLY)[89]

As part of your assessment of statutory damages, you must first determine the number of works that are at issue.

Only one award of statutory damages is allowed per work infringed for all infringements of that work.  All of the parts of a compilation or derivative work constitute one work.[90]

---

[89]   Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.32 (Copyright – Damages – Statutory Damages) (Annotations & Comments No. 3) ("Defining 'work.'  Only one measure of statutory damages is allowed per work infringed for all infringements of that work. … All of the parts of a compilation or derivative work constitute one work.") (citing 17 U.S.C. § 504(c)); *MCA Tele. Ltd. v. Feltner*, 89 F.3d 766, 768-69 (11th Cir. 1996).

[90] Plaintiffs object to the inclusion of this instruction in its entirety.  It is not an Eleventh Circuit Pattern instruction but rather contains part of a Comment to Instruction No. 9.32, which both parties have included below (as modified).  The final sentence is misleading and would confuse the jury because it falsely suggests that Eleventh Circuit law does not permit separate statutory awards for separate works that are included in a compilation.  As stated in detail further below, the *Feltner* case holds precisely the opposite.  Furthermore, this instruction provides no clarity to the jury that the Court will now instruct them on the question of damages, which Pattern Instruction No. 9.30 does, as Plaintiffs propose to include.

INSTRUCTION NO. 19.: Damages – Sound Recordings And Musical Compositions (BHN ONLY)[91]

If you find that there are instances where a particular sound recording and a particular musical composition embody the same song, you must count the sound recording and the musical composition together as a single "work," not multiple works.[92]

---

[91] 17 U.S.C. § 504(c)(1) ("all the parts of a … derivative work constitute one work"); *Id.* § 101 (defining "derivative work" as "a work based upon one or more preexisting works, such as a … sound recording"); *Capitol Rec., Inc. v. MP3tunes, LLC,* 28 F. Supp. 3d 190, 192 (S.D.N.Y. 2014) ("when [infringers] infringed the copyright covering a sound recording and musical composition for the same song, they infringed only one work because the infringement was directed at the sound recording and the musical composition was not exploited separately"); *Spooner v EEN, Inc.,* 2010 WL 1930239, at *4 (D. Me. May 11, 2010) (musical composition and sound recording "one work" for statutory damages); 6 PATRY ON COPYRIGHT § 22:186 ("[s]ound recordings are defined in section 101 as species of derivative work of the underlying musical composition, and, as such, both fall within the one work, one award rule for statutory damages that only award[s] for infringement of both works"); 4 NIMMER ON COPYRIGHT § 14.04[E][1][b] (2021) (similar); *EMI Christian Music Grp., Inc. v. MP3tunes, LLC,* 844 F.3d 79, 95 (2d Cir. 2016) ("the District Court's decision to permit only one award of statutory damages for the musical composition and corresponding sound recording comports with both the plain text and the legislative history of the Copyright Act … In our view, then, Congress did not intend for separate statutory damages awards for derivative works such as sound recordings, even when the copyright owner of the sound recording differs from the copyright owner of the musical composition.").

[92] Plaintiffs object to the inclusion of this instruction in its entirety. Whether Plaintiffs can obtain separate statutory awards for Overlapping Works is a disputed issue of law that the Court must decide.

Plaintiffs additionally object to the jury being instructed that it may not award separate statutory damages awards for the Overlapping Works, which is an incorrect assertion of law, not supported by any in-Circuit case law or Pattern Jury Instructions. Bright House asserts that Plaintiffs may not recover separate statutory damages awards for a sound recording and the underlying composition on the grounds that the recording is a derivative work of the composition and that the statute states, "all the parts of a . . . derivative work constitute one work." 17 U.S.C. § 504(c)(1). The plain statutory text,

however, including the repeated use of the singular term "copyright owner" throughout Section 504, demonstrates that the single-recovery rule applies *only where the multiple copyrights have a single owner*.  Here, the owner of the copyright in and to the sound recording (*i.e.*, a record company plaintiff) is different from the owner of the copyright in and to the musical composition (*i.e.*, a music publisher plaintiff).  *See* 17 U.S.C. § 102(a)(2) & (a)(7) ("musical works" are different works than "sound recordings"); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248 (C.D. Cal. 2002) ("Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights.").

Further, because "one work," however interpreted, applies only to a single lawsuit ("for all infringements involved in the action"), 17 U.S.C. § 504(c)(1), Bright House's construction would lead to absurd results:  the owner of a musical composition and the owner of the derivative sound recording for that composition could sidestep the outcome Bright House seeks by simply bringing separate lawsuits.  That would do nothing but increase burdens on the courts and the parties.  *Teevee Toons, Inc. v. MP3.com, Inc.*, 134 F. Supp. 2d 546, 548 (S.D.N.Y. 2001) (holding that Congress meant to preclude only a single plaintiff from recovering multiple statutory damages for infringements of different versions of a single work), *disagreed with by EMI Christian Music Grp.*, 844 F. 3d at 95.

INSTRUCTION NO. 20.: Damages – Albums And Compilations (BHN ONLY)[93]

If you find that multiple sound recordings were first issued or registered as part of a single album or compilation, or were registered as works for hire, you must count all of the sound recordings on that album or compilation as a single "work," not multiple works.[94] [95]

---

[93] The Court has not yet determined which legal standard will apply to this issue. Bright House respectfully submits that this instruction reflects the proper legal standard based upon the plain text of the Copyright Act. Should the Court determine another standard applies, Bright House reserves the right to submit an instruction reflecting that standard.

[94] ECF 330 at 15 (Order) (Sept. 7, 2021) ("The Copyright Act states that 'all the parts of a compilation or derivative work constitute one work' for the purpose of calculating statutory damages. 17 U.S.C. § 504(c)(1)."); 17 U.S.C. § 101 ("compilation" includes "collective works"); 17 U.S.C. § 201(c) ("Copyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution. In the absence of an express transfer of the copyright or of any rights under it, the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work, any revision of that collective work, and any later collective work in the same series.").

[95] Plaintiffs object to the inclusion of this instruction as it finds no support in the Eleventh Circuit Pattern instructions and is contrary to controlling Eleventh Circuit law. The Eleventh Circuit holds that even where the works at issue are part of a compilation, whether each separate work is entitled to a separate statutory award is determined by whether each work "can live [its] own copyright life." *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996) ("This test focuses on whether each expression has an independent economic value and is, in itself, viable."). Following application of the independent economic value test or a similar analysis, multiple courts have held that a plaintiff can recover statutory damages for each sound recording, even if those recordings were at some point included on an album. *See, e.g.*, *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 984 (E.D. Va. 2015) ("Nothing in the Copyright Act bars a plaintiff from recovering a statutory damage award for a sound recording [or musical composition] issued as an individual track, simply because that plaintiff, at some point in time also included that sound recording [or composition] as part of an album or other compilation.") (quoting *Arista*

Plaintiffs' Proposed Instruction

If you find that multiple sound recordings that Plaintiffs assert have been infringed were first issued together as part of an album, Plaintiffs are entitled to a separate statutory damages award for each such sound recording if they demonstrate that each has independent economic value.[96] [97]

---

*Recs., LLC v. Lime Grp., LLC*, 2011 WL 1311771, at *2–3 (S.D.N.Y. Apr. 4, 2011)); *id.* at *4 (allowing statutory damages for tracks issued as individual recordings at the time of infringement even if also included on albums). *See also* ECF 330 ("The Eleventh Circuit has held that 'separate copyrights are not distinct 'works' unless they can live their own copyright life.' *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996). This test focuses on whether each expression has an independent economic value and is, in itself, viable.'" *Id.*). *See also Yamashita v. McGraw-Hill Glob. Educ. Holdings, LLC*, 2022 WL 1200811, at *8 (D.N.J. Apr. 21, 2022) ("Although Yamashita's photographs were registered by Corbis on a single form as a compilation, each photograph is an independent work that has its own economic value. Thus, under either approach, Plaintiffs are entitled to separate statutory damages for each infringement of Yamashita's works and are not bound by section 504(c)(1)'s one-award restriction.).

Plaintiffs also object to Bright House's inclusion of the term "works for hire" in this instruction as it is irrelevant to this proposed instruction, or any issue in the case, and could only serve to confuse the jury.

[96] *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996) (works are separate if they "can live their own copyright life" and explaining that "[t]his test focuses on whether each expression has an independent economic value and is, in itself, viable") (citations omitted); *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 984 (E.D. Va. 2015) ("Nothing in the Copyright Act bars a plaintiff from recovering a statutory damage award for a sound recording [or musical composition] issued as an individual track, simply because that plaintiff, at some point in time also included that sound recording [or composition] as part of an album or other compilation.") (quoting *Arista Recs., LLC v. Lime Grp., LLC*, 2011 WL 1311771, at *2–3 (S.D.N.Y. Apr. 4, 2011)).

[97] Bright House Position:  The Court has not yet determined which legal standard will apply to this issue.  Bright House respectfully submits that its proposed

Bright House's Proposed Instruction:[98]

_____

instruction reflects the proper legal standard based upon the plain text of the Copyright Act:  That where multiple sound recordings were first issued or registered as part of a single album or compilation, or were registered as works for hire, the jury must count all of the sound recordings on that album or compilation as a single "work," not multiple works.  *See* 17 U.S.C. §504(c)(1), 101, 201(c).  For this reason, Plaintiffs' proposed instruction, which cannot be reconciled with the text of the Copyright Act, should be rejected.

To the extent that the Court determines the proper legal standard is otherwise, Plaintiffs' proposed instruction is incomplete, unclear, and confusing, as the term of art "independent economic value" has a particular meaning that should be explained to the jury; otherwise, the jury will not know what the phrase means and cannot accurately apply it.  For example, this Court has already held in this case that, to determine whether a work has an "independent economic value," the factfinder must determine "whether the copyright holder 'chose to create, market, deliver, register, and describe the [works] as collections' or as individual works" governs the inquiry. ECF 330 at 15 (quoting *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1278 (11th Cir. 2015).  Moreover, this Court recognized that under Eleventh Circuit law, "the independent economic value test does not begin and end with an inquiry into whether a separate unit in a multi-work project could possibly have some independent economic value if sold separately."  ECF 330 at 16 (quoting *Yellow Pages Photos, Inc.*, 795 F.3d at 1281); *see also Yellow Pages Photos, Inc.*, 795 F.3d at 1282 ("because YPPI created, marketed, published, registered, and repeatedly described its photos as 178 collections under 178 headings organized by subject matter, we affirm the district court's decision to treat each collection as a compilation, subject to only one award of statutory damages").  Plaintiffs' instruction is also prejudicial because it improperly instructs the jury that Plaintiffs are "entitled" to a separate statutory damages award, rather than explaining that it is up to the jury to determine the number of works eligible for statutory damages.  Plaintiffs' instruction further fails to properly describe the burden of proof.

To the extent that the Court determines that an "independent economic value" instruction is warranted, it should be revised consistent with Bright House's proposal, which is neutral and provides the jury with the proper guidance, as determined by this Court's order and Eleventh Circuit authority.

[98]  ECF 330 at 15 (issue is "whether the copyright holder 'chose to create, market, deliver, register, and describe the [works] as collections' or as individual works"); *Yellow Pages Photos, Inc.*, 795 F.3d at 1281); *see also Yellow Pages Photos, Inc.*, 795 F.3d at 1282 ("because YPPI created, marketed, published, registered, and repeatedly

If you find that multiple sound recordings that Plaintiffs assert have been infringed were issued together as part of a single album, you must determine whether such sound recordings are counted as a single work or separate works for the purposes of calculating the number of works for statutory damages.  This depends on whether Plaintiffs have demonstrated by preponderance of the evidence that each sound recording on that album has an "independent economic value."  To determine whether a particular sound recording has an "independent economic value," you should consider whether Plaintiffs chose to create, market, deliver, register or describe the sound recording as part of an album, or as an individual work.[99]  This does not begin and end with a determination of whether a sound recording that was offered could have independent economic value if sold separately.  You must look at whether Plaintiffs treated the individual sound recording independently from the album in practice.[100]  If you determine that multiple sound recordings on an album were treated as an album, you should count all such sound recordings as constituting a single work

---

described its photos as 178 collections under 178 headings organized by subject matter, we affirm the district court's decision to treat each collection as a compilation, subject to only one award of statutory damages").

[99] Plaintiffs object that this is an incorrect statement of the law under Eleventh Circuit precedent and not part of the independent economic value inquiry, which focuses on whether each work can live its own copyright life.  *See* Plaintiffs' authorities cited in support of Plaintiffs' instruction above.  This same objection applies to the remainder of this instruction.  Plaintiffs further object to Bright House's proposed version of this instruction as unduly lengthy and likely to confuse the jury.

[100] Plaintiffs further object to this sentence and the next sentence as vague and confusing and thus unfairly prejudicial.  The jury will not understand what is being asked of them, or what it means to "treat" a sound recording "independentlly from the album" or treat an album "as an album."

for the purposes of a statutory damages award.  If you determine that Plaintiffs proved a particular sound recording on an album had an independent economic value, you should count that sound recording as a single work for the purposes of a statutory damages award.

INSTRUCTION NO. 21.: Damages – Pre-Registration Requirement (BHN ONLY)[101]

Statutory damages are not available for copyright infringement of a work where: (1) the infringement commenced prior to registration of an unpublished work or; (2) for infringement that commenced before registration, within three months of its first publication.

For any work at issue[102] where Plaintiffs did not prove that the infringement either commenced prior to the registration of the work's publication, or commenced within three months of the work's first publication, you cannot award any statutory damages for that work and you must exclude that work from the total number of works on which you award damages.

---

[101] Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.32 (Copyright – Damages – Statutory Damages) (Annotations & Comments No. 9) ("Under 17 U.S.C. § 412, statutory damages are unavailable for copyright infringement that commenced prior to registration of an unpublished work or for infringement that commenced before registration within three months of its publication. In a case in which the issue of when infringement commenced presents a jury question, the instruction should be modified accordingly.").

[102] Plaintiffs object to the words, "For any work at issue". There are only a handful of works that Bright House argues were not registered within the required timeframe before infringement and those should be the only works this instruction addresses.

INSTRUCTION NO. 22.: Damages – Statutory Damages[103] (DISPUTED)

Plaintiffs seek a statutory damage award[104] [Plaintiffs: for each of their works that has been infringed].[105]  "Statutory damages" are damages that are established by Congress in the Copyright Act.  The purposes are to compensate the copyright owner, penalize the infringer, and deter future copyright law violations.  The amount awarded must be between $750 and $30,000 for each copyrighted work that you found to be contributorily infringed, unless one of the exceptions applies, as I'll explain later.

To determine the appropriate amount to award, you can consider the following factors:

---

[103]  Eleventh Circuit Pattern Jury Instruction 9.32 Copyright – Damages –Statutory Damages.

[104]  Plaintiffs seek statutory damages for each of the works infringed, which would constitute multiple statutory damages awards.  The Pattern Instruction is written for a plaintiff seeking one award for one work infringed.

[105]  Bright House Objection:  Bright House objects to Plaintiffs' proposed added language on the ground it is argumentative and improperly convolutes two separate issues – infringement and statutory damages – by suggesting that damages should be awarded for every work found to be infringed.  The law is clear that statutory damages can only be awarded for eligible works, which is a separate question from whether or not a work is infringed.  This language is not included in the cite Pattern Jury Instruction and Plaintiff cite no authority for including it.  It is especially prejudicial to include a statement of Plaintiffs' theory of the case without a counter balancing statement addressing Bright House's position, which is that statutory damages can only be awarded for eligible works.

- The profits Bright House earned [Bright House: because of] [Plaintiffs: in connection with][106] [107] the infringement;

- The revenues that Plaintiffs lost because of the infringement;

- The difficulty of proving Plaintiffs' actual damages;

- The circumstances of the infringement;

- Whether Bright House intentionally infringed Plaintiffs' copyrights; and

- Deterrence of future infringement.

---

[106] *See Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1261 (11th Cir. 2014) ("In calculating damages, courts generally consider: (1) the infringers' blameworthiness (willful, knowing, or innocent); (2) the expenses saved and the profits reaped by the defendants *in connection with* the infringement; (3) the revenues lost by the plaintiffs due to the defendants' conduct; and (4) the deterrent value of the damages imposed.") (emphasis added).

[107] Bright House Objection:  Bright House objects to Plaintiffs' proposed language as an inaccurate statement of the law.  Plaintiffs propose deviating from the Eleventh Circuit Pattern Jury Instruction to improperly expand the scope of recoverable damages without providing any authority for doing so.  The pattern instruction properly sets forth the governing Eleventh Circuit standard that any profits earned must be "because of" the infringement and not merely "in connection."  *See, e.g., MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1218 (11th Cir. 2021) (reviewing identical jury instruction).  Plaintiffs' cited authority is inapposite, as it did not involve review of a jury instruction but rather provided a "general[]" summary of factors in the course of reviewing a district court's grant of summary judgment.  *See Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1261 (11th Cir. 2014).

[Bright House:   While it is for you the Jury to determine the appropriate amount to award for each work, your award should bear some relationship to the actual damages suffered.][108][109]

---

[108] *Strober v. Harris*, 2021 WL 7629457, at *3 (M.D. Fla. Nov. 23, 2021) ("Courts recognize, however, that statutory damages are not intended to provide a plaintiff with a windfall recovery; they should bear some relationship to the actual damages suffered.") (Scriven, J.) (quotations omitted); *Stross v. Roberson*, No. 2019 WL 7562382, at *5 (M.D. Fla. Oct. 3, 2019) (same); *StockFood Am., Inc. v. Smarter Changes, LLC*, 2019 WL 11499353, at *5 (M.D. Fla. Sept. 19, 2019) (same); *Clever Covers v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2007) (same).

[109] Plaintiffs object to the inclusion of this paragraph, which is not included in the Pattern jury instruction.  Bright House is incorrect that a statutory damages award must bear some relationship to the actual damages suffered. The First, Second, Fourth and Ninth Circuits have expressly rejected this proposition.  *See Sony BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 506-07 (1st Cir. 2011) (rejecting defendant's argument that court erred by failing to instruct jury that statutory damages should be reasonably related to actual damages and explaining that "[i]n § 504, Congress drew a plain distinction between actual and statutory damages, making it clear that the availability of statutory damages is not contingent on the demonstration of actual damages" and holding that "[w]e join our sister circuits, who have rejected similar objections to jury instructions") (citing *New Form, Inc. v. Tekila Films, Inc.*, 357 Fed. Appx. 10, 11-12 (9th Cir.2009) ("There is no required nexus between actual and statutory damages under 17 U.S.C. § 504(c)" (citing *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496-97 (4th Cir.1996)); *see also Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (upholding $4 million statutory damages award and rejecting defendant's argument that jury award was an abuse of discretion because it bears no relationship to plaintiffs' actual damages); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 126-17 (2d Cir. 2014) ("Although revenue lost is one factor to consider, we have not held that there must be a direct correlation between statutory damages and actual damages. To suggest otherwise is to ignore the various other factors a court may consider and the purposes of statutory damages in the willful infringement context."); *see also Greenberg v. Nat'l Geographic Soc'y*, 2005 WL 8156192, at *4 (S.D. Fla. Oct. 3, 2005) ("[It] is not necessary for an award of statutory damages to have a correlation to the actual damages, or to a plaintiff's prior income from an infringed work."); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F.Supp.2d 455, 460 (D. Md. 2004) (rejecting argument that court should have instructed the jury "that the amount of statutory damages should bear a reasonable relationship to actual damages").

If Plaintiffs prove that Bright House willfully [Bright House: infringed] [Plaintiffs: contributed to the infringement of][110] their copyrights, you may – but are not required to – increase the statutory damage award to a sum as high as $150,000 per copyrighted work.

[Bright House: Infringement is "willful"] [Plaintiffs: Bright House acted "willfully"][111] if Plaintiffs prove that Bright House knew that its actions [Bright House: constituted contributory] [Plaintiffs: contributed to][112] infringement of Plaintiffs' copyrights or that Bright House recklessly disregarded the possibility that its actions [Bright House: contributorily infringed][113] [Plaintiffs: contributed to infringement of]

---

[110] Bright House Objection:  Bright House objects that Plaintiffs misstate the law on by suggesting that willfully "contributing to the infringement" is a basis for willful liability.  There must be contributory infringement, the legal term, for there to be liability for willful infringement.  Plaintiffs' manipulation of the term is confusing and may cause a jury to believe that simply providing an internet connection is enough to find willful contributory infringement.

[111] Bright House Objection:  Bright House objects to Plaintiffs' proposed phrasing, which involves the Court affirmatively stating that "Bright House acted willfully," is argumentative and prejudicial.  The cited Pattern Jury instruction uses the more neutral language proposed by Bright House and Plaintiffs have not identified any authority warranting a departure.

[112] Bright House Objection:  Bright House objects to Plaintiffs' proposed phrasing changes the legal standard by suggesting knowledge of "contributing to" infringement is enough.  The law requires knowledge of contributory infringement, which is what the Pattern Jury Instruction on this issue proposes and what Bright House has included.  Plaintiffs provide no legal authority for their proposed standard and the language is not supported for the Pattern Jury Instruction and as noted in the preceding objection, could lead a jury to believe that any contribution to the infringement of another is sufficient.

[113] Bright House Objection:  Bright House objects to Plaintiffs' proposed omission of the type of infringement for which damages can be awarded.  Unless contributory infringement is specified, the jury may be confused and believe it should award

a copyright or copyrights.   [Bright House:   For Bright House to have acted with "reckless disregard," Plaintiffs must show that Bright House acted despite an objectively high likelihood that its actions constituted contributory infringement.][114] [115]

---

damages for the alleged underlying direct infringement by Bright House's customers; not for the alleged infringement of Bright House itself.

[114] Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 9.32 (Copyright – Damages – Statutory Damages) (Annotations & Comments No. 6) ("In *Yellow Pages Photos, Inc. v. Ziplocal LP*, 795 F.3d at 1272, the Eleventh Circuit agreed with other circuits in holding that willfulness encompasses 'reckless disregard of the possibility that one's actions are infringing a copyright.' Although *Yellow Pages Photos* does not enunciate a clear test for what constitutes 'reckless disregard,' the Eleventh Circuit, in an unpublished decision, held that reckless disregard can rise to the level of willfulness where 'the infringer acted despite an objectively high likelihood that its actions constituted infringement.'   *Olem Shoe Corp. v. Washington Shoe Corp.*, 591 F. App'x 873, 877 (11th Cir. 2015) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).") (quotations omitted).

[115] Plaintiffs object to Bright House's addition of this sentence as contrary to law. The sentence is not part of Pattern instruction 9.32 but rather is referenced in the annotations to the instruction. Furthermore, the unpublished Eleventh Circuit decision cited relies on a damages standard in patent law that has been overruled by the Supreme Court. *Olem Shoe Corp.*, a copyright infringement case, relies on *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), a patent infringement case, for the principle that a reckless state of mind requires a showing of an "objectively high likelihood" that defendant infringed the copyright. *Olem Shoe Corp.*, 497 F.3d at 877. But *Seagate* was overruled by the Supreme Court in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 94, 97 (2016). *Halo* held that the *Seagate* test, including that "a patent owner must first show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its action constituted infringement of a valid patent" is not consistent with the Patent Act and is "unduly rigid" and "impermissibly encumbers the statutory grant of discretion to district courts." *Halo Elecs., Inc.*, 579 U.S. at 94, 97. Instead, *Halo* held that "a patent infringer's subjective willfulness, whether intentional or knowing, may warrant enhanced damages, *without regard* to whether his infringement was objectively reckless." *Id.* at 94 (emphasis added). Indeed, more recent authority within the Eleventh Circuit holds that "willfulness under the Copyright Act includes 'reckless disregard of the possibility that one's actions are infringing a copyright.'" *Joe Hand Promotions, Inc. v. Allen*, No. CV 118-127, 2020 WL 1491288, at *4 (S.D. Ga. Mar. 19, 2020) (*quoting Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1272 (11th Cir. 2015)).

[Bright House:   And again, while it is for you the Jury to determine the appropriate amount to award for each work, as a guidepost, an award of three times a plaintiff's actual damages generally accounts for a finding that a defendant acted willfully and to deter future conduct.][116] [117]

---

[116] *See, e.g., StockFood Am., Inc. v. Smarter Changes, LLC*, 2019 WL 11499353, at *5 (M.D. Fla. Sept. 19, 2019) ("However, while StockFood seeks five times the actual damages, it cites to no binding authority supporting such an award and a review of the law in this District reflects that two to three times is appropriate given the facts of the case.") (citing cases), *report & recommendation adopted sub nom. StockFood Am., Inc. v. Smarter Changes, L.L.C.*, 2019 WL 11499358 (M.D. Fla. Oct. 4, 2019); *Corson v. Gregory Charles Interiors, LLC*, 2020 WL 6323863, at *2 (S.D. Fla. Aug. 7, 2020) ("When a defendant does not provide the court with expenses saved and profits reaped from the infringement, courts may look to actual damages as well as the willfulness of the infringement and award an amount of two to three times the actual damages in order to compensate the plaintiffs fully and deter future infringements by the defendant."); *Reiffer v. World Views LLC*, 2021 WL 1269247, at *5 (M.D. Fla. Mar. 1, 2021) ("Defendant's default supports applying a multiplier of three to the actual damages to arrive at an appropriate amount of statutory damages, as Defendant's default admits its willfulness as pleaded in the complaint.") *report & recommendation adopted,* 2021 WL 1264249 (M.D. Fla. Apr. 6, 2021).

[117]   Plaintiffs object to the inclusion of this paragraph, which is not included in the Pattern jury instructions, and is designed to improperly limit the jury's statutory damages awards.  Bright House is incorrect that the "guidepost" for statutory damages is an award of three times a plaintiff's actual damages and the Eleventh Circuit has not endorsed any multiplier of damages.  "Generally, statutory damages are awarded when no actual damages are proven, or actual damages and profits are difficult or impossible to calculate." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).  No multiplier is appropriate or even could be applied where, as here, damages from the infringement of Plaintiffs' works on Bright House's network cannot be calculated.   In contrast, Bright House's cited cases concern lost licensing fees for photographs (which were known, but do not exist here) and to which a multiplier could be applied. *See Corson v. Gregory Charles Interiors, LLC*, 2020 WL 6323863, at *2 (S.D. Fla. Aug. 7, 2020) (plaintiff submitted evidence that she would have charged "\$4,800.00 for licensing the [w]ork"); *Reiffer v. World Views LLC*, 2021 WL 1269247, at *4 (M.D. Fla. Mar. 1, 2021) (plaintiff would have charged Defendant \$3,000 for a licensing fee); *StockFood Am., Inc. v. Smarter Changes, LLC*, 2019 WL

If you the Jury find [Bright House: contributory][118] infringement, you must award Plaintiffs not less than $750 for each copyrighted work that Bright House has [Bright House: contributorily][119] infringed.

---

11499353, at *5 (M.D. Fla. Sept. 19, 2019) ("StockFood estimates that the license fee would have been $1,800."). Moreover, Bright House omits that the court in these cases applied a "scarcity" multiplier to actual damages *before* using a multiplier to calculate statutory damages. Thus, the court actually applied a much higher multiplier than what Bright House represents. *See Corson*, 2020 WL 6323863, at *2-3 (S.D. Fla. Aug. 7, 2020) (applying "scarcity" multiplier of four to actual damages, which increased actual damages from $4,800 to $19,200 and then applying a multiplier of three, resulting in recommendation of award of $57,600 in statutory damages); *Reiffer*, 2021 WL 1269247, at *5 (applying "scarcity" multiplier of five to actual damages, which increased actual damages from $3,000 to $15,000, and then applying a multiplier of three "to arrive at an appropriate amount of statutory damages" and finding that "[a] statutory damages award of $45,000 is within the broad range of awards in copyright infringement cases involving photographs used without a license"); *StockFood Am., Inc.,* 2019 WL 11499353, at *5 (applying scarcity multiplier of three times the licensing fee which increased actual damages from $1,800 to $5,400, and then applying a three times multiplier to arrive at an award of $16,200 in statutory damages). Thus, the actual multiplier applied was *nine to fifteen* times actual damages in these cases, not three.

[118] Bright House Objection: Bright House incorporates by reference its prior objection to the omission of the word contributory.

[119] Bright House Objection: Bright House incorporates by reference its prior objection to the omission of the word contributory.

INSTRUCTION NO. 23.: Damages – Awards For Works (BHN ONLY)[120]

Your award of statutory damages must be made on a work-by-work basis.

If you the Jury determine that Plaintiffs are entitled to different amounts of statutory damages for different works, you are to issue separate awards of statutory damages for each of those works.[121]

---

[120] *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1276 (11th Cir. 2015) ("Section 504(c)(1) allows for statutory damages based on each 'work' infringed."); *Strober v. Harris*, 2021 WL 7629457, at *3 (M.D. Fla. Nov. 23, 2021) (Scriven J.) ("Statutory damages must be calculated according to the number of separately copyrightable works infringed, not on the number of infringements.") (quotations omitted). Bright House reserves the right to request individualized statutory damages findings for any one or more specific works found to be infringed.

[121] Plaintiffs object to the entirety of this instruction as unsupported and unnecessary and therefore likely to cause confusion by adding to the length and complexity of the jury instructions. The Eleventh Circuit Pattern Jury Instructions do not contemplate such an instruction, nor does Bright House cite any authority to support it. *Yellow Pages* concerns the application of the independent economic value test and whether each work is entitled to its own statutory award. 795 F.3d at 1278. It does not support an instruction that a jury must determine whether a Plaintiff is entitled to different amounts of statutory damages for each of those works.

INSTRUCTION NO. 24.: Damages – Failure To Mitigate (BHN ONLY)[122]

Plaintiffs have a duty under the law to use reasonable diligence to mitigate their damages, that is, to avoid or minimize those damages.

If you determine that Bright House is liable for contributory infringement, and that Plaintiffs have suffered damages, then Plaintiffs may not recover for any item of damage that they could have avoided through reasonable effort. If you find that Bright House has proved by a preponderance of the evidence that Plaintiffs unreasonably failed to take advantage of an opportunity to lessen their damages, you should deny them recovery for those damages that they would have avoided had they taken advantage of the opportunity.

---

[122] *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, LP*, No. 4:14-cv-1903, ECF 270 at 11-12 (Court's Instructions To The Jury) (S.D. Tex. Dec. 7, 2017); *see also, e.g.*, *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, LP*, 948 F.3d 261, 275 (5th Cir. 2020) ("the district court appropriately instructed the jury to consider … mitigation in determining the amount of statutory damages"); *RooR v. Wellington Elite Trading, Inc.*, 2017 WL 5953291, at *3 (S.D. Fla. May 31, 2017) ("[C]ourts have recognized a knowing failure to stop ongoing copyright infringement amounts to a failure to mitigate damages in copyright infringement cases.") (quoting *Hydentra HLP Int. Ltd. v. Constantin Luchian*, 2015 WL 12658275, at *4 (S.D. Fla. Dec. 4, 2015)); *Malibu Media, LLC v. Zumbo*, 2014 WL 2742830, at *4 (M.D. Fla. June 17, 2014) ("Some courts have indeed recognized that knowing failure to stop ongoing copyright infringement amounts to a failure to mitigate.") (citing cases); *cf. UMG Recordings, Inc. v. Escape Media Grp., Inc.*, 2015 WL 1873098, at *8 (S.D.N.Y. Apr. 23, 2015) (denying motion to exclude "failure to mitigate" defense: "[B]ecause the jury has 'broad discretion in determining how to award statutory damages and may consider actual damages as a factor in making that determination, a failure to mitigate damages may remain relevant, particularly because one purpose of statutory damages is to approximate actual damages that are difficult to prove.'") (quoting *Malibu Media, LLC v. Tashiro*, 2014 WL 5488810, at *2 (S.D. Ind. Oct. 29, 2014)).

You are the sole judge of whether Plaintiffs acted reasonably in avoiding or minimizing their damages. Injured plaintiffs may not sit idly by when presented with an opportunity to reduce their damages. However, Plaintiffs are not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating damages.

Bright House has the burden of proving the damages that Plaintiffs could have mitigated. In deciding whether to reduce Plaintiffs' damages because of their failure to mitigate, you must weigh all the evidence in light of the circumstances of the case, using sound discretion in deciding whether Bright House has satisfied its burden of proving that Plaintiffs' conduct was not reasonable.[123]

---

[123] Plaintiffs object to the entirety of this instruction. The Eleventh Circuit Pattern Jury Instructions do not contemplate an instruction on mitigation for copyright damages and such an instruction is not appropriate when the plaintiff seeks statutory damages, as Plaintiffs do here. *See, e.g.*, *Malibu Media, LLC v. Weaver*, 2016 WL 1394331, at *7 (M.D. Fla. Apr. 8, 2016) (granting summary judgment to plaintiff on issue of mitigation because plaintiff sought only statutory damages); *Malibu Media, LLC v. Fitzpatrick*, 2013 WL 5674711, at *3 n.17 (S.D. Fla. Oct. 17, 2013) (holding that affirmative defense of failure to mitigate was "obviated" by plaintiff's election to seek only statutory damages); *Malibu Media, LLC v. Sterling*, 2013 WL 12157142, at *2 (M.D. Fla. July 17, 2013) (striking defense in copyright case because "the defense of failure to mitigate damages is generally inappropriate when a party seeks only statutory, as opposed to actual, damages"); *Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411, 422 (D.N.J. 2005) (mitigation defense not available where copyright plaintiffs sought only statutory damages); *Spanski Enters., Inc. v. Telewizja Polska S.A.*, 2017 WL 598465, at *2 (D.D.C. Feb. 14, 2017) (rejecting argument that copyright holder "has any obligation to 'mitigate' statutory damages"); *Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356, 1372 (D. Kan. 2018) ("[A] plaintiff's failure to mitigate damages is not relevant to a statutory damages award calculation."); *Malibu Media, LLC v. Doe*, 2015 WL 1402286, at *2 (D. Md. Mar. 25, 2015) (observing that "all agree that a copyright plaintiff's exclusive pursuit of statutory damages invalidates a failure to mitigate defense"); *Purzel Video GmbH v. St. Pierre*, 10 F.Supp.3d 1158, 1169 (D. Colo. 2014) ("A copyright plaintiff's exclusive pursuit of statutory damages invalidates a failure-to-mitigate defense."). Further, the

leading copyright law treatises agree that mitigation is not applicable or appropriate, as Plaintiffs have no affirmative obligation to police their copyrights or mitigate their damages.  *See* 3 Nimmer on Copyright § 12.05, at n.185 ("the 'duty to police' is native to trademark soil, not the terrain of copyright law"); 6 Patry on Copyright § 22:192.25 ("Where plaintiff seeks only statutory damages, such a defense [of failure to mitigate damages] is meritless and should be struck since there is no requirement that statutory damages be pegged to actual damages.").

Furthermore, Bright House's requests for mitigation-related discovery were previously rejected by Magistrate Judge Wilson.  *See* ECF 93 at 3; *see also* ECF 357-3 (Oct. 9, 2020 Tr. of Motion Hearing Before J. Wilson at 111:1-3; 109:24-110:5 (denying Bright House's motion to compel discovery that, in Bright House's words, whether described as "mitigation" or "just an assessment of statutory damages," was purportedly relevant because it "is going to be an issue in this case if we ever get to a damages case")).

## INSTRUCTION NO. 25.: Duty to Deliberate (BHN ONLY)[124]

Of course, the fact that I have given you instructions concerning the issue of Plaintiffs' damages should not be interpreted in any way as an indication that I believe that the Plaintiffs should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree.  Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors.  So you must discuss the case with one another and try to reach an agreement.  While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong.  But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

---

[124] Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 3.8.1 (Duty to Deliberate When Only the Plaintiff Claims Damages).

INSTRUCTION NO. 26.: <u>Election Of Foreperson; Explanation Of Verdict Form</u>[125]

When you get to the jury room, choose one of your members to act as foreperson.  The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

*[Explain verdict form]*

Take the verdict form with you to the jury room.  When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it.  Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer.  The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom.  Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response.  But I caution you not to tell me how many jurors have voted one way or the other at that time.  That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

---

[125] Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 3.9 (Election of Foreperson Explanation of Verdict Form[s]).